*E-FILED: April 12, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DROPLETS, INC.,

                Plaintiff,

    v.

AMAZON.COM, INC., ET AL.,

                Defendants.

_____/

No. C12-03733 HRL

**ORDER GRANTING YAHOO! INC.'S MOTION TO COMPEL AMENDED INFRINGEMENT CONTENTIONS**

**(Dkt. 203)**

      In this patent infringement case, defendant Yahoo! Inc. ("Yahoo") moves to compel plaintiff Droplets, Inc. ("Droplets") to supplement its infringement contentions to comply with the specificity requirements of Patent L.R. 3-1. Droplets responds that its contentions are sufficient to meet its burden. The parties appeared for oral argument on March 5, 2013. Having reviewed the parties' papers and Droplets' infringement contentions, and after considering oral arguments, the court GRANTS Yahoo's motion.

## I.  BACKGROUND

      Droplets alleges Yahoo's products directly and indirectly infringe 137 claims in two patents: U.S. Patent No. 6,687,745 ("'745 Patent") and U.S. Patent No. 7,502,838 ("'838 Patent") (collectively "the Patents"). Both patents claim systems and methods for a series of connections to transfer information over a network and present information to a user. Droplets alleges that many of Yahoo's products, including Yahoo's "Maps-Panning and zooming" product, infringe both patents.

United States District Court
For the Northern District of California

**II.  LEGAL STANDARDS**

The Patent Local Rules of this District provide for a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence." *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06770 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)).  As such, a plaintiff is required to include in its infringement contentions all facts known to it, including those discovered in its Fed. R. Civ. P. 11 pre-filing investigation.  *Network Caching Tech., LLC*, 2002 WL 32126128 at *4.  The rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).

Patent Local Rule 3-1 requires a plaintiff in a patent infringement action to serve infringement contentions setting forth "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party" and identifying for each asserted claim "each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware."  Patent L.R. 3-1(a), (b).  The identification of each Accused Instrumentality should be "as specific as possible."  *Id.* at 3-1 (b).  A plaintiff must also provide a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function."  *Id.* at 3-1(c).

These rules do not, as is sometimes misunderstood, "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."  *See DCG Sys. v. Checkpoint*

United States District Court
For the Northern District of California

*Tech., LLC*, Case No. 11-cv-03729-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012)

(quoting *Whipstock Serv., Inc. v. Schlumberger Oilfied Sers.*, No. 6:09-cv-113, 2010 WL 143720, at

*1 (E.D. Tex. Jan. 8, 2010)).   But to the extent appropriate information is reasonably available to it,

a patentee must nevertheless disclose the elements in each accused instrumentality that it contends

practices each and every limitation of each asserted claim.[1]

## III.    DISCUSSION

Yahoo argues that none of the infringement contentions meet the specificity requirements of

Patent L.R. 3-1, but its papers only discuss the infringement contentions against Yahoo's "Maps-

Panning and zooming" product on four 4 claims: Claims 1, 17, and 26 of the '745 Patent, and Claim

1 of the '838 Patent.   Droplets specifically defends its infringement contentions for Claim 1 of the

'745 Patent.   In a footnote, Droplets generally alludes to the alleged deficiencies in the infringement

contentions for claims 17 and 26 of the '745 Patent.   Droplets does not address the alleged

deficiencies in the infringement contentions for Claim 1 of the '838 Patent.   At the hearing, the

parties agreed that the level of detail in the infringement contentions for Claim 1 of the '745 Patent

against Yahoo's "Maps'-Panning and zooming" product is representative of the level of detail in all

of Droplets' infringement contentions.

Claim 1 of the '745 Patent includes five claim limitations.   It reads:

> In a network configured computer processing system having a plurality of client
> computers and a plurality of host computers, a method for delivering interactive links
> for presenting applications and information from remote sources on the network, the
> method comprising:

---

[1] *Cf. FusionArc*, at *1 (denying motion to strike infringement contentions where "the record demonstrates that [patentee] FusionArc's [infringement contentions] reasonably disclose all of the information it presently possesses"). Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide "pinpoint citations" to the code identifying the location of each limitation. *See Big Baboon Corp. v. Dell, Inc.,* 723 F.Supp.2d 1224, 1228 (C.D. Cal. 2010).   In at least one instance, this court has gone further, holding that even when no source code has been made available by the defendant, "reverse engineering or its equivalent" may be required for at least one of the accused products to identify where each limitation of each claim is located.   *Network Caching, LLC v. Novell, Inc.,* No. C 01-2079 VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002).

