Courtland L. Reichman (CA Bar No. 268873)
creichman@reichmanjorgensen.com
Phillip J. Lee (CA Bar No. 263063)
plee@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
mflanigan@reichmanjorgensen.com
**REICHMAN JORGENSEN LLP**
303 Twin Dolphin Drive, Suite 600
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Jaime F. Cardenas-Navia (*pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
**REICHMAN JORGENSEN LLP**
100 Park Avenue, Suite 1600
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff
*Droplets, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| DROPLETS, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>YAHOO!, INC.,<br><br>  Defendant. | Case No. 12-cv-03733-JST<br><br>**PLAINTIFF DROPLETS, INC.'S OPPOSITION TO DEFENDANT YAHOO!, INC.'S MOTION TO SUBSTITUTE PARTIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**HEARING:**<br><br>Date:  June 20, 2019<br>Time:  2:00 p.m.<br>Place:  Courtroom 9, 19th Floor<br>Judge:  Hon. Jon S. Tigar |

Case No. 12-cv-03733-JST                             DROPLETS' OPP. TO MOT. TO SUBSTITUTE

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTS .................................................................................................................................1

ARGUMENT ........................................................................................................................4

    I.    THE PROPOSED SUBSTITUTION FUNDAMENTALLY ALTERS DROPLETS' SUBSTANTIVE RIGHTS. ..................................................................6

    II.    YAHOO'S CASES ARE INAPPLICABLE. ..............................................................9

    III.    WHILE BESIDE THE POINT, YAHOO HAS NOT EVEN PROVEN THE WEBSITES WERE TRANSFERRED TO OATH. ......................................................9

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

Cases ............................................................................................................................Page(s)

*AlmondNet, Inc. v. Oath Holdings, Inc.*,
   No. 1:19-cv-00247-LSP, Dkt. No. 133 (D. Del. Feb. 25, 2019)..............................................9

*Beatrice Co. v. State Bd. of Equalization*,
   6 Cal. 4th 767 .........................................................................................................................8

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987) ...............................................................................................................4

*In re Chalasani*,
   92 F.3d 1300 (2d Cir. 1996).............................................................................................5, 10

*Ed. Credit Mgm't Corp. v. Bernal (In re Bernal)*,
   207 F.3d 595 (9th Cir. 2000) .................................................................................................6

*ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*,
   53 F.3d 186 (8th Cir. 1995) ...................................................................................................6

*Fashion G5 LLC v. Anstalt*,
   No. 14-cv-5719-GHW, 2016 WL 7009043 (S.D.N.Y. Nov. 29, 2016)...............................5, 6

*Flynn v. Hubbard*,
   782 F.2d 1084 (1st Cir. 1986) ................................................................................................5

*Hart v. Baca*,
   No. CV0101866 DDP (SHX), 2002 WL 368529 (C.D. Cal. Feb. 26, 2002) .........................5

*Husak v. Berkel, Inc.*,
   234 Pa. Super. 452 (1975).......................................................................................................8

*Hypermedia Navigations LLC v. Yahoo!, Inc.*,
   No. 4:17-cv-03188-HSG, Dkt. No. 62 (N.D. Cal. July 12, 2017) ..........................................9

*MyMail, LTD., v. Yahoo! Inc.*,
   No. 2:16-cv-01000-JRG-RSP, Dkt. No. 101 (E.D. Tex. July 12, 2017) ................................9

*In re Papst Licensing GmbH Patent Litig.*,
   No. 99-MD-1298, 2001 WL 725355 (E.D. La. June 22, 2001)..........................................4, 5

*Paradigm Precision Holdings, Ltd. Liab. Co. v. Prospect Mfg.*,
   No. 08-CV-00573-PHX-FJM, 2008 WL 4368928 (D. Ariz. Sep. 24, 2008).........................8

*Potvin v. Speedway LLC*,
   891 F.3d 410 (1st Cir. 2018)...................................................................................................5

*Pro-Com Prod., Inc. v. Kings Express LA, Inc.*,
    No. CV 18-6035 DMG (SKX), 2018 WL 5291928 (C.D. Cal. Oct. 22, 2018)..............................4

*Product Association Technologies, LLC v. Yahoo! Inc.*,
    No. 2:17-cv-00272-JRG, Dkt. No. 40 (E.D. Tex. July 19, 2017).......................................9

*PW Stoelting, L.L.C. v. Levine*,
    No. 16-C-381, 2018 WL 6603874 (E.D. Wis. Dec. 17, 2018) ........................................6

