Jennifer Haltom Doan
(admitted *pro hac vice*)
Joshua R. Thane
(admitted *pro hac vice*)
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com

William A. Hector (SBN 298490)
WAHector@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA  94111
Telephone: (415) 653-3750
Facsimile:  (415) 653-3755

**ATTORNEYS FOR DEFENDANT YAHOO!, INC.**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DROPLETS, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>YAHOO!, INC.,<br><br>          Defendant. | Case No. 12-cv-03733-JST<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUBSTITUTE PARTIES AND AMEND CAPTION**<br><br>**HEARING:**<br><br>Date:   June 20, 2019<br>Time:   2:00 p.m.<br>Place:  Courtroom 9 – 19th Floor<br>Judge:  Hon. Jon S. Tigar |

## I.  INTRODUCTION

Like its response to the Motion for Summary Judgment Based on License Agreement [Dkt. No. 329], Droplets' Response here is grounded in flawed premises: (1) that Yahoo, Inc. (now known as Altaba, Inc.) ("Yahoo" or "Altaba") could not legally transfer its operating assets and related liabilities via a $4.4B stock purchase by Verizon Communications—a company with an estimated $240B market cap[1], and (2) that Droplets' has not already received compensation for the alleged infringement by the Accused Products ▮▮▮▮▮▮▮▮▮▮.  Substituting Oath, Inc. and Oath Holdings Inc. (collectively the "Oath Entities") will not alter Droplets' substantive rights, because the Oath Entities and their parent Verizon Communications are more than capable of satisfying any judgment in this action, and have agreed to do so.  Moreover, Droplets has already received compensation from RPX for any infringement by the Accused Products.  Refusing to substitute the Oath Entities—owners of all assets and patent infringement liabilities related to the Accused Products, however, will cause substantial harm to Altaba and to the Oath Entities.  The interest in this suit has changed hands, and the Oath Entities should be substituted in order to defend the Accused Products they own and control, should the case survive summary judgment.

## II.  ARGUMENT

### A. All Assets and Liabilities Related to the Accused Products were Properly Sold.

It is an uncontroverted fact that Yahoo! Inc. sold its entire operating business, including all assets and liabilities for patent infringement, to Verizon Communications.  *See* Parry Decl. ¶¶ 5 and 6[2]; Thane Decl., Ex. 2 [Reorganization Agreement by and between Yahoo! Inc. and Yahoo Holdings, Inc.]; Thane Supp. Decl., Ex. 1 [Stock Purchase Agreement by and among Yahoo! Inc.

---

[1] https://finance.yahoo.com/quote/VZ/

[2] References to the Parry Decl. refer to Dkt. No. 327-6.

and Verizon Communications, Inc.]. Altaba does not own or control any of the assets or liabilities of the Accused Products. Perry Decl. at ¶ 7-8. In a series of transactions that were part of the Verizon Communications acquisition, Yahoo transferred its entire operating business, including all liabilities relevant to this case, via a $4.4B sale, to Verizon Communications. *See* Thane Decl. ¶ 3, Ex. 2 [Reorganization Agreement by and between Yahoo! Inc. and Yahoo Holdings, Inc.] at Sections 1.1 & 1.3; Thane Supp. Decl., Ex. 1 [Stock Purchase Agreement by and among Yahoo! Inc. and Verizon Communications, Inc.]. As part of the Stock Purchase Agreement, Verizon Communications purchased "all issued and outstanding shares of common stock" of Yahoo! Holdings, Inc., assuming all the liabilities of the Transferred Assets[3]. Thane Supp. Decl., Ex. 1 at p. 1, 2, and 84 [Stock Purchase Agreement by and among Yahoo! Inc. and Verizon Communications, Inc.]. The Stock Purchase Agreement also incorporates the Reorganization Agreement, whereby Yahoo Holdings, Inc. acquired all Transferred Assets and assumed the liabilities[4] related thereto:

> Section 1.3   Assumed Liabilities. At the Closing, on the terms and subject to the conditions set forth in this Agreement, ==the Company shall, effective as of the Closing, assume and shall agree to satisfy, pay, perform and discharge when due all of the Liabilities of Seller== other than the Retained Liabilities (collectively, the "Assumed Liabilities"). Without limiting the foregoing, "Assumed Liabilities" includes:

---

[3] *See* Section 1.1 of the Reorganization Agreement.

