Jennifer Haltom Doan
(admitted *pro hac vice*)
Joshua R. Thane
(admitted *pro hac vice*)
J. Randy Roeser
(admitted pro hac vice)
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

William A. Hector (SBN 298490)
WAHector@Venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

**ATTORNEYS FOR DEFENDANT
YAHOO!, INC. (n/k/a ALTABA, INC.)**

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> YAHOO!, INC. <br><br> Defendant. | Civil Action No. 12-cv-03733-JST <br><br> **DEFENDANTS' MOTION TO STRIKE DROPLETS, INC.'S THIRD AMENDED INFRINGEMENT CONTENTIONS** <br><br> Date: January 29, 2020 <br> Time: 2:00 p.m. <br> Ctrm.: 6, 2nd Floor <br> Hon. Jon S. Tigar |
| OATH INC. AND OATH HOLDINGS, INC. <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> DROPLETS, INC., <br><br> Intervenor-Defendant. | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. Patent At Issue ...........................................................................................2

    B. History of the Dispute ................................................................................2

III. ARGUMENT ..........................................................................................................5

    A. Droplets Must Identify "Specifically Where and How" Each Limitation of Each Asserted Claim is Found Within Each Accused Instrumentality.................................................................................5

    B. Any Interactive Link Has Long Been in Droplets' Possession...........................8

    C. After Four Tries, Droplets Has Still Not Articulated A Proper Theory as to the Accused Interactive Link ......................................................9

        1. Droplets' Identification of the Interactive Link as "Files That Contain the Embedded Code" Remains Insufficient .......................................................................................11

        2. Droplets Fails to Articulate Where and How the Accused Interactive Link is "Selected." ...................................................12

        3. Droplets Fails to Articulate Where and How the Accused Interactive Link "Includes Facilities for Restoring Previous Operating States of the Application as the Application is Re-presented at a User's Computer." ...............................................................................12

        4. Droplets Fails to Disclose a Proper Theory Regarding Storing the Interactive Link ...................................................................13

        5. Droplets' Identification of the Interactive Link is Internally Inconsistent. ....................................................................13

    D. Droplets' Assertion of the Doctrine of Equivalents is Deficient ......................14

    E. The Third Amended Infringement Contentions Repeatedly Reference a Mysterious "Search History" .........................................................15

    F. This Motion is Procedurally Proper ..............................................................16

IV. CONCLUSION .....................................................................................................16

# TABLE OF AUTHORITIES

Page

**Cases**

*Bender v. Advanced Micro Devices, Inc.*,
    No. C-09-1149 MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) .......................... 6

*Digital Reg of Texas, LLC v. Adobe Systems Inc.*,
    No. CV 12-01971-CW (KAW), 2013 WL 633406 (N.D. Cal. Feb. 20, 2013) ................. 6, 7

*Droplets, Inc. v. Amazon.com, Inc.*,
    No. C-12-03733 HRL, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ................................. 6

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
    No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ..................... 7, 8, 11

*Finjan, Inc. v. SonicWall, Inc.*,
    No. 17-CV-04467-BLF (VKD), 2019 WL 2077849 (N.D. Cal. May 10, 2019) ............ 7, 11

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-CV-01197-WHO, 2015 WL 13728796 (N.D. Cal. July 14, 2015) .......................... 16

*Grecia v. Apple Inc.*,
    No. C-14-0775 EMC, 2014 WL 4685195 (N.D. Cal. Sept. 19, 2014) ................................. 6

*Network Caching, LLC v. Novell, Inc.*,
    No. C-01-2079 VRW, 2002 WL 32126128 (N.D. Cal. Aug.13, 2002) ............................... 5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) .......................................................................................... 6

*Power Integrations, Inc. v. On Semiconductor Corp.*,
    No. 16-CV-06371-BLF (HRL), 2018 WL 1466661 (N.D. Cal. Feb. 27, 2018) ................ 16

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ............................................................................. 7

*Shared Memory Graphics LLC v. Apple Inc.*,
    No. C-10-02475 MMC (JSC), 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011) ..................... 7

*Thought, Inc. v. Oracle Corp.*,
    No. 12-cv-05601-WHO, 2015 WL 5834064 (N.D. Cal. Oct. 7, 2015) ............................... 8

*Uniloc USA, Inc. v. Apple Inc.*,
    No. C-18-00360 WHA, 2018 WL 3219486 (N.D. Cal. July 2, 2018) ........................... 8, 14

