UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DROPLETS, INC., | Case No. 12-cv-03733-JST |
| Plaintiff, | |
| v. | **CLAIM CONSTRUCTION** |
| | Re: ECF No. 389 |
| YAHOO! INC., | |
| Defendant. | |

Before the Court is Plaintiff Droplets, Inc.'s opening claim construction brief and Defendants Yahoo!, Inc.'s and Nordstrom, Inc.'s proposed competing constructions for eight terms in U.S. Patent No. 6,687,745 ("the '745 patent"), ECF Nos. 389, 404.[1]  The Court construes the terms as set forth below.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff Droplets, Inc. is a software development corporation that focuses on the creation and delivery of "highly functional and scalable applications over the Internet."  ECF No. 23 ¶ 1. On May 13, 2011 Droplets filed an action in the Southern District of New York, alleging infringement of its '745 patent.  *Droplets, Inc. v. E*Trade Financial Corp.*, No. 2:11-cv-00255 (S.D.N.Y. May 13, 2011), ECF No. 1.  Shortly thereafter, Droplets filed several infringement actions in the Eastern District of Texas, which also alleged infringement of its '745 patent. *Droplets, Inc. v. eBay, Inc.*, No. 2:11-cv-00401 (E.D. Tex. Sept. 11, 2011), ECF No. 1.  In July 2012, the cases against Yahoo!, Inc. and Nordstrom, Inc. were transferred to the Northern District

---

[1] Unless otherwise specified, the docket citations in this order refer to the electronic case filing numbers in *Droplets, Inc. v. Yahoo! Inc.*, 3:12-cv-03733 (N.D. Cal. July 24, 2012).

United States District Court
Northern District of California

of California.  ECF No. 371-3 at 93-112.  These cases were related on April 30, 2013.  ECF No. 262.

On July 29, 2019, Yahoo! and Nordstrom filed motions for preclusion re claim construction.  ECF No. 371-1.  On October 15, 2019, this Court issued an order granting Defendants' motions and giving preclusive effect to prior constructions of the terms "interactive link," "link," "computer program code," and "program code."  ECF No. 412.

Droplets filed its opening claim construction brief on August 30, 2019.  ECF No. 389.  Yahoo! and Nordstrom filed their responsive claim construction brief on September 18, 2019.  ECF No. 404.  On September 30, 2019, Droplets filed its reply brief.  ECF No. 408.  The Court conducted a *Markman* hearing on December 12, 2019.

### B.      The '745 Patent

The '745 patent is titled "System and Method for Delivering a Graphical User Interface of Remote Applications Over a Thin Bandwidth Connection."  ECF No. 1-1.  The patent issued on February 3, 2004 but claims priority to the September 14, 1999 filing date of a copending patent. *Id.*  The patent "relates generally to computer processing systems and, more particularly, to an object-oriented approach to delivering interactive links to applications and information stored in remote sources of a network."  *Id.* at col. 1, lines 27-30.  It purports to improve the internet experience with "an interactive link on a user's computer which, when selected, retrieves and presents applications and/or information stored at remote locations across the network."  *Id.* at col. 3, line 66 - col. 4, line 2.  It also "include[s] facilities for restoring previous operating states of the application as the application is re-presented at a user's computer."  *Id.* at col. 4, lines 2-5.

## II.      JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

## III.     LEGAL STANDARD

The construction of terms found in patent claims is a question of law to be determined by the court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to

United States District Court
Northern District of California

1     envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc)

2     (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

3     The "correct construction," therefore, is one that "stays true to the claim language and most

4     naturally aligns with the patent's description of the invention." *Id.* (quoting *Renishaw PLC*, 158

5     F.3d at 1250).  While not every claim term must be construed, "[w]hen the parties present a

6     fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2*

7     *Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

8         "Claim construction seeks to ascribe the 'ordinary and customary meaning' to claim terms

9     as a person of ordinary skill in the art would have understood them at the time of invention.  'The

