Courtland L. Reichman (CA Bar No. 268873)
creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
sballard@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
mflanigan@reichmanjorgensen.com
Kate M. Falkenstien (CA Bar No. 313753)
kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Park Avenue, Suite 1600
New York, NY 10017
Telephone: (212) 381-1965
Telecopier: (650) 623-1449

Attorneys for Plaintiff
*Droplets, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

DROPLETS, INC.,

                 Plaintiff,

    v.

YAHOO!, INC.,

                 Defendant.

OATH INC. AND OATH HOLDINGS, INC.,

                 Intervenor- Plaintiffs,

    v.

DROPLETS, INC.,

                 Intervenor-Defendant.

Case No. 12-cv-03733-JST

**DROPLETS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DROPLETS' THIRD AMENDED INFRINGEMENT CONTENTIONS**

DROPLETS, INC.,

                           Plaintiff,

         v.

NORDSTROM, INC.,

                        Defendant.

Case No. 12-cv-04049-JST (KAW)

**DROPLETS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DROPLETS' THIRD AMENDED INFRINGEMENT CONTENTIONS**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................4

III.    STATEMENT OF LAW..........................................................................................6

IV.     ARGUMENT ...........................................................................................................9

      A.      Droplets Has Disclosed Its Infringement Theories, Including Source Code Citations, In Compliance With Rule 3-1........................................................9

              1.      Droplets Has Properly Identified "Interactive Links" In Defendants' Accused Products, Including Specific Portions Of Code. .................9

              2.      Rule 3-1 Does Not Require Pinpoint Citations to Code. .................14

      B.      Defendants' Source Code Productions Are Grossly Deficient, Thereby Necessarily Limiting What Droplets Can Identify In Its Contentions.......................15

      C.      Defendants' Assertions of Purported Deficiencies Are Without Merit. .....................16

              1.      Droplets' Contentions Expressly Identify "Where and How" Interactive Links are Selected. ....................................................................17

              2.      Droplets Expressly Identifies Where and How Previous Operating States Are Restored....................................................................17

              3.      Droplets Expressly Identifies Where and How the "Interactive Link" Is "Stored."....................................................................17

              4.      Droplets Does Not Rely On "Open-Ended" File Citations............................18

              5.      Droplets' Identification of "Interactive Link" Is Consistent...........................19

              6.      Droplets Properly Discloses a Doctrine of Equivalents Theory for the "Interactive Link." .....................................................................19

              7.      Defendants Know What "Search History" Is and Its Relation to Droplets' Infringement Theories....................................................................21

              8.      Droplets Expressly Identifies Where And How The Limitations Of Claims 43 And 92 Are Met. ....................................................................22

V.      CONCLUSION......................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*02 Micro Int'l. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) ........................10

*Adobe Sys. Inc. v. Wowza Media Sys.*,
   No. 11-cv-2243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) ............................16

*Avago Techs., Inc. v. IPtronics Inc.*,
   2015 WL 4647923 (N.D. Cal. Aug. 5, 2015) ....................................................9

*Bender v. Advanced Micro Devices, Inc.*,
   2010 WL 363341 (N.D. Cal. Feb. 1, 2010) .....................................................9

*Blue Spike, LLC v. Adobe Sys., Inc.*,
   2015 WL 335842 ........................................................................10, 24

*DCG Sys. v. Checkpoint Techs., LLC*,
   2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ..............................................8, 9

*Droplets, Inc. v. Amazon.com, Inc.*,
   2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) .............................................8, 17

*Droplets, Inc. v. eBay, Inc.*,
   No. 2:11-cv-00401 (E.D. Tex. Sept. 11, 2011) ................................................6

*Dynamic Digital Depth Research Pty Ltd. v. LG Electronics, Inc.*, 2016 WL 7448294
   (C.D. Cal. June 7, 2016) ............................................................ *passim*

*Finjan Inc. v. Proofpoint, Inc.*,
   2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) .............................................9, 16

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-cv-2621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ..........................17

*Finjan, Inc. v. SonicWall, Inc.*,
   No. 17-cv-4467-BLF (VKD), 2019 WL 2077849 (N.D. Cal. May 10, 2019)................17, 18

*Geovector Corp. v. Samsung Elecs.*,
   2017 WL 76950 (N.D. Cal. Jan. 9, 2017) ....................................................10

*Grecia v. Apple Inc.*,
   2015 WL 81893 (N.D. Cal. Jan. 5, 2015) .....................................................8

*Keithley v. The Homestore.com, Inc.*,
   553 F. Supp. 2d 1148 (N.D. Cal. 2008) ......................................................10

*Netlist, Inc. v. Smart Storage Systems Inc.*,
   2014 WL 1320325 (N.D. Cal. Apr. 4, 2014) ........................................................................8

*OptimumPath, LLC v. Belkin Int'l, Inc.*,
   2011 WL 1399257 (N.D. Cal. Apr. 12, 2011), *aff'd*, 466 F.App'x 904 (Fed Cir.
   2012), *reh'g denied* (Apr. 6, 2012) ...................................................................................10

*Rambus Inc. v. Hynix Semiconductor Inc.*,
   2008 WL 5411564 (N.D. Cal. Dec. 29, 2008) ....................................................................10

*SAGE Electrochemics Inc.*, 2013 WL 4777164, at *3 (N.D. Cal. Sept. 6, 2013 ...................8

*Shared Memory Graphics LLC v. Apple, Inc.*,
   812 F. Supp. 2d at 1024 ........................................................................................................9

*Uni-Splender Corp. v. Remington Designs, LLC*,
   2017 WL 4786085 (C.D. Cal. Aug. 10, 2018) ......................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 11 ...........................................................................................9

1  Plaintiff Droplets, Inc. ("Droplets") hereby responds to the Motion to Strike Droplets, Inc.'s

2  Third Amended Infringement Contentions ("Motion," *Yahoo* Dkt. No. 424), filed by Defendants

3  Nordstrom, Inc. ("Nordstrom") and Yahoo!, Inc. ("Yahoo") (collectively "Defendants").

4  **I.    INTRODUCTION**

5  Defendants have filed what amounts to an undercover summary judgment motion, seeking to

6  strike infringement contentions based on the sufficiency of infringement evidence.   Contentions,

7  however, are simply a tool to provide notice to a defendant of the plaintiff's infringement theories,

8  not to catalogue all evidence of infringement.   Defendants' motion is particularly inappropriate

9  because they have failed to provide the discovery necessary to supplement infringement contentions.

10  They seek to rely on a "catch 22": striking contentions for not citing the very evidence Defendants

11  failed to produce.

