1    (SEE SIGNATURE PAGE FOR ATTORNEY LIST)

2

3

4              **IN THE UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
5                      **OAKLAND DIVISION**

6

7

8    DROPLETS, INC.,                      Case No. 12-cv-03733-JST

9                        Plaintiff,       **[PROPOSED]~~ ESI ORDER IN DROPLETS,
                                          INC. V. NORDSTROM, INC.**
10            v.

11   YAHOO!, INC.,

12                       Defendant.

13

14   OATH INC. AND OATH HOLDINGS, INC.

15                       Intervenor-
16                       Plaintiffs,

17            v.

18   DROPLETS, INC.,

19                       Intervenor-
20                       Defendant.

21

22   DROPLETS, INC.,                      Case No. 12-cv-04049-JST

23                       Plaintiff,       **[PROPOSED]~~ ESI ORDER IN DROPLETS,
                                          INC. V. NORDSTROM, INC.**
24            v.

25   NORDSTROM, INC.,

26

27                       Defendant.

28

Droplets, Inc. and Nordstrom, Inc., by and through their respective counsel of record, stipulate that the following ESI Order shall apply in the case captioned *Droplets, Inc. v. Nordstrom, Inc.*, Case No. 12-cv-04049-JST, subject to approval and entry by the Court:

**1.   PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.   COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter, consistent with this Court's Guidelines for the Discovery of ESI.

**3.   LIAISON**

The parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.   PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportional.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a.   Only ESI created, received, and maintained in the ordinary course of business after September 2005 will be preserved;[1] however, if a party is aware of sources of ESI which pre-date September 2005 that may be relevant to this case (*e.g.*,

---

[1] This agreement does not obligate a party to search or produce ESI without a reasonable request for such ESI.

Nordstrom's reliance upon internally-developed prior art or any Nordstrom technical documents, or information related to Droplets' conception and reduction to practice of the patents-in-suit), the parties shall first identify such sources of ESI, and thereafter discuss a plan to ensure that such ESI is also preserved.

b.  The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager."   The parties shall add or remove custodians as reasonably necessary.

c.  After exchanging the lists called for in Section 4(b), the parties will agree on the number of custodians per party for whom ESI will be preserved, but in no event will the number of custodians exceed 20 per party without agreement by the parties or a showing of good cause.

d.  Notwithstanding the limitations of Section 4(c), the parties also agree that the following persons, to the extent not already identified as ESI custodians, will be ESI custodians:  (i) any current or former employee of a party who appears on the trial witness list for that party (excepting trial witnesses offered purely for document  authentication purposes); and (ii) any person designated by a party to provide Rule 30(b)(6) deposition testimony.[2]

e.  Absent agreement of the parties or a showing of good cause, these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will not be preserved (unless maintained in the ordinary course of business), searched, reviewed or produced

---

[2] The parties further agree that for any third-party trial fact witness not identified in a party's initial disclosures at least 60 days prior to the close of fact discovery, the parties may serve Rule 45 subpoenas on such third-parties after the close of fact discovery and before trial.  This agreement is to ensure that any such third-party trial witness has their ESI searched and produced prior to trial.

absent agreement or cost-shifting: (1) backup media created before September 2005; (2) systems in a party's possession, custody, or control but no longer in use as of September 2005 and which cannot be accessed, provided any such systems shall be identified with sufficient specificity for the non-producing party to ascertain its relative significance;  (3) voicemails; (4) text messages; and (5) portable devices (*e.g.*, pagers, mobile phones, smart phones, , etc.).

## 5. SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.  Specifically, the parties have discussed and agreed to an ESI search plan whereby the parties will:

  a.  Generate a proposed list of not more than 30 search terms that the producing party proposes to use to search its ESI for relevant documents;

  b.  Share the proposed list of search terms with the opposing party, to allow the parties to discuss modifications or additions to the list of proposed search terms;

  c.  After the parties agree upon a list of proposed search terms, the list of terms will be run by the producing party against the producing party's ESI to generate a list of "hit counts" by term (*i.e.*, the number of documents that correspond to each search term);

  d.  A party may at its election randomly sample its own documents using search terms proposed by the other party for terms they feel may need to be modified;

  e.  The parties will share with each other the list of "hit counts" per term along with a summary of the terms sampled and details regarding how the sampling was performed, if applicable, in order to allow the parties to work together to identify search terms that may be overbroad (e.g., identified an unreasonably large number of documents) or underbroad (identified an unreasonably low number of documents); and

f. After the exchange of hit counts and summaries, the parties will refine their list of search terms, and will work iteratively to exchange refined lists of search terms and hit counts, no more than five times, to identify the documents that the producing party will ultimately produce to the requesting party. The parties may also, but need not, share with each other examples of positive hits that the custodial party believes demonstrate the overbreadth of a search term. Such sharing would be for the purposes of this confer process only, would be without waiver of any associated privilege or protection, would not be an admission of relevance, and would be for outside counsel's eyes only.

