UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DROPLETS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>YAHOO! INC.,<br><br>        Defendant. | Case No. 4:12-cv-03733-JST  (KAW)<br>             4:12-cv-04049-JST  (KAW)<br><br>**ORDER GRANTING MOTIONS TO STRIKE INFRINGEMENT CONTENTIONS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 424 (& 159) |

On December 10, 2019, Defendants Yahoo, Inc. and Nordstrom filed substantially identical motions to strike Plaintiff Droplets, Inc.'s third amended infringement contentions in the instant case and the higher-numbered, related case. (Yahoo's Mot., "Defs.' Mot., Dkt. No. 424; Nordstrom's Mot., *Droplets, Inc. v. Nordstrom, Inc.*, 12-cv-4049-JST (N.D. Cal. Dec. 10, 2019), ECF 159.)[1]

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS Defendants' motions to strike, and grants Plaintiff leave to amend its infringement contentions once it has reviewed Defendants' source code and technical documents.

## I.  BACKGROUND

On May 31, 2011, Droplets filed this action against Nordstrom and Yahoo in the Eastern District of Texas, in which it alleged infringement of U.S. Patent No. 6,687,745 ("'745 Patent"). *Droplets, Inc. v. eBay, Inc.*, No. 2:11-cv-00401 (E.D. Tex. Sept. 11, 2011). Pursuant to the

---

[1] Since the moving papers are substantially identical, all references and citations will be to the briefing in connection with Yahoo's motion. (*See* Dkt. No. 452 at 2.) In fact, the opposition and reply briefs bear both captions and case numbers.

1  Eastern District's patent local rules, Droplets served its initial infringement contentions on April 6,
2  2012.

3  In July 2012, the case was transferred to the Northern District of California. On November
4  9, 2012, Droplets was ordered to supplement its infringement contentions.  On May 28, 2013, the
5  Court entered a Protective Order, which contained procedures for the production of source code.
6  (Dkt. No. 251.)

7  The case was stayed from November 14, 2013 until October 31, 2018. (Dkt. No. 310.)  On
8  March 22, 2019, Droplets served its Second Amended Infringement Contentions, which added
9  narratives and explanatory language to accompanying screenshots of Defendants' accused sites, as
10 well as citations to publicly available client-side source code.

11 On April 10, 2019, Defendants complained that Droplets had not provided adequate
12 contentions regarding the "interactive link" limitation. (Decl. of William Hector, "Hector Decl.,"
13 Dkt. No. 424-1, Ex. 4.)  On May 24, 2019, Droplets served Third Amended Infringement
14 Contentions on both defendants, which are substantially identical. (Third Am. Infringement
15 Contentions for Nordstrom, "Nordstrom 3d Am. ICs," Decl. of Jaime F. Cardenas-Navia,
16 "Cardenas-Navia Decl.," Dkt. No. 434-1 ¶ 3, Ex. A; Third Am. Infringement Contentions for
17 Yahoo, "Yahoo 3d Am. ICs," Cardenas-Navia Decl., Ex B.)

18 On July 1, 2019, Defendants again complained that they were dissatisfied with Droplets'
19 Third Amended ICs description concerning "interactive link." (Hector Decl., Ex. 6.) The parties
20 engaged in meet and confer efforts but were unable to resolve the dispute regarding the sufficiency
21 of the operative contentions.

22 On December 10, 2019, Defendants filed substantially identical motions to strike the third
23 amendment infringement contentions in their respective cases. (Defs.' Mot., Dkt. No.  424.)

24 On December 20, 2019, the district court issued a claim construction order. (Claim
25 Construction Order, Dkt. No. 429.)

26 On January 28, 2020, Plaintiff filed a single opposition to the pending motions to strike in
27 both cases. (Pl.'s Opp'n, Dkt. No. 434.) On February 11, 2019, Defendants filed identical replies
28 in both cases. (Defs.' Reply, Dkt. 435.)

