Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant
*Droplets, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> YAHOO!, INC., <br><br> Defendant. | Case No. 12-cv-03733-JST <br><br> **DROPLETS, INC.'S OPPOSITION TO INTERVENOR-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT BASED ON LICENSE AGREEMENT** |
| OATH, INC., et al., <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> DROPLETS, INC., <br><br> Intervenor-Defendant. | HEARING: <br> Date:  June 24, 2020 <br> Time:  2 p.m. <br> Place:  Courtroom 6 — 2nd floor <br> Judge:  Hon. Jon S. Tigar |
| DROPLETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORDSTROM, INC., <br><br> Defendant. | Case No. 12-cv-04049-JST |

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................2

FACTS AND PROCEDURAL HISTORY ................................................................2

ARGUMENT ..............................................................................................................6

    I.    Verizon Has No Right To Seek Dismissal Of Droplets' Existing Claims...................8

        A.    Verizon May Not Seek Summary Judgment On Behalf Of Yahoo. .................8

        B.    Verizon Has Not Addressed The Declaratory Relief Requested In Its Complaint..................................................................................................10

    II.    Droplets' Claims Against Yahoo Should Not Be Dismissed.......................................11

        A.    Verizon's Assumption of Yahoo's Liability Did Not Eliminate Yahoo's Own Liability. ...........................................................................................11

        B.    The Droplets/RPX Contract Releases Only Explicitly Enumerated Parties...................................................................................................12

        C.    ███████████████████████. ....................14

    III.    ████████████████████████████..........20

CONCLUSION..........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................7

*ASARCO, LLC v. Union Pac. R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ...............................................................................16

*Aviation Fin. Co. v. Chaput*,
  2015 WL 13203653 (S.D.N.Y. Mar. 12, 2015) ..................................................18

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*,
  366 F.3d 692 (9th Cir. 2004), *as amended on denial of reh'g* (June 2, 2004)..............16

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
  213 F.3d 474 (9th Cir. 2000) ..................................................................................7

*Cineblue Internationale Filmproduktionsgesellschaft MbH & Co 1. Beteilgungs KG*
  *v. Lakeshore Entm't Grp., LLC*,
  2010 WL 11508347 (C.D. Cal. Feb. 18, 2010)....................................................18

*Elderlite Express, Inc. v. Capitol City Trailers, Inc.*,
  2007 WL 1875776 (S.D. Ohio June 27, 2007) ......................................................9

*Freescale Semiconductor, Inc. v. ChipMOS Techs.*,
  2013 WL 308919 (N.D. Cal. Jan. 25, 2013) ..........................................................7

*Gaerte v. Great Lakes Terminal & Transp. Corp.*,
  2007 WL 2349611 (N.D. Ind. Aug. 14, 2007).......................................................9

*Griest v. Rogers*,
  2010 WL 11596135 (C.D. Cal. Apr. 13, 2010) ......................................................7

*HBSC Ins. Ltd. v. Scanwell Container Line Ltd.*,
  2001 WL 940673 (C.D. Cal. Jan. 17, 2001) ...........................................................7

*Ins. Co. of Pa. v. Associated Int'l Ins. Co.*,
  922 F.2d 516 (9th Cir. 1990) ................................................................................16

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
  946 F.2d 821 (Fed. Cir. 1991)................................................................................7

*MGP IX Lincoln Station, LLC v. City of Cerritos*,
  2014 WL 12780290 (C.D. Cal. Feb. 12, 2014).......................................................7

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099. (9th Cir. 2000) ...............................................................................7

*Payne v. River Rocks LLC*,
 2016 WL 8669876 (M.D. Fla. Sept. 9, 2016) ...........................................................................9

*Prima Tek II, L.L.C. v. A-Roo Co.*,
 222 F.3d 1372 (Fed. Cir. 2000)...............................................................................................13

*RSI Corp. v. Int'l Bus. Machines Corp.*,
 2013 WL 1087468 (N.D. Cal. Mar. 13, 2013).........................................................................7

*Selective Way Ins. Co. v. RHJ Med. Ctr., Inc.*,
 2008 WL 5156078 (W.D. Pa. Dec. 8, 2008).............................................................................9

*In re Steen*,
 509 F.2d 1398 (9th Cir. 1975) ...............................................................................................18

*The Cent. Inst. for Experimental Animals v. The Jackson Lab.*,
 2010 WL 147935 (N.D. Cal. Jan. 12, 2010)............................................................................13

*In re Townshend Patent Litig.*,
 2004 WL 1920009 (N.D. Cal. Aug. 25, 2004) .........................................................................7

*Whittaker v. Morgan State Univ.*,
 2011 WL 1099266 (D. Md. Mar. 21, 2011).............................................................................9

*WiAV Sols. LLC v. Motorola, Inc.*,
 631 F.3d 1257 (Fed. Cir. 2010)...............................................................................................13

*William Wrigley, Jr. Co. v. Waters*,
 1987 WL 123988 (S.D.N.Y. Dec. 16, 1987), *rev'd on other grounds*, 890 F.2d
 594 (2d Cir. 1989)....................................................................................................................12

**Other Authorities**

9 Corbin on Contracts § 49.6 (2018) ............................................................................................12

Fed. R. Civ. P. 12(f)(1) ..................................................................................................................10

Fed. R. Civ. P. 24(c) ......................................................................................................................10

Fed. R. Civ. P. 56(a) ........................................................................................................................6

Kling & Nugent, Negotiated Acquisitions of Companies Subsidiaries and Divisions §
 15.01 .......................................................................................................................................12

