IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>YAHOO!, INC.,<br><br>      Defendant. | Case No. 12-cv-03733-JST (KAW)<br><br>**JOINT DISCOVERY LETTER IN DROPLETS, INC. V. YAHOO!, INC. AND IN OATH, INC. V. DROPLETS, INC.** |
| OATH, INC., et al.,<br><br>      Intervenor-Plaintiffs,<br><br>v.<br><br>DROPLETS, INC.,<br><br>      Intervenor-Defendant. | |
| DROPLETS, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>NORDSTROM, INC.,<br><br>      Defendant. | |

Pursuant to Your Honor's Standing Order, Plaintiff Droplets, Inc. ("Droplets"), Defendant Yahoo!, Inc. ("Yahoo"), and Intervenor-Plaintiffs Oath, Inc. and Oath Holdings Inc. ("Verizon") respectfully request the Court's assistance in resolving a discovery dispute. This dispute concerns Yahoo and Verizon's Patent Local Rule 3-4(a) production. In particular, Droplets seeks an order directing Yahoo and Verizon to either (1) produce the information required by Rule 3-4(a) (including without limitation all versions of the accused source code operative throughout the claimed damages period (2005-2017)), and (2) if any such code is missing, explain with particularity why it has not been produced and was not preserved. Yahoo and Verizon contend they have (1) complied with Patent Local Rule 3-4(a) by providing source code and other technical documents that show the operation of the Accused Products throughout the relevant time period, and (2) agreed to produce any additional code Droplets' specifically requests that it believes is relevant and has not already been produced. The parties have met and conferred, including telephonic conferences between lead counsel on August 5, 2020 and August 24, 2020, but they have been unable to resolve this dispute. The parties attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.

*/s/ Courtland Reichman*

Courtland L. Reichman (CA Bar No. 268873)
creichman@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Attorney for Plaintiff *Droplets, Inc.*

*/s/ Jennifer Haltom Doan*

Jennifer Haltom Doan
(admitted pro hac vice)
Joshua R. Thane
(admitted pro hac vice)
J. Randy Roeser
(admitted pro hac vice)
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

Kevin P. Anderson
(admitted pro hac vice)
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 776-5213
Email: kpanderson@duanemorris.com

L. Norwood Jameson
(admitted pro hac vice)
Matthew C. Gaudet
(admitted pro hac vice)
DUANE MORRIS LLP
1075 Peachtree Street NE, Ste. 2000
Atlanta, GA 30309

Telephone: (404) 253-6900
Email: wjameson@duanemorris.com
Email: mcgaudet@duanemorris.com

George D. Niespolo
DUANE MORRIS LLP
One Market Street, Ste. 2200
San Francisco, CA 94105
Telephone: (415) 957-3013
Email: gdniespolo@duanemorris.com

Aleksander J. Goranin
(admitted pro hac vice)
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1868
Email: agoranin@duanemorris.com

Nicole E. Grigg
DUANE MORRIS LLP
2475 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 847-4146
Email: negrigg@duanemorris.com

**ATTORNEYS FOR DEFENDANT YAHOO!, INC. (D/B/A ALTABA, INC.) AND INTERVENOR-PLAINTIFFS OATH, INC. AND OATH HOLDINGS INC. (D/B/A VERIZON MEDIA)**

A.  N.D. Cal. Patent L.R. 3-4(a)

Local Rule 3-4(a) requires that:

With the "Invalidity Contentions," the party opposing a claim of patent infringement shall produce or make available for inspection and copying:

(a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart;

**Droplets' Position**

Droplets requests that the Court order Defendants to either (1) produce the information required by Local Rule 3-4(a); or (b) explain why they cannot do so. This is consistent with what the Court also directed Defendant Nordstrom to do in the companion case. Dkt. 466.

**Background**

Yahoo filed its initial invalidity contentions in this case in June 2012 in the Eastern District of Texas, where the case was filed. The case was then transferred to this Court and stayed until 2018. After the stay was lifted, Yahoo filed amended invalidity contentions in April 2019. Despite the requirements in Rule 3-4(a), Yahoo did not make available any source code with its invalidity contentions. Instead, Yahoo claimed it had not retained the source code when it sold certain assets to Verizon or its affiliated companies long after this case was filed. After intervening, Verizon produced some source code in late January 2020. The sequence of events shows Defendants have slow-played Rule 3-4(a) production, each time producing just a little bit more in hopes of avoiding motion practice, but not fulfilling their obligations.

Pandemic restrictions limited Droplets' ability to conduct code review in the months following Verizon's production. After resuming review in May 2020, Droplets pressed Defendants to identify when each version was released and operative. Two months later, when Droplets again asked to discuss "the missing Yahoo source code version[s]," Defendants' counsel responded that Defendants were "working to provide any available date and version information for the produced code." The parties conferred on July 28, and Defendants could not at that time confirm that they had "produced all of the source code that was operative over the relevant damages period." Droplets asked Defendants to either confirm they had done so and provide the operative dates for the produced code or produce the missing code.

