Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff
*Droplets, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC., <br>     Plaintiff, <br> v. <br> YAHOO!, INC., <br>     Defendant. | Case No. 12-cv-03733-JST <br><br> **DROPLETS, INC.'S MOTION FOR SANCTIONS AND OTHER RELIEF AGAINST NORDSTROM, INC. FOR VIOLATION OF APRIL 2020 ORDER** |
| OATH, INC., et al., <br>     Intervenor-Plaintiffs, <br> v. <br> DROPLETS, INC., <br>     Intervenor-Defendant. | HEARING: <br> Date: October 7, 2020 <br> Time: 2:00 p.m. <br> Place: Courtroom 6, Oakland Courthouse <br> Judge: Hon. Jon S. Tigar |
| DROPLETS, INC., <br>     Plaintiff, <br> v. <br> NORDSTROM, INC., <br>     Defendant. | |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .....................................................................2

FACTS AND PROCEDURAL HISTORY .............................................................................2

ARGUMENT..........................................................................................................................6

    I.    Nordstrom Violated The Court's April 2020 Order. .....................................................6

    II.   Nordstrom's Violation Of The Court's Order And Its Underlying Obligation To Preserve Evidence Warrants Sanctions....................................................................9

        A.    The Court Should Find It Established That Nordstrom Spoliated Relevant Source Code..................................................................................9

        B.    The Court Should Order A Deposition And Briefing To Determine An Appropriate Remedy For Nordstrom's Spoliation............................................11

        C.    Nordstrom Should Pay The Attorney's Fees And Costs Droplets Incurred From Nordstrom's Noncompliance With The Court's Order. ..........11

CONCLUSION....................................................................................................................13

**TABLE OF AUTHORITIES**

**Federal Cases**                                                                                     Page(s)

*3Com Corp. v. D-Link Sys., Inc.*,
    2007 WL 949596 (N.D. Cal. Mar. 27, 2007) .................................................................... 7

*Adv. Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
    2010 WL 10133699 (N.D. Cal. Sept. 22, 2010) .............................................................. 12

*Apple Inc. v. Samsung Elecs. Co.*,
    2012 WL 1595784 (N.D. Cal. May 4, 2012) .................................................................... 7

*Bernstein v. BMW of N. Am., LLC*,
    2019 WL 3207789 (N.D. Cal. July 16, 2019) ................................................................. 12

*Brown v. Wal-Mart Store, Inc.*,
    2018 WL 3417483 (N.D. Cal. July 13, 2018) ................................................................. 12

*Cryptography Research, Inc. v. Visa Int'l Service Ass'n*,
    2005 WL 1787421 (N.D. Cal. July 27, 2005) ................................................................... 7

*Ctr. for Food Safety v. Sanderson Farms, Inc.*,
    2019 WL 8356636, at *5 (N.D. Cal. Mar. 14, 2019), on reconsideration in part,
    2019 WL 8356295 (N.D. Cal. Mar. 26, 2019) ................................................................ 12

*Edward D. Ioli Trust v. Avigilon Corp.*,
    2012 WL 5830711 (E.D. Tex. Nov. 16, 2012) .................................................................. 7

*Ennova Research SRL v. Beebell Inc.*,
    2019 WL 285797 (N.D. Cal. Jan. 22, 2019) ................................................................... 12

*Fleming v. Escort, Inc.*,
    2015 WL 5611576 (D. Idaho Sept. 22, 2015) ................................................................ 11

*FormFactor, Inc v. Micro-Probe, Inc.*,
    2012 WL 1575093 (N.D. Cal. May 3, 2012) .................................................................. 12

*Forterra Sys., Inc. v. Avatar Factory*,
    2006 WL 2458804 (N.D. Cal. Aug. 22, 2006) .................................................................. 7

*Hyde & Drath v. Baker*,
    24 F.3d 1162 (9th Cir. 1994) ......................................................................................... 12

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
    250 F.R.D. 508 (S.D. Cal. 2008) ..................................................................................... 6

*Keithley v. Home Store.com, Inc.*,
    2008 WL 3833384 (N.D. Cal. Aug. 12, 2008) .................................................................. 7

