**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DROPLETS, INC., | Case No. 12-cv-03733-JST (KAW) |
| Plaintiff, | **JOINT DISCOVERY LETTER IN** |
| v. | **DROPLETS, INC. V. NORDSTROM, INC.** |
| YAHOO!, INC., | |
| Defendant. | |
| OATH, INC., et al., | |
| Intervenor-Plaintiffs, | |
| v. | |
| DROPLETS, INC., | |
| Intervenor-Defendant. | |
| DROPLETS, INC., | |
| Plaintiff, | |
| v. | |
| NORDSTROM, INC., | |
| Defendant. | |

Pursuant to Your Honor's Standing Order, Plaintiff Droplets, Inc. ("Droplets") and Defendant Nordstrom, Inc. ("Nordstrom") respectfully request the Court's assistance in resolving a discovery dispute. This dispute concerns Nordstrom's refusal to provide revenue data for certain subcategories of sales.[1] Nordstrom contends that providing the revenue data is unduly burdensome. The parties have met and conferred, including a telephonic conference between lead counsel on November 16, 2020, but they have been unable to resolve this dispute.  The parties attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.


*/s/ Courtland Reichman*
Courtland L. Reichman (CA Bar No. 268873)
creichman@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Attorney for Plaintiff *Droplets, Inc.*

*/s/ A. James Isbester*
A. James Isbester (SBN: 129820)
jisbester@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile:  (415) 576-0300

Attorney for Defendant *Nordstrom, Inc.*

---

[1] The governing discovery request, Droplets' Request for Production 89 and Nordstrom's response, is attached to this joint letter brief.

**Droplets' Position**

Nordstrom has produced profit-and-loss statements that include three subcategories of revenue *not* within the scope of damages and exclude one subcategory of revenue that *is* within the scope of damages.  Droplets asked for the individual revenue numbers for these four categories so it can accurately calculate damages.  Nordstrom's 30(b)(6) witness admitted it has such data, but Nordstrom refuses to produce it.  Droplets respectfully seeks the Court's assistance.

**Facts**

Droplets' Request for Production 89 seeks "[d]ocuments sufficient to show the quantity sold, gross revenue, net revenue, cost of goods sold, and profits attributable to the Accused Webpages/Websites and/or Accused Functionalities, on a quarter-to-quarter basis for each quarter during the Relevant Time Period."  Droplets first served Request 89 in May 2019.[2]  In response, in June 2019, Nordstrom objected that the request was vague, overbroad, and unduly burdensome, but it agreed to produce documents responsive to the request.  Nordstrom never served any further objections, and it produced profit-and-loss ("P&L") statements in June 2019.

These statements, however, include several subcategories of sales that are not attributable to the Accused Webpages, and excludes one subcategory of sales that *is* attributable to the Accused Webpages.  Specifically, the statements include sales on the Nordstrom mobile app, "Border Free" sales shipped to foreign countries, and sales through the Nordstrom catalogue.  Revenue in those subcategories must be *subtracted* from the overall revenue figures to accurately calculate damages.  Conversely, the P&L statements *exclude* sales bought online but picked up in store ("BOPUS" sales), which need to be *added* in order to accurately calculate the damages because they are made through the Accused Webpage (although the items are picked up in store).  Droplets needs these itemized numbers so it can subtract the revenue that does not belong and add the revenue that does.

At a deposition in October 2020, Droplets learned that the P&L statements include revenue not attributable to the accused webpages.  Nordstrom's financial 30(b)(6) witness,[3] Randy Kanai, testified that the produced P&L statements include revenue from the Nordstrom mobile app, Border Free program, and catalogue, comingled with Nordstrom.com revenue:

Q.  So Exhibit 3 includes revenue from Nordstrom's mobile application; is that right?

A.  Yes.

Q.  Okay.  So in Exhibit 3 is there any way to identify what revenue is attributable to Nordstrom's mobile application?

A.  No.

---

[2] As early as May 2012, before this case was transferred from the Eastern District of Texas, Droplets served other Requests for Production to which this data would be responsive.

[3] In particular, Mr. Kanai was designated to testify about "all sources of revenue for, or relating to, each Accused Webpage/Website" and Nordstrom's "United States financial information, including revenue, income, costs, and profits, that [Nordstrom] derived, generated, or incurred in connection with the interaction with or use of the Accused Webpages/Websites."

