**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| DROPLETS, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>YAHOO!, INC.,<br><br>　　　　Defendant. | Case No. 12-cv-03733-JST (KAW)<br><br>**JOINT DISCOVERY LETTER IN DROPLETS, INC. V. NORDSTROM, INC.** |
| OATH, INC., et al.,<br><br>　　　　Intervenor-Plaintiffs,<br><br>v.<br><br>DROPLETS, INC.,<br><br>　　　　Intervenor-Defendant. | |
| DROPLETS, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NORDSTROM, INC.,<br><br>　　　　Defendant. | |

Pursuant to Your Honor's Standing Order, Plaintiff Droplets, Inc. ("Droplets") and Defendant Nordstrom, Inc. ("Nordstrom") respectfully request the Court's assistance in resolving a discovery dispute. This dispute concerns Droplets' Interrogatories 6-14.[1] Nordstrom contends that several of Droplets' Interrogatories are compound, such that Droplets has exceeded the limit of 15 individual interrogatories per defendant. Based on this contention, Nordstrom has not responded to what Droplets has denominated Interrogatories 6-14. Droplets disagrees that its interrogatories are compound and that it has exceeded the limit. The parties have met and conferred, including a telephonic conference between lead counsel on November 16, 2020, but they have been unable to resolve this dispute. The parties attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.

| | |
|---|---|
| */s/ Courtland Reichman* | */s/ A. James Isbester* |
| Courtland L. Reichman (CA Bar No. 268873) | A. James Isbester (SBN: 129820) |
| creichman@reichmanjorgensen.com | jisbester@kilpatricktownsend.com |
| REICHMAN JORGENSEN LLP | KILPATRICK TOWNSEND & STOCKTON LLP |
| 100 Marine Parkway, Suite 300 | Two Embarcadero Center, Suite 1900 |
| Redwood Shores, CA 94065 | San Francisco, CA 94111 |
| Telephone: (650) 623-1401 | Telephone: (415) 576-0200 |
| Facsimile: (650) 623-1449 | Facsimile: (415) 576-0300 |
| | |
| Attorney for Plaintiff *Droplets, Inc.* | Attorney for Defendant *Nordstrom, Inc.* |

---

[1] Droplets' Interrogatories 1, 2, 3, 6, 7, 8, 10, and 11, and Nordstrom's responses, are attached to this joint letter brief.

**Droplets' Position**

Droplets asked Nordstrom to identify the first use of Ajax, a type of computer code, by its Accused Functionalities. Nordstrom responded in a single substantive sentence, identifying the first use by one Accused Functionality. But Nordstrom now contends that with that one sentence it answered eleven discrete interrogatories—one per Accused Functionality. On that basis alone, Nordstrom refuses to answer Interrogatories 6-14, contending that the first five interrogatories constitute all fifteen permitted under the Case Management Statement. Interrogatory 3 is just one interrogatory: it concerns one common theme or primary question, as required by the case law. Nordstrom must therefore respond to the remaining unanswered interrogatories.

**Facts**

In the Joint Case Management Statement from February 2019, the parties agreed that Droplets could serve 15 individual interrogatories on Nordstrom (in addition to 10 interrogatories common to all defendants). *See Droplets, Inc. v. Nordstrom, Inc.*, No. 12-cv-04049-JST, Dkt. 119 at 12 (Feb. 20, 2019); *see also* Dkt. 437 at 10 (reiterating that agreement in February 2020).

On October 12 and 13, 2020, Droplets served its second and third sets of individual interrogatories, comprising Interrogatories 2-14. Nordstrom served its answers on November 12, 2020. However, Nordstrom refused to answer Interrogatories 6-14 on the grounds that "Droplets has exceeded the maximum number of individual interrogatories it is allowed to serve on Nordstrom."

Nordstrom's refusal to answer Interrogatories 6-14 stems from Nordstrom's position on Interrogatory 3, which asks Nordstrom to:

> Identify, for each Accused Functionality, when you first implemented or otherwise started using Ajax or XMLHttpRequest ("XHR"). Your response should include an identification of all Documents and Communications related to your Answer (by Bates number) and the persons most knowledgeable about Your answer.

Nordstrom contends that Interrogatory 3 should be counted as 11 distinct interrogatories — "one for each of the distinct Accused Functionalities." Nordstrom thus believes that Interrogatory 3 "includes Droplets' third through thirteenth interrogatories," leaving only two more interrogatories.[2] And Nordstrom claims that its one-sentence response to Interrogatory 3 counts as eleven interrogatory responses. On that basis, Nordstrom answers only the two following interrogatories (Interrogatories 4 and 5) and refuses to answer Interrogatories 6-14.

Lead counsel met and conferred on November 16, and Nordstrom continued to refuse to answer Interrogatories 6-14, on the basis of its interpretation of Interrogatory 3 as 11 distinct interrogatories. Droplets thus respectfully requests the Court's assistance.

