United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DROPLETS, INC.,

Plaintiff,

v.

YAHOO! INC.,

Defendant.

Case No. 12-cv-03733-JST

**ORDER REGARDING MOTIONS TO STRIKE**

Re: ECF Nos. 590, 642, 646, 649

Before the Court are the parties' motions to strike expert testimony. ECF Nos. 590, 642, 646, 649. The Court will grant in part and deny in part Plaintiff's motions and deny Defendants' motions.

## I. BACKGROUND

In this patent infringement action, Droplets sued multiple defendants, including the parties in this case, in the Eastern District of Texas in late 2011. The cases against Yahoo and Nordstrom were transferred to this district in July 2012. Following a five year stay pending reexamination of the patents,[1] the Court entered a scheduling order, setting deadlines in March and April 2019 to serve amended infringement and invalidity contentions. ECF No. 320. The parties served their contentions accordingly.

Defendants moved to strike Droplets' infringement contentions. ECF No. 424. Magistrate Judge Westmore granted the motion, finding that Droplets failed to identify source code for the "interactive link" recited in the claims. ECF No. 469 at 6-7. As stated in the order, "Droplets has

[1] After reexamination, only one patent remains in this case: U.S. Patent No. 6,687,745 (the "'745 Patent"). That patent broadly relates to "delivering interactive links to applications and information stored in remote sources of a network." '745 Patent at col. 1, ll. 27-30.

put Defendants on notice of its theory of infringement" and the "deficiencies are relatively minor," but "Droplets bears the burden of identifying the source code that corresponds with the interactive link" and thus "should, to the extent possible, provide pinpoint citations." *Id*. at 6:2-3, 6:23-24, 7:7:4, 7:6-8. Droplets served its fourth (and final) amended infringement contentions on August 25, 2020. ECF Nos. 642-4, 649-4.

The Court conducted claim construction and consolidated the cases in February 2020. ECF Nos. 429, 445. The Court also set deadlines for expert discovery and to narrow the number of claims and prior art references. ECF No. 518. Fact discovery closed on November 13, 2020. *Id*. Defendants served their expert reports on issues for which they bear the burden on November 24, 2020. *Id*. Droplets' expert, Dr. Douglas Schmidt, opined on infringement. ECF No. 679-3. Defendants' expert, Dr. Benjamin Bederson, opined on invalidity. Dkt. No. 590-3. The parties served their rebuttal expert reports on December 15, 2020. ECF No. 518. As relevant, Defendants proffered two experts, Dr. Michael Shamos and Peter Kent, to rebut Dr. Schmidt's infringement opinions. ECF Nos. 646-3, 646-4.

Droplets now moves to strike certain invalidity opinions of Dr. Bederson and certain rebuttal opinions of Dr. Shamos and Mr. Kent. ECF Nos. 590, 646. Defendants each move to strike certain infringement opinions of Dr. Schmidt. ECF Nos. 642, 649.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

This district's Patent Local Rules "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 411 F. Supp. 3d 975, 980-81 (N.D. Cal. 2019) (citation omitted). Patent Local Rule 3-1 requires a party asserting infringement to serve infringement contentions not later than 14 days after the initial case management conference to identify, *inter alia*, each "Accused Instrumentality" and "specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(a),(c). Patent Local Rule 3-3 requires a party opposing infringement to serve invalidity contentions 45 days after

that to identify "each item of prior art" and "specifically where and how in each alleged item of prior art each limitation of each asserted claim is found." Patent L.R. 3-3(a),(c). Patent Local Rules 3-8 and 3-9 govern damages and require both parties to identify their "affirmative position on each [disputed] issue." Patent L.R. 3-8, 3-9. Once served, these contentions may be amended only "by order of the Court upon a timely showing of good cause." Patent L.R. 3-6.

The purpose of these disclosures is to "allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006); *see also Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 945 (N.D. Cal. 2018) (the rules are "designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute"). Accordingly, "a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1227 (N.D. Cal. 2019) (citation omitted). Undisclosed theories "are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).

That said, a party need not "prove its case" or even "disclose specific evidence" in its contentions. *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014). Courts distinguish between "the required identification of the precise element" that meets a claim limitation and "every evidentiary *item of proof* showing that the . . . element did in fact practice the limitation." *Genetech, Inc. v. Tr. of Univ. of Penn.*, No. C 10-2037 LHK (PSG), 2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012) (citation and internal quotation marks omitted) (emphasis in original). Thus, in deciding whether to strike an expert report, the "threshold question . . . is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Digital Reg of Tex.*,

United States District Court
Northern District of California

*LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) (citation omitted). Only where that inquiry blurs do courts "revert to a simple question: will striking the report result in not just a trial, but an overall litigation, that is more fair, or less?" *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. C 11-1846 LHK (PSG), 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012).

