Courtland L. Reichman (CA Bar No. 268873)
 creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
 sballard@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
 kfalkenstien@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
 mflanigan@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
 khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
 jcardenas-navia@reichmanjorgensen.com
Michael Matulewicz-Crowley (admitted *pro hac vice*)
 mmatulewicz-crowley@reichmanjorgensen.com
Michael Marvin (admitted *pro hac vice*)
 mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant *Droplets, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> YAHOO!, INC., <br><br> Defendant. | Case No. 12-cv-03733-JST <br><br> **PLAINTIFF DROPLETS, INC.'S MOTION TO CLARIFY CLAIM CONSTRUCTION** <br><br> HEARING: <br> Date: July 1, 2021 <br> Time: 2:00 p.m, <br> Place: Courtroom 6, 2nd Floor Oakland Courthouse <br> Judge: Hon. Jon S. Tigar <br><br> **REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED** |
| OATH, INC., et al., <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> DROPLETS, INC., <br><br> Intervenor-Defendant. | |
| DROPLETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORDSTROM, INC., <br><br> Defendant. | |

**NOTICE OF MOTION**

To the Honorable Court, all parties, and their attorneys of record:

Please take notice that on July 1, 2021, in Courtroom 6 (Second Floor), United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiff Droplets, Inc. ("Droplets") will and hereby does move the Court for clarification of the construction of the term "interactive link."

For the reasons explained herein, the Court should clarify the construction of "interactive link" to read:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) include facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL) and cannot use a bookmark, cookie, shortcut, hyperlink or Internet address (URL) to restore locally stored operating states.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

DISCUSSION .................................................................................................................................. 4

    I.      The April 30 Order Held That The Operating State Cannot Be Restored From A Locally Stored Cookie. ........................................................................................... 5

    II.     Reading The Court's Construction To Preclude All Use Of The Negative Limitation Items Would Violate Basic Claim Construction Principles ....................... 8

    III.    The SDNY Court Did Not Decide The Interpretation Now Presented By Yahoo. ................................................................................................................................. 10

          A.     Proceedings In The Southern District of New York ..................................... 11

          B.     This Court's April 30 Order .......................................................................... 13

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Amgen Inc. v. Amneal Pharms. LLC*,
    945 F.3d 1368 (Fed. Cir. 2020) ............................................................................... 7

*Baxalta Inc. v. Genentech, Inc.*,
    972 F.3d 1341 (Fed. Cir. 2020) ............................................................................... 9

*Budde v. Harley-Davidson, Inc.*,
    250 F.3d 1369 (Fed. Cir. 2001) ............................................................................... 9

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ............................................................................5, 9

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014) .............................................................................10

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ................................................................................................ 5

*MBO Labs, Inc. v. Becton Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007) .............................................................................10

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
    831 F.3d 1350 (Fed. Cir. 2016) ............................................................................... 7

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
    402 F.3d 1364 (Fed. Cir. 2005) .............................................................................10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ............................................................................... 5

*Ohio Willow Wood Co. v. Alps, LLC*,
    735 F.3d 1333 (Fed. Cir. 2013) .............................................................................10

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...............................................................................10

*Wis. Alumni Rsch. Found. v. Apple, Inc.*,
    905 F.3d 1341 (Fed. Cir. 2018) ............................................................................... 7

Plaintiff Droplets, Inc. ("Droplets") hereby respectfully moves the Court for clarification of its April 30, 2021 Order Confirming Claim Construction (the "April 30 Order," ECF No. 749).

**INTRODUCTION**

The Court's April 30 Order clarified that an "interactive link" cannot restore an operating state from a locally stored cookie. This ruling is sensible in the context of the Court's previous rulings and is consistent with the Court's prior analysis of the U.S. Patent 6,687,745's ("the '745 patent") claim language, the specification, the prosecution history, the reading of the patent by a skilled artisan, and the decisions in the Southern District of New York ("SDNY"). The point of the April 30 Order's clarification is that the term "interactive link" cannot include what already existed as of the time of the invention, namely, cookies that store previous state information on the client computer. Instead, the claimed invention stores that state information at the server. This is what Droplets understands the April 30 Order to be clarifying as to the invention's use of cookies.

