1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12

| | |
|---|---|
| DROPLETS, INC., <br><br>          Plaintiff, <br><br>     v. <br><br>YAHOO! INC., <br><br>          Defendant. | Case No. 12-cv-03733-JST <br><br>**ORDER CLARIFYING CLAIM CONSTRUCTION AND DENYING YAHOO! INC.'S AND OATH INC. / OATH HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT** <br><br>Re: ECF Nos. 760, 769 |

13

Before the Court are Plaintiff Droplets, Inc.'s motion to clarify claim construction and

14

Defendant Yahoo! Inc's and Intervenor Oath Inc. and Oath Holdings, Inc.'s motion for summary

15

judgment.  ECF Nos. 760, 769.  The Court will clarify the claim construction and deny the

16

summary judgment motion.

17

I.      **BACKGROUND**

18

In this patent infringement action, Droplets accuses Yahoo of infringing U.S. Patent No.

19

6,687,745 (the "'745 Patent").[1]  Claim 1, which is illustrative, recites:

20
21

In a network configured computer processing system having a plurality of client computers and a plurality of host computers, *a method for delivering interactive links for presenting applications and information from remote sources on the network*, the method comprising:

22
23
24
25

retrieving, in response to a request of a client computer, over a first communication connection first information having computer program code embedded therein and executing the embedded computer program code for establishing a second communication connection to a second host computer;

26
27
28

---

[1] The background of this case has been extensively described in prior orders, and the Court here summarizes only strictly relevant facts.  *See* ECF Nos. 792 (explaining background of patent and invention), 749 (SDNY proceedings), No. 419 (role of intervening parties).

United States District Court <br> Northern District of California

1    sending second information relating to the operating environment of the client
     computer, from the client computer to the second host computer;

2

3    retrieving, over the second communication connection, third information including
     presentation information for presenting an application and fourth information, the
     presentation information being based on the second information;

4

5    presenting, at the client computer, the application and the fourth information based
     upon the presentational information; and

6

7    storing, on the client computer, an interactive link for selectively re-establishing the
     second communication connection to the second host computer for retrieving the
     third information and presenting the application and the fourth information.

8

9    ECF No. 1-1 ("'745 Patent") at 29:65-30:25.

10        Each asserted claim thus requires an "interactive link," which the parties agree forms the

11   heart of the invention.  The parties sought to construe the term during claim construction, and the

12   Court gave preclusive effect to the construction adopted in *Droplets, Inc. v. E\*Trade Financial*

13   *Corp.*, No. 1:12-cv-02326 (S.D.N.Y. May 13, 2011) ("*E\*Trade*") under the doctrine of collateral

14   estoppel.  ECF Nos. 412, 429.  Thus, the Court construed "interactive link" as:

15

16        computer code that (1) retrieves and presents applications and/or
          information stored at remote locations across the network when selected
17        by an end user, and (2) includes facilities for restoring previous operating
          states of the application as the application is re-presented at a user's
18        computer. An interactive link cannot be a bookmark, cookie, shortcut,
          hyperlink or Internet address (URL).

19   *Id.*

20        The parties continued to have differing interpretations of the term, and Yahoo moved to

21   "confirm" two aspects of this construction.  ECF No. 593.  First, it sought to confirm that the

22   "previous operating state" must be a "*particular user's* previous operating state," based on the

23   *E\*Trade* interpretation adopted at summary judgment.  *Id.* at 21.  Second, it sought to clarify that

24   the interactive link cannot "use" a cookie, even if it is not itself a cookie.  *Id.* at 14.  The Court

25   agreed on both counts and modified the construction as follows:

26

27        computer code that (1) retrieves and presents applications and/or
          information stored at remote locations across the network when selected
          by an end user, and (2) includes facilities for restoring ***a particular user's***
28        previous operating states of the application as the application is re-

United States District Court
Northern District of California

2

1    presented at a user's computer. An interactive link cannot be *or use* a
      bookmark, cookie, shortcut, hyperlink or Internet address (URL).

2    ECF No. 749 at 10.

3         Yahoo now moves for summary judgment on each aspect of the modified construction. It

4    argues that the accused products (1) do not restore a "particular user's" previous operating state,

5    and (2) use cookies. ECF No. 769. Droplets moved to further clarify the claim construction in

6    light of the parties' disputes. ECF No. 760. The Court first addresses claim construction and then

7    the motion for summary judgment.

