Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
Michael  Matulewicz-Crowley  (admitted  *pro  hac vice*)
  mmatulewicz-crowley@reichmanjorgensen.com
Michael Marvin (admitted *pro hac vice*)
  mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant
*Droplets, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>YAHOO!, INC.,<br><br>       Defendant. | Case No. 12-cv-03733-JST<br><br>**PLAINTIFF DROPLETS, INC.'S OMNIBUS MOTIONS IN *LIMINE***<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED<br><br>HEARING:<br>Date:  August 13, 2021 (Pretrial Conference)<br>Time:  2:00 p.m,<br>Place:  Courtroom 6, 2nd Floor Oakland Courthouse<br>Judge:  Hon. Jon S. Tigar |
| OATH, INC., et al.,<br><br>       Intervenor-Plaintiffs,<br><br>       v.<br><br>DROPLETS, INC.,<br><br>       Intervenor-Defendant. | |
| DROPLETS, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>NORDSTROM, INC.,<br><br>       Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

I.      DROPLETS' MOTION IN *LIMINE* NO. 1: VERIZON LICENSE......................................1

        A.      FACTS AND PROCEDURAL HISTORY .................................................1

        B.      ARGUMENT ...................................................................................3

        C.      CONCLUSION.................................................................................4

II.     DROPLETS MOTION IN LIMINE NO. 2: YAHOO'S ARGUMENT THAT IT WAS PRACTICING THE PRIOR ART OR ITS OWN PATENTS .......................................5

III.    DROPLETS MOTION IN LIMINE NO. 3: REFERREMD TO DROPLETS AS A "TROLL," "PATENT TROLL," "NON-PRACTICING ENTITY," OR "PATENT ASSERTION ENTITY" ...................................................................................................8

        A.      ARGUMENT ...................................................................................8

                i.      Pejorative Mischaracterizations Of Droplets Are Irrelevant  To The Disputed Issues In This Case. ...................................................8

                ii.     Derogatory References To Droplets' Business Model  Are Prejudicial, Misleading, And Confusing. ...................................................8

        B.      CONCLUSION.................................................................................10

IV.     DROPLETS MOTION IN LIMINE NO. 4: CLAIMS OR CAUSES OF ACTION THAT HAVE BEEN DISMISSED OR DROPPED BY DROPLETS .................................11

        A.      ARGUMENT ...................................................................................11

                i.      References To Dropped Claims, Theories, Patents, And Causes Of Action Are Irrelevant. ...................................................11

                ii.     Such References Would Unduly Prejudice Droplets. .....................................12

        B.      CONCLUSION.................................................................................13

V.      DROPLETS MOTION IN *LIMINE* NO. 5: DROPLETS LITIGATION OTHER THAN THE INSTANT CASE, INCLUDING LITIGATION AGAINST OTHER PARTIES SUCH AS *DROPLETS, INC. V. E\*TRADE FINANCIAL CORP.*, No. 1:12-cv-02326 (S.D.N.Y. May 13, 2011) AND THE PRODUCTS IN THOSE CASES ...................................................14

        A.      ARGUMENT ...................................................................................14

                i.      Reference To Other Cases Will Confuse And Mislead The Jury. ...................14

                ii.     References To The *E\*Trade* Case Should Be Precluded................................15

                iii.    References To Other Droplets Cases Should Similarly Be Precluded. ...........19

iv.    Any Potential Relevance Of Other Droplets Litigation Is Outweighed
By Undue Prejudice And Jury Bias. ..................................................19

B.    CONCLUSION..........................................................................................22

VI.    DROPLETS MOTION IN *LIMINE* NO. 6: LICENSES THAT ARE NOT COMPARABLE
.................................................................................................................23

A.    FACTS.......................................................................................................24

B.    ARGUMENT..............................................................................................27

i.    Third-Party Yahoo Licenses Its Expert Finds Comparable ...........30

a.    The Cases Settled Early In Litigation, When Significant Uncertainty
Remained. ............................................................................................30

b.    The Prior Cases Concerned Different Patents That Enabled Different
Yahoo Features And Technologies....................................................32

ii.    Other Third-Party Yahoo Licenses Its Expert Disclaims ...............35

iii.    RPX License ..................................................................................37

a.    The License To Un-Sued RPX Members Was Negotiated Without Any
Threat Of Litigation Or Assertion Of Infringement. ....................38

b.    The Un-Sued RPX Members Did Not Gain Benefits From Licensing
The Droplets Patent Comparable To The Benefits Yahoo Obtained..............40

c.    Negotiating A Bulk Deal For ▓▓▓▓▓ Of RPX Members Is Not
Comparable To The One-On-One Structure Of A Hypothetical
Negotiation..........................................................................................41

C.    CONCLUSION..........................................................................................42

VII.    DROPLETS MOTION IN *LIMINE* NO. 7: PATENT MISUSE AND ANTITRUST,
INCLUDING ARGUMENT THAT DROPLETS IS MISUSING PATENTS OR VIOLATING
ANTITRUST LAWS ...............................................................................43

A.    ARGUMENT..............................................................................................43

B.    CONCLUSION..........................................................................................44

VIII.    DROPLETS MOTION IN *LIMINE* NO. 8: PATENT ELIGIBILITY OF THE ASSERTED
CLAIMS AND INDEFINITENESS OF CLAIMS 17 AND 50................................45

A.    ARGUMENT..............................................................................................45

i.    Eligibility .......................................................................................45

ii.    Indefiniteness ................................................................................47

IX.    DROPLETS MOTION IN *LIMINE* NO. 9: YAHOO'S ARGUMENTS REGARDING
FAILURE TO MARK PRODUCTS IN ACCORDANCE WITH 35 U.S.C. § 287 ..............50

A.     ARGUMENT .............................................................................................50

X.     DROPLETS MOTION IN *LIMINE* NO. 10: ASPECTS OF THE YAHOO SYSTEMS REMAINING IN THE CASE THAT WAS NOT PUBLICLY AVAILABLE, INCLUDING SERVER-SIDE CODE, TO SHOW OBVIOUSNESS .........................................................53

XI.    DROPLETS MOTION IN *LIMINE* NO. 11: RELATED PATENTS, THEIR PROSECUTION HISTORIES, AND THEIR POST-GRANT PROCEEDINGS, INCLUDING REFERENCE TO ANY BRIEFS FILED BY COUNSEL...................................................................................56

A.     BACKGROUND .......................................................................................56

B.     ARGUMENT .............................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acantha LLC v. DePuy Orthopaedics Inc.,*
  2018 WL 2431852 (E.D. Wis. May 30, 2018)..........................................................60

*Acceleron, LLC, v. Dell, Inc.,*
  2020 WL 10353408 (N.D. Ga. Aug. 27, 2020) ...............................................58, 59

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.,*
  501 F.3d 1307 (Fed. Cir. 2007)........................................................................16

*Actuate Corp. v. Aon Corp.,*
  2012 WL 2285187 (N.D. Cal. June 18, 2012) ...........................................14-15

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)........................................................................46

*Alice Corp. Pty. v. CLS Bank Int'l,*
  573 U.S. 208 (2014)..............................................................................45, 46

*Altair Logix LLC v. Asus Computer Int'l,*
  2019 WL 1117535 (N.D. Cal. Mar. 11, 2019)....................................................51

*American Technical Ceramics Corp., v. Presidio Components, Inc.,*
  2019 WL 2330855 (E.D.N.Y May 31, 2019) ....................................................59

*Apple, Inc. v. Samsung Elecs. Co.,*
  2012 WL 2571332 (N.D. Cal. June 30, 2012)............................................44, 48

*Apple, Inc. v. Samsung Elecs. Co.,*
  2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ...................................................35

*ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.,*
  908 F.3d 1267 (Fed. Cir. 2018)........................................................................17

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.,*
  876 F.3d 1350 (Fed. Cir. 2017)..................................................................50, 51

*BASF Corp. v. SNF Holding Co.,*
  955 F.3d 958 (Fed. Cir. 2020)....................................................................56, 58

*Berkheimer v. HP Inc.,*
  881 F.3d 1360 (Fed. Cir. 2018)........................................................................46

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.,*
  338 F.3d 1368 (Fed. Cir. 2003)........................................................................47

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .......................................................................46

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) .........................................................................46

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)........................................................................28

*Cordance Corp. v. Amazon.com, Inc.*,
  658 F.3d 1330 (Fed. Cir. 2011)..........................................................................5

*Datatreasury Corp. v. Wells Fargo & Co., et al.*,
  No. 2:06-cv-72, Dkt. No. 1982 (E.D. Tex. Feb. 26, 2010) ...................................16

*Deering Precision Instr., L.L.C. v. Vector Distrib. Sys., Inc.*,
  347 F.3d 1314 (Fed. Cir. 2003).............................................................18, 19, 20

*Digital Reg of Texas, LLC v. Adobe Sys, Inc.*,
  2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ..................................................9, 41

*Droplets, Inc. v. E*Trade Financial Corp.*,
  No. 1:12-cv-02326 (S.D.N.Y. May 13, 2011) ............................................... *passim*

*Ecolab, Inc. v. Paraclipse, Inc.*,
  285 F.3d 1362 (Fed. Cir. 2002)...........................................................................5

*Egbert v. Lippmann*,
  104 U.S. 333 (1881)..........................................................................................54

*Eko Brands, LLC v. Adrian Rivera Maynez Enters.*,
  946 F.3d 1367 (Fed. Cir. 2020)..........................................................................21

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..........................................................................46

*Enplas Display Device Corp., et al. v. Seoul Semiconductor Co., Ltd.*,
  No. 13-cv-05038 NC**,** Dkt. No. 384 (N.D. Cal. Feb. 29, 2016)..............................13

*Evans v. Jeff D.*,
  475 U.S. 717 (1986)..........................................................................................29

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  2015 WL 4129193 (N.D. Cal. July 8, 2015)..........................................................9

*Finjan, Inc. v. Cisco Sys. Inc.*,
  No. 17-cv-72, Dkt. No. 660 (N.D. Cal. June 5, 2020).........................................8, 9

*Finjan, Inc. v. Juniper Network, Inc.*,
  No. 17-05659 (N.D. Cal. Dec. 6, 2018)................................................................9

*Finjan, Inc. v. Sophos, Inc.*,
   2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) ...................................................... 9, 18, 59-60

*Freeny v. Fossil Grp., Inc.*,
   2019 WL 8688587 (E.D. Tex. July 24, 2019) ......................................................................51

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. 12-cv-03587-WHO**,** Dkt. No. 256 (N.D. Cal. Mar. 19, 2015)..........................12

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
   103 F.3d 978 (Fed. Cir. 1997)................................................................................12

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
   899 F. Supp. 2d 971 (S.D. Cal. 2012)..........................................................................5, 6

*Glob.-Tech. Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)................................................................................12

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
   2021 WL 1080688 (S.D. Cal. Mar. 18, 2021) ......................................................58

*Goodman v. Staples the Office Superstore, LLC*,
   644 F.3d 817 (9th Cir. 2011) ....................................................................50

*GPNE Corp. v. Apple, Inc.*,
   2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ......................................................36

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S.Ct. 1923 (2016)................................................................................12

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983)..................................................................28

*Henderson v. Peterson*,
   2011 WL 2838169 (N.D. Cal. July 15, 2011)..............................................14, 22

*HTC Corp., et al. v. Tech. Props. Ltd., et al.*,
   No. 5:08-cv-882, Dkt. No. 564 (N.D. Cal. Sept. 9, 2013) ........................................9

*Hynix Semiconductor Inc., et al. v. Rambus Inc.*,
   No. 00-20905, Dkt. No. 1220 (N.D. Cal. Feb. 10, 2008) ......................................16

*Intellectual Ventures II LLC v. Bitco Gen. Ins. Corp., et al.*,
   No. 6:18-cv-298, Dkt. No. 282 (E.D. Tex. Mar. 7, 2019) ......................................10

*Interdigital Commc'ns Inc. v. Nokia Corp.*,
   2014 WL 8104167 (D. Del. Sept. 19, 2014)......................................................60

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)..................................................................48

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)..................................................................28, 34

*Lockwood v. Am. Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997)..........................................................................54

*Lubby Holdings LLC v. Chung*,
2019 WL 8105375 (C.D. Cal. July 12, 2019) ..................................................52

*Lund Indus. v. Go Indus.*,
938 F.2d 1273 (Fed. Cir. 1991)..........................................................................18

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012) ..............................................................................................45

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
2019 U.S. Dist. LEXIS 120182 (N.D. Cal., July 18, 2019) ...........................58

*Nobell, Inc. v. Sharper Image Corp.*,
950 F.2d 732 (Fed. Cir. 1991)....................................................................... 17-18

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) ...........................................................................52

*In re Omeprazole Patent Litig.*,
536 F.3d 1361 (Fed. Cir. 2008) ..........................................................................5

*Open Text S.A. v. Box, Inc.*,
2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ....................................................36

*Open Text S.A. v. Box, Inc.*,
2015 WL 393858 (N.D. Cal. Jan. 29, 2015) ....................................................40

*Opticurrent, LLC v. Power Integrations, Inc.*,
2018 WL 6727826 (N.D. Cal. Dec. 21, 2018) ...................................................5

*Packet Intel. LLC v. NetScout Sys., Inc.*,
965 F.3d 1299 (Fed. Cir. 2020)..........................................................................46

*Parallel Networks Licensing, LLC v. International Business Machines Corporation*,
2017 WL 1045912 (D. Del. Feb. 22, 2017) ......................................................54

*Pavo Sols. LLC v. Kingston Tech. Co.*, Inc,
2019 WL 4390573 (C.D. Cal. June 26, 2019) ..................................................51

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998)............................................................................47

*PersonalWeb Techs. LLC, et al. v. Int'l Business Machines Corp.*,
No. 16-cv-01266-EJD, Dkt. No. 345 (N.D. Cal. July 26, 2017) ................11, 12, 13

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
  2021 WL 97544 (N.D. Cal. Jan. 12, 2021) ................................................27, 29, 35

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017) ................................................................10, 28

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
  673 F.3d 1240 (9th Cir. 2012) ................................................................50

*Radware, Ltd., et al. v. F5 Networks, Inc.*,
  2016 WL 590121 (N.D. Cal. Feb. 13, 2016) ........................................12, 58, 59

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................34

*Roberts v. Cooper*,
  61 U.S. 467, 15 L. Ed. 969 (1857) ..........................................................48

*Sanitary Refrigerator Co. v. Winters*,
  280 U.S. 30 (1929) ..................................................................................7

*Seals v. Mitchell*,
  2011 WL 1399245 (N.D. Cal. Apr. 13, 2011) ........................................14

*Sentius Int'l, LLC v. Microsoft Corp.*,
  2015 WL 451950 (N.D. Cal. Jan. 27, 2015) ..........................................29

*SPEX Techs. v. Apricorn, Inc*,
  2020 WL 1289546 (C.D. Cal. Jan. 21, 2020) ....................................51, 52, 59

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) ..............................................................28

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
  279 F.3d 1357 (Fed. Cir. 2002) ................................................................5

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ..............................................................47

*Tennison v. Circus Circuit Enters, Inc.*,
  244 F.3d 684 (9th Cir. 2001) ................................................................44

*TV Interactive Data Corp. v. Sony Corp.*,
  929 F. Supp. 2d 1006 (N.D. Cal. 2013) ................................................36

*U.S. v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ..............................................................44

*U.S. v. Poschwatta*,
  829 F.2d 1477 (9th Cir. 1987) ........................................................44, 48

*U.S. v. Powell*,
  936 F.2d 1056 (9th Cir. 1991) ...................................................................44, 49

*UCB, Inc. v. Watson Laboratories Inc.*,
  927 F.3d 1272 (Fed. Cir. 2019)...........................................................................53

*Vaporstream, Inc. v. Snap Inc.*,
  2020 WL 978731 (C.D. Cal. Feb. 28, 2020).................................................58, 60

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
  944 F.2d 870 (Fed. Cir. 1991)................................................................................7

*Woodland Trust v. Flowertree Nursery, Inc.*,
  148 F.3d 1368 (Fed. Cir. 1998)......................................................................53, 54

*Yates v. Sweet Potato Enters.*,
  2013 WL 4067783, *3 (N.D. Cal. July 30, 2013).........................................14, 22

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .............................................................................59

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) ..............................................................................46

*Zenith Elecs. Corp. v. PDI Commun. Sys.*,
  522 F.3d 1348 (Fed. Cir. 2008)..............................................................................6

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
  19 F.3d 1418 (Fed. Cir. 1994).................................................................18, 19, 20

**Federal Statutes**

35 U.S.C. § 101 .........................................................................................................45

35 U.S.C. § 102(a) .........................................................................................53, 54, 55

35 U.S.C. § 284 .................................................................................................32, 40

35 U.S.C. § 287 .........................................................................................................50

**Rules**

Fed. R. Civ. P. 26(a) .................................................................................................50

Fed. R. Civ. P. 26(e) .................................................................................................50

Fed. R. Civ. P. 37(c) ...........................................................................................50, 59

Fed. R. Evid. 401 ...........................................................................................8, 11, 43

Fed. R. Evid. 402 .......................................................................................................8

Fed. R. Evid. 403 ................................................................................................................. *passim*

# INTRODUCTION

For ease of reference, and by agreement of the parties, Droplets has consolidated its motions in *limine* into this omnibus motion filing in lieu of filing each separately.  Droplets has conferred with Yahoo!, Inc., Oath, Inc., and Oath Holdings, Inc. (collectively, "Yahoo") as to these motions in *limine*, and understands that Yahoo opposes each of them.

