Jennifer Haltom Doan (admitted *pro hac vice*)
Joshua R. Thane (admitted *pro hac vice*)
J. Randy Roeser (admitted *pro hac vice*)
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

George D. Niespolo
(SBN: 72107)
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
415.957.3013 (phone)
415.358.4394 (fax)
GDNiespolo@duanemorris.com

**ATTORNEYS FOR
DEFENDANT YAHOO!, INC. AND
INTERVENOR-PLAINTIFFS OATH, INC.
AND OATH HOLDINGS, INC.**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>YAHOO!, INC.<br><br>    Defendant. | Case No. 4:12-cv-03733-JST (KAW)<br><br>**DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S OMNIBUS MOTIONS *IN LIMINE***<br><br>Date: August 13, 2021<br>Time: 1:30 PM<br>Courtroom: 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |
| OATH INC. AND OATH HOLDINGS, INC.<br><br>    Intervenor-Plaintiffs,<br><br>    v.<br><br>DROPLETS, INC.,<br><br>    Intervenor-Defendant. | |
| DROPLETS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NORDSTROM, INC.<br><br>    Defendant. | Case No. 12-cv-04049-JST (KAW) |

**TABLE OF EXHIBITS REFERENCED**[1]

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Dr. Douglas Schmidt |
| 2 | Ex. B to the Expert Report of Douglas Schmidt regarding non-infringement |
| 3 | Excerpts from Droplets' Fourth Amended Infringement Contentions for Yahoo |
| 4 | Droplets' Second Amended Damages Contentions with Respect to Yahoo |
| 5 | Droplets' Supplemental Objections and Responses to Intervenor-Plaintiffs' First Set of Specific Interrogatories (Nos. 1-10) |
| 6 | Excerpts from the November 4, 2020 deposition transcript of Michael Martin |
| 7 | October 12, 2018 email string bates-numbered DRPINC4296049 - 50 |
| 8 | May 30, 2001 letter from Thomas MacIsaac to Daniel Hankins, bates-numbered DRPINC4259728 |
| 9 | July 24, 2002 letter from William Power to David Shen, bates-numbered DRPINC4259816 |
| 10 | August 31, 2001 letter from Thomas MacIsaac to David Shen, bates-numbered DRPINC4259866 |
| 11 | October 11, 2002 letter from William Power to David Shen, bates-numbered DRPINC4259913 - 9914 |
| 12 | October 11, 2002 letter from William Power to Geoff Ralston, bates-numbered DRPINC4259915 - 9916 |
| 13 | October 17, 2002 letter from William Power to Geoff Ralston, bates-numbered DRPINC4259936 |
| 14 | November 1, 2001 letter from Philip Brittan to Terry Semel, bates-numbered DRPINC4259984 |
| 15 | November 14, 2002 letter from Philip Brittan to Lisa Pollack, bates-numbered DRPINC4260001 |
| 16 | May 4, 2021 article titled "Apollo Funds to Acquire Verizon Media," accessed from www.finsmes.com |

---

[1] All exhibits are attached to the Declaration of Meghan C. Killian.

| Exhibit No. | Description |
|---|---|
| 17 | July 30, 2021 Order Granting Motion For a New Trial on Claim For Security by Droplets, Inc., in the matter of *In re Altaba, Inc.*, Case No. 2020-0413-JTL (Chancery Court of Delaware) |

# TABLE OF CONTENTS

**Page**

I.  MOTION IN LIMINE NO. 1 – TO PRECLUDE DROPLETS FROM USING DAMAGES OPINIONS RELATING ONLY TO UNACCUSED ASPECTS OF SEARCH SUGGEST ................................................................................ 1

    A.  BACKGROUND ................................................................................ 2

        1.  Zatkovich's Search Suggest Opinions ........................................ 3

        2.  Bergman's Search Suggest Opinions ........................................... 4

        3.  Schwartz's Search Suggest Opinion ........................................... 4

    B.  ARGUMENT ..................................................................................... 5

    C.  CONCLUSION .................................................................................. 6

II.  MOTION IN LIMINE NO. 2:  TO PRECLUDE DROPLETS AND DR. SCHMIDT FROM PRESENTING ANY THEORY OF SEARCH SUGGEST INFRINGEMENT THAT WAS NOT PREVIOUSLY DISCLOSED IN DR. SCHMIDT'S EXPERT REPORT OR THE INFRINGEMENT CONTENTIONS, FOLLOWING THE COURT'S JULY 27, 2021 SUMMARY JUDGMENT ORDER OR IN DROPLETS' INFRINGEMENT CONTENTIONS ................................................................. 7

    A.  Droplets' New Theories Were Not In Dr. Schmidt's Infringement Report ................................................................................................. 7

    B.  Droplets' New Theories Were Not In Droplets' Infringement Contentions. ...................................................................................... 10

III.  MOTION IN LIMINE NO. 3: TO  EXCLUDE DROPLETS' WILLFULNESS ALLEGATIONS .................................................................................. 12

    A.  Droplets' Willfulness Evidence Only Supports An Allegation That The Court Has Ruled To Be Categorically Insufficient ............................. 12

    B.  Testimony Relevant Only to Willfulness Should be Excluded ........... 14

    C.  Evidence and Argument Regarding Pre-Suit Willfulness Should be Excluded ........................................................................................... 14

IV.  MOTION IN LIMINE NO. 4:  TO PRECLUDE DROPLETS FROM REFERRING TO THE DISCOVERY RESPONSES OF YAHOO AND VERIZON MEDIA FOR THE PURPOSE OF IMPLYING THAT YAHOO DID NOT RESPOND TO DISCOVERY ......................................................... 18

V.  YAHOO MOTION IN LIMINE NO. 5 – TO PRECLUDE DROPLETS FROM PRESENTING ANY ARGUMENT OR EVIDENCE THAT THE LENGTH OF TIME BETWEEN THE FILING OF DROPLETS' COMPLAINT AND THE TRIAL OF THIS CASE RELEVANT TO ANY ISSUE TO BE DECIDED BY THE JURY IN THIS CASE ......................................... 20

VI.    MOTION IN LIMINE NO. 6:  TO EXCLUDE ARGUMENTS, EVIDENCE, AND TESTIMONY REGARDING THE PROPOSED TRANSACTION TO SELL THE YAHOO PROPERTIES FROM VERIZON TO APOLLO ......................... 24

VII.   MOTION LIMINE NO. 7:  THE PARTIES ARE NOT TO CHARACTERIZE THE BUSINESS PRACTICES OF YAHOO OR VERIZON MEDIA TO SUGGEST OR IMPLY THIEVERY OR INDIFFERENCE TO SMALLER ENTITIES AND TO NO REFER TO YAHOO OR VERIZON MEDIA WITH PREJUDICIAL TERMS SUCH AS BEHEMOTH, MONOPOLIST, CHEATER, COPIER, THIEF, OR GOLIATH. ................................................................. 25

VIII.  MOTION IN LIMINE NO. 8: TO EXCLUDE ARGUMENTS, TESTIMONY OR EVIDENCE RELATED TO THE INDEMNITY AGREEMENT BETWEEN YAHOO AND VERIZON MEDIA FOR ANY PAST DAMAGES ............................................................................................................. 26

IX.    MOTION IN LIMINE NO. 9:  TO EXCLUDE ARGUMENTS, STATEMENTS, EVIDENCE AND TESTIMONY REGARDING THE ONGOING DELAWARE CHANCERY COURT PROCEEDINGS ............................ 28

X.     MOTION IN LIMINE NO. 10:  EXPERTS CANNOT TESTIFY BEYOND THE SCOPE OF WHAT IS IN THEIR REPORT. ......................................................... 31

XI.    MOTION IN LIMINE NO. 11: TO PRECLUDE DROPLETS FROM USING LATE-DISCLOSED EVIDENCE ...................................................................... 32

XII.   MOTION IN LIMINE NO. 12: TO PRECLUDE DROPLETS FROM INTRODUCING ANY TESTIMONY, ARGUMENT, OR INSINUATION THAT YAHOO DID NOT PROPERLY PRODUCE DOCUMENTS OR OTHERWISE MEET ITS DISCOVERY OBLIGATIONS ............................................. 33

XIII.  MOTION IN LIMINE NO. 13: TO PRECLUDE DROPLETS FROM INTRODUCING DEPOSITION TESTIMONY OF ITS OWN OFFICERS INTO ITS CASE IN CHIEF. ..................................................................................... 34

XIV.   MOTION IN LIMINE NO. 14: TO PRECLUDE DROPLETS FROM INTRODUCING ANY EVIDENCE, TESTIMONY, OR ARGUMENTS OF THE OVERALL SIZE OR OVERALL REVENUE OF YAHOO OR VERIZON . ...................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Electronics Co.*, No. 12–cv–0630, 2014 WL 173409
(N.D. Cal. Jan. 9, 2014) ........................................................................................................31

*Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-457, 2014 WL 6997670
(N.D. Cal. Dec. 9, 2014) ..........................................................................................................8

*Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990
(N.D. Cal. 2019)......................................................................................................................31

*Contour Ip Holding, LLC v. GoPro, Inc.*, No. 17-cv-4738, 2021 WL 75666
(N.D. Cal. Jan. 8, 2021) .........................................................................................................16

*Corephotonics, Ltd. v. Apple, Inc.*, No. 17-cv-06457, 2018 WL 4772340
(N.D. Cal. Oct. 1, 2018)..........................................................................................................17

*In re Droplets Patent Litig.*, MDL No. 2403 (J.P.M.L Aug. 27, 2012)................................................21

*Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011) ...............................31

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)................................................12

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008).........................................16

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ....................................6

*Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222 (N.D. Cal. 2019)
(Tigar, J.)..................................................................................................................................16

*Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-cv-4990,
2012 WL 2339762 (N.D. Cal. June 7, 2012) ........................................................................18, 33