[1] retrieving, in response to a request of a client computer, over a **first communication connection first information** having computer program code embedded therein and executing the embedded computer program code for establishing a second communication connection to a **second host computer** ("Claim Limitation 1");

[2] sending **second information** relating to the **operating environment of the client computer**, from the client computer to the second host computer ("Claim Limitation 2");

[3] retrieving, over the second communication connection, **third information** including presentation information for presenting an application and fourth information, the presentation information being based on the second information ("Claim Limitation 3");

[4] presenting, at the client computer, the application and the **fourth information** based upon the presentational information ("Claim Limitation 4"); and

[5] storing, on the client computer, an **interactive link** for selectively re-establishing the second communication connection to the second host computer for retrieving the third information and presenting the application and the fourth information ("Claim Limitation 5").

Declaration of Josh Budwin in Support of Droplets, Inc's Response in Opposition to Yahoo!'s

Motion to Compel Amended Infringement Contentions to Comply with Patent Rule 3-1, Dkt. 226-1

("Budwin Decl."), Ex. 2 cols. 29-30 (emphasis added, bolded terms are discussed below).

In the chart for Claim 1 of the '745 Patent ("Claim 1") against Yahoo's "Maps'-Panning and

zooming" product, Droplets more or less parrots the language of the claim limitations, provides

screen shots, sometimes provides publicly available source code or tools, and then states that

Yahoo's product infringes when rendered on various devices, with various languages, if a client is in

various locations, if cookies are/are not present, and if login information is/is not provided.

Yahoo complains that the screen shots, code, and tools do not aid in identifying where each

limitation is found within the accused product. The Court agrees. Each limitation in Claim 1

contains a significant amount of language and multiple terms. In the chart, each claim limitation is

followed by approximately 15-20 pages of screen shots. Most of the screen shots are duplicative, or

4

United States District Court
For the Northern District of California

differentiated by red boxes imposed by Droplets, and lack meaning unless accompanied by the type of guidance provided in Droplets' Opposition to Yahoo's motion as to Claim 1.  In instances where Droplets includes source code or tools, the source code or tools lack meaning unless somehow linked with the language of the claim limitations.  In instances where Droplets repeats the same screen shot, but imposes red boxes on the screenshots, it is not clear what the red boxes are intended to highlight or show.  At the hearing, counsel for Droplets indicated what some of the red boxes in particular screenshots are intended to show.  The screen shots, coupled with this explanation, provide notice of Droplets' infringement theory.  Without labels or another type of explanation of how the red boxes tie to a particular claim limitation, however, the infringement contentions do not meet the standard of Patent Local Rule 3-1.

For example, the chart for Claim Limitation 4 and Claim Limitation 5 parrots the respective language of each claim limitation, and includes 14 identical screen shots.[2]  Yet, in its Opposition, Droplets explains that for Claim Limitation 4, the screen shots show that "[t]he GET Response transmitted from the Yahoo! Server to the client (as discussed in the prior limitation) contains updated image information that the client needs to draw the map after panning and/or zooming on the client's screen."  Opposition at 9 (internal citations omitted).  Droplets claims its chart has "thus illustrated the 'fourth information' and shown how it results in the panned and/or zoomed map being displayed in various different types of client devices."  *Id*.  In the context of Claim Limitation 5, however, these same screen shots apparently identify the "interactive link" and "illustrate[] various types of links including bookmarks, hyperlinks, map locations, and the like on various devices."  Opposition at 10 (internal citations omitted).  When asked at the hearing to explain how the screen shots in Claim Limitation 5 showed in "interactive link" on the accused product, counsel pointed out

---

[2] *Compare* Budwin Decl., Ex. 1, Dkt. 226-2, pps. 81 and 97; 82 and 98; 83 and 99; 84 and 100; 85 and 101; 86 and 102; 87 and 103; 88 and 104; 89 and 105; 90 and 106; 91 and 106; 92 and 108; 93 and 109; 94 and 110 (cites to page numbering on ECF, not page numbering by Droplets).

that Claim Limitation 5 actually includes one more screen shot than Claim Limitation 4 (Claim Limitation 4 includes 14 screenshots; Claim Limitation 5 includes 15 screenshots: the same 14 screen shots as Claim Limitation 4, plus one).  *See* Budwin Decl., Ex. 1, Dkt. 226-2, p. 95.  This additional screenshot has a red box around a bookmark, and Droplets contends that this bookmark is the "interactive link."  At the hearing, counsel for Defendant said that she had not previously understood that this screenshot, of the 15, showed the "interactive link," and that it was informative to learn that Droplets considers a bookmark to be an interactive link because of a prosecution history over whether a bookmark is an interactive link.  This information, and the distinction in meaning between what appear to be the same or very similar sets of screen shots, does not emerge from the infringement contentions themselves, however.  Without the aid of labels or some other indication of how the screenshots connect to the limitations, the infringement contentions fail to provide the factual basis of the contentions.