*Reibman v. Renesas Elecs. Am., Inc.*,
    No. 11-CV-03847-JCS, 2014 WL 251955, at *6 (N.D. Cal. Jan. 7, 2014) ..................................6

*Roxanne Labs, Inc. v. Abbott Labs*,
    Civ. No. 2:12-cv-312, 2012 WL 5511138 (S.D. Ohio Nov. 14, 2012) ............................................5

*Trend Micro Corp. v. Whitecell Software, Inc.*,
    No. C 10-02248 WHA, 2010 WL 4722504 (N.D. Cal. Nov. 15, 2010) ..........................................9

*Walsh v. Defs., Inc.*,
    894 F.3d 583 (3d Cir. 2018)................................................................8

*William Wrigley, Jr. Co. v. Waters*,
    1987 WL 123988 (S.D.N.Y. Dec. 16, 1987) ................................................................8

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*,
    No. 10CV541-GPC WVG, 2014 WL 5606088 (S.D. Cal. Nov. 4, 2014) ........................................9

**Statutes**

35 U.S.C. § 271(a) ..................................................................................2

**Other Authorities**

9 Corbin on Contracts § 49.6 (2018) ........................................................................8

Kling & Nugent, Negotiated Acquisitions of Companies Subsidiaries and Divisions
    § 15.01..........................................................................................7

Plaintiff Droplets, Inc. ("Droplets") hereby files this Opposition to the Motion to Substitute Parties filed by Defendant Yahoo!, Inc. ("Yahoo").[1] *See* Dkt. 327 (the "Motion to Substitute").

## INTRODUCTION

A motion to substitute cannot be used to alter the substantive rights of the parties. Under the guise of a Motion to Substitute, Yahoo seeks to replace the party Droplets chose to sue (Yahoo) with a party that allegedly is judgment-proof (Oath). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Yahoo's Motion to Substitute blithely ignores the applicable facts and law, passing off its motion as simply an administrative change in parties. The facts are that Yahoo claims it transferred away liability for patent infringement to Oath. ████████████████████████████████████████████████████████████████████████████████████████████ The law is that a party may not unilaterally transfer away liability, thereby immunizing itself from suit without permission of the other party (Droplets).

It is well-established that a plaintiff is "master of its complaint." Rule 25(c) exists for administrative convenience to facilitate litigation, not to make substantive changes to a case that prejudice the plaintiff and deny it the right to choose the party to sue. It is not a backdoor path to dismissal when the standards for summary judgment are not met.

Accordingly, Droplets respectfully requests that the Court deny Yahoo's Motion to Substitute.

## FACTS

Droplets sued Yahoo on September 7, 2011 for infringement of two patents, U.S. Patent No. 6,687,745 ("the '745 patent") and U.S. Patent No. 7,502,838 ("the '838 patent"). In light of an *inter partes* reexamination ("IPR") of the '838 patent, the Court stayed this case from 2013 until the IPR

---

[1] The Motion to Substitute also purports to be filed on behalf of Oath, Inc. and Oath Holdings Inc. (collectively, "Oath"). *See* Dkt. 327 at 3. Oath, Inc. and Oath Holdings Inc. are not parties to this case, and therefore Yahoo objects to their filing of motions.

and related appeals concluded. The stay was lifted on October 31, 2018. Seven months later, on May 2, 2019, Yahoo filed both a Motion for Summary Judgment (Dkt. 329) and the Motion to Substitute (Dkt. 327).

Yahoo's Motion to Substitute is based upon a series of transfers of the infringing websites. The websites were initially owned and operated by Yahoo. Droplets has sued Yahoo for infringement of the '745 patent based on the time period in which Yahoo committed acts of infringement.[2] Yahoo claims that, through a series of transactions, it transferred certain assets to Oath. It claims that among those assets was the yahoo.com website (and related websites) as well as liability for infringement of Droplets' patent.