[4] *See, e.g.*, *Funai Elec. Co. v. Daewoo Elecs. Corp.*, No. C-04-01830 JCS, 2008 WL 8969091, at *7 (N.D. Cal. July 22, 2008) (citing *Ray v. Alad Corp.*, 560 P.2d 3 (1977) ("First, the Court looks to the law of California regarding successor liability. Under California law, a corporation that purchases the assets of another corporation does not generally assume the other's liabilities unless one of the following exceptions applies: (1) ***there is an express or implied agreement of assumption***, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.") (emphasis added)

> (a) all Liabilities to the extent resulting from, related to, arising out of, imposed under or pursuant to the conduct of the Business or the Transferred Assets, whether arising from or related to any period prior to, on, or after the Closing, including Liabilities for infringement claims, service obligations and obligations under warranty and other claims to the extent relating to, arising from or incurred in connection with the conduct of the Business or the Transferred Assets;

████████████████

████████████ Thane Supp. Decl., Ex. 2 [Bill of Sale at ¶ 1] and Ex. 3 [Assignment & Assumption Agreement at ¶ 1].

Droplets attempts to manufacture a dispute by questioning the Schedules to the Reorganization Agreement. As is noticeable from the Reorganization Agreement itself, however, the Schedules are immaterial to whether the Accused Products, including all assets and liabilities related to this patent infringement matter, were transferred to Verizon Communications. Specifically, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Thane Supp. Decl., Ex. 4 [Schedules related to the Reorganization Agreement by and between Yahoo! Inc. and Yahoo Holdings, Inc.]. The Schedules do not change the uncontroverted fact that Yahoo transferred all

---

[5] While immaterial to the Motion, Droplets argues that Yahoo should have retained all information that might be relevant to this lawsuit, including source code and other technical documents related to the Accused Products. It defies logic that an Internet web company, whose crown jewel is source code, would be permitted to retain source code for the Accused Products following a $4.4B purchase. Yahoo informed Droplets repeatedly that information relevant to the Accused Products was properly transferred to the Oath Entities as part of the Verizon acquisition and is being preserved by the Oath Entities. Droplets, however, refuses to acknowledge that the Oath Entities possess the information or the legitimacy of the transfer.

assets and liabilities for potential patent infringement by the Accused Products to Verizon Communications.

Droplets strings together out-of-context snippets from secondary sources and inapposite case law with the hope of avoiding the realities of the Verizon acquisition. Response at 7-8. Droplets' snippets, however, do not match the facts at issue. The treaties and cases are focused on the ability to transfer known liabilities related to existing duties: Kling & Nugent, Negotiating Acquisitions of Companies Subsidiaries and Divisions § 15.01, n.12 (citing in support an Oregon case disputing the ability under Oregon law to assign existing and known debts owed under a contract); Corbin on Contracts § 49.6 ("If a party assigns his right and *delegates his duty under a contract*, he no longer has any right, but he remains liable as a surety for the performance of the duty.") (emphasis added); *Williams Wrigley, Jr. Co. v. Waters*, 1987 WL 123988, at *5 (S.D.N.Y. Dec. 16, 1987), aff'd in part, rev'd in part, 890 F.2d 594 (2d Cir. 1989) (disputing the ability under New York law to assign existing and known debts owed under a contract); *Hasak v. Berkel, Inc.*, 234 Pa. Super 452 (1975) (disputing the ability under Pennsylvania whether (1) the contractual clause contained sufficient precision to meet the standards required to relieve the predecessor of liability, and (2) whether a party with an existing and known duty to another can contract away the liability); *Paradigm Precision Holdings, Ltd., Liab. Co. v. Prospect Mfg.*, No. 08-CV-00573-PHX-FJM, 2008 WL 4368928, at *2 (D. Ariz. Sep. 24, 2008) (disputing the ability under Arizona law to assign existing and known debts owed under a contract); *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767, 863 P.2d 683, 686 (1993) (disputing the tax consequences of an assignment of liabilities when the agreement specifically excepted "any arising out of a contract which could not be assigned or transferred without consent or authorization . . . ."); *Walsh v. Defs., Inc.*, 894 F.3d 583 (3d Cir. 2018) (disputing the ability under Delaware law to assign existing and known contractual duties). Droplets does not, because it cannot, cite any controlling authority that

1  precludes a corporation from transferring potential future liabilities via an assignment.