# TABLE OF AUTHORITIES
(Continued)

Page

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................................ 6

Patent Local Rule 3-1 ................................................................................................. 1, 3, 13

Patent Local Rule 3-1(c) ............................................................................................ 6, 7, 16

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on January 29, 2020 at 2:00 p.m., or as soon thereafter as the matter can be heard, in Courtroom 6 on the second floor of the United States District Court of the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Jon S. Tigar, Defendants Yahoo!, Inc. and Nordstrom, Inc. (collectively, "Defendants") will move the Court for an order striking the Third Amended Infringement Contentions served on May 24, 2019, by Plaintiff Droplets, Inc. ("Droplets").[1]

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of William Hector and exhibits, all papers and pleadings on file in this action, and any additional material that may be presented at any hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The interactive link is central to this case. Each claim of the '745 patent requires the interactive link. The Abstract defines the patent as directed to "delivering interactive links," the Field of Invention is "delivering interactive links," and the Object of the Invention is to "provide interactive links." Yet after eight years of litigation, Droplets refuses to identify the interactive link in any of Defendants' accused products. Specifically, Droplets refuses to provide infringement contentions that identify "specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality" as required by Patent Local Rule 3-1. Defendants have raised this issue with Droplets many times. But Droplets has rejected Defendants' multiple requests to identify the interactive link, and despite having amended its infringement contentions three times, has failed to address the deficiencies.

Droplets has long had all the material necessary to address Defendants' concerns and comply with Patent Local Rule 3-1, but continues to hide the ball. Droplets may argue that it needs server-

---

[1] Separate Third Amended Infringe Contentions were served on each Defendant, but for purposes of this motion they are identical.

MOTION TO STRIKE DROPLETS' THIRD AMENDED INFRINGEMENT CONTENTIONS;
CASE NO. 12-CV-03733-JST

- 1 -

side code to address Defendants' concerns. It does not. The claimed interactive link resides entirely on the client. Client-side code is publicly available and downloadable from a web browser. Any "interactive link code" is thus completely within Droplets' possession. Also, none of the deficiencies briefed below relate to failures to assert theories about server-side operation of the accused instrumentalities. They are instead directed to whether Droplets has properly stated theories as to the client-side code (e.g., the claimed interactive link). If at some point Droplets believes it has good cause to amend its infringement contentions in light of later discovery, it could move for leave to do so. But no production of server-side code will justify amendment to client-side infringement theories.

This motion addresses the fatal deficiencies in Droplets' Third Amended Infringement Contentions regarding its purported identification of the claimed interactive link.

## II.   BACKGROUND

### A.   Patent At Issue

Droplets asserts 97 of the 104 claims of United States Patent No. 6,687,745 (the "'745 patent"). The patent is directed to "delivering interactive links for presenting applications and second information at a client computer from remote sources in a network-configured computer processing system." '745 patent, Abstract. This motion focuses on deficiencies in Droplets' Third Amended Infringement Contentions regarding its purported identification of the claimed interactive link in the accused instrumentalities. Two prior courts construed the term "interactive link" in largely identical ways, and this Court has determined that the earlier construction is preclusive. *Nordstrom* Dkt. No. 154 at 9, *Yahoo* Dkt. No. 412 at 9. "Interactive link" means:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL).

*Id.* at 11.

### B.   History of the Dispute

On April 6, 2012, Droplets served its original infringement contentions on Yahoo and

Nordstrom. On November 9, 2012, Defendant Yahoo moved to compel Droplets to comply with Patent Rule 3-1. *Yahoo* Dkt. No. 203. Yahoo noted that the screen shots, code, and tools charted by Droplets did not aid in identifying where each limitation was found in the accused product. The Court agreed and directed Droplets to supplement its infringement contentions. *Yahoo* Dkt. No. 258.

On May 17, 2013, Droplets first supplemented its infringement contentions, adding a statement that "bookmarks, cookies, sign-in information, specially formatted hyperlinks, etc. relates to storing an interactive link on the client computer." *See*, e.g., Declaration of William Hector ("Hector Decl."), Ex. 1 (Droplets First Amended Infringement Contentions, 745-Nordstrom-Add to Shopping Bag) at 136-154 and Hector Decl., Ex. 2 (Droplets First Amended Infringement Contentions, 745-Yahoo-Search Suggest) at 72-84.