10    claims themselves provide substantial guidance as to the meaning of particular claim terms.'" *SRI*

11    *Int'l v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019) (alteration omitted) (quoting

12    *Phillips*, 415 F.3d at 1312, 1314).  In some cases, the ordinary meaning of claim language is

13    "readily apparent," and "claim construction . . . involves little more than the application of the

14    widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.  In other

15    cases, "determining the ordinary and customary meaning of the claim requires examination of

16    terms that have a particular meaning in a field of art." *Id.*  Claim construction may deviate from

17    the ordinary and customary meaning of a disputed term only if "a patentee sets out a definition and

18    acts as his own lexicographer" or if "the patentee disavows the full scope of a claim term either in

19    the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d

20    1362, 1365 (Fed. Cir. 2012).

21        The "context in which a term is used in the asserted claim," "[o]ther claims of the patent in

22    question, both asserted and unasserted," and "[d]ifferences among claims" are all instructive.

23    *Phillips*, 415 F.3d at 1314.  "The claims, of course, do not stand alone" and, instead, "must be read

24    in view of the specification," which is "[u]sually . . . dispositive" and "the single best guide to the

25    meaning of a disputed term." *Id.* at 1315 (internal quotation marks and citations omitted).  Courts

26    "normally do not interpret claim terms in a way that excludes disclosed examples in the

27    specification." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir.

28    2007).  Additionally, the Federal Circuit has cautioned that "limitations from the specification are

United States District Court
Northern District of California

3

1    not to be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186

2    (Fed. Cir. 1998).  Even "if a patent describes only a single embodiment," the Federal Circuit has

3    "expressly rejected the contention that . . . the claims must be construed as being limited to that

4    embodiment." *Phillips*, 415 F.3d at 1323.  However, "[w]hen the specification makes clear that

5    the invention does not include a particular feature, that feature is deemed to be outside the reach of

6    the claims of the patent, even though the language of the claims, read without reference to the

7    specification, might be considered broad enough to encompass the feature in question." *E.I. du*

8    *Pont De Nemours & Co. v. Unifrax I* LLC, 921 F.3d 1060, 1068 (Fed. Cir. 2019) (internal

9    quotation marks and citation omitted).

10    "While courts may also consider extrinsic evidence in claim construction, such evidence is

11    generally of less significance than the intrinsic record" – i.e., the claims, specification, and

12    prosecution history.  *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019)

13    (internal quotation marks and citation omitted).  "[D]ictionaries, and especially technical

14    dictionaries, . . . can assist the court in determining the meaning of particular terminology to those

15    of skill in the art" because they "endeavor to collect the accepted meanings of terms used in

16    various fields of science and technology." *Phillips*, 415 F.3d at 1318.  Courts may also consider

17    treatises and expert and inventor testimony.  *Id.* at 1317-18.  "However, conclusory, unsupported

18    assertions by experts as to the definition of a claim term are not useful to a court.  Similarly, a

19    court should discount any expert testimony that is clearly at odds with the claim construction

20    mandated by the claims themselves, the written description, and the prosecution history, in other

21    words, with the written record of the patent." *Id.* at 1318 (internal quotation marks and citation

22    omitted).

23    **IV.    DISCUSSION**

24        **A.    "Interactive Link" and "Link" (Claims 1, 15, 16, 17, 24, 25, 26, 74, and 75)**

25        In its order granting Defendants' motions for preclusion re claim construction, this Court

26    gave preclusive effect to a prior order construing the terms "interactive link" and "link."  ECF No.

27    412.  Accordingly, the Court adopts the following construction of these terms: "computer code

28    that (1) retrieves and presents applications and/or information stored at remote locations across the

*United States District Court*
*Northern District of California*

4

network when selected by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer.  An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL)."