12  Droplets and Defendants agree on one point: the interactive link is central to this case.   Yet

13  despite this centrality, Defendants submitted with their Motion a highly edited version of Droplets'

14  infringement contentions that excludes much of the information and descriptions Droplets identifies

15  with respect to "interactive link," including pinpoint source code citations that Defendants' Motion

16  complains are missing.

17  For example, for representative claim 1, Defendants' Motion includes excerpts of Droplets'

18  Contentions for the preamble and final limitation but omits everything in between.   At first blush,

19  this may seem reasonable because the term "interactive link" only appears in the preamble and the

20  final limitation.   But, as Defendants are well aware, under the claim language itself and the Court's

21  construction of "interactive link," the "computer code" comprising the "interactive link" is implicated

22  across *all* the elements, not merely the preamble and last limitation.[1]   Droplets' contentions recognize

---

[1] Representative Claim 1:

1. In a network configured computer processing system having a plurality of client computers and a plurality of host computers, a method for delivering **interactive links** for presenting applications and information from remote sources on the network, the method comprising:

retrieving, in response to a request of a client computer, over a first communication

this, and plainly cross-reference citations from all of the elements to identify evidence relating to "interactive link":

**Droplets' Third Amended Infringement Contentions for Nordstrom, Inc.**

| USP 6,687,745[1] | The Nordstrom Accused Instrumentalities |
|---|---|
| **Claim 1pre** | |
| In a network configured computer processing system having a plurality of client computers and a plurality of host computers, a method for delivering interactive links for presenting applications and information from remote sources on the network, the method comprising: | Droplets accuses Nordstrom's webpages/websites that display applications and that, in response to user interaction, can update the display of the application based on information received from a Nordstrom application server without loading a new webpage/website ("Nordstrom Accused Webpages/Websites"). The "Accused Functionalities" comprise all hardware and software combinations that operate any of the Nordstrom Accused Webpages/Websites. As explained herein, each of the Accused Functionalities infringes U.S. Patent No. 6,687,745 ("the '745 patent").<br><br>To the extent the preamble is limiting, all Accused Functionalities meet this claim limitation. Nordstrom maintains computers that host a variety of webpages/websites that remotely deliver interactive links—for presenting applications and information—to client computers over a network (e.g., via the Internet, Nordstrom web servers deliver information for presenting the Nordstrom Accused Webpages/Websites and Nordstrom applications servers deliver information for presenting and updating applications on those webpages/websites). |
| | *See* claim 1a-1e. |

connection first information having computer program code embedded therein and executing the embedded computer program code for establishing a second communication connection to a second host computer;

sending second information relating to the operating environment of the client computer, from the client computer to the second host computer;

retrieving, over the second communication connection, third information including presentation information for presenting an application and fourth information, the presentation information being based on the second information;

presenting, at the client computer, the application and the fourth information based upon the presentational information; and

storing, on the client computer, **an interactive link** for selectively re-establishing the second communication connection to the second host computer for retrieving the third information and presenting the application and the fourth information.

The Court construed "interactive link" to mean (*Yahoo* Dkt. No. 429 at pp. 4-5):

computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL).

| Claim 1e | |
|---|---|
| storing, on the client computer, an *interactive link* for selectively re-establishing the second communication connection to the second host computer for retrieving the third information and presenting the application and the fourth information. | All Accused Functionalities meet this claim limitation.  When a client computer requests access to Nordstrom Accused Webpages/Websites (e.g., by entering a url for a Nordstrom Accused Webpage/Website into a web browser or otherwise connecting to a url for a Nordstrom webpage/website), a host computer (e.g., a Nordstrom web server) sends first information (e.g., HTML, CSS, javascript, and/or other files) that is used to present the Nordstrom Accused Webpage/Website to the client computer using a first communication connection (e.g., via the Internet).  The first information includes embedded code that, when executed, establishes a second communication connection to a second host computer (e.g., HTML and/or javascript code from the "first information" execute, such as when the user interacts with an application on the webpages/website, to establish a connection via the Internet with a Nordstrom application server).  The client computer sends second information relating to its operating environment to the second host computer (e.g., client information, such as information about operating system, user interface, hardware capabilities, IP address, user-agent, device type, cookies, etc., is sent from the client to a Nordstrom application server as part of or along with a GET request).  The second host computer then sends third information that includes presentation information for presenting an application (e.g., the Nordstrom application server sends data, such as metadata about text and/or images |
| | *See supra* claim 1a-1d. |

Defendants' Motion omitted contentions relating to elements 1a-1d, thereby creating the illusion that Droplets did not map the accused products to the "interactive link" limitation, including the numerous pinpoint citations to client-side code.  Droplets' *complete* Third Amended Contentions for Nordstrom and for Yahoo, which show the rich detail omitted by Defendants, are attached to the Declaration of Jaime F. Cardenas-Navia, filed concurrently herewith as Exhibits A and B, respectively.[2]  Droplets' Contentions include narratives, screenshots, and specific citations from publicly available, client-side code (the only code Droplets had access to[3]) to identify the interactive link, and are well within the requirements set forth in Rule 3-1.

Defendants' claim that Droplets does not need anything more that publicly available client-side code to fully identify the interactive link cannot withstand scrutiny.  The interactive link computer code, which is stored on the client-side, necessarily interrelates with and depends on the server-side code.  Even if Droplets had full access to the client-side code (which it does not[4]), Droplets would still only have part of a necessary whole.  The contentions are more than sufficient to put Defendants on notice of Droplets' infringement theories, but if supplementation is required, it should

---

[2] All citations to lettered exhibits refer to exhibits to the Declaration of Jaime F. Cardenas-Navia.

[3] Defendants had not produced any source code when Droplets served its operative contentions. Nordstrom has since made a deficient production of client- and server-side code, while Yahoo has still not produced any code.

[4] Droplets can only access and analyze the client-side code for the particular version of a website that is in operation; it cannot access or analyze prior versions of a website.

1    be after Defendants produce the required technical documentation and source code.

2    **II.    STATEMENT OF FACTS**

3          On May 31, 2011, Droplets brought this action against Nordstrom and Yahoo in the Eastern

4    District of Texas.   *Droplets, Inc. v. eBay, Inc.*, No. 2:11-cv-00401 (E.D. Tex. Sept. 11, 2011).

5    Pursuant to the local rules of the district, Droplets served its initial Infringement Contentions on April

6    6, 2012.