Further, the parties agree to limit their ESI requests to a total of 30 search terms per custodian per party; however, additional search terms may be added by agreement by the parties or upon a showing of good cause. For avoidance of doubt, closely related terms grouped by logical operators (*e.g.*, "Mike Smith" or "M. Smith" but not "Michael Smith") will be considered as one search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or closely related terms (*e.g.*, "computers" or "computer" or "compute"). When a disjunctive combination is used conjunctively to narrow a target term, the entire conjunctive term shall count as a single term (e.g., "[asserted patent] and (system or printer or 'hard drive')" shall count as one term).

## 6. PRODUCTION FORMATS

### A. *Format for Production of Documents*

The parties agree that any produced documents existing in electronic format shall be produced in single page, Group IV tagged image file format ("TIFF"), or equivalent, created with a resolution of at least 300 dots per inch (dpi), unless otherwise excepted in this Order or agreed upon by the parties. Documents existing in hardcopy or in paper format shall be scanned and produced in the same manner as documents existing in electronic format. The parties agree not to intentionally degrade the searchability of documents as part of the production process, nor to convert documents

with color to black and white.

Standard Concordance load files, including DAT and OPT files should be provided including the following fields where available:

- Prod BegDoc – beginning production number
- Prod EndDoc – ending production number
- Prod BegAttach – starting bates number of attachments to the document
- Prod EndAttach – ending bates number of attachments to the document
- Date Created – date/time format
- Date Last Modified – date/time format
- Email Send Date – date/time format
- Email Received Date – date/time format
- Email To
- Email From
- Email CC
- Email BCC
- Email Subject
- Hash – the MD5 or SHA hash value for the document
- File Name
- Custodian
- Author
- All Custodians –custodian information for original and de-duped file(s); Last, First
- Confidentiality
- Parent ID – only available on child items
- ChildID – semicolon delimited; only present on parents; AKA AttachmentDocID
- MessageID – extracted from email's metadata.  AKA int_msgID
- ConversationIndex – 44 character string created in initial email with 10 extra characters for each reply or forward

- NativeLink – path to native file (if any)
- Textlink – path to text file

Separate text files shall be provided for each document per the specifications below.  Text should be provided for each file in separate text file (.txt) with document level text and a relative link to the file in the DAT.  Extracted text or OCR will not be placed in the DAT file. Text files should be named for the BEGDOC# entry for that specific record.  All records should have a text file even if the file has no text.  All text should be processed and delivered in Unicode.  Text files for redacted documents should be the OCR text of the document as redacted.  Electronic documents should be accompanied with extracted text.  Where extracted text is not otherwise available, the process of optical character recognition (OCR) should be run on the document to extract any available text.  Hard copy documents that are scanned should also be run through OCR so that any text is provided as part of the load files.

The parties further agree to produce spreadsheet files (*e.g.*, CSV, TSV, XLS, XLSX, XLT, or XLTX), presentation files (*e.g.*, PPT, PPTX, PPTM), and media files (*e.g.*, AVI, MP3, MP4, WAV, or MOV) in native format, and agree to respond to additional reasonable and specific requests for the production of files or file types in native format where appropriate.  When a file is provided natively, a slipsheet must be supplied in the appropriate IMAGES folder and must contain BegDoc#, Confidentiality Designation, and "File Provided Natively."  Native file names should be named for the BEGDOC# entry for that specific record with the Confidentiality Designation, separated by an underscore and end with the appropriate file extension (ABC00000001_Confidential.xls).

Data may be deduplicated on a global level.

Production folders should be delivered with the following subfolders and be restricted to 1,000 files per subfolder: DATA, IMAGES, NATIVES, TEXT.

Metadata load file should be encoded in Unicode and provided in Concordance delimiters and format (.DAT):

| Value | Character | ASCII Number |
|---|---|---|

| Column | ¶ | 20 |
|---|---|---|
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value (Do not follow with space) | ; | 59 |
| Nested Value | \ | 92 |

The first row of each metadata load file should contain the field names listed above.  All fields should be present in the metadata load file regardless of whether data exists. Field order must remain consistent in subsequent productions.

Date & Time format should be MM/DD/YYYY  HH:MM  (06/30/2009 13:30), unless otherwise specified to be provided as separate fields. If date and time fields are to be provided separately, date format should be MM/DD/YYYY and time format should be HH:MM.

Image file names should match the page identifier for that specific image and end with the appropriate extension.  File names cannot have embedded spaces, commas, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention (,& \ / # + % ! : * ? " < > | ~ @ ^).

B.  *Parent and Child Emails*

The parties shall produce email attachments sequentially after the parent email.  With respect to an email chain, the parties are permitted to produce the longest unique chain and the parties do not need to separately produce the lesser-included emails unless those lesser-included emails include unique attachments not included in the longest chain.  If a lesser-included email includes a unique attachment, then the lesser-included email must be separately produced with the attachment.