1      On February 27, 2020, the district court consolidated the Yahoo and Nordstrom cases, and

2 designated the *Yahoo* case, 12-cv-03733-JST, as the lead case. (Dkt. No. 445.)  On March 11,

3 2020, discovery in the lead case was referred to the undersigned, since the Court was previously

4 referred discovery in the higher-numbered *Nordstrom* case, 12-cv-04049-JST. (Dkt. No. 447.)

5      On April 27, 2020, the undersigned resolved a discovery dispute between Droplets and

6 Nordstrom, in which Nordstrom was

> ordered to conduct an exhaustive search and produce the missing documents and source code within 30 days of this order. If relevant documents or source code have not been retained, Nordstrom must explain why. If the COVID-19 pandemic and resulting shelter-in-place orders continue, the parties shall meet and confer regarding whether a secure means exists to produce the source code remotely or if precautions may be taken to enable Droplets to safely review the source code on a secure computer.

11 (4/27/20 Order, Dkt. No. 466 at 2-3.)

## II.     LEGAL STANDARD

13     "The Northern District of California has adopted local rules that require parties to state

14 early in the litigation and with specificity their contentions with respect to infringement and

15 invalidity." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed Cir.

16 2006).  The patent local rules provide "for a streamlined mechanism to replace the series of

17 interrogatories that accused infringers would likely have propounded in [their] absence" and are

18 "designed to require parties to crystallize their theories of the case early in the litigation and to

19 adhere to those theories once they have been disclosed."  *DCG Sys. v. Checkpoint Techs.*, *LLC*,

20 No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quotations and

21 footnote omitted); *O2 Micro Int'l Ltd.* 467 F.3d at 1366 n.12 (quoting *Nova Measuring*

22 *Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

23     Patent Local Rule 3-1 requires a party claiming patent infringement to serve on all parties a

24 disclosure of asserted claims and infringement contentions.  Infringement contentions must

25 contain (a) each claim of each patent that is allegedly infringed by each party, (b) all accused

26 instrumentalities for each asserted claim, (c) a chart identifying specifically where each limitation

27 of each asserted claim is located within each accused instrumentality, (d) a description of the acts

28 of the alleged indirect infringer that induced the direct infringement by a third party, (e) whether

1   each limitation of each asserted claim is alleged to be literally present or present under the doctrine
2   of equivalents in the accused instrumentality, (f) the priority date to which each asserted claim
3   allegedly is entitled if applicable, (g) an identification of each apparatus that practices the claimed
4   invention if applicable, and (h) the basis for the party's allegation of willful infringement if
5   applicable. Patent L.R. 3-1.

6   A party may amend its infringement contentions "only by order of the Court upon a timely
7   showing of good cause." Patent L.R. 3-6.  Non-exhaustive examples of circumstances that may,
8   absent undue prejudice to the non-moving party, support a finding of good cause include: (1) an
9   adverse claim construction; (2) recent discovery of material prior art despite an earlier diligent
10  search; and (3) recent discovery of nonpublic information about the accused product that, despite
11  diligent efforts, was not discovered before service of the infringement contentions. *Id.*

### III.   DISCUSSION

Defendants seek to strike Plaintiff's third amended infringement contentions without leave to amend. (Defs.' Mot. at 1-2.)  In this district, motions to strike initial infringement contentions are frequently treated as motions to compel the amendment of infringement contentions. *Geovector Corp. v. Samsung Elecs. Co.*, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017) (citing *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) ("Case precedent recognizes such 'motions to strike' as requests that plaintiffs be compelled to amend their preliminary contentions to provide additional information."); *Blue Spike v. Adobe Sys.*, 2015 WL 335842, at *4 (N.D. Cal. Jan. 26, 2015) ("Where appropriate, courts treat a motion to strike as a motion to compel amendment to include additional information infringement contentions.")).

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-c-05808-HSG, 2015 WL 9023166, at *12 (N.D. Cal. Dec. 16, 2015).  While some courts have required a party asserting infringement to show good cause before being granted leave to amend initial contentions, many have simply compelled the asserting party to serve compliant infringement contentions. *Cf. Theranos, Inc. v. Fuisz Pharma LLC*, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012) (striking

4

infringement contentions without leave where asserting party made only vague allegations "on information and belief" and implicitly conceded that it did not have any additional factual support for its claims), *with Bender v. Maxim Integrated Prods.*, 2010 WL 1135762, at *1 (Denying motion to strike and granting motion to compel infringement contentions that comply with Patent Local Rule 3-1.).