Standing Order, Part F ......................................................................................................................9

1        Plaintiff Droplets, Inc. ("Droplets") hereby files this Opposition to Verizon Media's Motion

2   for Summary Judgment Based On License Agreement, filed by Intervenor-Plaintiffs Oath, Inc. and

3   Oath Holdings Inc. (collectively, "Verizon"). *See* Dkt. 472.4 ("Verizon MSJ").

4   **INTRODUCTION**

5        A year ago, Yahoo moved to substitute Verizon as the defendant in this case, and then for

6   summary judgment on Droplets' claims based on Verizon's license to Droplets' patent. The Court

7   denied those motions. Verizon then inserted itself as an intervenor, insisting that it simply wanted

8   clarity about whether Droplets could sue Verizon in the future. The Court permitted Verizon to

9   intervene, and then permitted it to file its own summary judgment motion on a narrow question:

10  whether *Verizon in particular* is licensed to practice Droplets' patent, such that Droplets could not

11  sue Verizon for infringement in the future. The Court was clear — Verizon did not have carte

12  blanche to relitigate *Yahoo*'s denied motion for summary judgment.

13       Yet that is exactly what Verizon has done. Verizon does not seek a declaratory judgment, but

14  rather to dismiss Droplets' existing claims — that is, Droplets' claims against *Yahoo*. Verizon

15  reasserts the same arguments Yahoo made a year ago, copying portions of Yahoo's denied motion

16  nearly verbatim.

17       Verizon's do-over on Yahoo's behalf is both procedurally improper and meritless. Verizon

18  was not authorized to file a second summary judgment motion for Yahoo, and indeed it has no

19  procedural right and no standing to seek dismissal of claims against a third party. In any event,

20  Verizon's copied arguments are just as meritless as they were when Yahoo raised them in its own

21  motion. ███████████████████████████████████. As the Court

22  recognized in deciding Yahoo's prior motion, a defendant cannot absolve itself of liability by

23  transferring away its liability to some third party without the consent of the plaintiff. ███████

24  ████████████████████████████████████████████

25  ███████████████████████████████████████████

26  ███████████████████████████████████████████

27  ████████████████████████████████████████████

28  ██████████████████████████████████████

As to Verizon, Droplets has simply not sued Verizon — rather, Verizon has repeatedly attempted to insert *itself* into this case, first as the substituted defendant and then as an intervenor-plaintiff. But now that Verizon has called the question of its own liability, Droplets has been forced to investigate the validity and scope of Verizon's license and consider its rights. Droplets has discovered that, ████████████████████████████████████████████ ████████████████████████████████████████ Droplets retains the right to sue Verizon for its admitted assumption of *Yahoo's* liabilities (as contrasted with liability for *Verizon's* patent infringement). Indeed, with Verizon now in this case at its own insistence, it makes practical sense for these proceedings (including trial) to include Verizon's assumed liabilities as well as the unqualified indemnification of Yahoo that Verizon has repeatedly promised this Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Verizon has the standing and procedural right to seek summary judgment on Yahoo's behalf;

2. If so, whether Yahoo, as a separate entity that independently created websites later sold to Verizon, ████████████████████████████████████████████ ████████████████████████████████████████████

3. Whether ████████████████ unambiguously bars Droplets from suing Verizon for its assumption of *Yahoo's* patent infringement liabilities and any related indemnification.

## FACTS AND PROCEDURAL HISTORY

Droplets filed this patent infringement action against Yahoo!, Inc. ("Yahoo")[1] in 2011 in the Eastern District of Texas. Compl., Dkt. 1 (Sept. 7, 2011). On July 24, 2012, the case was transferred to this Court. In September 2013, this Court stayed this case pending an *inter partes* reexamination ("IPR") of a then-asserted patent, which had been requested by defendants in related cases. Once the IPR was resolved,[2] the stay in this case was lifted on October 31, 2018.

---

[1] Droplets understands that Yahoo!, Inc. is now known as Altaba, Inc., though Yahoo!, Inc. has not sought a name change for the case style. For clarity, Droplets refers to this company as "Yahoo" both before and after its renaming.

[2] The patent at issue in that IPR was ultimately determined to be invalid. That patent is no longer at issue in this case. The '745 patent is the remaining asserted patent in this case. It has also

1   During the stay, ███████████████████████████████

2   ████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ██████████████████████████████████

5   Also during the stay, ████████████████████████████████

6   ████████████████████████████████████████████████████

7   ███████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ███████████████████████████████████████████████

11  ████████████████████████

12   When the stay was lifted, Verizon began to act as though it had become the *de facto*

13  defendant in this case. For example, the firm presently representing Yahoo and Verizon filed several

14  pleadings with this Court in Yahoo's name and met and conferred with Droplets at a time in which it

15  only represented Verizon — not Yahoo. Lee Decl. In Supp. Of Droplets' Opp. To Yahoo's Mot. For

16  Summ. J., Dkt. 339.6, ¶¶ 9-16, Exs. G-K. When this came to Droplets' attention, Droplets objected

17  and insisted on meeting and conferring with Yahoo, the party to the case, and not Verizon. In

18  response, hours before the filing of the Joint CMC, Yahoo's present counsel confirmed that it then

19  began representing Yahoo in addition to Verizon. *Id.*, ¶ 14, Ex. H.