Defendants instead argued that Droplets' "request for every iteration of code related to the accused products goes well beyond the requirements of Patent L.R. 3-4(a)." Unable to agree about the scope of Defendants' obligations, on July 30, Droplets asked to schedule a lead counsel call. In response, Defendants shifted field, promising to provide the operative dates for produced source code, likely within a week. They then represented that they had "produced the source code in Altaba/Verizon Media's possession, custody, or control that relates to the accused functionalities as we currently understand them."

A week later, on August 6, lead counsel conferred. Despite the earlier promise to provide operative dates for the produced code within a week, Defendants claimed they needed more time. Droplets agreed to wait another week. A few days later, when Defendants asked for yet *more* time, Droplets reiterated that it would need to seek the Court's assistance if, by August 14, Defendants did not meet their obligations.

On August 14, Defendants sent Droplets a chart showing when the produced code was operative. On its face, the chart revealed numerous gaps. For example, it revealed that:

- no code has been produced for Yahoo Finance operative before October 2012;
- no code has been produced for My Yahoo operative before August 2014; and
- no code has been produced for Yahoo Contacts operative before October 2013.[1]

Droplets immediately notified Defendants of these deficiencies. On August 17, Droplets again asked for the missing code or an explanation, and the parties held a second lead counsel call on August 24. At that time, Defendants had yet to produce additional code or offer any explanation for its continued absence.[2]

On Friday, August 28 — after the second lead counsel call, after Droplets provided its draft of this letter, and nearly a month after Defendants claimed to have produced all the relevant source code in their possession — Defendants sent an "updated summary" of their production, reflecting "new code that we added to the source code computers following the request in your portion of the joint letter."

Despite having been asked repeatedly for *all* relevant code, Defendants produce new code only when prodded or facing a discovery motion. Defendants' latest production — provided only one business day before this letter is due to the Court and only after Droplets provided its initial letter — is still deficient on its face. For Yahoo Finance, for example, although Defendants produced more than a dozen unique source code repositories operating different aspects of the product from 2012 to present, they now produce one *single* repository operative from 2007-2015. Pre-2012, the more detailed repositories analogous to those produced from 2012 to present are still missing. Similarly, for Search Assist, Defendants produced 8 different repositories operative until the present. Each repository was operative for different lengths of time (one repository goes back to 2016, two to 2014, one to 2013, three to 2012, and one to 2009). However, Yahoo has not provided the source code from before each of these 8 files and repositories were operative, and the past code it has provided does not line up with the earliest dates the current code was first operative.

Sixteen months have passed since this information should have been produced under Rule 3-4(a). To avoid this continued "cat and mouse," Droplets simply seeks to compel Defendants to either (1) produce what is required by Rule 3-4 (a); or (2) explain why they cannot. Yahoo (the only party Droplets has sued) has been under a duty to preserve this information since at least 2011.

**Argument**

The local rules require production of source code "sufficient to show the operation of any aspects or elements of an Accused Instrumentality" identified on the plaintiff's claim chart. L.R. 3-4(a). "The Local Rules are not like other forms of discovery which require a formal request by the opposing party. Rather, it is the responsibility of the party itself to make disclosures that satisfy the Rules." *Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 1787421, at *3 (N.D. Cal. July 27, 2005).

In the consolidated *Droplets v. Nordstrom* case, this Court ordered Nordstrom to produce prior versions of relevant source code or explain why it could not do so. *See* Dkt. 466; *see also Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595784, at *2 (N.D. Cal. May 4, 2012) (ordering Samsung to produce "all relevant Samsung source code versions, and not only the release-version source code that Samsung deemed most relevant"); *Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804, at *2 (N.D. Cal. Aug. 22, 2006)

---

[1] In conferring with Droplets, Defendants have repeatedly demanded that Droplets tell them what code is missing so that Yahoo may search for it. This demand inverts the burdens: Rule 3-4(a) requires the *producing party* to "make disclosures that satisfy the Rules." *Cryptography Research*, 2005 WL 1787421, at *3. Regardless, gaps in the produced code are clear from Defendants' *own chart* which lists when the produced source code was operative.

[2] Defendants' counsel speculated, without offering any corroborating evidence, that the missing code *may* have been "written over."

(ordering production of the "entire source code, including all versions"); *3Com Corp. v. D-Link Sys., Inc.*, 2007 WL 949596, at *2 (N.D. Cal. Mar. 27, 2007) (ordering production of all "versions of the source code" in the defendant's possession); *Keithley v. Home Store.com, Inc.*, 2008 WL 3833384, at *11 (N.D. Cal. Aug. 12, 2008) (having ordered "production of all versions of source code," awarding sanctions for the spoliation of some versions of the source code). Droplets requests that the same be ordered here.