*LegalForce RAPC Worldwide P.C. v. Demassa*,
  2019 WL 5395038 (N.D. Cal. Oct. 22, 2019)..........................................................................12

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) .........................................................................................10, 11

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................................10

*NessCap Co. v. Maxwell Techs., Inc.*,
  No. 07-cv-0704-JLS (BLM), 2008 WL 152417 (S.D. Cal. Jan. 16, 2008) ....................................6

*Nutrition Distribution LLC v. PEP Research, LLC*,
  2018 WL 3769162, at *14 (S.D. Cal. Aug. 9, 2018), reconsideration denied, 2018
  WL 5279128 (S.D. Cal. Oct. 24, 2018), and report and rec. adopted as modified,
  2018 WL 6323082 (S.D. Cal. Dec. 4, 2018)..........................................................................10

*Ryan v. Editions Ltd. W., Inc.*,
  786 F.3d 754 (9th Cir. 2015) ...............................................................................................10

*True Health Chiropractic Inc v. McKesson Corp.*,
  2015 WL 1502953 (N.D. Cal. Apr. 1, 2015).........................................................................12

*Varney v. Cal. Highway Patrol*,
  2013 WL 2299544 (N.D. Cal. May 24, 2013).......................................................................12

*WeRide Corp. v. Kun Huang*,
  2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .......................................................................11

*White v. Wal-Mart Stores, Inc.*,
  2008 WL 1743480 (N.D. Cal. Apr. 14, 2008).......................................................................10

**Rules**

Fed. R. Civ. P. 37(b)(2)(C) ..........................................................................................................12

Fed. R. Civ. P. 37(b)(2)(A)(i) .........................................................................................................9

Plaintiff Droplets, Inc. ("Droplets") hereby files this Motion for Sanctions And Other Relief against Defendant Nordstrom, Inc. ("Nordstrom") for its failure to comply with the Court's April 2020 Order to produce missing source code or provide an explanation for why it is missing (Dkt. 466).

**INTRODUCTION**

This Court's Patent Local Rules require defendants in patent infringement cases to produce their source code along with their invalidity contentions. Nordstrom did not produce relevant source code with its original invalidity contentions in June 2012, nor did it do so with its amended invalidity contentions in April 2019.

In April 2020, the Court ordered Nordstrom to produce the missing source code and technical documents within 30 days, or explain why it could not do so.[1] More than four months later, Nordstrom still has not fully complied with the Court's Order. Although it has produced additional source code for the *current* version of its website, Nordstrom has not produced all *past* versions of code that were operative during the claimed damages period. Nordstrom offers no explanation for its failure to produce this evidence, beyond speculating that the code may not have been retained.

If this code exists, Nordstrom is violating the Court's direct Order to produce it. If the code no longer exists, Nordstrom is violating the Court's Order to explain why, including why the evidence (which uncontestably existed and which Nordstrom was obligated to preserve) has been lost. Droplets gave Nordstrom repeated opportunities to cure its deficiencies, even long after the Court-ordered deadline had passed, but to no avail.

Nordstrom's delay and obfuscation has and continues to prejudice Droplets. Without relevant source code, Droplets' ability to meet its burden of proving infringement for the missing time periods is severely hampered. Moreover, Droplets has had to spend significant time and resources keeping Nordstrom to task regarding its obligations under the Court's Order, and its delay could threaten the trial date if not remedied promptly.

---

[1] Nordstrom's production of technical documents from post-2010 are also deficient. Droplets continues to encourage Nordstrom to supplement its production and hopes that the parties can satisfactorily resolve this issue. Droplets will seek the Court's assistance should that not be the case.

Droplets files this Motion for Sanctions And Other Relief, asking that the Court (1) direct that Nordstrom's spoliation be taken as an established fact for purposes of this action; (2) order Nordstrom to produce a witness for a 30(b)(6) deposition to investigate the circumstances of the spoliation and/or non-production; (3) order briefing regarding an appropriate remedy for the spoliation; and (4) award Droplets attorney's fees and costs for the expenses caused by Nordstrom's noncompliance with the April 2020 Order.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Nordstrom violated the Court's April 2020 Order by failing to either produce missing source code or explain why it could not do so within the time period set by the Court.