Kanai Dep. Tr. at 40:15-21; *see also id.* at 54:10-16 (testifying that the P&L statement "would include sales from outside of the United States" but doesn't show "which component was from inside or outside"); *id.* at 46:10-22 (testifying that when Nordstrom had catalog sales, they were included in Nordstrom.com revenue).

Mr. Kanai further testified that Nordstrom has access to the unproduced sales data for the relevant subcategories:

Q. Okay. Does Nordstrom have any information from which one could determine what revenue is attributable to Nordstrom's mobile application?

A. Yes. I believe we can get—we can break out the sales—you know, sales information between Nordstrom.com or the mobile application.

*Id.* at 40:22-41:2; *see also id.* at 53:23-25 (testifying that Nordstrom "would have" the "border free sales data"). As for the BOPUS sales, Mr. Kanai testified that the P&L statement did *not* include BOPUS revenue, but that Nordstrom does keep segregated "sales-type information for BOPUS." *Id.* at 42:22-44:3.

On October 30, the day after the Kanai deposition, Droplets followed up with Nordstrom to confirm whether the Nordstrom.com financials include sales in the subcategories, and if so, to request that Nordstrom produce the separated sales in each subcategory. When Nordstrom did not respond, Droplets followed up on November 4, November 6, and November 9. On November 9 — four days before the close of fact discovery — Nordstrom finally responded that it "has not been able to locate the any (sic) documents that disaggregate the sales data in the manner in which Droplets would like to see" but would continue to research the issue.

Given the impending close of fact discovery, on November 10, Droplets requested to schedule a lead counsel meet-and-confer call. After several more requests, Nordstrom agreed to a lead counsel call on November 16. On that call, after the close of fact discovery, Nordstrom claimed that it was still looking into a way to extract the requested data from its accounting database. Droplets asked whether Nordstrom would commit to producing the data, but Nordstrom's counsel refused to make any such promise, noting that Nordstrom might yet decide that the burden of extracting the data was too great.

As of the date of this letter, Nordstrom still has not produced the requested data.

### **Argument**

Nordstrom has known that it needed to produce documents showing revenue attributable to its website since the beginning of this case. It has had ample time to figure out how to extract the necessary data from its accounting database. But Nordstrom instead produced P&L statements that comingled U.S. revenue from Nordstrom.com with other revenue from non-accused sources, while conversely omitting BOPUS revenue that *is* attributable to Nordstrom.com. Droplets raised this issue three weeks ago — just one day after Nordstrom's witness revealed the problem — but Nordstrom has not corrected its production nor even promised to do so in the future.

There is no doubt that the missing data is within Nordstrom's possession: Nordstrom has admitted that it has the relevant revenue data for mobile app, Border Free, catalogue, and BOPUS sales. And the missing data is indisputably relevant. Nordstrom's only argument is that it *might* be burdensome to extract the data from its own database.

That objection does not justify withholding the missing revenue data.  Nordstrom has never explained *why* it would be burdensome to extract revenue data it admittedly possesses in its own internal database.  "Bald statements of counsel that a [discovery request] is unduly burdensome, unsupported by affidavits or evidence, are unhelpful."  *Micron Tech., Inc. v. Tessera, Inc.*, 2006 WL 1646132, at *2 (N.D. Cal. June 14, 2006).  A party alleging undue burden "must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."  *Sullivan v. Personalized Media Comms., LLC*, 2016 WL 5109994, at *3 (N.D. Cal. Sept. 21, 2016) (quotation and internal quotation marks omitted); *see also Gilbert v. Citigroup, Inc.*, 2009 WL 10692463, at *5 (N.D Cal. Apr. 2, 2009) ("Where an interrogatory is objected to as unduly burdensome, the objecting party should submit affidavits or other evidence showing the nature of the burden.").  Nordstrom has offered no reason — let alone concrete evidence — why this discovery request is burdensome.  Indeed, common sense suggests the burden is low; the data admittedly exists in Nordstrom's internal databases and need only be downloaded for production.  And they are necessary for Droplets' case.  Nordstrom cannot refuse production now and then later criticize Droplets' damages number when Nordstrom will not provide the necessary data, which only Nordstrom possesses.