**Argument**

"[A]n interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question . . . ." 8B Wright, Miller & Marcus, *Federal Practice and Procedure* § 2168.1, at *14 (3d ed.). "[I]nterrogatory subparts are to be counted as

---

[2] On the lead counsel call on November 16, Nordstrom argued only that Interrogatory 3 was compound. Nordstrom's response to this joint letter now apparently also claims that Interrogatory 7 is compound. Droplets' analysis regarding Interrogatory 3 applies equally to Interrogatory 7, which also refers to the eleven Accused Functionalities.

one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *2 (N.D. Cal. Mar. 17, 2015) (quoting *Safeco of Am. v. Rawstrom*, 181 F.R.D. 441, 445 (C.D.Cal.1998) (alteration in original); *Int'l Petroleum Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.*, 2020 WL 4673947, at *5 (N.D. Cal. Aug. 12, 2020) (counting interrogatory as a single interrogatory because it "sought information related to the same subjects"). "'[D]iscreteness' is a matter of degree," and "deciding whether a subpart of an interrogatory is sufficiently 'discrete' to be regarded as a separate interrogatory will frequently depend on the particular circumstances of each case." *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 295 (N.D. Cal. 2016) (quoting *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191 (E.D. Tex. 2016)). In evaluating "whether a single interrogatory that asks about all accused products or all patents-in-suit should be construed as one interrogatory per accused product or patent-in-suit," "[t]he answer may depend on how similar the accused products or patents-in-suit are to each other." *Finjan, Inc. v. Qualys Inc.*, 2020 WL 4923964, at *1 (N.D. Cal. Aug. 21, 2020) (treating interrogatories about all accused products as a single interrogatory, because the defendant "does not make any assertions that the accused products . . . are sufficiently different from each other that they should be considered different topics").

As required by the case law, Interrogatory 3 concerns one "common theme" or "primary question": Nordstrom's first use of Ajax or XHR. Requesting this information for each Accused Functionality does not create 11 separate interrogatories. The Accused Functionalities are extremely similar. They all involve interactive aspects of the same Accused Product, the Nordstrom.com website. They all involve sending and receiving the same types of message in JavaScript, to update parts of a webpage in response to user interaction. The cases Nordstrom cites at most hold that questions about different Accused Products constitute separate interrogatories; Nordstrom cites no case holding that a question about the different *functionalities* of a single Accused Product is compound. An interrogatory involving related functionalities of a single accused product is a single interrogatory.

Nordstrom's claim that it answered 11 separate interrogatories in response to Interrogatory 3 is belied by the substance of its response. Nordstrom did not provide a separate answer as to each Accused Functionality. Instead, it cites to a single document regarding a single Accused Functionality, to show that that functionality "first used AJAX on or around 2008, and was among the first, if not the first, Accused Functionality to do so." In other words, Nordstrom gave a single answer, directing Droplets to evidence of the first use of Ajax by *one* Accused Functionality. Nordstrom did not identify the first use of Ajax by *each* Accused Functionality. It defies credulity that this single sentence, discussing a single Accused Functionality, constitutes an answer to 11 separate interrogatories.

Nordstrom's position is also undercut by its own interrogatories. For example, Nordstrom's Interrogatory 1 asks for "the date(s) on which Droplets first became aware of each product or service sold or offered for sale by Nordstrom that 'transmits and displays search suggestions'—including but not limited to the products or services accused of infringement in this case . . . ." That interrogatory expressly asks for information about, at a minimum, all Accused Products. Similarly, Nordstrom's Interrogatory 14 requires Droplets to explain its denial of any Nordstrom request for admission, one by one. Droplets answered these interrogatories. If Nordstrom's interrogatories were counted as it asks here, then that would be more than twenty interrogatories, putting Nordstrom well over the limit. Nordstrom cannot

apply one counting system to itself but another to Droplets. *LMNO Cable Grp., Inc. v. Discovery Commc'ns, LLC*, 2017 WL 5479612, at *2 (C.D. Cal. May 23, 2017) (rejecting plaintiff's counting argument because it "would mean that [plaintiff] has also exceeded the 25–numerical limit in its first set of interrogatories").