## IV. DROPLETS' MOTION TO STRIKE BEDERSON REPORT

### A. Undisclosed Invalidity Theories

Droplets first argues that Dr. Bederson introduced new theories for how system prior art meets certain limitations of the asserted claims in his report. Defendants' invalidity contentions for system prior art consist entirely of code snippets, with no explanation, elaboration, or exegesis of how the source code meets the claim limitations.[2] *See* ECF No. 636-17. Droplets argues that Dr. Bederson introduced new invalidity theories by relying on previously uncited source code related to "interactive link" and DNS load balancing functionality. Droplets also argues that Dr. Bederson introduced a new theory for the "Tan" reference[3] by relying on disclosures of a different reference cited in Tan's "cited references" section.

The parties further dispute the timing of the source code production supporting Dr. Bederson's alleged new theories. *Compare* ECF No. 590 at 8-10 (discussing "surprise eleventh-hour production" six days before opening expert reports), *with* ECF No. 636 at 6-7 (arguing that the source code has been available for eight years). As Droplets correctly points out, however, this issue is separate from whether Defendants disclosed the overall theory of infringement in their contentions. *See Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1004 (N.D. Cal. 2019) (rejecting the argument that providing physical copies of a product acts as a substitute for providing contention). "All the Court needs to conclude to grant Droplets' Motion is

---

[2] Yahoo's witnesses admitted in deposition that the code snippets are "tough to understand" and "hard to follow" while struggling to explain the prior art functionality based on the contentions alone. *See* ECF No. 590-13 at 21-22. This lack of explanation distinguishes Defendants' contentions from those of Droplets, discussed below.

[3] IBM eNetwork Host On-Demand, *The beginning of a new era for accessing host information in a Web Environment*, Tan et al., IBM SYSTEMS J. (1998) (hereinafter, "Tan").

that the theories then are not the same as the theories now." ECF No. 652 at 6. Accordingly, the Court compares Dr. Bederson's opinions to the invalidity contentions below.

**1. Interactive Link**

The claims recite an "interactive link" stored at the client computer "for selectively re-establishing the second communication connection to the second host computer for retrieving the third information and presenting the application and the fourth information." '745 Patent at claim 1 (limitation 1e). Dr. Bederson identifies this element in the prior art systems as follows:

<u>Yahoo! Mail and RocketMail</u>: Dr. Bederson opines that the prior art Yahoo! Mail and RocketMail systems had the claimed "interactive link" because they contained javascript code that "makes a call to the 'wl' function." ECF No. 636-9 at 1260. The "wl" function "defines computer code that, when executed, establishes the second communication connection to a second host computer." *Id*. The "wl" function is defined in the file "wmailBox.html." *Id.*; *cf. id.* at 1243.

Defendants' contentions do not disclose wmailBox.html or any other file that calls the "wl" function. *See* ECF No. 636-17 at 19-20. Instead, the contentions identify only the file RMailLink.html. *Id*. Defendants argue that this sufficiently discloses the accused functionality because the files are located in the same directory and a person of ordinary skill in the art would expect the systems to have these functionalities. These arguments are unpersuasive. Defendants were obligated to identify "specifically where and how . . . each limitation of each asserted claim is found" in these systems, and pointing to a different file in the same directory does not do that. *See* Patent L. R. 3-3(c). This theory is therefore not disclosed and is struck.

<u>Yahoo! Portfolio Manager</u>: Dr. Bederson opines that the prior art Yahoo! Portfolio Manager system had the claimed "interactive link" because it "allows a user to back up to the display of js.html" and then click on "a link generated by JavaScript in js.html" to send an HTTP request to "load jt.html." ECF No. 636-9 at 468-69. The js.html file defines the "rs" function that performs this method. *Id.* Defendants' contentions do not disclose js.html or jt.html; they show only various snippets of portf.java. *See* ECF No. 636-17 at 276-80. Defendants claim that this suffices because the files are contained in the same directory and "rs" is "merely a straightforward 9-line JavaScript function that opens a URL link." ECF No. 636 at 20. These arguments fail for

the same reasons stated above – Defendants were obligated to disclose their theories of invalidity no matter how obvious. This theory is therefore not disclosed and is struck.

Yahoo! Chat: Dr. Bederson opines that the prior art Yahoo! Chat system had the claimed "interactive link" because it "allows a user to click on a room," which is an interactive link. ECF No. 636-9 at 614. This functionality is described in various help files and implemented in the source code files YInput.java, YDisplay.java, Chat.java, and YIMDlg.hava. *Id*. at 614-17. The invalidity contentions do not mention a "room" and cite only different portions of YDisplay.java, Chat.java, and YIMDlg.java. ECF No. 636-17 at 109-10. Defendants argue that Dr. Bederson merely points to additional evidence in files that were already disclosed, as well as to additional files contained in the same directory. ECF No. 636 at 21. Defendants also argue that the other files are in a "help" documentation directory, which a skilled artisan would know to examine. *Id.* These arguments are unpersuasive. The contentions describe specific source code, not merely a file, and pointing to different code in the same or related file does not put Droplets on notice of Defendants' theory. Accordingly, this theory is undisclosed and is struck.