Yahoo[1] has a new and different interpretation that takes the Court's modified construction of "interactive link" far afield of what Droplets understands the Court intended. Yahoo's apparent position is a product cannot infringe if it uses a cookie or any of the other negative limitation items (bookmarks, cookies, shortcuts, hyperlinks, and URLs), for any purpose, even if not part of the "interactive link." For example, under Yahoo's reading, the construction excludes *any use* of URLs. Internet addresses (URLs) are how the Internet is used – without them, there is no navigating the Internet. The very purpose of the '745 patent is to facilitate communication over the Internet, yet on Yahoo's new argument, the Internet cannot be used. While an "interactive link" requires retrieval of "applications and/or information stored at remote locations across the network," it cannot even navigate the network to access that information. By reading the word "use" in total isolation – ignoring both basic claim construction law and the Court's actual reasoning in its opinion – Yahoo plans to turn the Court's construction into one that is impossible to square with the patent and the very purpose of the invention. This interpretation would render the patent nonsensical, meaningless, and internally inconsistent – and it is not what Droplets believes the Court intended.

---

[1] "Yahoo" refers to Yahoo!, Inc., Oath, Inc., and Oath Holdings, Inc., collectively.

As to cookies, Yahoo has adopted an extreme view inconsistent with the Court's actual reasoning. It now contends that if the accused product uses cookies for anything (even if not part of the "interactive link"), then it cannot infringe. No doubt the Yahoo website uses cookies in many ways totally unrelated to the "interactive link" or even the accusations of infringement. But in Yahoo's view, if it uses cookies in any manner, it must prevail. This is not what Droplets understands the Court to have meant when it clarified the use of cookies.

Defendants ostensibly sought to "confirm" their previous understanding of the "interactive link" definition. Droplets opposed the motion to confirm because it did not believe that inserting "uses" into the construction was necessary for the construction to mean that state could not be restored from a cookie – indeed, because Droplets was not contending that Yahoo's product restored state from a cookie, modifying the construction seemed unnecessary, and it was unclear what more Yahoo intended to do with it. Now, those concerns have been realized: It appears what Yahoo was really doing was presenting a metaphorical "trojan horse," in which it claimed to be "confirming" its previous understanding, but really sought a radical change in the claim construction. What it asked for was to "confirm" that an "interactive link" cannot restore an operating state from a locally stored cookie, and the Court agreed. But what it now argues stretches far beyond that modest proposition. Indeed, if all Yahoo was doing was "confirming" its previous understanding of the claim language, why did it seek summary judgment only after the April 30 Order and almost four months after the summary judgment deadline? If this is the same claim construction as before, why is summary judgment only now being requested? It is because what was pitched as a "confirmation" is now being interpreted as a dispositive, substantive change. That change is unsupported by the Court's reasoning, the intrinsic record, and the SDNY court's decisions.

A current live dispute thus has crystalized as to the meaning of the modified claim construction in the April 30 Order. Droplets respectfully requests that the Court clarify that its April 30 Order means an "interactive link" cannot use a bookmark, cookie, shortcut, hyperlink, or Internet address (URL) to restore locally stored operating states. Droplets does not seek clarification of the "particular user" language at this time.

**BACKGROUND**

During claim construction in 2019, Defendants sought construction of the term "interactive link." Defendants proposed the following construction:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when **selected** by an end user, and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. **An interactive link cannot be a bookmark, cookie, shortcut, hyperlink, or Internet address (URL).**

ECF No. 404 at 3-4, 7-12. Defendants also filed a brief arguing that the negative limitation bolded above was how the SDNY court construed "interactive link" and that this should be given collateral estoppel effect. ECF No. 371-1 at 8-10. The Court adopted Defendants' proposed construction of "interactive link," above, on December 20, 2019. ECF No. 412 at 7 (Issue Preclusion Order); *see also* ECF No. 429 at 4-5, 14.