8    **II.      JURISDICTION**

9         This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

10   **III.     DROPLETS' MOTION TO CLARIFY CLAIM CONSTRUCTION**

11        Droplets seeks to clarify that the disclaimed "use" of cookies, URLs, etc. is limited to

12   "restoring locally stored operating states." ECF No. 760 at 2. In other words, Droplets argues that

13   the accused system may use these elements – which it claims are "foundational building blocks"

14   of the Internet – in ways that are unrelated the claimed invention. *Id*. at 13. Yahoo agrees that the

15   disclaimed use is limited to restoring previous operating states. ECF No. 770 at 15 ("To be clear,

16   Defendants' position is that cookies cannot be used by the alleged 'interactive link' to restore the

17   previous operating states of the application."). However, it argues that "new uses" of restoring

18   operating states via cookies (such as from non-local storage) are forbidden. *See id.*

19        Thus, clarification is appropriate to make clear that the interactive link "cannot use a

20   cookie to restore previous operating states." The question remains whether the operating states

21   must be "locally stored." The specification which formed the basis of the disclaimer that led to

22   collateral estoppel indicates that cookies store operating states locally. It states:

23            Cookies maintain tracking information *on the user's computer* that
24            may be referenced once the browser reloads the desired web page and
              invoke[s] the application included therein. Once the application is
              invoked, *information that was previously entered and stored in the*
25            *cookie* may be restored in the application.

26
27   '745 Patent at 2:55-60; *see* ECF No. 593-4 at 4 (*E*Trade* order finding disclaimer based on this

28   this passage). Other parts of the specification are even clearer that "conventional state tracking

United States District Court
Northern District of California

1  methodologies," such as cookies, "are limited in that *prior state information is generally stored on*

2  *the client computer* 20 that previously invoked the session." *Id.* at 25:55-61 (emphasis added).

3  The distinction makes sense because the claimed "interactive link" restores operating states from a

4  remote server, which makes them available even if the user moves to a different computer, a

5  purported advantage of the invention.[2] *See id.* at 25:24-27, 25:55-65.

6  However, notwithstanding the descriptions in the specification, a broader disclaimer is

7  appropriate.  First, the *E*Trade* court expressly found that "new uses" of the disclaimed elements

8  are forbidden.  Droplets had argued that even though URLs, shortcuts, and other elements were

9  disclaimed in the prosecution history, the meaning of those terms has changed and "it would have

10  been impossible for Droplets to disclaim" elements having capabilities that did not exist at the

11  time of prosecution.  ECF No. 593-4 at 2, 4.  The *E*Trade* court rejected this argument because

12  while "clever people have figured out . . . new and creative ways in which to use" those elements,

13  the "meaning and understanding of those terms has not changed."  *Id.*  Thus, the court found that

14  Droplets disclaimed URLs, cookies, bookmarks, and related elements from being the "interactive

15  link," regardless of whether they were used in novel ways.  *Id.* at 7.  Accordingly, as explained in

16  the claim construction confirmation order, collateral estoppel prevents the interactive link from

17  using cookies to perform the claimed functions.  ECF No. 749 at 6-7.

18  Second, even if the Court were inclined to reconsider the *E*Trade* decision, it would not

19  reach a different result.  "A specification may disclaim an embodiment by repeatedly disparaging

20  it."  *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1337-38 (Fed. Cir. 2019).  It may do

21  so even if the disparagement is based on specific characteristics.  For instance, in *Indivior*, the

22  _____

23  [2] The *E*Trade* court defined cookies based on extrinsic evidence as follows:

24  A cookie was and is a data file written to an internet user's hard drive
    containing information; its function is to allow a web site to track

25  information about a user, such as passwords, login information,
    preferences, shopping cart contents, etc.

26  ECF No. 593-4 at 3.  Yahoo claims that this definition encompasses storing user IDs locally to

27  retrieve operating states from a remote server.  ECF No. 770 at 14.  However, a more plausible
    interpretation is that the listed examples refer to information entered into a form and other website

28  modifications, consistent with the patent's examples of operating states.  '740 Patent at 3:47-60.

specification disparaged "conventional top air drying" methods for creating pharmaceutical films because they are "unable to provide uniform films." *Id*. at 1337.  Although uniformity could be achieved in other ways, the court found that "other factors may not substitute for controlled drying of a wet cast film to achieve uniformity" and held that top drying methods were disclaimed.  *Id*. at 1338.  Similarly, in *SightSound Technologies, LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015), the specification disparaged "records, tapes, and compact disks," which it described as the "three basic mediums (hardware units) of music," based on transferability and other factors.  *Id.* (citing U.S. Patent No. 5,191,673 at 1:17-20).  The PTO found that the statements did not raise to the level of disclaimer, and the Federal Circuit reversed:  claims "must be read in view of the specification," and the "disadvantages identified by the specification of records, tapes, and CDs amount to implied disclaimer of those three media."  *Id*.  Tellingly, the court did not consider whether the disclaimed media could be made without the listed disadvantages.