## I.   DROPLETS' MOTION IN *LIMINE* NO. 1: VERIZON LICENSE

Yahoo and the Verizon entities seek to introduce evidence that Verizon, as the current owner of the Yahoo-branded websites, has a license to Droplets' patent.  In the meet-and-confer process, Yahoo and Verizon contended that this fact is relevant because, insofar as the current versions and past versions of the Yahoo-branded websites are substantially the same, the Yahoo "products" are licensed.  This is the same licensing defense that the Court has twice rejected in motions for summary judgment, and it should not permit Yahoo or the Verizon entity intervenors to assert it a third time before the jury.  Verizon's license does not cover Yahoo's liability for the period of time when Yahoo owned the websites, and to suggest otherwise can only serve to confuse the jury and prejudice Droplets.  Yahoo and Verizon should be precluded from making arguments or introducing evidence or witness testimony about any Verizon entity's license to Droplets' patent or the alleged license of the Yahoo "products."

### A.   FACTS AND PROCEDURAL HISTORY

Verizon and intervenors Oath, Inc. and Oath Holdings Inc. (together, the "Verizon entities") have a license to Droplets' patent through their membership in RPX's patent aggregation service.  Droplets does not contest this fact, and the terms of Verizon's license have been discussed in detail in prior briefing in this case.  *See* Droplets' Opp. to Verizon Media's Mot. for Summ. J., ECF No. 482.4, at 5-6.  Yahoo does not have a license to Droplets' patent, but it has repeatedly attempted to rely upon Verizon's license as a defense.

Yahoo's first attempt came in its motion for summary judgment in May 2019.  Yahoo moved to substitute the Verizon entities as the defendants, and for summary judgment based on Verizon's purported license through its RPX membership. Yahoo's Mot. For Summ. J., ECF No. 328.4; Def.'s

1   Mot. To Substitute Parties And Amend Caption, ECF No. 326.4. Droplets opposed the Motion to

2   Substitute, arguing that it had sued Yahoo, not Verizon, and had a right to sue the defendant of its

3   choice — especially when substituting the defendant would give rise to a new licensing defense and

4   thus seriously prejudice Droplets. *See* Droplets' Opp. To Def. Yahoo!, Inc.'s Mot. To Substitute, ECF

5   No. 334.4. In response to Yahoo's motion for summary judgment, Droplets argued that only Verizon

6   entities, and not Yahoo, purportedly had a license to Droplets' patent, and Yahoo remained liable for

7   its own patent infringement. Droplets' Opp. To Yahoo's Mot. For Summ. J., ECF No. 339.4, at 11-

8   18. Droplets also noted that Yahoo had not presented evidence to prove even *Verizon's* license, and

9   that further discovery was thus warranted. *Id.* at 18-22.

10       The Court held a hearing on June 20, 2019 on both of Yahoo's motions. *See* Minute Entry,

11   ECF No. 367. The Court immediately asked Yahoo's and Verizon's counsel the key question: "Does

12   Yahoo! have a license?" June 2019 Hearing Tr. at 7:3. Counsel attempted to explain that "the accused

13   products in this case are licensed," but the Court continued to press whether Yahoo *itself* had a license

14   until counsel admitted that "Yahoo! Incorporated has never had a direct license." *Id.* at 7:4-18.

15       In October 2019, the Court denied both of Yahoo's motions. *See* Order, ECF No. 411. The

16   Court interpreted Yahoo's motion for summary judgment to depend upon its motion to substitute:

17   "Yahoo asks the court to substitute Oath as defendant and then to grant summary judgment because

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 3-4. The Court denied the motion to substitute

19   because changing the defendant "would significantly impact Droplets' substantive rights." *Id.* at 6.

20   The Court then denied the motion for summary judgment because, "having denied the motion to

21   substitute, Oath is not a party in this case, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* at 7. The

22   Court specifically cautioned Yahoo that it did not find the question "particularly close" on its motion

23   to substitute. October 2019 Hearing Tr. at 4:18-20.

24       In May 2020, Verizon filed its own motion for summary judgment on Yahoo's behalf, in which

25   it again attempted to assert its license as a defense to Yahoo's liability. *See* Verizon Media's Mot. for

26   Summ. J. Based On License Agreement, ECF No. 472.4. Verizon again argued that the "Accused

27   Products" are "Licensed Products" under the terms of Verizon's license. *Id.* at 16. It thus claimed

28   that Yahoo was a covered third party under the license, as a developer of a licensed product. *Id.* at 18-

1    19.  Droplets opposed Verizon's motion.  *See* Droplets' Opp. to Verizon Media's Mot. for Summ. J.,

2    ECF No. 482.4.

3         At the start of the hearing on the Verizon motion for summary judgment, the Court offered its

4    tentative view that the motion should be "denied for the same reason that the Yahoo! motion was

5    denied."  July 2020 Hearing Tr. at 4:14-19.  The Court explained that "filing this motion to make

6    essentially the exact same argument that I previously rejected is not a good use of my time.  And even

7    if I hadn't previously rejected it, just as a matter of simple contract law or simple corporations law, it

8    isn't a good motion."  *Id.* at 4:23-5:5.

9         In November 2020, the Court formally denied Verizon's motion.  *See* Order, ECF No. 551.

10    "Although Verizon Media currently holds a license to practice the . . . patent, this license has no

11    bearing on whether the unlicensed operation of the Accused Products would infringe."  *Id.* at 6.  The

12    Court rejected Verizon's argument that "the Accused Products are 'by definition Licensed Products

13    and Services incapable of infringement.'"  *Id.*  Rather, "the Patent License Agreement does not grant

14    Accused *Products* a license . . . .  It is a particular *party* that is licensed, not a *product*."  *Id.* at 6-7

15    (emphasis in original).

16         The parties met and conferred on May 4, 2021 regarding Droplets' proposed motion in limine

17    barring testimony or evidence about Verizon's license to Droplets' patent.  Yahoo and Verizon's

18    counsel refused to stipulate to the motion, asserting that the Verizon license was relevant because the

19    accused products are substantially the same under Verizon ownership as they were under Yahoo

20    ownership, rendering them covered by Verizon's license.  In other words, they intend to make the

21    exact same contract argument to the jury the Court previously determined to be meritless.

22       **B.**    <u>**ARGUMENT**</u>

23         As Droplets has long made clear, it does not assert claims against Verizon for Verizon's own

24    infringement of Droplets' patent <u>after</u> it acquired the Yahoo-branded websites.  Droplets' claims are

25    based on Yahoo's infringement <u>before</u> the Verizon acquisition.  Thus, the fact that Verizon is licensed

26    for its *own use* of products covered by Droplets' patent is not relevant to any claim before the jury.

27

28

Likewise, the Verizon license is not relevant to the asserted claims of the Verizon entities, Oath, Inc. and Oath Holdings Inc., as plaintiff-intervenors.  The only claims in the intervention complaint are for declaratory judgment "that the Accused Products do not infringe" Droplets' patent. *See* Oath Holdings Inc. and Oath, Inc.'s Compl. In Intervention, ECF No. 376-10, at 3-4.  As the Court explicitly held in denying Verizon's motion for summary judgment, Verizon's license is not relevant to its requested declaratory judgment, because it does not show "that the Accused Products are licensed, and therefore non-infringing, in all instances."  ECF No. 551 at 7.  The accused products in this case are the products used, operated, sold, etc. by Yahoo.

The Court has now twice held that Verizon's license does not cover infringement committed by Yahoo when it owned the Yahoo-branded websites.  As the Court has repeatedly held, the license applies to parties and not products.  It licenses Verizon's use of products covered by the Droplets' patent, not Yahoo's use, no matter the similarities between the websites as operated by Verizon and Yahoo.  Thus, the license is in no way relevant to Droplets' claims based on Yahoo's infringement — the only claims Droplets asserts.

Because the Verizon license is not relevant to Droplets' asserted claims or the Verizon entities' claim in intervention, it is inadmissible under Federal Rules of Evidence 401 and 403.  It offers no probative value, and it could serve only to confuse the jury by suggesting that Verizon's license is somehow a defense to the claims against Yahoo — a false premise the Court has already rejected as a matter of law.  And any testimony (for example, from an RPX witness) about Verizon's license would likewise be irrelevant and confusing.

## C.    <u>CONCLUSION</u>

Droplets respectfully requests that the Court preclude Yahoo, Oath, Inc., and Oath Holdings Inc. from making arguments or introducing evidence or witness testimony (including from any RPX witness) about any Verizon, Oath, Inc., or Oath Holdings Inc.'s license to Droplets' patent or the license of the Yahoo "products."

1

2

## II.    DROPLETS MOTION IN *LIMINE* NO. 2: YAHOO'S ARGUMENT THAT IT WAS <u>PRACTICING THE PRIOR ART OR ITS OWN PATENTS</u>

3

4

5

6

Droplets moves to preclude any argument, statement, evidence or testimony stating or suggesting (1) Defendants' accused products practice the prior art; (2) "practicing the prior art" is a proper defense to infringement or evidence of invalidity; and (3) Defendants' accused products practice Yahoo's own patents.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

"A 'practicing the prior art' defense typically refers to the situation where an accused infringer compares the accused infringing behavior to the prior art in an attempt to prove that its conduct is either noninfringing or the patent is invalid as anticipated because the accused conduct is simply 'practicing the prior art.'" *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011). It is well-established law that an alleged defense relying on the accused instrumentality practicing the prior art is not a defense to infringement. *In re Omeprazole Patent Litig.,* 536 F.3d 1361, 1377 (Fed. Cir. 2008) ("It is well-established . . . that 'practicing the prior art' is not a defense to infringement."); *see also Opticurrent, LLC v. Power Integrations, Inc.*, 2018 WL 6727826, at *14 (N.D. Cal. Dec. 21, 2018) ("The Federal Circuit has unequivocally rejected a 'practicing the prior art' defense to infringement." (collecting cases)).  An accused infringer cannot defend against infringement by arguing its product is similar to the prior art, because "[t]his is essentially a creative way to assert practicing the prior art as defense to literal infringement.  'But "practicing the prior art" is not a defense to literal infringement.'" *Gen-Probe Inc. v. Becton Dickinson & Co.*, 899 F. Supp. 2d 971, 989 (S.D. Cal. 2012) (quoting *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002)).  The absence of a "practicing the prior art" defense makes good sense, as "literal infringement is determined by construing the claims and comparing them to the accused device, not by comparing the accused device to the prior art." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1366 (Fed. Cir. 2002).

27

28

1    Here, Defendants should not be permitted to claim non-infringement based on argument that

2    their accused websites more closely resemble prior art than the asserted claims because that defense

3    goes to validity, not infringement. *Ecolab*, 285 F.3d at 1377 (precluding non-infringement defense

4    that relied on showing product was more similar to prior art than asserted patent); *see also Gen-Probe*,

5    899 F. Supp. 2d at 989 (citing *Ecolab* and granting summary judgment of infringement because even

6    where a portion of the accused product more closely resembles the prior art, this argument goes to

7    validity, not infringement).

8

9    The Federal Circuit has "explained that accused infringers 'are not free to flout the requirement

10    of proving invalidity by clear and convincing evidence by asserting a 'practicing the prior art' defense

11    to literal infringement under the less stringent preponderance of evidence standard.'" *Cordance*, 658

12    F.3d at 1337; *see also Opticurrent*, 2018 WL 672782, at *14. And in *Zenith Elecs. Corp. v. PDI*

13    *Commun. Sys.*, 522 F.3d 1348, 1363-1364 (Fed. Cir. 2008), the Federal Circuit explicitly rejected the

14    "if infringement, then invalidity" construct, finding:

15

16    > Regardless of whether [the accused infringer's] statement [that it is practicing the prior
17    > art] is correct, anticipation cannot be proved by merely establishing that one 'practices
18    > the prior art.' . . . [M]ere proof that the prior art is identical, in all material respects, to
19    > an allegedly infringing product cannot constitute clear and convincing evidence of
20    > invalidity. Anticipation requires a showing that each element of the claim at issue,
21    > properly construed, is found in a single prior art reference.

20    Defendants refuse to stipulate to the impropriety of making any "practicing the prior art"

21    defense. Instead, Droplets understands Defendants to take the position that they are entitled to argue

22    this defense, particularly as it relates to the accused Yahoo Mail website, despite the fact that there is

23    no record evidence, and no expert has opined in support, of such a theory. This argument is even more

24    problematic and dangerous for the jury to hear given that Yahoo Mail is an accused product in this

25    case and Yahoo is not offering an anticipation theory based on Yahoo Mail. Yahoo's arguments are

26    particularly troubling given that its heavy reliance on its own prior art systems has been curtailed

27    multiple times by the Court. *See* ECF Nos. 747, 793. Yahoo's "practicing the prior art" defense would

28

be an end-run around those rulings.  Any testimony or oral argument stating or alluding thereto is improper and should be precluded.

Defendants also should be precluded from presenting any testimony or oral argument stating or suggesting that the accused products practice Yahoo's own patents, none of which are asserted in this case.  There is no evidence, including no expert opinion, in support of such an argument on the record, and any attempt by Defendants to do so at trial will only confuse the jury and highly prejudice Droplets.  Simply put, Yahoo's patents are not being asserted here, and the fact that any Yahoo product may also practice Yahoo's or any other entity's patents is wholly irrelevant to the issues in this case.  To the extent Yahoo has patents, those patents do not provide it with a right to infringe or immunize it from liability for infringing Droplets' patent.  *See, e.g.*, *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991) ("[I]t is well-established that the existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell."); 35 U.S.C. § 154 (providing that patents grant "the right to exclude others"); *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 43 (1929) (infringement not avoided by any presumptive validity afforded to a later issued patent).  The jury, however, is not likely to know this "elementary" rule of patent law.  Allowing the jury to hear evidence of Yahoo's patents thus does not past muster under Rule 403, bearing no relevance to the issues in this case and inviting jury confusion over the legal relevance of those patents.

Accordingly, Droplets respectfully request that the Court preclude argument and evidence regarding Yahoo's practicing the prior art defense and Yahoo's own patents.

1

2

III.   **DROPLETS MOTION IN *LIMINE* NO. 3: REFERRENCES TO DROPLETS AS A "NON-PRACTICING ENTITY" OR "PATENT ASSERTION ENTITY"**

3

Droplets moves to preclude Yahoo from characterizing Droplets' investors, business model,

4

or the licensing of patents in a derogatory or pejorative manner.  Such derogatory characterizations

5

are inaccurate, irrelevant, and inflammatory, and are nothing more than a calculated attempt to evoke

6

an emotional response untethered to the law or facts of the case, misleading the jury and unduly

7

prejudicing Droplets.  Accordingly, pursuant to Federal Rules of Evidence 401, 402, and 403, Droplets

8

moves to precludes Yahoo from making arguments, statements, or references to Droplets as a "patent

9

assertion entity" or "non-practicing entity."

10

**A.**   **ARGUMENT**

11

**i.**   **Pejorative Characterizations Of Droplets Are Irrelevant To The Disputed Issues In This Case.**

12

13

Defendants' intended characterizations of Droplets as a "patent assertion entity" and a

14

"nonpracticing entity" are not relevant to any issues in the case.  *See* Fed. R. Evid. 401 (evidence is

15

relevant if it "has any tendency to make a fact more or less probable" and it "is of consequence in

16

determining the action").  These characterizations of Droplets have no tendency to make any materials

17

facts related to infringement, validity, willfulness, or damages more or less probable.  This lack of

18

relevance alone is grounds for preclusion. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

19

20

**ii.**   **Derogatory References To Droplets' Business Model Are Prejudicial, Misleading, And Confusing.**

21

22

Pejorative references to Droplets as a "patent assertion entity" or "nonpracticing entity" should

23

be excluded because any probative value of such monikers is substantially outweighed by unduly

24

prejudicing Droplets and misleading and confusing the jury.[1]  *See* Fed. R. Evid. 403 ("The court may

25

26

27

28

----

[1] Yahoo agrees that it will not refer to Droplets as a "troll" or a "patent troll."  These terms carry equally negative connotations as "patent assertion entity" and "non-practicing entity," and Droplets moves the Court to preclude use of *all* terms with negative and pejorative connotations. *See, e.g., Finjan, Inc. v. Cisco Sys. Inc.*, No. 17cv72, Dkt. No. 660 at 3-5 (N.D. Cal. June 5, 2020) (permitting defendant to introduce "neutral, factual statements concerning [patentee]'s business" but

exclude relevant evidence if its probative value is substantially outweighed by one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Derogatory characterizations such as these would unfairly prejudice Droplets by smearing it with an emotional appeal to the jury untethered from the facts of the case.  *See* Fed. R. Evid. 403 Advisory Committee Notes (unfair prejudice warranting preclusion includes an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

Accordingly, Courts in this district routinely preclude defendants from referring to patentees by these derogatory and pejorative terms that carry "negative connotations" to prevent exactly this type of prejudice and confusion.  *See, e.g., Finjan v. Cisco* , No. 17-cv-72, Dkt. No. 660 a3-5 5 (permitting defendant to introduce "neutral, factual statements concerning [patentee]'s business" but precluding "the use of the terms . . . 'patent assertion entity,' 'PAE,' 'non-practicing entity,' and 'NPE,'" finding "such pejorative labels [to be] irrelevant, unhelpful to the jury, and in some instances [to] carry negative connotation"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *2 (N.D. Cal. July 8, 2015) (precluding use of "the term[] . . . 'patent assertion entity'"); *Finjan, Inc. v. Juniper Network, Inc.*, No. 17-05659 (N.D. Cal. Dec. 6, 2018), at 4 (prohibiting pejorative terms)[2]); *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *8 (N.D. Cal. Aug. 22, 2016) (granting  motion *in limine* in part to preclude uses of the term "patent assertion entity"); *HTC Corp., et al. v. Tech. Props. Ltd.*,

precluding "the use of the terms 'patent troll,' 'patent assertion entity,' 'PAE,' 'non-practicing entity,' and 'NPE,'" finding "such pejorative labels [to be] irrelevant, unhelpful to the jury, and in some instances [to] carry negative connotation").