*NetFuel, Inc. v. Cisco Sys. Inc.*, 18-cv-02352, 2018 WL 4510737
(N.D. Cal. Sept. 18, 2018) ......................................................................................................17

*Netfuel, Inc. v. Cisco Sys. Inc.*, No. 18-cv-2352, 2020 WL 4381768
(N.D. Cal. July 31, 2020).........................................................................................................16

*Oracle Am., Inc. v. Hewlett Packard Enterprise Co.*, No. 16-cv-01393-JST,
2018 WL 6511146 (N.D. Cal. Dec. 11, 2018)........................................................................5, 22

*Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, No. 08-cv-4909,
2011 WL 839411 (N.D. Cal. Mar. 7, 2011), *aff'd*, 473 F. App'x 885 (Fed. Cir.
2012) .......................................................................................................................................16

*Snyder v. Bank of Am., N.A.*, No. 15-cv-04228, 2020 WL 6462400
(N.D. Cal. Nov. 3, 2020)..........................................................................................................18, 33

*Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112 (N.D. Cal. 2018) ...............................17

*SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019). ECF No. 792 ...............................12

*State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226 (Fed. Cir. 1985) ...............................................17

*Trulove v. D'Amico*, No. 16-cv-050, 2018 WL 1090248 (N.D. Cal. Feb. 27, 2018) ..........................16

*Viasphere Int'l, Inc. v. Vardanyan*, No. 12-cv-01536, 2014 WL 12709000 (N.D. Cal.
Feb. 24, 2014) (citing Fed. R. Civ. P. 26(a)(1)(A)(i))) ....................................................................32

*Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272 (Fed. Cir. 2012) .......................................15

## Statutes

25 U.S.C. § 285..........................................................................................................................................15

35 U.S.C. § 284..........................................................................................................................................15

## Other Authorities

Fed. R. Civ. P. 1 ........................................................................................................................................33

Fed. R. Civ. P. 26, 37................................................................................................................................33

Fed. R. Evid. 401, 402, 403 .....................................................................................................................33

FRE 401 .......................................................................................................................................................5

FRE 401 and 403 .......................................................................................... 1, 18, 24-26, 28, 35

FRE 403 .................................................................................................................................5-6, 20, 22-23

FRE 801-802..............................................................................................................................................34

Local Rule 3-8......................................................................................................................................12, 15

## I.    Motion in Limine No. 1 – To Preclude Droplets From Using Damages Opinions Relating Only to Unaccused Aspects of Search Suggest

In light of the Court's July 27, 2021 Order on Yahoo's motion for summary judgment regarding Search Suggest (ECF No. 801, hereinafter, "Summary Judgment Order"), the only surviving infringement theory is based on a user's "past keystrokes."  Yahoo moves to preclude Droplets from presenting at trial damages opinions relating only to other, now unaccused aspects of Search Suggest from three of its experts: (1) Ivan Zatkovich, (2) Jim Bergman, and (3) Dr. Elliott Schwartz. None of these experts' opinions relate to the "past keystrokes" theory of Search Suggest that survived summary judgment. *Id.* Instead, Droplets' three experts each purport to value a fundamentally different aspect of Search Suggest's operation that is *not* the basis of Droplets' remaining infringement theory—*i.e.*, the presentation of suggestions upon the entry of *current* keystrokes whenever the user types into the search box *the first time*. As such, the damages opinions of Droplets' experts regarding Search Suggest are irrelevant to Droplets' surviving "past keystrokes" theory and should be excluded under FRE 401 and 403.

Yahoo earlier filed a *Daubert* motion challenging Bergman's, Schwartz's, and Zatkovich's damages opinions on other grounds, such as the failure of Droplets' damages model, including for Search Suggest, to satisfy the Federal Circuit's apportionment requirement. *See* ECF No. 617, 663, 714. This motion presents an additional and independent basis for excluding these experts' damages opinions relating to Search Suggest. In light of the Summary Judgment Order on Droplets' "past keystrokes" theory, these experts' Search Suggest opinions lack any probative value and, if introduced at trial, are highly likely to cause substantial jury confusion of the issues, with severe resulting prejudice to Yahoo. Specifically, Yahoo seeks to preclude the Search Suggest opinions set forth in (1) paragraphs 66-68 of the expert report of Ivan Zatkovich; (2) paragraphs 191, 194, 198-206, 214-215, 218-220, 491-497, 509, 544, 552-553 of the expert report of Jim Bergman; and (3) pages 3 and 11-23 of the expert report of Dr. Elliott Schwartz.[2]

---

[2] Schwartz's expert report does not have any paragraph numbering, so page numbers are used instead. The Search Suggest feature was at least one of the "infringing features" for "Yahoo Main," "Yahoo Finance," and "My Yahoo," as referenced in Schwartz's report. *See, e.g.*, ECF No. 617-6, Schwartz Report, at 34 ("Infringing Feature 1: Search Suggest" for "Yahoo Main"), 41 ("Infringing

1

### A.     **BACKGROUND**

Droplets served the expert reports of Zatkovich, Bergman, and Schwartz on November 24, 2020. Each of the reports included sections related to Droplets' attempt to value the use of Search Suggest (as well as the other accused features) through an "income approach to reasonable royalties." ECF No. 617-4, Bergman Report, at 69.[3] None of the reports included any reference to any "past keystrokes" theory of infringement for Search Suggest.

In its recent Summary Judgment Order, the Court concluded that only Droplets' "past keystrokes" theory of infringement survived summary judgment: "Accordingly, at this stage, the Court denies summary judgment based on the 'past keystroke' theory only." ECF No. 801 at 8-9; *see also id.* at 7 ("As explained in the order denying Nordstrom's motion for summary judgment, the Court is not convinced that Droplets' 'past keystrokes' theory of restoring operating states fails as a matter of law.").

Relying on a portion of the report of Droplets' technical expert, Dr. Douglas Schmidt, the Court provided an example of this "past keystrokes" operation: "As Dr. Schmidt explains, if a user searches for the word 'test' on Yahoo Search and then deletes the letter 't,' the system will restore a previous operating state of search suggestions for the term 'tes.'" ECF No. 801 at 7. In this example, the letters "t-e-s" are sent to the Search Suggest system *twice*—(1) first when the user inputs "t-e-s" into the search box while typing out "t-e-s-t" and (2) again after the user hits backspace to delete the final "t" to return to the display of "t-e-s." In other words, "t-e-s" are the "past keystrokes" in this example of Droplets' surviving "past keystrokes" theory of infringement. But, as shown below, Zatkovich, Bergman, and Schwartz, in their interlinked damages opinions on Search Suggest *never* come close to evaluating this "past keystrokes" infringement scenario.

---

Feature 1: Search Suggest" for "Yahoo Finance"), 46 ("Infringing Feature 1: Search Suggest" for "My Yahoo").

[3] Each of the expert reports of Bergman, Zatkovich, and Schwartz was previously filed with the Court as part of the papers supporting Yahoo's *Daubert* motion. *See* ECF No. 617. To avoid redundant filing, citations to the expert reports in this motion are to the docketed exhibit numbers from the earlier *Daubert* filing.

2

### 1.　　Zatkovich's Search Suggest Opinions

Droplets begins its "income approach to reasonable royalties" with the opinion of Ivan Zatkovich, its internet industry expert, that Search Suggest could not function in a "commercially viable" way without practicing the '745 patent. *See* ECF No. 617-8, Zatkovich Report, at ¶¶ 67-68 ("Therefore, it is my opinion that using reload to implement search suggest would provide such a poor experience that it would render this feature non-commercially viable for yahoo.com, search.yahoo.com...."). Importantly, however, the scenario Zatkovich describes in reaching this conclusion—his so-called "reload" alternative—has nothing to do with "past keystrokes."

The core of Zatkovich's discussion is set forth in paragraph 67 of his report, from which it is clear that Zatkovich is *not* evaluating a "past keystrokes" operation like the "t-e-s" example Schmidt gave, but rather a scenario where the user is entering *current* keystrokes *the first time*. Thus, in the first half of paragraph 67, Zatkovich describes typing characters into the search box *the initial time*, without any reference to deleting characters or resurfacing "past keystrokes":

> 67.　　As previously explained, search suggest is when a user starts typing into a search box and, with each letter entered, the website immediately starts suggesting possible resolutions to the search. Search suggest anticipates the rest of the letters being typed, and with each additional letter typed, the site's prediction is refined and displayed instantaneously.

ECF No. 617-8, Zatkovich Report, at ¶ 67.

Likewise, in the second half of paragraph 67, in discussing his purportedly unacceptable "reload" alternative, Zatkovich describes a situation where a user experiences ongoing full-page reloads *the first time* the user inputs any search-query text into the search box, not a scenario where the user is resurfacing "past keystrokes":

> Reload requires refreshing the entire web page for each interaction the user has with the web page (e.g., clicks, typing).. Implementing search suggest using the reload would mean, each time the user typed a letter in the search box, the entire webpage would reload. In practice, the user would type a first letter in the search box, wait for the page to reload, review the suggestions, if none of the suggestions were what they were looking for, they may have to reposition their cursor back in the search box, then type a second letter, wait for the page to reload, review the new list of suggestions, if there was not a good match they

would position their cursor back in the search box, then type a third letter, wait for the site to reload, review the new list of suggestions, and repeat the process until either the desired item was in the suggestion list and they select and/or typed in all the letters in their query.

*Id.* For Zatkovich's analysis to have any meaningful connection to Droplets' surviving "past keystrokes" theory, what he *should* have evaluated is the commercially viability of a Search Suggest system missing the "past keystrokes" capability—*i.e.* the ability of re-presenting an individual user's prior suggestions when the same characters appear in the search box *a second time*, as in the "t-e-s" example from the Court's Summary Judgment Order. But, as is evident from paragraph 67 quoted in full above, Zatkovich never considered such a configuration.