As to Claim Limitations 1 through 3, the screen shots, source code and tools in the corresponding charts only provide the requisite notice of infringement theories when illuminated by the descriptions provided at the hearing and in the Opposition.  Though not apparent from the chart for Claim Limitation 1, Droplets asserts in its Opposition that the infringement contention "identifies 'first information' as including information sent from the Yahoo! server to the client computer when a connection is established."  Opposition at 5.  The Opposition identifies the four, out of twenty, pages of evidence for Claim Limitation 1 that show the HTML excerpt and JavaScript code that identify "first information."  Droplets further explains that the code on two of these pages "fetches and causes the client computer to run the JavaScript code" that is shown on the other two pages.  Droplets further illuminates that this JavaScript code is used to build a "GET Request," and that this process "'establish[es] a communication connection to a second host computer' (i.e., a Yahoo! Server)."  *Id.* at 6.  Finally, Droplets identifies the two pages in the chart that show how this

information has been delivered over the internet using a "first communication connection" between the Yahoo server and the client.  *Id.*

For Claim Limitation 2, Yahoo argues that Droplets does not identify "second information." Droplets seems to say in its Opposition that "second information" is a "Fiddler capture of GET request," which includes statements about the characteristics of the user-agent, that it is sent to Yahoo's host computer."  Opposition at 7.  Droplets identifies the three pages in the infringement contentions that show the Java Script used to build the "GET request."  *Id.*

For Claim Limitation 3, Yahoo argues that Droplets does not identify "third information." In its Opposition, Droplets states that the "third information" is a "GET Response," which Yahoo generates in response to the "GET Request."  Opposition at 8.  Droplets identifies the page in the Infringement Contentions that shows the "GET Response."

Droplets also explains in its opposition the mystery of why a series of screen shots are repeated throughout the infringement contentions.  Droplets explains that one particular pair of them represents the accused panning and zooming for maps feature, and that this pair of screen shots is used throughout the infringement contentions to show the feature on different types of client devices.  Other pairs of screen shots are used throughout to show how the feature works with different languages, from different locations, when cookies are disabled, and when a user is signed-in to a Yahoo account.  Opposition at 5-6.  With this explanation, the reader can now understand the significance of the same 14 screen shots that appear in nearly all claim limitations, of each of the 137 claims, throughout the 55,000 pages of infringement contentions.

In the Opposition, Droplets links the evidence in its infringement contentions to some of the terms used in its infringement contentions, allowing Yahoo to locate the claim limitation in the allegedly infringing product.  Although the rules do not necessarily require a plaintiff to identify *each term* in the Accused Instrumentality, in this case, some association between the evidence and

United States District Court
For the Northern District of California

the language used in the claim limitations is necessary to understand where each claim limitation is found within the Accused Product. In the Opposition, Droplets explains which language from the claim limitations corresponds to the selected source code and screen shots. This in turn allows the reader to understand "where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c). Without this explanation, however, or labels indicating same, the infringement contentions are insufficient.

Neither party fully briefed the issue of the sufficiency of Droplets' infringement contentions for Claims 17 and 26 of the '745 Patent, or for Claim 1 of the '838 Patent. But, as stated earlier, the parties agree that the level of detail in the infringement contentions for Claim 1 of the '745 Patent against Yahoo's "Maps'-Panning and zooming" product is representative of the level of detail in all of Droplets' infringement contentions.

## IV.   CONCLUSION

The Court directs Droplets to supplement its infringement contentions in accordance with the guidance provided in this Order. Droplets shall serve its amended infringement contentions no later than May 17, 2013.

**IT IS SO ORDERED.**

Dated: April 12, 2013

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

**C12-03733 HRL Order will be electronically mailed to:**

Brandon M Jordan bjordan@mckoolsmith.com

Courtland Lewis Reichman creichman@mckoolsmith.com, jmyers@mckoolsmith.com, nmacdonald@mckoolsmith.com

David J. Ball , Jr dball@paulweiss.com

Erin A Wiggins ewiggins@paulweiss.com

James E Quigley jquigley@mckoolsmith.com

Jeffrey Alan Lamken jlamken@mololamken.com, mcoburn@mololamken.com, mtotaro@mololamken.com

Jeffrey G. Homrig jhomrig@kasowitz.com, courtnotices@kasowitz.com, dwishon@kasowitz.com, mrubio@kasowitz.com

Jennifer H. Wu jwu@paulweiss.com

Jennifer Haltom Doan jdoan@haltomdoan.com, mthornberry@haltomdoan.com, nsandone@haltomdoan.com, pgolden@haltomdoan.com

John M Whealan jwhealan@law.gwu.edu

Joshua Reed Thane jthane@haltomdoan.com

Joshua Wright Budwin jbudwin@mckoolsmith.com, aboals@mckoolsmith.com, chough@mckoolsmith.com, lbone@mckoolsmith.com

Martin Vincent Totaro mtotaro@mololamken.com

Samuel Franklin Baxter sbaxter@mckoolsmith.com

Shawn Alexander Latchford slatchford@haltomdoan.com

Theodore Stevenson , III tstevenson@mckoolsmith.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

9