Specifically, in 2016, Yahoo and its wholly owned subsidiary Yahoo Holdings, Inc. ("Yahoo Holdings") entered into a Reorganization Agreement. Thane Decl. (Dkt. 327-2), Ex. 1. Through that agreement, Yahoo agreed to transfer certain assets to Yahoo Holdings at a future closing date. *Id.*, § 1.1. Significant assets were not part of the sale to Yahoo Holdings, including cash, stock, and equity of Alibaba Group Holdings Limited, Aabaco Holdings Hong Kong Limited, and Yahoo Japan Corporation, among other investments and stock. *Id.*, § 1.2. According to press and public Yahoo filings, these retained assets were substantial. For example, Yahoo stated that the transfer represented only 6% of the total value of Yahoo's assets at the time of transfer. Decl. of Phillip Lee ("Lee Decl."), Ex. A at 1. Yahoo retained assets valued at in excess of $74 billion. *Id.*

Yahoo then apparently transferred Yahoo Holdings to Verizon Communications Inc. ("Verizon").[3] According to Yahoo's public SEC filings, Yahoo and Verizon entered into a Stock Purchase Agreement in July 2016, whereby Verizon agreed to purchase Yahoo Holdings for $4.8 billion. Lee Decl., Ex. C. According to Yahoo's SEC filings, the Reorganization Agreement and Stock Purchase Agreement were each amended on February 20, 2017. Lee Decl., Exs. D, E.[4]

---

[2]  It is an act of infringement to make, use, sell, offer to sell, or import an invention covered by the claims of a patent without the authority of the patentee. 35 U.S.C. § 271(a).

[3]  In conjunction with its Motion to Substitute or in discovery, Yahoo did not submit the Stock Purchase Agreement under which Yahoo Holdings was to become a subsidiary of Verizon, or the amendments to the Reorganization Agreement or Stock Purchase Agreement.

[4]  Yahoo ultimately changed its name to Altaba, Inc., apparently.

The below graphic illustrates the substance of these complex transactions:



While certain news articles and public filings suggest that the contemplated transfer of certain assets from Yahoo to Yahoo Holdings took place on or about June 13, 2017, Yahoo has not produced or provided the Bill of Sale, Assignment and Assumption Agreement, or other contractual closing documents contemplated by Section 2.2 of the Reorganization Agreement and has not produced or provided evidence of the date in which Yahoo ceased operations of the accused websites. Lee Decl., ¶ 8.



On January 1, 2018, Yahoo Holdings changed its name to Oath Holdings Inc.

Although Droplets has named only Yahoo as a defendant, Yahoo has boldly proceeded as though Oath, and not Yahoo, were the defendant in this case. For example, lawyers for Oath filed several motions and other papers in this case purporting to be on behalf of Yahoo[5] and purported to

---

[5] *See, e.g.*, Dkt. 313, 315, and 317. Indeed, Dkt. 317 was filed by Yahoo's current counsel on behalf of Yahoo the day after such counsel told Droplets' counsel that it represented Oath but not Yahoo. Lee Decl., ¶ 12; Lee Decl., Ex. G.

conduct several "meet and confers" on behalf of Yahoo, when in fact those lawyers did not represent Yahoo and had not notified the Court or Droplets of such. Lee Decl., ¶¶ 9-11; Lee Decl., Ex. G. When this came to Droplets' attention, Droplets objected and insisted on meeting and conferring with Yahoo, the party to the case, and not Oath. Lee Decl., ¶ 14, Lee Decl., Exs. H, I. It was not until hours before the filing of the Joint CMC that Yahoo's present counsel stated that it had then begun representing Yahoo in addition to Oath. *Id.*

## ARGUMENT

A plaintiff has the right to choose who to sue. As "master of its Complaint," a plaintiff may choose the claims it wishes to bring and the parties against whom it wishes to bring those claims. *Pro-Com Prod., Inc. v. Kings Express LA, Inc.*, No. CV 18-6035 DMG (SKX), 2018 WL 5291928, at *6 (C.D. Cal. Oct. 22, 2018); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Substitution cannot be used to force the plaintiff to sue a different potential defendant. For example, in *In re Papst Licensing GmbH Patent Litig.*, No. 99-MD-1298, 2001 WL 725355, at *2 (E.D. La. June 22, 2001), the court concluded that substitution was inappropriate where a co-defendant sold all assets and liabilities relevant to the lawsuit to another co-defendant and therefore sought to be removed from the case. The court held that a defendant cannot file a motion to substitute to avoid the burdens of moving for summary judgment: the plaintiff "chose to sue [the moving co-defendant] and will be permitted to continue to assert its claims unless and until [the moving co-defendant] proves, through a motion for summary judgment or at trial, that it cannot be liable to [the plaintiff] and should be dismissed because only [the alleged successor-in-interest co-defendant] can be liable." *Id*. The court reasoned that its "discretion will not be exercised as a substitute for dispositive dismissal of [the plaintiff's] claims against [the moving co-defendant]." *Id.*; *see also Hart v. Baca*, No. CV0101866 DDP (SHX), 2002 WL 368529, at *2 (C.D. Cal. Feb. 26, 2002) ("It is axiomatic, however, that the plaintiff is master of his complaint. . . .The defendant provides no compelling reason why the Court should override the plaintiff's choice of defendant and substitute [a different party]. Absent any Ninth Circuit authority to the contrary, the Court denies the defendant's request to formally substitute" defendants).