2  Moreover, Droplets' position makes little real-world sense. For example, in the Verizon

3  acquisition alone, Yahoo identified over ███████████████████████████████

4  ███████ *See* Thane Supp. Decl., Ex. 5 [Disclosure of Schedules to the Stock Purchase Agreement

5  by and among Yahoo! Inc. and Verizon Communications Inc.] ██████████ Under Droplets'

6  theory, Yahoo would have needed approval from all of these entities to move forward selling to

7  Verizon. That is, under Droplets' theory, a single entity, no matter how minuscule the potential

8  future claim, could have stopped the $4.4B merger.

9  

10  The evidence demonstrates that Yahoo sold the Accused Products to the Oath Entities and

11  that the Oath Entities own all assets and liability for patent infringement related to this case. As

12  the owners of the Accused Products, including past liability for patent infringement, the Oath

13  Entities, not Droplets, will be harmed if the Court refuses to substitute in the real-party-in-interest.

**B. Droplets' Substantive Rights Will Not be Altered**

16  There can be no doubt that Verizon Communications, with an estimated $240B market cap,

17  is capable of satisfying any judgment for the alleged patent infringement by the Accused Products.

18  Indeed, Verizon Communications' market cap is nearly six times that of Altaba. Further, as

19  Droplets knows, Verizon Communications, as the owner of all patent infringement liabilities

20  related to the Accused Products, has agreed to indemnify Altaba for any judgment that might come

21  from this case. These facts render inapposite the non-binding case law cited in Droplets' Response

22  [Dkt. No. 333].

24  Under these circumstances, it is the Oath Entities, not Droplets, whose substantive rights

25  are harmed if they are not substituted in this case. Altaba no longer possesses the information or

26  employees that would allow it to prove non-infringement, like the Court found in *Droplets, Inc. v.*

27  *E\*TRADE Financial Corporation, et al.*, No. 1:12-cv-02326-CM, 2015 WL 1062670, at \*22

(S.D.N.Y. Mar. 9, 2015) (granting summary judgment of non-infringement of the '745 Patent in its entirety). Rather, the Oath Entities, as the owners of Accused Products, possess the relevant information.

Further, contrary to Droplets' feigned assertions, Verizon Communications is not a ghost company, shell company or judgment-proof entity; nor was the sale concocted to avoid a potential future liability to Droplets. Yahoo Holdings' sale to Verizon Communications was the acquisition of one of the Internet's top web properties by a Fortune 50 company. The legal transfer of assets and liabilities to Verizon Communications did not void any potential future liability to Droplets that may arise from the Accused Products. Rather, ███████████████████████ ██████████

## III.   CONCLUSION

Altaba does not own the assets and liabilities related to Droplets' patent infringement allegations against the Accused Products—the Oath Entities do. The Oath Entities, and their parent company, Verizon Communications, are more than capable of satisfying any judgment that might arise from this case, and have agreed to do so. In order to protect the Oath Entities interest in the products and services that they own, they should be substituted in place of Yahoo.

DATED: May 30, 2019                                   Respectfully submitted,

                                                                         /s/ *William A. Hector*
                                                                        William A. Hector

                                                                        *Attorneys for Defendant Yahoo!, Inc.; Oath Holdings Inc.; and Oath, Inc.*

---

[6] *See* Dkt. No. 392-1, Thane Decl., at Ex. 1.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this day, May 30, 2019, the following documents were served electronically, via ECF, on all counsel of record registered to receive ECF notifications in this case.

/s/ *William A. Hector*
William A. Hector