On August 6, 2013, Yahoo met and conferred with Droplets and Droplets stated that an identified bookmark was the interactive link. *See* Hector Decl., Ex. 3 at 7-8 (August 14 letter from Yahoo to Droplets summarizing the meet and confer).

In March 2015, the Southern District of New York construed "interactive link," ordering a construction that this Court has adopted and that eliminates the possibility a bookmark could be the interactive link. *See Nordstrom* Dkt. No. 154, Order Granting Motions for Preclusion Re Claim Construction.

On March 22, 2019, Droplets served second amended infringement contentions on both Yahoo and Nordstrom. Hector Decl. ¶ 5.

On April 10, 2019, Defendants sent a deficiency letter to Droplets regarding these contentions. Hector Decl., Ex. 4. In that letter, Defendants reminded Droplets of the two previous (and substantially identical) constructions of "interactive link" and identified the still-existing issue: "Droplets never identifies the interactive link with any specificity, but instead asserts that it can be any or all of several pages of verbiage or perhaps some other unspecified code. Defendants need to know what the interactive link is in order to understand the rest of the contentions." *Id*. at § 10.a.

On April 22, 2019, the parties met and conferred on this and other topics, and the next day Defendants wrote a follow-up letter. Hector Decl., Ex. 5. Defendants stated that after the meet and confer, they continued to understand that "Droplets purports to identify the 'interactive link' as,

e.g.,: 'the HTML, CSS, javascript, and/or other files that contain the embedded code needed to present [certain graphical components] and provide [those components'] functionality.'" *Id*. at § 13.a. The letter reiterated that this was insufficient because:

> i. If entire files are the interactive link, then the specific files must be identified by name.
>
> ii. If portions of those files are the interactive link, then the specific portions must be identified
>
> …
>
> the contentions fail to identify, for the interactive link, where and how it includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer.

*Id*. at §§ 13.b and 13.c. Defendants also reminded Droplets that although the Second Amended Infringement Contentions contained extensive excerpts or complete reproductions of various files, "[n]owhere is it said that one or both of these sets of excerpts are the interactive link" and "[i]f these contain, or are, the interactive link, then Droplets must specify the precise portion of the excerpts that are the claimed interactive link." *Id*. at §§ 13.b.iii.1. and 13.b.iii.2.

On May 24, 2019, Droplets served the operative Third Amended Infringement Contentions on each Defendant. Hector Decl. ¶ 8.

On July 1, 2019, Defendants wrote to Droplets, informing Droplets that the deficiencies described above had not been cured. Hector Decl., Ex. 6 at § 1. With respect to what appeared to be an effort to add specificity regarding the need for the claimed interactive link to restore previous operating states, Defendants wrote: "If Droplets contends that the addition of language such as 'including to cause the same application display as from a previous session, such as by invoking the same interactive link functionality from before' … addresses this issue … then Defendants request a meet and confer or further amendment, because we do not understand the intent or meaning of that language in this context." *Id*. at § 1.c.i.

On September 26, 2019, after having received no response, Defendants proposed a meet and confer for the first week of October. Hector Decl. ¶ 10.

MOTION TO STRIKE DROPLETS' THIRD AMENDED INFRINGEMENT CONTENTIONS;
CASE NO. 12-CV-03733-JST
- 4 -

On October 4, 2019, the parties met and conferred. *Id*.

On October 7, 2019, Droplets wrote to Defendants, stating that "Droplets mapped the Accused Webpages/Websites to [interactive link] using a combination of narrative, screenshots, videos, documents, code excerpts, and message captures that are more than sufficient to place Defendants on notice of Droplets' infringement theories." Hector Decl., Ex. 7 at 1. Droplets further asserted that for the "restoring previous operating states" aspect of the term, "Droplets is relying on the evidence and explanations that is provided for claim limitations 1a-1d." *Id*.

On October 23, 2019, Defendants replied. Hector Decl., Ex. 8. Defendants again stated their concerns (largely as presented above) about interactive link. Defendants requested that Droplets cure the deficiencies within ten days to avoid a motion to strike.

On November 3, 2019, Droplets replied. Hector Decl., Ex. 9. Droplets insisted that a motion to strike the infringement contentions would be a discovery motion, subject to this Court's rules and orders regarding the same. Droplets also presented the argument, referenced in the introduction, that it needed server-side source code to identify a client-side feature.