        **B.**    **"Computer Program Code" and "Program Code" (Claims 1, 17, and 26)**

In its order granting Defendants' motions for preclusion re claim construction, this Court gave preclusive effect to a prior order construing the terms "computer program code" and "program code."  ECF No. 412.  Accordingly, the Court adopts the following construction of these terms: "Computer Program Code" and "Program Code" have their plain meaning.  However, a "web address" or "hyperlinks" cannot be "computer program code" or "program code."

        **C.**    **"Operating Environment" (Claims 1, 17, 70, 76, and 77)**

| **Droplets's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| "operating system, user interface, or hardware capabilities" | "information about a client computer's operating system, user interface, and hardware capabilities." |

The parties agree that the term "operating environment" in claims 1, 17, 70, 76, and 77 requires construction.  ECF No. 389 at 21-24; ECF No. 404 at 20-22.  The primary dispute between the parties is whether the term "encompasses any combination of information relating to 'operating system,' 'user interface,' *or* 'hardware capabilities,' . . . or whether it must contain all three types of information.  ECF No. 389 at 21 (emphasis added); ECF No. 404 at 20.  Because the intrinsic evidence suggests that the inventor intended for the term to be given a broader meaning, the Court adopts Droplets's proposed construction.  *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324-25 (Fed. Cir. 2002) ("[I]ntrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.") (internal quotation marks and citation omitted).

First, Defendants' construction would improperly exclude embodiments disclosed in the specification.  *See Verizon Servs. Corp*, 503 F.3d at 1305 (Courts "normally do not interpret claim

United States District Court
Northern District of California

terms in a way that excludes disclosed examples in the specification.").  The specification includes several embodiments which use various combinations of information related to a computer's operating system, user interface, *or* hardware capabilities.  In one preferred embodiment, the application server receives "operating environment" information "regarding the operating system and hardware capabilities of the particular client computer that requested the droplet-enabled content."  ECF No. 1-1 at col. 8, lines 63-67.  In another embodiment, "a droplet communicates one of the differing client environments and, in particular, client [user interface] requirements, to the application server."  *Id.* at col. 9, lines 28-34.  "[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (internal quotation marks and citation omitted).

Second, Defendants' construction would render two dependent claims meaningless.  *See Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991) ("All the limitations of a claim must be considered meaningful.").  Dependent claims 27 and 48 require information regarding the "operating system and hardware capabilities" of the client computer(s).  ECF No. 389-2 at 31 (emphasis added).  If independent claims 1 and 17 already required that an operating environment consist of information about the operating system, user interface, *and* hardware capabilities, the limitations in claims 27 and 48 would be rendered meaningless.  Additionally, the presence of the "operating system and hardware capabilities" limitation in these dependent claims gives rise to the presumption that this limitation is not contained in independent claims 1 and 17. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").  Defendants correctly note that this is only a presumption. ECF No. 404 at 22.  Nevertheless, when considered in concert with the aforementioned intrinsic evidence, demonstrates that the term "operating environment" does not necessitate all three types of information.

Defendants' proposed construction also includes the prefatory phrase "information about a client computer's . . ."  ECF No. 404 at 20.  Defendants' responsive brief, however, offers no

6

United States District Court
Northern District of California

1  justification for the inclusion of this prefatory language.  *Id.* at 20-22.  Droplets argues, and the

2  Court agrees, that the proposed prefatory phrase is unnecessary and superfluous.  Therefore, the

3  Court will not include that language in its construction.

4       In sum, the Court construes the term "operating environment" to mean "operating system,

5  user interface, or hardware capabilities."