7          In July 2012, the case was transferred to the Northern District of California.   *Yahoo* Dkt. No.

8    371-3 at 93-112.   On November 9, 2012, Defendant Yahoo moved to compel, and the Court granted

9    an order compelling, Droplets to supplement its infringement contentions.   *Yahoo* Dkt. Nos. 203, 258.

10   On May 28, 2013, the Court entered a Protective Order, which contained procedures for the

11   production of source code.   *Nordstrom* Dkt. 48; *Yahoo* Dkt. No. 251.   Nordstrom has produced very

12   limited and largely incomplete client-side source code to date, while Yahoo has produced none.

13         The case was stayed from November 14, 2013 until October 31, 2018.   *Yahoo* Dkt. No. 310.

14   On March 22, 2019, Droplets served its Second Amended Infringement Contentions, which added

15   narratives and explanatory language to accompanying screenshots of Defendants' accused sites, as

16   well as citations to publicly available client-side source code.   Droplets' Second Amended

17   Infringement Contentions also significantly streamlined its prior contentions by eliminating

18   duplicative material.

19         On April 10, 2019, Defendants sent a letter to Droplets, complaining that Droplets had not

20   provided adequate contentions regarding the "interactive link" limitation. Ex. 4.[5]   On May 24, 2019,

21   Droplets served its Third Amended Infringement Contentions, which supplemented (1) narratives to

22   explain accompanying screenshots and excerpts of code used to map the accused websites to the

23   claims;[6] (2) evidence showing how Defendants induce users to use their websites in an infringing

24   manner;[7] (3) language explaining how the interactive link in Defendants' webpages restore previous

25

26         [5] Citations to numbered exhibits refer to exhibits to the Declaration of Benjamin Kleinman
     (*Yahoo* Dkt. No. 159-1).

27         [6] Ex. A at 11, 21, 30, 32, 38.
           [7] *Id.* at 18.

28

1   operating states;[8] (4) language explaining Droplets' doctrine of equivalents theory;[9] (5) language

2   explaining how the first server delivers informational content in response to a request from client

3   computers in connection with Claim 17b;[10] (6) language explaining the operation of the interactive

4   link in connection with Claims 17e and 26b;[11] and (7) language explaining how Claims 43 and 92 are

5   linked to the Accused Instrumentalities.[12]

6          On July 1, 2019, Defendants again complained that they were dissatisfied with Droplets'

7   contentions concerning "interactive link."  Ex. 6.  The parties met and conferred on October 4, 2019,

8   the substance of which was summarized in a letter from Droplets to Defendants on October 7, 2019.

9   Ex. 7.  Droplets explained that it had "mapped the Accused Webpages/Websites to [interactive link]

10  using a combination of narrative, screenshots, videos, documents, code excerpts, and message

11  captures that are more than sufficient to place Defendants on notice of Droplets' infringement

12  theories."  *Id.*  Droplets also noted that absent additional discovery and a clearer explanation as to

13  what Defendants believed to be missing, Droplets was at a loss as to what "more" Defendants claimed

14  they were entitled to.  *Id.*  Droplets followed up on October 4th and 7th, asking Defendants to identify

15  any alleged deficiencies with particularity, making clear that Droplets would consider them.  *Id.*  In

16  attempt to bridge any gaps in understanding, Droplets explained that it was relying on "the evidence

17  and explanations that is provided for claim limitations 1a-1d" to identify "interactive link."  *Id.*

18         Defendants' reply of October 23, 2019 provided none of the requested specificity, and instead

19  threatened a motion to strike.  Ex. 8.  Droplets replied on November 3, 2019, reiterating that

20  Defendants had not identified what it claimed was missing regarding "interactive link" and again

21  reminded Defendants of their lack of discovery, the provision of which is necessary to enable further

22  supplementations.  Ex. 9.

23         Defendants replied on November 7, 2019, stating they would seek court intervention (Ex. 10),

24

25         [8] *Id.* at 69-72.

26         [9] *Id.* at 71.

           [10] *Id.* at 74

27         [11] *Id.* at 77, 79.

28         [12] *Id.* at 86.

1    and on December 10, 2019, Defendants filed this Motion.

2           Defendants' productions of discovery have been and continue to be deficient.  This case has

3    been pending for over eight years.  Yet as of November 6, 2019, Nordstrom had produced less than

4    200 documents, only 30 of which are technical in nature, covering only some of its accused

5    instrumentalities, and for only a portion of the relevant time period.[13]  Despite its clear obligations

6    under the Federal Rules of Civil Procedure to maintain records relevant to this litigation, Yahoo has

7    yet to produce *any* source code, claiming that it no longer has possession of the information following

8    its asset transfer to Oath Holdings, Inc. and Oath, Inc.  *See* Ex. C at 23-24.

9    **III.   STATEMENT OF LAW**

10          Patent Local Rule 3-1 requires that a party claiming patent infringement serve on all parties a

11   "Disclosure of Asserted Claims and Infringement Contentions," which must include a chart detailing

12   where and how each asserted claim is found within each allegedly infringing Accused

13   Instrumentality.  Pat. L.R. 3-1.  As a tool designed to streamline discovery, Rule 3-1 does not require

14   the "disclosure of specific evidence" nor does it require "a plaintiff to prove its infringement case."

15   *Netlist, Inc. v. Smart Storage Systems Inc.*, 2014 WL 1320325, at *2 (N.D. Cal. Apr. 4, 2014) (quoting

16   *DCG Sys. v. Checkpoint Techs., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).  Rather,

17   the rules require only that a patentee disclose, to the extent the appropriate information is reasonably

18   available to it, what it contends practices each limitation of each asserted claim.  *DCG Sys.*, 2012 WL

19   1309161 at *2; *see also Droplets, Inc. v. Amazon.com, Inc.*, 2013 WL 1563256, at *1 (N.D. Cal. Apr.

20   12, 2013).

21          Courts in this district have routinely found that infringement charts with factual bases for a

22   patentee's infringement allegations satisfy Rule 3-1.  Such charts may set forth a combination of

23   different materials, including narratives, technical documents, and screenshots.  *See, e.g., Grecia v.*

24   *Apple Inc.*, 2015 WL 81893, at *2 (N.D. Cal. Jan. 5, 2015) (finding contentions that described

25   infringement using screenshots and narratives sufficient under Rule 3-1); *SAGE Electrochemics Inc.*,

26

27          [13] On November 6, 2019, Droplets and Nordstrom sent a joint letter to the Court requesting the
     Court's assistance in resolving a discovery dispute regarding Nordstrom's failure to produce certain
28   technical documents required by Patent Local Rule 3-4(a).  *Nordstrom* Dkt. No. 155 at 1.