C.  *Historical Litigation*

Notwithstanding the foregoing, all documents that the producing party re-produces in whole or in part from the production files of a historical litigation should be produced in the same manner and form, including native files and all metadata, as originally produced in the relevant historical litigation.

**7. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI in a reasonable and appropriate manner as agreed on by the parties. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Fed. R. Evid. 502(d), the production of privileged or work-product-protected documents, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of a privileged or work-product-protected document in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceedings.

**9. PRIVILEGE LOG**

Communications may be identified on a privilege log by category, rather than individually, if appropriate.

Communications involving counsel involved with this litigation that post-date the filing of the complaint need not be placed on a privilege log.

For Nordstrom, such counsel include at least:

- Attorneys from Kilpatrick Townsend and Stockton
- Attorneys from Haltom & Doan
- Attorneys from The Heartfield Law Firm
- Nordstrom In-house counsel and legal team, including
  - Kristen Wilson
  - Sheryl Garland
  - Darcy Shearer
  - Bergitta Trelstad
  - Barbara Barrilleaux
  - April Rettkowski

For Droplets, such counsel include at least:

- Attorneys from Reichman Jorgensen LLP;
- Attorneys from McKool Smith;
- David Warburg and attorneys working under his supervision;
- James Holmes;
- Katrina Bennett;
- Jordan Garner;
- Travis Luke Manfredi;
- Vijay K. Toke;
- Kirsten A. Zeberkiewicz;
- Jay Neukom;
- Brian D. Melton;
- Mitchell VerVoort;
- Tim Bechen;
- Matt Kaufman and attorneys working under his supervision;
- Albert H. Manwaring;
- Seth Ostrow and attorneys working under his supervision; and
- Stephen Susman.

Each party shall supplement their list of counsel at the time privilege logs are exchanged.

**10. PROPOSED MODIFICATIONS OR LIMITATIONS TO THE DISCOVERY RULES**

The parties agree that expert disclosures, including each side's expert reports, shall comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), except as modified herein. Neither side is required to preserve, disclose (including in expert deposition testimony), or place on a privilege log the following documents or materials: (i) any form of communication or work product shared between any of the parties' trial counsel and such party's expert(s) or consultant(s); (ii) any form of communication or work product shared between an expert and persons assisting the

expert; (iii) expert's notes; (iv) drafts of expert reports, analyses, or other work product, unless any of the above are expressly relied upon and/or cited in support of an opinion or fact.  The parties shall in connection with all expert reports provide a list by Bates number of all documents considered by the testifying expert(s).

**11. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.


**IT IS SO STIPULATED**, through Counsel of Record.

1  Dated: March 26, 2020

2  /s/ Khue V. Hoang                          /s/ Benjamin M. Kleinman
   Courtland L. Reichman (CA Bar No. 268873)   KILPATRICK TOWNSEND &
3  creichman@reichmanjorgensen.com             STOCKTON LLP
   Shawna L. Ballard (CA Bar No. 155188)       Jordan Trent Jones
4  sballard@reichmanjorgensen.com              (State Bar No. 166600)
   Michael G. Flanigan (CA Bar No. 316152)     jtjones@kilpatricktownsend.com
5  mflanigan@reichmanjorgensen.com             1080 Marsh Road
   Kate M. Falkenstien (CA Bar No. 313753)     Menlo Park, CA 94025
6  kfalkenstien@reichmanjorgensen.com          Telephone: (650) 752 2433
7  REICHMAN JORGENSEN LLP                      Facsimile: (650) 326 2422
   100 Marine Parkway, Suite 300               Benjamin M. Kleinman
8  Redwood Shores, CA 94065                    (State Bar No. 261846)
   Telephone: (650) 623-1401                   bkleinman@kilpatricktownsend.com
9  Facsimile: (650) 623-1449                   Two Embarcadero Center Suite 1900
                                               San Francisco, CA 94111
10                                             Telephone: (415) 273-7122
   Khue V. Hoang (CA Bar No. 205917)           Facsimile: (415) 723-7122
11 khoang@reichmanjorgensen.com
   Jaime F. Cardenas-Navia (*pro hac vice*)
12 jcardenas-navia@reichmanjorgensen.com       ATTORNEYS FOR DEFENDANT
   REICHMAN JORGENSEN LLP                      NORDSTROM, INC.
13 750 Third Avenue, Suite 2400
   New York, NY 10017
14 Telephone: (212) 381-1965
   Telecopier: (650) 623-1449
15
16 ATTORNEYS FOR PLAINTIFF
   DROPLETS, INC.
17
18
19
20
21
22
23
24
25
26
27
28

1

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

2          Pursuant to N.D. Cal. Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3   document has been obtained from each of the other signatories.

4

5   Dated:  March 26, 2020                                     _/s/ Khue V. Hoang_
                                                                 Khue V. Hoang
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

2

3   DATED:  March 30, 2020



4                                              JON S. TIGAR
                                   United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28