### A. Specificity regarding Interactive Link

Defendants contend that Plaintiff has not identified how each limitation of each asserted claim is found within each instrumentality, that Droplets has long had information regarding any interactive link in its possession, and has still been unable to articulate a theory as to how the accused interactive link infringes on its patent. (*See* Defs.' Mot. at 5-10.)

In opposition, Plaintiff contends that it has identified pinpoint citations for source code for the "interactive link" whenever possible, and that the lack of additional citations stem from Defendants' inadequate or missing productions[2] and the limitations inherent in publicly available code. (Pl.'s Opp'n at 9.)

Here, all parties agree that the interactive link is central to this case. (Defs.' Mot. at 1; Pl.'s Opp'n at 1.) The issue, then, is whether Droplets's operative ICs are sufficient to adequately disclose its infringement theory.  In the preamble to Claim 1, Droplets identifies the "interactive link" as "the webpage code that provides the search bar with the capability to display search suggestions when the user enters or deletes text in the search bar or selects the search bar[.]" (Pl.'s Opp'n at 11; *see* Nordstrom 3d Am. ICs at 1-2. ) Droplets then explains how Nordstrom's Search Suggest functions, which is when the user enters text into the search box and a list of selectable search suggestions appear. (Nordstrom 3d Am. ICs at 2.) If the user keeps typing or deletes text the suggestions change. *See id.*  Droplets also included screenshots that show how the Search Suggest function appears to the end user. *Id.*  Droplets even included screenshots for a variety of platforms/operating systems— computer and mobile devices (Android and iPad)—to illustrate the

---

[2] The Court notes that no discovery dispute regarding the sufficiency of Yahoo's source code or document production has been brought to the undersigned's attention.

differences in appearance and functionality. *See id.* at 3-4.[3]

        Defendants are correct, however, that Droplets bears the burden of identifying the source code that corresponds with the interactive link. (Defs.' Mot. at 11.) To satisfy Patent Local Rule 3-1, courts in this district sometimes require pinpoint source code citations that show "where and how each limitation of each asserted claim is found within each Accused Instrumentality." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *5 (N.D. Cal. Feb. 27, 2019). That said, Droplets is not required to cite to every bit of source code that supports its theory of infringement so long as it has "adequately disclosed its infringement theory." *Id.* (citing *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *16 (N.D. Cal. Feb. 23, 2014)). Droplets argues that this case differs from *Check Point,* because the exemplar code provided puts Defendants on notice of Plaintiff's theory of infringement. (Pls.' Opp'n at 14-15.) Droplets also argues that the lack of additional pinpoint citations to source code is due to its lack of access to Defendants' server-side source code, as well as to historical client-side source code, and technical documents. (Pl.'s Opp'n at 3-4 & n.4, 15.) Indeed, on April 27, 2020, the undersigned ordered Nordstrom to conduct an exhaustive search for documents and source code and to meet and confer with Droplets regarding the feasibility of its source code production in light of COVID-19. (4/27/20 Order at 2-3.)

        Even so, the Court finds well-founded, Defendants' general complaint that the operative contentions contain numerous pages of exemplar source code that do not clearly identify which portion contains the interactive link. (*See* Defs.' Reply at 4.) This lack of specificity is not cured by written explanations of how the interactive link works or screenshots that show how the accused instrumentalities, such as Search Suggest in Nordstrom's ICs, appear to the end user. Despite this deficiency, Droplets has put Defendants on notice of its theory of infringement and need only identify the portions of the source code that contain the interactive link.

---

[3] Unlike the cases cited by Defendants, the Court finds that these screenshots are helpful in identifying how the accused instrumentalities work, as they are accompanied by explanatory text. *Cf. Digital Reg of Texas, LLC v. Adobe Sys. Inc.,* No. CV 12-01971-CW (KAW), 2013 WL 3361241, at *4 (N.D. Cal. July 3, 2013) (screenshots in lieu of explanatory text is insufficient).