20   In May 2019, Yahoo formally moved to substitute Verizon as the defendant, and for

21  summary judgment based on Verizon's purported license ████████████████████. Yahoo's

22  Mot. For Summ. J. ("Yahoo MSJ"), Dkt. 328.4; Def.'s Mot. To Substitute Parties And Amend

23

24  ─────────────────────────

25  gone through an IPR, and the Patent Office did not invalidate any of the claims in that process — none
    of the original 26 claims of the '745 patent were amended or rejected and additional claims were added

26  (claims 27-104).

     [3] The role of Oath, Inc. in this case is unclear. █████████████████

27  ████████████████████████ And Verizon's 30(b)(6) representative could

28  not say what either Oath entity owned (other than saying that <u>Oath, Inc.</u> owns some IP which is not
    involved in this lawsuit).

Caption ("Mot. To Substitute"), Dkt. 326.4. Droplets opposed the Motion to Substitute, arguing that it had chosen to sue Yahoo, not Verizon, and had a right to sue the defendant of its choice — especially when substituting the defendant would give rise to a new licensing defense and thus seriously prejudice Droplets. *See* Droplets' Opp. To Def. Yahoo!, Inc.'s Mot. To Substitute, Dkt. 334.4. In response to Yahoo's motion for summary judgment, Droplets argued that only Verizon, and not Yahoo, purportedly had a license to Droplets' patent, and Yahoo remained liable for its own patent infringement. Droplets' Opp. To Yahoo's Mot. For Summ. J. ("Opp. to Yahoo MSJ"), Dkt. 339.4, at 11-18. Droplets also noted that Yahoo had not presented evidence to prove even *Verizon's* license, and that further discovery was thus warranted. *Id.* at 18-22.

The Court held a hearing on June 20, 2019 on both of Yahoo's motions. *See* Minute Entry, Dkt. 367. █████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████

In October 2019, the Court denied both of Yahoo's motions. *See* Order, Dkt. 411. The Court interpreted Yahoo's motion for summary judgment to depend upon its motion to substitute: "Yahoo asks the court to substitute Oath as defendant and then to grant summary judgment because Oath has a complete defense to infringement." *Id.* at 3-4. The Court denied the motion to substitute because changing the defendant "would significantly impact Droplets' substantive rights." *Id.* at 6. The Court then denied the motion for summary judgment because, "having denied the motion to substitute, Oath is not a party in this case, and its status as a sublicensee is irrelevant." *Id.* at 7. The Court specifically cautioned Yahoo that it did not find the question "particularly close" on its motion to substitute, Ex. B to Falkenstien Decl., October Hearing Tr., 4:18-20, and found the idea Yahoo was immunized by the asset transfer to be without merit (as discussed at the hearing).

In August 2019, Verizon took a new approach to inserting itself in the case: it moved to intervene. *See* Oath Holdings Inc. and Oath, Inc.'s Motion to Intervene, Dkt. 375.4. Verizon argued that, as the present owner of the Yahoo-branded websites, it "has a direct interest in their continued

1    operation free from Droplets' infringement allegations" and should be allowed to "demonstrate how

2    the Accused Products do not infringe the '745 patent." *Id.* at 6. As an exhibit to its motion, Verizon

3    proposed a complaint in intervention, which contained a single claim seeking declaratory judgment

4    "that the Accused Products do not infringe" Droplets' patent. *See* Oath Holdings Inc. and Oath,

5    Inc.'s Compl. In Intervention, Dkt. 368.10, at 3-4. In November, the Court granted Verizon

6    permissive intervention. Order, Dkt. 419.[4]

7          The Court held a status conference in February 2020, at which it permitted *Verizon* to file a

8    summary judgment motion based on its license. *See* Dkt. 444. The Court did not grant *Yahoo* the

9    right to file a second summary judgment motion. Counsel for Droplets explicitly confirmed at the

10   hearing that Verizon's motion should concern only its own claims in intervention, not Droplets'

11   claims against Yahoo.

12         In anticipation of Verizon's motion, Droplets took discovery to establish the validity and

13   scope of Verizon's license. For example, Droplets sought to confirm ███████████████████

14   ████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ██████████████████████████

19   Through discovery, Droplets confirmed that ████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24

25

---

26          [4] While Verizon premised its intervention motion on seeking a declaration of non-infringement, and its proposed complaint in intervention contained only this one count, after Verizon's

27   motion was granted, it filed a different intervention complaint, containing different claims and relief. The Court granted the intervention motion for purposes of the intervention complaint as proposed, not

28   some new unauthorized intervention complaint. *See infra*, n.5.



23   On May 13, 2020, Verizon filed its present motion for summary judgment seeking dismissal

24   of Droplets' claims against Yahoo. Based on the limited scope of Verizon's license, Droplets

25   opposes the motion.

**ARGUMENT**

27   Summary judgment is proper when a "movant shows that there is no genuine dispute as to any

28   material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

1    dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict

2    for the nonmoving party," and a fact is material only if it might affect the outcome of the case.

3    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary

4    judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not

5    weigh evidence or make credibility determinations. *Id*. at 255.

6           "Like with all patent-based affirmative defenses, the burden of proving" a license "rests on

7    the party that raises the defense." *Freescale Semiconductor, Inc. v. ChipMOS Techs.*, 2013 WL

8    308919, at *3 (N.D. Cal. Jan. 25, 2013); *In re Townshend Patent Litig.*, 2004 WL 1920009, at *3

9    (N.D. Cal. Aug. 25, 2004); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 828 (Fed. Cir.

10   1991). Where the party moving for summary judgment would bear the burden of proof at trial, that

11   party "has the initial burden of establishing the absence of a genuine issue of fact on each issue

12   material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th

13   Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must

14   produce admissible evidence to show that a genuine dispute of material fact exists. *Nissan Fire &*

15   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03. (9th Cir. 2000).