In response to this letter, Defendants represent that they have "produced the relevant source code in [their] possession, custody, or control located after a reasonably diligent search, or informed Droplets that the produced code is representative of the life of the accused functionalities." As a threshold matter, Rule 3-4(a) defines what is relevant. Defendants cannot withhold what is required by Rule 3-4(a) on the grounds that they unilaterally determined it is not "relevant." More fundamentally, the substance of the dispute between the parties appears to be a question of which party is required to identify what has not been produced and explain why. Defendants argue that it is up to Droplets to identify gaps — i.e., the time periods for which Yahoo has not produced the operative versions of the source code for the accused functionalities (the scope of which the parties do not dispute) — and only then will Defendants investigate those gaps. By contrast, Droplets believes it is Defendants' obligation to either produce the information required by Rule 3-4(a) or explain why it cannot, as the Court ordered Nordstrom to do.

Yahoo (and later Verizon) had an obligation, since the filing of the suit in September 2011, to preserve all relevant source code in their possession, custody, or control. Yet for certain accused functionalities, Defendants have not produced years' worth of operative code, including code post-dating the complaint.[3] Defendants have delayed their obligations under the Local Rules for far too long. Droplets respectfully requests the Court to compel Defendants to (1) produce the information required by Rule 3-4(a) (including without limitation all versions of the accused source code operative throughout the claimed damages period (2005-2017)), and (2) if any such code is missing, explain with particularity why it has not been produced and was not preserved.

**Verizon and Yahoo's Position**

On May 6, 2020, this Court, for the second time, ordered Droplets to provide infringement contentions that comply with Patent L.R. 3-1. Dkt. Nos. 258 and 469. For 8 years of litigation, Droplets systematically left Defendants in the dark regarding what exactly Droplets accuses of infringement. Without compliant infringement contentions, Defendants were left to guess as to what the contentions covered and what corresponding source code and technical documents should be produced under Patent L.R. 3-4(a). Defendants have repeatedly informed Droplets that if "Droplets will identify what code it believes is missing, then we will investigate the request, produce the code if it exists and is relevant, or inform Droplets that the requested code does not exist and/or that other representative code has already been produced." There is no dispute for the Court to resolve.

Defendants have produced source code and other technical documents "sufficient to show the operation of any aspects or elements of an Accused Instrumentality," as required by L.R. 3-4(a). For each Accused Product[4], Defendants have either (1) produced source code dating back to when the product first

---

[3] Droplets will notice a 30(b)(6) deposition regarding Defendants' retention or spoliation of code. This does not change the need for relief here—Defendants must make the required production or explain why they cannot. Droplets can then, as needed, take discovery on those alleged explanations.

[4] Based on Droplets' Complaint and infringement contentions, Defendants understands Droplets accuses mail.yahoo.com; my.yahoo.com; www.yahoo.com; calendar.yahoo.com;

included the accused functionalities, (2) produced source code dating back prior to the filing of the Complaint, or (3) produced the most recent version of code that is representative of the entire life of the accused functionality for the product, and informed Droplets that the code is representative.[5] Droplets' assertion that Defendants refuse to produce relevant code is simply false. They have not.

### Background

On June 13, 2017, Yahoo! Inc. sold its entire operating business to Verizon. Yahoo properly transferred all products and services (including the source code for the Accused Products) to Verizon. On August 13, 2019, Verizon moved to intervene, which was granted on November 19, 2019.. Dkt. Nos. 375 and 419.Two months later, Verizon produced source code for every Accused Product based on its deciphering of Droplets' non-compliant infringement contentions. Defendants have also produced hundreds of thousands of pages of technical documents that describe the operation of the Accused Products.

Droplets first began reviewing Defendants' source code on February 24, 2020. For over three months, Droplets did not raise any concerns with the source code that Defendants timely produced. On May 28, 2020, for the first time, Droplets raised specific concerns with respect to functionalities that Droplets believed were not present in Defendants' source code production. Defendants promptly addressed those specific concerns and provided the requested source code files. On July 22nd, over five months after Droplets began reviewing Defendants' source code, Droplets first raised concerns that Defendants had not identified the dates that each code set was operative nor produced code for the entire *damages period*.[6]

Defendants promptly acknowledged Droplets' request and investigated the dates of operation. Defendants also informed Droplets: "[g]iven the breadth of [Droplets'] infringement allegations and the amount of source code that has been produced, this is not a simple task." At Droplets' request, Defendants spent hours reviewing code, code storages facilities, and interviewing engineers to provide specific dates related to the over 50 code sets. On August 14th, Defendants provided the information Droplets requested.