2. Whether, in light of Nordstrom's violation of the Order, the Court should treat it as an established fact that Nordstrom spoliated the missing source code, and order discovery and briefing regarding the remedy for spoliation.

3. Whether Nordstrom must pay Droplets' attorney's fees and costs incurred as a result of Nordstrom's noncompliance with the April 2020 Order.

## FACTS AND PROCEDURAL HISTORY

After the Court lifted the stay that governed this case from 2013 to 2018, Nordstrom served its current invalidity contentions on April 26, 2019.[2] Local Patent Rule 3-4(a) requires that:

> With the "Invalidity Contentions," the party opposing a claim of patent infringement shall produce or make available for inspection and copying:
> (a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart;

**A. The Court Ordered Nordstrom To Produce The Missing Source Code Or Explain Why It Could Not Do So.**

By April 2019, more than seven years after the filing of the Complaint, Nordstrom's discovery

---

[2] This case was initially filed in the Eastern District of Texas. Nordstrom served its initial invalidity contentions in that court on June 22, 2012. Like the rules in this Court, the Eastern District of Texas Patent Local Rules require nearly identical disclosures at the time of a patent defendant's invalidity contentions. Thus, Nordstrom was required to disclose its source code in 2012, when it served its initial Invalidity Contentions.

production totaled eight documents. In the following six months, as Droplets actively pressed Nordstrom for its source code, Nordstrom produced just 174 more documents, including an initial production of source code in July 2019.

In November 2019, the parties filed a joint letter with Judge Tigar regarding Nordstrom's failure to produce source code, post-2010 technical documents, and marketing documents for the accused instrumentalities (which relate to Droplets' induced infringement claims). Dkt. 155.[3] Asked to explain why portions of source code were missing, as well as the last decade of technical documents, Nordstrom alternately claimed that it was not aware of any additional source code that needed producing and that various "system changes" may have resulted in the loss of documents. No specifics were provided.

In March of this year, Judge Tigar referred all discovery disputes to Magistrate Judge Westmore. Dkt. 447. The parties re-conferred on March 31, 2020, and Nordstrom's counsel again intimated that certain code and documents may no longer exist. Although Nordstrom steadfastly refused to admit the missing evidence had been spoliated, it provided no other explanation for its absence.

Still at an impasse, the parties re-filed their joint letter for Judge Westmore's consideration in April 2020. *See* Dkt. 461. Droplets explained that Nordstrom had failed to produce its complete source code or to state why not. *Id.* at 2. Droplets further explained that certain interactive features on Nordstrom's website, including "Search Suggest," "Shopping Bag," sorting and filtering tools, and display tools such as image zooming and item color/size/quantity selection, are alleged to infringe its patents, and that each of these features depends on similar types of underlying source code and network communications. *Id.* Nordstrom's production through April 2020 did not include key source code, including, for example, the code that generates search suggestions. *Id.* at 3.

In its portion of the April 2020 joint letter, Nordstrom claimed it was not withholding past versions of source code but also that it had recently found more repositories of possibly relevant code

---

[3] In February 2020, the Court consolidated the cases and ordered the parties to file all documents on the *Droplets v. Yahoo* docket. Dkt. 445. Filings before that date are contained on the separate *Droplets v. Nordstrom* docket, under case number 12-cv-04049-JST.

which it promised to review and produce. *Id.* at 4-5.

On April 27, 2020, the Court ordered Nordstrom "to conduct an exhaustive search and produce the missing documents and source code within 30 days of this order." Dkt. 466 at 2. "If relevant documents or source code have not been retained, Nordstrom must explain why." *Id.*

**B. Nordstrom Failed To Produce The Missing Source Code By The Ordered Deadline.**

A week before its deadline to produce under the April 2020 Order, Nordstrom asked Droplets for a four-week extension. Droplets agreed, and the parties filed a joint request to delay the deadline until June 24. Dkt. 481. In the request, Nordstrom explained that it was preparing to produce "source code that had not been located and produced" in the 2019 productions. *Id.* at 1-2. Nordstrom promised it would "not seek any additional extension" and would "promptly produce responsive documents and source code it finds on a rolling basis." *Id.* at 2.