**Nordstrom's Position**

Droplets sought to add an additional request for production two weeks before the end of fact discovery.  Now, it misrepresents the ease with which Nordstrom could produce that information.  In reality, that information is not readily identifiable.  Indeed, the very individual who testified that a subset of that information may be available has in fact been unable to obtain it.

**Facts:**

Request for Production 89 did not ask Nordstrom to provide disaggregated data for mobile application, catalog, Border Free, or BOPUS sales data.  After the Randy Kanai deposition, Droplets requested that Nordstrom provide that information.  Since that time, Nordstrom has worked to determine whether it can efficiently provide the requested sales information, but thus far it has been unable to separate the mobile application, catalog, Border Free, and BOPUS sales data.  (Nordstrom has been able to obtain from its third party logistics partner, international sales date for the past five years and is providing that data to Droplets.)

Mr. Kanai testified only that Nordstrom's database stored sales related information for mobile application sales, not for the other categories of sales and not, for any of those categories, disaggregated revenue information.  See Kanai Deposition 49:2–5 ("We would have sales-related information for the mobile application.  We do not have expenses related that would relate specifically to the mobile application.").  Further, he stated that he did not know if Nordstrom had a way of disaggregating the data for these types of sales.  See Kanai Deposition at 55:2 – 6; 108:23–109:1.

**Argument:**

Droplets misrepresents the difficulty involved in retrieving the mobile application, catalog, Border Free, and BOPUS sales data.

Rule 34(b) only requires a party to produce electronically stored information in the form it is originally maintained or in a reasonably usable form or forms.  Fed. R. Civ. P. 34(b)(2)(E).  Nordstrom's issue is that it does not separately maintain mobile application, catalog, Border Free, and BOPUS sales data, and it cannot feasibly reduce it to a reasonably usable form.

Other courts have not required that a defendant disaggregate financial information when not feasible.  For instance, in *Entrata Inc. v. Yardi Systems*, the court did not require a defendant to disaggregate financial

information in the manner that plaintiff requested.   Case No. 2:15-cv-00102-CW-PMW, 2017 WL 5593514 (D. Utah Nov. 17, 2017).   Similarly, the court in *Invensas Corporation v. Samsung Electronics, Co., LTD*, the court did not require Samsung to provide financial information for certain chips within non-mobile products. No. 2:17-cv-00670-RWS-RSP, 2018 WL 5809268 (E.D. Tex. November 6, 2018).  The court found, that while the information as relevant, requiring the Defendants to disclose this information at that stage of the case was not proportional to the needs of the case.  Samsung had no easy way to identify all products that contained the chips at issue and would need to search for the chips by looking inside each individual product.  *Id.*  Furthermore, the court found that Invensas waited too long, they provided notice to Defendants of the issue prior to June 13, 2018, but did not file the Motion to Compel until September 19, 2018.  *Id.*, *see also Porter v. Gore*, Case No.: 18cv1221-GPC-LL, 2020 WL 1157196 *5 (S.D. Cal. March 10, 2020) (finding that plaintiff could not pursue a motion to compel where the plaintiff sought raw data in a meet and confer and did not timely file its motion to compel.).

Droplets' request would require that the underlying data be identifiable as pertaining to one or the other particular category and then extracted.  Nordstrom has not yet found a way by which this could be done.  Even if Nordstrom did have ready access to disaggregated sales date, the data necessary to disaggregate the P&L simply does not exist.

Finally, Droplets' post-deposition request is functionally an additional request for production.  Request 89 does not ask for disaggregated data, yet Droplets demanded it two weeks before the close of fact discovery.  Like the plaintiffs in *Invensas* and *Porter*, Droplets waited too long to give Nordstrom adequate time to respond to its new Request and determine to what extent Nordstrom could produce information.

Nordstrom has made a good faith effort to comply with Droplets' request.  However, the request was untimely and has proven to be unduly burdensome—to the extent Nordstrom could comply (and it is not clear that compliance is feasible), the work required to comply would be disproportionate to the needs of the case.

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1</u>

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: November 20, 2020   <u>   */s/  Courtland L. Reichman*</u>
            Courtland L. Reichman