The heart of the matter here is not a counting exercise, but whether the scope of Droplets' interrogatories is reasonable. The Court may use its discretion to take into account "pragmatic considerations" in treating Interrogatory 3 as a single interrogatory. *See Synopsis*, 319 F.R.D. at 295. Alternatively, an equally pragmatic solution is to simply increase the 15-interrogatory limit in light of Nordstrom's position on counting. At the time the parties agreed to that limit, Nordstrom had not yet asserted its position that basic questions about the accused functionalities should count as eleven distinct interrogatories – and Droplets never would have agreed to do so. Under Nordstrom's interpretation, Droplets would have requested additional interrogatories from the start; 15 interrogatories are insufficient if they amount to just one interrogatory about each accused functionality. Should the Court agree with Nordstrom's new counting position, Droplets requests that it be allowed 20 additional interrogatories to remedy the problem. *See, e.g.*, *In re Lithium Ion Batteries*, 2015 WL 1221924, at *5 (increasing the number of permitted interrogatories to 60 in order to account for counting some subparts as discrete questions); *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (finding that one interrogatory was compound, but concluding that "[t]his does not mean that defendant can avoid answering these interrogatories").

**Nordstrom's Position**

Droplets' served more than the 15 allotted individual interrogatories. Droplets did this by creating subparts within its interrogatories; namely, by asking for technical information regarding all eleven Accused Functionalities. The Accused Functionalities are distinct technical offerings: they perform different actions for the Nordstrom.com website; Nordstrom developed the Accused Functionalities at different times and with different teams, Nordstrom tests each Accused Functionality with different methods, and each is made up of different source code. Nordstrom said or implied as much via 30(b)(6) depositions and written discovery. And Droplets has understood this for many months: for appropriate elements of each asserted claims, its Fourth Amended Infringement Contentions (served in August 2020), contain extensive and distinct source code for each of the eleven accused functionalities.

This Court should find that Interrogatories 3 and 7 each have eleven discrete subparts and not require Nordstrom to answer what Droplets denominated as Interrogatories 6–14.

**Facts:**

Droplets agreed to serve Nordstrom with no more than 15 individual interrogatories. *See Droplets, Inc. v. Nordstrom, Inc.*, No. 12-cv-04049-JST, Dkt. 119 at 12 (Feb. 20, 2019). On October 12 and 13, 2020, precisely a month before the November 13 close of fact discovery, Droplets served Individual Interrogatories 2–14 to Nordstrom. Earlier it had served Individual Interrogatory 1. The interrogatories, as served, are attached and relevant portions are excerpted below:

- Interrogatory 1 asked Nordstrom to "Separately for each of the … Accused Functionality, describe in detail on a monthly basis, from January 1, 2003 through the present, all United States revenue, income, costs, and profits…"
- Interrogatory 2 asked Nordstrom to "Describe the value of the website . . . and the effect of . . . the Accused Functionalities, that differentiate the Accused Webpages/Websites."
- Interrogatory 3 asked Nordstrom to "Identify, for each Accused Functionality, when you first

- implemented or otherwise started using Ajax or XMLHttpRequest."
- Interrogatory 6 asks Nordstrom to "identify and describe all the benefits to Nordstrom that result, directly or indirectly, from the Accused Functionalities, including all the ways Nordstrom derives revenue or other value, monetary or otherwise."
- Interrogatory 7 asks Nordstrom to "Explain the circumstances surrounding the decision to implement the Accused Functionalities. . ."
- Interrogatory 9 requests Nordstrom to "Identify and describe all Transfer of Rights agreements that relate to the . . . Accused Functionalities. . . "
- Interrogatory 10 states:
  > For any Request for Admission to which You responded with anything other than an unqualified admission, (1) identify the number of the request (2) state all facts upon which you base your response, (3) identify all persons who have knowledge of the facts, and (4) identify all documents, testimony, and other tangible things that support your response. . .
- Interrogatory 11 asks Nordstrom to "Identify all of Nordstrom's competitors with respect to web-based sales and describe in detail all competitive analyses You have performed relating to the Accused Functionalities. . ."

Nordstrom applied the case law Droplets cited above in its interrogatory responses. For example, although Interrogatory 1 facially required Nordstrom to answer "separately" for each of the eleven accused functionalities, the request was directed to financial information. Nordstrom does not track financial information on a per-functionality basis. Nordstrom reasonably understood the interrogatory as a single request for financials and responded accordingly.

But the "each accused functionality" interrogatories at issue are materially different because they go to functionality-specific information and each Accused Functionalities is distinct and unrelated to the others.[3] For example, the "Edit Shopping Bag" functionality has little or nothing in common (regarding developers, purpose, source code, or functionality) with the "image zoom" functionality, which has little or nothing in common with the "search suggest" functionality.

Contrary to Droplets' assertions, Nordstrom objected to Interrogatory 2 on the basis that it included multiple subparts—asking about the effect of eleven distinct functionalities is properly eleven distinct interrogatories. But in practice Nordstrom does not track the information requested by Interrogatory 2 on a per-functionality basis, at least not in an unduly burdensome way. Nordstrom chose not to rest on this objection for Interrogatory 2. Similarly for Interrogatories 6, 9, and 11.