Internet Chess Club: Bederson opines that the prior art Internet Chess Club system had the claimed "interactive link" because it "allows a user to observe or flip a game, which restores the state of the observed game." ECF No. 636-9 at 1367. Specifically, the "observe" button is an interactive link that allows a user to restore the state of the board. *Id*. This functionality is shown in the files named GameList.java, src-26jan97/ics.c, rc-26jan97/draw-board.c, and src-26jan97/utilities.c. *Id*. at 1368-71. The contentions disclose none of this, citing snippets from Iconn.java and Hub.java files instead. ECF No. 636-17 at 580-82. Defendants argue that this suffices because the Iconn.java file also calls the "mhub.li_send_cmd()" and the "L1" and "L2" settings used by the code disclosed in Dr. Bederson's report. *See id.* at 581. However, Droplets convincingly argues that this in no way demonstrates that the "observe" button is the "interactive link." Because the contentions do not identify the same element for the limitation, this theory is undisclosed and therefore struck.[4]

---

[4] Defendants argue that their failure to disclose Dr. Bederson's theories is justified because Droplets also relies on broad source code citations and delayed disclosing its infringement and

United States District Court
Northern District of California

Accordingly, the Court grants Droplets' motion with respect to "interactive link." To the extent that Dr. Bederson's report relies on this theory for other limitations (e.g., limitation 1(a)), those theories are also struck. *E.g.*, ECF No. 636-9 at 1242-43.

**2. DNS Load Balancing**

The claims recite retrieving information over a "first communication connection" and using the code in that information to establish a "second communication connection to a second host computer." '745 Patent at claim 1 (limitation 1a). The claims also recite "sending second information" to a "second host computer." *Id.* (limitation 1b). Dr. Bederson identifies these elements in the prior art systems as follows:

Yahoo! Mail and RocketMail: Dr. Bederson opines that the prior art Yahoo! Mail and RocketMail systems met these limitations because "Yahoo! Mail servers were organized into different server 'farms,' where each farm consisted of multiple host computers," and "[e]ach request to a server in the specified farm could go to a different host computer based on the farm's use of a DNS load balancer." ECF No. 636-9 at 1243; *see also id.* at 1247. In their contentions, Defendants identified code that vaguely references "farms" and "siloes." *E.g.*, ECF No. 636-17 at 4. Although some of this code is included in Dr. Bederson's report, Defendants have not shown that this code discloses DNS load balancing. Instead, Defendants argue only that "DNS load balancing was an exceedingly well-known technology" and was the "standard and expected way" for farms and silos to work. ECF No. 636 at 22-23. Accordingly, because Defendants did not specifically disclose that load balancing meets these claim limitations, this theory is undisclosed and therefore struck.

Yahoo! 3D Stock Viewer: Dr. Bederson opines that the prior art Yahoo! 3D Stock Viewer system met these limitations because "Yahoo! used a farm of servers consisting of multiple individual computers to serve individual URLs." ECF No. 636-9 at 1278. This theory appears to have been disclosed: the contentions cite source code also cited in Dr. Bederson's report, and the

---

validity theories. The deficiencies in Droplets' contentions are addressed below but do not justify Defendants' failure to disclose their current theory in the invalidity contentions. In particular, claim construction has already taken place and Defendants do not explain why Droplets' purported delay justifies adopting a new theory of invalidity.

report does not mention DNS load balancing specifically. *Compare id.* at 1278-88, *with* ECF No.636-17 at 351-63. Droplets thus fails to show this theory was undisclosed.

Yahoo! Chat: Dr. Bederson opines that the prior art Yahoo! Chat system met these limitations because "Yahoo! used a farm of servers consisting of multiple individual computers to serve individual URLs." ECF No. 636-9 at 585. Again, this theory does not appear to rely on DNS load balancing, and Defendants' contentions broadly disclosed the use of multiple servers through citations to chat.java code. *See* ECF No. 636-17 at 91-94. Droplets thus fails to show this theory was undisclosed.

For these reasons, the Court strikes the DNS load balancing theory for the Yahoo! Mail and RocketMail prior art only, but not Yahoo! 3D Stock Viewer or Chat.

**3. Tan**

The claims recite a "second information relating to the operation environment" and "presentation information being based on the second information." '745 Patent at claim 1 (limitations 1b and 1c). Dr. Bederson opines that Tan discloses this limitation because it describes a Java applet that "can handle complete 3270 data stream processing, like IBM's host On-Demand." ECF No. 636-9 at 350. Dr. Bederson then discusses an IBM manual titled "3270 Information Display System Data Stream Programmer's Reference GA23-0059-07" – which is cited in Tan's footnote and "cited references" section – which describes implementing 3270 data stream processing. *Id.* In particular, the 3270 Manual describes the use of "Query Replies" that define the information the Java applets send to and from the host applications, which purportedly includes the claimed presentation information. *Id.* Defendants' contentions do not specifically reference Query Replies. *See* ECF No. 636-18 at 17-18.