On January 6, 2021, after the close of discovery, Defendants filed a motion to "confirm" claim construction. ECF No. 593. They were very clear that they were not seeking a new claim construction but rather sought only to "confirm" what they already understood the Court to have decided in its December 2019 Order. ECF No. 593 at 1 ("in Defendants' view, [issues] that the Court has already resolved"), 3 ("Defendants merely ask this Court to confirm what the parties themselves confirmed in the briefing . . . ."). The Court agreed that Defendants were not advancing a different claim construction. ECF No. 749 at 4 ("First, Defendants are not advancing a different claim construction than they advanced before."), 5 ("The difference in wording does not show a substantive change in claim construction where the arguments are the same.").

Summary judgment motions were due by January 20, 2021. ECF No. 445 at 2; ECF No. 518 at 3. Yahoo did not file a summary judgment motion, nor did it seek leave to file such a motion.[2]

On April 30, 2021, the Court granted Defendants' motion to "confirm" the claim construction.

---

[2] The Yahoo-related parties had previously filed two summary judgment motions, and thus leave was required to file another one. *See* Standing Order for All Civil Cases Before District Judge Jon. S. Tigar at 2 ("Absent good cause, the Court will consider only one motion for summary judgment per party. Any party wishing to exceed this limit must request leave of court and must show good cause."); *see also* ECF Nos. 329, 472.

1  ECF No. 749.  The Court was clear that it was confirming what Defendants already understood the
2  terms at issue to mean.  *Id.* at 1 ("The Court will confirm those parties' understandings of these
3  terms.").  The April 30 Order confirmed the basic paradigm that the prior art stored previous state
4  information locally on the client computer, whereas the invention stores it at the server.  This basic
5  paradigm makes sense – storing an operating state locally and on a server are two different things.
6  While Droplets did not believe inserting "or use" was necessary for the negative limitation, the
7  Court's reasoning about what "use" means in this context is not controversial.

8  Shortly after the Court's April 30 Order, Yahoo's counsel suddenly demanded that Droplets
9  "drop the Yahoo accused products that 'use cookies.'"  Ex. 1; *see also* Ex. 2 ("cookie using
10 products").  In other words, Yahoo is not arguing that Droplets is claiming use of a cookie to perform
11 the claimed functionality of an "interactive link" (the subject of the April 30 Order); instead, it
12 interprets the April 30 Order to mean that an accused product cannot in any way use cookies, even if
13 not as part of the "interactive link."  *See* ECF No. 757 at 3 (suggesting that Yahoo Mail cannot infringe
14 because it is a "cookied experience").  Droplets did not understand the Court's Order to substantively
15 change the scope of the claim construction, and so it notified Yahoo that it intended to file a motion
16 for clarification.  Before Droplets could file its motion for clarification, however, on May 11, 2021,
17 Yahoo sought leave to file a summary judgment of non-infringement based on the Court's April 30
18 ruling, ECF No. 757.

19 This sequence of events illustrates that Defendants were not actually requesting to "confirm"
20 their understanding of the claim construction, but rather to materially alter the claim construction
21 under the guise of mere "confirmation."  If all the Court did was "confirm" Yahoo's previous
22 understanding, then Yahoo would have filed a summary judgment motion (or sought leave to do so)
23 by the January 20, 2021 deadline.  As described below, the Court's analysis of the issues in its April
24 30 Order does, in fact, confirm previous understandings of the Court's claim construction.  But that
25 interpretation is not what Yahoo now requests – its current interpretation has little to do with the
26 actual analysis of the April 30 Order.

27 **DISCUSSION**

28 The parties have a live dispute as to interpretation of the negative limitation in the definition

of "interactive link." Droplets seeks an interpretation reflecting the Court's reasoning and ruling – namely, that an interactive link cannot store previous state information on the client computer, from which that state is restored.[3] Yahoo simply ignores the Court's detailed analysis, instead seeking to capitalize on an expansive reading of the word "use" to interpret the April 30 Order in a way Droplets does not believe was intended by the Court.