Here, the specification disparages cookies as a means for restoring operating states because they are (1) "generally time sensitive and may expire before a user attempts to re-navigate the site of interest" and (2) "only stored on the computer where the original transaction occurred" so that if a user "accesse[s] the site from another computer, the tracking information is not available."  '745 Patent at 3:52-65.  These statements and other disparagement in the specification indicate that the interactive link does not rely on cookies to restore previous operating states.  Thus, even if cookies could be made to not expire, follow the user to different computer, and retrieve operating states from remote servers, they could still not be used for the interactive link functions consistent with the specification.  Accordingly, the disclaimer extends to all uses of cookies to restore previous operating states, and the Court modifies the construction of "interactive link" as follows:

> computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring a particular user's previous operating states of the application as the application is re-presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL) *or use those elements to restore previous operating states*.

/ / /
/ / /

1    **IV.    YAHOO'S MOTION FOR SUMMARY JUDGMENT**

2         Yahoo moves for summary judgment on two grounds.  First, it claims that the accused

3    "search suggest" does not "restor[e] a particular user's previous operating state."  Second, it

4    argues that the remaining accused products use cookies to restore previous operating states.  ECF

5    No. 769 at 2.  The parties have submitted a motion, *id.*; opposition, ECF No. 775; reply, ECF No.

6    780; sur-reply, ECF No. 790, and sur-sur-reply, ECF No. 794.

7         **A.    Preliminary Issues**

8         The Court addresses two preliminary issues.  First, Droplets has submitted an expert

9    declaration from Dr. Schmidt in opposition to summary judgment.  ECF No. 775-2.  Yahoo argues

10   that the declaration cannot demonstrate a dispute of fact because it includes theories not found in

11   his expert report.  ECF No. 780 at 13-15.  The Court agrees.  An expert declaration is considered

12   on summary judgment "to the extent it is either explicitly contained in [a] previously provided

13   expert report or a reasonable synthesis and/or elaboration of the opinions contained in that report."

14   *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1010 (N.D. Cal.

15   2019) (simplified).  Anything less is outside the scope of the report and therefore not admissible.

16   *Id.* at 1002; *see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court

17   can only consider admissible evidence in ruling on a motion for summary judgment.").

18        Here, Dr. Schmidt's declaration provides opinions about (1) the meaning of the term

19   "operating state"; (2) three different ways in which search suggest customizes an operating state to

20   a particular user, including by re-displaying previous search suggestions, through a "backspace"

21   feature, and by changing search suggestions based on past searches; and (3) the use of cookies in

22   the accused products.  ECF No. 775-2 ¶¶ 4-5, 21-32, 33.  Although some of these opinion include

23   citations to an expert report, many are plainly new.  For instance, much of the second opinion cites

24   documents without a citation to an expert report or deposition.  *Id.* ¶ 28.  Thus, the Court

25   disregards the new theories provided in the declaration.

26        Second, the parties dispute the nomenclature of certain products.  Droplets claims that

27   search suggest includes two different functionalities:  search history or "Type A Suggestions,"

28   which display "the terms that the user has previously searched," and search suggest or "Type B

1    Suggestions," which display "new suggestions that have been influenced by the previous

2    searches." ECF No. 790 at 7-8. Yahoo agrees that "'Search Suggest' and 'Search History' are

3    distinct functionalities." ECF No. 780 at 6-7. However, it claims that Droplets improperly uses

4    search history documents to describe search suggest functions. *Id.* Because the parties agree that

5    these are different functions, the Court examines the evidence in light of the agreed-on distinction.

6            **B.       Restoring Previous Operating States**

7            Yahoo claims that search suggest does not restore a "particular user's" operating state, as

8    required by the claim construction of "interactive link," because "each time the user changes the

9    letters in the search bar, a new set of suggestions will appear," which are "exactly the same for all

10   similarly situated users" and have "nothing to do with what the particular user has done in the

11   past." ECF No. 769 at 13. Droplets responds that there is no "customization" requirement in the

12   claims and that operating states are tailored to a particular user based on her past keystrokes, prior

13   searches, location, and device type. ECF No. 775 at 4.