[2] In *Finjan, Inc. v. Juniper Network, Inc.*, Judge Alsup granted-in-part plaintiff's motion *in limine* with regard to "patent troll," but denied-in-part with regard to "the terms 'patent assertion entity' and 'non-practicing entity' — which the undersigned judge does not believe to be *per se* pejorative."  No. 17-05659, at 4. Judge Alsup directed that such terms were only to be used "*sparingly*."  *Id.* (emphasis in original).  As listed above, the more common practice of courts in this district routinely disallow *any* use of "patent assertion entity" and "non-practicing entity." Should this Court find that any of the monikers specified in this motion are not *per se* pejorative, however, Droplets requests that the Court caution Yahoo, similar to Judge Alsup's caution to Juniper, that such characterizations are only to be used sparingly.

*et al.*, No. 5:08-cv-882, Dkt. No. 564 at 6-7 (N.D. Cal. Sept. 9, 2013) (same); *Digital Reg of Texas, LLC v. Adobe Sys, Inc.*, 2014 WL 4090550, at *12 (N.D. Cal. Aug. 19, 2014) (precluding use of "pejorative terms, such as 'patent troll,' 'pirate,' 'bounty hunter,' 'paper patent,' 'playing the lawsuit lottery,' and 'shell corporation,' which have negative connotations."); *see also Prism Techs., LLC v. T-Mobile USA Inc.*, No. 8:12-cv-124, Dkt. No. 462 at 2-3 (D. Neb. Oct. 5, 2015) (precluding use of "the following terms about [plaintiff]: 'patent troll,' 'patent assertion entity,' 'shake down,' 'hold-up,' 'stick up,' 'ringing the bell,' 'blackmailers,' 'greenmailers,' 'pirate,' 'bounty hunter,' 'privateer,' 'bandit,' 'paper patent,' 'submarine patent,' 'playing the lawsuit lottery,' or 'litigation assertion entity'"); *Intellectual Ventures II LLC v. Bitco Gen. Ins. Corp., et al.*, No. 6:18-cv-298, Dkt. No. 282 at 12-13 (E.D. Tex. Mar. 7, 2019) (precluding "pejorative references to [plaintiff] or it's business model (e.g., 'patent troll,' 'non-practicing entity,' 'patent assertion entity,' 'a company that doesn't make anything,' or 'a company that doesn't sell anything'").

## B.  <u>CONCLUSION</u>

Accordingly, Droplets respectfully requests that the Court grant its motion *in limine* to exclude any arguments, statements, or references to Droplets as a "patent assertion entity" or "non-practicing entity."

**IV.    DROPLETS MOTION IN *LIMINE* NO. 4: CLAIMS OR CAUSES OF ACTION THAT HAVE BEEN DISMISSED OR DROPPED BY DROPLETS**

Droplets moves to preclude Yahoo, under Rules of Evidence 401 and 403, from making arguments or presenting evidence regarding claims, theories, patents, or causes of action that Droplets has dropped or dismissed.  Courts routinely exclude such arguments and evidence on the grounds that dropped claims or patents are not relevant to issues of infringement or willfulness and argument or evidence at trial is prejudicial and could confuse or mislead the jury.  *E.g.*, *PersonalWeb Techs. LLC, et al. v. Int'l Business Machines Corp.*, No. 16cv01266EJD, Dkt. No. 345 at 2-3 (N.D. Cal. July 26, 2017) (finding that dropped patents were not relevant to infringement or willfulness and that testimony or evidence thereon would unfairly paint plaintiff's case as weak and mislead the jury).  Further, streamlining a case should be encouraged, not chilled by the prospect that doing so will be used in a prejudicial manner before the jury.

**A.    ARGUMENT**

**i.    References To Dropped Claims, Theories, Patents, And Causes Of Action Are Irrelevant.**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Claims, theories, patents, or causes of action no longer asserted by Droplets such as these are in no way probative of the issues to be decided by the jury.

During the roughly decade-long pendency of this case, Droplets has continuously narrowed its case for trial.  For example, Droplets has narrowed the claims of U.S. Patent No. 6,687,745 that it asserts, has refined its infringement theories, and no longer asserts U.S. Patent No. 7,502,838.  Such materials could only be relevant to issues of infringement and willfulness and, for the following reasons, are not of consequence to either issue.

First, dropped claims, theories, patents, or causes of action are not relevant to infringement. "[I]nfringement is measured by comparing the elements of the asserted claim against the accused

product." *PersonalWeb Techs. LLC, et al. v. Int'l Business Machines Corp.*, No. 16-cv-01266-EJD, Dkt. No. 343 at 9 (N.D. Cal. July 26, 2017) (citing *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997)). Accordingly, once a plaintiff drops an asserted claim, that asserted claim says nothing about infringement; likewise, if a plaintiff drops an asserted patent or accused product, those are no longer relevant to the issue of infringement in the case.[3] *See id.* (finding "whether Plaintiffs have dropped certain patent claims has no relevance as to whether" defendant infringes the asserted patent). Instead, dropping asserted claims (or patents) is typical procedure in patent cases, and indicates only that Droplets is in good faith streamlining its case for trial, as encouraged by the courts. *See, e.g.,* Patent L.R. 4 (requiring narrowing of issues for claim construction).

Second, such references are not probative of willfulness, i.e., whether Yahoo had any good faith belief it was not infringing the asserted patent.[4] "[T]he fact that Plaintiffs have dropped certain patent claims has no bearing on whether Defendant's conduct with respect to the [asserted] patent was egregious." *PersonalWeb Techs.*, No. 16-cv-01266, Dkt. No. 345 at 2 ("[W]illfulness turns on the egregiousness of an accused infringer's infringement of an *asserted* patent.") (emphasis in original) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1933 (2016)); *see also Radware, Ltd., et al. v. F5 Networks, Inc.*, 2016 WL 590121, at *16 (N.D. Cal. Feb. 13, 2016) ("The court is not convinced that Radware's decision to drop certain claims has any relevance to F5's alleged willful infringement of the remaining asserted claims."); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, Dkt. No. 256 at 5 (N.D. Cal. Mar. 19, 2015) (similar).

### ii.     Such References Would Unduly Prejudice Droplets.

Not only does such evidence lack probative value, their admission also unduly prejudices

---

[3] For the same reasons, dropping a claim or instrumentality is not evidence of non-infringement and therefore not probative of non-infringing alternatives.

[4] For the same reasons, claims or patents that are no longer asserted are not probative of induced infringement, which "requires 'knowledge that the induced acts constitute patent infringement' — i.e., knowledge of infringement of the asserted patent." *PersonalWeb Techs.*, No. 16-cv-01266, Dkt. No. 345 at 2 (quoting *Glob.-Tech. Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).

Droplets.  Discussion of claims, patents, or theories that were formerly at issue in this case but are no longer live would confuse the jury as to the scope of its determination, would waste time, and would unfairly prejudice Droplets by requiring it to engage in sideshow litigation and spend time rebutting arguments and evidence not at issue.

Rule 403 permits the Court to exclude evidence where its "probative value is substantially outweighed by one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Any arguments or evidence by Defendants that Droplets has supposedly changed its story or modified its infringement theories would attempt to paint Droplets as inconsistent and litigious or suggest Droplets' case is weak, and in so doing, invite the jury to determine the case on issues other than the merits.  "Introducing the fact that certain patents, claims, and products were dropped may permit the jury to draw the unfair inference that Plaintiff's case is weak.  It may also mislead the jury, who is not accustomed to the fact that claims are routinely narrowed in patent infringement cases." *PersonalWeb Techs.*, No. 16-cv-01266, Dkt. No. 345 at 2; *see also, e.g.*, *Enplas Display Device Corp., et al. v. Seoul Semiconductor Co., Ltd.*, No. 13cv05038 NC, Dkt. No. 384 at 3 (N.D. Cal. Feb. 29, 2016) (granting motion *in limine* "to exclude dropped claims and theories . . . because these are not relevant to the lawsuit and are highly prejudicial.").

**B.**    **CONCLUSION**

Droplets respectfully requests that the Court preclude Defendants from presenting arguments or evidence regarding claims, theories, patents, or causes of action that Droplets has dropped or dismissed.

1
2
3

**V.    DROPLETS MOTION IN *LIMINE* NO. 5: DROPLETS LITIGATION OTHER THAN THE INSTANT CASE, INCLUDING LITIGATION AGAINST OTHER PARTIES SUCH AS *DROPLETS, INC. V. E\*TRADE FINANCIAL CORP.*, No. 1:12-cv-02326 (S.D.N.Y. May 13, 2011) AND THE PRODUCTS IN THOSE CASES**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Droplets moves to preclude Yahoo from referencing unrelated cases at trial.  Yahoo appears poised to present a non-infringement case based on extraneous cases between different parties, accusing different products.  To this end, Yahoo identifies numerous materials stemming from and concerning unrelated cases between Droplets and third parties — including Yahoo's expert's testimony on the *E\*Trade* case and infringement contentions from other cases — which are of no value to the jury in deciding the questions in this case.  Yahoo apparently intends to use selective materials from these unrelated cases to argue non-infringement and willfulness, ignoring settled law that allegations against a different company's products are not probative of an infringement analysis against different products.  Moreover, such evidence would unduly prejudice Droplets by misleading the jury, painting Droplets as litigious, and creating an unseemly sideshow trial within a trial on issues that have nothing to do with the matters to be decided here.  Fundamentally, Yahoo seeks not to litigate its own case based on evidence of its own products, but to parade other cases in front of the jury.  Droplets respectfully requests that, pursuant to Rule 403, Yahoo be precluded from introducing arguments, statements, evidence, or testimony regarding any Droplets case beyond this one.

20

**A.    ARGUMENT**

21

**i.    Reference To Other Cases Will Confuse And Mislead The Jury.**

22
23
24
25
26
27
28

As a general rule, "the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias." *Henderson v. Peterson*, 2011 WL 2838169, \*5 (N.D. Cal. July 15, 2011) (citing *Seals v. Mitchell*, 2011 WL 1399245, at \*5 (N.D. Cal. Apr. 13, 2011).  Courts in this district narrowly constrain the admissibility of prior lawsuits. *See, e.g., Yates v. Sweet Potato Enters.*, 2013 WL 4067783, \*3 (N.D. Cal. July 30, 2013) ("As a general matter, prior lawsuits are inadmissible to show that the plaintiff is litigious."); *Actuate Corp. v. Aon Corp.*, 2012

WL 2285187, *1 (N.D. Cal. June 18, 2012) (granting a motion *in limine* to exclude testimony about other lawsuits by plaintiff). In *Actuate*, for example, the court granted a motion *in limine* precluding reference to other lawsuits, but noted that previous lawsuits could be admissible for a narrow subset of purposes. *Actuate*, 2012 WL 2285187, at *1 (finding that permissible purposes may be "to show financial bias" or to show "inconsistent positions on similar contractual terms."). Here, the general rule that previous lawsuits are inadmissible applies, and Yahoo has no permissible purposes for referencing unrelated Droplets litigations.

### ii.     References To The *E\*Trade* Case Should Be Precluded.

Yahoo's desire to litigate this case by deferring to irrelevant proceedings from the *E\*Trade* case is particularly troubling. *Droplets, Inc. v. E\*Trade Financial Corp.*, No. 1:12-cv-02326 (S.D.N.Y. May 13, 2011) ("*E\*Trade*") ended in summary judgment on a finding of non-infringement as to the accused *E\*Trade* product — which is not in any way related to the accused products in this case. The accused *E\*Trade* product was an electronic stock trading platform that was developed by, and proprietary to, E\*Trade. *See, e.g., E\*Trade* Compl. (Dkt. No. 1) ¶¶ 40-41 (accusing E\*Trade products "that transmit and display financial information and that are made available to uses through web pages"); *see also* 01/07/2021 Shamos Dep. Tr. at 111:19-21 ("Q. E\*Trade considers its source code to be proprietary. Correct? A. Yes.")

Although the Court has cited decisions in the *E\*Trade* case — namely in its claim construction opinions — any such use in determining legal issues does not render the *E\*Trade* case admissible before the jury. The Court determined issue preclusion applied to certain aspects of the *E\*Trade* decision, but that opinion applied estoppel only to legal issues of claim construction. ECF No. 749. The Court's resolution of purely legal issues involving *E\*Trade* does not provide a basis for Yahoo to present the *E\*Trade* case to the fact-finder. Moreover, it appears that Yahoo intends to use the *E\*Trade* decision by presenting the SDNY court's ruling itself to the jury (through testimony or the

opinion itself). That ruling, in addition to being irrelevant, threatens to mislead the jury — the jury is not equipped to understand the legal principles and legal import of a court's summary judgment opinion, and litigating the meaning of that opinion would create an unseemly sideshow. *See, e.g., Datatreasury Corp. v. Wells Fargo & Co., et al.*, No. 2:06-cv-72, Dkt. No. 1982 at 6, 20, 63, 64 (E.D. Tex. Feb. 26, 2010) (precluding arguments that "would generate 'sideshow litigation'" and therefore failed Rule 403 analysis); *see also Hynix Semiconductor Inc., et al. v. Rambus Inc.*, No. 00-20905, Dkt. No. 1220 at 7 (N.D. Cal. Feb. 10, 2008) (precluding a line of questioning that "will create a sideshow and distract the jurors from the factual issues in the case raising FRE 403 concerns").

Any alleged factual overlap between the *E\*Trade* case and the present case does not render the *E\*Trade* case admissible because references to the *E\*Trade* case do not pass Rule 403 muster.[5]  In particular, allowing Yahoo's technical expert, Dr. Shamos, to reference to the *E\*Trade* case would confuse and mislead the jury. Dr. Shamos's report *extensively cites, quotes, and reproduces* portions of the SDNY proceedings, including the court's summary judgment opinion. (*See, e.g.,* Shamos Rep. ¶¶ 93–94, 96–97, 100–103, 404, 416–418; *see also* 01/07/2021 Shamos Dep. Tr. at 148:5-9 ("Q. Why did you copy the SDNY legal opinion instead of creating your own opinion for this case and these products? A. Because I think it has more gravitas when it comes from a federal judge.").) Shamos's reliance on *E\*Trade* misleads the jury into thinking that they should rely on a finding by a judge in a different case, instead of the evidence of infringement in this case. *See, e.g., ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007) ("[a] determination of infringement is a question of fact"). Moreover, Dr. Shamos should be precluded from reading the *E\*Trade* decision

---

[5] The Court may exclude evidence where "its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

to the jury, given the jury confusion that will result from the strong implication that the jury does not need to make its own finding because another court has already made the determination.[6] *Id.*

Reciting portions of the *E*Trade* case to the jury in this case is particularly misleading and confusing because of the discordance of Dr. Shamos's opinions. It is apparent that Dr. Shamos intends to testify to the jury that because the allegations in *E*Trade* are "remarkably similar" to those at issue here, and because the products in *E*Trade* are "virtually identical" to the products here and did not infringe, the currently-accused products also do not infringe. (*See, e.g.,* Shamos Rep. ¶¶ 17, 93–94, 96–97, 100–103, 343, 384, 404, 416–418; *see also* 01/07/2021 Shamos Dep. Tr. at 100:13-17(testifying that Yahoo search suggest is not "colorably different" than E*Trade search suggest).) This legally insufficient and highly prejudicial shortcut should be excluded from being presented to the jury. Allowing such a presentation would require Droplets to defend by pointing out the many ways the record in that case was different and making legal arguments as to why the SDNY summary judgment decision is inapplicable here. None of this should be before the jury.

*First*, Dr. Shamos's testimony misleads the jury as to what the proper infringement analysis is, and how to conduct it. Dr. Shamos should not be allowed to muddy or avoid a proper infringement analysis by getting up in front of the jury, pointing at the *E*Trade* case, and stating that because there was no infringement there, there is no infringement here. This is incorrect as a matter of black letter law, which requires that the *only* proper comparison for an infringement analysis is between the claims of the patent and the accused product.[7] *See Nobell, Inc. v. Sharper Image Corp.*, 950 F.2d 732 (Fed.

---

[6] Dr. Shamos should not be permitted to read the *E*Trade* decision to the jury either from the quoted sections in his report or from the original opinion itself.

[7] In "limited circumstances[] where it is shown that a close identity exists between the relevant features" of the accused products and other products, "[d]efensive collateral estoppel of non-infringement . . . may apply." *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018). However, issues of collateral estoppel are not before the jury. Further, as shown below, Shamos has failed to show a close identity between the *E*Trade* product and the accused products, at least for the reason that he has merely conclusorily asserted that the products are the same, with no further analysis.

Cir. 1991) ("A proper infringement analysis requires comparison of the accused device with the claims of the patent in suit, not with another device.") (citing *Lund Indus. v. Go Indus.*, 938 F.2d 1273, 1275 (Fed. Cir. 1991)); *see also Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) (in an infringement analysis, "the only proper comparison is with the claims of the patent") (internal citations omitted); *Deering Precision Instr., L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003).