### 2.    Bergman's Search Suggest Opinions

In the next link of its damages chain, Droplets then had its lead damages expert, Jim Bergman, use Zatkovich's commercial-acceptability discussion to assume that, without the '745 patent, Yahoo could not offer a Search Suggest feature *at all*, in any configuration whatsoever. *See, e.g.*, ECF No. 617-4, Bergman Report, at ¶¶ 191, 201. Bergman then used this assumption to bring in survey results from Droplets' survey expert, Schwartz, as a purported means of assessing to what extent usage of Yahoo's websites would purportedly decline were the Search Suggest feature missing from Yahoo's website. *Id.* ¶ 201.

Again, Bergman's focus here was the assumption that Search Suggest *writ large*—in its *entirety*—could not operate on Yahoo's websites. *See also, e.g.*, ECF No. 617-4, Bergman Report, at ¶ 198 (discussing evidence relating to Search Suggest and its architecture in general, not on a "past keystrokes" functionality). Bergman did not discuss the "past keystrokes" capability, nor did he attempt to quantify the impact on Yahoo's usage if Search Suggest were present on Yahoo's websites, but missing its allegedly infringing "past keystrokes" capability.

### 3.    Schwartz's Search Suggest Opinion

Lastly, as with Zatkovich and Bergman, Schwartz's survey opinions do not mention Droplets' "past keystrokes" theory. Schwartz's report makes clear that respondents receiving Droplets' questionnaire were asked about Search Suggest *in general*, not about Search Suggest's

4

capability of re-presenting an individual user's prior suggestions when his or her "past keystrokes" are re-displayed in the search box. For instance, the survey's descriptions of "Infringing Feature 1: Search Suggest" make no mention of "past keystrokes." To the contrary, like Zatkovich's paragraph 67 quoted above, the survey focuses on how Search Suggest operates *the first time* a user inputs search-query text. ECF No. 617-6, Schwartz Report, at p. 34 ("On Yahoo's main page, there is a search bar to search the internet. As you type, it will offer suggestions based on what you have typed so far."); *id.* at p. 39 ("Display of suggestions while you are typing so you do not need to type the full search word(s).").

Similarly, when Droplets' survey describes a but-for world with the allegedly infringing feature removed, the survey says that Search Suggest would be missing *in its entirety*—not that search suggestions would be available, except in scenarios where a user's "past keystrokes" are redisplayed in the search box. *Id.* at p. 39 ("What it Would Be Like With Feature": "You would need to type in the full search word(s) and would not be prompted with any suggestions.").

**B.    ARGUMENT**

Under FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under FRE 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See generally Oracle Am., Inc. v. Hewlett Packard Enterprise Co.*, No. 16-cv-01393-JST, 2018 WL 6511146, at \*1 (N.D. Cal. Dec. 11, 2018). Because the damages opinions of Droplets' experts Zatkovich, Bergman, and Schwartz now lack any connection to Droplets' remaining "past keystrokes" infringement theory, both of these evidentiary rules dictate the exclusion of those opinions.

As an initial matter, the Search-Suggest-related damages opinions of Zatkovich, Bergman, and Schwartz are irrelevant and lack probative value. The damages question at trial is what royalty value to assign to this "past keystrokes" functionality of Search Suggest. But, as shown above, none

of Droplets' three experts, in any portion of their Search Suggest opinions, mentions this "past keystrokes" functionality, let alone purports to value it. To the contrary, these experts all evaluate Search Suggest *in general* and focus on the value of Search Suggest operations that are *not* part of Droplets' surviving infringement theory.

Even if assigned some limited probative value, these Search Suggest damages opinions should be excluded under FRE 403, because of the substantial risk of unfair prejudice and jury confusion. Droplets' presentation of the alleged value of Search Suggest writ large presents a highly inflated and misleading value to the jury. This would run directly afoul of the Federal Circuit's apportionment requirements, because it "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component" to the accused revenues. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012).

## C.    CONCLUSION

For the reasons set forth above, this Court should preclude Droplets from presenting at trial any opinions, evidence, or argument relating to Search Suggest set forth in (1) paragraphs 66-68 of the expert report of Ivan Zatkovich; (2) paragraphs 191, 194, 198-206, 214-215, 218-220, 491-497, 509, 544, 552-553 of the expert report of Jim Bergman; and (3) pages 3 and 11-23 of the expert report of Dr. Elliott Schwartz.

**II.    Motion in Limine No. 2:  To Preclude Droplets and Dr. Schmidt from presenting any theory of Search Suggest infringement that was not previously disclosed in Dr. Schmidt's expert report or the infringement contentions, following the Court's July 27, 2021 Summary Judgment Order or in Droplets' Infringement Contentions**

This issue was previewed to the Court in the summary judgment briefing.  In its opposition to Yahoo's summary judgment motion, Droplets included a new Declaration from Dr. Schmidt laying out several theories of infringement for Search Suggest that were not in Dr. Schmidt's expert report and, more specifically for the claim requirement of "restoring a particular user's previous operating state."  Ex.1 ("New Declaration"). Apart from Dr. Schmidt, Droplets also presented documents and testimony to support infringement theories that were not disclosed in any of Droplets' Infringement Contentions.

The Court previously struck much of Yahoo's invalidity case because of a lack of prior disclosure, and even struck many non-infringing alternative arguments on the same basis. ECF 747 at 5-7 (striking portions of invalidity arguments); ECF 793 at 8 (striking some invalidity arguments); ECF 747 at 15-16 (striking some non-infringing alternative arguments). Droplets should be held to the same disclosure rules here.

**A.    Droplets' New Theories Were Not In Dr. Schmidt's Infringement Report**

With respect to the absence of the new theories in Dr. Schmidt's infringement report, the Court already analyzed and recognized that the New Declaration presented new theories:

> Here, Dr. Schmidt's declaration provides opinions about (1) the meaning of the term "operating state"; (2) three different ways in which search suggest customizes an operating state to a particular user, including by re-displaying previous search suggestions, through a "backspace" feature, and by changing search suggestions based on past searches; and (3) the use of cookies in the accused products. ECF No. 775-2 ¶¶ 4-5, 21-32, 33. Although some of these opinion include citations to an expert report, many are plainly new. For instance, much of the second opinion cites documents without a citation to an expert report or deposition. *Id.* ¶ 28. Thus, the Court disregards the new theories provided in the declaration.

ECF 801 at 6. Despite the Court's clear ruling on this point, even after the Court's summary judgment order, Droplets is seeking to add the new documents that Dr. Schmidt cites.

In particular, Dr. Schmidt's New Theories regarding the following should be excluded:

**1. New Opinions On The Meaning Of "Operating State."**  In paragraphs 6-18 of the

7

New Declaration, Dr. Schmidt provides his new opinion on the meaning of "operating state." Dr. Schmidt does not cite to any portion of his expert report in which such opinions were offered – citing instead to his deposition transcript. Ex. 1 at ¶¶ 6-18. However, statements during a deposition cannot be used to offer new opinions:

> To the extent that *nCube* can be read to suggest that an "elaboration" contained only in deposition testimony, and not in an expert report, is adequate to put an opponent on notice or comply with the disclosing party's obligations under Rule 26(a)(2)(B), *see nCube,* 809 F.Supp. 2d at 347, this Court rejects its holding. The Rule itself and the law interpreting it are clear that an expert's report must contain a *complete* statement of the expert's opinions and the reasons for them be contained *in the expert report,* and that subsequently-given deposition testimony is not a substitution for adequate disclosure in the expert's original report.

*Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-457, 2014 WL 6997670, at *1 (N.D. Cal. Dec. 9, 2014) (underlined emphasis added).

   **2. New "Session," "Beacon" And "Backspace Rewriter" Opinions.** Dr. Schmidt's New Declaration provides new and ill-defined opinions regarding alleged "sessions," "beacons," and a "backspace rewriter." Ex. 1 at ¶¶ 24, 28, 29, 30, 31. But Dr. Schmidt's report did not ever opine that "sessions" or "beacons" or "backspace rewriter" had any relationship to the claimed restoration of operating state. This is verified by (a) the complete lack of any citation to the report by Droplets of an analysis of these terms for the claim limitation of restoring the previous operating state; and (b) searching for "session" and/or "beacon" and/or "backspace" in Dr. Schmidt's Report and Exhibit C. ECF 776-7, ECF 776-8.

   **3. New User Location And Device Type Opinion**. Dr. Schmidt provides new opinions that the user's "location or the type of device" is part of meeting the "restoring particular user's operating state" limitation. Ex. 1 at ¶¶ 21-22. Dr. Schmidt cites to the "Schmidt Report" at "¶ 81." *Id.* at ¶ 21 (Citing ECF 776-7 at ¶ 81). However, paragraph 81 of Dr. Schmidt's report merely summarizes part of the operation of the accused product – paragraph 81 does not tie that operation to any claim element, much less the restoration of a particular user's operating state. Under that approach, an expert could summarize the accused product's operation and then withhold his opinion

on how that operation meets a claim element until trial. Rule 26 does not allow such concealment and presentation of new opinions.

**4. Dr. Schmidt's Newly Cited Documents**.  As the Court's summary judgment order recognizes, the "newness" of Dr. Schmidt's new opinions is highlighted by his new opinions on new documents not cited in his report. Specifically, Droplets' Summary Judgment Exhibits 18, 19, 20, 22, 23, 24 and 25 are not discussed or cited in Dr. Schmidt's expert report. This is readily ascertainable by comparing the Bates Nos. of those Exhibits (ECF 775-1, ¶¶ 20-27) against the "Materials Considered" in Exhibit B to Dr. Schmidt's Report and is submitted herewith as Ex. 2. Dr. Schmidt's New Declaration cites to these new documents repeatedly. *E.g.*, Ex. 1 at ¶ 24 (citing Exs. 18, 24, 25); ¶ 28 (citing Exs. 19, 20, 21, 22, 23, 24, 25). Also, while Dr. Schmidt's "Materials Considered" did list Droplets' Summary Judgment Exhibits 16, 17, and 21 in a list of over 500 documents, Dr. Schmidt did not provide any opinion regarding the substance of those documents – as is apparent from the complete lack of any citation to the report by Droplets for these exhibits. Merely listing documents is not providing an opinion on the content in those documents.  *See* Fed. R. Civ. P. 26(a)(2)(B) (expert report must provide "complete statement of all opinions and the basis and reasons for them" not just the "data considered").