Case No. 12-cv-03733-JST        DROPLETS' OPP. TO MOT. TO SUBSTITUTE

Similarly, in *Flynn v. Hubbard*, 782 F.2d 1084 (1st Cir. 1986), the defendant did not appear, and related parties attempted to intervene such that they would functionally be substituted. The First Circuit rejected that attempt to change the defendant without the plaintiff's consent:

> What [the proposed intervenors] really seek here is not intervention, but to be substituted as defendants for the defendant plaintiff chose to sue. There can be no question that plaintiff has stated a cause of action against the defendant. Plaintiff could have sued [the proposed intervenors] but deliberately decided not to do so. If we were to allow intervention, despite defendant's failure to appear, we would be forcing our choice of defendants on plaintiff. We see no reason why, in a tort action, the plaintiff's choice of defendant should be nullified by substituting under the guise of intervention different joint tort-feasors than the one against whom the suit was brought.

*Id.* at 1088-89.

Substitution should facilitate the litigation, not alter the substantive rights of the parties. *See, e.g.*, *In re Chalasani*, 92 F.3d 1300, 1312-13 (2d Cir. 1996) (reversing a substitution of parties that would have altered the relationships between and rights of the parties); *Fashion G5 LLC v. Anstalt*, No. 14-cv-5719-GHW, 2016 WL 7009043, at *3 (S.D.N.Y. Nov. 29, 2016) ("Rule 25(c) provides a device for the continuation of an action against a successor-in-interest where doing so would not affect the substantive rights of the parties."); *Potvin v. Speedway LLC*, 891 F.3d 410, 416-17 (1st Cir. 2018) (substituting in a judgment-proof party would be prejudicial to the plaintiff); *Roxanne Labs, Inc. v. Abbott Labs,* Civ. No. 2:12-cv-312, 2012 WL 5511138, at *7 (S.D. Ohio Nov. 14, 2012) (ordering joinder instead of substitution because it was unclear whether the purported successor had assumed attorney fee obligations). In exercising its discretion with respect to a Rule 25(c) motion, the Court "tak[es] into account all the exigencies of the situation," including—most importantly here—the effects on the plaintiff's rights. *See Reibman v. Renesas Elecs. Am., Inc.*, No. 11-CV-03847-JCS, 2014 WL 251955, at *6 (N.D. Cal. Jan. 7, 2014). When a "technical 'substitution' of a party" has "the practical effect" of dismissal, "leaving Plaintiff without recourse for [the existing defendant's] alleged prior breaches," substitution is inappropriate. *Fashion G5*, 2016 WL 7009043, at *3. A ruling on a substitution motion should not leave as the only defendant a party against whom the plaintiff has no claim. *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995).

1  Instead, substitution is appropriate only when it is a "sheer[] technicality" that "will not change
2  the substantive rights of the parties." *PW Stoelting, L.L.C. v. Levine*, No. 16-C-381, 2018 WL
3  6603874, at *3 (E.D. Wis. Dec. 17, 2018) (citation omitted). At bottom, Rule 25(c) is a procedural
4  device to keep litigation running smoothly when a transfer of interest occurs. It "is not designed to
5  create new relationships among the parties to a suit but is designed to allow the action to continue
6  unabated when an interest in the lawsuit changes hands." *Ed. Credit Mgm't Corp. v. Bernal (In re*
7  *Bernal)*, 207 F.3d 595, 598 (9th Cir. 2000) (citation omitted).

### I. THE PROPOSED SUBSTITUTION FUNDAMENTALLY ALTERS DROPLETS' SUBSTANTIVE RIGHTS.

Droplets sued Yahoo. It did not sue Verizon, Oath, or any other party. It is only claiming damages for infringement during the time in which Yahoo committed acts of infringement. It is not asserting a claim for patent infringement for operation of the websites in question by any party other than Yahoo.[6] ███████████████████████████████████████████████ This motion attempts to dismiss Yahoo—a valid defendant—and replace it with a defendant that, according to Yahoo, is judgment-proof, thereby shielding Yahoo's substantial assets from judgment.