On November 7, 2019, Defendants replied and informed Droplets of applicable case law confirming that a motion to strike contentions is, in this district, not a discovery motion. Hector Decl., Ex. 10. Defendants reiterated that in light of the impasse, Defendants would seek Court intervention.

With this motion, Defendants do just that.

## III.   ARGUMENT

### A.   Droplets Must Identify "Specifically Where and How" Each Limitation of Each Asserted Claim is Found Within Each Accused Instrumentality.

This District's Patent Local Rules have long required a high degree of specificity in infringement contentions, even requiring plaintiffs to engage in reverse engineering of the accused products to meet their obligations. *Network Caching, LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug.13, 2002).

Before 2017, this requirement for specificity was rooted in a version of Patent Local Rule 3-1(c) that required infringement contentions to chart "specifically where each limitation of each

asserted claim is found within each Accused Instrumentality." (Patent L.R. 3-1(c) as effective Nov. 1, 2014). Most of the cases cited below struck contentions for failing to comply with that version or its predecessors. But in 2017, the Northern District of California revised the rule to require even more particularity in infringement contentions: infringement contentions must now show "specifically where **and how**" each is found. (Patent L.R. 3-1(c), effective as of January 17, 2017, emphasis added.)

In this District, "a plaintiff is required to include in its infringement contentions all facts known to it, including those discovered in its Fed. R. Civ. P. 11 pre-filing investigation. The rules 'require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed.'" *Droplets, Inc. v. Amazon.com, Inc.*, No. C-12-03733 HRL, 2013 WL 1563256, at *1 (N.D. Cal. Apr. 12, 2013) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006); other citations and quotations omitted.). The Patent Local Rules do not literally require a plaintiff to prove its infringement case, "[b]ut to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim." *Droplets,* 2013 WL 1563256, at *2.

As courts in this district have explained, "[Patent Local] Rule 3–1 requires exacting identification of the accused instrumentalities and how those instrumentalities read on the alleged claim limitations." *Grecia v. Apple Inc.*, No. C-14-0775 EMC, 2014 WL 4685195, at *1 (N.D. Cal. Sept. 19, 2014). *See also id*. at *3 (contentions insufficient because they did not identify what corresponded to the claimed element and how it implemented the claimed functionality).

Infringement contentions must unambiguously identify where each limitation is found in each accused product in order to satisfy the disclosure requirements of the Patent Local Rules, and must do so with more than broad references. *See Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC (EMC), 2010 WL 363341, at *2 (N.D. Cal. Feb. 1, 2010) (finding infringement contentions "generally defective because the given locations are impermissibly broad and vague in description"); *Digital Reg of Texas, LLC v. Adobe Systems Inc.,* No. CV 12-01971-CW (KAW), 2013 WL 633406, at *3 (N.D. Cal. Feb. 20, 2013); *Shared Memory Graphics LLC v. Apple, Inc.*,

812 F. Supp. 2d 1022, 1025–26 (N.D. Cal. 2010).

For example, in *Digital Reg of Texas*, Digital Reg failed to clearly identify which component of an accused system met the "electronic content" claim limitation, as its contentions suggested that the "electronic content" might be one of several features within the accused applications. *Digital Reg*, 2013 WL 633406, at *3. Accordingly, the Court held that these contentions were deficient because "Digital Reg fails to clarify what 'electronic content' meets this limitation, whether it is the mobile app itself, time-based rewards, high scores, bonuses, etc." *Id*. The contentions needed to "specify the particular 'electronic content' at issue in each limitation, identify all recipients and senders, as well as the processes that are being tracked in an infringing manner by each accused instrumentality." *Id*. at *4.

Similarly, in *Shared Memory Graphics*, this Court held that SMG failed to "specifically identify the display data distribution bus limitation" within the accused device because in its infringement contentions "depicting the PS2's 'GS Pipeline,' it is unclear whether the 'Memory IF' or other components are part of the bus." *Shared Memory Graphics*, 812 F. Supp. 2d at 1025-26. Thus, this Court held that "[r]ather than provide a meaningful description of its theories, SMG's vague contentions and conclusory statements invite Defendants and the Court merely to *assume* the presence of a data distribution bus." *Id*. at 1026 (emphasis in original). The court ultimately struck SMG's contentions relating to the data distribution bus limitation without leave to amend after finding "that SMG's second amended [infringement contentions] still fail to comply with Local Rule 3-1(c)." *Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475 MMC (JSC), 2011 WL 3878388, at *8 (N.D. Cal. Sept. 2, 2011).