6          **D.**        **Preambles of Claims 1 and 17**

| **Droplets's Proposed Construction** | **Defendants' Proposed Construction** |
| --- | --- |
| Preambles are not limiting | Preambles are limiting |

11       The parties originally disputed whether the preambles to claims 1 and 17 are limiting.

12  "Generally, the preamble does not limit the claims."  *Georgetown Rail Equip. Co. v. Holland L.P.*,

13  867 F.3d 1229, 1236 (Fed. Cir. 2017) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d

14  1336, 1346 (Fed. Cir. 2002)).  A preamble may be limiting when: (1) "it recites essential structure

15  or steps," (2) "claims depend on a particular disputed preamble phrase for antecedent basis," (3)

16  "the preamble is essential to understand limitations or terms in the claim body," (4) "the preamble

17  recites additional structure or steps underscored as important by the specification," or (4) "there

18  was clear reliance on the preamble during prosecution to distinguish the claimed invention from

19  the prior art."  *Id.* (internal quotation marks and alterations omitted) (citing *Catalina Marketing*

20  *Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (2002).  A preamble is not a claim

21  limitation, however, when "the claim body 'defines a structurally complete invention … and uses

22  the preamble only to state a purpose or intended use for the invention."  *Id.* (citing *Rowe v. Dror*,

23  112 F.3d 473, 478 (Fed. Cir. 1997)).

24       The parties now agree that the preambles to claims 1 and 17 are not limiting.  ECF No.

25  423-1 at 1.  The Court adopts the parties' agreed construction.

### E.      "Presentation Information for Presenting an Application" and "Presentational Information" (Claims 1, 17, and 26)

| Droplets' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain meaning.  No construction needed. | Literal language. |

While the parties initially proposed competing constructions for the terms "presentation information for presenting an application" and "presentational information," they now agree that these words should be afforded their plain meaning.  ECF No. 404 at 23; ECF No. 408 at 14.  The Court finds that the literal language is sufficiently clear for a lay juror to understand.  Therefore, it agrees that these terms require no construction.

### F.      "Presenting Applications" and Variations (Claims 1, 17, and 26)

| Droplets's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "presenting an interface enabling interaction with a remotely executing application" | "presenting an interface enabling interaction with an application" |

The parties agree that the term "presenting applications"[2] requires construction.  ECF No. ECF No. 389 at 27; ECF No. 404 at 24; ECF No. 408 at 14.  The primary dispute between the parties is whether applications are executed remotely.  ECF No. 404 at 25; ECF No. 408 at 14-16.  Because both intrinsic and extrinsic evidence suggest that applications may be executed locally, the Court will adopt Defendants' proposed construction.

First, the specification discloses embodiments in which an application executes locally.  In one preferred embodiment, "standard operating system interfaces are utilized to access, create, control and manipulate features and functions of the client computer [] such as, . . . any integration

---

[2] The parties have also identified the following variations of "presenting applications" to which the Court's construction will apply: "presenting the application," "presenting said invoked application," and "presenting of the application."  ECF No. 389 at 27; ECF No. 404 at 24; ECF No. 408 at 14.

United States District Court
Northern District of California

1    between the remotely executing applications, droplets, *locally executing application* and

2    underlying operating system.  ECF No. 1-1 at col. 11, lines 22-30 (emphasis added).  In another

3    embodiment, "[t]he locally installed application [] may be invoked to execute on the client

4    computer [] by selecting the link."  *Id.* at col. 11, lines 46-51.  Including Droplets's proposed

5    "remotely executing" language in the construction of "presenting applications" would result in the

6    exclusion of these preferred embodiments.  *On-Line Tech.*, 386 F.3d at 1138 ("[A] claim

7    interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever,

8    correct.") (internal quotation marks and citation omitted).

9           Second, in previous litigation involving the '745 patent, Droplets argued that the claims are

10   not limited to remotely executing applications.  In *Droplets, Inc. v. Adobe Systems, Inc.*, 2:06-cv-

11   307 (E.D. Tex.), Droplets argued that "*some* 'processing' of the 'application' may take place on

12   the client."  ECF No. 405-12 at 15 (emphasis in original).  In *Droplets, Inc. v. E*Trade Financial*

13   *Corp.*, No. 12-cv-2326 (S.D.N.Y.), Droplets argued that the "specification provides support for

14   'applications' stored on a remote server being downloaded to, and *executed on, a user's local*

15   *device.*"  *Id.* at 13.  It asserted that the specification contains "bountiful support for at least some

16   local execution," ECF No. 405-6 at 20, and that "Droplets did not disclaim a portion of an

17   'application' executing locally."  ECF No. 405-12 at 14-15.  While extrinsic evidence "is

18   generally of less significance that the intrinsic record," courts "may also consider [such evidence]

19   in claim construction."  *Allergan Sales*, 935 F.3d at 1373 (internal quotation marks and citation

20   omitted).