2013 WL 4777164, at *3 (N.D. Cal. Sept. 6, 2013) (finding contentions mapping to alleged infringer's patent sufficient). Courts have made clear that the role of Rule 3-1 should be to provide "reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement"; it should not be used as an alternate way of implementing Federal Rule of Civil Procedure 11. *Shared Memory Graphics, LLC* 2011 WL 3878388, at *4 (citations and quotation marks omitted); *accord Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d at 1024 ("[A]pplication of Rule 11 should be left to the assigned judge and not handle[d] *sub rosa* via the instant motion under Local Rule 3-1.") Consistent with the function of the Patent Local Rules, this Court has further noted that the rules do not "require a plaintiff to identify *each term* in the Accused Instrumentality," although identifying an association between the evidence and the language used in the claim limitations may be necessary. *Id.* at *5.[14]

In patent cases involving software, pinpoint citations to source code are not *per se* required under Rule 3-1. *See Finjan Inc. v. Proofpoint, Inc.*, 2015 WL 9023166, at *3 (N.D. Cal. Dec. 16, 2015) (finding no authority "holding that pinpoint citations are the *only* way to meet [Rule 3-1's] requirements").

Even where a patentee's infringement contentions do not satisfy the Patent Local Rules, striking a patentee's infringement contentions is generally a disfavored sanction, and courts in this district have noted that it should be used sparingly. *Avago Techs., Inc. v. IPtronics Inc.*, 2015 WL 4647923, at *2 (N.D. Cal. Aug. 5, 2015) ("Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause."); *see also Bender v. Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1-2 (N.D. Cal. Feb. 1, 2010); *DCG Sys., LLC.*, 2012 WL 1309161

---

[14] Droplets disagrees with Defendants' assertion that its motion is procedurally proper. Mot. to Strike at 16. Infringement contentions are "essentially a 'discovery device' intended to streamline the discovery process by taking the place of a series of interrogatories that defendants would likely have propounded." *Uni-Splender Corp. v. Remington Designs, LLC*, 2017 WL 4786085, at *3 (C.D. Cal. Aug. 10, 2018) (quoting *Bender v. Freescale Semiconductor, Inc.*, 2010 WL 1689465, at *1 (N.D. Cal. Apr. 26, 2010). Motions challenging the sufficiency of infringement contentions are therefore discovery motions, and subject to the rules regarding discovery motions in this Court's Standing Order for Civil Cases. Moreover, having a joint letter would have been particularly helpful here, as it would have forced Defendants to meet and confer with Droplets about its disputes, rather than improperly raising several of them for the first time in this Motion.

1   at *2.  On this basis, many courts presented with a motion to strike choose to treat it as a motion to

2   compel, *Geovector Corp. v. Samsung Elecs.*, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017) ("[M]any

3   [courts] have simply compelled the asserting party to file compliant infringement contentions."),

4   while others "have required party asserting infringement to show good cause before being granted

5   leave to amend" (*id*).  Courts in this district that do not convert a motion to strike into a motion to

6   compel have considered, when evaluating whether "good cause" exists for granting leave to amend,

7   whether a patentee has been diligent in amending its contentions and whether amendment will

8   prejudice the non-moving party.  *Blue Spike, LLC v. Adobe Sys., Inc.*, 2015 WL 335842 at *4 n.3;

9   *accord 02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)

10  (Northern District of California Patent Local Rules' "good cause" standard for amendment requires

11  a showing of diligence.").  The bar for establishing "good cause" is generally low.  *Blue Spike,* 2015

12  WL 335842 at *4 n.3.

13          The Patent Local Rules additionally require that a patentee disclose "[w]hether each element

14  of each asserted claim is claimed to be literally present or present under the doctrine of equivalents

15  in the Accused Instrumentality."  *Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at

16  *3 (N.D. Cal. Dec. 29, 2008) (citing Patent L.R. 3-1(d); 3-6(a)).  Historically, simply stating that

17  "[e]ach element of each asserted claim is either literally present in each of the [Accused

18  Instrumentalities], and/or is present under the doctrine of equivalents" was considered to be sufficient.

19  *Keithley v. The Homestore.com, Inc.*, 553 F. Supp. 2d 1148, 1151 (N.D. Cal. 2008).  But recent case

20  law requires that parties link any substantial similarities regarding instrumentalities to particular

21  claims or limitations.  *OptimumPath, LLC v. Belkin Int'l, Inc.*, 2011 WL 1399257, at *8 (N.D. Cal.

22  Apr. 12, 2011), *aff'd*, 466 F.App'x 904 (Fed Cir. 2012), *reh'g denied* (Apr. 6, 2012); *Dynamic Digital

23  Depth Research Pty Ltd. v. LG Electronics, Inc.*, 2016 WL 7448294, at *5 (C.D. Cal. June 7, 2016)

24  (Northern District of California Patent Local Rules require that "plaintiff must assert substantial

25  similarities between its invention and the alleged infringing product" and "link the similarities to

26  particular claims or limitations within the patent or patents at issue").

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    ARGUMENT

Defendants argue that Droplets' Third Amended Infringement Contentions ("Contentions") are deficient because Droplets allegedly did not identify the claimed "interactive links" with sufficient citations to source code, including pinpoint citations.  Defendants' argument fails because Droplets has identified pinpoint code citations for "interactive link" wherever possible and the lack of additional citations stems directly from Defendants' inadequate (or altogether missing) productions and the limitations inherent in publicly available code

### A.    Droplets Has Disclosed Its Infringement Theories, Including Source Code Citations, In Compliance With Rule 3-1.

#### 1.    Droplets Has Properly Identified "Interactive Links" In Defendants' Accused Products, Including Specific Portions Of Code.

Droplets' Contentions identify the "interactive links" in Defendants' accused websites and provide a detailed narrative, including screenshots of Defendants' websites and the client computer that capture particular functionality and features, messages sent between the client and remote servers that were captured using multiple specialized software programs, and, where possible, excerpts of the client-side code.

As noted above, the term "interactive link" has been construed to mean:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL).