Thus, the Court finds that leave to amend is warranted despite the prior three amendments, because Droplets has not had access to all of Nordstrom's relevant source code and technical documents, and the remaining deficiencies are relatively minor and surely curable by amendment. Given the similarities of the deficiencies in the Nordstrom and Yahoo ICs, granting leave to amend both sets is reasonable, since striking ICs without amendment is a severe sanction, which the undersigned finds unwarranted in this circumstance. In amending, Droplets should, to the extent possible, provide pinpoint citations for the interactive link as identified by Defendants in Part I.B of their reply brief. (*See* Defs.' Reply at 5-6.) Furthermore, Droplets needs to precisely distinguish between "interactive link" and "first information," so that it makes clear that the interactive link is referenced in relation to Claim 1(a). (*See* Nordstrom 3d Am. ICs at 19.) Despite Plaintiff's protestations to the contrary, as currently charted, it is unclear that "first information" has the interactive link embedded into it. (*See* Pl.'s Opp'n at 19.) The Court also agrees that Plaintiff must explain how a browser's search history being on or off is relevant, and how the accused instrumentalities infringe with Search History being on and with it being off. (*See* Defs.' Mot. at 15; Defs.' Reply at 7.)

### B. Doctrine of Equivalents

Defendants argue that Plaintiff's attempts to assert the doctrine of equivalents for three limitations are insufficient, because they fail to give notice of what it is that is not literally present and what exactly comprises the equivalent of the missing term. (Defs.' Mot. at 14-15.) Specifically, Defendants refer to the final limitation in claim 1, the final limitation in claim 17, and the second limitation in claim 26. *Id.* at 14.

"The doctrine of equivalents exists to prevent fraud on the patent" and not "to give a patentee a second shot at proving infringement" if it is not "literally present." *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *6 (N.D. Cal. Nov. 2, 2012) (citation omitted). For that reason, the plaintiff must explain why the doctrine of equivalents might lead to infringement in the absence of direct infringement. *Id.* Boilerplate language asserting that the doctrine of equivalents has been met as an alternate theory is generally not permitted. *Id.*

7

In opposition, Droplets contends that its doctrine of equivalents theories apply only to the interactive link for the Search Suggest feature, rather than to the entire claim limitation. (Pl.'s Opp'n at 20.) The operative contentions provide:

> Specifically, with respect to 'interactive link,' a search bar that invokes the interactive link functionality when it is selected, or when text is entered or deleted from it, performs substantially the same function (activating the functionality of the interactive link), in substantially the same way (through interacting with the interactive link), to yield substantially the same result (the functionality of the interactive link is invoked) as the claim limitation.

(Nordstrom 3d Am. ICs at 78.) Plaintiff explains that it included this theory to make clear that, whether the interactive link code is invoked by a user selecting the search bar by clicking on it, or by entering or deleting text, the function-way-result is substantially the same. (Pl.'s Opp'n at 20.) In reply, Defendants claim that the portion of the contentions that is cited is circular logic. (Defs' Reply at 7-8.) The Court agrees. Furthermore, since the district court's construction of "interactive link" requires that it be "selected by an end user," the language provided appears to describe direct infringement rather than an equivalent. Thus, Plaintiff may amend its doctrine of equivalents theory to clearly state what "selecting" a search bar entails, whether it is clicking or another action, and how it is equivalent.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions to strike the Third Amended Infringement Contentions are GRANTED with leave to amend. For the sake of efficiency, it would be most practical to amend both sets of infringement contentions at the same time. Therefore, Droplets shall have 60 days from the date Nordstrom produces the documents and source code, in accordance with the undersigned's April 27, 2020 order, to serve its respective Fourth Amended Infringement Contentions on Yahoo and Nordstrom.

IT IS SO ORDERED.

Dated: May 6, 2020

*Kandis Westmore*

KANDIS A. WESTMORE
United States Magistrate Judge