16          If relevant provisions of the licensing contract are subject to more than one possible

17   interpretation, summary judgment is not warranted. "The proper inquiry in determining whether a

18   contract is ambiguous is whether the agreement on its face is reasonably susceptible of more than

19   one interpretation. A party seeking summary judgment has the burden of establishing that the

20   construction it favors is the only construction which can fairly be placed thereon." *RSI Corp. v. Int'l*

21   *Bus. Machines Corp.*, 2013 WL 1087468, at *3 (N.D. Cal. Mar. 13, 2013) (quotation omitted). If the

22   contract is instead ambiguous, "parol evidence is necessary to determine the intent of the parties,"

23   and it is the burden of the party moving for summary judgment to provide such parol evidence.

24   *Griest v. Rogers*, 2010 WL 11596135, at *3 (C.D. Cal. Apr. 13, 2010). Without parol evidence

25   establishing that there is no dispute of material fact regarding the contract interpretation, summary

26   judgment based on an ambiguous contract is not warranted. *See, e.g.*, *HBSC Ins. Ltd. v. Scanwell*

27   *Container Line Ltd.*, 2001 WL 940673, at *2 (C.D. Cal. Jan. 17, 2001) ("The Court cannot grant the

28

1    Defendants' Motions For Summary Judgment where their own contract seems ambiguous."); *MGP*

2    *IX Lincoln Station, LLC v. City of Cerritos*, 2014 WL 12780290, at *6 (C.D. Cal. Feb. 12, 2014).

3          Here, Verizon has no right to seek the relief it requests — dismissal of Droplets' claims

4    against Yahoo — in the first instance. In any event, Verizon has not met its burden to show that

5    summary judgment in Yahoo's favor is warranted, or that Droplets should be barred from suing

6    Verizon for the liabilities it assumed from Yahoo. ███████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    ████████████████████████████████████    For Verizon and Yahoo to prevail, the

9    contracts would need to be unambiguous that they have a license, which they are not — any

10   ambiguity defeats summary judgment given the absence of parol evidence.

11   **I.**    **Verizon Has No Right To Seek Dismissal Of Droplets' Existing Claims.**

12         Verizon's motion seeks "dismissal of the pending action, with prejudice." Verizon MSJ at

13   22; *see also id.* at 2 ("this lawsuit must be dismissed"); *id.* at 21 ("this Court should dismiss this

14   action as a matter of law"). The only pending claims by Droplets are against Yahoo. As to Yahoo,

15   Verizon does not have the right — or the standing — to seek dismissal of a third party. And as to

16   Verizon, there *are no* existing claims to dismiss. Verizon could have sought summary judgment on

17   the declaratory judgment of *non-infringement* or *invalidity* it sought in its complaint in intervention,

18   but it made no arguments bearing on declaratory judgment, infringement, or validity. In short,

19   Verizon did not seek the relief it had the right to pursue, and it has no right to the only relief

20   discussed in its brief — dismissal of the existing claims against Yahoo.

21       **A.**    **Verizon May Not Seek Summary Judgment On Behalf Of Yahoo.**

22         Verizon's motion asks the Court to dismiss the existing claims against Yahoo. *See* Verizon

23   MSJ at 22 (requesting "dismissal of the pending action, with prejudice"). That broad request is not

24   consistent with the Court's instructions for this motion, and it is not permissible as a matter of

25   process or the Court's standing orders.

26         Yahoo already moved for summary judgment based on the Droplets/RPX Patent License

27   Agreement, in May 2019. The Court denied that motion — after expressly noting that it was not a

28   close question. Verizon subsequently intervened, seeking a ruling that Droplets could not in the

1  future file claims against <u>Verizon</u>. At the February 2020 status conference, the Court granted

2  Verizon the right to file its *own* motion for summary judgment based on the licensing agreement.

3  Droplets' counsel explicitly confirmed that Verizon's motion could not seek dismissal of the claims

4  against Yahoo, and the Court's standing order expressly limits each party to only one motion for

5  summary judgment absent leave of court for good cause shown. *See* Standing Order, Part F. Despite

6  the Court's clear instructions, Verizon now attempts a "second bite at the apple" for Yahoo. Yahoo

7  already had its chance to argue that it was covered by the Droplets/RPX Contract, and the Court

8  already adjudicated and rejected Yahoo's position. This motion properly concerns only whether

9  Droplets could in the future sue *Verizon* for patent infringement.

10      That limited relief is compelled not only by the Court's clear instructions but also as a matter

11  of jurisdiction and standing. Verizon — as a plaintiff-intervenor with claims for declaratory

12  judgment — does not have the right to seek summary judgment in favor of the *defendant* on the

13  original claims to which it is <u>not</u> a party. "Rule 56 does not permit [a party] to move for summary

14  judgment in favor of any party other than [itself]." *Elderlite Express, Inc. v. Capitol City Trailers,*

15  *Inc.*, 2007 WL 1875776, at *2 (S.D. Ohio June 27, 2007) (denying summary judgment where pro se

16  defendant to a crossclaim sought summary judgment on behalf of the original plaintiff, because "the

17  problem is that [the movant] is not seeking summary judgment on any claims asserted against him");

18  *see also Payne v. River Rocks LLC*, 2016 WL 8669876, at *5 (M.D. Fla. Sept. 9, 2016) (concluding

19  that "a movant cannot move for summary judgment on behalf of another party, but may only move