In response, Droplets vaguely asserted that there were "gaps in the production." Defendants asked Droplets to identify "specific code that you contend is relevant and has not been produced." Droplets never made a specific request. During the August 24th lead counsel meet and confer, Defendants reiterated their request for Droplets "to identify any specific code that Droplets believes is relevant and has not been produced, and informed Droplets that [Defendants] would investigate and produce the code if it exists." Again, Droplets did not identify any specific code that it contends is relevant and has not been produced. Droplets continued to vaguely assert: "there remain gaps in the production." When asked "if code was missing for any accused functionality," Droplets informed Defendants that it has not identified any missing functionalities.

On August 25th, when Droplets circulated its portion of this joint letter and after it finally amended

---

finance.yahoo.com; maps.yahoo.com; search.yahoo.com; and Yahoo toolbar (collectively "Accused Products") of infringement in this case.

[5] Droplets' request for an order requiring a detailed explanation why any code might be missing is improper. Droplets should not be allowed to sidestep formal discovery by making informal requests and then moving to compel. If Droplets feels like source code is missing—it is not—then it can take a deposition to formally inquire about any "missing" code.

[6] Droplets demands code for every accused product dating back to 2005 (six years before this lawsuit was filed in 2011) and continuing through June 2017 (when Yahoo sold the accused products to Verizon). Many of the accused products were not in operation in 2005 and others ceased operation before 2017.

its deficient infringement contentions, Defendants learned for the first time what specific code Droplets believed was missing. *Supra* at 2. With the explanation, instead of Droplets' vague contentions and assertions of gaps in the production, Defendants collected and produced the source code Droplets claimed was missing: "Yahoo Finance operative before October 2012;" "My Yahoo operative before August 2014;" and "Yahoo Contacts operative before October 2013."

### **Argument**

Patent Local Rule 3-4(a) requires production of: "[s]ource code, specifications, schematics, flow charts, artwork, formulas, *or* other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart."

Defendants produced source code and other technical documents sufficient to show the operation of each Accused Product, including the operation before Droplets filed suit in September 2011 and until the Accused Products were purchased by Verizon in June 2017. In some cases, Defendants produced the first operative version of source code for the Accused Product. For example, Defendants produced Yahoo Mail code dating back to 1997. Defendants also produced Yahoo Calendar code dating back to 1998; Yahoo Contacts code dating back to 2006; My Yahoo code dating back to 2006; Yahoo Finance code dating back to 2007; and, Search Assist code dating back to 2007. Yahoo Maps and Yahoo Toolbar are the only Accused Products for which Defendants have not produced code dated before this case was filed, because for those products the accused functionality has not significantly changed over time. For both Yahoo Maps and Yahoo Toolbar, Defendants informed Droplets that the produced code is representative of the life of the accused functionality for each product. *See Synopsys, Inc. v. Atoptech, Inc*, 13CV02965MMCDMR, 2016 WL 4942819, at *2 (N.D. Cal. Sept. 16, 2016) (ordering code production sufficient to show the operation of products or a stipulation that the source code it produced is representative of the other non-produced versions). In no event have Defendants refused to produce relevant code from before this lawsuit was filed in 2011.

Defendants also produced source code and technical documents sufficient to show the operation of each Accused Product since the filing of this lawsuit in 2011 until June 2017. For example, Defendants produced the relevant Yahoo Mail, Yahoo Calendar, My Yahoo, Yahoo Finance, and Search Assist code that was in use during these years. They also produced Yahoo Contacts code last used 2019. For each of these Accused Products, Defendants also produced intermittent versions of the source code when any substantial changes in the accused functionalities occurred. Yahoo Maps and Yahoo Toolbar were taken offline before June 2017, so Defendants produced the latest version of source code for each. Again, Defendants agree the code for Yahoo Maps and Yahoo Toolbar is representative of the life of the accused functionalities. As you see, Defendants have produced source code for the Accused Products from before and after the filing of the complaint.

Droplets' allegations of missing or destroyed source code lack any merit. Droplets knows as much. Early in this case Droplets took a Rule 30(b)(6) deposition related to document preservation. *See* August 22, 2019 Depo. of D. Tepstein. During the deposition, Mr. Tepstein testified that "[t]here is source code that has been maintained for a -- a great period of time in not only archives but a current system that the company uses to store its active source code." 65:7-10. Droplets probed further. When asked what the retention policy is for source code, Mr. Tepstein testified "It's indefinite." 85: 19-21.

Defendants have produced the relevant source code or informed Droplets that the produced code is representative of the life of the accused functionalities. Defendants have also provided technical documents that show the operation of the Accused Products during the relevant periods. An order compelling production of that which has already been produced is unnecessary.

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: August 31, 2020                    /s/  *Courtland L. Reichman*
                                                                  Courtland L. Reichman