By the new June deadline, Nordstrom had produced only a single new production of code. Nordstrom stated that its "search for source code [was] *almost* complete" (emphasis added) and that additional code would soon be made available. Ex. A at 1.[4] Nordstrom's counsel also admitted that Nordstrom could not "verify that it has in its possession every single version of the source code that existed at the time this lawsuit was filed in September 2011 or that has been created since." *Id.* But Nordstrom was silent as to why.

Nordstrom subsequently provided two additional source code productions on June 25 and June 29. Due to the Covid pandemic in the location where the source code was made available for inspection, Droplets was unable to review those productions until late July. At that point, Droplets realized that the productions were still incomplete and promptly notified Nordstrom of the deficiency. Nordstrom again offered no explanation why.

**C. To Date, Nordstrom Has Still Not Produced Source Code For The Full Damages Period.**

Nordstrom made three more source code productions available in late August, but they do not cure the deficiencies. First, much of the "new" source code is duplicative of what was produced in

---

[4] All exhibits cited in this brief are attached to the declaration of Kate Falkenstien, filed herewith.

June, adding nothing substantive. Second, the productions do not contain date information or any means by which to determine *when* any of the code was operative. It was not until August 18, after it made yet another incomplete production, that Nordstrom identified its "current understanding" of the operative dates of the produced source code. Ex. B at 20. This new information left no doubt that Nordstrom's belated and piecemeal productions were *still deficient*: with the exception of two incomplete snapshots from 2007 and 2019, there is no relevant code identified as being operative prior to 2012 or after 2017, and no explanation as to why. *Id.* at 20-21.

The gaps in its production remain. For example, Nordstrom has still not produced:

- the front-end code that creates and sends JavaScript files (including the accused interactive link) to users from 2005 until the "recent" or "current" time;[5]

- the back-end "secure" folders that create the content of the websites from 2005 until the "recent" or "current" time;

- the API code that communicates between Nordstrom's front-end and back-end from 2005 until the "recent" or "current" time;

- pre-2012 versions of certain HTML elements, including, for example, dwuxo-wcm.zip; and

- information sufficient to identify when the various "snapshots" of the back-end code that it has produced were operative.[6]

These examples are not exhaustive. Droplets does not have the information necessary to list *all* the missing code — only Nordstrom knows the full extent of its deficiencies.

On August 21, 2020, Droplets again asked Nordstrom to produce the missing source code or explain why it could not do so. Droplets cautioned Nordstrom that, absent a prompt and a reasonable response, it would seek sanctions. Nordstrom responded on August 25, claiming that it had produced

---

[5] Nordstrom states that "[a]t this time Nordstrom does not know if earlier versions of that code *ever existed* or if they were retained." (emphasis added). Ex. Q at 2. But the suggestion that this code may not have existed during the requested time frame is disingenuous. In order to have a functioning website (which Nordstrom undoubtedly did), it *must* have had code that created and sent JavaScript files to users, even if that source code took a different form.

[6] For example, Nordstrom vaguely identified one such code set, Web Experience R2.zip, as "[p]ortions of older releases of nordstrom.com, <u>possibly</u> dating back to the time of the complaint or earlier" and identified other code as "current" or "recent" code without specifying further. Ex. B at 20 (emphasis added).

1  "a sampling" of past source code and would provide code for "specific years" "on request."  Ex. Q.
2  Nordstrom made available a few additional source code files dating to 2012 or later, but produced no
3  new code operative before 2012.  *Id.*  Nordstrom acknowledged that it "may not have retained pre-
4  2012 versions of" the missing HTML elements.  *Id.* at 2; *see also id.* at 2 (reflecting that "[a]t this time
5  Nordstrom does not know if earlier versions of [the code that creates JavaScript files] ever existed or
6  if they were retained.")

7  Still missing much of the relevant source code — or any firm explanation for its absence —
8  Droplets thus files this motion.