Nordstrom did rest on its numerosity objection for Interrogatory 3, which contains 11 discrete subparts. After Interrogatory 3, Nordstrom appropriately answered only Interrogatories Nos. 4 and 5. Interrogatory 7 also contains 11 discrete subparts (for the same reason as Interrogatory 3) and Interrogatory 10 contains over 50 discrete subparts. Nordstrom would rest on its objections to those Interrogatories as well.

**Argument**

"In the patent context, 'where a case involves multiple accused products, courts have generally concluded that a single interrogatory seeking information about all accused products contains at least as many discrete subparts as there are accused products at issue." *Edge Systems LLC v. Image Microderm Inc.*, 2019 WL 2902492, *2-*3 (C.D. Cal. 2019) (citations omitted). In *Edge Systems*, the court rejected plaintiff's

---

[3] The Accused Functionalities are (1) Add to Shopping Bag; (2) Edit Shopping Bag; (3) Search Suggest; (4) Image Zoom; (5) Change Product View; (6) Change Item Parameter; (7) Check In-Store Availability; (8) Filter Results; (9) Load more Results; (10) Sort Results; (11) Next Page/Change Page.

argument that there were not discrete subparts because the patents-in-suit "concern highly similar systems, devices, and methods for treating the skin." *Id*. Instead, the court found that the accused products had material differences and counted the interrogatories to contain subparts.

This court has reached the same conclusion. In *RAMBUS Inc. v. NVIDIA Corp.,* 011 U.S. Dist. LEXIS 156378, *43–*45, *48 (N.D. Cal. Aug. 24, 2011) the court analyzed interrogatories similar to those at issue here and concluded that "[a]n interrogatory that seeks information (even a single piece of information) about 300 separate products is asking 300 separate questions."); *see also Collaboration Props. v. Polycom, Inc.,* 224 F.R.D. 473, 475 (N.D. Cal. 2004) (finding interrogatory asking for information about all accused products, totaling 26 different products, would count as separate subparts); *Grateful Dead Productions v. Sagan*, 2007 WL 3132666 (N.D. Cal. October 22, 2007).

Droplets is limited to 15 individual interrogatories, and it cannot avoid that limit by hiding separate and discrete interrogatories as a single question. *Distinct subjects*, even if presented as subparts, are still distinct. *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 474–75 (N.D. Cal. 2004).

In Interrogatory 3, Droplets does not just ask when Nordstrom first used AJAX or XHR in its website; rather, it asks for the histories of eleven different source code projects. Contrary to Droplets' assertions, the Accused Functionalities are not similar widgets on a single website. Nordstrom developed these functionalities at different times through different development teams; they have different histories; and Nordstrom tests each Accused Functionality differently. Like the accused products in *Edge Systems*, the Accused Functionalities are materially distinct. For instance, "Add to Shopping Bag" created a separate window after a user added an item to a shopping bag, "Search Suggest" suggested search terms as the user typed, and Zoom merely displays a larger version of a thumbnail image. Droplets knows about the accused functionalities' distinctions (reflected in Droplets' most recent infringement contentions) and their different histories (as reflected in, inter alia, the source code Droplets has inspected).

The above argument applies to Interrogatories 3 and 7. Interrogatory 10 requests disclosure of all information related to Nordstrom's responses to multiple Requests for Admission. The case law is clear: "where a party serves a Rog requesting disclosure of all information on which the opposing party's denials of multiple RFAs are based, this 'essentially transforms each [RFA] into' a separate Rog for purposes of FRCP 33(a)(1)." *Valcor Engineering Corp. v. Parker Hannifin Corp.*, Case No. 8:16-cv-00909-JVS (KESx), 2017 WL 10440700 (C.D. Cal. August 28, 2017) (citations omitted); *see also Yee v. Ventus Capital Servs.*, No. 05-03097, 2006 WL 3462661, at *1 (N.D. Cal. Nov. 30, 2006) (same).

Droplets conflates two distinct issues when it argues that Nordstrom's answer to Interrogatory 3 demonstrates that it does not contain subparts because it did not respond to each subpart separately. The interrogatory count does not depend on Nordstrom's answers to those interrogatories. If Droplets had a bona fide complaint about the sufficiency of Nordstrom's response to each of the 11 distinct subparts, it has chosen not to raise that complaint to Nordstrom or to the Court. Droplets also argues that Nordstrom's own interrogatories undercut its argument; however, the Nordstrom interrogatory in question is more akin to Droplets' interrogatories 2, 6, 9 and 11.

There are no extenuating factors that would require the Court to increase the number of interrogatories, after the end of fact discovery, that Droplets can file. Droplets waited until the end of fact discovery to serve these interrogatories. The parties agreed upon the number of interrogatories Droplets could file. Droplets cannot unilaterally attempt to circumvent this limit with subparts, then cry foul and demand additional interrogatories when caught.

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: November 20, 2020         /s/  Courtland L. Reichman
                                              Courtland L. Reichman