The Court concludes that Query Replies were insufficiently disclosed in Defendants' contentions. A reference cited in the bibliography or footnote of another reference does not give notice of everything in the cited reference. After all, a party cannot be expected to scour the prior art in anticipation that one of its citations discloses an element that meets the claim limitations. *See Asia Vital*, 377 F. Supp. 3d at 1004 ("The post-hoc identification of a needle in a haystack does not cure [a] failure to respond [to contentions]."). The Patent Local Rules here required

United States District Court
Northern District of California

Defendants to identify "where and how in each alleged item of prior art each limitation of each claim is found," and Defendants have not done so for Query Replies as the "presentation information." Patent L.R. 3-3(c). This theory is therefore undisclosed and is struck.

**B. Number of References**

Droplets further argues that Dr. Bederson's opinions exceed the number of references permitted by the Court. The parties had previously agreed that Droplets will "limit the number of asserted claims against each Defendant to ten (10) claims" and that "Defendants will reduce the number of asserted prior art references to twenty (20) total." ECF No. 518 at 2:14-16. The Court ordered, pursuant to stipulation, Defendants to "reduce the number of asserted prior art references to twenty (20) total between them (where a combination of references is counted as a reference)" by September 25, 2020. *Id.* at 3.

In his report, however, Dr. Bederson analyzes some combinations of references together with subsets of those combinations as one "reference." For instance, Dr. Bederson analyzes the combination of "Yahoo! Portfolio Manager in view of Fields and Hickman" together with the combination of "Hickman in view of Fields." ECF No. 590-3 at 148-49. Defendants explain that they are not relying on additional combinations, but merely reserving Nordstrom's right to rely on the combinations without Yahoo-specific prior art systems. ECF No. 636 at 15 & n.9. According to Defendants, Nordstrom cannot use Yahoo system prior art because it is "not in the Nordstrom case" and "Droplets has refused to allow [it] into that case." *Id.* at 15 n.9. Defendants also claim that there is no prejudice because if Droplets can refute the combination having Yahoo prior art systems, then "surely Droplets is prepared to argue that the same combination without the Yahoo-specific references fails to invalidate the asserted claim." *Id.* at 26.

Although it is not clear why the parties dispute this issue after stipulating to twenty references "total between [the Defendants]," Dr. Bederson's opinions violate the plain language of the order by including more than twenty combinations. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 9460295, at *1 (N.D. Cal. Dec. 23, 2015) ("[A] subset of an obviousness combination constitutes a different combination."). However, to the extent that Droplets has "refused to allow" Nordstrom to rely on Yahoo system prior art references, Droplets'

predicament is of its own making. Accordingly, the Court *conditionally* grants Droplets' motion to strike the additional combinations exceeding the twenty combinations, provided that Droplets permits Nordstrom to rely on Yahoo system prior art at trial.

Droplets separately argues that Dr. Bederson exceeded the number of references by discussing Yahoo! Games. *See, e.g.*, ECF No. 636-9 at 52-65. In their opposition, Defendants concede that they may not rely on Yahoo! Games as an invalidating reference, but argue that Dr. Bederson uses it to describe the background state of the art. *See Genentech*, 2012 WL 424985, at *3 ("The fact that a reference . . . was not disclosed in the invalidity contentions does not render it unusable for laying an historical foundation to research that was disclosed."). In light of that concession, Dr. Bederson's opinions that "Yahoo! Games discloses and/or renders obvious" the limitations of the asserted claims (which are plainly invalidity opinions) are struck. ECF No. 636-9 at 54-65. However, Dr. Bederson may opine on Yahoo! Games as historical background.

## V. YAHOO'S MOTION TO STRIKE SCHMIDT REPORT

Turning to Yahoo's motion, Yahoo seeks to strike portions of Dr. Schmidt's infringement report regarding the "interactive link" in the "Search Suggest" functionality of search.yahoo.com and yahoo.com, as well as the "presentation client" in all accused products. Yahoo argues that neither theory was adequately disclosed in Droplets' contentions.

### A. Interactive Link

Dr. Schmidt opines that the "Search Suggest" function in search.yahoo.com and yahoo.com include an "interactive link" because those pages contain JavaScript code that "is constantly 'listening' for user action (either when a user enters characters into the search box or when the user selects the search box)," such that "[w]hen a user enters a key into the search box, they are selecting the JavaScript." ECF No. 642-5 ¶ 16. The JavaScript then establishes an HTTP request (the claimed "communication connection[s]") to Yahoo's servers to retrieve a previous operating state in the form of search suggestions. *Id.* ¶¶ 14-15, 25-26. Dr. Schmidt provides concrete examples of interactive links in the websites as of July 2017, including:

- "http://l.yimg.com/pv/static/lib/sycpurple_a33bc9fe15f1caab2e553910b8ca408b.js." for search.yahoo.com, and

United States District Court
Northern District of California

- https://web.archive.org/web/20170701013835js_/https://s.yimg.com/zz/combo?yui:/3.18.0/yui/yuimin.js&/ss/rapid-3.42.4.js&/os/mit/td/aperollup-min-3f7894f7_desktop_advance.js" for yahoo.com. *Id.*

*Id.* ¶ 13 (citing source code DRPINC4307470 and DRPINC4307472). Dr. Bederson also opines that Yahoo's "Search Suggest" functionality "infringed in the same . . . manner" prior to July 2017. *Id.* ¶ 81.