The Court has the latitude to resolve questions of claim scope, particularly when the course of litigation brings a dispute into focus. ECF No. 749 at 3-4. This dispute just arose out of the April 30 Order's modified construction of "interactive link," subsequent correspondence, and Yahoo's motion for leave to file summary judgment based on that order, ECF No. 757. *See GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1310 (Fed. Cir. 2014) (the parties' dispute has "evolve[d] to a point" where additional clarification or construction is necessary). The instant dispute regarding the contours of permissible cookie and URL use (and the other aspects of the negative limitation) is a fundamental disagreement regarding the scope the claims and presenting these claim-scope arguments to the jury would be inappropriate. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996).

**I.   The April 30 Order Held That The Operating State Cannot Be Restored From A Locally Stored Cookie.**

The Court's April 30 Order analyzed two issues presented by Defendants:

> **First, Defendants seek to clarify that Droplets may not argue that an interactive link "uses" a cookie (even if it is not a cookie itself).** ECF No. 593 at 8.  Second, Defendants seek to confirm the interpretation of "restoring previous operating states". . . .

ECF No. 749 at 2-3 (emphasis added). The bolded portion is at issue now – specifically, what "uses" means. The Court explained in considerable detail what it understood "uses" to mean in the context of cookies. It framed the dispute as follows: "The parties dispute whether an interactive link can

---

[3] Although the Court's construction includes the added limitation that state is restored for "a particular user," it is not at issue in this motion for clarification. As Defendants conceded in the Motion To Confirm Claim Construction, Droplets' expert provided an opinion regarding this limitation. *See* Dkt. 664 at 15.

1  'use' a cookie in performing the claimed functionality." *Id.* at 6. The claimed functionality at issue in this portion of the April 30 Order is storing a previous operating state and retrieving that stored information.

Next, the Court looked at the specification language from which the SDNY court concluded that an "interactive link" cannot "be" a cookie. *Id.* at 6-7. That section describes the then-existing state of the art, which included cookies. *Id.* It then describes the need for an interactive link that, *inter alia*, retrieved information stored at remote locations across the network – something that did not exist in the prior art. *Id.*

The crux of the Court's analysis takes place after the block quote of the specification, where the Court analyzed the meaning and import of the specification's language. The Court reasoned that the specification's disclaimer by its terms "extends to interactive links that use a cookie." *Id.* at 7. The Court then went on to explain what it meant by "use" – namely, cookies used by the computer code to perform the claimed functions, which in this instance meant storing a previous operating state and retrieving that stored information. *Id.* As the Court made clear, the specification "**distinguishes cookies as 'conventional methodology' that stores previous state information on the client computer, while the claimed invention stores it at the server, thereby allowing the state to be re-presented on another computer**." *Id.* at 7-8 n. 6 (emphasis added).

The Court went on to confirm its interpretation within the context of the SDNY court's findings, from which it found support for reading "be" and "use" (as described above) interchangeably. *Id.* at 8. It noted, for example, that "cookies" were not computer code, so the negative limitation further narrowed the scope of the limitation to exclude use of cookies by the interactive link, *i.e.*, the interactive link cannot retrieve a locally stored operating state from a cookie.

This ruling in and of itself is consistent with the Court's reading of the patent, its own previous rulings, the SDNY ruling, and in fact how the parties have proceeded thus far in the case. Indeed, in its motion to confirm, even Yahoo characterized the negative limitation as precluding "use" of shortcuts, URLs, bookmarks, cookies, and hyperlinks "as part of the state restoration function of the interactive link." *See* ECF No. 593 at 8.