14           As explained in the order denying Nordstrom's motion for summary judgment, the Court is

15   not convinced that Droplets' "past keystrokes" theory of restoring operating states fails as a matter

16   of law. *See* ECF No. 792 at 11. As Dr. Schmidt explains, if a user searches for the word "test" on

17   Yahoo Search and then deletes the letter "t," the system will restore a previous operating state of

18   search suggestions for the term "tes." ECF No. 775-4 ¶ 25. A reasonable jury could find that this

19   is tailored to a particular user, i.e., it's her own previous search. Yahoo nevertheless argues that

20   this is insufficient because the suggestions are "deterministic" such that "every similarly situated

21   user will get the same result . . . while the system is utterly oblivious to what any given user

22   entered or selected the last time." ECF No. 769 at 15. But the "Stock Watcher" embodiment in

23   the '745 patent are also deterministic: if two users select the same stocks, they will see the same

24   results.[3] '745 Patent at 25:28-55. Different users would not see different stock prices because the

25   _____

26   [3] Yahoo relies on the *E*Trade* summary judgment order, which found no infringement because the
     defendant's search suggestions were not "actively customize[d]" by the user" or "prior searches
27   conducted by the user." ECF No. 769-2 at 16. However, this case involves different products and
     Droplets makes arguments not apparently addressed in *E*Trade. See id.* Thus, the *E*Trade* order
28   is persuasive authority only, and Yahoo does not explain why the search suggestions in *this* case
     do not infringe as a matter of law.

United States District Court
Northern District of California

1    purpose is to provide objective stock information.  As with Nordstrom's motion, Yahoo has not

2    shown that any more customization is required.

3         Moreover, Droplets cites evidence that search suggestions in this instance depend partly on

4    the user's past searches.  Yahoo's 30(b)(6) witness for search suggest, Sarah Forth-Smith, testified

5    that a user's keystrokes are "temporarily cached" in the search suggest database and "used as an

6    input to make sure [Yahoo is] providing the most relevant search suggestions."  ECF No. 775-11

7    at 105:2-12.  For instance, "if the user has hit backspace," the system "would take the piece of

8    information into account when ranking the . . . search suggestion."  *Id*. at 105:17-21.  Although

9    she testified that search suggest is generally "stateless," the testimony indicates "special handling"

10   where backspace "is used as a signal to surface the most relevant results or suggestions."  *Id*. at

11   110:22-11:17, 147:5-15; *see also* ECF No. 775-22 at 28 (describing "backspace rewrite").  Thus, a

12   reasonable jury could find that "past keystroke" processing in search suggest satisfies the claim

13   limitation even under Yahoo's interpretation.

14        As for Droplets' other theories, it is not clear whether Droplets will be able to assert them

15   at trial.  Droplets cites Yahoo documents that refer to search suggest using previous search queries

16   to provide a "contextual signal to get personalized/contextual suggestions."  ECF No. 775-18 at

17   26.  Droplets also cites Yahoo emails stating that "we leverage a user's personal search history to

18   influence the search suggestions they get exposed to – both influencing in-session suggestions,

19   and determining the suggestions a user is exposed to when he moves his cursor to an empty search

20   box."  ECF No. 775-22 at 3; *cf*. ECF No. 775-25 at 5.[4]  However, Dr. Schmidt apparently did not

21   cite these documents in his report, and Yahoo claims that the theory was not disclosed in Droplets'

22   infringement contentions.  Although Dr. Schmidt referenced tailoring search suggestions based on

23   location and device type, he did not provide this opinion in relation to restoring operating states.

24   *E.g.*, ECF No. 776-7 ¶ 81.  Accordingly, at this stage, the Court denies summary judgment based

25

26   _____

27   [4] Yahoo claims that that these emails refer to search history, not search suggest.  However, the
     heading of the first email is "Search Assist," and it expressly discusses the impact of a search
     history changes on search assist.  *See* ECF No. 775-22 at 3 ("The net impact [from search history
28   changes] to Search Assist would be whether or not a user's search history can used in determining
     personalized suggestions.").  Drawing all inferences in favor of Droplets, this is search suggest.

United States District Court
Northern District of California

1    on the "past keystroke" theory only.

2         For these reasons, summary judgment on this issue is denied.

3    **C.     Use of Cookies**

4         Yahoo also moves for summary judgment based on the use of cookies to restore operating

5    states.  The relevant operation in the accused products is not disputed:  the interactive link restores

6    previous operating states from a remote server using "B cookies" that store user IDs necessary to

7    retrieve user information.[5]  ECF No. 769 at 12-12; ECF No. 777 at 22-23.  For instance, search

8    history uses login information for users who are logged in and B cookies for those who are not to

9    track users across devices and restore their information from a server.  ECF No. 775-11 at 138:22-

10   140:26; ECF No. 769-5 at 21-22.  Yahoo claims that this constitutes restoring previous operating

11   states using a cookie, as prohibited by the claim construction for "interactive link."