*Second*, Dr. Shamos's testimony is confusing and misleading because Yahoo has not presented any evidence that the *E\*Trade* products and the Yahoo accused products are the same. *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at \*7 (N.D. Cal. Aug. 22, 2016) ("even a simple analysis" by an expert "requires an explanation and foundation so that a fact finder can evaluate and assess the opinion"). Rather, Dr. Shamos testified that the *E\*Trade* products are literally different than the products accused in this case and that they are made by different companies.[8] *See* 01/07/2021 Shamos Dep. Tr. at 110:2-6 ("Q. So Yahoo! Search Suggest and E\*Trade Search Suggest are different products. Right? A. Yes. They're not materially different with respect to the claims, but they are, of course, literally different."); *see also id.* at 110:7-10 (testifying that the products have different source code); *id.* at 110:20-111:3 (testifying that the products have different websites); *id.* at 111:4-6 (testifying that the products are made by different companies). This confusion is compounded by the fact that, despite being different products developed by different companies, the *E\*Trade* products share the same "search suggest" moniker as the Yahoo accused products. *Id.* at 110:2-6.

---

[8] Indeed, Dr. Shamos did not "review E\*Trade source code" or "compare the Yahoo! Search Suggest source code to E\*Trade Search Suggest source code" (01/07/2021 Shamos Dep. Tr. at 112:7-14, 119:1-4), did not "review engineer testimony about E\*Trade Search Suggest" or "compare testimony from Yahoo! engineers about how Search Suggest works to testimony from E\*Trade engineers about how Search Suggest works" (*Id.* at 112:16-113:2), and did not "review[] any of E\*Trade's technical documents about [] Search Suggest" or "compare Yahoo!'s technical documents about Search Suggest to E\*Trade's technical documents engineers about Search Suggest" (*Id.* at 113:21-114:8).

Accordingly, allowing Dr. Shamos to testify about the determinations in *E\*Trade* would confuse the jury as to which Search Suggest product and associated features they should properly compare to the asserted patent claims, distracting them from the task they are charged with completing — comparing the accused products to the asserted claims.

### iii.    References To Other Droplets Cases Should Similarly Be Precluded.

For similar reasons, Yahoo should be precluded from confusing and misleading the jury with references to other Droplets litigation. Any reference to previous infringement theories by Droplets would be unduly prejudicial and confusing. Despite black letter law that an infringement analysis is between the accused products and the elements of the asserted patent claims, Yahoo has identified hundreds of infringement contentions from previous cases[9] on its preliminary exhibits lists. Infringement contentions from other cases compare different products to the elements of asserted patent claims, and therefore are completely irrelevant to any of the claims presently at issue. Showing such contentions to the jury would confuse and mislead them from the *only* proper comparison for an infringement analysis, which is between the claims of the patent and the accused product. *See Zenith Labs*, 19 F.3d at 1423; *Deering Precision*, 347 F.3d at 1324.

### iv.    Any Potential Relevance Of Other Droplets Litigation Is Outweighed By Undue Prejudice And Jury Bias.

The minimal probative value of reference to unrelated litigation is severely outweighed by the unfair prejudice such references would cause Droplets. Previous cases brought by Droplets are against different accused products, different parties, and frequently assert different patents; accordingly, arguments, statements, evidence, or testimony from such cases are not probative of the issues in the present case. Indeed, as the Court recently stated in its Order Regarding Motions to Strike discussing

---

[9] Yahoo includes materials from too many unrelated cases to list them all here, including infringement contentions against Apple, Facebook, and Google.

a separate use of the SDNY proceedings by Yahoo, "the evidence from another case has no bearing on Droplets' contentions here."  ECF No. 747 at n.6.

*First,* other Droplets litigations are not relevant to infringement.  As discussed above, allegations of patent infringement against other products are not probative of a proper infringement determination; rather, drawing parallels to such allegations is a legally insufficient shortcut of the infringement analysis, which is between the accused products and the asserted claims.  *Zenith Labs*, 19 F.3d at 1423; *see also Deering Precision*, 347 F.3d at 1324.

*Second,* any probative value to non-infringing alternatives is severely outweighed by the prejudice caused to Droplets.  The prejudice Droplets faces is made clear by Dr. Shamos's admission that he holds two irreconcilable positions with respect to the *E*Trade* products, which he plans to argue in the alternative:  on the one hand, Shamos opines that the *E*Trade* products are the same as the Yahoo accused products, insofar as if one doesn't infringe, neither does the other;  on the other hand, he also says that if the Yahoo products do infringe, then the *E*Trade* products are different from the Yahoo products (in some unidentified way) and should be considered a non-infringing alternative.[10]  *See, e.g.,* Shamos Reb. Rep. ¶ 381 ("The Search Suggest in E*Trade would be a non-infringing alternative that Defendants could have implemented (to the extent that they did not already do so).  The functionality in E*Trade is exactly the same as the accused search suggest functionality."); *see also* 01/07/2021 Shamos Dep. Tr. at 119:1-13 ("Q.  Okay.  So it's your opinion that the E*Trade Search Suggest product and the Yahoo! Search Suggest product worked the same way at a high level.  Correct?  A.  At – the ways that are material to this case, yes.  Q.  Well, that was my question.  So is it your opinion that the E*Trade Search Suggest product and the Yahoo! Search

---

[10] The Court has previously found that Dr. Shamos's, opinions on *E*Trade* non-infringing alternatives theories were disclosed, but did not make a determination as to the admissibility of the theories.  ECF No. 747 at 19.  For the reasons recited herein, Dr. Shamos's opinions that the *E*Trade* product is a non-infringing alternative are inadmissible.

Suggest product worked the same way at a high level?  A.  At a level sufficient for this case, however high that is or however low that is.").  While Shamos purports to opine that the *E\*Trade* products are a non-infringing alternative to Yahoo Search Suggest, the substance of his opinion is that those *E\*Trade* products are exactly the same as Yahoo Search Suggest — and in fact, Shamos does not identify a single proposed change to Yahoo Search Suggest under this "alternative."  In short, Shamos's non-infringing "alternative" based on the *E\*Trade* products is no more than a façade for his non-infringement opinion based on the *E\*Trade* products which, as discussed above, is improper.

Yahoo's have-our-cake-and-eat-it-too positioning underscores the very real danger of confusing the jury with inconsistencies and inapt comparisons between the two cases.  Yahoo cannot simultaneously be the same as *E\*Trade*, and also different from *E\*Trade*. This positioning places Droplets in the awkward and prejudicial posture of having to show both that the accused products are and are not the same as the *E\*Trade* product, and, as part this dual showing, question and litigate before the jury the *E\*Trade* court's infringement determination.  In no respect should Yahoo be permitted to discuss the *E\*Trade* court's decision before the jury.  If it seeks to prove that a certain product is a non-infringing alternative, it can do so (assuming properly disclosed in discovery) without referencing prior court decisions.

*Third*, any probative value of other Droplets litigation to willfulness is substantially outweighed by the unfair prejudice it would cause.  The proceedings in unrelated litigation have minimal probative value to the willfulness inquiry, which focuses on a defendant's belief as to whether or not *its own accused product* infringes the asserted patent.  *See, e.g., Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020).  There is no rational basis for Yahoo to assume its own product does not infringe merely because a different product does not infringe.  And such references have a high likelihood of causing unfair prejudice to Droplets.  In addition to the fact that any reference to the *E\*Trade* litigation will inherently mislead the jury into deciding infringement

in this case based on the products in a different case, references to other Droplets cases would also severely prejudice Droplets by impermissibly painting it as litigious and requiring Droplets to engage in a sideshow to combat and explain the other, irrelevant cases. *See, e.g., Yates*, 2013 WL 4067783, *3 ("As a general matter, prior lawsuits are inadmissible to show that the plaintiff is litigious."); *see also Henderson*, 2011 WL 2838169 (generally, "the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias.").

**B.   <u>CONCLUSION</u>**

Because any probative value of references to unrelated cases would be substantially outweighed by the danger of unfair prejudice, and would confuse and mislead the jury, Droplets respectfully requests that the Court preclude Yahoo from introducing arguments, statements, evidence, or testimony regarding any Droplets litigation other than the instant case.

## VI.   DROPLETS MOTION IN *LIMINE* NO. 6: LICENSES THAT ARE NOT UNDERLINE COMPARABLE

The question presented by this Motion in *Limine* is whether Yahoo and the Verizon intervenors can introduce into evidence, or have their expert rely upon, prior agreements settling early-stage litigation as "comparable" licenses for purposes of calculating damages.  This is a reasonable royalty damages case.  The damages question the jury will be asked to decide is what Droplets and Yahoo would have agreed to in a hypothetical negotiation for the license to use or sell the *specific* infringing technology at issue, assuming all parties were certain the patent was valid and infringed.  The Federal Circuit has expressed "longstanding disapproval" of using prior settlement agreements to determine a reasonable patent royalty.  Droplets moves to exclude these prior litigation agreements under Rule 403 of the Federal Rules of Evidence — the undue prejudice of these agreements outweighs any probative value.  The cases acknowledge that type of arguments made here arise under the Rule 403 analysis.

The Federal Circuit's disapproval arises out of *Georgia-Pacific*'s premise that the parties to a hypothetical negotiation do not dispute validity and infringement — a very different circumstance than a settlement early in litigation.  The Federal Circuit has noted that settlement agreements are tainted by the coercive environment of patent litigation, and thus that early-stage settlements are unsuitable to prove reasonable royalties as a logical extension of *Georgia-Pacific*.

It is Yahoo's burden to establish that these litigation settlements are sufficiently comparable.  In assessing litigation agreements, the Federal Circuit examines whether the litigation was far enough along that the issues were "well explored and well tested."  Thus, a settlement after liability has been determined (even if subject to appeal) has been found to be sufficiently comparable.  But where the agreement is entered early in litigation, when there remains significant uncertainty over validity and infringement, the cases have determined there is little probative value, but the risk of undue prejudice by skewing the damages horizons is significant.

Here, Yahoo cannot meet its burden.  The agreements in question were litigation settlements at initial stages of their respective cases — the issues in those cases were not remotely "well explored and well tested" because the cases were in their infancy.  Further, many of the agreements

1    involve patents and technology that enabled Yahoo features unrelated to those at issue here, with no

2    meaningful attempt to show they are comparable, as required by the cases.  Yahoo simply seeks to

3    anchor the jury with low settlement numbers without establishing the requisite comparability.  This

4    is precisely the use of settlements the Federal Circuit has forbidden.  Early-stage settlements are at

5    particular risk of incorporating significant litigation risk discounts.  The early-stage settlements

6    Yahoo relies upon are simply not comparable to a hypothetical negotiation in which all parties were

7    certain about liability.

8         The settlements at issue here are about as early-stage as they get, so if the stage of the

9    litigation is to mean anything, these agreements should be excluded.  Accordingly, Droplets

10   respectfully requests that the Court preclude these agreements, which are detailed below, under Rule

11   403.

12   **A.    <u>FACTS</u>**

13        Yahoo's damages expert relies on five purportedly comparable licenses to opine on the

14   damages in this case.  The first four licenses relied upon by Yahoo's damages expert are settlement

15   agreements between Yahoo and third-party plaintiffs in other litigation asserting their own patents:

16   the Teknowledge, Aloft, Parallel Networks, and Portal licenses.  *See* Exs. 1-4.[11]  Yahoo's payments

17   under these third-party license agreements range from ▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.*

18        The fifth license is between Droplets and patent aggregator RPX Corp. ("RPX"), allowing

19   RPX to sublicense its members.  *See* Ex. 5.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.* § 1.2(a)(i), Ex. A (listing all ▮▮ RPX

22   members), Ex. J (listing defendants Droplets had sued, the "Droplets Defendants").  Under the RPX

23   license, RPX paid Droplets a total of ▮▮▮▮ million, of which ▮▮▮▮▮▮▮▮▮

24

25

---

26        [11] Yahoo's exhibit list also includes a number of other licenses its damages expert did not rely
     upon, but that Yahoo apparently intends to present to the jury (based on its exhibit list).  Some of these
27   licenses are additional settlements between Yahoo and third parties, including ▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Others are settlements between Droplets and third parties
28   (independent of the RPX agreement), including settlements with ▮▮▮▮▮▮▮▮▮▮▮▮.
     Droplets asks that these be excluded as well.

1

2    ████████████████████████████ *Id.* § 1.1(a).

3        All of the licenses upon which Yahoo's expert relies were negotiated before significant

4    discovery or motions practice that would enable the parties to fully assess the merits of the cases as

5    exemplified by the following table:

6

7

| LITIGATION PROGRESS AT DATE OF SETTLEMENT | | | | | | | |
|---|---|---|---|---|---|---|---|
| **License** | **Lawsuit filed** | **Answer to operative complaint filed?** | **Fact discovery in progress?** | **Fact discovery complete?** | **Claim construction complete?** | **Daubert rulings?** | **Summary judgment ruling?** |
| **Teknowledge** | ✔ | ✔ | ✔ | | | | |
| **Aloft** | ✔ | | | | | | |
| **Parallel Networks** | ✔ | ✔ | | | | | |
| **Portal** | ✔ | ✔ | ✔ | | | | |
| **"Droplets Defendants" (incl. Google) under RPX license** | ✔ | ✔ | | | | | |
| **RPX members whom Droplets had not sued** | | | | | | | |

8

9

10

11

12

13

14

15

16

17

18        In <u>Teknowledge</u>, the parties filed a joint case management statement in September 2004, about

19    two months before settlement. *See* Ex. 6. At that time, the parties requested almost an additional year

20    to complete fact discovery. *Id.* at 5 (suggesting August 15, 2005 deadline to complete fact discovery).

21    The parties had not yet filed claim construction briefing, final infringement contentions, or final

22    invalidity contentions, and the case was nearly two years away from a proposed trial date. *Id.* at 5-6.

23        In <u>Aloft</u>, the first complaint accusing My Yahoo was filed in July 2009, one month before

24    settlement. *See* Ex. 7 ¶ 8 (complaint accusing My Yahoo).[12] Yahoo had not even filed an answer.

25    Ex. 8 (docket).

26

27        [12] Aloft had previously sued Yahoo regarding other products not at issue in this case, including

    Yahoo's Browser product. *See* Ex. 9 (Bakewell Rep.) ¶ 248 (describing the other cases between Yahoo

28    and Aloft). However, the earlier litigation did not involve My Yahoo, Yahoo Mail, Yahoo Maps, or

    Yahoo Search. *See* Ex. 10 (complaint in earlier Aloft case) ¶ 6 (alleging Yahoo infringed through the

    "AT&T Yahoo Browser" without mention of any other Yahoo products).

In <u>Parallel Networks</u>, the plaintiff had not initially accused Yahoo, and added Yahoo Search as an accused product on March 25, 2011.  *See* Ex. 11 ¶ 138 (third amended complaint accusing search.yahoo.com); Ex. 12 ¶ 133 (earlier complaint accusing only Flickr).  The case settled approximately three weeks later, on April 18, 2011.  Ex. 3.  Again, there could not have been meaningful discovery into the accusations against Search in that brief window.  More broadly, the parties had apparently not yet begun discovery.  The case involved 124 separate defendants, making discovery necessarily an enormous undertaking.  *See* Ex. 13 (status conference transcript) at 70.  The court therefore issued an order approximately a month before settlement limiting the available discovery.  Ex. 14.  The court noted that because of the large number of defendants, "early production of extensive electronic discovery" would be "almost cost prohibitive."  *Id.* at 6.  The court thus "stay[ed] all discovery pending claim construction and summary judgment rulings by the Court, except discovery necessary for the narrow *Markman* and summary judgment motions."  *Id.* at 7.

In <u>Portal</u>, Yahoo described the state of the litigation in a brief it filed a few months before settlement, seeking a stay pending *inter partes* reexamination.  Ex. 15.  The parties had live disputes over claim construction that the court had not yet resolved.  *Id.* at 5-6.  "Both fact and expert discovery are far from complete in this matter.  Indeed, no depositions have been taken to date," and "no responses to interrogatory requests have been served."  *Id.* at 6.

Similarly, for the <u>RPX</u> license, the agreement ████████████████████ ████████████████████████████████████████████.  As to the Droplets Defendants who *had* been sued, at the time the RPX license settled that litigation, the parties had conducted no substantive discovery. The litigation against all the Droplets Defendants proceeded on a similar timeline.  To take Google as an illustrative example, Droplets sued Google on September 7, 2011.  Dkt. No. 1.  After amendments to the complaint and extensions for time to file an answer, Google filed its answer on December 2, 2011.  Dkt. No. 17, 19, 23, and 24.  In summer 2012, the Eastern District of Texas court transferred the case to this Court upon defendants' request.  Dkt. No.

84, 136, 139.  By that time, the parties had not even progressed far enough in discovery to negotiate a protective order.[13]

     After the transfer, the parties filed a case management statement in November 2012, which summarized the state of the litigation at that time.  *See* Dkt. No. 200.  Droplets' motion for a protective order (initially filed in Texas) remained pending.  *Id.* at 3-4.  Neither party had served requests for production.  *Id.* at 7.  Droplets had served a handful of interrogatories about "document production and electronically stored information."  *Id.*  The parties disputed whether Droplets' initial infringement contentions were sufficient, a dispute that the defendants maintained needed resolution "before this case can move forward."  *Id.*  A couple of weeks later, on November 27, the Court stayed the case.  Dkt. No. 222.  And three weeks after that, on December 18, Droplets signed the RPX agreement that settled the litigation.