**5. Droplets New "Type A" and "Type B" Suggestions**.  In its sur-reply, Droplets used Dr. Schmidt's New Declaration to craft a new theory that juxtaposed what Droplets called "Type A" suggestions (which were in Dr. Schmidt's original report) against "Type B" suggestions (which were not in Dr. Schmidt's report). ECF 790 at 2-4. Droplets did not, and cannot, point to any portion of Dr. Schmidt's report related to Search Suggest (which was in Exhibit C to Dr. Schmidt's report) in which Dr. Schmidt discussed the Type B suggestions. This theory simply was not in Dr. Schmidt's report and no analysis was presented regarding this claim element. Thus, Droplets and Dr. Schmidt should not be allowed to present the new "Type B" suggestions theory.

During the summary judgment briefing, Droplets did not seriously contest that Dr. Schmidt's new opinions were in his original report. Indeed, despite filing a sur-reply devoted specifically to the issue, Droplets was unable to cite passages in Dr. Schmidt's report linking these

new theories to "restoring of a particular user's previous operating state" as is required by the claims. These new theories are not "elaborations" – rather the theories are entirely new and rely on entirely new evidence and testimony.

Furthermore, Yahoo suffers significant prejudice from Dr. Schmidt's and Droplets' new theories. Yahoo was not permitted to depose Dr. Schmidt or respond to the new theories. Furthermore, these new infringement theories are wholly unrelated to Droplets' damages theories. Yahoo was denied the opportunity to both challenge Droplets' damages experts and filed *Daubert* motions highlighting the lack of relationship between Dr. Schmidt's new theories and the alleged damages model (including, for example, apportionment to the specifically identified allegedly infringing functionality).

As discussed below, because these theories were not in the Infringement Contentions, Yahoo was denied the opportunity to move to strike Dr. Schmidt's report at an earlier stage and develop invalidity theories corresponding to these new infringement theories.

Simply put, Dr. Schmidt included in his original report his opinions related restoring previous operating state. Dr. Schmidt and Droplets should be limited to those properly disclosed theories.

**B.** **Droplets' New Theories Were Not In Droplets' Infringement Contentions.**

The operative Infringement Contentions are Droplets Fourth Amended Infringement Contentions. *E.g.,* Ex. 3. The infringement contentions analyze the claimed "interactive link" and the requirement to restore previous operating state for the accused Search Suggest functionality on pages 4 – 16 (for the preamble) and 335-343 (for claim element 1E reciting the "interactive link" element). *E.g.*, *Id.* at 4-16, and 335-343.

None of these passages from the Infringement Contentions recite Droplets' new theories that were submitted in the summary judgment briefing. Specifically, there is no disclosure of the theories identified above to be missing from Dr. Schmidt's report including: (A) the New "Session," "Beacon" And "Backspace Rewriter" Opinions and (B) the New User Location And Device Type Opinion discussed above with respect to Dr. Schmidt's New Declaration. Similarly,

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

the Infringement Contentions do not cite any theories related to Droplets new "Type B" suggestions for satisfying the "interactive link" limitation. All of these theories should be stricken for failure to including them in Droplets' Infringement Contentions.

Yahoo suffered tremendous prejudice through Droplets' failure to disclose these theories in its Infringement Contentions. Yahoo was denied the opportunity to develop the factual record that rebuts these theories, denied the ability to submit an expert report responsive to these theories, denied the opportunity to develop invalidity contentions and evidence corresponding to these theories, and denied the opportunity to develop damages theories to account for these new theories (e.g., apportionment and non-infringing alternative theories).

Droplets should be held to the same standard as was applied to Yahoo's invalidity theories. At Droplets' behest, the Court already evaluated – and struck – portions of Yahoo's invalidity case for failure to disclose the specific theories in the Contentions related to the same "interactive link" element for which Droplets' Infringement Contentions are deficient. ECF 747 at 4-8. The Court held that it was not enough that the theories were obvious based upon the Contention disclosure: "These arguments fail for the same reasons stated above – Defendants were obligated to disclose their theories of invalidity no matter how obvious. This theory is therefore not disclosed and is struck." ECF 747 at 5-6. Similarly, the Court held that the contentions must identify the specific feature alleged to be the interactive link: "Because the contentions do not identify the same element for the limitation, this theory is undisclosed and therefore struck." *Id*. at 6.

Likewise, Droplets' Infringement Contentions do not have any of Dr. Schmidt's new theories or Droplets' new "Type B" suggestions. Therefore, Dr. Schmidt and Droplets' should not be allowed to present those new theories to the jury.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

### III.    Motion in Limine No. 3: To Exclude Droplets' Willfulness Allegations

In light of the Court's July 2, 2021 Order on Nordstrom's Motion for Summary Judgment (ECF No. 792), Yahoo moves *in limine* to preclude Droplets from introducing evidence or arguing that any infringement by Yahoo was willful, including precluding Droplets from offering into evidence certain deposition testimony from Michael Martin and the eight letters identified as exhibits PX-1516 through PX-1523 on Droplets' exhibit list. As shown below, Droplets asserts the same willfulness theories against Yahoo that it asserted against Nordstrom—all of which this Court held were "not the kind of "wanton, malicious, [or] bad-faith" behavior that will support a finding of willful infringement" under the standard set forth in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) and *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019). ECF No. 792 at 19. As the evidence relied upon by Droplets is insufficient as a matter of law to prove willfulness, such evidence and argument should be excluded. Furthermore, Droplets has added documents to its exhibit list suggesting that it intends to expand its willfulness theory beyond what was disclosed in its interrogatory responses and Patent Local Rule damages contentions. Droplets should be precluded from asserting a willfulness theory that was not timely disclosed.

### A.    Droplets' Willfulness Evidence Only Supports An Allegation That The Court Has Ruled To Be Categorically Insufficient

In its July 2 Order, this Court held that Droplets alleged "no more than ordinary infringement" and accordingly "grant[ed] summary judgment of no willful infringement" as to Nordstrom. ECF No. 792 at 19-20. The Court held that none of the five allegations relied upon by Droplets rose to the level of willfulness as a matter of law. ECF No. 792 at 19-20. Droplets relies on those same insufficient allegations as evidence that Yahoo willfully infringed the '745 Patent.

First, Droplets relies on the assertion that Yahoo was aware that the '745 Patent survived reexamination to establish willfulness. For example, in its Patent Local Rule 3-8 Second Amended Damages Contentions, Droplets states: "Yahoo was also aware of the strength of validity the '745 Patent carries. Specifically, Yahoo was on notice of the fact that the '745 patent survived a reexamination initiated by Adobe." Ex. 4 at 11. Droplets responded with identical language to Yahoo's interrogatory asking for the basis for any contention that Yahoo's infringement was

12

willful. Ex. 5 at 14. But the Court has already rejected Droplets' argument that the fact that "the asserted patent survived reexamination" supports a finding of willfulness. ECF No. 792 at 19.

Second, Droplets asserts that Yahoo's continued engagement in "its infringing activities" despite awareness "that a jury in Texas federal court found the '745 patent valid and infringed" is proof of willful infringement. Ex. 4 at 1; Ex. 5 at 14 (Resp. to Interrog. No. 8: "Yahoo is also aware that a jury in Texas federal court found the '745 patent valid and infringed."). In its July 2 Order, this Court rejected that same argument, holding that the allegation that "Nordstrom refused to take out a license and settle the case, even after a jury found other defendants infringing" did not support a willfulness finding. ECF No. 792 at 19.

Third, Droplets alleges that Yahoo's conduct was willful because it did not adopt non-infringing alternatives: "Yahoo nonetheless continued to engage in and escalated its infringing activities by developing, advertising, and making available additional infringing webpages/websites. Further, while it owned and operated the accused websites, Yahoo made no attempts to design around the '745 patent or otherwise stop its infringing behavior." Ex. 4 at 11; Ex. 5 at 14. This Court rejected Droplets' argument that willfulness could be based on the similar allegation that "Nordstrom did not adopt any non-infringing alternatives." ECF No. 792 at 19.

Fourth, to prove willfulness, Droplets appears to rely on the argument that Yahoo failed to adopt adequate policies regarding patents. In response to Yahoo's interrogatory asking for the basis for any contention that Yahoo's infringement was willful, Droplets "incorporates by reference the testimony of Michael Martin." Ex. 5 at 14. Droplets has designated deposition testimony from Martin that Yahoo did not have a written patent licensing policy or a policy of conducting patent clearance searches in advance of launching new products. Ex. 6 at 26:10-14, 32:23-33:15. But in its July 2 Order, the Court already held that Droplets' similar allegation that "Nordstrom lacks established policies for patent licensing, patent search, and responding to allegations of infringement" was inadequate to prove willfulness. ECF No. 792 at 19.

Finally, the Court rejected Droplets' argument that Nordstrom's reliance "on an invalidity reference similar to a reference cited by the PTO" supported willfulness. ECF No. 792 at 19.

13

Although Droplets does not appear to have made this contention against Yahoo up to this point, Nordstrom and Yahoo share an invalidity expert, Dr. Benjamin B. Bederson, and cite overlapping prior art references. To the extent Droplets intends to rely on this theory to argue that Yahoo willfully infringed, the Court has already rejected Droplets' similar argument against Nordstrom.