Oath is not offering to assume Yahoo's liabilities. Instead, it asserts a total defense to those liabilities—a defense that is not available to Yahoo.[7] ███████████████████████████

---

[6] Thus, if at some point the websites were no longer being operated by Yahoo, as Yahoo asserts, Droplets is not claiming infringement or damages based on that subsequent operation of the websites. Droplets only claims infringement and damages for Yahoo's operation of the infringing websites.

[7] ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████

To be clear, Oath did not acquire Yahoo—it only acquired a small subset of Yahoo's assets. Yahoo retained more than 90% of its assets after the transfer of the websites at issue in this case, worth billions of dollars.[8]  Lee Decl., Ex. A.

Yahoo alleges that it transferred away its liability for infringement to Verizon and Oath.  As explained in Droplet's Opposition to the Motion for Summary Judgment, it is black letter law that liability cannot be assigned without consent of the party to whom the liability is owed.  "Transferring a liability does not relieve the transferor of liability unless the party to whom the transferor is liable has agreed to a release.  The transfer merely renders the transferee responsible as well."  Kling & Nugent, Negotiated Acquisitions of Companies Subsidiaries and Divisions § 15.01.  Parties can assign their rights at will, but they cannot transfer duties and thereby evade their own liabilities:

> Many a debtor wishes that [assigning a duty] could get rid of his debts. Any debtor can express such an intention, but it is not operative to produce such a hoped-for result. It does not cause society to relax its compulsion against him and direct it toward the assignee as his substitute. In spite of such a delegation, the debtor's duty remains. If a party assigns his right and delegates his duty under a contract, he no longer has any right, but he remains liable as a surety for the performance of the duty.

9 Corbin on Contracts § 49.6 (2018).  It is well-established that a defendant cannot take liabilities it may owe to a plaintiff, assign them to a third party, and thereby avoid litigation.  A "contract of sale" that purports to assign "unpaid debts and liabilities" of the acquired company to the acquirer "does not affect plaintiff's right to recover." *William Wrigley, Jr. Co. v. Waters*, 1987 WL 123988, at *5 (S.D.N.Y. Dec. 16, 1987); *see also Husak v. Berkel, Inc.*, 234 Pa. Super. 452, 462-63 (1975) (noting that "although a person or organization can indemnify itself by agreement with another party against damages arising from its actions, it still remains liable to the injured person. The plaintiff's action is considered apart from the agreement between the transferor and transferee of liability."); *Paradigm*

---

[8] Yahoo recently announced an intent to wind down but to reserve assets for liabilities. If dismissed through this Motion to Substitute, Yahoo might liquidate without reserving assets that Droplets could collect if a substitution order is later reversed on appeal.  *See* Lee Decl., ¶ 20.

*Precision Holdings, Ltd. Liab. Co. v. Prospect Mfg.*, No. 08-CV-00573-PHX-FJM, 2008 WL 4368928, at *2 (D. Ariz. Sep. 24, 2008) ("A party to a contract does not avoid contract obligations by simply assigning that contract. An assignment does not discharge[] any duty or liability of the delegating obligor unless agreed to by the obligee"); *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767, 774 (finding that even after transferring "all the division's assets and liabilities," the defendant remained principally and jointly liable to its creditors on the transferred liabilities as none of the creditors agreed to substitution of the subsidiary as the party liable for the debts"); *Walsh v. Defs., Inc.*, 894 F.3d 583, 590 (3d Cir. 2018) (a "transfer of assets and liabilities . . . could not discharge [plaintiff's] claim against [the transferor] unless he consented to the transfer and the discharge").

That rule makes sense, because otherwise anyone could eliminate liability by transferring it to a judgment-proof entity. It cannot be possible for corporations to transfer encumbered assets to shell subsidiaries while maintaining all their valuable assets in a corporate parent, and thereby avoid all liability related to the transferred assets. Such a result would obviate patent law; any infringer could simply assign liability for infringing products to a judgment-proof entity. Similarly, bankruptcy law would be essentially meaningless if a bankrupt entity could create a subsidiary with no assets and assign it all its liabilities. It is a fundamental principle that a party cannot release itself through an assignment without the consent of the counterparty.