Especially since the 2017 revisions to the Patent Local Rules, courts in this district require pinpoint citations to source code in their possession, at least where sufficient specificity is not otherwise provided. *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *5 (N.D. Cal. Feb. 27, 2019). *See also Finjan, Inc. v. SonicWall, Inc.*, No. 17-CV-04467-BLF (VKD), 2019 WL 2077849, at *5 (N.D. Cal. May 10, 2019).

In *Finjan v. Check Point Software Techs.*, the court ordered Finjan to produce pinpoint source code citations with its infringement contentions. 2019 WL 955000, at *1. Finjan argued that

"the structure and organization of Check Point's source code" limited its ability to map specific source code to the claims and that, moreover, it was "not required to provide source code citations for every single feature of every claim element." *Id*. at *5. The court disagreed. *Id*. at **5-6. After citing much of the case law mentioned above, it wrote that "[w]here the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide pinpoint citations to the code identifying the location of each limitation. Finjan's pinpoint source code citations, even viewed along with the public information cited, do not meet the required level of specificity, particularly to where and how each limitation of each asserted claim is found within each Accused Instrumentality as required by the Patent Local Rules." *Id*. at *5 (citations and quotations omitted.) Finjan's source code citations were insufficient because Finjan had cited to multiple sets of source code and did not "**explain** how any particular set of source code practices the asserted claim limitation." *Id*. (emphasis added.) Nor did the inclusion of screenshots help, because "screenshots with no explanation do not meet the level of specificity required by the Patent Local Rules." *Id*. The court concluded "[n]either Check Point nor I should be required to guess which part of the source code citations (either shared or not shared) allegedly infringe each claim element." *Id*. at *6.

Finally, infringement contentions must be internally consistent. *See Uniloc USA, Inc. v. Apple Inc.,* No. C-18-00360 WHA, 2018 WL 3219486, at *1 (N.D. Cal. July 2, 2018) (striking contentions that were self-contradictory and thus failed to provide reasonable notice).

**B.      Any Interactive Link Has Long Been in Droplets' Possession**

The "interactive link" must be "selected by an end user" (*Nordstrom* Dkt. No. 154, *Yahoo* Dkt. No. 412) and stored on the client computer (claims 1 and 17). The specification is directed to an alleged invention that requires a client-stored interactive link. Thus, if the accused products have the claimed interactive link, that interactive link is fully within Droplets' possession. It may be that access to additional source code would help Droplets improve its infringement contentions relative to other terms, but access to server-side code is not necessary to specifically identify the client-side interactive link. *See, e.g., Thought, Inc. v. Oracle Corp.,* No. 12-cv-05601-WHO, 2015 WL 5834064, at *7 (N.D. Cal. Oct. 7, 2015) (source code inspection did not justify amending contentions

absent a "compelling reason why source code review was necessary to develop these theories").

### C. After Four Tries, Droplets Has Still Not Articulated A Proper Theory as to the Accused Interactive Link

The only time Droplets has identified an accused interactive link with any specificity was in 2013, when it identified the interactive link as a bookmark. *See* Hector Decl., Ex. 3 (August 14, 2013, summary of a meet and confer). Since then, claim construction orders in other cases, and now this case (*Nordstrom* Dkt. No. 154, *Yahoo* Dkt. No. 412), have recognized that Droplets disclaimed bookmarks during prosecution. Accordingly, Droplets has abandoned that theory. But it is unable to articulate, with the requisite specificity, a new one.

The construction of "interactive link" ordered by this Court is essentially the same as that ordered years ago by two other courts:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL).

*Nordstrom* Dkt. No. 154 at 11, *Yahoo* Dkt. No. 412 at 11.

Droplets' Third Amended Infringement Contentions state the following about the claimed interactive link. As explained below, none of this is sufficient, individually or collectively.