21          Droplets argues that "Defendants are unable to cite evidence that suggests the presented

22   application may be executed *exclusively* locally."  ECF No. 408 at 15 (emphasis added).  While

23   true, this fact is irrelevant.  Defendants do not propose a construction which mandates "exclusively

24   local" execution of applications.  Rather, Defendants argue that the term's construction should not

25   be limited to remotely-executing applications because "at least [a] portion" of the execution takes

26   place locally.  ECF No. 404 at 25-26.  The Court agrees and finds that both intrinsic and extrinsic

27   evidence weigh against limiting the term's construction to remotely-executing applications.

28   Accordingly, the Court construes the term "presenting applications" and its variations as

United States District Court
Northern District of California

9

"presenting an interface enabling interaction with an application."

### G.   "Presentation Client Program Code" and "Presentation Client" (Claims 17 and 26)

| Droplets's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "platform independent software, running on a client, that can present remotely stored applications and that can transmit user input to remotely stored applications" | "platform independent software, running on a client computer, that can (1) process user interface specifications for an application and (2) allow user interaction with that application" |

The parties agree that the terms "presentation client program code" and "presentation client" in claims 17 and 26 require construction.  ECF No. 389 at 27-28; ECF No. 404 at 28-29. The primary disputes between the parties are (1) whether the presentation client can operate with *remotely stored* applications and (2) whether the user input can be *transmitted*.  The Court finds that the intrinsic evidence supports the inclusion of both "remotely stored" and "transmit" in the construction of these terms.

Droplets's proposed construction states that the presentation client "can" operate with "remotely stored applications."  ECF No. 408 at 17.  Defendants oppose this language on the basis that the "specification does not limit presentation clients to operate *only* with 'remotely stored' applications, and claims that are directed to 'remotely stored' applications."  ECF No. 404 at 29. However, the use of "can" does not limit these operations and interactions to *only* remotely stored applications.  It simply recognizes the possibility of operations and interactions with remotely stored applications, which is consistent with the language presented in the bodies of claims 17 and 26.  As Defendants acknowledge, these claims envision the remote storage of applications.  *Id.* Claim 26, for example, recites "computer program code for presenting . . . applications . . . stored in a first of said plurality of server computers."

Droplets's proposed construction also states that user input can be "transmit[ted]" to remotely stored applications.  ECF No. 408 at 17.  Defendants oppose this language because the specification does not "require user input to be 'transmitted' from the presentation client" and

1    "[t]here is no need to transmit all user input for processing."  ECF No. 404 at 29.  The language

2    "can transmit," however, does not require the transmission of *all* user input.  Instead, it simply

3    acknowledges that the presentation client may transmit user input.  The use of "transmit" is

4    consistent with the following language in the '745 patent Summary of the Invention: "The system

5    also includes a communication connection between a requesting client computer and the

6    application server."  ECF No. 1-1 at col. 6, lines 19-21.  It also comports with a preferred

7    embodiment which "include[s] the droplet presentation client" and describes the presentation

8    client as "a generic, platform independent application program that processes user interface

9    specifications received from the application server [] and *routes* user driven events back to the

10   application server."  *Id.* at col. 27, lines 11-17 (emphasis added).