*Yahoo* Dkt. No. 429 at 4-5.  As such, the "interactive link" is implicated in each "step" of representative Claim 1.  For example, as illustrated using a slide from Droplets' Technology Tutorial, an "interactive link" can be sent as part of webpage files that are delivered when a user accesses a webpage, where the claimed "computer program code embedded therein" is the "interactive link" code:

1
2
3
4
5
6
7
8
9
10
11
12



13  That embedded code, *i.e.*, the interactive link, then causes the client to send a message to the remote

14  application server, setting in motion the retrieval and display of the application at the client.  Droplets'

15  Contentions expressly identify "where and how" each limitation is found in Defendants' websites,

16  including by providing specific source code citations.  *See, e.g.,* Ex. A at 20-30.  In particular, using

17  Nordstrom's "Search Suggest" feature as an exemplar, Droplets' Contentions step through each

18  element of the asserted claim and identifies, through a combination of explanatory narratives,

19  screenshots, and source code, where the relevant portions of the "interactive link" come into play.

20
21
22
23
24
25
26
27
28

1   For example, in the **Preamble** (which the parties agree is not limiting), Droplets identifies the

2   "interactive link" as the webpage code that provides the search bar with the capability to display

3   search suggestions when the user enters or deletes text in the search bar or selects the search bar:



13   Nordstrom maintains a plurality of computers that host shop.nordstrom.com, and which
    deliver interactive links (e.g., the HTML, CSS, javascript, and/or other files that contain the

14   embedded code needed to present the search bar and provide its functionality) to a plurality
    of client computers via a network (e.g., the Internet).  When the user enters text (e.g., "c") into

15   the search bar (or deletes text), an application runs that causes a list of selectable search
    suggestions to appear and/or update (e.g., "chanel," "la mer," "christian louboutin," etc.).

16   Alternatively, when the user selects the search bar, an application runs that causes a list of
    selectable search suggestions to appear and/or update (e.g., previously entered search terms,

17   such as "prada" and "Chanel").

19   *Id.*  This description is followed by screenshots of the Search Suggest feature being used.  *Id.*

20   For **element 1a**, which requires "executing the embedded computer program code," the

21   interactive link is necessary "for establishing a second communication connection to a second host

22   computer."  Ex. A at 19.  Droplets' Contentions identify the embedded code, *i.e.,* the interactive link,

23   as the "HTML and/or javascript code" that executes "when a user enters or deletes text in the search

24   bar or selects the search bar, to establish a connection via the Internet with a Nordstrom application

25   server for the application that handles the search suggest functionality."  *Id.* at 19-20.   The

26   Contentions also identify, with specificity, "interactive link" code that is executed to establish the

27   connection to the remote application server when a user types into the search bar (*id.* at 20-29),

28

1  followed by a capture of the message that is sent from the client to the remote application server,

2  which is generated using the "interactive link" code that Droplets identified (*id.* at 29-30).  The code

3  and message are introduced with explanatory text.  Ex. A at 20 ("Below are exemplary screenshots

4  of embedded HTML and javascript code that, when executed, establish a second communication

5  connection to a second host computer (e.g., a connection is established via the Internet with the

6  Nordstrom application server) when the user enters "c" into the search bar."), 29 ("Below is an

7  exemplary screenshot of a GET request that establishes a second communication connection to a

8  second host computer (e.g., this request is a communication, via the Internet, between the client

9  computer and the Nordstrom application server) when the user enters "c" into the search bar.").)  The

10  Contentions also identify the specific source file from which the code was excerpted.  Ex. A at 29

11  ("Source: JavaScript excerpt from shop.nordstrom.com").

12      **Element 1b** requires "sending second information relating to the operating environment of

13  the client computer, from the client computer to the second host computer," which Droplets identifies

14  using captures of the messages containing the "operating environment" information that are sent from

15  the client to the server, preceded by explanatory text.  *Id.* at 31-35.

16      **Element 1c** requires "retrieving, over the second communication connection, third

17  information including presentation information for presenting an application and fourth information,

18  the presentation information being based on the second information."  (*Id.* at 35-36.)  Droplets

19  includes captures of the messages from the server to the client that contain presentation information

20  to present the search suggestions.  (*Id.* at 39-47.)  Droplets also includes "interactive link" code that

21  is executed to present the search suggestions at the client.  (*Id.* at 47-59.)  These messages and code

22  are preceded by explanatory text.  (*Id.* at 39.)

23      **Element 1d** requires "presenting, at the client computer, the application and the fourth

24  information based upon the presentational information," which Droplets identifies using screenshots

25  of the search suggestions being displayed to the user, along with explanatory text.  *Id.* at 64-66.

26      **Element 1e** requires "storing, on the client computer, an interactive link for selectively re-

27  establishing the second communication connection to the second host computer for retrieving the

28

1  third information and presenting the application and the fourth information," which Droplets
2  identifies as the webpage files containing the interactive link that are stored on the client computer.
3  Ex. A at 68-69 ("An interactive link (e.g., the HTML, CSS, javascript, and/or other files that contain
4  the *embedded code* needed to present the search bar and provide its functionality) is stored on the
5  client computer (e.g., in the memory, cache, and/or hard drive).") (emphasis added).  The Contentions
6  also include a screenshot of the stored webpage files, explaining that "the files and code that can
7  display the search bar and perform the above functionalities are stored in a Google Chrome cache
8  folder." *Id.* at 69.

9       Droplets also explains how the interactive link can selectively re-establish the connection to
10  the application server to retrieve and present the remote application, including to present previous
11  operating states of the application: "As described above, this interactive link can establish (and re-
12  establish, e.g., when the user interacts with the search bar and causes it to update the search
13  suggestions, including to cause the same application display as from a previous session, *such as by*
14  *re-entering a previously entered search string into the search bar or re-selecting the search bar to*
15  *show the previously displayed recent search history*) a second communication connection with a
16  second host computer for retrieving the third information and presenting the application and fourth
17  information." *Id.* at 69 (emphasis added).  Unsurprisingly, re-use of the interactive link simply
18  requires repeating the actions that were first used to invoke its functionality.  For Search Suggest, that
19  means entering or deleting text into the search bar (which updates the displayed search suggestion)
20  or again selecting the search bar (which causes past searches to be displayed as search suggestions).

21       When use of the "interactive link" results in the presentation of information that was
22  previously displayed to the user, then a previous operating state has been restored.  Droplets'
23  Contentions include examples of this for Search Suggest, such as "again selecting the search bar
24  (which causes past searches to be displayed as search suggestions)." *Id.*

25
26
27
28

1    As shown in the screenshot below, when a user selects the search bar, previous searches are

2    displayed (*id.* at 3):



13    Each of the search suggestions are a previous operating state, as the user had previously entered them

14    into the search bar.  This is analogous to the patent's description of a Stock Watcher application,

15    where a user can add stocks to a list of "watched" stocks and return later to view these stocks.  Ex. E

16    at 25:28-54.  Put simply, here, the user's past searches are automatically saved when they are entered

17    and can be re-accessed by selecting the search bar.  Droplets' Contentions provide similar analyses

18    for the other accused features on Defendant's website.  *See, e.g.*, Ex. A at 6 (Add to Shopping Bag);

19    Ex. B at 2, 8, 15 (Yahoo Search, Mail, and Maps)

20              **2.    Rule 3-1 Does Not Require Pinpoint Citations to Code.**

21         As this Court has previously held, while patent holders are required to disclose their theories

22    of infringement; they are not "required to list every bit of [] source code that supports" their theories.