20  for summary judgment in its own favor"); *Gaerte v. Great Lakes Terminal & Transp. Corp.*, 2007

21  WL 2349611, at *3 (N.D. Ind. Aug. 14, 2007) (noting that Rule 56 "only contemplates a party

22  moving for summary judgment *for itself,* not on behalf of another party"). Even multiple defendants

23  to the same claim do not have the right to seek summary judgment on each other's behalf. *See, e.g.*,

24  *Whittaker v. Morgan State Univ.*, 2011 WL 1099266, at *1 (D. Md. Mar. 21, 2011) (denying one

25  defendant's motion to dismiss "*on behalf of* [other] defendants" because it "does not explain how it

26  has standing to seek dismissal of other, unrepresented defendants"); *Selective Way Ins. Co. v. RHJ*

27  *Med. Ctr., Inc.*, 2008 WL 5156078, at *7 (W.D. Pa. Dec. 8, 2008) (concluding that moving

28  defendant "has no standing to seek dismissal of claims against another named party in the action,

1   where that party is a separate and distinct corporate entity"). As these cases make clear, the

2   procedural impropriety of Verizon's motion stems from both the Federal Rules of Civil Procedure

3   and jurisdictional standing requirements. Verizon cannot seek summary judgment on Yahoo's

4   behalf.

5   **B.   <u>Verizon Has Not Addressed The Declaratory Relief Requested In Its Complaint.</u>**

6         The only relief Verizon has the procedural right and standing to seek is the declaratory relief

7   it requested in its complaint in intervention. Verizon could have moved for summary judgment on *its*

8   *claims*, as stated in the intervention complaint. The only claims in the intervention complaint are for

9   declaratory judgment "that the Accused Products do not infringe" Droplets' patent and that the

10  patent "is invalid." *See* Oath Holdings Inc. and Oath, Inc.'s Compl. In Intervention, Dkt. 420, at 3-4.

11  Yet after asserting its two claims for declaratory judgment, Verizon's complaint lists requested relief

12  including "a judgment against Droplets and in favor of Verizon Media and Altaba [Yahoo]" and

13  "dismiss[ing] Droplets' complaint in its entirety with prejudice and adjudg[ing] that Droplets is

14  entitled to no relief whatsoever from Verizon Media and/or Altaba [Yahoo]." *Id.* at 6. This relief

15  simply does not follow from the asserted claims for declaratory judgment.[5] Nor does it make any

16  sense for Verizon to assert affirmative defenses (including licensing), when it is not a defendant to

17  any claims. Verizon intervened as a plaintiff; it *has* no defenses and no grounds to seek dismissal of

18  claims to which it is not a party. It has the right only to seek the declaratory judgment it requested.

19

20         [5] Additionally, Verizon should not be allowed to rely upon the broad (and improper) language
    of its requested relief because it added this language without the Court's permission. When Verizon

21  moved to intervene, it attached a proposed complaint in intervention. *See* Dkt. 376.10; *see also* Fed.
    R. Civ. P. 24(c) (requiring that a motion to intervene "be accompanied by a pleading that sets out the

22  claim or defense for which intervention is sought."). Verizon's proposed complaint asserted just one
    claim — declaratory judgment of non-infringement — and sought relief related to that claim: a

23  declaration "that the Accused Products do not infringe" the patent. When the Court granted Verizon's
    motion to intervene, it authorized Verizon to "file [its] proposed complaint." Dkt. 419 at 11. Verizon

24  then filed a *different complaint* that had been substantially edited to add a second claim — for
    declaratory judgment of invalidity — as well as a long list of affirmative defenses. *Compare* Dkt.

25  376.10, *with* Dkt. 420. Verizon's modified complaint also added new requests for relief, including its
    request for a judgment against Droplets in its claims against Yahoo, and dismissal of Droplets' claims

26  against Yahoo. *Id.* These new claims and requests for relief were not addressed in the intervention
    briefing, and the Court did not authorize Verizon to file them. The Court retains the power to strike

27  these new claims, defenses, and requests for relief that Verizon slipped into its complaint. *See* Fed. R.
    Civ. P. 12(f)(1).

28

1    Yet Verizon's entire brief never mentions declaratory judgment. It only seeks *dismissal* of

2  Droplets' existing claims (which are against <u>Yahoo only</u>). To the extent the Court nonetheless

3  evaluates whether it should grant the declaratory relief actually requested in Verizon's claims,

4  Verizon has not met its burden on summary judgment to warrant that specific relief. Verizon

5  introduces no evidence of non-infringement or invalidity; it asserts only arguments about licensing.

6  It does not make any arguments about whether the *unlicensed* operation of the Accused Products

7  would infringe or whether Droplets' patent is valid.[6] Based only on Verizon's licensing arguments,

8  the Court cannot grant declaratory judgment that the Accused Products "do not infringe" or that the

9  patent "is invalid."[7]

10 **II.    Droplets' Claims Against Yahoo Should Not Be Dismissed.**

11   **A.   Verizon's Assumption of Yahoo's Liability Did Not Eliminate Yahoo's Own Liability.**

12    As Yahoo asserted in its prior motion, Verizon again argues that Yahoo's own liability was

13 eliminated once it "transferred" those liabilities to Verizon. *See, e.g.*, Verizon MSJ at 5 (claiming

14 that no "liabilities remained with Yahoo" after the asset transfer to Verizon); *id.* at 9-10 & n.9

15 (arguing that liabilities related to the Accused Products were not retained by Yahoo pursuant to its

16 contracts with Verizon). This is the precise argument Yahoo advanced in its own motion for

17 summary judgment a year ago, which the Court found meritless. *See* Yahoo MSJ at 2-3. As Droplets

18 explained in that briefing, a party "cannot simply transfer liability away at will," "without the

19 consent of the party to whom liability is owed." Opp. To Yahoo MSJ at 11-14.