## ARGUMENT

Two things cannot be disputed: (1) there are substantial gaps in Nordstrom's production of source code and (2) Nordstrom has not provided any firm explanation as to why.  The failure to provide this information constitutes a direct violation of the Court's April 27, 2020 Order, which required timely production or explanation.  Nordstrom's continuing equivocations about the fate of this information avoids a fact it has long labored to conceal — that, despite being in the midst of litigation, Nordstrom failed to preserve relevant information.  This spoliation, and the considerable efforts Droplets has had to undertake to expose it, have materially prejudiced Droplets, particularly in its ability to meet its burden of proving infringement.

### I.  Nordstrom Violated The Court's April 2020 Order.

As the parties already briefed in April, Patent Local Rule 3-4(a) requires that Nordstrom produce source code "sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified" in Droplets' infringement contentions.  Rule 3-4(a) requires the alleged infringer to produce "any and all documents describing the operation or structures of the patentee's accused devices."  *I-Flow Corp. v. Apex Med. Techs., Inc.*, 250 F.R.D. 508, 511 (S.D. Cal. 2008) (citing *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 1368860, at *3 (N.D. Cal. June 16, 2004)).  The documents produced under this rule must be "sufficient to show the operation of the accused aspects of the products in order to allow the patentee to make ***its own*** determinations as to infringement."  *NessCap Co. v. Maxwell Techs., Inc.*, 2008 WL 152417, at *3 (S.D. Cal. Jan. 16, 2008) (emphasis in original).  "[I]t is the responsibility of the party itself to make disclosures that satisfy the

1  Rules." *Cryptography Research, Inc. v. Visa Int'l Service Ass'n*, 2005 WL 1787421, at *3 (N.D. Cal.
2  July 27, 2005); *see Edward D. Ioli Trust v. Avigilon Corp.*, 2012 WL 5830711, at *3 (E.D. Tex. Nov.
3  16, 2012) (finding that the defendant has the burden to explain how its production satisfies the nearly
4  identical EDTX Patent L.R. 3-4(a)).

5        The production of source code under Rule 3-4(a) must include past versions of source code
6  relevant to earlier infringement during the damages period. *See, e.g.*, *Apple Inc. v. Samsung Elecs.*
7  *Co.*, 2012 WL 1595784, at *2 (N.D. Cal. May 4, 2012) (ordering Samsung to produce "all relevant
8  Samsung source code versions, and not only the release-version source code that Samsung deemed
9  most relevant"); *Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804, at *2 (N.D. Cal. Aug. 22,
10 2006) (ordering production of the "entire source code, including all versions"); *3Com Corp. v. D-Link*
11 *Sys., Inc.*, 2007 WL 949596, at *2 (N.D. Cal. Mar. 27, 2007) (ordering production of all "versions of
12 the source code" in the defendant's possession); *Keithley v. Home Store.com, Inc.*, 2008 WL 3833384,
13 at *11 (N.D. Cal. Aug. 12, 2008) (having ordered "production of all versions of source code," awarding
14 sanctions for the spoliation of some versions of the source code).

15       After the parties briefed the scope of Nordstrom's obligations under Rule 3-4(a), the Court
16 explicitly ordered Nordstrom to "conduct an ***exhaustive*** search and produce the missing documents
17 and source code" within a month's time. Dkt. 466 at 2 (emphasis added). "If relevant documents or
18 source code have not been retained, Nordstrom ***must*** explain why." *Id.* (emphasis added). Now, more
19 than four months later, Nordstrom still has not complied — neither with respect to the production nor
20 with respect to the explanation.

21       In the parties' correspondence, Nordstrom has not contested the core facts around its
22 noncompliance. While emphasizing that it has produced *some* older source code, Nordstrom has not
23 contested its failure to produce *all* the source code operating the accused instrumentalities throughout
24 the damages period, nor has it offered any explanation why much of the older source code is missing.
25 Instead, Nordstrom has given two excuses for its failure to produce, neither of which holds water.