Droplets' infringement contentions disclosed substantially the same theory. The fourth amended contentions state that the "Search Suggestion" functionality provides interactive links comprising "embedded JavaScript code" that performs the functions of establishing a connection and retrieving information as claimed when selected by the user by "for example, typing in the search bar or clicking on the search bar. *See* ECF No. 679-2 at 5-6. Droplets therefore disclosed this theory of infringement, and Dr. Schmidt's opinions are an "application of a disclosed theory," rather than a "new theory altogether." *Digital Reg*, 2014 WL 1653131, at *2.

However, Dr. Schmidt relies on different source code than the code disclosed in Droplets' infringement contentions. There, Droplets disclosed that the interactive link for search.yahoo.com is "the embedded JavaScript code" and "JavaScript file https://search .yahoo.com/gossip/gossip-us-ura," and particularly identified the source code files DRPINC3339604 and DRPINC3339605, neither of which are cited in Dr. Schmidt's report. ECF No. 679-2 at 6, 41. In addition, Dr. Schmidt cites functions, such as "fireInTheHole" and "GerJsonData," which are not cited in the contentions. *See* ECF No. 642-5 ¶¶ 17-19, 69-71. Yahoo thus argues that Droplets violated Judge Westmore's order to "provide pinpoint citations for the interactive link" "to the extent possible." ECF No. 469 at 7.

On balance, the Court finds that Droplets' new source code citations do not warrant striking. First, as Judge Westmore found, "Droplets has put Defendants on notice of its theory of infringement" and "is not required to cite to every bit of source code that supports its theory of infringement." *Id.* at 6:7-10, 23-24. As such, Droplets complied with the basic function of the contentions even if the details now vary. Second, the failure to identify the specific source code appears to be partly explained by Dr. Schmidt's methodology: Dr. Schmidt analyzed *current*

versions of Yahoo web pages, which are not accused in this case, and then extrapolated backward to accused versions through evidence that the functionality has not changed. *See* ECF No. 679-3 ¶¶ 113-15; *see also* ECF No. 642-5 §§ I.A.1, I.A.2. The change in source code citations is thus at least partly justified by the different versions analyzed by Dr. Schmidt. Moreover, Dr. Schmidt's opinions rely on ".har" files that capture HTTP requests, which Droplets argues are unique to each session and thus necessarily change. *See* ECF No. 679-3 ¶¶ 113, 221; ECF No. 679 at 7:20-8:4. Finally, to the extent that Droplets now relies on JavaScript files that have different names than those disclosed, the difference is likely substantially harmless because Dr. Schmidt opines that each version operated in the same way – and thus requires the same analysis and defenses.[5] *See* ECF No. 642-5 ¶ 40. Yahoo has thus not shown that Dr. Schmidt's reliance on additional and different source code warrants striking the entire opinion.

Accordingly, the Court does not strike Dr. Schmidt's "interactive link" theory.

**B. Presentation Client**

Yahoo also argues that Dr. Schmidt relies on a previously-undisclosed theory for the "presentation client." Dr. Schmidt opines that the "presentation client" is "[t]he portions of the browsers that execute Yahoo's display of Yahoo's webpages and features." ECF No. 642-5 ¶ 215. In its contentions, Droplets disclosed the "presentation client" as the "software for running the application, such as JavaScript." ECF No. 642-4 at 188; *see, e.g. id.* at 189 (defining the Search Suggest presentation client as "software for presenting the search bar and selectable search suggestions, such as JavaScript, and for executing user's requests for webpages").

These theories are, on their face, similar. The contentions and expert report both define the presentation client functionally as whichever code displays the accused functionality on Yahoo's website. However, Yahoo argues that Droplets failed to identify that the presentation client is the *browser* code in its contentions and, further, that it appeared to refer to the presentation client as JavaScript. *See id.* Yahoo's reading is understandable because the use of "JavaScript" in the

[5] For instance, Yahoo argues that Droplets fails to "correlate" the code between the contentions and the expert report. ECF No. 701 at 4:17-22. To the extent this is true, it is a noninfringement position that Droplets fails to meet its burden to show that the functionality is the same.