The problem is that Yahoo's new interpretation takes the language of the modified

construction and applies it far afield of the reasoning underlying it.[4]  The Court's construction did not exclude *all uses* of cookies because the Court did not have occasion to consider that question. Claim 1 of the '745 patent is an open-ended, "comprising" claim.  In patent-law terms, "comprising" "is the standard transition term used to make clear that the claim does not preclude the presence of components or steps that are in addition to, though not inconsistent with, those recited in the limitations that follow."  *Amgen Inc. v. Amneal Pharms. LLC*, 945 F.3d 1368, 1378–79 (Fed. Cir. 2020) (first citing *Wis. Alumni Rsch. Found. v. Apple, Inc.*, 905 F.3d 1341, 1348 n.8 (Fed. Cir. 2018); then citing *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1358 (Fed. Cir. 2016)).  Only the "interactive link" limitation is limited to exclude restoring state from cookies storing state information locally.  In other words, restoring an operating state from a locally stored cookie would be inconsistent with restoring it from a remotely-stored location, and therefore it makes sense to exclude restoring an operating state from a locally stored cookie.  The negative limitation does not reach beyond the "interactive link" limitation, however.  Contrary to Yahoo's apparent new interpretation, cookies can otherwise be used in the invention because the claims are open-ended.

Yahoo would submit that the interactive link's use of a cookie for any reason takes it outside of the scope of the claims, even if that use is not in any way related to restoring locally-stored state information.  As discussed above, that is not how Droplets understands the April 30 Order.  The Court's reasoning indicates that what it meant by "use" of a cookie is use of a cookie to restore a locally stored operating state.  It did not forbid all uses of cookies if such uses are not part of the "interactive link" or if the cookie is not used in restoring a locally stored state.

Indeed, in its motion to "confirm" claim construction, Yahoo's position – that the Court adopted – was that cookies could not be used "as part of the state restoration function of the interactive link."  ECF No. 593 at 8.  Yahoo asked this Court to adopt its view that state could not be restored from a cookie, which this Court agreed with, based on its careful parsing of the relevant specification language.  *See* ECF No. 749 at 7-8 n. 6 ("The disclaimer is further confirmed at column 25, lines 55-

---

[4] To date, Nordstrom has not indicated that it reads the Court's construction so broadly.  In any event, any clarification would apply to all Defendants.

65, which distinguishes cookies as 'conventional methodology' that stores previous state information on the client computer, while the claimed invention stores it at the server, thereby allowing the state to be re-presented on another computer.'"). ████████████

████████████████████████████████████████

████████████████████████ ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████ This is not what Droplets understands the Court to mean in its analysis, and it finds no support in the patent, the prosecution history, or the SDNY decision.

## II. Reading The Court's Construction To Preclude All Use Of The Negative Limitation Items Would Violate Basic Claim Construction Principles

Defendants moved to "confirm" two aspects of the Court's prior construction: 1) how cookies may not be used; and 2) that the interactive link must include facilities for restoring a particular user's previous operating states. ECF No. 749 at 2-3. There was no mention or analysis of the other elements of the negative limitation – *i.e.*, bookmarks, shortcuts, hyperlinks, or Internet addresses (URLs) – or that Defendants had presented arguments on these other elements. As discussed above, the Court carefully walked through the disclaimer regarding the "use" of cookies and made clear what it meant by "use": that the operating state may not be restored from a locally stored cookie. Droplets understood from the Court's reasoning that what was intended was that the operating state cannot be restored from locally stored state information – be that information in a cookie, URL, or otherwise. ECF No. 749 at 7-8 n.6 (explaining that the specification "distinguishes cookies as 'conventional methodology' that restores previous state information on the client computer, while the claimed

---

[5] There is an aspect of a Nordstrom product that could be affected by the Court's ruling as to cookie, but that is being dropped and, in any event, is not associated with any damages.

invention stores it at the server"). Reading "use" more broadly – as Yahoo suggests – would result in an internally inconsistent, nonsensical construction.