12        Although Yahoo's construction of the claim term is correct, the Court is not convinced that

13   the peripheral use of cookies in this instance defeats infringement.  The specification of the '745

14   Patent describes "persistent state maintenance" as follows:

16             In accordance with the present invention, the application
             server **40** maintains state information **48** regarding current operating
17             states of each droplet-enabled application in the data store **640** on the
             application server **40** (FIGS. **1** and **8**).  The state information **48** is
18             kept after the application is terminated.  The state
             information **48** includes a user identification field such that operating
19             state information **48** for a particular user is retrievable from the data
             store **640**.  It should be appreciated that the present invention
20             contemplates a sign-on procedure or similar mechanism wherein a
             user registers prior to beginning a session.  Accordingly, state
21             information corresponding to a operating session of the user may be
             identified by a user id or the like.  As registration procedures are
22             generally known, further details of the procedures are not further
             discussed herein.  Rather, it should be appreciated that such a
             registration procedure is within the scope of the present invention.

24   '745 Patent at 24:61-25:10.

25        As the parties agree, the recited state maintenance is similar to that in the accused products.

26   As in the asserted patent, the products store and retrieve operating states from a remote server.  As

28   _____
     [5] The parties agree that search suggest does not use cookies; this aspect of the motion applies only
     to the remaining products of search history, Mail, My Yahoo, and Maps.  ECF No. 769 at 12.

United States District Court
Northern District of California

in the asserted patent, they use login information where available to identify the user. The main difference between the products and the patent is that the products also use cookies to store user IDs. But the specification suggests that user identification methods (such as registration) are "generally known" and not central to the claimed invention. *See id.* It also does not indicate that these mechanisms for identifying users are part of restoring operating states. It is thus not clear that using cookies to store user IDs in order to identify users implicates this limitation.

Yahoo relies on evidence from *E\*Trade* proceedings to suggest that this use of cookies is disclaimed. First, Yahoo cites the *E\*Trade* summary judgment order that found "new uses" of URLs and other elements do not defeat disclaimer. *See* ECF No. 593-4 at 4. The *E\*Trade* court had defined cookies as follows:

> A cookie was and is a data file written to an internet user's hard drive containing information; its function is to allow a web site to track information about a user, such as passwords, login information, preferences, shopping cart contents, etc.

*Id.* at 3. Yahoo claims that this shows that storing user information ("login information") is a disclaimed use of cookies.[6] Second, it cites the expert declaration submitted on behalf of E\*Trade that references using cookies to store user IDs for tracking. ECF No. 769-16 ¶ 29. Third, Yahoo cites testimony that the named inventors of the '745 Patent did not invent using cookies to store identifying information, which was known at the time of the application. *See* ECF No. 769-12 at 74:11-75:20; ECF No. 769-15 at 155:21-157:2. Last, it cites inventor testimony stating that the invention did not use cookies. *See* ECF No. 769-13 at 189:3-8; ECF No. 769-14 at 164:24-165:3.

Although this presents a close question, the Court finds that a reasonable jury could find that using cookies to store user IDs does not implicate the disclaimer. As explained above, the parties agree that the disclaimer extends only to using cookies "to restore previous operating states" – not to all possible uses. ECF No. 770 at 15. The *E\*Trade* court did not find otherwise since it only considered use of cookies in relation to the claimed invention. As such, a reasonable

---

[6] Yahoo's interpretation of this definition is not convincing. "Login information" plausibly refers to information entered into a form, which is consistent with the other elements of the list and the example of operating states provided in the specification. *See* '745 Patent at 3:47-60. There is no mention of storing user IDs for background operations.

United States District Court
Northern District of California

1    jury could find that the use here does not constitute "restoring operating states" because it is only a

2    peripheral use of cookies to perform the equivalent function of obtaining user log-in.

3            Accordingly, summary judgment on this issue is denied.

4                                              **CONCLUSION**

5            For the foregoing reasons, the Court modifies the construction of "interactive link" as

6    follows:

7                      computer code that (1) retrieves and presents applications and/or
                       information stored at remote locations across the network when selected
                       by an end user, and (2) includes facilities for restoring a particular user's

8                      previous operating states of the application as the application is re-
                       presented at a user's computer. An interactive link cannot be a

9                      bookmark, cookie, shortcut, hyperlink or Internet address (URL) *or use
                       those elements to restore previous operating states*.

10

11           Yahoo's motion for summary judgment is denied.

12           **IT IS SO ORDERED.**

13    Dated:  July 27, 2021

14                                                    _____
                                                      JON S. TIGAR
15                                                    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28