     Droplets has objected to the admissibility of these licenses under Federal Rules of Evidence 401 and 403.  The parties conferred about this issue on May 4, 2021 but were unable to reach an agreement.

## B.    ARGUMENT

     Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

     Yahoo's affirmative damages theory relies on a series of licenses negotiated to settle pending litigation, some between Droplets and third parties and others between Yahoo and third parties.  The threshold question is whether these settlement licenses are sufficiently comparable to be admissible.  It is Yahoo's burden, as "the proponent of the license," "to establish sufficient comparability. . . ."  *Plexxikon Inc. v. Novartis Pharms. Corp.*, 2021 WL 97544, at *6 (N.D. Cal. Jan. 12, 2021).  Licenses

---

[13] The parties filed four motions to extend the deadline to propose a protective order, *see* Dkt. No. 98, 104, 107, 109, but they could not agree.  Droplets filed an opposed motion regarding the protective order on May 14, 2012.  Dkt. No. 112.  The parties finished briefing that motion on June 22, 2012, Dkt. No. 132, but the court had not ruled before it transferred the case on June 27.

1    cannot even be considered unless they are "sufficiently comparable." *Summit 6, LLC v. Samsung*

2    *Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

3          The Federal Circuit has long cautioned against reliance on settlement agreements to determine

4    a reasonable patent royalty.  As that court summarized in *LaserDynamics*, "[t]he propriety of using

5    prior settlement agreements to prove the amount of a reasonable royalty is questionable," and the

6    Federal Circuit has expressed "longstanding disapproval" of doing so.  *LaserDynamics, Inc. v. Quanta*

7    *Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (collecting cases).  This "notion that license fees are

8    tainted by the coercive environment of patent litigation" and thus "unsuitable to prove a reasonable

9    royalty is a logical extension of *Georgia-Pacific,*" because *Georgia-Pacific* assumes as a "premise"

10   that the parties to the hypothetical negotiation do not dispute validity and infringement.  *Id.*

11         That key difference between real-world settlement negotiations and the hypothetical

12   negotiation — whether the parties dispute liability and discount accordingly for litigation risk — often

13   renders settlement negotiations insufficiently comparable to be shown to the jury as evidence of a

14   reasonable royalty.  As the Federal Circuit noted, prior licenses are "often excluded" as "insufficiently

15   comparable," including because the license was "a litigation settlement agreement."  *Commonwealth*

16   *Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 n.2 (Fed. Cir. 2015) (collecting

17   Federal Circuit cases).  When parties negotiating a settlement dispute liability, they often negotiate

18   lower sums that are not reflective of the reasonable royalty.  *See, e.g.*, *Hanson v. Alpine Valley Ski*

19   *Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) (noting that the terms of settlement agreements

20   "should not be considered evidence of an established royalty" because "license fees negotiated in the

21   face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation")

22   (quotation, internal quotation marks, and alterations in original omitted).

23         These concerns inform the balance of probativeness and prejudice under Federal Rule of

24   Evidence 403.  *See, e.g.*, *LaserDynamics*, 694 F.3d at 78 (reversing district court for admitting a

25   settlement agreement, based on Rule 403); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360,

26   1368 (Fed. Cir. 2017) (analyzing admissibility of settlement agreement under Rule 403).  In *Prism*,

27   the Federal Circuit offered a framework for evaluating admissibility.  Defendants settle when "the cost

28   of the predicted judgment, discounted by its probability, plus the transaction costs of further litigation,

are greater than the cost of the settlement package." *Prism*, 849 F.3d at 1369 (quoting *Evans v. Jeff D.*, 475 U.S. 717, 734 (1986)).  Thus, those factors — "the cost of the predicted judgment, its probability, and costs of further litigation — help[] identify why and when a district court, conducting the inquiry required by Rule 403, can find earlier patent-suit settlements admissible in valuing a patented technology." *Id.* (internal quotation marks omitted).

The comparison of those factors in the settlement agreement versus the hypothetical negotiation informs the probativeness of the settlement agreement.  "What is needed for assessing the probativeness and prejudice components of the Rule 403 balance, then, is consideration of various aspects . . . of the particular litigation settlements offered for admission into evidence." *Id.* at 1370. On the one hand, a settlement agreement is more probative "if reached after the [settled] litigation was far enough along that the issue was already well explored and well tested," suggesting a more accurate estimate by the prior parties "of the range of plausible litigation outcomes." *Id.* at 1369.  By this logic, "a settlement agreement reached after a determination of liability (though subject to appeal) is particularly reliable as evidence of value." *Id.*; *see also id.* at 1371 (ultimately affirming admission of settlement entered into after nearly complete trial, when "the record was fully developed and thoroughly tested in the adversarial process" and "a very large share of litigation costs had already been sunk").  On the other hand, a settlement agreement is less probative if "it was lowered by the patent owner's discounting of value by a probability of losing on validity or infringement." *Id.* at 1369. The "settlement tends to undervalue the technology where it reflects a discount for the probability of losing" or because the patent holder "accept[ed] an amount out of a desire to avoid further expenditure of (presumptively unrecoverable) litigation costs." *Id.*

Accordingly, this Court has repeatedly excluded settlement licenses.  When licenses "were entered into early in the [prior] cases" with significant uncertainty over validity and infringement, "[t]he probative value of these licenses is thus limited while the risk of prejudice from skewed damages horizons before the jury is significant." *Plexxikon*, 2021 WL 97544, at *7 (granting motion to exclude licenses); *see also Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 451950, at *6-8 (N.D. Cal. Jan. 27, 2015) (excluding reliance on settlement after noting that "courts have long been reluctant to allow use

of settlement agreements to establish reasonable royalty damages in part because these agreements are made in a different context than the situation in which parties face in a hypothetical negotiation").

Here, Droplets objects to the admissibility of three categories of settlement licenses on Yahoo's exhibit list: (1) four agreements between Yahoo and third parties which Yahoo's damages expert relies upon as comparable; (2) various other agreements that Yahoo's expert disclaims but Yahoo apparently still plans to present; and (3) aspects of the RPX-Droplets agreement licensing Droplets' patent to the RPX patent aggregator.

### i.    Third-Party Yahoo Licenses Its Expert Finds Comparable

Yahoo relies on four licenses it signed with third parties which its damages expert contends are economically comparable: Teknowledge, Aloft, Parallel Networks, and Portal.  To be clear, these licenses do not concern Droplets' patent, but rather third-party patents that Yahoo contends are comparable.  They are inadmissible because they settled early-stage litigation while significant uncertainty about validity and infringement remained.  Moreover, their probativeness is further undercut because they do not even involve Droplets' patent, and the technologies at issue in these other cases did not enable the same or comparable features at Yahoo.

### a.  The Cases Settled Early In Litigation, When Significant Uncertainty Remained.

In terms of litigation discounting, these four agreements all settled litigation at an early stage, with limited discovery, when significant uncertainty remained about the merits.  As outlined in the facts section, *supra* p. 24-27, each of the four cases settled before discovery meaningfully began.

In both Aloft and Parallel Networks, the first time the plaintiffs accused a product at issue in this case was only a month before settlement.  *See* Ex. 7 (Aloft complaint first accusing My Yahoo, filed in July 2009, one month before settlement); Ex. 11 (Parallel Networks complaint first accusing Yahoo Search, filed in March 2011, three weeks before settlement).  Yahoo had not even filed an answer to the Aloft complaint.  *See* Ex. 8.  There could not have been meaningful discovery into these claims in only a month, and indeed in Parallel Networks, the court had expressly limited the available discovery.  Ex. 14 at 6-7.

1    Similarly, in Teknowledge and Portal, the parties had begun discovery, but it was far from

2    complete.  The latest Teknowledge case management statement requested another year to complete

3    fact discovery, Ex. 6 at 5, and the parties' briefing in Portal shortly before settlement indicated that

4    discovery was "far from complete," Ex. 15 at 6.  The parties had not yet completed claim construction

5    in either case.  Ex. 6 (Teknowledge) at 5-6; Ex. 15 (Portal) at 5-6.

6    Moreover, there is record evidence that the settlements in these cases were heavily influenced

7    by litigation uncertainty and the cost of litigation.  For example, in Parallel Networks, the parties had

8    engaged in a lengthy status conference about a month before settlement, in which the plaintiff's

9    lawyers described their settlement strategy and explained that they were accepting significant haircuts

10   from a reasonably royalty to avoid further litigation.  *See* Ex. 13 at 20 (explaining that the settlement

11   offers "have been based upon a fraction, a small fraction of what we believe we could acquire in a

12   reasonably royalty analysis").  Defendants' counsel likewise confirmed that the defendants "think they

13   do not infringe these patents" and would only settle "based upon cost of defense." *Id.* at 32-33.  In the

14   Court's order after the status conference, it summarized that the plaintiff had made settlement demands

15   "based on a small fraction of what it believes it could acquire through trial" and which were

16   "substantially less than what a Defendant would need to spend to bring its case to trial or *Markman*."

17   Ex. 14 at 4; *see also id.* at 6 (describing "settlement in a range that essentially amounts to litigation

18   costs").

19   Indeed, if anything, the progression of these cases had increasingly demonstrated certainty that

20   the patentholder was *unlikely* to ultimately prevail.  In Teknowledge, the Court granted Yahoo's

21   motion for summary judgment of invalidity and non-infringement on September 13, 2004.  *See* Ex.

22   16.  The parties settled *after that ruling* on October 22, 2004.  *See* Ex. 1.  Similarly, in Portal, a third

23   party had recently sought an inter partes reexamination, and the Patent and Trademark Office had

24   rejected all claims of Portal's patent on December 6, 2012.  Ex. 15; *see also* Ex. 17 (complaint

25   indicating that the rejected '418 patent was the only one asserted in the litigation).  The parties settled

26   a few months after that ruling.  Ex. 4.  Additionally, Portal had recently lost two motions to dismiss

27   against other defendants.  Ex. 15 at 6.  And in Parallel Networks, the court had granted Yahoo's motion

28   to dismiss all indirect infringement claims shortly before the settlement.  Ex. 18.  In short, rather than

1   approaching certainty that the asserted patents in these cases were valid and infringed, the

2   developments in the litigation in these cases had only served to suggest that the plaintiffs would *not*

3   prevail.

4       **b. The Prior Cases Concerned Different Patents That Enabled Different**
        **Yahoo Features And Technologies.**

5

6       In addition to the concerns about discounting for litigation risk, the probativeness of these

7   licenses is further diminished because they do not involve the asserted patent, so their probativeness

8   depends on whether the benefits provided by *other* patents is sufficiently comparable to the benefits

9   provided by Droplets' patent.

10      Yahoo and the Verizon intervenors apparently intend to argue that the different third-party

11  licenses are relevant to calculating the damages associated with different accused products in this case.

12  Specifically, their expert relies upon each license only to calculate damages for products accused in

13  the prior litigation that led to that license.  For example, Teknowledge accused Yahoo Search, so it is

14  purportedly relevant to calculate the damages associated with infringement through Yahoo Search in

15  this case (but not, for example, to calculate the My Yahoo damages in this case).  *See* Ex. 9 (Bakewell

16  Rep. ¶¶ 368-69) (███████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████████████

18  ███████████.

19      As Yahoo's analysis seems to acknowledge, prior settlements are only relevant to the extent

20  they settled claims that accused similar products of infringement (in addition to the other comparability

21  factors).  Indeed, the patent damages statute determines damages based on the "use made of the

22  invention by the infringer," 35 U.S.C. § 284, so it of course matters *how* Yahoo uses and benefits from

23  a particular patented technology.  A patented technology that enables one Yahoo product will not have

24  the same value as a different patented technology that enables Yahoo to offer a *different* product, with

25  different economic value to Yahoo.

26      The problem, however, is that Yahoo considers only the similarities in the accused *products* in

27  these prior cases, entirely ignoring what functionalities or benefits *within those products* the allegedly

28  comparable technology enabled.  The damages in this case stem from the value of particular accused

1   features.  For example, Droplets specifically claims that Yahoo would not have been able to offer

2   Search Suggest and Search History without Droplets' patented technology — it is the value of those

3   particular features, and not Yahoo Search as a whole, which drive the damages.[14]  But none of the

4   prior litigation settlements Yahoo wishes to rely upon concerned the same features which the jury

5   must consider in calculating damages here.  By way of an analogy, it would be like using as a

6   comparable a patent on a car's cup holder to determine the value of a patent on an all-electric engine.

7   The patents contribute totally different things.

8       For example, in <u>Teknowledge</u>, the plaintiff accused Yahoo Search.  But at the time of that

9   settlement in 2004, the Search Suggest feature at issue in this case *did not even exist*.  *See* Ex. 26 at 48

10  (interrogatory response confirming that Search Suggest was not introduced until July 2007).  The

11  Teknowledge license could not possibly have accounted for the value of a feature that did not yet exist.

12  Yahoo's damages expert report does not even address what features were enabled by the Teknowledge

13  patent, noting only that Teknowledge accused Yahoo's "search services" generally.  Ex. 9 (Bakewell

14  Rep.) ¶¶ 228-29.

15      In <u>Parallel Networks</u> — the only other case that involved Yahoo Search in any form — the

16  plaintiff simply alleged that search.yahoo.com, mail.yahoo.com, and maps.yahoo.com infringed.  *See*

17  Ex. 11 ¶ 138.  The operative complaint did not identify any accused functionalities of the named

18  products, and the case settled a few weeks after it was filed, without further clarification about accused

19  functionalities or any indication that same features at issue in this case were accused by Parallel

20  Networks.  Yahoo's damages expert, Bakewell, admitted in deposition that he did not know whether

21  Search Suggest was at issue in the Parallel Networks case.  Ex. 20 (Bakewell Dep.) at 182:1-8.  He

22  did not know whether the zooming and panning features of Yahoo Maps at issue here were accused

23  by Parallel Networks.  *Id.* at 182:17-183:4.  And he did not know what features of Yahoo Mail were

24  accused.  *Id.* at 183:5-13.  Bakewell said he would review the complaint to identify the accused

25

26  ───────────────

    [14] Indeed, this is the very point that Yahoo made in criticizing Droplets' damages expert —
    that patent damages must be apportioned to the value of the accused features in particular.  *See* Mot.
    to Preclude the Expert Testimony of Droplets' Damages Experts, ECF No. 617, at 10-11.  Droplets'
27  damages expert *did* apportion to the value of the specific accused features, and the same logic applies
    in assessing the relevance of the license agreements Yahoo wishes to introduce for its damages case.
28  The evidence is only probative to the extent it allows the jury to value the accused *features*, not Yahoo
    Search as a whole.

functionalities — but the complaint provides no further detail about accused functionalities. And Bakewell's report again says nothing about what Yahoo features were enabled by the Parallel Networks patent, listing only the Yahoo *websites* which were accused. Ex. 9 (Bakewell Rep.) ¶ 265. Thus, there is no evidence in the record to determine that Parallel Networks accused similar functionalities to those at issue in this case.

In <u>Aloft</u>, the plaintiff accused My Yahoo, but the complaint contained no detail about accused functionalities. Ex. 7 ¶ 8. The parties settled only one month after the complaint accusing My Yahoo was filed, without further clarification about accused functionalities. Ex. 2. Bakewell again admitted in deposition that he did not know what functionalities of My Yahoo were accused in the Aloft case, beyond the limited information in the complaint itself. Ex. 20 (Bakewell Dep.) at 177:18-25. His expert report again said nothing about what features the patent enabled, stating only that Aloft "alleged that Yahoo's computer software products, including the My Yahoo website," infringed. Ex. 9 (Bakewell Rep.) ¶ 248.

Finally, in <u>Portal</u>, the plaintiff likewise accused My Yahoo, but the complaint again provided no detail about accused functionalities. Ex. 17 ¶ 8. In his report, Bakewell concluded only that the Portal license was "*potentially* relevant from a technical standpoint." Ex. 9 (Bakewell Rep.) ¶ 280 (emphasis added). And he offered no detail about what features were accused or enabled by the Portal patent, noting only that My Yahoo was accused in some form. *Id.* ¶ 282.

These differences in the accused functionalities critically undermine the probativeness of these licenses. The mere fact that these cases involved the same broad products is not enough because they provide no benchmark for the value of the specific *functionality* or *technology* accused in this case. "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79. The Federal Circuit "has long required district courts preforming reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis in original). Just as the *ResQNet* court did not permit a plaintiff to inflate the reasonable royalty by using "conveniently selected licenses without an economic or other link to the technology in question," *id.* at 872, defendant

1   cannot deflate the damages through the same gambit.  Comparable licenses must involve technology

2   "commensurate with what the defendant has appropriated." *Id.*

3          When the party relying on licenses to other patents "has not shown that the technology is

4   comparable" and "introduces no evidence that . . . the value of potential infringement was comparable

5   to the reasonable value here," "[t]he probative value of these licenses is thus limited while the risk of

6   prejudice from skewed damages horizons before the jury is significant." *Plexxikon*, 2021 WL 97544,

7   at *7 (excluding allegedly comparable licenses, criticizing the comparability analysis for focusing on

8   the patents' "breadth and relation to each other, rather than the value of the invention").  Comparability

9   encompasses not only which products are accused, but "more specifically," the "technology that [the

10  defendant] would seek to license in the hypothetical negotiation." *Apple, Inc. v. Samsung Elecs. Co.*,

11  2014 WL 794328, at *10 (N.D. Cal. Feb. 25, 2014) (excluding licenses).