Given that this Court has already made clear that none of this alleged conduct rises to the level of "wanton, malicious, and bad faith behavior," there is no basis for Droplets to raise these issues at trial. Moreover, Droplets has no evidence of the more egregious conduct identified in the cases cited in the Court's July 2 Order, such that (1) Yahoo "copied" the patented invention or (2) Yahoo baselessly claimed that Droplets "lied and stole the inventions" despite not having read the patent. ECF No. 792 at 20. Accordingly, Droplets should be precluded from presenting argument or evidence regarding Yahoo's alleged willfulness at trial.[4]

### B.     Testimony Relevant Only to Willfulness Should be Excluded

Because the Court has already determined that Droplets' arguments are insufficient as a matter of law to prove willfulness, Droplets should be precluded from introducing documents or testimony whose only relevance is to willfulness. This includes certain deposition testimony of Michael Martin, which has been designated by Droplets, at lines: 16:15-17:19, 17:22-18:18, 26:10-26:14, 27:4-28:1, 30:6-30:11, 30:16-30:19, 31:4-32:10, 32:23-33:5, 33:7-33:15, 33:17-36:15, 36:25-37:4, 37:8-40:15, 40:16-41:20, 42:1-42:4, 42:14-43:10, 43:4-43:14, 44:12-44:20, and 45:9-45:18. *See* Ex. 6, Martin Dep. Tr. Excerpts. All of this testimony relates to Yahoo's patent licensing policies and practices or to what Yahoo did upon learning about the '745 Patent. Such testimony is relevant only to Droplets' willfulness contentions that have already been rejected by the Court. Droplets therefore should not be allowed to offer that testimony into evidence.[5]

### C.     Evidence and Argument Regarding Pre-Suit Willfulness Should be Excluded

---

[4] In fact, it is hard to understand how Droplets can continue to allege that Yahoo's conduct was "wanton, malicious, or in bad faith" when Droplets itself has acknowledged it is unlikely to succeed in its infringement litigation against Yahoo. Ex. 7.

[5] The only documentary evidence listed on Droplets' exhibit list for the purpose of proving willfulness are eight marketing letters from 2001 and 2002, which are discussed *infra* in Section III.C. To the extent Droplets intends to use any other documentary evidence to prove willfulness, such evidence should be excluded for the same reasons.

14

Finally, Droplets has recently added to its proposed exhibit list, as proposed exhibits PX-1516 through PX-1523, eight marketing letters from the 2001-2002 timeframe that are addressed to Yahoo, referencing Droplets' products at a very high level and offer to demo the technology. *See* Exs. 8 – 15 (collectively, the "2001/2002 Letters"). The "purpose" listed on Droplets' exhibit list for offering these documents into evidence is described as "Background, willfulness." Droplets should be precluded from relying on that theory and from offering the 2001/2002 Letters into evidence for two reasons.

First, Droplets failed to timely disclose that it intended to rely on these communications to prove willfulness. In particular, Droplets failed to reference the letters in either its responses to Yahoo's interrogatories or in its Patent Local Rule 3-8 damages contentions. Yahoo's Interrogatory No. 8 to Droplets stated: "To the extent you contend that Yahoo has willfully infringed the Asserted Patent, explain the basis for any contention that the case is exceptional, or that Droplets is entitled to enhanced damages under 35 U.S.C. § 284 or attorneys' fees under 25 U.S.C. § 285." Ex. 5 at 13. Absent from Droplets' response is any reference to the 2001/2002 Letters. *Id.* at 13-14. Similarly, the 2001/2002 Letters are omitted from Droplets' Second Amended Damages Contentions. Ex. 4 at 11. And Droplets does not disclose in either document any theory that, after receiving these marketing letters in 2001 and 2002, Yahoo should have investigated Droplets' products, located the '745 Patent, and then somehow changed its conduct. To the contrary, Droplets is clear that its willfulness contentions are based on an entirely different theory—that Yahoo continued to engage in allegedly infringing activity after "Yahoo was given actual notice of the '745 patent and how it infringes the '745 patent **in Droplets' Complaint**, and the **infringement contentions** served prior to Yahoo's sale of the websites." Ex. 4 at 11 (emphasis added); Ex. 5 at 14 (emphasis added).

Droplets cannot now rely on the 2001/2002 Letters for a willfulness theory that it has failed to disclose as required by the Federal Rules of Civil Procedure and this Court's Patent Local Rules. "Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and *particularly contention interrogatories*, be corrected or supplemented to reflect those changes." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272,

1280 (Fed. Cir. 2012) (emphasis added). Likewise, Rule 26(e) "imposes a duty to supplement or amend damages contentions when a party's damages theory shifts 'in some material respect.'" *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1227 (N.D. Cal. 2019) (Tigar, J.). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). The party "facing sanctions bears the burden of proving harmlessness," and imposition of the sanction of exclusion requires "no showing of bad faith or willfulness." *Finjan, Inc. Proofpoint, Inc.*, No. 13-cv-5808, 2015 WL 9900617, at *2 (N.D. Cal. Oct. 26, 2015). The sanction of exclusion is "self-executing" and "automatic." *Trulove v. D'Amico*, No. 16-cv-050, 2018 WL 1090248, at *2 (N.D. Cal. Feb. 27, 2018).

There is no justification for Droplets' failure to disclose its willfulness theory based on the 2001/2002 Letters, which presumably have been in Droplets' possession for two decades. Indeed, Droplets amended its damages contentions *twice*, including as late as November 2020, and Droplets supplemented its interrogatory response regarding its willfulness contentions at the same time—all without once mentioning the 2001/2002 Letters. Ex. 4; Ex. 5 at 13-14. Droplets' failure to timely disclose its willfulness theory is highly prejudicial to Yahoo. *See Netfuel, Inc. v. Cisco Sys. Inc.*, No. 18-cv-2352, 2020 WL 4381768, at *7 (N.D. Cal. July 31, 2020) (holding that "the level of prejudice that Defendant may experience if the supplemental damages contentions [served seven months after the close of discovery] are not struck is astronomical"). Because Droplets' trial exhibit list is its first suggestion that it may rely on the 2001/2002 Letters to prove willfulness, Yahoo has "not been able to investigate through discovery these allegations." *Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, No. 08-cv-4909, 2011 WL 839411, at *27 (N.D. Cal. Mar. 7, 2011), *aff'd*, 473 F. App'x 885 (Fed. Cir. 2012). The 2001/2002 Letters and any willfulness argument based on them must be excluded. *Contour Ip Holding, LLC v. GoPro, Inc.*, No. 17-cv-4738, 2021 WL 75666, at *5 (N.D. Cal. Jan. 8, 2021) (excluding evidence of alleged willfulness that was not disclosed in response to interrogatory asking for the legal and factual bases supporting a willfulness theory).

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

Second, even on the merits, the letters are irrelevant as to whether or not Yahoo willfully infringed the '745 Patent. "To willfully infringe a patent, the patent must exist and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *see also NetFuel, Inc. v. Cisco Sys. Inc.*, 18-cv-02352, 2018 WL 4510737, at *2 (N.D. Cal. Sept. 18, 2018). The 2001/2002 Letters do not reference the '745 Patent or state anywhere that Droplets' technology is patent-protected. Nor could they have. The '745 Patent did not issue until years later—in February 2004—and its application was not published before the patent issued in 2004. As such, the letters could not possibly have put Yahoo on notice of the patent-in-suit. *See, e.g.*, *Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133–34, 1137 (N.D. Cal. 2018) (letters sent before the patents existed and that accordingly did not mention the patents-in-suit provided "no plausible basis for inferring that [defendant] had pre-suit knowledge of any of the patents-in-suit"); *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-cv-06457, 2018 WL 4772340, at *8 (N.D. Cal. Oct. 1, 2018) (communications that disclosed designs, said plaintiff was seeking patent protection, and generally informed defendant of plaintiff's patent portfolio do not suffice to allege defendant knew of patents-in-suit which did not issue until well after communications occurred).

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

IV.   **Motion in Limine No. 4:  To Preclude Droplets From Referring To The Discovery Responses Of Yahoo And Verizon Media For The Purpose Of Implying That Yahoo Did Not Respond To Discovery**

Pursuant to FRE 401-403, Yahoo requests that Droplets be precluded from referring to the discovery responses of Yahoo and Verizon Media for the purpose of stating or implying that Yahoo did not respond to discovery. Droplets seeks to use Yahoo's discovery responses for two improper purposes:  First, Droplets seeks to argue a new discovery motion before the jury by implying that Yahoo did not respond to discovery and improperly tainting Yahoo to the jury.  Second, as noted in other in limine motions, Droplets seeks to re-litigate the Court's denial of Droplets' summary judgment that the Oath entities are jointly and severally liable in this litigation. *E.g.*, ECF 793 at 12-14.

First, Droplets now seeks to imply (or even overtly state) that Yahoo did not respond to discovery. At the outset, discovery disputes are solely the province of the Court, not the jury. *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-cv-4990, 2012 WL 2339762, at *2 (N.D. Cal. June 7, 2012) ("Evidence of the parties' discovery disputes are not relevant to the questions of patent validity or infringement, and thus should not be presented to the jury."); *see also Snyder v. Bank of Am., N.A.*, No. 15-cv-04228, 2020 WL 6462400, at *11 (N.D. Cal. Nov. 3, 2020) (granting a motion in limine to exclude discovery disputes, because "there does not appear to be any proper purpose for introducing this discovery dispute; it does not go to the merits of the case"). If Droplets had a discovery grievance, it needed to raise it with the Court. To the extent Droplets seeks any sort of inference based on allegedly improper discovery responses, it needed to seek that as a form of relief from the Court based on a specific discovery dispute. Droplets did not do that because no such basis exists.

Instead, Droplets now wants to raise the specter that Yahoo is hiding something. It is precisely because this inference is so prejudicial that discovery disputes are handled by the Court, and only presented to the jury in the form of an instruction by the Court in those very limited instances where the Court has concluded that a party acted wrongfully and that the jury should be so informed (yet nothing of the sort has happened here).