Accordingly, Yahoo could not have transferred its liabilities away. This law is clear, but in all events need not even be addressed in this Motion to Substitute. The fact is that Droplets chose to sue Yahoo. Yahoo's defense that it sold its liabilities can be taken up in connection with a properly-filed summary judgment motion.[9]

---

[9] It bears noting that the proposed substitution also may affect subject matter jurisdiction. Droplets has not sued or threatened to sue Verizon or Oath, and therefore there is "no controversy 'of sufficient immediacy and reality'" to give rise to a case or controversy after a proposed substitution. *Trend Micro Corp. v. Whitecell Software, Inc.*, No. C 10-02248 WHA, 2010 WL 4722504, at *3 (N.D. Cal. Nov. 15, 2010). Before granting a motion to substitute, the court "must still ensure that an 'actual controversy' remains to be adjudicated and an advisory opinion is not rendered." *Id.*

## II. YAHOO'S CASES ARE INAPPLICABLE.

None of the cases cited by Yahoo supports the proposition that a party can be substituted for the defendant when it affects the plaintiff's substantive rights. In most of cases cited by Yahoo, the plaintiffs agreed to or even sought the substitution. *See, e.g.*, *AlmondNet, Inc. v. Oath Holdings, Inc.*, No. 1:19-cv-00247-LSP, Dkt. No. 133 (D. Del. Feb. 25, 2019); *Hypermedia Navigations LLC v. Yahoo!, Inc.*, No. 4:17-cv-03188-HSG, Dkt. No. 62 (N.D. Cal. July 12, 2017); *MyMail, LTD., v. Yahoo! Inc.*, No. 2:16-cv-01000-JRG-RSP, Dkt. No. 101 (E.D. Tex. July 12, 2017); *Product Association Technologies, LLC v. Yahoo! Inc.*, No. 2:17-cv-00272-JRG, Dkt. No. 40 (E.D. Tex. July 19, 2017).

Yahoo cites only one case where the substitution was not consensual. In that case, the *plaintiff* sought to add a successor-in-interest over the *defendant's* objection. *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, No. 10CV541-GPC WVG, 2014 WL 5606088, at *4 (S.D. Cal. Nov. 4, 2014). There was no dispute over whether the added party was a true successor, and the new defendant was *added* rather than *replacing* the existing defendant. In short, there was no question of prejudice to the plaintiff, and no substantive change to the plaintiff's claim.

## III. WHILE BESIDE THE POINT, YAHOO HAS NOT EVEN PROVEN THE WEBSITES WERE TRANSFERRED TO OATH.

Because substitution is improper regardless of whether Yahoo transferred the websites in question or allegedly transferred its liability for infringement, its Motion to Substitute should be dismissed.

But in any event, Yahoo also has not met its burden of demonstrating that Oath even acquired the websites at issue in this case. Yahoo attaches an agreement that transferred assets between Yahoo Holdings, Inc. and Oath, Inc. *See* Thane Decl. (Dkt. 327.3), Ex. 2. However, the agreement defines the transferred assets (and related assumed liabilities) in schedules not included in the evidence. *Id.* §§ 1.2, 1.7-1.9, 1.17-1.18. Without those schedules, Yahoo has introduced no evidence to show that the websites at issue in this case were transferred through that agreement.

Moreover, Yahoo Holdings was separately renamed Oath Holdings, Inc. *See* Thane Decl. (Dkt. 327.4), Ex. 3. It is unclear what, if any, assets Yahoo Holdings owned at the time of the renaming. Yahoo moves to substitute both Oath Holdings Inc. and Oath, Inc. without distinguishing between them. But they are separate entities, and Yahoo has not proven which Oath entity allegedly assumed what liabilities and purchased what assets. Yahoo has thus not met its burden to warrant substitution. *See, e.g.*, *In re Chalasani*, 92 F.3d at 1312-13 (reversing a substitution of parties where there was not a proper transfer of interest).

## CONCLUSION

Accordingly, Droplets respectfully requests that the Court deny Yahoo's Motion to Substitute.

Dated: May 16, 2019

Respectfully submitted,

REICHMAN JORGENSEN LLP

*/s/ Courtland L. Reichman*
Courtland L. Reichman (CA Bar No. 268873)
creichman@reichmanjorgensen.com
Phillip J. Lee (CA Bar No. 263063)
plee@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
mflanigan@reichmanjorgensen.com
Reichman Jorgensen LLP
303 Twin Dolphin Drive, Suite 600
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Jaime F. Cardenas-Navia (a*dmitted pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Park Avenue, Suite 1600
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff
*Droplets, Inc.*

Case No. 12-cv-03733-JST                          DROPLETS' OPP. TO MOT. TO SUBSTITUTE