1. The Accused Functionality involves "interactive links (e.g., the HTML, CSS, javascript, ***and/or other files*** that contain the embedded code needed to present the search bar and provide its functionality) . . . ."[2]

2. Accused Functionalities "all involve (1) an interactive link that comprises a button or an

---

[2] Droplets' Third Amended Infringement Contentions for Nordstrom and Yahoo, Hector Decl., Ex. 11 at 2 (emphasis added). Similar language, differing only in what is presented, can also be found in those contentions on pages 6 ("to present the selectable buttons … and provide their functionality"), 68 ("to present the application and provide its functionality"), and 70 ("to present the Add to Bag button and provide its functionality"), and in Droplets' Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at pages 8 ("to present the selectable folders and selectable emails and provide their functionality"), 15 ("to present the selectable map content and/or buttons (e.g., for panning, zooming, or changing view) and provide their functionality"), and 55 ("to present the folders and/or mail and provide their functionality").

      item. . . ."[3]

3. "An interactive link (e.g. the HTML, CSS, javascript, **and/or other files** that contain the embedded code needed to present the application and provide its functionality) is stored on the client computer (e.g., in the memory, cache, and/or hard drive). As described above, this interactive link can establish (and re-establish, e.g., when the user interacts with the interactive link and causes it to update the application display, including to cause the same application display as from a previous session, such as by invoking the same interactive link functionality from before) a second communication connection with a second host computer for retrieving the third information and presenting the fourth information."[4]

4. Droplets asserts that images on page 69 of Droplets' Third Amended Infringement Contentions for Nordstrom (Hector Decl., Ex. 11) and on pages 52-54 of Droplets' Third Amended Infringement Contentions for Yahoo (Hector Decl., Ex. 12) are "examples of how interactive links can be stored on a client device (e.g., the files and code that can display the search bar and perform the above functionalities are stored in a Google Chrome cache folder)."

5. In an attempt to assert the doctrine of equivalents, Droplets writes that "with respect to 'interactive link,' a search bar that invokes the interactive link functionality when it is selected, or when text is entered or deleted from it, performs substantially the same function (activating the functionality of the interactive link), in substantially the same way (through interacting with the interactive link) to yield substantially the same result (the functionality of the interactive link is invoked) as the claim limitation. This is because the user is still interacting with a graphical representation of the interactive link

---

[3] Droplets' Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 11, Droplets' Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 10.

[4] Droplets' Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 68, Droplets' Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 51-52 (emphasis added). Similar language, differing only in what is presented, can also be found in Hector Decl, Ex. 11 on page 68 continuing to page 69, pages 70-71, page 76, and page 78, and in Droplets' Third Amended Infringement Contentions for Yahoo, Hector Decl, Ex. 12 at 55-56, and 73-74.

to invoke the functionality of the interactive link."[5]

### 1. Droplets' Identification of the Interactive Link as "Files That Contain the Embedded Code" Remains Insufficient

This Court's construction of "interactive link," like those of the two courts to previously construe the term, requires that the interactive link be "computer code." (*Nordstrom* Dkt. No. 154, *Yahoo* Dkt. No. 412).

Droplets points only to unnamed and open-ended sets of files not to code. As identified in points 1 and 3 (above), Droplets identifies the interactive link as "e.g., the HTML, CSS, javascript, ***and/or other files*** that contain the embedded code needed to present" an application "and provide its functionality." *Supra* pp. 9, 10.

Droplets nowhere identifies the code that is allegedly embedded in these files and nowhere identifies the portions of this code that correspond to the interactive link. Thus, even if Defendants could determine which files Droplets believes contain the interactive link, Defendants cannot determine what "embedded code" within those files corresponds to the interactive link. Defendants should not have to guess; it is Droplets' burden to identify them: "Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide 'pinpoint citations' to the code identifying the location of each limitation." *Finjan, Inc. v. Check Point Software Techs., Inc.*, 2019 WL 955000, at *5; *see also Finjan, Inc. v. SonicWall, Inc.*, 2019 WL 2077849, at *5 (finding that Finjan must specifically identify the where in the accused product the application meets the claim limitation).

The inadequacy of the infringement contentions in this regard is further illustrated by an examination of the chart for asserted claim 43. This dependent claim requires "a global unique identifier assigned to the interactive link and information for identifying the client computer storing the interactive link." Third Amended Infringement Contentions for Nordstrom Hector Decl., Ex. 11 at 85-86; Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 91-92. *See also id.* at 87 and 102, respectively (charting similar dependent claim 92 with reference to the chart

---

[5] Droplets' Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 70. Similar language can also be found at those contentions on pages 76 and in Droplets' Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 54-55, 73-74, and 78.

for claim 43). In response, Droplets recites numerous tools that may be used to identify a client computer but asserts neither where nor how those things (or any other global unique identifier) are "assigned to" an interactive link. This seems to be correlated with Droplets' failure to specifically identify what the interactive link is in the first place. In any event, it is also independent grounds for striking the infringement contentions with respect to claims 43 and 92.