     In sum, the Court finds that the "remotely stored" and "transmit" language accords with

12   the summary, specification, and claims of the '745 patent.  The Court, therefore, construes the

13   terms "presentation client program code" and "presentation client" as "platform independent

14   software, running on a client computer, that can present remotely stored applications and that can

15   transmit user input to remotely stored applications."

16   **H.    "Computer Program Code Segments Embedded with Informational Content
              Stored at a Second of Said Plurality of Server Computers" (Claim 26)**

| Droplets's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain meaning or "instructions for a computer to execute embedded with informational content." | Indefinite |

22   "Pursuant to § 112 of the Patent Act, to be sufficiently definite, a patent specification must

23   conclude with one or more claims particularly pointing out and distinctly claiming the subject

24   matter which the applicant regards as his invention."  *Power–One, Inc. v. Artesyn Technologies,*

25   *Inc.,* 599 F.3d 1343, 1350 (Fed. Cir. 2010) (citing 35 U.S.C. § 112, ¶ 2).  The definiteness

26   requirement "focuses on whether the claims, as interpreted in view of the written description,

27   adequately perform their function of notifying the public of the [scope of the] patentee's right to

28

United States District Court
Northern District of California

1    exclude." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n,* 341 F.3d 1332, 1338 (Fed. Cir. 2003)

2    (citation and internal quotation marks omitted).

3         To comport with Section 112's definiteness requirement, the boundaries of the claim must

4    be discernible to a skilled artisan based on the language of the claim, the specification, and the

5    prosecution history, and the knowledge in the relevant field of art.  *See id.* 1338-1340;

6    *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).  A claim is

7    indefinite when it is "not amenable to construction or [is] insolubly ambiguous." *Datamize LLC v.*

8    *Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005).  "A claim is not indefinite merely

9    because it poses a difficult issue of claim construction." *Power–One,* 599 F.3d at 1350 (citation

10   omitted).  "Rather, if the meaning of the claim is discernible, even though the task may be

11   formidable and the conclusions may be one over which reasonable persons will disagree, . . . the

12   claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." *Id.* (citation and

13   internal quotation marks omitted).  "An accused infringer must thus demonstrate by clear and

14   convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries

15   of the claim based on the claim language, the specification, the prosecution history, and the

16   knowledge in the relevant art." *Haemonetics*, 607 F.3d at 783.  "[C]lose questions of

17   indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."

18   *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1371 (Fed. Cir. 2004) (citation

19   and internal quotation marks omitted).

20        "A determination of claim indefiniteness is a legal conclusion that is drawn from the

21   court's performance of its duty as the construer of patent claims," and "like claim construction, [it]

22   is a question of law." *Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed. Cir.

23   1999).  Therefore, it is appropriate for the Court to address indefiniteness issues at the claim

24   construction stage.  *See Exxon Research and Eng'g Co. v. U.S.,* 265 F.3d 1371, 1376 (Fed. Cir.

25   2001).

26        **1.     "Embedded *with* Informational Content"**

27        Defendants argue that "layers of indefiniteness plague 'computer program code segments

28   embedded with informational content.'"  ECF No. 404 at 30.  They assert that "one of ordinary

*United States District Court*
*Northern District of California*

1    skill in the art does not know what is the substrate and what is the embedded material." *Id.*  In

2    other words, one of ordinary skill would not know whether (1) "the code is embedded within the

3    information," (2) "the information is embedded within the code," or (3) "the information and the

4    code are peers, both embedded 'with' each other inside something else. *Id.*

5           In light of the specification, however, the term can be construed as "instructions for a

6    computer to execute embedded within informational content." *See Power–One,* 599 F.3d at 1350

7    ("[I]f the meaning of the claim is discernible, . . . the claim [is] sufficiently clear to avoid

8    invalidity on indefiniteness grounds.").  The Court's construction is based on the patent's repeated

9    disclosure of embodiments with computer program code embedded *within* informational content.