23    *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-cv-2243-JST, 2014 WL 709865, at *16 (N.D. Cal. Feb.

24    23, 2014); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-5808-HSG, 2015 WL 9023166, at *3 (N.D. Cal.

25    Dec. 16, 2015) (finding, "pinpoint citations to source code are not a *per se* requirement in patent cases

26    involving software").  Indeed, when Yahoo moved to compel additional infringement contentions in

27    2012, the Court did not require pinpoint citations to source code, but merely an explanation of the

28

1  screenshots in its infringement Contentions that tied them to the limitations of each claim. *Droplets,*

2  *Inc. v. Amazon.com, Inc.*, 2013 WL 1563256, at *3 (N.D. Cal. Apr. 12, 2013) ("At the hearing,

3  counsel for Droplets indicated what some of the red boxes in particular screenshots are intended to

4  show.  The screen shots, coupled with this explanation, provide notice of Droplets' infringement

5  theory.").

6         Nothing has changed since that decision that would impose a higher disclosure requirement

7  on Droplets.  Defendants point to the 2017 change to Patent Local Rule 3-1(c), which now requires

8  patentees to show where "and how" each limitation is found within the accused products.  But that

9  change does not require pinpoint citations to source code per se.  Defendants concede this point in

10  their opening brief.  Op. Br. at 7 ("Especially since the 2017 revisions to the Patent Local Rules,

11  courts in this district require pinpoint citations to source code in their possession, *at least where*

12  *sufficient specificity is not otherwise provided*) (emphasis added).[15]

13  **B.     Defendants' Source Code Productions Are Grossly Deficient, Thereby Necessarily
           Limiting What Droplets Can Identify In Its Contentions.**

14

15         The patent at issue relates to using interactive links to present remotely executing applications.

16  Ex. E at Abstract.  The interactive link is delivered to a client computer and then used to access and

17  present the remotely executing application.  *Id.*  While the interactive link does in fact reside on the

18  client, the functions that it performs are dependent upon and intertwined with the information and

19  applications (*i.e.*, code) that resides on the remote servers.

20         Defendants admit that they had not produced the relevant client-side *or* server-side source

21  code when Droplets served its last round of Contentions, despite being required to do so more than

22  seven years ago while the case was pending in the Eastern District of Texas.  Since that time,

23

24         [15] Defendants' cases cited in support are readily distinguishable.  In *Finjan, Inc. v. Check Point*
   *Software Techs., Inc.*, No. 18-cv-2621-WHO, 2019 WL 955000, *5 (N.D. Cal. Feb. 27, 2019), for
25  example, the requirement that patentee provide source code pin cites stemmed from a Narrowing
   Order, prompted by other factors not applicable here – the requirement *did not* stem from Rule 3-1.
26  In *Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-4467-BLF (VKD), 2019 WL 2077849 (N.D. Cal. May
   10, 2019), the court *did not* order the patentee to provide pinpoint citations to code, even though it
27  acknowledged that certain circumstances (dissimilar to any here) may warrant such an order.  *See id.*
   at *5, 16.
28

1   Nordstrom has made a very limited production of client-side and server-side code, but the productions

2   are narrow and highly deficient.[16]   Yahoo has made no production at all, claiming that it no longer

3   has possession of relevant source code, following its asset transfer to Oath.   Instead, Defendants insist

4   that Droplets has everything it needs to identify the "interactive link" through publicly available

5   client-side code.   That is not true.   First, the publicly available client-side code is limited to whatever

6   version exists on the internet at that time – there is no archival system through which Droplets can

7   access historical versions.   Second, and crucially, client-side code is not a distinct code base the can

8   be independently analyzed.   It is a part of a larger code base that includes the server-side code –

9   something that only Defendants have access to.   Without server-side code, Droplets cannot complete

10   its contentions, particularly where server-side code implicates client-side code in ways that are not

11   readily discernable until Droplets has had sufficient opportunity to analyze the code base as a whole.

12          It is in this context that the sufficiency of Droplets' Contentions must be assessed.   *Finjan*,

13   2019 WL 2077849, at *2 ("[A] patentee must nevertheless disclose what in each accused

14   instrumentality it contends practices each and every limitation of each asserted claim *to the extent*

15   *appropriate information is reasonably available to it*.") (emphasis added).   Because Droplets does

16   not have all the necessary code, it cannot provide all relevant pinpoint citations.   The bulk of the

17   relevant code is stored on the server side.   Defendants no doubt would like to lock Droplets into

18   pinpoint cites to code based on their highly incomplete production of code and technical documents,

19   but to do so would be manifestly unjust.   In all events, Droplets' contentions are sufficient to put

20   Defendants' on notice of what is being accused.

21          **C.      Defendants' Assertions of Purported Deficiencies Are Without Merit.**

22          Defendants selectively cite to portions of Droplets' Contentions to complain about

23   deficiencies in its citations.   As a threshold matter, individual citations should not be viewed in a

24   vacuum.   The question is whether, as a whole, the Contentions put Defendants' on notice of

25   infringement theories.

26

27          [16] The parties provided letter briefing to the Court on November 6, 2019, regarding this

28   discovery dispute.   It is currently pending before Magistrate Judge Kandis Westmore.

1

2

### 1.   Droplets' Contentions Expressly Identify "Where and How" Interactive Links are Selected.

3

4

Defendants argue that Droplets' Contentions do not describe how the "interactive link" is

5

"selected."  Op. Br. at 12.  To the contrary, it is a basic principle of graphical user interfaces that a

6

user can cause a computer to take actions, *i.e.*, execute certain code, through interactions with objects

7

on a screen, *e.g.*, causing an email to display by clicking on it to invoke corresponding code that

8

retrieves and displays the email.  That basic principle applies here.