---

[6] Even the declaratory relief sought is procedurally improper. Droplets has not sued Verizon, and the website Verizon operates is not an "Accused Product." The only Accused Products are the websites as operated by Yahoo in the past. In other words, Droplets has sued Yahoo for its infringement.

[7] Moreover, even if Verizon had sought a declaratory judgment regarding licensing — which it did not — Verizon would not be entitled to a declaratory judgment that the *Accused Products* are licensed in all instances. The "Accused Products" are the websites as operated by Yahoo alone — those are the only products that Droplets has accused in this lawsuit. Verizon argues at most that *it* is licensed to practice Droplets' patent. But that has nothing to do with Yahoo's liability for its past use of the websites. And in the future, the websites could be sold again to an unlicensed owner, or Verizon could lose or terminate its RPX license. It is a party that is licensed, not a product.

1   After that fulsome briefing, the Court rejected Yahoo's argument, now advanced by Verizon.

2   *See* Order, Dkt. 411, at 7 (denying motion for summary judgment because Verizon's "status as a

3   sublicensee is irrelevant" to the claims against Yahoo). ████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████ Ex. A to Falkenstien Decl., June 2019 Hearing Tr., at 12:11-14. Verizon still has not cited any

6   support for this basic point — because it is contrary to axiomatic principles of contract law. *See, e.g.*,

7   Kling & Nugent, Negotiated Acquisitions of Companies Subsidiaries and Divisions § 15.01; 9

8   Corbin on Contracts § 49.6 (2018); *William Wrigley, Jr. Co. v. Waters*, 1987 WL 123988, at *5

9   (S.D.N.Y. Dec. 16, 1987), *rev'd on other grounds*, 890 F.2d 594 (2d Cir. 1989); Opp. to Yahoo MSJ

10  at 13 (collecting additional cases).

11   In short, Verizon's assumption of Yahoo's liabilities makes it a joint debtor or guarantor, but

12  contracts between Verizon and Yahoo cannot release Yahoo's liability to Droplets without Droplets'

13  consent. Rather, to prevail, Verizon would need to identify a contractual provision whereby *Droplets*

14  released *Yahoo's* liability. And Verizon's attempts to demonstrate such a release under Droplets'

15  licensing contract with RPX fail.

16  **B.   The Droplets/RPX Contract Releases Only Explicitly Enumerated Parties.**

17   Verizon's first argument under the Droplets/RPX Contract again rehashes Yahoo's positions

18  from last year's summary judgment briefing. Verizon argues that Yahoo's liabilities for the *Accused*

19  *Products* have been retroactively released, no matter who incurred or holds those liabilities. *See*

20  Motion at 16-18. This is the same argument from Yahoo's denied motion, where it similarly argued

21  that the *products* were licensed, ignoring the question of which *companies* were licensed to make,

22  use, or sell those products. *See* Yahoo MSJ at 8-11. Verizon has now copied, nearly verbatim, that

23  argument into its own motion. *Compare* Yahoo MSJ at 8-10, *with* Verizon MSJ at 14-15; *compare*

24  Yahoo MSJ at 11-12, *with* Verizon MSJ at 19-21. ████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████ *See* Ex. A to Falkenstien Decl., June 2019 Hearing Tr., at 7:3-5. Its argument fares no

27  better through repetition.

28

1     As Droplets explained in the previous summary judgment briefing, 

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20 _____

21 [8]

22

23

24

25     In all events, it is axiomatic that one cannot license rights it does not have.

26 "[A]n owner or licensee of a patent cannot convey that which it does not possess." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000); *see also WiAV Sols. LLC v. Motorola, Inc.*, 631

27 F.3d 1257, 1268 (Fed. Cir. 2010) (noting that a sublicensee "cannot have greater rights than its licensor"); *The Cent. Inst. for Experimental Animals v. The Jackson Lab.*, 2010 WL 147935, at *5

28 (N.D. Cal. Jan. 12, 2010) (for a party to have "the right to sublicense," "it must also have a license" in the first instance).



C.

⁹ While Verizon claims the facts of this case are nearly identical to *FutureVision*, ▆▆▆ *Cf.* Verizon MSJ at 15-16 (citing



**i.** **_Yahoo did not develop the websites at issue for Verizon._**

But here, Yahoo is not Verizon's developer or contractor. Verizon did not commission Yahoo to develop the websites for Verizon. Indeed, at the time the websites were developed, Verizon and Yahoo had no relationship at all.[10] Yahoo is a wholly

_FutureVision.com, LLC v. Cequel Commc'ns, LLC_, 2016 WL 373790, at *8 (D. Del. Feb. 1, 2016)). In _FutureVision_, the entity whose liability was contested had been _acquired_ by a licensee, making it an Affiliate. Here, Yahoo itself was never acquired by Verizon; Verizon in substance merely bought some of Yahoo's assets. Verizon does not even attempt to claim that Yahoo falls within the definition of an Affiliate, making _FutureVision_ inapposite. _FutureVision_ does not broadly hold that _former owners_ of acquired assets can claim the benefit of _future owners'_ licensing contracts to release past liabilities related to the transferred assets. Moreover, there is no reason to believe that the RPX agreements in this case are identical to those in _FutureVision_, particularly since Droplets understands that each RPX agreement is unique.