26       First, Nordstrom claims that it has offered "a sampling" of past source code and would provide
27 other examples "on request." Ex. Q at 1. But Nordstrom's obligations under the Court's Order and
28 Rule 3-4(a) are not limited to providing "a sampling." Rule 3-4(a) requires production of source code

"sufficient to show the operation of *any* aspects or elements of an Accused Instrumentality," and the Court ordered an "exhaustive search." *See* Rule 3-4(a) (emphasis added); Dkt. 466 at 2. Droplets has accused features of the Nordstrom website that operated between 2005 (six years prior to filing) and today of infringing its patent, and seeks damages for the same.[7] Nordstrom was required to produce the source code sufficient to show how those features operated *throughout* that period. A "sampling" — one that omits many years of code for accused features — is not enough. Nor is it enough to provide a limited subset of the required source code, then shift the burden to Droplets to figure out what is missing, and only produce information if Droplets can figure out what is missing.

Second, Nordstrom claims it has no obligations under Rule 3-4(a) until Droplets produces sufficient infringement contentions under Rule 3-1. *See* Ex. Q at 1. But the Court did not order that Nordstrom could delay producing its source code until after Droplets updated its infringement contentions. By the time of the Court's April 2020 Order, Defendants' motion to strike Droplets' infringement contentions had been pending for more than four months. *See* Dkt. 424, 452. The Court was aware of Nordstrom's complaints about Droplets' infringement contentions, but nonetheless, it ordered Nordstrom to produce its missing source code in 30 days. And when the Court granted the motion to strike with leave to amend, it reaffirmed that deadline. *See* Dkt. 469. Citing its April 2020 Order requiring the production of additional source code, the Court ordered Droplets to serve amended infringement contentions within "60 days from the date Nordstrom produces the documents and source code" that were still missing. *Id.* at 3, 6, 8. That is, the Court ordered Nordstrom to produce its full source code *before* Droplets was to serve amended infringement contentions. Substantively, there is no ambiguity about which products Droplets accuses of infringing, and Nordstrom thus has long known all the information it needs to produce its source code. *See id.* at 6-7 (Court noting that "Droplets has put Defendants on notice of its theory of infringement" and "the remaining deficiencies are relatively minor"). Nordstrom had no basis to refuse to produce source code until after it received

---

[7] There is no doubt that source code at one time existed for this entire period, because Nordstrom had a continuously operational, public-facing website which it owned and operated throughout this period. *See, e.g.,* Exs. C-P (Nordstrom's 10K filings, reflecting that it has operated the Nordstrom.com website). It is manifestly clear (and Nordstrom does not contest) that its website was comprised of front- and back-end source code that powered the accused features.

infringement contentions.

In short, neither of Nordstrom's excuses absolves it from its obligation to comply with the Court's clear Order. Nordstrom was ordered to produce the missing source code or explain why it could not do so, by June 2020. Now, at the start of September, source code is still missing, and no explanation has been given. Nordstrom plainly violated the Order.

## II. Nordstrom's Violation Of The Court's Order And Its Underlying Obligation To Preserve Evidence Warrants Sanctions.

The violation of a Court Order warrants sanctions on face; as a matter of the Court's integrity and authority, there must be consequences for disregarding a direct order. But additionally, Nordstrom's refusal or inability to produce the missing code, coupled with its refusal to admit why, materially prejudices Droplets. Without the code, Droplets is hamstrung in meeting its burden of proving infringement for the years the code is missing. And without an admission of spoliation, Droplets faces an unwarranted obstacle to obtaining relief, either through a motion for default judgment of infringement or, in the alternative, an adverse inference that the spoliated code was infringing.

Droplets requests that the Court (1) direct that Nordstrom's spoliation be taken as an established fact for purposes of this action; (2) order Nordstrom to produce a witness for a 30(b)(6) deposition to investigate the circumstances of the spoliation; (3) order briefing regarding an appropriate remedy for the spoliation; and (4) award Droplets attorney's fees and costs for the expenses caused by Nordstrom's noncompliance with the April 2020 Order.

### A. The Court Should Find It Established That Nordstrom Spoliated Relevant Source Code.

Under Federal Rule 37(b)(2)(A)(i), a court may sanction a party for disobeying its order by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Here, the April 2020 Order concerned Nordstrom's possible destruction of its source code. The Court ordered Nordstrom to produce all the relevant code or explain why it could not do so. Without any contrary explanation, the only plausible conclusion is that Nordstrom did not preserve its source code. Pursuant to its authority under Rule

37(b)(2)(A)(i), the Court should direct that Nordstrom's spoliation of its source code be taken as established for the purposes of this action.