United States District Court
Northern District of California

contentions is ambiguous: the phrase "such as JavaScript" could refer to either the software of the presentation client or the application that runs on it. Moreover, the contentions expressly refer to a web browser for other limitations, and Droplets argued at claim construction that a "presentation client" need not "cooperate" with a web browser, since it can also be a desktop application instead. *See* ECF Nos. 642-4 at 188 (referring to "application program code" as a "web browser"), 389 at 22-23 (claim construction brief).[6] In other instances, Droplets also suggested that the code that the interactive links JavaScript presents the accused search functionality. *See, e.g.*, ECF No. 642-4 at 5 (defining "interactive links" to include "JavaScript files that contain the embedded code needed to present the search bar").

Although the motion presents a close question, the Court declines to strike Droplets' contentions. Since mapping this element to browser code is not clearly a new theory, the question is whether striking it will "result in not just a trial, but an overall litigation, that is more fair, or less." *Apple*, 2012 WL 2499929, at *1. Yahoo claims to be prejudiced because it lacked the chance to present claim construction arguments that would preclude this interpretation, as well as to raise other invalidity arguments, such as lack of written description. These arguments are not convincing because it was Yahoo – not Droplets – that proposed limiting this term to web applications during claim construction and then dropped the argument in response to Droplets' claim construction brief. *See* ECF No. 404 at 22. In light of the broader construction adopted for this term – which clearly permits browser code – the Court finds unconvincing that Yahoo's invalidity case would have differed if it knew of Droplets' position. For instance, since the presentation client can be either a web or a desktop client, the written description requirement may presumably be satisfied by either type of embodiment, so written description arguments would not change merely because the term was broader than anticipated based on the infringement contentions. As such, Yahoo has not shown that the overall litigation would be more fair as a result of striking this theory.

[6] Yahoo also argues that Droplets accused JavaScript code of being the presentation client in a parallel litigation in New York. The Court agrees, however, that the evidence from another case has no bearing on Droplets' contentions here.

Accordingly, the Court does not strike Dr. Schmidt's "presentation client" opinions.

**VI. NORDSTROM'S MOTION TO STRIKE SCHMIDT REPORT**

Nordstrom moves to strike portions of the Schmidt report related to certain doctrine of equivalent theories and the "presentation client" described above. In response, Droplets withdrew its theories based on doctrine of equivalents, which it claims were "inadvertently" included. For the reasons described above, the Court declines to strike Dr. Schmidt's "presentation client" opinions. Accordingly, Nordstrom's motion is denied.

**VII. DROPLET'S MOTION TO STRIKE KENT AND SHAMOS REPORTS**

Droplets moves to strike portions of Mr. Kent's report that cite conversations with Priscilla Amirtharaj and Kavita Ahuja, two Yahoo engineers, who were not disclosed as relevant witnesses in Defendants' initial disclosures or interrogatory responses. Droplets also moves to strike portions of the Kent and Shamos reports that opine on non-infringing alternatives.

**A. Undisclosed Witnesses**

Mr. Kent relies on "conversations" with Amirtharaj and Ahuja in two parts of his report. First, Mr. Kent spoke to those employees for certain context on Yahoo's "March 2008 Search Assist Causation Study," which purportedly shows that disabling the accused features would not lead to any drop off in searches. ECF No. 646-1 ¶¶ 89-91. Second, Mr. Kent spoke to the two employees for certain context on Yahoo's accused functionality. *Id.* ¶¶ 22, 32, 36, 106.

The Court has carefully reviewed these portions of the Kent report and finds Defendants' failure to disclose these witnesses to be "substantially harmless." Fed. R. Civ. P. 37(c)(1). With respect to the Search Assist study, Mr. Kent's opinions appear to be derived primarily from the study itself. Mr. Kent cites conversations with the undisclosed witnesses to opine on Yahoo's expectations for the Search Assist function – expectations that were supposedly proven false by the Search Assist study – but this provides mere context for the study, not additional opinions. *See* ECF No. 646-1 ¶ 91. With respect to the other functionality, Mr. Kent cites conversations with the undisclosed witnesses to opine on the number of users who saw a particular search page and the source of certain ads historically. *Id.* ¶¶ 22, 32, 36. This, too, provides mere context for the opinion. Although Mr. Kent also relies on the witnesses to opine that the Search Assist function

differed in different websites, he also verifies that information through his own studies. *See id.* ¶ 106. In each of these cases, Defendants convincingly argue that the information provided by the witnesses was available and confirmed through other sources. *See* ECF No. 683 at 8-9. Droplets, on the other hand, articulates no concrete prejudice from the undisclosed witnesses, particularly because the information derived from them is peripheral to the main issues.

Accordingly, the Court finds that Defendants established that its failure to disclose the two witnesses was substantially harmless and does not strike this portion of the Kent report.