*First*, such a reading results in a construction of "interactive link" that is internally inconsistent. As construed, an interactive link must meet two requirements: (1) it must be "computer code" that "retrieves and presents applications and/or information . . . across the network," and (2) it must "include[] facilities for restoring a particular user's previous operating states," where the "interactive link cannot be or use a bookmark, cookie, shortcut, hyperlink, or Internet address (URL)." ECF No. 749 at 10. If Yahoo's reading is correct and the Court's construction excludes *any use* of the items in the negative limitation – specifically, URLs – the interactive link is disallowed from operating on the Internet. This is untenable – the construction cannot require communication "across the network" while simultaneously forbidding use of that same network. The Internet relies on URLs as a foundational building blocks, and it is simply impossible to have a distributed networked application without a network. Taken to its logical conclusion, Yahoo's reading of the claims would mean that the inventors developed a way to deliver interactive links for presenting applications over the Internet that could not use the Internet. The inventors could not have sought to claim Internet technology that was prohibited from running on networks, and such a reading of the claims violates basic claim construction principles. *See, e.g., Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1347 (Fed. Cir. 2020) ("[C]laim construction requires that we 'consider the specification as a whole, and read [] all portions of the written description, if possible, in a manner that renders the patent internally consistent.'" (quoting *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379-80 (Fed. Cir. 2001))).

*Second*, Yahoo's reading of the claims to preclude *any use* of URLs would render each and every embodiment in the specification outside of the claim scope because every embodiment operates on a network. *See, e.g.*, '745 patent 4:43-47 (explaining that "in accordance with embodiments of this invention" interactive links retrieve resources in a "network-configured computer processing system"); 5:56-60 ("In a preferred embodiment, the network-configured computer processing system includes an Internet connection . . . ."). This too flouts basic claim construction principles. *See, e.g., GE Lighting Sols.*, 750 F.3d at 1311 ("We normally do not construe claims in a manner that would

Case No. 12-cv-03733-JST  9  Droplets' Motion To Clarify Claim Construction

exclude the preferred embodiment . . . ." (citing *MBO Labs, Inc. v. Becton Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007))); *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1379 (Fed. Cir. 2014) ("A construction that would exclude the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996))). Not only would Yahoo's interpretation exclude the preferred embodiment, but it would also exclude all embodiments. *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1368 (Fed. Cir. 2005) ("The fact that the construction adopted by the district court and advocated by Masimo would have the effect of placing *all the embodiments* of the invention outside the scope of the claims is powerful evidence that the court's construction is incorrect." (emphasis added)).

The practical effect of Yahoo's construction on URLs highlights the impossibility of Yahoo's reading. The appropriate clarification would be that an "interactive link" cannot "be" a bookmark, cookie, shortcut, hyperlink or Internet address (URL) and cannot use these things to restore locally stored operating states.[6] That clarification reflects how Droplets understands the April 30 Order – *i.e.*, that an interactive link cannot store previous state information on the client computer, from which that state is restored.

### III. The SDNY Court Did Not Decide The Interpretation Now Presented By Yahoo.

The SDNY court's decision does not support Yahoo's new interpretation. The SDNY court never considered whether the claims preclude any use of a cookie or the Internet even if not part of the "interactive link" and not used to restored locally stored operating state. In its Order, the Court emphasized that preclusion applies to "'the identity of the *issues* that were litigated' – not the identity of language." ECF No. 749 at 6 (quoting *Ohio Willow Wood Co. v. Alps, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). The record in SDNY confirms and is consistent with Droplets' interpretation of this Court's April 30 Order: The SDNY court's rulings indicate that cookies cannot be used to restore locally stored operating state. To understand the issues actually litigated in SDNY, the full context of what was argued before and decided by that court is required.

---

[6] While shortcuts, bookmarks, and hyperlinks present different, though related issues, there is no reason to treat them differently.

A. Proceedings In The Southern District of New York

Judge McMahon heard argument regarding the "interactive link" limitation during an initial claim construction phase. The court adopted a "core" definition of "interactive link" as "code that, when selected by an end user, meets two separate requirements: (1) It retrieves and present[s] applications and/or information stored at remote locations across the network; and (2) It includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer. Ex. 4 (First Claim Construction) at 11-12. The SDNY Defendants proposed a second sentence – a "negative limitation": "Based on Droplets' disclaimer, an interactive link cannot be a bookmark, cookie, shortcut, hyperlink, or Internet address (URL)." *Id.* at 12. In support, the SDNY Defendants argued that "Droplets acknowledged during patent prosecution that such items were prior art and specifically disclaimed that they could be the 'interactive link' as described in the patent." *Id*. Judge McMahon agreed, finding statements regarding "URLs and Internet shortcuts" to be "clear disclaimers." *Id.*