12         The four third-party licenses Yahoo relies upon simply do not meet this standard.  There is no

13  evidence that they involved any of the specific functionalities at issue in this case, nor any reason to

14  believe that every technology involved in a broad Yahoo product like Search has a similar value.  The

15  valuation of unrelated functionalities and technologies that simply happen to be part of the same Yahoo

16  website is not sufficiently probative to outweigh the significant prejudice from showing the jury

17  lowball settlement agreements for unrelated technologies.  As the proponent of the evidence, Yahoo

18  cannot meet its burden to establish admissibility, and neither the licenses themselves nor testimony

19  about their terms is admissible.

20         **ii.      Other Third-Party Yahoo Licenses Its Expert Disclaims**

21         Droplets also seeks to exclude testimony or evidence about a series of settlement agreements

22  between Yahoo and third parties which *even its own damages expert disclaims* as non-comparable.

23  Yahoo's technical expert, Dr.

24         Shamos, ███████████████████████████████████████

25  ██████████████████████████████████.  Ex. 21 (Shamos Rep.), Section

26  XI(H); *see also* Ex. 20 (Bakewell Dep.) at 39:5-11.  Yahoo's damages expert explained that he looked

27

28

1    at some other agreements, but he only fully evaluated the four that Dr. Shamos found technically

2    comparable.  Ex. 20 (Bakewell Dep.) at 113:8-114:9.

3        Despite Bakewell and Shamos's analysis of only four purportedly comparable licenses

4    between Yahoo and third parties, other agreements nonetheless remain on Yahoo's exhibit list,

5    including Yahoo agreements with ████████████████████████████.  These

6    agreements are not relied upon or discussed in Yahoo's expert reports.[15]  Because they were not

7    identified as a basis for Yahoo's damages theories, they were not discussed at length in deposition,

8    but Yahoo's damages expert affirmatively disclaimed the comparability of at least one of these licenses

9    in passing.  *See* Bakewell Dep. at 109:16-21 (giving "██████████" as an example of a license that

10   was not economically comparable).  Droplets asked Yahoo in meet-and-confer calls why these

11   agreements would be relevant, but Yahoo provided no explanation.

12       Likewise, Yahoo has marked Droplets' agreements with ██████████.  But

13   Yahoo's damages expert explicitly conceded that these licenses are not comparable.  *See* Ex. 9

14   (Bakewell Rep.) ¶ 179 (stating that "[t]hese agreements are not instructive of a reasonable royalty"

15   because "[t]he business models of these companies are not comparable to that of Yahoo").

16       There is no justification for Yahoo to introduce licenses its own experts do not rely upon and

17   in some cases explicitly concede to be non-comparable.  Non-comparable licenses offer nothing in

18   terms of probativeness.  *See, e.g.*, *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *5 (N.D. Cal. Jan.

19   23, 2015) (holding that concededly non-comparable licenses "are irrelevant and simply have no place

20   in this case" (quotation, internal quotation marks, and alteration in original omitted)).  They thus can

21   only serve to prejudice Droplets and confuse the issues.  Accordingly, courts regularly exclude licenses

22   that a party admits to be non-comparable.  *See, e.g.*, *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247,

23   at *5 (N.D. Cal. Apr. 16, 2014) (excluding testimony about licenses that an expert had "argue[d] earlier

24   in his report" were "not comparable"); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006,

25   1016 (N.D. Cal. 2013) (excluding reference to licenses that expert admitted "are for technologies that

26   are not comparable to the technology of the patents-in-suit"); *Open Text*,  2015 WL 349197, at *5

27

28       ───────────
         [15] The only place these licenses are mentioned is in an appendix to Bakewell's report, Exhibit 6, that lists every license Bakewell considered as *potentially* comparable. *See* Ex. 40.

1  (excluding licenses, "including any attempt to mention the non-comparable licenses as 'background'

2  evidence," where expert "affirmatively rejected the licenses as non-comparable").

3      **iii.    RPX License**

4      Droplets also seeks to exclude certain licensing fees in the RPX agreement for similar reasons.

5  As discussed *supra*, p. 24-25, the █████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████████d.  In this

8  motion, Droplets seeks to exclude references to ████████████████████████████████

9  █████████████████████████.[16]

10      The fee RPX negotiated to offer a bulk license to more than a hundred of its members who had

11  not even been sued or accused of infringement, the vast majority of whom did not operate search

12  engines and none of whom offered features analogous to Search Suggest, are not probative of what

13  *Yahoo* would have paid to license the Droplets patent in a hypothetical negotiation.  But the ███

14  ███████████████████████████████  are highly prejudicial, because they imply a very low per-

15  company license fee by averaging in the low fees paid by ███████████████  companies who faced

16  no realistic threat of being sued for infringement.  Accounting for the factors identified in the case

17  law, ██████████████████████  figures in the RPX license should be excluded for at least three

18  reasons.  First, those sums were paid to license companies before litigation against them was ever filed

19  or even anticipated — the most extreme scenario in terms of uncertainty about the merits of any

20  potential lawsuits. Second, the RPX members who had not been sued did not gain benefits from the

21  Droplets' patent comparable to the benefits Yahoo obtained; the vast majority did not even operate

22  search engines, and there is no evidence *any* of the un-sued RPX members offered features analogous

23

24      [16] Droplets also has serious concerns about the admissibility of the RPX agreement as a whole,
including the $27 million figure allocated to the Droplets Defendants who settled through RPX.

25  However, Droplets believes the admissibility of the agreement as a whole would be better informed
by the Court's forthcoming rulings on *Daubert* motions and other motions in limine.  Should Droplets

26  seek to exclude the entire RPX agreement, it will raise any such objection at trial.

27

28      Accordingly, to be clear, Droplets at this time does not object to Yahoo's damages expert's
use of the $27 million settlement as applied to Google, but does object to use of any other settlement
figures in the RPX agreement.

to those accused here. Third, the structure of the bulk license — a large group deal negotiated through a patent aggregator — does not mirror the hypothetical negotiation between Droplets and Yahoo. It is Yahoo's burden to establish the comparability of these licenses, and its expert does not.

### a. The License To Un-Sued RPX Members Was Negotiated Without Any Threat Of Litigation Or Assertion Of Infringement.

The RPX agreement specifically identifies which RPX members had been sued at the time the agreement was negotiated. *See* Ex. J to Ex. 5. For the ▮▮▮▮▮▮▮▮▮▮ other RPX members, *see* Ex. A to Ex. 5, there had been no lawsuits filed. Nor is there any evidence to suggest Droplets *could* reasonably have accused the vast majority of those companies of infringement. Many of the RPX members did not even operate web-based businesses; the list includes ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *Id.*

These facts are at the opposite extreme from those that justify admission of licenses. The Federal Circuit has suggested that licenses are admissible and comparable when the dispute between the patent holder and licensee had been "well explored and well tested" in litigation to help the parties accurately estimate "the range of plausible litigation outcomes." *Prism*, 849 F.3d at 1369. For this reason, settlement agreements are most likely to be admissible "after a determination of liability" when the only remaining uncertainty stems from appeal. *Id.* Here, in contrast, litigation had not even been *filed or threatened to be filed* against the ▮▮▮▮▮▮▮▮▮▮ RPX members who were not Droplets Defendants. The fact that that set of companies obtained a license for ▮▮▮▮▮▮▮ as a group says nothing about what Yahoo would have paid in a hypothetical negotiation in which it assumed it infringed Droplets' valid patent, and where the infringing features are so central to Yahoo's product and business. Not only were the un-sued RPX members not *certain* they infringed, they had not even been *accused* of doing so. There is no possible earlier-stage settlement than one before litigation was even threatened against the licensees.

Moreover, even for the RPX members who *had* been sued, there is concrete evidence here that uncertainty about litigation outcomes significantly depressed the figures in the RPX agreement. For example, in the related Sears litigation, Droplets' CFO, Ingo Theuerkauf, testified that Droplets "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ██████████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████" Ex. 22 at 269:24-270:13.  Similarly,

3  Droplets' CEO, David Berberian, testified in deposition that the numbers in the RPX agreement

4  reflected "████████████████████████████████████████████████████████████

5  ████████████████████████████." Ex. 23 at 237:11-21. "[███████████████████████

6  ██████████████████████████████" *Id.*; *see also id.* at 240:19-241:12.

7          Indeed, the ultimate outcomes for Droplets Defendants who ████████████████████

8  ████████████████████████████████ proves that the numbers RPX negotiated were

9  significantly depressed from those which the licensee would have negotiated at a hypothetical

10 negotiation.  The outcomes for Sears and Overstock prove this point.  Both companies had been sued

11 by Droplets at the time the RPX license was negotiated, *see* Ex. J to Ex. 5, and ████████████

12 ████████████████████████████████████████████████████████████████, *see* Ex.

13 C to Ex. 5.  ██████████████████████████████████████████████████████████

14 ████████. But Sears and Overstock ████████████████████ proceeded to trial, at which a jury

15 found that the amount they would have paid in a hypothetical negotiation was $11 million for Sears

16 and $4 million for Overstock.  *See* Ex. 24 at -2116.  The fact that the outcomes of the hypothetical

17 negotiations, as determined by a jury, ██████████████████████████████████████████

18 underscores that the RPX figures were depressed by the litigation uncertainty that surrounded such

19 early-stage settlements of the filed cases against the Droplets Defendants like Sears and Overstock.

20 Those concerns about comparability are all the more extreme when applied to the ████████ figure

21 that settled *unfiled*, theoretical litigation against un-sued companies who had not even been accused

22 of infringement.

23          Again, these facts fit neatly into the dichotomy established in *Prism*.  That case emphasized

24 that a settlement agreement is less probative if "it was lowered by the patent owner's discounting of

25 value by a probability of losing on validity or infringement" or "out of a desire to avoid further

26 expenditure of (presumptively unrecoverable) litigation costs."  *Prism*, 849 F.3d at 1369.  And the

27 existence of actual evidence demonstrating the power of litigation discounting in driving settlement

28 distinguishes this fact pattern from others in which the impact of such considerations was less clear.

*Cf. Open Text S.A. v. Box, Inc.*, 2015 WL 393858, at *5 (N.D. Cal. Jan. 29, 2015) (ultimately admitting comparable licenses, with a warning to the proponent of the evidence to be "mindful" "of the Federal Circuit's teachings on misuse of settlement agreements for royalty determinations," where there was "no evidence suggesting that the royalties associated with the settlement agreements were depressed because they were entered into in the context of litigation").

### b. The Un-Sued RPX Members Did Not Gain Benefits From Licensing The Droplets Patent Comparable To The Benefits Yahoo Obtained.

As with the third-party Yahoo licenses, the ███████ paid to license the un-sued RPX members is also non-comparable because those members did not obtain similar benefits from the Droplets patent as did Yahoo.  The question, again, is whether the licensed parties *used* Droplets' patent in a similar way to Yahoo.  35 U.S.C. § 284.

The un-sued RPX members largely do not operate in Yahoo's industry and could not plausibly have used Droplets' patent the way Yahoo is accused of using it.  The vast majority of un-sued RPX members do not operate search engines, and ███████████████████████panies. The way such companies would use Droplets' patent — if at all — would be totally different than how Yahoo is accused of using it.  Indeed, even Yahoo's expert finds it unreliable to estimate the Yahoo reasonable royalty based on the licensing fees paid by "businesses that [are] different than Yahoo," like "e-commerce companies."  Ex. 9 (Bakewell Rep.) ¶¶ 179, 454, 586 (distinguishing various licensees' business models as insufficiently comparable).  By the same logic, the ███████ paid to jointly license ███████████████ companies are not probative of what Yahoo would have paid.

While ███████████████████████████████████,[17] there is no evidence that Droplets had threatened to sue them, nor any evidence that those companies offered features analogous to Search Suggest or products comparable to all the other accused products in this case (like Maps and My Yahoo).  The Bakewell report describes these three companies only as "competitors in the search space," without addressing whether they offered features analogous to the Yahoo accused features like Search Suggest or whether they offered features competing with the other

---

[17] The list of RPX members includes ███████████████████████████████████. *See* Ex. A to Ex. 5; Ex. 9 (Bakewell Rep.) ¶ 569;

accused products.  Ex. 9 (Bakewell Rep.) ¶ 198.  Asked in deposition, Bakewell could identify no

basis to opine that the ███████████████ operated features analogous to Search Suggest or

Search History. Ex. 20 (Bakewell Dep.) at 217:11-24 (████), 218:23-219:6 (████), 220:20-221:8.

He could only suggest he would ask Yahoo's technical expert, *id.*, whose report likewise contains no

analysis about whether the un-sued search engines offered such features.  Thus, there is no evidence

in the record through which Yahoo could meet its burden to show these ███ search engines used

Droplets' patent in a similar way to Yahoo's use (i.e., to operate Search Suggest and Search History

features).  And Bakewell admitted that ███████████████████████████████████████████

███████████████████████  *See, e.g.*, Ex. 20 (Bakewell Dep.) at 219:7-17 (████████████████

█████████████).  Even these ███ companies — who represent only a tiny fraction of the un-

sued RPX members included in the ██████ licensing fee — did not use Droplets' patent in a

way comparable to Yahoo's use or obtain comparable benefits.

### c.   Negotiating A Bulk Deal For ██████ Of RPX Members Is Not Comparable To The One-On-One Structure Of A Hypothetical <u>Negotiation.</u>

Finally, the probativeness of the RPX license is further discounted because of its unusual

structure — a single payment permitting sublicensing of █████████████ unrelated parties,

negotiated through a patent aggregator.  Rather than Droplets negotiating directly with the infringers

(as in the hypothetical negotiation), Droplets negotiated a large number of licenses through RPX in

one fell swoop.  That arrangement surely shifted the balance of negotiating power: RPX jointly

represented ██████ of companies, including the majority of companies Droplets had sued, giving it

significant leverage to demand a lower rate (especially for companies Droplets had not sued and was

not prioritizing in the negotiation of the bulk license).

A Court in this district has previously excluded the terms of a patent license agreement with

RPX for these very reasons.  *See Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, 2014 WL 4090550, at

*4 (N.D. Cal. Aug. 19, 2014).  In that case, the opponent of the evidence argued that the "license is of

limited relevance to [the defendant's] hypothetical licensing posture" "[b]ecause RPX's business

model is unique."  *Id.*  The Court agreed that the payment under the agreement would "skew the jury's

1    perception of a reasonable royalty, causing unfair prejudice," and thus excluded reference to "the

2    actual amount" paid under the agreement. *Id.* at *5.

3    **C.    <u>CONCLUSION</u>**

4    Droplets respectfully requests that, pursuant to Federal Rule of Evidence 403, the Court

5    preclude Yahoo, Oath, Inc., or Oath Holdings Inc. from introducing or presenting argument, evidence

6    or testimony about the four Yahoo agreements with third parties Yahoo's expert contends to be

7    comparable (Teknowledge, Aloft, Portal, and Parallel Networks); the Yahoo and Droplets agreements

8    Yahoo's expert does not contend are comparable (Yahoo's agreements with ███████████████████

9    ███████████████████, and Droplets' agreements with ███████████████████); and the

10   ███████████████████ licensing fees under the RPX agreement.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**VII.  DROPLETS MOTION IN *LIMINE* NO. 7: PATENT MISUSE AND ANTITRUST, INCLUDING ARGUMENT THAT DROPLETS IS MISUSING PATENTS OR VIOLATING ANTITRUST LAWS**

3

4

5

6

7

8

9

10

11

Yahoo seeks to introduce into evidence academic articles and treatises that both criticize the patent system of the United States and also summarize the legal standard for calculating patent damages.  Introduction of such evidence is problematic on multiple grounds.  Criticisms of the patent system suggest that the patent system itself is on trial, and by implication, that Droplets should not be allowed to assert or protect its patents, and thus risk misleading the jury as to what information is relevant to its decision and what it should be deciding.  Likewise, treatises on the legal standard risk confusing the jury as to its role; the jury does not decide what the applicable law is — that is distinctly the role of the Court.  In short, these articles and treatises are irrelevant, prejudicial, and likely to confuse the jury, and should be excluded under Rules 402 and 403 of the Federal Rules of Evidence.

12

**A.     ARGUMENT**

13

14

15

16

17

18

19

20

21

22

23

24

Yahoo seeks to introduce academic articles theorizing that the patent system is broken, leads to patent misuse, and/or raises anticompetitive concerns.[18]  Such evidence serves no proper purpose in this case.  The patent system in the United States is not on trial, and academic scholarship investigating purported flaws in the patent system has no "tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence."  Fed. Rule Evid. 401.  To the contrary, the messages in these articles suggest that parties should not be entitled to avail themselves of the protections of the patent system — in other words, they encourage the jury to decide the case based on extraneous issues not related to the facts of this case.  For example, articles that argue why "[s]tandard setting raises a variety of antitrust issues,"[19] or that summarize the "harmful effects of patent hold-ups"[20] have nothing to do with the specific facts of this case but merely smear the patent system in general.  Such evidence is irrelevant under Fed. R. Evid. 401 and 402.

25

26

[18] The articles and treatises on the patent system that Droplets moves to exclude are attached as Exhibits 41-48.

27

[19] Ex. 42 (Farrell, Joseph, Hayes, John Shapiro discussed, Carl, and Sullivan, Theresa, "Standard Setting, Patents, and Hold-Up, Antitrust Law Journal, Volume 74, No. 3 (2007)).

28

[20] Ex. 41 (Lim, Daryl, "Misconduct in Standard Setting: The Case For Patent Misuse," ATRIP Essay Competition 2009, p. 1).