18

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

More specifically, Droplets now wants to rehearse the following garden-variety discovery history with the jury, from which Droplets wants to suggest there was something procedurally improper (or even sinister) about an incorporation by reference of discovery responses. By way of background, Droplets served separate but identical Interrogatories and Requests for Admissions on Yahoo and Verizon Media. In response, Verizon Media provided the substantive response and Yahoo's responses incorporated by reference the Verizon Media responses. This approach was done in part because, after 2017 when Verizon Media acquired the accused Yahoo website and properties, the information necessary to respond to discovery was largely in the possession of Verizon Media, not Yahoo. If Droplets believed that Yahoo's incorporation by reference was improper, it should have brought a discovery motion before the Court. Droplets did not bring any discovery motions against Yahoo, and it should not be allowed to seek a *de facto* discovery sanction to the jury and improperly taint Yahoo.

Second, Droplets' approach is another invitation by Droplets for the jury to view Verizon Media as being jointly and severally liable for any judgment. Droplets' improper use of Yahoo's discovery responses invites a needless sideshow regarding the specific relationship between Yahoo and Verizon Media. Any such insinuations or arguments by Droplets will require witnesses to then explain the relationship between those parties and why, under the contracts, Verizon Media generally possesses the relevant discovery information. The Court should not allow Droplets to subvert its summary judgment ruling in this fashion.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

**V.    Motion in Limine No. 5 – To preclude Droplets from presenting any argument or evidence that the length of time between the filing of Droplets' complaint and the trial of this case relevant to any issue to be decided by the jury in this case**

Droplets filed this litigation on September 7, 2011 (ECF No. 1) and seeks damages for a period ending on June 13, 2017, with the acquisition by Verizon Media of Yahoo's operating business. *See* ECF No. 617-4, Bergman Report, at ¶¶ 32-33. Yahoo respectfully moves *in limine* to preclude Droplets from presenting any argument or evidence that the length of time between the filing of Droplets' complaint and the trial of this case is in any way relevant to any issue to be decided by the jury in this case.

As shown below, *all* of the passage of time between September 2011 and June 2017 is properly attributable to three collateral factors, often resulting from Droplets' own tactical litigation decisions, that have *nothing* to do with the substance or merits of any liability or damages issue that will be before the jury. If Droplets is permitted to make arguments attempting to attribute to Yahoo all or part of the passage of time between filing of the complaint and trial, or implying that the jury should draw some negative inference from "Yahoo's delay," the actual historical facts regarding how this lawsuit evolved must be presented. But that threatens to overwhelm the jury and the trial with detailed explanations about past motion practice and a since-invalidated patent that do not remotely bear on the actual liability and damages issues the jury must decide. This case is complex enough, without introducing a separate sideshow on irrelevant, inconsequential matters. Any argument or evidence by Droplets regarding the passage of time since this lawsuit was filed should be excluded under FRE 403. Likewise, the Court should consider including an instruction to the jury cautioning them not to consider or draw any negative inferences from the length of time it took to get this case to trial.

Droplets' apparently intends to present evidence and argument—likely in large part through the testimony of its CEO, David Berberian—that Yahoo is responsible for the length of time between September 2011 (the date of Droplets' original complaint) and September 2021 (the scheduled time of trial), and that the jury should therefore draw some negative inference regarding Yahoo's liability. For instance, Droplets' contention interrogatory answer with respect to

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

willfulness indicates that Droplets will argue that Yahoo benefited from the passage of time by "escalating" infringing activities while this lawsuit was pending:

> Yahoo was given actual notice of the Patents-in-Suit [sic: Patent] and how it infringes the Patents-in-Suit [sic] at least since September 7, 2011 when the Complaint was filed....Yahoo nonetheless continued to engage in and escalated its infringing activities by developing, advertising, and making available additional infringing products and services....Yahoo maintained many of the same infringing products and services...from when the Complaint was filed until the divestment of those products and did not seek to remove any of the infringing instrumentalities from these infringing products and services. Indeed, Yahoo has added infringing functionalities to these webpages/websites....

Ex. 5 at 14. This same interrogatory answer "incorporates by reference the testimony of . . . David Berberian," on this issue.

None of the passage of time between the 2011 filing of Droplets' complaint and the 2017 end of its damages period is attributable to Yahoo. To the contrary, all of this passage of time is the result of collateral litigation decisions typically initiated by Droplets. Specifically:

1. Between the suit's filing date of September 7, 2011 and June 27, 2012, Droplets, Yahoo, and the other named defendants (such as Facebook and Amazon) were litigating the § 1404 issue of whether the Eastern District of Texas, where Droplets filed suit, or another forum such as the Northern District of California, was clearly more convenient. The Eastern District of Texas ultimately concluded "that the Northern District of California would be a more convenient venue than the Marshall Division of the Eastern District of Texas." ECF No. 136 at 14.

2. Shortly thereafter, in August 2012, Droplets decided to seek consolidation in an MDL of its various lawsuits involving the '745 patent-in-suit and a related patent also asserted in its cases, U.S. Patent 7,502,838 (the "'838 patent"), more on which below. This was because the Eastern District of Texas had kept one set of Droplets' cases, sent another to the Southern District of New York (the *E\*Trade* cases), and sent the final set to the Northern District of California, as indicated above. *See In re Droplets Patent Litig.*, MDL No. 2403 (J.P.M.L Aug. 27, 2012). In November 2012, Droplets then moved this Court to stay this case while its MDL petition was under

consideration (ECF No. 204), which the Court then granted on November 27, 2012: "All case deadlines are stayed until such time as the Judicial Panel on Multidistrict Litigation issues an order on Droplets' pending MDL request, or until 1/3/2013, whichever occurs first." (ECF No. 222).

3. Meanwhile, in September 2012, three of Yahoo's then co-defendants in this lawsuit—Google, YouTube, and Facebook—filed a request for *inter partes* reexamination of the '838 patent, which Droplets was then also asserting in this lawsuit. *See* ECF No. 269 at 1. On July 1, 2013, promptly after "the PTO issued an Action Closing Prosecution, rejecting each claim on the '838 Patent," Yahoo joined Nordstrom and Williams-Sonoma in requesting "to stay[] this litigation pending the outcome of Google and Facebook's *inter partes* reexamination." *Id.* at 2. Two months later, in September 2013, the Court granted the motion to stay, explaining that "the parallel claims between the '838 patent and the '745 patent" made it "likely that the USPTO's final decision will alter or simply the litigation with respect to both asserted patents." ECF No. 275 at 3. The Court ordered: "all deadlines in these cases are STAYED pending a decision by the USPTO." *Id.* at 4.

4. Finally, the reexamination process for the '838 patent continued for over *five years*—through at least May 2018, well after the end of Droplets' damages period—in large part because of Droplets' decision to appeal the invalidation of the '838 patent first within the PTO, then to the Federal Circuit, followed by an unsuccessful request for *en banc* review and an equally unsuccessful petition for writ of certiorari to the Supreme Court. Each time, this Court continued the stay first entered in September 2013. *See* ECF Nos. 281, 286, 288, 290, 293, 295, 297, 305, 307. At least *four* of those times, Droplets affirmatively requested "that the stay be continued" in "the interest of conserving resources." ECF Nos. 294, 297, 304, 306.

None of this complicated litigation history has anything to do with Yahoo's potential liability or the damages issue the jury will be asked to decide.

Any suggestion on Droplets' part that the passage of time bears on Yahoo's liability is highly prejudicial and should be excluded under FRE 403; *see generally Oracle Am., Inc. v. Hewlett Packard Enterprise Co.*, No. 16-cv-01393, 2018 WL 6511146, at *1 (N.D. Cal. Dec. 11, 2018) (Tigar, J.). Here, Droplets' argument that Yahoo caused the delay runs a significant risk of

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

confusing the issues and misleading the jury.  Droplets should not be allowed to argue or suggest that this passage of time was the product of something else, like Yahoo's desire to "escalate" infringement or to put pressure on a small company. Nor is it a solution to allow all of the evidence of this litigation history into the record before the jury. This will inevitably waste scarce trial time and resources and overwhelm the jury with distractions about topics like transfer motions, MDL panels, PTO reexamination procedures, appeals, litigation stays, and a patent—the '838 patent— that has been invalidated and is no longer at issue in the litigation. This Court should exclude any evidence or argument concerning the passage of time under FRE 403.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

## VI. Motion in Limine No. 6:  To Exclude Arguments, Evidence, And Testimony Regarding The Proposed Transaction To Sell The Yahoo Properties From Verizon To Apollo

Pursuant to FRE 401-403, Yahoo Defendants seek to exclude arguments, evidence and testimony regarding the proposed transaction announced on May 3, 2021 between Verizon and Apollo Global Management, Inc. ("Apollo") to sell the Yahoo operating assets to Apollo.

On May 3, 2021, Verizon and Apollo "announced that funds managed by affiliates of Apollo (the "Apollo Funds") entered into an agreement to acquire Verizon Media for $5 billion." Ex. 16 (Verizon press release). "Verizon Media is comprised of iconic brands such as Yahoo and AOL, as well as leading ad tech and media platform businesses." *Id*.

The transaction is not relevant to the issues disputed at trial. Because this proposed transaction was announced after fact and expert discovery closed, there was no fact discovery on this matter and no expert testimony on this matter. Since then, Droplets has not sought to supplement any of its expert reports with anything relating to this transaction. Likewise, Droplets has not explained why or how it intends to introduce evidence, arguments or testimony related to the proposed transaction, or how the proposed transaction is related to any issues in this case. Indeed, the proposed transaction has not closed yet, and thus any testimony would be speculative at best.  *E.g.*, *id*. ("The transaction, subject to satisfaction of certain closing conditions and expected to close in the second half of 2021.").