Because Droplets fails to identify, with requisite specificity, where and how the interactive link is present in any of the accused instrumentalities, the Third Amended Infringement Contentions should be struck.

### 2. Droplets Fails to Articulate Where and How the Accused Interactive Link is "Selected."

This Court's construction of "interactive link," like those of the two courts that previously construed the term, requires that the computer code that comprises the interactive link "retrieves and presents applications and/or information stored at remote locations across the network **when selected by an end user**…." (*Nordstrom* Dkt. No. 154 at 11, *Yahoo* Dkt. No. 412 at 11, emphasis added). Claim 26 also requires "selection of an interactive link."

The Third Amended Infringement Contentions are replete with recitations of graphical interface elements such as buttons and text areas being "selected." But there is not a single reference, as best as Defendants can determine, to selection of source code, much less any source code identified as corresponding to the claimed interactive link.

For at least this reason, the Third Amended Infringement Contentions fail to propound a proper theory of infringement and should be struck.

### 3. Droplets Fails to Articulate Where and How the Accused Interactive Link "Includes Facilities for Restoring Previous Operating States of the Application as the Application is Re-presented at a User's Computer."

This Court's construction of "interactive link," like those of the two courts to previously construe the term, requires that the interactive link "includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer." (*Nordstrom* Dkt. No. 154, *Yahoo* Dkt. No. 412).

Droplets' infringement contentions articulate no theory as to where this facility exists, much

less how this facility is implemented. Defendants, therefore, have no notice as to what Droplets' theory is regarding what constitutes: (1) an operating state of the application, (2) re-presenting the application at a user's computer, (3) restoring a previous operating state, and (4) the accused interactive link's inclusion of facilities for performing such a restoring.

Because Droplets' Third Amended Infringement Contentions do not provide Defendants with the requisite notice and do not comply with Patent Local Rule 3-1, they must be struck.

### 4. Droplets Fails to Disclose a Proper Theory Regarding Storing the Interactive Link

Both claims 1 and 17 require that the interactive link be stored on the client computer. Droplets provides, via screen shots, three examples of how interactive links "can be stored on a client device." Third Amended Infringement Contentions for Nordstrom Hector Decl., Ex. 11 at 69, Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 52-54. These three screen shots appear to show a directory listing of a web browser's cache folder, a settings page that allows users to purge cached files, and a browser history page showing sites that a user has visited in the past.

However, at no point does Droplets assert that any of these screen shots show an actual accused interactive link being stored. Nor does Droplets assert how such an accused interactive link is stored. Especially in light of the disclosure of the asserted patent, which describes that the interactive link is stored locally so that it can be (1) accessed without revisiting the web page that first caused it to be obtained and (2) copied or transferred to other devices, vague references to the existence of cache files used for internal browser purposes are particularly uninformative to Defendants. Moreover, at least one of the images in the Third Amended Infringement Contentions for Nordstrom appears to show only Yahoo-related content.

Because Droplets has not stated a sufficiently specific theory as to where and how the accused products store an interactive link on the client computer, the Third Amended Infringement Contentions should be struck as to claims 1 and 17 (and those claims that depend from them).

### 5. Droplets' Identification of the Interactive Link is Internally Inconsistent.

Infringement contentions must be internally consistent so as to provide accused infringers

with sufficient and definite notice of the theory of infringement. *See Uniloc*, 2018 WL 3219486, at *1 (striking contentions that were self-contradictory and thus failed to provide reasonable notice).

Droplets' Third Amended Infringement Contentions are not internally consistent. As discussed above, Droplets is clear in points 1 and 3: the interactive link is one or more files that contain embedded code, including code for displaying graphical user interface elements such as search bars and buttons. But Droplets is also clear in point 2, above: the interactive link comprises a button or other graphical user interface elements. *See* Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 11 and Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 10.

The two assertions cannot both be true. Droplets acknowledges as much in its attempt to assert the Doctrine of Equivalents, where it distinguishes between graphical elements that "invoke the interactive link functionality when selected" and the interactive links themselves. *See* point 5, above.