10   ECF No. 408 at 17-18; *see, e.g.,* ECF No. 1-1 at col. 4, lines 48-51 ("In one embodiment, a

11   method for delivering the interactive links includes storing at a first remote source (e.g., a content

12   provider) informational content (e.g., applications and information) having computer program

13   code embedded therein."); *id*. at col. 4, lines 54-62; *id*. at col. 6, lines 7-9; *id.* at col. 6, lines 21-

14   24.[3]  This consistent disclosure, coupled with an absence of embodiments where the information is

15   embedded within code or the information and code are both embedded inside something else,

16   affords those skilled in the art "reasonable certainty" that the invention encompasses code

17   embedded *within* informational content.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S.

18   898, 910 (2014) (Section 112 "require[s] that a patent's claims, viewed in light of the specification

19   and prosecution history, inform those skilled in the art about the scope of the invention with

20   reasonable certainty.").

21              **2.      "Informational Content"**

22          Defendants also argue that "one of ordinary skill in the art would not know what

23   'informational content' is in claim 26." ECF No. 404 at 41.  Contrary to Defendants' assertions,

24   however, claim 26 provides context which explains the nature of the recited informational content.

25   In particular, the claim discloses that "computer program code segments" embedded within

26

27   [3] In addition to these explicit examples, there are also several examples of language which
     describe "links" and "droplets" contained within informational content.  *See, e.g.,* ECF No. 1-1 at
28   col. 5, lines 10-17; *id.* at col. 8, lines 13-15; *id.* at col. 8, lines 37-40; *id.* at col. 14, lines 36-42.

United States District Court
Northern District of California

1    "informational content" is delivered to a requesting client computer which "retriev[es]

2    *presentational information*" and then "present[s] at each of said client computers, . . . said

3    applications and said *first information* based on said *presentational information*."  Defendants

4    have not established by clear and convincing evidence that "informational content" is insolubly

5    ambiguous.  *Datamize,* 417 F.3d at 1347 (Fed. Cir. 2005) (A claim is indefinite when it is "not

6    amenable to construction or [is] insolubly ambiguous.").

7         In sum, the Court rejects Defendants' argument that the term at issue is indefinite and

8    construes the term as "instructions for a computer to execute embedded within informational

9    content."

10   ## I.    "Application" (Claims 1, 17, 26)

11        The parties agree that the term "application" should be construed to mean "a software

12   program that executes specific tasks for an end user."  ECF No. 368-1 at 2.  The Court adopts this

13   construction.

14                          ## CONCLUSION

15        The court construes the eight disputed terms as follows:

| Disputed Term(s) | Construction |
|---|---|
| "interactive link"<br><br>"link" | "computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL)." |
| "computer program code"<br><br>"program code" | "Computer Program Code" and "Program Code" have their plain meaning. However, a "web address" or "hyperlinks" cannot be "computer program code" or "program code" |
| "operating environment" | operating system, user interface, or hardware capabilities" |

United States District Court
Northern District of California

14

| | |
|---|---|
| Preamble to Claim 1: "In a network configured computer processing system having a plurality of client computers and a plurality of host computers, a method for delivering interactive links for presenting applications and information from remote sources on the network, the method comprising: . . ." <br><br> Preamble to Claim 17: "A network configured computer processing system, comprising: . . ." | Preambles are not limiting. |
| "presentation information for presenting an application" <br><br> "presentational information" | Plain meaning.  No construction required. |
| "presenting applications" <br><br> "presenting the application" <br><br> "presenting said invoked application" <br><br> "presenting of the application" | "presenting an interface enabling interaction with an application" |
| "presentation client program code" <br><br> "presentation client" | "platform independent software, running on a client computer, that can present remotely stored applications and that can transmit user input to remotely stored applications" |
| "computer program code segments embedded with informational content stored at a second of said plurality of server computers" | "instructions for a computer to execute embedded within informational content" |
| "application" | "a software program that executes specific tasks for an end user" |

**IT IS SO ORDERED.**

Dated:  December 20, 2019

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

15