9

Droplets' Contentions explain that certain interactive link code is executed in response to the

10

user acting upon (*i.e.*, selecting) graphical objects.  For example, for the Search Suggest feature, when

11

a user interacts with the search bar (e.g., entering text into it or selecting it), the corresponding

12

interactive link (*i.e.*, the HTML and javascript that Droplets specifically identifies) is "selected" and

13

executed, thereby generating and sending a GET request to the remote application server that leads

14

to the display of search suggestions.  *See, e.g.*, Ex. A at 19-29 ("HTML and/or javascript code from

15

the 'first information' execute, such as when a user enters or deletes text in the search bar or selects

16

the search bar, to establish a connection via the Internet with a Nordstrom application server for the

17

application that handles the search suggest functionality").

### 2.   Droplets Expressly Identifies Where and How Previous Operating States Are Restored.

18

19

Defendants allege in conclusory fashion, without any apparent consideration of Droplets'

20

Contentions, that Droplets has not explained how their accused websites restore previous operating

21

states.  Op. Br. at 12-13.  But as explained above with respect to Element 1e, Droplets' Contentions

22

provide detailed examples of how Defendants' accused websites restore previous operating states.

23

*See, e.g.,* Ex. A at 69.

### 3.   Droplets Expressly Identifies Where and How the "Interactive Link" Is "Stored."

24

25

Defendants allege that Droplets' Contentions do not explain where and how the interactive

26

link is "stored."  As Defendants know, when a client computer accesses a webpage, the files for

27

presenting the webpage are downloaded and stored on the client computer, and the code in those files

28

1   are executed to present the webpage at the client computer.  This is fundamental to how webpages

2   work, and it applies here.  When a user accesses a Defendants' accused webpage, the user's computer

3   downloads and stores the files to present the webpage.  The "interactive link" is embedded in these

4   files and is thus also downloaded and stored on the user's computer.

5          Droplets expressly explains this in its Contentions, stating: "When a client computer requests

6   access to the Nordstrom Accused Webpages/Websites shop.nordstrom.com (*e.g.*, by entering the url

7   into a web browser or otherwise connecting to the url), a host computer (*e.g.*, a Nordstrom web server)

8   sends first information (*e.g.*, HTML, CSS, javascript, and/or other files) that is used to present the

9   Nordstrom Accused Webpage/Website to the client computer using a first communication connection

10  (*e.g.,* via the Internet). . . .  An interactive link (*e.g.,* the HTML, CSS, javascript, and/or other files

11  that contain the embedded code needed to present the search bar and provide its functionality) is

12  stored on the client computer (*e.g.,* in the memory, cache, and/or hard drive)."  Ex. A at 68-69.

13  Droplets' Contentions also include images of the actual webpage files that contain the interactive

14  link, stored in a folder on a client computer, prefaced with the following statement: "Below are

15  examples of how interactive links can be stored on a client device (*e.g.,* the files and code that can

16  display the search bar and perform the above functionalities are stored in a Google Chrome cache

17  folder."  *Id.* at 69.

18          **4.     Droplets Does Not Rely On "Open-Ended" File Citations.**

19         Defendants accuse Droplets of relying on "unnamed and open-ended sets of files" in

20  identifying the "interactive link."  Op Br. at 11.  Defendants' argument is incorrect because it is rooted

21  in its conflation of the terms "first information" and "interactive link," which are related but

22  nevertheless distinct terms.  Op. Br. at 9-10.  As set forth in claim 1, "first information having

23  computer code embedded therein" is received at the client computer, and the embedded computer

24  code is then executed "for establishing a second communication connection to a host computer."

25  Ex. E at claim 1.  The "computer code embedded therein" is the "interactive link."  The claimed "first

26  information" thus encompasses the "interactive link," but is not itself the interactive link.

27         Defendants' motion makes no mention of the fact that Droplets' Contentions clearly explain

28

the relationship between these two terms.  In particular, for claim 1, the Contentions state that the "first information" is "HTML, CSS, javascript, and/or other files" and that the "embedded code" (*i.e.*, the interactive link) is "HTML and/or javascript code from the 'first information' [that] execute[s], such as when a user enters or deletes text in the search bar or selects the search bar, to establish a connection via the Internet with a Nordstrom application server for the application that handles the search suggest functionality."  Ex. A at 19-20.  The Contentions then identify specific blocks of HTML and javascript code that perform the claimed "interactive link" functionality.  *Id.* at 20. Droplets never uses the phrase "and/or other files" when identifying the interactive link.[17]

### 5.     Droplets' Identification of "Interactive Link" Is Consistent.

Defendants argue that Droplets' identifications of interactive link are "inconsistent" because Droplets sometimes points to code and other times to graphical objects such as search bars and buttons.  Op. Br. at 14.  There is nothing inconsistent about Droplets' Contentions.  An interactive link is the computer code responsible for carrying out specific functions.  D.I. 429 at 4-5.  Droplets' Contentions explain that graphical objects, including search bars and buttons, are used to invoke an interactive link's functionality, and are not themselves the interactive link.  *Id.* at 19-20 ("HTML and/or javascript code from the 'first information' execute, such as when a user enters or deletes text in the search bar or selects the search bar and provide its functionality)" (emphasis added).  The purportedly contradictory statement that Defendants point to is consistent with this understanding of "interactive link."  The "interactive link" for Search Suggest "comprise[s]" a search bar in the sense that the interactive link *code* provides search bar functionality.

### 6.     Droplets Properly Discloses a Doctrine of Equivalents Theory for the "Interactive Link."

Defendants assert that Droplets' doctrine of equivalents theories for "interactive link" are

---

[17] Droplets' use of "and/or other files" is appropriate in identifying "first information," which is defined as "the HTML, CSS, javascript, and/or other files *that contain the embedded code needed to present the search bar and provide its functionality*."  Ex. A at 2 (emphasis added).  With the limited information available to it, and with the many infringing webpages that Defendants have, Droplets does not have the discovery necessary to identify all the file types that may comprise Defendants' webpages.  Defendants know what files comprise their webpages; Droplets' contentions provide more than sufficient notice of its infringement theories.

deficient because they fail to identify "what it is that is not literally present and what it is that comprises the equivalent of the missing term." Op. Br. At 14-15. Examination of Droplets' Contentions shows this argument to be incorrect.

Droplets' Contentions contain three doctrine of equivalents theories, all of which apply to the term "interactive link" for the Search Suggest feature. These theories do not apply to the entire claim limitation, as Defendants contend.[18] The Contentions state, "Specifically, *with respect to 'interactive link,'* a search bar that invokes the interactive link functionality when it is selected, or when text is entered or deleted from it, performs substantially the same function (activating the functionality of the interactive link), in substantially the same way (through interacting with the interactive link), to yield substantially the same result (the functionality of the interactive link is invoked) as the claim limitation." Ex. A at 78 (emphasis added).