[10] As Verizon apparently agrees, Yahoo developed the websites before it had any relationship to Verizon. _See, e.g._, Tepstein Decl., Dkt. 471.3, ¶ 5 ("Each of the Accused Products was developed by Yahoo . . . before the sale of Yahoo's operating business in June 2017. None of the Accused Products were developed by Verizon prior to June 2017."). Verizon does not argue that Yahoo continued to operate as an external developer after Verizon acquired the websites, but instead admits that Yahoo no longer "control[s]" the Accused Products. _Id._ ¶ 6 (testifying that "[s]ince the sale of

1   independent company that, of its own accord, created a website for itself that Verizon eventually

2   bought.

3   ███████████████████████████████████████████████████████

4   ███████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████

6   ████████████████████████████ "'[E]very word, phrase or term of a contract must be given

7   effect,' and courts should avoid accepting interpretations that 'render[] part of the writing

8   superfluous.'" *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1010 (9th Cir. 2014) (quoting

9   11 *Williston* § 32:5); *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d

10  692, 700 (9th Cir. 2004), *as amended on denial of reh'g* (June 2, 2004) (noting as a principle

11  "fundamental in contract interpretation" that no provision should be rendered "meaningless" or

12  "superfluous"). As the Ninth Circuit has recognized, California law explicitly adopts this

13  "fundamental principle" in a statute requiring that a contract's various provisions be "taken together,

14  so as to give effect to every part, if reasonably practicable, each clause helping to interpret the

15  other." *Ins. Co. of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 522 (9th Cir. 1990) (quoting Cal.

16  Civ. Code § 1641).[11] And Verizon's interpretation would lead to absurd results. If ████████

17  ███████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████

19  ██████████████████████████████████

20

21

22  ─────────────────────────

23  Yahoo's operating business, Verizon" and its subsidiaries "have owned and controlled the Accused
    Products exclusively"); Verizon MSJ at 10.

24  █████████████████████████████████████████████████ *See* Ex. C to Falkenstien Decl., Tepstein

25  Depo. Tr., at 19:6-9.
    ███████ at 19:21-20:9. Any work done from that point forward was not done by Yahoo, but rather

26  Verizon. *See also* Gupta Decl., Dkt. 471.3, ¶ 5: Rosier Decl., Dkt. 471.4; Ex. 13 to Verizon MSJ, Dkt

27  472.16, §§ 1.1-1.2; Ex. 19 to Verizon MSJ, Dkt. 472.21; Ex. 20 to Verizon MSJ, Dkt. 472.22, § 1; Ex.
    16 to Verizon MSJ, Dkt 542.18.

28  [11] ███████████████████████████████████████████████

1    Notably, the contractual language could easily have covered this situation if the parties had

2   intended it to do so. █████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   █████████████████████████████████████████████

8   **ii.**    ***Yahoo's use of the websites did not constitute exploitation by an RPX licensee.***

9   ████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████████████

11  ██████████████████

12  ████████████████████████████████████████████████████

13  ██████████████████████

14  █████████████████████████████████████████

15  ████████████

16  ████████████████████████████████████████████████

17  ██████████████████████████████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████

23     At all times relevant to this case, the websites at issue were owned and exploited by Yahoo.

24  They were simply not owned or exploited by Verizon. ██████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████████████



Droplets' interpretation of the scope of protections for third parties in the Droplets/RPX

Contract is also consistent with ██████████████████. Whenever possible, related

contracts should be interpreted together to harmonize their terms. *See, e.g.*, *Aviation Fin. Co. v.*

*Chaput*, 2015 WL 13203653, at *27 (S.D.N.Y. Mar. 12, 2015) (under New York law, when

interpreting multiple related contracts, "we strive to give effect to all of the terms of the relevant

documents, reading them together"); *In re Steen*, 509 F.2d 1398, 1403 (9th Cir. 1975) (when two

agreements concern "related subject matter" and "neither would have been executed without the

other," "they must be construed together"); *Cineblue Internationale Filmproduktionsgesellschaft*

*MbH & Co 1. Beteilgungs KG v. Lakeshore Entm't Grp., LLC*, 2010 WL 11508347, at *2 (C.D. Cal.

Feb. 18, 2010) ("Both contracts specified the application of California law and, under familiar

contract interpretation principles, the agreements are to be read together to effectuate the intent of

1   the parties.").[12] Droplets' interpretation of the two contracts harmonizes ███████████

2   ██████████████████, while Verizon's interpretation does not. ██████████████

3   ████████████████████████████████████████

4   ██████████████████████████████████

5   █████████████████████████████████████

6   ██████████████████████████████████████████

7   ████████████████████████████████████████

8   ████████████████████████████████████████

9   ██████████████████████████████████

10  █████████████████████████████████

11  ████████████████████████

12  ██████████████████████████████████████

13  ██████████████████████████████████

14  ██████████████████████████████████

15  ██████████████████████████████████

16  ██████████████████████████████████

17  ████████████████████████

18  ██████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ██████████████████████████████████

22  █████████████████████████████████████

23  █████████████████████████████████████

24  ██████████████████████████████████████████

25

26  _____

27  [12] █████████████████████████████████████████████ This

28  difference does not matter, because both New York and California law require the harmonization of
    multiple related contracts.



1 ██████████████████████████████████████████████████

2 ████████████████████████████

3 ████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████

6 * * * * *

7 █████████████████████████████████████████

8 ███████████████████████████████████████████████████

9 ███████████████. And if there are any ambiguities in the interpretation of those two defined terms,

10 Verizon's summary judgment motion must be denied because it provided no parol evidence. *See*

11 *supra*, p.7.