Nordstrom had an obligation to preserve the missing source code. "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006); *see also White v. Wal-Mart Stores, Inc.*, 2008 WL 1743480, at *1 (N.D. Cal. Apr. 14, 2008) (noting that "once a complaint is filed, the Defendant is automatically under a duty to preserve what it knows is relevant or reasonably calculated to lead to the discovery of admissible evidence").

Nordstrom's failure to preserve its source code constitutes spoliation. A party alleging spoliation has "the burden of establishing spoliation by demonstrating that [the other party] destroyed documents and had some notice that the documents were potentially relevant to the litigation before they were destroyed." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (quotation and internal quotation marks omitted). In other words, "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quotation and internal quotation marks omitted, emphasis in original). Spoliation can include both "the destruction or significant alteration of evidence" and "the failure to preserve" evidence. *Nutrition Distribution LLC v. PEP Research, LLC*, 2018 WL 3769162, at *14 (S.D. Cal. Aug. 9, 2018), reconsideration denied, 2018 WL 5279128 (S.D. Cal. Oct. 24, 2018), and report and rec. adopted as modified, 2018 WL 6323082 (S.D. Cal. Dec. 4, 2018).

These requirements are easily met here: there is missing source code that existed at a time when Nordstrom knew it was relevant to this lawsuit. The Nordstrom.com website already existed when this lawsuit was filed in 2011, so past source code must have existed to operate the then-existing versions. *See, e.g.*, Ex. I at 5 (Nordstrom's 2011 Form 10-K, reflecting that the website was operative as of March 2011); Ex. J at 5 (Nordstrom's 2012 Form 10-K, reflecting that the website was operative as of March 2012). It is uncontested that Nordstrom had a duty to preserve that code and all code going forward during the pendency of the litigation.

Despite this obligation, and after months of deliberate efforts to locate it, swaths of source code — including code *postdating* the filing of the Complaint — remain missing. Nordstrom has never articulated why. The only reasonable conclusion is that the missing source code no longer exists. Whatever the cause of its destruction, the outcome is the same — Nordstrom spoliated information it had a duty to preserve.

### B. The Court Should Order A Deposition And Briefing To Determine An Appropriate Remedy For Nordstrom's Spoliation.

After concluding that a party spoliated evidence, a court must next assess the appropriate remedy. *See, e.g.*, *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *10 (N.D. Cal. Apr. 24, 2020) (establishing spoliation and then assessing remedy); *Fleming v. Escort, Inc.*, 2015 WL 5611576, at *3 (D. Idaho Sept. 22, 2015) (same). The remedy may depend on a variety of other factors, including for example "the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon*, 464 F.3d at 958 (9th Cir. 2006) (quotation omitted); *see also WeRide Corp.*, 2020 WL 1967209, at *10 (also considering the spoliating party's "willfulness and bad faith").

Here, the exact circumstances surrounding Nordstrom's spoliation of its source code are not yet clear, so Droplets requests that the Court order additional discovery and briefing to establish an appropriate remedy. Specifically, Droplets requests that the Court order Nordstrom to submit to a 30(b)(6) deposition regarding its preservation and spoliation within 21 days. Droplets further requests that the Court order the parties to brief the appropriate remedy after that deposition. With this additional information, the Court may determine the appropriate remedy.

### C. Nordstrom Should Pay The Attorney's Fees And Costs Droplets Incurred From Nordstrom's Noncompliance With The Court's Order.

Droplets also requests attorney's fees and costs for the expenses caused by Nordstrom's noncompliance with the April 2020 Order. Nordstrom's failure to comply with the Court's Order has cost Droplets significant time and money. Droplets has been forced to repeatedly review Nordstrom's incomplete source code productions to discover gaps in the production, negotiate with Nordstrom over

1  these inadequacies, expose its obfuscations, and seek the Court's assistance to force Nordstrom to
2  meet its obligations for a second time. All this has given rise to extra costs — including attorney time
3  and expert time — that would not have been necessary had Nordstrom simply complied with its
4  discovery obligations and the Court's Order. Nordstrom should be made to shoulder the added
5  expense it has caused.