**B. Non-Infringing Alternatives**

Both Mr. Kent and Dr. Shamos opine on a large number of non-infringing alternatives. For instance, Dr. Shamos opines on nine alleged alternatives for Yahoo's accused functionality and forty alleged alternatives for Nordstrom's accused functionality. *See* ECF Nos. 646-4, 646-5. Mr. Kent also opines on "Yahoo!'s other search suggestions," which includes the non-infringing "Also Try" alternative. ECF No. 646-3 ¶ 39-44. Droplets makes two related arguments for striking these opinions: first, Defendants did not identify them in their interrogatory responses, disclosing mere "themes" for implementations that lacks particular claim limitations, and second, Defendants should have included these opinions in the opening expert reports as issues on which they bear the burden of proof.

With respect to the first issue, the Court agrees that Defendants were obligated to disclose non-infringing alternatives regardless of whether they bear the burden on the issue. *See SPH Am., LLC v. Res. in Mot., Ltd.*, 13cv2320 CAB (KSC), 2016 WL 6305414, at *2 (S.D. Cal. Aug. 16, 2016) (explaining that "nowhere in the Federal Rules of Civil Procedure is it required that a party who carries the ultimate burden on an issue at trial must establish a *prima facie* case before it is entitled to discover information that the other party may use to rebut the *prima facie* case"). The Court further agrees that Defendants' interrogatory responses lacked particularity. Defendants disclosed generically "any implementation" that does not include a particular claim limitation, such as where "the presentation information is not based on the second information." *See* ECF No. 646-19 at 6; ECF No. 646-20 at 3-5; ECF No. 646-11 at 7. Droplets persuasively argues that these generic responses left its expert, Dr. Schmidt, to shoot in the dark in rebutting the technical

feasibility of these alternatives. For instance, Dr. Schmidt opines that any implementation where "fourth information is not retrieved over the second communication connection" was not feasible because preloading content on initial page load was not possible in the accused products, ECF No. 646-25 ¶ 217, an opinion that Dr. Shamos criticizes as "tilt[ing] on windmills" because preloading is not required in his conception of this alternative. ECF No. 646-6 ¶ 453; *see also* ECF No. 646-15 at 199:4-23 (Shamos criticizing Schmidt for not addressing the forty non-infringing alternatives disclosed in his rebuttal report).

The Court therefore agrees that these opinions based on interrogatory responses that negated claim limitations were not adequately disclosed in discovery. The question remains whether they should be struck. Rule 37(c)(1) provides for "automatic and mandatory" exclusion unless the non-disclosure was "justified or harmless." *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. 07-CV-2172-AJB, 2011 WL 672799, at *2 (S.D. Cal. Feb. 18, 2011) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)). Moreover, even when those standards are not met, courts have discretion to permit a lesser sanction. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006). In deciding whether to strike evidence, courts often "consider the following factors: '(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 626 (S.D. Cal. 2015) (quoting *Allen v. Similasan Corp.*, 306 F.R.D. 635, 640 (S.D. Cal. 2015)).

Here, Defendants argue that there is no prejudice because Droplets did not seek to amend Dr. Schmidt's report in response to the Shamos rebuttal report.[7] They also claim lack of surprise, ability to

[7] Defendants cite *Droplets, Inc. v. Overstock.com, Inc.*, No. 2:11-CV-401-JRG-RSP, 2015 WL 11120799, at *5 (E.D. Tex. Jan. 9, 2015), where the district court declined to strike non-infringing alternative opinions disclosed in rebuttal because the timing of plaintiff's expert's analysis belied any claim of prejudice based on failure to incorporate the information in the report and because plaintiff did not move to amend the report after getting the rebuttal. The facts here are different: Dr. Schmidt provided a technical opinion based specifically on Defendants' disclosures in interrogatories, which Defendants then criticized for failing to guess the correct implementation. The prejudice is thus evident from Defendants' criticisms. Defendants also cite *Vehicle IP, LLC v. AT & T Mobility LLC*, 227 F. Supp. 3d 319, 325 (D. Del. 2016), where defendants adequately

United States District Court
Northern District of California

cure through deposition, the possibility that trial will be extended, and the importance for the evidence. *See* ECF No. 683 at 21:17-24:13. These arguments are not persuasive. As of today's date, trial is less than two months away and the Court will conduct a pretrial conference in a little more than three weeks. Defendants had the required information months in advance of the expert reports: Dr. Shamos testified that he generated his opinions using a "rote mechanism" long before the opening expert reports were due. *See* ECF No. 646-14 at 232:2-18, 250:15-252:5. As such, Droplets was deprived of the opportunity to meaningfully respond and reopening discovery now would require extending the schedule in a way that likely prejudices Droplets. Accordingly, the Court strikes Dr. Shamos' opinions for non-infringing alternatives based on the "rote mechanism" of removing particular claim limitations from the accused products.

However, with respect to other opinions, Defendants affirmatively disclosed specific implementations in their discovery responses. For instance, Yahoo disclosed implementations based on the accused products in the *E*Trade* litigation and implementations where a cookie, bookmark, or shortcut perform the role of the "interactive link." *See* ECF No. 646-11 at 5, 8; *see also* ECF No. 646-19 at 6. For these opinions, Droplets cannot meaningfully claim surprise and the sole question rests on whether Defendants should have disclosed them in the opening expert reports, as opposed to rebuttal ones. The law is clear: Droplets, as the patentee, bears the burden of proof to prove damages, even in a reasonable royalty analysis. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (a patentee has the burden "to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990) (defendant "did not have the burden of going forward with evidence to rebut proof" for reasonable royalty damages). Dr. Shamos opinions regarding non-infringing alternatives are therefore proper rebuttal to Dr. Schmidt's damages opinions.

Droplets cites four cases to argue that Defendants have the burden to prove non-infringing

---

disclosed non-infringing alternatives in discovery, as well as *State Intellectual Techs., Inc. v. Garmin Int'l, Inc.,* No. 2:11-CV-01578-GMN, 2015 WL 2152658, at *7 (D. Nev. May 7, 2015), where the failure to disclose was deemed harmless because the plaintiff submitted a third expert report. These cases are distinguishable on their facts and do not assist the Court.

United States District Court
Northern District of California

alternatives in a reasonable royalty analysis. These cases stem from the Federal Circuit decision in *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999), which concerned lost profits damages. There, the court held that the patentee has the burden to prove "but for" causation—i.e., that the patentee would have made the infringer's sales if the infringing product was not on the market—including by proving a lack of available noninfringing alternatives, but that the burden may shift to the accused infringer if the patentee shows that the non-infringing alternatives were not available on the market. *See id.* at 1349, 1353. Some courts have extended *Grain Processing* to a reasonable royalty analysis and placed the burden of proof on the patentee to show the "availability" of non-infringing alternatives. *See LaserDynamics, Inc. v. Quanta Comp., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011); *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2019 WL 8138163, at *20-21 (C.D. Cal. Nov. 20, 2019). Others have taken a step further to require the accused infringer to prove non-infringing alternatives in general. *See SPEX Techs. v. Apricorn, Inc.*, No. CV 16-07349 JVS (AGRx), 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020); *Smart Skins LLC v. Microsoft Corp.*, No. C15-544-MJP, 2016 WL 4148091, at *2 (W.D. Wash. July 1, 2016).

The Court respectfully disagrees with these decisions. Noninfringing alternatives play a fundamentally different role in lost profit and reasonable royalty analysis. Lost profits are a form of compensatory damages meant to calculate the profits the patentee would have made "but for" the infringement. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017). To show entitlement to lost profits, the patentee must satisfy the rigorous test laid out in *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 (6th 1978), which includes proving a lack of noninfringing alternatives to which the infringer may have switched to capture the patentee's sales. *Id.*; *Grain Processing*, 185 F.3d at 1350.

Reasonable royalties, by contrast, are meant to provide a "floor" to patent damages by approximating a reasonable royalty that the infringer would have paid to the patentee.[8] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). One way to calculate a

[8] *See* 35 U.S.C. § 284 (2012) (requiring damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer").

United States District Court
Northern District of California

reasonable royalty is through a hypothetical negotiation framework, which evaluates the fifteen factors laid out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *Id.* Non-infringing alternatives are relevant to two factors: first, they help value the invention, and second, they may limit the infringer's willingness to pay in a hypothetical negotiation. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015); *see also Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018).

Thus, the very point of a reasonable royalty analysis is to provide damages when exact losses cannot be calculated. *See Mentor Graphics*, 851 F.3d at 1286 (noting that the absence of non-infringing alternatives often "proves the most difficult obstacle" for lost profits, but that a reasonable royalty is available in that event). None of the *Georgia-Pacific* factors have to be considered specifically under the flexible hypothetical negotiation framework. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014); *see also Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) (advising expert witnesses to "concentrate on *fully* analyzing the *applicable* factors, not cursorily reciting all fifteen"). As such, neither party has the "burden" to prove non-infringing alternatives (or their absence) because both parties may rely on a variety of factors to prove the reasonableness or unreasonableness of a royalty rate.

Accordingly, Defendants were not obligated to include non-infringing alternatives based on the *E*Trade* litigation and "interactive link" implementations in their opening expert reports, and the Court strikes only Dr. Shamos' opinions based on limitations that lack certain claim limitations. Moreover, with respect to Mr. Kent, Defendants convincingly argue that the "Also Try" functionality is not a non-infringing alternative, but only rebuttal opinion to Droplets' expert analysis of the Search Suggest study. *See* ECF No. 646-3 ¶ 88. The Court therefore denies the motion with respect to Mr. Kent's "Also Try" opinion.

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Droplets' motions to strike portions of the Bederson, Kent, and Shamos reports and denies defendants' motion to strike portions of the Schmidt report. This Order is provisionally filed under seal. The parties shall file a joint statement proposing redactions to the Order, along with good cause to seal applied to non-dispositive motions, within seven days. *See Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

**IT IS SO ORDERED.**

Dated: April 27, 2021



JON S. TIGAR
United States District Judge