In opposing the negative limitation, Droplets argued that it was "not seeking to recapture disclaimed claim scope because the plain text URL links, hyperlinks, bookmarks, and cookies that existed at the time of the invention did not have 'facilities for restoring previous operating states of the application.'" *Id.* at 12. The court, having "absolutely no way of knowing whether or not that [was] true," asked the parties to submit extrinsic evidence on that limited issue. *Id.* This was the issue before the court: Droplets' theory *in that case* that disclaimer extended only to URLs, hyperlinks, bookmarks, and cookies as they existed in 1999, which could neither store nor restore state.

Droplets offered the testimony of Dr. David Martin to argue that present-day (then 2013) bookmarks, shortcuts, hyperlinks, and URLs could "'include facilities for restoring operating states of the application' when used by applications capable of deciphering them."[7] Ex. 5 (Droplets' Supp. Claim Construction Statement) at 4. Dr. Martin opined that contemporary URLs, for example, could store state information in the form of a fragment identifier, while URLs in 1999 could not. *Id.* at 5-

---

[7] To be clear, this is what Droplets argued at that time, not what it is arguing in connection with the present dispute.

9. Thus, the issue actually litigated in SDNY was whether the negative limitation items themselves could store and restore state, not whether the interactive link could "use" the items for any other purpose.

In a short "Supplemental Markman Ruling," the court explained that "a serious dispute [existed] between plaintiff and defendants about what functions a person skilled in the art would have thought these technologies could perform in 1999" and thus set an evidentiary hearing at which the experts would testify on "what the 'disclaimed' technologies were or were not capable of in 1999." Ex. 9 (Supp. Markman) at 1.  At the hearing, Defendants' expert, Dr. Shamos, testified about the definitions of the negative limitation terms and explained that a change in the function of those items would "cause a huge amount of critical Internet software to be obsoleted." Ex. 6 (SDNY Hearing Tr.) at 92:2-10.

The court credited Dr. Shamos's testimony in a "Second Markman Decision."  *See* Ex. 7 (Second Markman Decision) at 2.  In the court's view, since 1999, "clever people ha[d] figured out, and continue to figure out, new and creative ways in which to use URLs, hyperlinks, and bookmarks," but the "definition or function of these facilities" did not "change[] over the intervening years." *Id.* at 2.  While "[t]here may have been changes in the way these facilities [were] employed, or in their capabilities," the court found that those changes did not add or detract from their nature as URLs, shortcuts, bookmarks, cookies, or hyperlinks. *Id.*  Accepting, "because both experts agree[d]," that URLs, cookies, and bookmarks could not do certain things in 1999 than they could do today, the court found disclaimer nonetheless based on "broad disclaimers" during reexamination. *Id.* at 4-5. Specifically, the court pointed to statements in the prosecution history that shortcuts, URLs, and bookmarks were different from and could not perform the functions of the interactive link as claimed. With respect to cookies in particular, the court further found that "any concept that a cookie could be the interactive link claimed in the '745 patent was swept away by the language of the original patent itself, in which cookies were expressly distinguished from the claimed invention." *Id.* at 6.  Again, the SDNY court considered and resolved whether the negative limitation items had new functions in 2013 – that function being the ability to store and restore state – not whether they could be used at all, for other purposes, in the claimed invention.

1    The SDNY Defendants then moved for summary judgment, and, while the negative limitation was not squarely at issue in that motion, in their briefing, the SDNY Defendants argued that "[t]he interactive link [was] also different from cookies because cookies expire and only store information on a computer where the first operating state was first created." Ex. 8 (SDNY Defendants Motion for Summary Judgment) at 16.

### B. This Court's April 30 Order

The SDNY Court's decision is perfectly consistent with how Droplets understands the Court's April 30 Order but does not support Defendants' new, expansive interpretation. This Court's analysis of the SDNY ruling is consistent with Droplets' reading of this Court's April 30 Order.

*First,* this Court expressly cited two statements the SDNY court relied on from the prosecution history. The first statement provides that "[a]n internet shortcut is *used* by the operating system to launch a browser to retrieve resources that reside on the Internet;" while the second explains that "[m]anual address input, bookmarks, and special browser icons are all browser elements that inform the browser program to locate certain items." ECF No. 748 at 8 (citing ECF No. 593-4 at 6) (emphasis added). Neither of these statements refer to cookies. Regardless, these statements are consistent with a construction that cookies and URLs cannot be used to store state information. These statements explain only that URLs, manual address inputs, bookmarks, and special browser icons provide nothing more than location information, so these items – by definition – could not be used to store state.

*Second*, the Court cited that "Droplets' own briefing in the SDNY litigation referred to "using" URLs, bookmarks, shortcuts, hyperlinks, and cookies. In the briefing, Droplets did indeed take the position that the disclosure in the patent referred to bookmarks, cookies, shortcuts, hyperlinks, and Internet addresses "as prior art in the pre-1999 context," and "that [did] not preclude their use in meeting limitations, terms, and claims of the '745 patent." Ex. 5 at 17. At that time, Droplets argued that it could not have disclaimed bookmarks, shortcuts, hyperlinks, and URLs as they existed in 2013 because no such capabilities existed at the time of the invention. Droplets sought to carve out from its disclaimer today's bookmarks, shortcuts, hyperlinks, and URLs because the

1  contemporary versions of these items "can 'include facilities for restoring previous operating states
2  of the application,' when used by applications capable of deciphering them." *Id.* at 9 ("Within those
3  web technology discussions, Dr. Martin did not teach his students (nor did Dr. Martin know) to use
4  bookmarks, shortcuts, hyperlinks, or URLs to *store state information* for applications run in web
5  browsers." (emphasis added)).[8]  In this case, however, Droplets advances no theory that cookies or
6  URLs store state information or themselves include facilities for restoring state.

7         The debate about "use" in SDNY was fundamentally different than the instant dispute: It was
8  about whether Droplets' disclaimer applied to new uses of old technology – specifically, whether old
9  technology was able to store state information and could itself include facilities for restoring previous
10 operating states.  Thus, Droplets' statements about "use" in the record are simply inapposite to the
11 present dispute.  Nothing in the SDNY argument or opinion is inconsistent with *this* Court's finding
12 that the specification disparages and thus disclaims "restor[ing] 'information that was previously
13 entered and stored in a cookie.'" ECF No. 749 at 7.

14        *Third*, this Court relied on the fact that the SDNY "core" construction already excluded
15 cookies so the negative limitation "presumably further narrowed the scope of the limitation to exclude
16 use of cookies by the interactive link." ECF No. 749 at 8.  This fact likewise supports Droplets'
17 understanding of the Court's construction.  As this Court recognized, a cookie is not computer code,
18 so the SDNY's "core" construction already prohibited the interactive link "being" a cookie.  The
19 Court's construction narrows the scope of what can be part of the interactive link further – explaining
20 that the interactive link cannot use a cookie *to restore a locally stored operating state.*

## CONCLUSION

Accordingly, Droplets respectfully requests that the Court clarify the April 30 Order, making clear that "interactive link" cannot be a bookmark, cookie, shortcut, hyperlink, or Internet address (URL) and cannot restore a locally stored operating state from the same, as follows:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) include facilities for restoring previous operating states of the application as the application is re-presented at a user's

---

[8] Again, this is not the argument Droplets is currently making.

computer.  An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL) and cannot use a bookmark, cookie, shortcut, hyperlink, or Internet address (URL) to restore locally stored operating states.

Dated: May 17, 2021  /s/ Courtland L. Reichman
Courtland L. Reichman

Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
Michael Matulewicz-Crowley (admitted *pro hac vice*)
  mmatulewicz-crowley@reichmanjorgensen.com
Michael Marvin (admitted *pro hac vice*)
  mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant *Droplets, Inc.*