1        The same articles and treatises also risk misleading the jury and subjecting Droplets to unfair

2    prejudice.  The Court should exclude even relevant evidence under Fed. R. Evid. 403 when there is a

3    "significant danger" that the jury would be distracted by the evidence and base its decision on

4    "extraneous matter[s]" that are not relevant to the issues in the case.  *Tennison v. Circus Circuit Enters,*

5    *Inc.*, 244 F.3d 684, 690 (9th Cir. 2001).  Yahoo's apparent purpose in relying on articles noting abuses

6    of the patent system is to imply that Droplets is guilty of some misdoing and should not prevail.

7    Permitting such evidence risks the jury determining liability based on its assessment of the patent

8    system overall, rather than on the particular facts of this case.  The jury should not be evaluating the

9    merits of the patent system — to the contrary, it should assume the patent system is valid and that its

10   laws and protections should be enforced.  *See U.S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)

11   (evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis,

12   commonly, though not necessarily, an emotional one").

13       Yahoo also seeks to introduce into evidence scholarly treatises that summarize the legal

14   standard for calculating patent damages.[21]  This usurps the role of the Court in instructing the jury as

15   to the law, and it lacks any probative value since the jury has no role in determining what legal

16   standards to apply.  *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *9 (N.D. Cal. June

17   30, 2012) (excluding under Rule 403 expert testimony regarding Samsung's burden of proof because

18   such testimony "usurps the role of the Court"); *see also U.S. v. Poschwatta*, 829 F.2d 1477, 1484 (9th

19   Cir. 1987) ("The court acts as the jury's sole source of the law."), overruled on other grounds

20   recognized by *U.S. v. Powell*, 936 F.2d 1056, 1064 n.3 (9th Cir. 1991).  Such evidence poses the

21   substantial risk of confusing the issues in the case by presenting to the jury treatises on the law of

22   patent damages.  The Court should exclude all such evidence from trial.

### B.    <u>CONCLUSION</u>

24       Droplets respectfully requests that the Court grant Droplets' motion *in limine* to exclude

25   articles and treatises on the patent system and on patent damages law.

---

[21] The treatises summarizing the legal standard for calculating patent damages that Droplets moves to exclude are attached as Exhibits 49-59.

1

2

**VIII.    DROPLETS MOTION IN *LIMINE* NO. 8: PATENT ELIGIBILITY OF THE
          ASSERTED CLAIMS AND INDEFINITENESS OF CLAIMS 17 AND 50**

3

Yahoo seeks to make two invalidity arguments to the jury that are not properly in this case,

4

and therefore violate Rule 403 because the issues are not relevant and threaten to mislead the jury.

5

These two arguments are: (1) patent eligibility and (2) indefiniteness.  Neither of these arguments are

6

ripe for jury consideration in the circumstances of this case and therefore would only stand to mislead

7

the jury.  Accordingly, Droplets moves under Rule 403 for preclusion of both attorney argument and

8

evidence on these issues.

9

**A.    ARGUMENT**

10

**i.    Eligibility**

11

12

First, Yahoo intends to argue that the '745 patent is invalid for lack of patent eligibility under

13

35 U.S.C. § 101, but that question is not one appropriate for the jury in the circumstances of this case.

14

The law of patent eligibility is governed by § 101, which provides that "[w]hoever invents or discovers

15

any new and useful process, machine, manufacture, or composition of matter, or any new and useful

16

improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this

17

title."  The Supreme Court has long interpreted § 101 to include an implicit exception carving out laws

18

of nature, natural phenomena, and abstract ideas.  *Mayo Collaborative Servs. v. Prometheus Lab'ys,*

19

*Inc.*, 566 U.S. 66, 70 (2012) (collecting cases).  In *Mayo* and, later, *Alice*, the Supreme Court provided

20

"a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract

21

ideas from those that claim patent-eligible applications of those concepts."  *Alice Corp. Pty. v. CLS*

22

*Bank Int'l*, 573 U.S. 208, 217 (2014).  The test is simple in articulation but often difficult to administer:

23

"First, we determine whether the claims at issue are directed to one of those patent-ineligible

24

concepts," and, "[i]f so, we then ask 'what else is there in the claims before us?'" *Id.* (cleaned up).  To

25

answer that second question, courts "consider the elements of each claim both individually and 'as an

26

ordered combination' to determine whether the additional elements 'transform the nature of the claim'

27

28

into a patent-eligible application." *Id.*  This second question is referred to as a search for an "inventive

concept," *id.* at 218–19.  The two-steps of the *Alice/Mayo* analysis are often referred to as "step one"

and "step two."  *See, e.g.*, *id.*; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765, 773 (Fed.

Cir. 2019), *cert. denied*, 140 S. Ct. 983, 206 L. Ed. 2d 135 (2020); *Packet Intel. LLC v. NetScout Sys.,*

*Inc.*, 965 F.3d 1299, 1307 (Fed. Cir. 2020), *cert. denied*, 209 L. Ed. 2d 552 (Apr. 19, 2021).

Here, Yahoo seeks to submit only the step two question to the jury.  *See* Ex. 30 at 30–33.  To

be sure, had step one of the eligibility test already been resolved against Droplets — with the court

concluding that the claims are directed to an abstract idea — submitting step two to the jury might

have been appropriate.  But step two's "inventive concept" question can only arise *after* a step one

determination, and none has been made here.  The "inventive concept" step "requires [the fact finder]

to look with more specificity at what the claim elements add, in order to determine 'whether they

identify an "inventive concept" in the application of *the ineligible subject matter' to which the claim*

*is directed*."  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016)

(quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)) (emphasis

added).  The question is whether the "elements of the claim" contain "an 'inventive concept' sufficient

to 'transform' *the claimed abstract idea* into a patent-eligible application." *Alice*, 573 U.S. at 221; *see,*

*e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) (emphasis added) (same).

That question simply cannot be answered without a determination of what the "*abstract idea*"

is.  Yahoo never asked this Court to make an abstract idea determination in any form — not in a Rule

12(b)(6) motion nor at summary judgment.[22]  The time for making such motions has long passed.  *See,*

---

[22] Not even Yahoo maintains that this question is one for the jury.  *See* Ex. 30 at 30–33 (offering an instruction that *only* addresses step two).  The Federal Circuit has repeatedly resolved step one as a matter of law, even when step two raises factual issues unfit for resolution by the bench.  *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–71 (Fed. Cir. 2018) (agreeing with the district court that the claims were directed to an abstract idea but vacating the judge's determination at step two for certain claims because step two raises a "question of fact" that was inappropriate to resolve at summary judgment; *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-91 (Fed. Cir. 2018) (recognizing that fact issues may exist at step two of the *Alice* inquiry but making no similar observation for step one).

*e.g.*, ECF No. 518 (setting a summary judgment deadline of January 20, 2021).  Without such an antecedent ruling, the jury cannot decide whether the alleged "abstract idea" has been transformed into a patent-eligible application by the presence of an "inventive concept."  To ask them to do so would be highly misleading and prejudicial in violation of Rule 403.

Accordingly, Droplets respectfully requests that the Court exclude any argument or evidence about eligibility before the jury.

### ii.   Indefiniteness

Yahoo also maintains an indefiniteness defense through the report of its expert on invalidity, Dr. Benjamin Bederson.  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008) (quoting *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)).  To be sure, indefiniteness *can* be tried to a jury "where the issue are factual in nature."  *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003).  That is not the case here.

Dr. Bederson offers the opinion that claims 17, 50, and 78 are indefinite (claim 50 depends from claim 17).  Droplets seeks an in *limine* ruling only on Dr. Bederson's opinion regarding claims 17 and 50.  In Dr. Bederson's view, claim 17 and 50 are indefinite because (1) Droplets "ignored" aspects of the "presentation client program" limitation in its contentions and failed to "establish" the element, Ex. 31 (Bederson Main Report) at 200–01; (2) "Defendant does not perform any act of infringement" with respect to the "network configured processing system" limitation and the contentions do not provide "an explanation for this term," *id.* at 201–02; (3) the "communication connection" limitation "is not a proper apparatus/system claim element," *id.* at 202; and (4) claim 50 is "indefinite as a matter of law" for "impermissibly mix[ing] classes of subject matter," *id.* at 204.

None of these are issues of fact.

As to (1) and (2), Yahoo's arguments regarding the sufficiency of Droplets' contentions do not raise any fact issue for the jury to resolve. Whether Droplets explained a term in its contentions is not relevant to indefiniteness and, at best, the jury should not be tasked with determining whether Droplets' contentions are sufficient.

Even more troubling are Dr. Bederson's arguments with respect to (3) and (4): Dr. Bederson faults the claim language for "violat[ing] the *IPXL* line of cases," which involve mixed statutory subject matter, Ex. 31 at 202, and argues for indefiniteness "as a matter of law," *id.* at 204. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Whether a claim "violates" a "line of cases" is a legal question the jury is unequipped to resolve (let alone a technical expert). Juries do not determine whether claims are indefinite "as a matter of law." Yahoo itself has not proposed a jury instruction providing the jury with any information about the *IPXL* line of cases, so it is unclear what the jury's determination ultimately would be based upon. *See* Ex. 30; *Roberts v. Cooper*, 61 U.S. 467, 481, 15 L. Ed. 969 (1857) ("[C]ounsel cannot appeal to a jury to decide legal questions by reading cases to them.")

Droplets is not concerned at this point with Dr. Bederson's opinions about fact issues, including his opinion regarding claim 78. But the four indefiniteness positions outlined above — which critique the sufficiency of Droplets' contentions and require legal analysis from the jury regarding the "*IPXL* line of cases" — raise legal issues that are inappropriate for jury consideration. Such arguments are inadmissible because they do not pertain to any issue to be decided by the jury, and for the same reason are unduly prejudicial and threaten to mislead the jury. They are thus inadmissible under Rule 403. *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *9 (N.D. Cal. June 30, 2012) (excluding under Rule 403 expert testimony regarding Samsung's burden of proof because such testimony "usurps the role of the Court"); *see also U.S. v. Poschwatta*, 829 F.2d 1477, 1484 (9th Cir. 1987) ("The court acts as the jury's sole source of the law."), *overruled on other grounds*

*recognized by U.S. v. Powell*, 936 F.2d 1056, 1064 n.3 (9th Cir. 1991).   Accordingly, Droplets respectfully requests that the court preclude presentation of these purely legal indefiniteness issues to the jury.

1

2

**IX.    DROPLETS MOTION IN *LIMINE* NO. 9: YAHOO'S ARGUMENTS REGARDING FAILURE TO MARK PRODUCTS IN ACCORDANCE WITH 35 U.S.C. § 287**

3

4

Yahoo seeks to argue at trial that Droplets' damages should be limited based on a defense that

5

Droplets failed to mark a patented product with the patent-in-suit.  The law places the burden on Yahoo

6

to identify any such products Yahoo alleges were not marked.  Droplets issued discovery request

7

asking Yahoo to identify any such products.  Yahoo did not.  Accordingly, under Rule 37, Yahoo

should be precluded from presenting such evidence at trial.

8

**A.    ARGUMENT**

9

Information not disclosed in discovery is inadmissible for purposes of trial.  Rule 37(c)(1) of

10

the Federal Rules of Civil Procedure provides:

11

> If a party fails to provide information or identify a witness as required by Rule 26(a) or
> (e), the party is not allowed to use that information or witness on a motion, at a hearing,
> or at trial, unless the failure was substantially justified or is harmless.

12

13

Fed. R. Civ. P. 37(c)(1).  Rule 26(a) in turn requires a party to make initial disclosures of information

14

and witnesses; and Rule 26(e) requires a party to "supplement or correct" a disclosure under Rule

15

26(a) or a response "to an interrogatory, request for production, or request for admission" "in a timely

16

manner if the party learns that in some material respect the disclosure or response is incomplete or

17

incorrect."  Fed. R. Civ. P. 26(a), (e).  Rule 37(c)(1) thus bars the use of late-disclosed information

18

and witnesses unless the party facing exclusion can show that its late disclosure was substantially

19

justified or harmless.  *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (party

20

facing Rule 37(c)(1) sanctions bears burden of proving that failure to disclose was substantially

21

justified or is harmless).  Absent such a showing, Rule 37's sanction is "self-executing" and

22

"automatic."  Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment; *accord Goodman*

23

*v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (same).

24

Section 287 states, in relevant part, that failure to mark a "patented article" will cause the

25

patentee's damages to be limited to the period after the patentee notified the accused infringer of its

26

infringement.  35 U.S.C. § 287.  Under the controlling law, "an alleged infringer who challenges the

27

patentee's compliance with § 287 bears an initial burden of production to articulate the products it

28

believes are unmarked 'patented articles' subject to § 287."  *Arctic Cat Inc. v. Bombardier*

*Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017); *see Altair Logix LLC v. Asus Computer Int'l*, 2019 WL 1117535, at *3 (N.D. Cal. Mar. 11, 2019).  While the accused infringer's burden is "a low bar," the accused infringer must still "put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Arctic Cat Inc.*, 876 F.3d at 1368; *see Freeny v. Fossil Grp., Inc.*, 2019 WL 8688587, at *3 (E.D. Tex. July 24, 2019) ("While Fossil may bear a low burden of production on § 287(a), it is a burden that nonetheless must be met.").

In discovery, Droplets asked Yahoo to identify all "factual and legal bases for each of Your counterclaims and affirmative defenses," which naturally would include evidence of a product that allegedly was not marked. Ex. 26 at 5; Ex. 27 at 4.  In response, Yahoo failed to identify any particular product.  Instead it stated, in relevant part:

> To the extent Droplets seeks damages for alleged infringement prior to its giving actual or constructive notice of the '745 Patent to Yahoo, the relief sought by Droplets is barred by 35 U.S.C. § 287.  Based on its investigation thus far, Droplets provided no notice of the '745 Patent to Yahoo prior to filing this action on Sept. 7, 2011.

Ex. 26 at 10; Ex. 27 at 12.[23]  Yahoo supplemented its response regarding other defenses twice, but still did not identify a product it alleges was not marked. Ex. 26 at 14, 26.

Further, while Yahoo's responsive damages contentions assert that "Droplets' efforts and/or failure to mark any of its products embodying any claim of the Patent-in-Suit, and failure of any Droplets' licensee to mark the licensee's products with the Patent-in-Suit" is "information that [Verizon Media and Yahoo] believe may be relevant to their damages case," Ex. 28 at 18-19, even these contentions fail to identify a product Droplets allegedly failed to mark.  Such a vague categorial reference does not discharge Yahoo's burden. *See SPEX Techs. v. Apricorn, Inc*, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) ("The Court finds that disclosure of families, rather than specific products, does not meet the requirement for identifying 'specific unmarked products.'"); *Pavo Sols. LLC v. Kingston Tech. Co.*, Inc, 2019 WL 4390573, at *3 (C.D. Cal. June 26, 2019) (holding that the accused infringer failed to meet its *Arctic Cat* burden where it generally identified licensed products

---

[23] Yahoo adopted Verizon Media's interrogatory responses. *See, e.g.*, Ex. 27 at 16.  Droplets thus cites to both Verizon Media's substantive responses and Yahoo's adoption of those responses in this brief.

but "failed to . . . identif[y] specific products that it believes should have been marked"); *Lubby Holdings LLC v. Chung*, 2019 WL 8105375, at *2 (C.D. Cal. July 12, 2019).

Under Rule 37(c), unless the failure to disclose in discovery was substantially justified, the exclusion from trial is an automatic remedy. *See SPEX Techs. v. Apricorn, Inc*, 2020 WL 1289546, at *1 (C.D. Cal. Jan. 21, 2020) (granting a motion *in limine* to exclude evidence in support of the accused infringer's marking defense because it did not disclose any such evidence during discovery). There is no justification here. Droplets disclosed during discovery that it marked its own product and listed the licenses covering the '745 patent — the information Yahoo might need to build a marking defense. Ex. 29 at 4-7. Yahoo thus had full opportunity to determine and explain the basis of its marking defense during discovery, and its failure to do so is not justified.

Further, Yahoo's lack of disclosure is not harmless. Trial is just over a month away. By not providing the products it alleges were not marked — which it has the burden to identify — Yahoo has failed to provide the basis for its defense. Droplets has been unable to develop its responsive case. It cannot take discovery (including of third parties who might be alleged to have sold unmarked products covered by the patent), identify responsive evidence, offer expert opinion, put evidence on the exhibit list, or prepare for trial on this issue.[24]  The discovery rules are meant to prevent this type of ambush. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861-64 (9th Cir. 2014) (affirming the exclusion of late-disclosed witnesses and noting that "[t]he theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush.").

Accordingly, having not identified which products Yahoo alleges were not marked in discovery, Yahoo should be precluded under Rule 37(c) from presenting evidence or arguments identifying allegedly unmarked products at trial.

---

[24] Indeed, Droplets did not understand marking to be in this case until recently. Yahoo did not identify products that lacked marking, as it must, in response to discovery request. And initially Yahoo stated in connection with draft pretrial submissions that "failure-to-mark is not being asserted as a defense to damages at trial." Ex. 30 at 42. Yahoo since retracted that statement, so apparently it now intends to proceed with a marking defense.

1

2

## X.    DROPLETS MOTION IN *LIMINE* NO. 10: ASPECTS OF THE YAHOO SYSTEMS REMAINING IN THE CASE THAT WAS NOT PUBLICLY AVAILABLE, INCLUDING SERVER-SIDE CODE, TO SHOW OBVIOUSNESS

3

4

Droplets moves to preclude Yahoo from presenting arguments, statements, evidence, or

5

testimony about or otherwise relying on any aspect of Yahoo! Mail and RocketMail that was not

publicly available, including server-side source code, to show obviousness.

6

Under pre-AIA 35 U.S.C. § 102(a), "in order to invalidate a patent based on prior knowledge

7

or use, that knowledge or use must have been available to the public." *Woodland Trust v. Flowertree*

8

*Nursery, Inc.*, 148 F.3d 1368, 1370–71 (Fed. Cir. 1998).[25] "Prior knowledge or use that is not

9

accessible to the public 'upon reasonable inquiry' confers no benefit on the public, and thus does not

10

suffice as a defense under § 102(a)." *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 965 (Fed. Cir.

11

2020) (internal citation omitted).

12

In contravention of this settled law, Defendants intend to assert prior "use" invalidity defenses

13

under § 102(a) at trial based on *non-public* aspects of Yahoo! Mail and RocketMail.[26]   Specifically,

14

Defendants intend to rely on server-side source code files (i.e., "Python" files) that were obscured

15

from the public's view and therefore not publicly available.   Defendants' invalidity expert,

16

Dr. Bederson, opines that Yahoo! Mail and RocketMail are prior art to the '745 patent under § 102(a)

17

because they were a "software system available for public use." *See* Ex. 31 (Bederson Invalidity

18

Report) at 113-114. But three Yahoo witnesses (Filo, Nakayama, and Tolani) testified at deposition

19

20

---

[25] The version of § 102(a) in effect before the America Invents Act ("AIA") is applicable in this case. *UCB, Inc. v. Watson Laboratories Inc.*, 927 F.3d 1272, 1289 n.13 (Fed. Cir. 2019) (addressing prior public use under pre-AIA § 102(a): "The Leahy-Smith America Invents Act (AIA) changed 35 U.S.C. § 102. Pub. L. No. 112-29, § 3(b), 125 Stat. 284, 285–86 (2011). However, because the application from which the '414 patent issued has never contained a claim having an effective filing date on or after March 16, 2013, or a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, the pre-AIA § 102(a) applies. *Id.* § 3(n)(1), 125 Stat. at 293.") *see also BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 960 n.1 (Fed. Cir. 2020) ("The '329 patent was filed in 1996 and issued in 1997, so pre-AIA 35 U.S.C. § 102 applies. *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 293 (2011) (explaining that the pre-AIA version of the Patent Act generally applies to patents with effective filing dates before March 16, 2013).").

21

22

23

24

25

26

27

[26] On July 7, 2021, the Court granted Droplets' motion for summary judgement of no invalidity with respect to all Yahoo Systems art except Yahoo! Mail and RocketMail. ECF No. 793. This motion *in limine* therefore only addresses Yahoo! Mail and RocketMail.

28

1   that Yahoo! Mail and RocketMail's Python files were stored and executed on Yahoo's web servers

2   and were *not* transmitted to client-side devices (i.e., to end-users).  Filo testified that the Python files

3   are "server side" code "that's running on the server" or "getting executed on the server," and thus are

4   not sent to the client.  Ex. 32 (Filo Dep. Tr.) at 241:17-242:21, 246:17-23; 253:11-254:2.  Nakayama

5   testified that the Python files were used on Yahoo's servers to generate *different* files (i.e., HTML

6   files) that would be sent to the client side.  *See* Ex. 33 (Nakayama Dep. Tr.) at 17:11-15, 63:11-17.

7   Tolani corroborated Nakayama, testifying that the "front end" or end-user-facing aspects of Yahoo!

8   Mail and RocketMail (i.e., the HTML files sent to end users) were rendered using Yahoo's proprietary

9   "████████, which was software that ran Python files on the server to generate different HTML

10  files that were sent to the end-user.  *See* Ex. 34 (Tolani Dep. Tr.) at 15:8-25, 26:17-27:14, 29:21-30:5.

11      That Yahoo! Mail and RocketMail as a whole was a "software system available for public use"

12  does not mean the server-side Python files were "public" for purposes of qualifying as prior art.  To

13  qualify as § 102 prior "use," such use must have been "enough to place the claimed features of the

14  [asserted] patent in the public's possession."  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570

15  (Fed. Cir. 1997).  If end users of a web server are unable to "see" aspects of the server because they

16  are carried out confidentially and exclusively by the server, those aspects of the server do not qualify

17  as prior art under § 102(a).  *See Parallel Networks Licensing, LLC v. International Business Machines*

18  *Corporation*, 2017 WL 1045912 at *9 (D. Del. Feb. 22, 2017) (holding "[t]he fact that [defendant]

19  obscured the inner workings of its [web] server necessarily means that its website technology was not

20  publicly accessible").

21      In arguing that server-side code need not be publicly visible to qualify as § 102(a) prior art,

22  Yahoo conflates § 102(b) prior "use" with § 102(a) prior "use."  The Federal Circuit has made clear

23  that whether a prior "use" is "public" is determined differently for purposes of § 102(a) than it is for

24  § 102(b).  In *Woodland Trust*, the Federal Circuit held "[s]ection 102(b), unlike § 102(a), is primarily

25  concerned with the policy that encourages an inventor to enter the patent system promptly."  148 F.3d

26  at 1365-66.  "Thus an inventor's own prior commercial use, albeit kept secret, may constitute a public

27  use or sale under § 102(b), barring him from obtaining a patent."  *Id*. citing (*Egbert v. Lippmann*, 104

28  U.S. 333, 336 (1881)).  But even under § 102(b), which is not at issue here, "when an asserted prior

1    use is not that of the [patent] applicant, § 102(b) is not a bar when that prior use or knowledge is not

2    available to the public." *Id*. (collecting cases).  Under § 102(a), on the other hand, which is the

3    operative statute in this case, "the language 'known or used by others in this country' means

4    knowledge or use which is accessible to the public," which "excludes various kinds of private

5    knowledge not known to the public." *Id*.  The Federal Circuit confirmed these distinctions in *BASF*,

6    rejecting the notion that prior knowledge or use "accessible to the public" under § 102(a) broadly

7    encompasses "'existing' knowledge of any kind, secret or not," and holding that "[p]rior knowledge

8    or use that is not accessible to the public 'upon reasonable inquiry' confers no benefit on the public,

9    and thus does not suffice as a defense under § 102(a)."  *BASF*, 955 F.3d at 963-65 (citations omitted).

10       Allowing the jury to hear evidence about Yahoo's Python files would invite jury confusion as

11   to the legal relevance of those files to the validity questions to be decided.  *See* Fed. R. Evid. 403.

12   Accordingly, Droplets respectfully requests that the court issue a ruling in *limine* preventing

13   Defendants from presenting to the jury arguments, statements, evidence, or testimony about or

14   otherwise relying on any aspect of Yahoo! Mail or RocketMail that was not publicly available,

15   including server-side Python source code.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**XI.    DROPLETS MOTION IN *LIMINE* NO. 11: RELATED PATENTS, THEIR PROSECUTION HISTORIES, AND THEIR POST-GRANT PROCEEDINGS, INCLUDING REFERENCE TO ANY BRIEFS FILED BY COUNSEL**

3

4

5

6

7

8

Droplets moves to preclude Yahoo from presenting arguments, statements, evidence, or testimony regarding patents, their prosecution histories, and their post-grant proceedings, including references to any briefs filed by counsel, not at issue in this case. These materials are irrelevant to the issues in this case, and threaten undue prejudice, confusing the issues, misleading the jury, and wasting Court resources. Moreover, certain theories referencing them were never disclosed in Yahoo's discovery responses and should be barred for the additional reason of being untimely.

9

**A.    BACKGROUND**

10

11

12

13

14

15

16

17

18

Droplets originally asserted infringement of two patents in this case: U.S. Patent Nos. 6,687,745 ("the'745 patent") and 7,502,838 ("the '838 patent"). ECF No. 23 ¶¶ 19-21, 31. The '838 patent is a continuation of the '745 patent. *See* Ex. 35 ('745 patent); Ex. 36 ('838 patent). Defendants Google, Inc., YouTube, LLC, and Facebook, Inc. (now all dismissed) filed a request for *inter partes* reexamination of the '838 Patent, which resulted in all claims being found unpatentable. ECF No. 277-1. Several of the claims were rejected based on references asserted against the '745 patent in this case, including Shaw, Windows 98 Secrets, Frese, and Hickman. Ex. 31 (Bederson Report) at 76-80. Droplets appealed, but the rejections were upheld. *See* ECF Nos. 279, 292, 304, 306. The '838 patent is no longer asserted in this case.

19

20

21

22

U.S. Patent No. 8,402,115 ("the '115 patent") is a continuation of the '838 patent and has never been asserted in this case. Ex. 37 ('115 patent). Defendants in the E*Trade litigation in SDNY filed a petition for *inter partes* review of the '115 patent, which resulted in the cancellation of all claims. Ex. 38 (IPR2015-00470, Paper 35).

23

24

25

26

27

Although neither the '838 patent nor the '115 patent is at issue in this case, Yahoo intends to present the jury with arguments, evidence, and testimony about their reexam and IPR proceedings (and appeals therefrom), doubtlessly in attempt to tar the validity of the '745 patent by association. First, Defendants' invalidity expert, Dr. Bederson, cites extensively to findings in these ancillary proceedings in support of his argument that the claims of '745 patent — which are different from the

28

1    '838 patent and '115 patent claims — are invalid for the same reasons.  *See*, *e.g.*, Ex. 31 (Bederson

2    Report) at 148-149, 155-156, 159-160, 166, 167, 172-173, 176-177, 180-181, 195-197.  Indeed, Dr.

3    Bederson has stated that he intends to rely on all of the proceedings of the unasserted '838 patent at

4    trial, if he is called to testify.  *Id*. at 210.

5        Second, Yahoo intends to present the same arguments and evidence to prove it does not

6    willfully infringe the '745 patent.  In response to Droplets' interrogatory seeking "all factual and legal

7    bases supporting Your contention that Your infringement of the '745 Patent is not knowing, willful,

8    and deliberate," Yahoo responded by incorporating by reference "the *Inter Partes* reexamination

9    proceedings for the related '838 patent that invalidated the entire patent including the proceedings at

10   the PTO, Federal Circuit and petition to the Supreme Court."  Ex. 27 at 19-21; Ex. 26 at 43-45.

11       Third, Yahoo intends to march the jury through the '838 reexamination proceedings in hopes

12   of both proving that certain invalidated claims of the '838 patent are non-infringing alternatives, yet

13   also "extremely similar," to the inventions claimed in the '745 patent.  In response to Droplets'

14   interrogatory seeking "non-infringing alternatives or substitutes, to any of the inventions claimed in

15   any of the asserted claims of the Patents-in-Suit that You are aware of or that You intend to rely upon

16   for any purpose," Yahoo never identified theories based on any claim of the '838 patent being a non-

17   infringing alternative.  *See* Ex. 26 at 34-42; Ex. 27 at 16-18.  Nonetheless, the rebuttal expert report of

18   Defendants' infringement expert, Dr. Shamos, includes opinions under the heading "A Non-Infringing

19   Alternative Would Have Been to Implement Claim 2 Of The '838 Patent That Was Held To Be Invalid

20   By The Patent Office And The Federal Circuit."  Ex. 21 (Shamos Report) at ¶¶ 480-485.  Shamos cites

21   extensively to arguments that Droplets' counsel made to distinguish the '838 patent's claims from the

22   Frese and Hickman references, both of which Yahoo is also asserting as prior art references against

23   the '745 patent in this case.  Ex. 21 at ¶¶ 212-225, 441, 480-485.  Shamos opines that claim 2 of the

24   '838 patent "is extremely similar" to claim 1 of the '745 patent, including with respect to the

25   "interactive link" limitation, and states multiple times that "the Patent Office invalidated all claims of

26   the '838 patent."  Ex. 21 at ¶¶ 204-207, 480-485.  But none of these theories were disclosed in response

27   to discovery requests and should be precluded as untimely under Rule 37's self-executing remedy.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.    ARGUMENT

Permitting Defendants to introduce evidence on different proceedings, regarding different patents, different claims, and different grounds of invalidity into this case will undoubtedly confuse the jury and unduly prejudice Droplets.  Courts widely recognize this risk and routinely exclude evidence of related PTO proceedings, despite arguable relevance.  *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, Dkt. No. 688, 2019 U.S. Dist. LEXIS 120182, at *5-6 (N.D. Cal., July 18, 2019) ("Neither party will be allowed to mention any post-issuance proceedings at the USPTO, past or pending, for risk of jury confusion.").  This danger exists in large part because the PTO uses a different standard of evidence than district courts and does not apply the presumption of validity.  *See Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 2021 WL 1080688, at *3 (S.D. Cal. Mar. 18, 2021).  Thus, even if PTO proceedings bear some relevance to issues in the case, courts still exclude them due to the danger of jury confusion.  *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *8 (C.D. Cal. Feb. 28, 2020).  That includes PTO proceedings for previously asserted and related patents.  *Radware, Ltd. v. F5 Networks, Inc.*, Case No. 13-cv-02024-RMW, 2016 WL 590121, at *8 (N.D. Cal. Feb. 13, 2016) ("Because the [patent invalidated during reexamination is] also related to the asserted patents, evidence of . . . the PTO's invalidation of [that] patent may have marginal relevance on the [issue of willfulness].  However, the court is convinced that the likelihood of prejudice and jury confusion outweighs any such relevance.").  That the PTO took some action as to another patent does not help the jury decide whether a different patent is valid.  The jury does not have the tools and experience to discern the meaning and import of the complex legal documents — all they know is that other patents were invalidated, which is highly misleading and irrelevant.

Yahoo should be precluded from introducing arguments and evidence regarding the '838 and '115 proceedings as evidence that the *different* claims of '745 patent are invalid because it would undoubtedly risk confusing and prejudicing the jury.  *See Radware*, 2016 WL 590121, at *8 (evidence of reexamination that invalidated a related patent was precluded for risk of prejudice and jury confusion); *Acceleron, LLC, v. Dell, Inc.*, 2020 WL 10353408, at *6 (N.D. Ga. Aug. 27, 2020) (evidence of PTO's cancellation of non-asserted claims was precluded because probative value to

invalidity was outweighed by risk of confusing the jury); *American Technical Ceramics Corp., v. Presidio Components, Inc.*, 2019 WL 2330855, at *4 (E.D.N.Y May 31, 2019) (excluding evidence of PTO proceedings that invalidated a previously asserted patent where defendant failed to show the evidence "will not be substantially outweighed by the risk of confusing the jury").

Likewise, any marginal relevance that the '838 proceedings would have to Yahoo's willfulness theories is heavily outweighed by the risk of prejudice and confusing the jury as to the validity of the '745 patent. *See Radware*, 2016 WL 590121, at *8 (invalidation of related patent may have "marginal relevance" to willfulness, but "the likelihood of prejudice and jury confusion outweighs any such relevance"); *Acceleron*, 2020 WL 10353408, at *6 (evidence of IPR proceeding "would be relevant" to willfulness, but "unduly prejudicial and confusing to the jury").

The theories underlying Shamos' opinions regarding non-infringing alternatives based on the '838 proceedings were never disclosed in Yahoo's interrogatory responses, and thus cannot be relied on at trial. *See SPEX Techs. v. Apricorn, Inc*, No. CV 16-07349JVS(AGRX), 2020 WL 1289546, at *3 (C.D. Cal. Jan. 21, 2020) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001) (excluding non-infringing alternative argument first disclosed in rebuttal expert report under "the self-executing remedy" of Fed. R. Civ. P. 37(c)(1) because it was "outside the ken of proper rebuttal"); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Even if Yahoo could present them, arguments that any claim of the '838 patent "is extremely similar" to claim 1 of the '745 patent, that "the Patent Office invalidated all claims of the '838 patent," or regarding Droplets' arguments during the '838 reexamination (*see* Ex. 21 at ¶¶ 204-207, 212-225, 441, 480-485) are of only marginal relevance (if any) to an alleged non-infringing alternative to the claims the '745 patent, but, for the same reasons discussed above, are plainly prejudicial and risk confusing the jury on the issue of the '745 patent's validity.

While the Court can instruct the jury on these sensitive and highly-complex issues, the benefits of doing so are outweighed by the undue risk of jury confusion, prejudice to Droplets, and wasting the Court's time and resources. *See*, *e.g.*, *Finjan, Inc. v. Sophos, Inc.*, Case No. 2016 WL 4560071, at *14

(N.D. Cal. Aug. 22, 2016) (excluding evidence of PTO proceedings because "it would take a significant amount of time and effort to adequately explain the relevance and limitations of the PTO proceedings to the jury"); *Vaporstream*, 2020 WL 978731, at *8; *Acantha LLC v. DePuy Orthopaedics Inc.*, 2018 WL 2431852, at *3 (E.D. Wis. May 30, 2018); *Interdigital Commc'ns Inc. v. Nokia Corp.*, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014) (excluding evidence of PTO proceeding because any relevance was "greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence" and "because of the complexity involved in giving the full context, there would also be a significant risk of confusion of the issues"). There is no need to run that risk or burden the Court in this case.

Accordingly, Droplets respectfully requests that the Court preclude Yahoo from presenting arguments, statements, evidence, or testimony regarding the '838 and '115 patents, their prosecution histories, and their post-grant proceedings, including references to any briefs filed by counsel.

Dated: August 3, 2021

*/s/ Courtland L. Reichman*
Courtland L. Reichman

Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
Michael Matulewicz-Crowley (admitted *pro hac vice*)
  mmatulewicz-crowley@reichmanjorgensen.com
Michael Marvin (admitted *pro hac vice*)
  mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP

750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant
*Droplets, Inc.*