Further, even if there were minimal relevance (which Droplets has not articulated to date), it would be far outweighed by the prejudice of disclosing the total enterprise value of Yahoo to the jury, akin to the long-recognized prejudice of disclosing the stock market value, total revenue or total profits of a defendant to a jury.

**VII.    Motion Limine No. 7:  The Parties Are Not To Characterize The Business Practices Of Yahoo Or Verizon Media To Suggest Or Imply Thievery Or Indifference To Smaller Entities And To No Refer To Yahoo Or Verizon Media With Prejudicial Terms Such As Behemoth, Monopolist, Cheater, Copier, Thief, Or Goliath.**

Pursuant to FRE 401-403, Yahoo seeks an Order that the parties are not to characterize the business practices of the Defendants to suggest or imply thievery or indifference towards smaller entities, such as referring to Defendants as "behemoth," "monopolist," "cheater," "copier," "thief," or "Goliath." This is the type of in-limine motion that is routinely granted, yet Droplets refused to stipulate to not use these types of derogatory names to refer to the Yahoo Defendants.

Droplets' use of these terms and themes would inflame the jury. Regarding the specific terms, there is no allegation of any antitrust behavior, and thus Droplets' attempt to use the term "monopolist" has no place in this case.  Similarly, for "cheater," "copier," or "thief," Droplets does not have any allegations that the Yahoo Defendants cheated, copied, or stole anything related to this case. Rather, this case is a plain vanilla patent litigation in which the plaintiff, Droplets, acknowledges that it did not provide any pre-suit notice of the asserted patent to Yahoo and there is no allegation that Yahoo has not copied any aspect of the accused products from Droplets or from anyone else.

With respect to size-based terms such as "behemoth" or "Goliath," Droplets appears to be inviting the jury to cheer for Droplets as the would-be underdog, as an easier way of grappling with the technical issues in this case. Droplets likewise ignores the specifics of the accused Yahoo products in this case and focuses on Verizon products wholly unrelated to the case. The relative size of the parties has no relationship to any issue to be decided by the jury. Droplets' apparent "David" vs. "Goliath" theory is not appropriate to present to the jury.

To the extent that there would be any relevance to these terms and themes (and Droplets has not identified any such relevance), it would be outweighed by prejudice. Droplets is seeking $250M in damages — an order of magnitude greater than any other party has paid for the asserted patent. By invoking the size of the Yahoo Defendants, Droplets is wrongfully inviting the jury to ignore the appropriate damages analysis and punish Yahoo under the theory that it is a large company. That type of argument and testimony should not be allowed.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

**VIII.**   **Motion in Limine No. 8: To Exclude Arguments, Testimony Or Evidence Related To The Indemnity Agreement Between Yahoo And Verizon Media For Any Past Damages**

Pursuant to FRE 401-403, Yahoo seeks an Order precluding Droplets from making any argument or eliciting testimony or evidence on any indemnity agreement between Yahoo and the Oath entities and whether the Oath entities are liable for any judgment. The question of the nature of any liability between those entities was already ruled upon and excluded from the jury when the Court denied Droplets' summary judgment that the Oath entities are jointly and severally liable in this litigation. *E.g.*, ECF 793 at 12-14. Droplets should not be allowed to re-introduce this issue.

By way of background, the Court rejected Droplets' attempts to impose joint and several liability in holding, "[a]s explained above, joint and several liability is applicable only as to a defendant party against whom claims are asserted." *Id*. at 13 (citations omitted). Droplets did not bring a claim against Verizon Media. "As this Court recognized when Verizon Media sought summary judgment on behalf of Yahoo, Droplets' action 'asserts claims against Yahoo, but alleges no causes of action against Verizon Media, Oath, Inc. or Oath Holdings Inc.'" *Id*. at 12-13 (quoting ECF 551 at 4). As the Court held, Droplets "identifies no authority in which a court held that an intervening party against whom no claims were brought was nonetheless deemed jointly and severally liable for the potential judgment of another party." *Id*. at 13. In its summary judgment motion, Droplets "appear[ed] to be suggesting that the Court create a claim against Verizon Media by implication, despite Droplets' insistence that it has not sued, and will not sue Verizon Media…." *Id*. at 14.

Droplets now attempts to confuse the jury by arguing about this rejected claim to the jury. Droplets is inviting a case-within-a-case in which Droplets would argue to the jury that the terms of the Verizon Media / Yahoo contract are relevant to Droplets' damages theories, and suggesting the existence of an additional entity ready to satisfy the $250 M judgment Droplets is seeking. But the indemnity relationship between Verizon Media and Yahoo has no bearing on the issues that the jury will decide. Notably, the parties stipulated to a virtually identical motion precluding the parties

26

from introducing, "Arguments, statements, evidence, and testimony that Yahoo assigned their liabilities from before the Verizon acquisition away to another party."

At most, indemnity relates to a claim from Yahoo against Verizon Media. Droplets is unrelated to any such dispute or claim between Yahoo and Verizon Media. Any such interpretation of the indemnity relationship is both: (a) reserved for any dispute between Verizon Media and Yahoo; and (b) reserved for the Court to interpret the terms of the indemnity contract. Thus, the Court should reject Droplets' current attempt to confuse the jury by suggesting the existence of "a claim against Verizon Media by implication" for the same reason that it rejected those arguments in denying Droplets' summary judgment.

Weighed against the lack of relevance, Droplets' efforts would prejudicially create the impression that there are multiple "deep pockets" that could satisfy the outsized judgment Droplets seeks (a proposition that is irrelevant as a matter of law), and perhaps even that the parties expect there to be such a liability (a proposition that is not accurate). The Court should thus exclude the indemnification provisions in the agreements under which Verizon acquired Yahoo as well as any testimony of witnesses related to the that indemnification provision.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

## IX. Motion in Limine No. 9:    To Exclude Arguments, Statements, Evidence And Testimony Regarding The Ongoing Delaware Chancery Court Proceedings

Pursuant to FRE 401-403, Yahoo seeks to exclude arguments, statements, evidence and testimony regarding or relating to the separate Court proceedings occurring in Delaware for Yahoo (Altaba)'s corporate dissolution.

The Delaware Chancery Court has been conducting a separate proceeding related to the efforts of Yahoo to wind down its operations. As part of that wind-down, the Delaware Chancery Court has made, and is making, various determinations regarding the amount of hold-backs that will be required to satisfy claims against Yahoo.

Numerous parties, including Droplets, filed potential claims against Yahoo in the Chancery Court asking that the Court order various hold-backs to satisfy those claims if eventually proven. As part of Droplets' claim, the Delaware Court held a hearing in April, took testimony from various witnesses, and ultimately made determinations regarding the appropriate hold-backs for various claims against Yahoo, including Droplets' claim based upon speculation on what a jury might, or might not do, in possibly finding infringement and awarding damages in the present case.

Droplets' request for a hold-back in Delaware is entirely based upon Droplets' hopes for a successful outcome in the present case before this Court. In other words, the Delaware court is not making any independent assessment regarding the merits of the case, but rather is merely basing various hold-backs on Droplets' best-case-scenario of what might happen in the present case.

Droplets refuses to agree that the collateral proceedings in Delaware should be excluded from this current litigation.

Droplets' attempts to inject the Delaware proceedings are particular prejudicial, and not relevant, because the Delaware proceedings are merely Droplets' estimate of its best-case jury decision in the present proceedings, then trebled (to reach a number of approximately $750M). In other words, the jury in this case should not hear arguments, or be swayed by statements, related to the Delaware proceedings that are speculating on what the jury might do. Rather, the jury in this case should make its own determination.

Droplets' use of these proceedings would cause prejudice for at least three reasons.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

First, Droplets would seek to usurp the jury's role in determining liability in the first place by implying that the Delaware Chancery Court had determined liability as part of its proceedings for a hold-back (which is not true).

Second, Droplets would seek to usurp the jury's role in awarding the proper measure of damages for any infringement by implying that any hold-back amount in Delaware was an adjudication of, or evidence of, the proper amount of damages in this case (it is not).

Third, Droplets would use the Delaware proceedings to again seek to make an implied joint and several liability cause of action against Verizon Media – a position that this Court rejected in its Order denying Droplets' summary judgment motion on joint and several liability. ECF 793 at 12-14.  In discussions on this motion, Droplets indicated that it believe it could tell the jury that Yahoo was in the process of being dissolved. That is an overt attempt to invite exactly the type of implied joint and several liability that this Court rejected in its summary judgment order. Droplets should not be allowed to invite the jury to overturn this Court's legal rulings.

Moreover, any mention of the Delaware case invites a trial-within-a trial, and could create the impression that another Court has endorsed Droplets' damages claims (and its claims that damages should be trebled) on the merits. It would result in various witnesses testifying about what occurred in Delaware – which has no bearing on the issues before the jury. The Delaware Chancery Court judge made rulings that would need to be explained to the jury and all of the attendant legal standards for a Chancery Court dissolution proceeding would need to be explain to the jury, as well as the Chancery Court's various rulings.

For example, on July 30, 2021, the Chancery Court granted Droplets' request for a new trial related to the possible acquisition of the Yahoo operating websites by Apollo. Ex. 17.  However, in doing so, the Chancery Court emphatically rejected many of Droplets' arguments.  For example, in rejecting one of Droplets' theories for a new trial, the Court stated:

> It takes some guts to misrepresent a court's ruling to the very court that made the ruling. It is all the more brazen to do so just days after the court issued the ruling, before a busy judge has time to forget what he wrote. But that is the path Droplets chose. If the Verizon Backstop Theory had been Droplets' only argument in favor of a new trial, then

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

> the court would deny the motion and issue an order requiring Droplets
> to show cause why it should not be sanctioned for mischaracterizing
> the Security Order and advancing frivolous arguments.

*Id*. at 7. If Droplets were allowed to present arguments on the Chancery Court's July 30 ruling, those arguments would need to be presented with the full context of the Chancery Court's rulings and rejections of most of Droplets' theories.

In discussions on this motion, Droplets indicated that it would not submit pleadings from Delaware to the jury unless the door was opened. This argument has several fatal flaws. While pleadings are particularly not relevant, the Chancery Court's orders and rulings are even more prejudicial and irrelevant to the present proceedings. Second, Droplets "opened door" exclusion allows Droplets to unilaterally inject the Delaware proceedings (including pleadings) to the jury by eliciting testimony that Droplets believes opens the door. Third, by merely provoking this dispute in front of the jury, Droplets will accomplish its goal to prejudice Yahoo by implying that there are some relevant facts or issues being concealed from the jury.

30

**X.    Motion in Limine No. 10:  Experts cannot testify beyond the scope of what is in their report.**

The Court should preclude any expert from: (a) providing any opinion not included in the expert's report; and (b) discussing or relying on any evidence or facts not expressly identified and relied on in the report. Fed. R. Civ. P. 26. This Court confirmed in this case that expert opinions outside the scope of an expert report are not admissible. *See* Dkt. 801 at 6 ("Anything less is outside the scope of the report and therefore not admissible.") (citing *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1002 (N.D. Cal. 2019). Yahoo was thus surprised that Droplets contests the basic proposition reflected in this Motion in Limine.

Rule 26(a)(2)(B) requires a witness who is "retained or specially employed to provide expert testimony in the case" to provide a written report containing, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them," and "(ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B); *see e.g. Apple Inc. v. Samsung Electronics Co.*, No. 12–cv–0630, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014) ("expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them."). Rule 37 "gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (internal quotation marks and citation omitted).

The Rules forbid undisclosed expert opinions. As such, Droplets should not be permitted to elicit testimony from an expert beyond what was disclosed in the expert's report.

## XI.     Motion in Limine No. 11: To Preclude Droplets from Using Late-Disclosed Evidence

Since May 2021, long after the close of fact and expert discovery, and after the parties were well into pretrial preparations, Droplets has produced approximately 250 documents and listed most of them in its exhibit list. In addition, Droplets has identified numerous other videos and materials on its exhibit list, without producing them or otherwise pointing to where they have been used in this litigation. Examples of these documents can be found at PTX-1436 – PTX-1509, PTX-1515. App'x A to Pretrial Statement. To be clear, this motion does not encompass publicly-available documents that had been identified in expert reports and merely needed formalities of production such as Bates stamping or, for example, printouts of documents shown in expert reports. Rather, these are materials with no apparent previous identification as being applicable to the case in any fashion.

Droplets should not be allowed to use this late-disclosed evidence. *See Viasphere Int'l, Inc. v. Vardanyan*, No. 12-cv-01536, 2014 WL 12709000, at \*1 (N.D. Cal. Feb. 24, 2014) (granting motion to "Exclude any Evidence not Previously Identified in Plaintiff's Initial Disclosures or Produced During Discovery" "as to any documents, witnesses, or testimony not disclosed in discovery, except as may be relevant for impeachment purposes only." (citing Fed. R. Civ. P. 26(a)(1)(A)(i))).

## XII.   Motion in Limine No. 12: To Preclude Droplets From Introducing Any Testimony, Argument, or Insinuation that Yahoo Did Not Properly Produce Documents or Otherwise Meet Its Discovery Obligations

Yahoo respectfully requests that the Court exclude all evidence, testimony or argument that Yahoo did not fulfill its discovery obligations in this matter. These issues are wholly irrelevant to the issues at trial, are highly prejudicial, and any probative value of such issues is substantially outweighed by the danger of unfair prejudice and jury confusion. Such information would only serve to mislead the jury to believe that reasonable discovery disputes were the result of Yahoo's willful discovery abuse or fraud, creating an unfair inference. Moreover, all discovery issues are a matter for the Court. Fed. R. Civ. P. 26, 37; Fed. R. Evid. 401, 402, 403; *see, e.g., Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-cv-4990. 2012 WL 2339762, at *2 (N.D. Cal. June 7, 2012) ("Evidence of the parties' discovery disputes are not relevant to the questions of patent validity or infringement, and thus should not be presented to the jury."); *see also Snyder v. Bank of Am.*, No. 15-cv-04228, 2020 WL 6462400, at *11 (N.D. Cal. Nov. 3, 2020) (granting a motion in limine to exclude discovery disputes, because "there does not appear to be any proper purpose for introducing this discovery dispute; it does not go to the merits of the case).

Nor can Droplets fairly contend that Yahoo's alleged failure to provide discovery is relevant to other issues like willfulness. Even assuming Droplets' willfulness contention remains for trial—although it should be excluded based on at least the reasons in Motion In Limine No. 3 above—Droplets did not once in this case file a discovery motion against Yahoo in connection with fact discovery. To the contrary, Droplets and Yahoo worked through and resolved all issues concerning documentary and testimonial production and evidence via a meet-and-confer process, just as the Federal Rules of Civil Procedure intended. *See, e.g.*, Fed. R. Civ. P. 1. Droplets should not be permitted for the first time at trial to raise vague and prejudicial claims of discovery non-compliance in the guise of attempting to support a willfulness assertion.

XIII.    **Motion in Limine No. 13: To Preclude Droplets From Introducing Deposition Testimony Of Its Own Officers Into Its Case In Chief.**

Pursuant to FRE 801-802, Yahoo Defendants requests that Droplets not be allowed to admit deposition testimony from its own officers (Mr. Berberian, Mr. Theuerkauf, and Mr. Rose) into evidence as part of its case-in-chief, including the playing of such testimony. Such testimony is a flat violation of the Rule 802 prohibition on hearsay and does not fall under any of the exceptions.

In pre-trial exchanges of deposition designations, Droplets designated numerous deposition passages from each of its officers. Droplets stated that Mr. Berberian is a "will call" witness but Mr. Theuerkauf and Mr. Rose are "may calls" witnesses. Thus, Droplets is hedging its bets on whether to call Mr. Theuerkauf and Mr. Rose as live witnesses.

In attempts to reach a stipulation for this MIL, Droplets identified two exceptions. First, Droplets seeks to admit its officers' testimony if the officer becomes unavailable. This exception would swallow the rule in this instance. Droplets' officers are under the control of Droplets and also seek to benefit personally by any favorable outcome. By allowing an "unavailable" exception card to be played at trial, Droplets could avoid cross examination of its officers and yet play portions of the deposition that it believes were helpful for it.

Second, Droplets seeks to allow its experts to rely upon the deposition testimony of Droplets' officers.  Experts may rely upon hearsay, but such reliance does not make the hearsay evidence (*e.g.*, the deposition testimony) independently admissible to be shown / played to the jury. Any other rule would allow experts to subvert the hearsay rule merely by citing to hearsay evidence in their report.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

**XIV.** **Motion in Limine No. 14: To Preclude Droplets From Introducing Any Evidence, Testimony, Or Arguments Of The Overall Size Or Overall Revenue Of Yahoo Or Verizon .**

Pursuant to FRE 401-403, Yahoo Defendants requests that Droplets may not introduce evidence, testimony, or arguments of the overall [financial] size or overall revenue of Yahoo or Verizon.   During the parties' meet and confers, Droplets agreed to this motion if it were limited to only the "financial size" (as indicated by the brackets above).

Droplets should not be allowed to refer to <u>any</u> form of "size" for Yahoo or Verizon, not just financial size. For example, presumably Droplets is reserving the ability to argue that Verizon has thousands of employees or dozens of offices. Such indicia of different forms of size are not relevant to any of the issues to be presented to the  jury.

Any minimal relevance is substantially outweighed by the prejudice of implying that some form of "size" should impact the jury's deliberations. Droplets presumably seeks to introduce a David v. Goliath theme. But such a theme is merely a prejudicial effort to get the jury to ignore the difficult technical and financial issues to be presented in this case and rule for the "little guy" because presumably the larger party will not be significantly injured by any such ruling.  This is an invitation to punish a party (e.g., Yahoo or Verizon) because of some indicia of size.

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

Dated:  August 3, 2021                              Respectfully submitted,

/s/ Meghan C. Killian
Meghan C. Killian
(SBN: 310195)
George D. Niespolo
(SBN: 72107)
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
415.957.3000 (phone)
415.957.3001 (fax)
GDNiespolo@duanemorris.com
MCKillian@DuaneMorris.com

Kevin P. Anderson
(admitted *pro hac vice*)
Duane Morris LLP
505 9th Street, N.W., Suite 1000
Washington D.C. 20004-2166
202.776.7800 (phone)
202.776.7801 (fax)
KPAnderson@duanemorris.com

Aleksander Goranin
(admitted *pro hac vice*)
Duane Morris LLP
30 South 17th Street
Philadelphia PA 19103-4196
215.979.1000 (phone)
215.979.1020 (fax)
Agoranin@duanemorris.com

Woody Jameson
Matt C. Gaudet
Alice Snedeker
(admitted *pro hac vice*)
Duane Morris LLP
1075 Peachtree Street NE, Suite 2000
Atlanta GA 30309-3929
404.253.6900 (phone)
404.253.6901 (fax)
WJameson@duanemorris.com
MCGaudet@duanemorris.com
AESnedeker@duanemorris.com

36

Jennifer H. Doan
(admitted *pro hac vice*)
Texas Bar No. 08809050
Joshua R. Thane
(admitted *pro hac vice*)
Texas Bar No. 24060713
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com

**DEFENDANT YAHOO!, INC. AND
INTERVENOR-PLAINTIFFS OATH, INC.
AND OATH HOLDINGS, INC.**

DEFENDANT YAHOO!, INC. AND INTERVENOR-PLAINTIFFS OATH INC. AND OATH HOLDINGS, INC.'S
OMNIBUS MOTIONS IN LIMINE, CASE NO. 12-cv-03733-JST

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of **YAHOO DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE*** was served by ECF on all counsel of record on August 3, 2021.

/s/ Meghan C. Killian
Meghan C. Killian