For this reason, at least the item numbered "(1)" on page 11 of the Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 and on page 10 of the Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 should be struck.

### D. Droplets' Assertion of the Doctrine of Equivalents is Deficient

Droplets attempts to assert the doctrine of equivalents for three limitations: the final limitation of claim 1 ("storing, on the client computer, an interactive link for selectively re-establishing the second communication connection…"), the final limitation of claim 17 ("an interactive link, stored at said requesting client computer, for selectively re-establishing said communication connection…"), and the second limitation of claim 26 ("computer program code for presenting over said network, in response to a selection of an interactive link, applications and first information stored in a first of said plurality of server computers…"). Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 67-70, 75-76, 77-78; Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 51-56, 73-74, 78-79.

The assertions of the doctrine of equivalents are each insufficient, because each fails to give Defendants notice of what it is that is not literally present and what it is that comprises the equivalent

of the missing term.

For example, the relevant limitation of claim 1 is directed to "storing" an interactive link with particular functionality. But in its assertion of the doctrine of equivalents, Droplets does not assert that the equivalent of the whole limitation is present, because no equivalent to "storing" is identified:

> with respect to "interactive link," a search bar that invokes the interactive link functionality when it is selected, or when text is entered or deleted from it, performs substantially the same function (activating the functionality of the interactive link), in substantially the same way (through interacting with the interactive link), to yield substantially the same result (the functionality of the interactive link is invoked) as the claim limitation. This is because the user is still interacting with a graphical representation of the interactive link to invoke the functionality of the interactive link.

Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 70. Similarly, in Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 54-55.

Droplets is also not asserting that "interactive link" is present only under the doctrine of equivalents because the allegation states that even in the equivalent a literal "interactive link" is still invoked. If Droplets is asserting that a "search bar" is equivalent to something in the limitation, Defendants are not on notice of what that something is.

Similar analyses apply to the other two purported invocations of the doctrine of equivalents.

Because Droplets has not given notice of what it is that it contends is literally absent but present under the doctrine of equivalents, at least these portions of the Third Amended Infringement Contentions should be struck.

### E. The Third Amended Infringement Contentions Repeatedly Reference a Mysterious "Search History"

The infringement contentions repeatedly reference a "search history." *See, e.g.*, Third Amended Infringement Contentions for Nordstrom, Hector Decl., Ex. 11 at 3, 5, 61, 66, 69, and Third Amended Infringement Contentions for Yahoo, Hector Decl., Ex. 12 at 4, 5, 44, 49, 52, 65. This "search history" can apparently be turned on and off. *Id*. It was important enough for Droplets to mention it in its infringement contentions, but Defendants do not know what it is or how it is turned on or off. Defendants have repeatedly requested that Droplets identify the "search history,"

to no avail. *See* Hector Decl., Exs. 4, 5, 6 (correspondence).

Because the nature of this search history and its relevance to any theories of infringement is not set forth, all references to it should be struck.

### F. This Motion is Procedurally Proper

In correspondence regarding this dispute, Droplets asserted that this is a discovery dispute subject to the Court's standing orders and related Local Rules. But courts in this distract have clarified, as recently as last year, that a motion to strike contentions is not a discovery dispute and not subject to rules or orders regarding discovery disputes. *Power Integrations, Inc. v. On Semiconductor Corp.*, No. 16-CV-06371-BLF (HRL), 2018 WL 1466661, at *2 (N.D. Cal. Feb. 27, 2018) ("The Court declines to impose a meet-and-confer prerequisite to a motion to strike infringement contentions, and concludes that this motion is ripe for adjudication."); *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 13728796, at *1 (N.D. Cal. July 14, 2015).

## IV. CONCLUSION

Droplets has repeatedly purported to identify the "interactive link" with varying, vague, open-ended, and non-specific references to unidentified or mysterious files. These vague references fall short of Patent Local Rule 3-1(c)'s requirement to identify "specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." For at least the foregoing reasons, Defendants respectfully request the Court strike Plaintiff's Third Amended Infringement Contentions.

DATED: December 10, 2019     Respectfully submitted,

VENABLE LLP


By: */s/ William A. Hector*
    WILLIAM A. HECTOR

Attorneys for Defendant
YAHOO, INC. (n/k/a ALTABA, INC.)