The Court's construction of "interactive link" requires that it be "selected by an end user." When it drafted the Contentions, Droplets believed that Defendants may contend that the interactive link must have a graphical representation that must be clicked on (or similarly limiting interpretation of "selected by an end user"). Droplets thus included this theory to make clear that, whether the interactive link code is invoked by a user selecting the search bar by clicking on it, or by entering or deleting text, the function-way-result is substantially the same.[19] This is clearly set forth in the Contentions and was also explained to Defendants in the parties' prior discussions. *See* Ex. 7 at 1-2 ("Droplets uses the function-way-result test to explain that — should direct infringement not be found, and should the "interactive link" be interpreted to require that its functionality is invoked in some specific manner — selecting and/or entering text into the search bar is an equivalent way of invoking its functionality.").

---

[18] Defendants know this, because at Defendants' request, Droplets add language to expressly clarify this point when it served its contentions. Indeed, Nordstrom was provided a redline of Droplets' newest contentions against its Second Amended Infringement Contentions showing Droplets' addition of this language. Ex. D at 71 ("with respect to 'interactive link.'").

[19] Defendants have since conceded that they are not interpreting "selected by an end user" only to mean "clicking on" an object. *Yahoo* Dkt. No. 404 at 3-7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**7.  Defendants Know What "Search History" Is and Its Relation to Droplets' Infringement Theories.**

Defendants claim to not know what "search history" is or its significance.  Search history is a well-known concept that is exactly what it appears to be: a history of a user's searches.  As shown in the below screenshot, Yahoo has a "Search History" feature that saves and displays a user's search history that can be turned on or off:



As explained in Droplets' Contentions, when search history is "on," a user's past searches are remembered, and can be re-presented to the user, such as when they click on a search bar.  Ex. A at 3-5.  When it is off, these past searches are not remembered, and so cannot be re-presented to the user.  *Id.*  The significant of search history is that Defendants' accused websites infringe whether this feature is turned on or off.  *Id.* at 3 ("Droplets' infringement allegations with respect to Nordstrom – Search Suggest apply, without limitation: . . . (v) regardless of the search settings (e.g., whether search history is on or off).").  Droplets explained this to Defendants in prior correspondence.  Ex. 7 at 2 ("As explained during the call, an example that uses search histories is shown in a screenshot on page 3 of Droplets' Infringement Contentions for Yahoo, directly above the reference to search history on page 4.  Droplets' Contentions make clear that the Yahoo Accused Webpages/Websites infringe when the search history feature is turned on or off.  The same is true with respect to Nordstrom, as shown

on page 3 of Droplets' Infringement Contentions for Nordstrom.").

### 8.    Droplets Expressly Identifies Where And How The Limitations Of Claims 43 And 92 Are Met.

Defendants wrongly assert that Droplets fails to explain how the claimed "global unique identifier" in claims 43 and 92 is "assigned" to an interactive link.   Op. Br. at 11-12.   But the Contentions identify a set of global unique identifiers, including "IP addresses" and "user agents," and explain that they are "used to generate a response to a request to update the application."  Ex. A at 85.  These global unique identifiers are thus "assigned" to the interactive link in the sense that they are used together to update the application.[20]

### D.    Supplementation, Not Striking, Is The Appropriate Remedy For Any Deficiencies.

"Where appropriate, courts treat a motion to strike as a motion to compel amendment to include additional information infringement contentions." *Blue Spike*, 2015 WL 335842 at *4.  And where Defendants are in "sole possession of the information . . . need[ed]" to prepare contentions, which (as here) is "particularly true in cases involving allegedly-infringing source code," the Patent Local Rules provide "some flexibility" regarding the nature of the contentions. *Id.*  Here, Defendants seek to strike the entirety of Droplets' Contentions on the allegation that Droplets fails to meet the Rule 3-1 standard with respect to the "interactive link" limitation.  But because Defendants' allegation is premised on ignoring the vast majority of Droplets' supporting citations, including its pinpoint source code citations, Defendants' motion is unfounded and should be denied.

In any event, the appropriate remedy here would be the opportunity to amend and/or supplement in accordance with the Court's directives.  *Id.* (holding plaintiff should be given opportunity to serve amended contentions "because it is not clear at this juncture that the deficiencies identified above cannot be cured").  When Defendants provide additional discovery, including source

---

[20] Defendants have raised this purported deficiency before, with respect to Droplets' Second Amended Infringement Contentions.   Droplets addressed Defendants' concerns by providing additional explains how the global unique identifier is "assigned" to the interactive link. Ex. D at 86. Defendants had not raised this purported deficiency since then, and so Droplets assumed that the issue had been resolved.

1    code and other technical documentation "solely" in their respective control, Droplets will promptly

2    provide updated contentions to the extent additional notice of infringement theories is necessary.

3    **V.      CONCLUSION**

4           For the foregoing reasons, Defendants' Motion to Strike should be denied.

5

6

7    Dated: January 28, 2020                                    Respectfully submitted,

8                                                                REICHMAN JORGENSEN LLP

9                                                                */s/   Courtland L. Reichman*
                                                                 Courtland L. Reichman (CA Bar No. 268873)
10                                                               creichman@reichmanjorgensen.com
                                                                 Shawna L. Ballard (CA Bar No. 155188)
11                                                               sballard@reichmanjorgensen.com
                                                                 Michael G. Flanigan (CA Bar No. 316152)
12                                                               mflanigan@reichmanjorgensen.com
                                                                 Kate M. Falkenstien (CA Bar No. 313753)
13                                                               kfalkenstien@reichmanjorgensen.com
                                                                 REICHMAN JORGENSEN LLP
14                                                               100 Marine Parkway, Suite 300
                                                                 Redwood Shores, CA 94065
15                                                               Telephone: (650) 623-1401
                                                                 Facsimile: (650) 623-1449
16
                                                                 Khue V. Hoang (CA Bar No. 205917)
17                                                               khoang@reichmanjorgensen.com
                                                                 Jaime F. Cardenas-Navia (admitted *pro hac vice*)
18                                                               jcardenas-navia@reichmanjorgensen.com
                                                                 REICHMAN JORGENSEN LLP
19                                                               100 Park Avenue, Suite 1600
                                                                 New York, NY 10017
20                                                               Telephone: (212) 381-1965
                                                                 Facsimile: (650) 623-1449
21                                                               Attorneys for Plaintiff
                                                                 *Droplets, Inc.*
22

23

24

25

26

27

28