12 **III.    Verizon's License Does Not Release The Liabilities It Assumed From Yahoo.**

13 Verizon at times suggests that Droplets has already made claims against Verizon. *See, e.g.*,

14 Verizon MSJ at 7 (asking Droplets "to dismiss" its claims against Verizon); *id.* at 19 (referring to

15 "Droplets' allegations against Verizon Media"); *id.* at 20 ("Verizon Media . . . can no longer be

16 accused of infringing"). To be clear, Droplets has not currently sued Verizon in any form. Verizon

17 intervened, as a plaintiff, over Droplets' objections. Verizon inserted *itself* into this case, and now

18 seeks to be dismissed from it.

19 Droplets has not sued and will not sue Verizon for *Verizon's own* infringement after Verizon

20 acquired Oath Holdings Inc. (f/k/a Yahoo Holdings Inc.). Droplets has not argued that ████████

21 █████████████████████████████████████████ *Cf.* Verizon MSJ

22 at 16. Droplets simply sought discovery to confirm that Verizon actually had a valid license and that

23 Oath, Inc. and Oath Holdings Inc. qualified as affiliates under that license. Having now taken that

24 discovery, ████████████████████████████████████

25 ████████████.[13]

26

27 _____
  [13] ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

1   However, Droplets does have the right to sue Verizon for *Yahoo's* infringement liabilities,

2   which Verizon chose to assume and ██████████████████████████. Insofar as

3   Verizon seeks a declaratory ruling about whether Droplets *could* sue Verizon, Droplets retains the

4   right to sue Verizon for the liabilities it assumed from Yahoo.[14]

5   ████████████████████████████████████████████████

6   ████████████████████████████████████

7   ███████████████████████████████████████

8   █████████████████████████████████████████

9   ████████████████████████████████████████

10  ██████████████████████████████████

11  ████████████████████████████████████████

12  ███████████████████████████████████████

13  ██████████████████████████████████████████

14  ███████████████████████████████████████

15  ████████████████████████████████████

16  █████████████████████████████████████████

17  ███████████████████████████████████████

18  ████████████████████████████████████████████

19  ██████████████████

20  ███████████████████████████████████████

21  _____

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ██████████████████████████████████

[14] Additionally, Verizon has made unqualified representations that it is indemnifying Yahoo for any liability it incurs in this case. Now that Verizon has inserted itself in this case, it makes sense for that indemnification obligation to be part of any judgment obtained by Droplets against Yahoo, making Verizon directly liable for that judgment instead of requiring a separate lawsuit to collect on this indemnification obligation. To the extent there are any fact disputes about the indemnity (and there do not appear to be any based on Verizon's unqualified representations), they can be tried to same jury deciding whether Yahoo is liable for patent infringement.

1 ███████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 ████████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ██████████████████████████████████████████████████

10   ██████████████████████████████

11 ██████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ██████████████████████████████████████████

17 ██████   Thus, Droplets retains the right to sue Verizon for Yahoo's infringement stemming from

18 Yahoo's own operation of the Accused Products.[15]

19                                 **<u>CONCLUSION</u>**

20        Verizon has no right to the relief it seeks. As to Yahoo, Verizon has no standing or

21 procedural right to seek summary judgment on Droplets' claims against Yahoo at all. As to Verizon,

22 there are no present claims against Verizon, and the existence of a valid license does not justify the

23 declaratory judgment of *non-infringement* or *invalidity* that Verizon sought in its complaint. In any

24 event, Verizon has not proven that the cited licensing contracts establish, with no genuine dispute of

25

26    [15] The covenant not to sue is therefore not somehow broader than the scope of Verizon's own
   patent license. Under both agreements, ████████████████████████████████████████████

27 █████████████████████████████████████████████████████████████████████████

28 █████████████████████████████████████████████████  Droplets' interpretation of the two
   contracts harmonizes them, as required by both California and New York law. *See supra*, p.18.

material fact, that Droplets may not pursue its existing claims against Yahoo, or any future claims against Verizon based on the liabilities it assumed from Yahoo.

Dated: May 27, 2020                          /s/ *Courtland L. Reichman*
                                             Courtland L. Reichman

                                             Courtland L. Reichman (CA Bar No. 268873)
                                               creichman@reichmanjorgensen.com
                                             Shawna L. Ballard (CA Bar No. 155188)
                                               sballard@reichmanjorgensen.com
                                             Michael G. Flanigan (CA Bar No. 316152)
                                               mflanigan@reichmanjorgensen.com
                                             Kate Falkenstien (CA Bar No. 313753)
                                               kfalkenstien@reichmanjorgensen.com
                                             Reichman Jorgensen LLP
                                             100 Marine Parkway, Suite 300
                                             Redwood Shores, CA 94065
                                             Telephone: (650) 623-1401
                                             Facsimile: (650) 623-1449

                                             Khue V. Hoang (CA Bar No. 205917)
                                               khoang@reichmanjorgensen.com
                                             Jaime F. Cardenas-Navia (admitted *pro hac vice*)
                                               jcardenas-navia@reichmanjorgensen.com
                                             Reichman Jorgensen LLP
                                             750 Third Avenue, Suite 2400
                                             New York, NY 10017
                                             Telephone: (646) 921-1474
                                             Facsimile: (650) 623-1449

                                             Attorneys for Plaintiff and Intervenor-Defendant
                                             *Droplets, Inc.*