6        Rule 37 outlines possible sanctions for "failure to comply with a court order," and it provides
7  that "the court must order the disobedient party, the attorney advising that party, or both to pay the
8  reasonable expenses, including attorney's fees, caused by the failure, unless the failure was
9  substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P.
10 37(b)(2)(C). Unlike other sanctions under Rule 37, an award of attorney's fees is mandatory, not
11 discretionary: fees must be awarded unless the noncompliant party's behavior was substantially
12 justified. *LegalForce RAPC Worldwide P.C. v. Demassa*, 2019 WL 5395038, at *4 (N.D. Cal. Oct.
13 22, 2019) (awarding attorney's fees where party failed to produce documents after a direct court order
14 to do so); *see also Bernstein v. BMW of N. Am., LLC*, 2019 WL 3207789, at *2 (N.D. Cal. July 16,
15 2019). Sanctions under Rule 37(b) "do[] not require a finding of bad faith." *Ctr. for Food Safety v.
16 Sanderson Farms, Inc.*, 2019 WL 8356636, at *5 (N.D. Cal. Mar. 14, 2019), on reconsideration in
17 part, 2019 WL 8356295 (N.D. Cal. Mar. 26, 2019). Rather, the noncompliant party must pay
18 attorney's fees unless their actions were substantially justified, and "[t]he burden of establishing a
19 substantial justification lies with the party facing sanctions." *LegalForce RAPC*, 2019 WL 5395038,
20 at *4; *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994), as amended (July 25, 1994).

21       Courts in this district routinely award attorney's fees when parties refuse to engage in
22 discovery despite court orders to do so. *See, e.g.*, *Ennova Research SRL v. Beebell Inc.*, 2019 WL
23 285797, at *2 (N.D. Cal. Jan. 22, 2019); *True Health Chiropractic Inc v. McKesson Corp.*, 2015 WL
24 1502953, at *9 (N.D. Cal. Apr. 1, 2015); *Varney v. Cal. Highway Patrol*, 2013 WL 2299544, at *4
25 (N.D. Cal. May 24, 2013); *Adv. Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2010 WL
26 10133699, at *2 (N.D. Cal. Sept. 22, 2010); *FormFactor, Inc v. Micro-Probe, Inc.*, 2012 WL 1575093,
27 at *9 (N.D. Cal. May 3, 2012). Indeed, such sanctions are appropriate for belated compliance with a
28 court order even if a party *eventually* complies and produces the ordered information. *See, e.g., Brown*

*v. Wal-Mart Store, Inc.*, 2018 WL 3417483, at *17 (N.D. Cal. July 13, 2018).

Nordstrom has been noncompliant with the Court's Order since at least June 2020. By June, it was required to produce the missing source code or explain why it could not. Nordstrom did not meet that deadline, and even now, it still has not complied with its obligations under the April 2020 Order. There is no justification for Nordstrom's failure to comply with the Court's clear instructions. Nordstrom should pay the expenses Droplets has incurred to investigate its noncompliance and pursue the discovery the Court already authorized in its April 2020 Order.

## **CONCLUSION**

Nordstrom has not complied with the Court's April 2020 Order to either produce the missing source code or explain why it cannot do so. Its failure to do so violates the Court's direct order and materially prejudices Droplets. Droplets thus respectfully requests that the Court (1) direct that Nordstrom's spoliation be taken as an established fact for purposes of this action; (2) order Nordstrom to produce a witness for a 30(b)(6) deposition to investigate the circumstances of the spoliation and/or non-production; (3) order briefing regarding an appropriate remedy for the spoliation; and (4) award Droplets attorney's fees and costs for the expenses caused by Nordstrom's noncompliance with the April 2020 Order.

Dated: September 1, 2020

/s/ *Courtland L. Reichman*
Courtland L. Reichman

Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
Reichman Jorgensen LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
Reichman Jorgensen LLP

|   |   |
|---|---|
| 1 | |
| 2 | 750 Third Avenue, Suite 2400<br>New York, NY 10017<br>Telephone: (646) 921-1474<br>Facsimile: (650) 623-1449 |
| 3 | |
| 4 | Attorneys for Plaintiff and Intervenor-Defendant *Droplets, Inc.* |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |