Courtland L. Reichman (CA Bar No. 268873)
  creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
  sballard@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
  kfalkenstien@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
  mflanigan@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
  khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
  jcardenas-navia@reichmanjorgensen.com
Michael Matulewicz-Crowley (admitted *pro hac vice*)
  mmatulewicz-crowley@reichmanjorgensen.com
Michael Marvin (admitted *pro hac vice*)
  mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
Telephone: (646) 921-1474
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant
*Droplets, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>YAHOO!, INC.,<br><br>    Defendant.<br><br>OATH, INC., et al.,<br><br>    Intervenor-Plaintiffs,<br><br>    v.<br><br>DROPLETS, INC.,<br><br>    Intervenor-Defendant.<br><br>DROPLETS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NORDSTROM, INC.,<br><br>    Defendant. | Case No. 12-cv-03733-JST<br><br>**PLAINTIFF DROPLETS, INC.'S RESPONSES TO YAHOO'S OMNIBUS MOTIONS IN *LIMINE***<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED<br><br>HEARING:<br>Date: August 13, 2021 (Pretrial Conference)<br>Time: 2:00 p.m,<br>Place: Courtroom 6, 2nd Floor Oakland Courthouse<br>Judge: Hon. Jon S. Tigar |

# TABLE OF CONTENTS

Pages

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD .......................................................................................... 1

I.   Yahoo's Motion in Limine No. 1: Yahoo's Request To Exclude Certain Portions Of Droplets' Damages-Related Opinions Regarding Search Suggest........... 4

BACKGROUND .................................................................. 5

ARGUMENT........................................................................ 6

A.   The Premise of Yahoo's Motion, That The Court Granted Summary Judgment, Is Flawed. ................................................ 6

B.   Yahoo's Arguments Are An Untimely Request For Summary Judgment Or Daubert. .......................................... 7

C.   Had Yahoo Sought Summary Judgment Or Daubert Exclusion, It Would Have Been Meritless.................................. 8

CONCLUSION ................................................................... 12

II.   Yahoo's Motion in Limine No. 2: Yahoo's Request To Preclude Presentation Of Evidence As To Search Suggest. ........................................ 13

BACKGROUND .................................................................. 15

ARGUMENT........................................................................ 18

A.   The Challenged "Particular User" Customization Evidence Is Substantially Justified........................................ 20

B.   Droplets' Contentions And Dr. Schmidt's Report Disclosure Is Sufficient Under The Particular Circumstances Of This Case. .................. 22

i.   Droplets' Infringement Contentions. ......................... 23

ii.   Dr. Schmidt's Expert Report. .................................. 24

iii.   What Droplets Is Accusing Has Not Changed — Droplets Has Merely Supplemented Its Evidence In Light Of Changed Circumstances. ................................................ 25

C.   Droplets' Contentions And Expert Report Were Sufficient. ..................... 26

i.   Droplets' Infringement Contentions Put Yahoo On Notice Of Droplets' Infringement Theories. ............................ 26

ii.   Dr. Schmidt's Report Is Sufficient........................... 29

D.    Droplets Would Be Unduly Prejudiced By Yahoo Being Allowed To Articulate A New Theory That Droplets Is Not Allowed To Respond To — Yahoo Would Not. ....................................................................... 31

    i.    Yahoo Is Not Prejudiced. ....................................................... 32

    ii.    Droplets Would Be Unduly Prejudiced. ..................................... 33

    CONCLUSION ........................................................................... 34

III.    Yahoo's Motion in Limine No. 3: Yahoo's Request To Exclude  Droplets' Willfulness Case ...................................................................... 35

IV.    Yahoo's Motion in Limine No. 4: Yahoo's Request to Exclude Its Discovery Responses ............................................................................. 39

V.    Yahoo's Motion in Limine No. 5: Yahoo's Request to Exclude The Passage of Time .................................................................................... 42

VI.    Yahoo's Motion in Limine No. 6: Yahoo's Request to Exclude The Verizon/Apollo Sale ............................................................................. 44

VII.    Yahoo's Motion in Limine No. 7:    Yahoo's Request to Preclude Use of Certain Words ............................................................................... 47

VIII.    Yahoo's Motion in Limine No. 8: Yahoo's Request To Exclude  The Verizon Indemnification .......................................................................... 49

IX.    Yahoo's Motion in Limine No. 9: Yahoo's Request To Exclude The Dissolution Proceeding ............................................................................. 51

X.    Yahoo Motion in Limine No. 10: Yahoo's Request To Limit Experts To Their Reports ............................................................................... 53

XI.    Yahoo's Motion in Limine No. 11: Yahoo's Request To Preclude Droplets From Using Demonstratives And Publicly Available Information ....................... 55

XII.    Yahoo's Motion in Limine No. 12: Yahoo's Request To Exclude Evidence About Whether Yahoo Failed To Meet Its Discovery Obligations ....................... 57

XIII.    Yahoo's Motion in Limine No. 13: Yahoo's Request To Preclude Use Of Depositions If Witnesses Are Unavailable .............................................. 61

XIV.    Yahoo's Motion in Limine No. 14: Yahoo's Request To Exclude Its Overall Size And Revenue ................................................................. 63

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alarm.com, Inc. v. Securenet Techs. LLC,*
No. 1:15-cv-00807, ECF No. 242 (D. Del. Jan. 23, 2019) .......................................................65

*Apple Inc. v. Motorola, Inc.,*
757 F.3d 1286 (Fed. Cir. 2014).............................................................................................11

*APS Tech., Inc. v. Vertex Downhole, Inc.,*
2020 WL 4346700 (D. Del. July 29, 2020) ...........................................................................36

*Asetek Danmark A/S v. CMI USA, Inc.,*
2014 WL 6997670 (N.D. Cal. Dec. 9, 2014)..........................................................................54

*Asia Vital Components Co. v. Asetek Danmark A/S,*
377 F. Supp. 3d 990 (N.D. Cal. 2019) ...................................................................................19

*ASUS Computer Int'l v. Round Rock Research, LLC,*
2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ........................................................................24

*Asyst Techs., Inc. v. Emtrak, Inc.,*
544 F.3d 1310 (Fed. Cir. 2008)..............................................................................................20

*Bakst v. Cmty. Mem'l Health Sys., Inc.,*
2011 WL 13214315 (C.D. Cal. Mar. 7, 2011).......................................................................35

*Bowers v. Baystate Techs., Inc.,*
320 F.3d 1317 (Fed.Cir.2003)................................................................................................19

*Carey v. Bahama Cruise Lines,*
864 F.2d 201 (1st Cir. 1988)..................................................................................................63

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
2016 WL 6246736 (N.D. Cal. Oct. 26, 2016).................................................................2, 8, 35

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
2016 WL 7803893 (N.D. Cal. Nov. 15, 2016) .......................................................................55

*Cave Consulting Grp., Inc. v. Optuminsight, Inc.,*
2018 WL 1938555 (N.D. Cal. Apr. 25, 2018) ........................................................................54

*Century Indem. Co. v. Marine Group,*
3:08-cv-1375-AC, 2015 U.S. Dist. LEXIS 199119 (D. Or. Oct. 29, 2015) ...........................62

*Chopourian v. Catholic Healthcare West,*
2011 WL 6396500 (E.D. Cal. Dec. 20, 2011) ......................................................................8, 9

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
  942 F.3d 1119 (Fed. Cir. 2019)...................................................................................19

*Corcoran v. CVS Pharmacy, Inc.*,
  2021 WL 1721056 (N.D. Cal. Apr. 30, 2021) ...........................................................61

*Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc.*,
  1999 WL 225891 (E.D. Pa. Apr. 16, 1999) .................................................................2

*Delta T, LLC d/b/a Big Ass Fan Co. v. Dan's Fan City, Inc.*,
  No. 8:19-cv-1731, ECF No. No. 193 (M.D. Fl. May 27, 2021) ..............................65

*In re Depomed Pat. Lit.*,
  No. 2:13-cv-4507, ECF No. 364 (D.N.J. Feb. 22, 2016).............................................2

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
  2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ..........................................................56

*Easton v. Asplundh Tree Experts, Co.*,
  2018 WL 1306455 (W.D. Wash. Mar. 3, 2018) .........................................................55

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
  946 F.3d 1367 (Fed. Cir. 2020)..................................................................................36

*Emcore Corp. v. Optium Corp.*,
  No. 7-326, ECF No. 225 (W.D. Pa. Oct. 16, 2009) .....................................................2

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
  2015 WL 13037241 (N.D. Cal. Dec. 21, 2015)..........................................................54

*F.B.T. Prods., LLC v. Aftermath Recs.*,
  827 F. Supp. 2d 1092 (C.D. Cal. 2011) .....................................................................20

*Finjan, Inc. v. Bitdefender Inc.*,
  2019 WL 3564443 (N.D. Cal. Aug. 6, 2019) ............................................................45

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  2015 WL 3640694 (N.D. Cal. June 11, 2015)......................................................26, 27

*Finjan, Inc. v. Proofpoint, Inc.*,
  2016 WL 612907 (N.D. Cal. Feb. 16, 2016) .............................................................25

*Finjan, Inc. v. Qualys Inc.*,
  2021 WL 1253651 (N.D. Cal. Apr. 5, 2021)........................................................26, 27

*Focal Point Films, LLC v. Sandhu*,
  2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) ..........................................................32

*Forrester Env't Servs., Inc. v. Wheelabrator Techs.*
  No. 10-CV-154-JL, 2012 WL 1161125 at *2 (D.N.H. Apr. 6, 2012) .......................63

*Fujifilm Corp. v. Motorola Mobility LLC*,
  2015 WL 12622055 (N.D. Cal. Mar. 19, 2015)...................................................................28, 45

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12-cv-3587, ECF No. 256 (N.D. Cal. Mar. 19, 2015) .........................................................1

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v.
  U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) ....................43, 47, 48, 65

*Goodman v. Staples The Office Superstore, LLC*,
  644 F.3d 817 (9th Cir. 2011) ...................................................................................................20

*Gray v. Mazda Motor of America, Inc.*,
  2009 WL 10673335 (C.D. Cal. Feb. 6, 2009)....................................................................55, 57

*GSI Tech., Inc. v. United Memories, Inc.*,
  2015 WL 12942201 (N.D. Cal. Oct. 14, 2015)...................................................................2, 35

*Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*,
  2013 WL 6116129 (N.D. Cal. Nov. 20, 2013), *modified*, 2013 WL 6227626 (N.D.
  Cal. Nov. 22, 2013)...............................................................................................................2, 35

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016).........................................................................................................36, 48

*Hammonds v. Yeager*,
  2017 WL 10560525 (C.D. Cal. Aug. 8, 2017)......................................................................1, 3

*Hartman v United States*,
  538 F2d 1336 (8th Cir. 1976) ..................................................................................................61

*Johns Hopkins Univ. v. CellPro, Inc.*,
  152 F.3d 1342 (Fed. Cir. 1998)................................................................................................20

*Johnson v. City of Olympia*,
  2018 WL 8918629 (W.D. Wash. Oct. 12, 2018) ....................................................................57

*Jurgens v. CBK, Ltd.*,
  80 F.3d 1566 (Fed. Cir. 1996)..................................................................................................36

*Lexion Med., LLC v. Northgate Techs.*
  641 F.3d 1352, 1358-1359 (Fed. Cir. 2011) ...........................................................................19

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006).................................................................................................24

*LivePerson, Inc. v. [24]7.AI, Inc.*,
  2020 WL 10457005 (N.D. Cal. May 26, 2020) ....................................................................2, 35

*Looksmart Grp., Inc. v. Microsoft Corp.*,
  386 F. Supp. 3d 1222 (N.D. Cal. 2019) ............................................................................20

*Luce v. United States*,
  469 U.S. 38 (1984) ..............................................................................................................1

*Madrigal. v. Allstate Indemnity Co..*,
  2015 WL 12746232 (C.D. Cal. Oct. 29, 2015) ..............................................................1, 48

*Magna Elecs., Inc. v. TRW Auto. Hldgs. Corp.*,
  No. 1:12-cv-654, ECF No. 830 (W.D. Mich. Jan. 27, 2016) ...............................................2

*Mayeron v. United States*,
  308 F. App'x 179 (9th Cir. 2009) .......................................................................................20

*Mazloum v. D.C. Metro. Police Dep't*,
  248 F.R.D. 725 (D.D.C. 2008) ...........................................................................................63

*Mendoza v. Intuitive Surgical, Inc.*,
  2021 WL 1893083 (N.D. Cal. May 11, 2021) ......................................................................1

*Meyer Intell. Properties Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ............................................................................................8

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  No. C08-04990, 2012 WL 2339762 (N.D. Cal. June 7, 2012) ...........................................57

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  2019 WL 2437073 (N.D. Cal. June 11, 2019) ....................................................................54

*Munasar v. Alaska Tanker Co., LLC*,
  2012 WL 7187321 (N.D. Cal. Oct. 17, 2012) .....................................................................44

*nCube Corp. v. SeaChange Int'l.*
  809 F. Supp. 2d 337, 348 (D. Del. 2011) ......................................................................28, 29

*Oracle Am., Inc. v. Google Inc.*,
  2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ..............................................................26, 28

*Pajas v. Cnty. Of Monterey*,
  2019 WL 188660 (N.D. Cal. Jan. 14, 2019) .......................................................................54

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  2020 WL 1049911 (C.D. Cal. Feb. 18, 2020) .................................................................8, 38

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  2020 WL 9158697 (C.D. Cal. Aug. 7, 2020) ......................................................................38

*Philadelphia Indem. Ins. Co. v. Broan-Nutone*,
  L.L.C., 2015 WL 866055 (N.D. Cal. Feb. 27, 2015) .....................................................31, 32

*Phoenix Techs. Ltd. v. VMware, Inc.*,
  2017 WL 8069609 (N.D. Cal. June 7, 2017) ................................................................63

*Plumley v. Mockett*,
  836 F. Supp. 2d 1053 (C.D. Cal. 2010) .....................................................................54

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
  725 F.3d 1377 (Fed. Cir. 2013)..................................................................................54

*RideApp, Inc. v. Lyft, Inc.*,
  2019 WL 7834175 (N.D. Cal. Oct. 16, 2019 ..............................................................32

*Riles v. Shell Expl. & Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002)..................................................................................42

*Romero v. Cty. of Santa Clara*,
  2014 WL 12694224 (N.D. Cal. Oct. 2, 2014)..............................................................31

*Sabo v. Fiskars Bands, Inc.*,
  2015 WL 12750276 (D. Idaho Dec. 4, 2015) ................................................................1

*Schindler Elevator Corp. v. Otis Elevator Co.*,
  2010 WL 4007303 (S.D.N.Y. Oct. 6, 2010) ...............................................................19

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
  2019 WL 176788 (N.D. Cal. Jan. 10, 2019)................................................................25

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
  495 F.Supp.2d 1066 (S.D. Cal. June 29, 2007) ..........................................................53

*Snyder v. Bank of America, N.A.*,
  2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ..............................................................57

*Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*,
  2020 WL 7347860 (C.D. Cal. Nov. 18, 2020)............................................................29

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
  2013 WL 12164680 (N.D. Cal. May 20, 2013)...........................................................29

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)..................................................................................36

*U.S. v. RSR Corp.*,
  2005 WL 5977799 (W.D. Wash. Oct. 4, 2005) ..........................................................59

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  2017 WL 11489792 (C.D. Cal. Nov. 15, 2017)...........................................................48

*United States v. Heller*,
  551 F.3d 1108 (9th Cir. 2009) .....................................................................................1

*United States v. Tokash*,
    282 F.3d 962 (7th Cir. 2002) ........................................................................................1

*United States. v. Wolfenbarger*,
    2021 WL 3212833 (N.D. Cal. July 29, 2021) ...............................................1, 47, 66

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    No. SACV 12-00329 AG, 2014 WL 8096334 (C.D. Cal. Apr. 21, 2014) ...............................63

*Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*,
    2012 WL 243308 (N.D. Cal. Jan. 25, 2012) ........................................................1

*Victory Carriers, Inc. v. Stockton Stevedoring Co.*,
    388 F.2d 955 (9th Cir. 1968) ........................................................................................59

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ........................................................................................42

*WCM Indus., Inc. v. IPS Corp.*,
    721 F. App'x 959 (Fed. Cir. 2018) ........................................................................................38

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ........................................................................................31

**Federal Statutes**

35 U.S.C. § 286 ........................................................................................42

**Rules**

Fed. R. Civ. P. 26 ........................................................................................53

Fed. R. Civ. P 26(a)(2)(B) ........................................................................................53

Fed. R. Civ. P. 32 ...............................................................................61, 62, 63, 64

Fed. R. Evid. 702 ........................................................................................8

Fed. R. Evid. 401 ........................................................................................44

Fed. R. Civ. P. 56 ...............................................................................7, 35

Patent Local Rule 3-6 ........................................................................................20

Patent Local Rule 3-6(a) ........................................................................................20

Patent Local Rule 3–1(c) ........................................................................................26

Fed. R. Civ. P. 30(b)(6) ........................................................................................37

Fed. R. Civ. P. 37 ...............................................................................29, 32, 54, 55

Fed. R. Evid. R. 403.................................................................................................................43, 44, 66

**INTRODUCTION**

For ease of reference, Droplets has compiled its oppositions to Yahoo's motions in *limine* into this omnibus paper. Droplets opposes each of Yahoo's motions as set forth herein.

**LEGAL STANDARD**

A motion in *limine* seeks a preemptive evidentiary ruling that evidence is not admissible. *See, e.g.*, *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009); *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). These preemptive rulings "may be used to exclude inadmissible or prejudicial evidence before it is offered at trial," in order to "streamline trials and settle evidentiary disputes in advance." *Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, 2012 WL 243308, at *1 (N.D. Cal. Jan. 25, 2012) (citing *Luce*, 469 U.S. at 40 n.2; *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)).

"[T]o exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *United States. v. Wolfenbarger*, 2021 WL 3212833, at *1 (N.D. Cal. July 29, 2021) (quoting *Mendoza v. Intuitive Surgical, Inc.*, 2021 WL 1893083, at *1 (N.D. Cal. May 11, 2021)); *see also Sabo v. Fiskars Bands, Inc.*, 2015 WL 12750276, at *1 (D. Idaho Dec. 4, 2015) ("The party moving to exclude evidence in limine has the burden of establishing that the evidence is not admissible for any purpose."). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Wolfenbarger*, 2021 WL 3212833, at *1; *see also Madrigal. v. Allstate Indemnity Co..*, 2015 WL 12746232, at *1 (C.D. Cal. Oct. 29, 2015) ("If there is any question on the issue, rather than barring the evidence before trial, the court should reserve rulings on questions of admissibility until they actually arise, in the context of the trial.") (internal quotations and citations omitted).

"Motions in limine are generally disfavored, particularly where a proposed exclusion is broad and unspecified." *Hammonds v. Yeager*, 2017 WL 10560525, at *4 (C.D. Cal. Aug. 8, 2017) (citations omitted). Motions in *limine* are not proper vehicles for instructing jurors on legal principles, determining the sufficiency of evidence, or making substantive rulings. *See, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-3587, ECF No. 256 at 8 (N.D. Cal. Mar. 19, 2015) (denying

Case No. 12-cv-03733-JST                         1                    Droplets' Omnibus Opposition to Yahoo's
                                                                                      Motions *in Limine*

motion in *limine* seeking to preclude instructing the jury "on the  principles of law governing the case" as "unnecessary and redundant")  (citing *Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc.*, 1999 WL 225891, at *1 (E.D. Pa. Apr. 16, 1999) ("The purpose of a motion in limine is not to obtain a court order directing the parties to present their case in a manner consistent with the Federal Rules of Evidence and other well understood [ ] principles of law.")); *In re Depomed Pat. Lit.*, No. 2:13-cv-4507, ECF No. 364 at 2 (D.N.J. Feb. 22, 2016) ("An *in limine* motion is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because that is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.") (citations omitted); *Emcore Corp. v. Optium Corp.*, No. 7-326, ECF No. 225 at 1-2 (W.D. Pa. Oct. 16, 2009) (denying motion in *limine* that "resemble[d] a motion for summary judgment," noting that "[t]he time for filing Motions for Summary Judgment has long passed") (internal citations and quotations omitted)); *Magna Elecs., Inc. v. TRW Auto. Hldgs. Corp.*, No. 1:12-cv-654, ECF No. 830 at 3 (W.D. Mich. Jan. 27, 2016) ("However, motions in limine do not provide the opportunity for the Court to adjudicate facts left for the jury or matters of law otherwise reserved for summary-judgment motions. Where a motion in limine is no more than a rephrased summary-judgment motion, the motion should not be considered.") (citations and quotations omitted); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6246736, at *3 (N.D. Cal. Oct. 26, 2016); *LivePerson, Inc. v. [24]7.AI, Inc.*, 2020 WL 10457005, at *1 (N.D. Cal. May 26, 2020) (explaining that a "motion *in limine* is not a proper vehicle by which to seek summary judgment on all or a portion of a claim."); *see, e.g.*, *GSI Tech., Inc. v. United Memories, Inc.*, 2015 WL 12942201, at *5 (N.D. Cal. Oct. 14, 2015) ("[A] motion in limine is not 'an appropriate means to resolve factual disputes or weigh evidence' and 'should not be used as disguised motions for summary judgment.'") (citations omitted); *Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, 2013 WL 6116129, at *8 (N.D. Cal. Nov. 20, 2013), *modified*, 2013 WL 6227626 (N.D. Cal. Nov. 22, 2013) ("Western Digital now (inappropriately) brings a motion for summary judgment that it has 'disguised' as a motion in limine to 'effectively bar' GTE from raising this cause of action at trial"); *Hammonds*, 2017 WL 10560525, at *4 ("[A] motion in limine is not the proper vehicle to resolve substantive issues, to test issues of

Case No. 12-cv-03733-JST                                    2                    Droplets' Omnibus Opposition to Yahoo's
Motions *in Limine*

law, or to address or narrow the issues to be tried.") (citations omitted).

Droplets apologizes for the length of this brief. In its MILs, Yahoo raised no shortage of substantive issues, including in parts seeking relief more akin to summary judgment, and the length of Droplets' brief is a reflection of the breadth of those issues and of the importance of responding to each issue fully.

I.    **Yahoo's Motion *in Limine* No. 1: Yahoo's Request To Exclude Certain Portions Of Droplets' Damages-Related Opinions Regarding Search Suggest.**

Yahoo's Motion in *Limine* No. 1 ("MIL No. 1") seeks to exclude wide swaths of Droplets' expert opinion on damages, but the premise of the motion is fundamentally flawed. Yahoo claims that "[i]n light of the Court's July 27, 2021 Order on Yahoo's motion for summary judgment regarding Search Suggest . . . , the only surviving infringement theory is based on a user's 'past keystrokes.'" MIL No. 1 at 1. Yahoo seems to contend that the challenged opinions are not relevant because the Court has granted partial summary judgment in favor of Yahoo, and therefore the expert testimony must be excluded. *Id.* ("None of these experts' opinions relate to the 'past keystrokes' theory of Search Suggest that survived summary judgment.").

Yahoo's Motion is flawed at every level. The Court did not grant summary judgment, it denied it. It determined Droplets had adduced sufficient evidence to defeat Yahoo's motion even without the evidence Yahoo challenged on admissibility grounds. Because there was sufficient evidence of infringement without the challenged evidence, the Court did not need to reach the admissibility issue, and expressly left the question open by noting that "[a]s for Droplets' other theories, it is not clear whether Droplets will be able to assert them at trial." ECF No. 801 at 8. These admissibility questions are taken up in Yahoo's MIL No. 2.

Further, Yahoo's MIL Nos. 1 and 2 taken together make no sense. It is inherently contradictory to say that because the Court dismissed certain evidence (which it did not), the expert opinions that, according to Yahoo, never addressed that evidence in the first place also should be struck. The reports discussed herein did not depend on the admissibility of the evidence challenged by Yahoo. And Yahoo does not seek to strike opinions that were not disclosed — it seeks to strike ones that *were* disclosed on the grounds of sufficiency of the evidence (which is decidedly inappropriate for a motion in *limine*). In this regard, MIL No. 1 reduces to an untimely request for summary judgment or exclusion under *Daubert* — neither of which are appropriate in Yahoo's chosen vehicle. And if Yahoo were to bring such motions, it could not meet its burden, and therefore the motions would be without merit.

Accordingly, Droplets respectfully requests that the Court deny Yahoo's MIL No. 1.

## BACKGROUND

Yahoo's Motion seeks to exclude portions of Droplets' damages-related experts' opinions related to Search Suggest. The challenged opinions and their context are described below.

First, Mr. Zatkovich, an expert in consumer behavior in web technology, analyzed whether a particular alleged noninfringing alternative, referred to as the "reloading" alternative, was commercially viable. Ex. 2 ¶¶ 66-68. Notably, Mr. Zatkovich analyzed this particular alternative because Droplets' technical expert, Dr. Douglas Schmidt, opined that it was the only proposed alternative that potentially was technically viable and non-infringing.[1] Ex. 4 ¶ 2.h ("The only technically viable non-infringing alternative to Yahoo Search Suggest would be reloading the entire webpage whenever new content is to be displayed."). Yahoo does not seek to exclude this Schmidt opinion, undercutting any argument that it was inappropriate for Mr. Zatkovich to rely on it.

Following Dr. Schmidt's identification of the "reloading" alternative as the only ***technically*** viable noninfringing alternative, Mr. Zatkovich concluded that "it is my opinion that using reload to implement search suggest would provide such a poor experience that it would render this feature non***commercially*** viable." Ex. 2 ¶ 68 (emphasis added). Thus, in combination, Dr. Schmidt and Mr. Zatkovich concluded that there are no viable noninfringing alternatives to Search Suggest.

Droplets' damages expert, Mr. Bergman, relied on those opinions of Dr. Schmidt and Mr. Zatkovich, noting that "based on my discussions with Dr. Schmidt and Mr. Zatkovich, none of these alternatives [to Search Suggest] would have been technically and/or commercially acceptable." Ex. 7 ¶ 191. Mr. Bergman also conducted his own analysis of the evidence to confirm Dr. Schmidt's and Mr. Zatkovich's opinions, and to support his reliance on those opinions. *Id.* ¶¶ 191-199 ("Based on the analysis above, Yahoo's non-infringing alternatives are either not commercially acceptable or would result in the Yahoo Accused Websites operating more slowly.").

Finally, to calculate the "incremental benefit attributable to the patented technology of the '745 patent" for Search Suggest, Dr. Bergman calculated the benefit of having Search Suggest in

---

[1] Dr. Schmidt opined that even this alternative was likely not viable, "because it would require reloading a page for each character that a user typed in, substantially increasing the time to perform a search, and creating an unacceptable flickering effect as a user typed a query." Ex. 4 ¶ 212.

Case No. 12-cv-03733-JST                 5                 Droplets' Omnibus Opposition to Yahoo's
Motions *in Limine*

comparison to not having Search Suggest, because as discussed above, "there are no non-infringing alternatives" "[f]or Search Suggest." Ex. 7 ¶ 201. To make that calculation, Mr. Bergman relied in part on a "survey performed by Dr. Schwartz," Droplets' survey expert, "which tested the impact of the absence" of Search Suggest. *Id.*

Yahoo seeks to exclude these opinions of Mr. Zatkovich, Mr. Bergman, and Dr. Schwartz.

<u>**ARGUMENT**</u>

**A.     The Premise of Yahoo's Motion, That The Court Granted Summary Judgment, Is Flawed.**

The premise of Yahoo's Motion is that **"**[i]n light of the Court's July 27, 2021 Order on Yahoo's motion for summary judgment regarding Search Suggest . . . , the only surviving infringement theory is based on a user's 'past keystrokes.'" Yahoo's MIL No. 1 at 1, 2 ("In its recent Summary Judgment Order, the Court concluded that only Droplets' 'past keystrokes' theory of infringement survived summary judgment."), 5. That is not Droplets' understanding of the Court's Summary Judgment Order.

In opposing summary judgment, Droplets submitted a variety of evidence to show Search Suggest met the "particular user" limitation and to respond to Yahoo's new argument that customization is required. ECF No. 775 at 5-7. Yahoo contested some of that evidence on the grounds that it was inadmissible because it was not disclosed in Droplets' infringement contentions or expert report. Droplets' understanding of the Summary Judgment Order is that it determined that regardless of whether the challenged evidence is admissible, Droplets had submitted other evidence sufficient to defeat summary judgment. The Summary Judgment Order stated that "[a]s for Droplets' other theories, it is not clear whether Droplets will be able to assert them at trial." ECF No. 801 at 8. Droplets understands from this statement that the Court did not resolve the question of whether Droplets can assert these theories at trial.[2] The Order goes on to say that, in light of the lack of clarity,

---

[2] In fact, Yahoo appears to concede that this question is unresolved in a different Motion in *limine*. Yahoo's MIL No. 2 asks the Court to exclude these very theories, which only makes sense if they were not already excluded. To be clear, Yahoo's MIL No. 1 fails regardless of whether Droplets' other infringement theories are excluded, as discussed in Sections I.B and I.C.

Case No. 12-cv-03733-JST                    6                    Droplets' Omnibus Opposition to Yahoo's Motions *in Limine*

"at this stage, the Court denies summary judgment based on the 'past keystroke' theory only." *Id.* at 8-9. Thus, Droplets understands the Court to have denied summary judgment because the past keystrokes provided sufficient evidence of infringement without needing to consider Droplets' other evidence.

Such a ruling makes sense and is consistent with summary judgment law. Federal Rule of Civil Procedure 56 provides that summary judgment is only appropriate where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Since the Court identified evidence of Search Suggest's infringement (the "past keystrokes" evidence), there was no need to reach the other evidence at that stage.

Yahoo presents its motion as if the Court granted summary judgment on certain issues, and therefore the experts' discussion of those issues should be out of the case. The challenged portions of the expert reports did not focus on these factual issues in particular in the first place, so granting summary judgment on the Droplets' additional evidence (were such a thing possible) would still not have required striking the challenged opinions, and of course summary judgment was not granted. Indeed, Yahoo's core argument has been that this other evidence was not previously disclosed sufficiently (a point Droplets contests in response to Yahoo MIL No. 2) — but if so, it makes no sense to say that the experts' opinions should be struck when in Yahoo's view, the expert did not discuss the additional evidence in the first place.

Because the premise of Yahoo's motion fails, MIL No. 1 can be denied on this basis alone without wading into the additional problems discussed below.

**B. Yahoo's Arguments Are An Untimely Request For Summary Judgment Or *Daubert*.**

Yahoo's Motion also should be denied because in substance it asks the Court to grant summary judgment or to exclude expert opinions in violation of *Daubert*. Its basic argument is that the evidence is insufficient to support certain sections of the expert reports. This is not an evidentiary question or a matter of excluding matter not disclosed in expert reports. Indeed, it's the opposite — it seeks to exclude the very matter disclosed in the expert reports on sufficiency of the evidence grounds. And it

does so months after the deadline for summary judgment or *Daubert* motions without any good cause to do so.  As set forth above, nothing about the summary judgment order renders the challenged opinions inadmissible.

"[W]hether there is sufficient evidence" for a party to prove some aspect of its case "is a question for the jury." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6246736, at *3 (N.D. Cal. Oct. 26, 2016) ("[I]f Defendants believed there was no genuine dispute of material fact on [the] issue, they should have filed a motion for summary judgment.").  Accordingly, "a motion *in limine* is not the appropriate vehicle for weighing the sufficiency of the evidence." *Meyer Intell. Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012); *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 2020 WL 1049911, at *1 (C.D. Cal. Feb. 18, 2020).  "Motions *in limine* should rarely seek to exclude broad categories of evidence and are not an appropriate means to resolve factual disputes." *Pavo Sols. LLC*, 2020 WL 1049911, at *1 (internal quotations omitted).

Yahoo argues that Droplets' damages-related experts do not accurately capture the value of the technology because their analysis is not sufficiently tethered to infringement.  But whether the analysis is sufficiently tethered to infringement, to the extent it is not a straight-up summary judgment question, is a *Daubert* challenge.  *See, e.g.*, Fed. R. Evid. 702 (stating that expert opinion can be offered if, *inter alia*, it is based on sufficient facts and a product of reliable methods).

Motions *in limine* are not designed for untimely substantive motions.  *Chopourian v. Catholic Healthcare West*, 2011 WL 6396500, at *12 (E.D. Cal. Dec. 20, 2011) (court may "summarily deny" "a substantive motion disguised as a motion in limine").

**C.    Had Yahoo Sought Summary Judgment Or *Daubert* Exclusion, It Would Have Been Meritless.**

Yahoo has made no attempt to meet the exacting standards for summary judgment or exclusion under *Daubert* or Rule 702.  It makes a cursory two-page argument without citing or applying the relevant standards or showing good cause for such belated motions.  While Droplets need not marshal all of its evidence and arguments given Yahoo's utter failure to address the correct legal standards, it summarizes the type of arguments it would make had such timely motions been filed.  Even this

Case No. 12-cv-03733-JST                              8                   Droplets' Omnibus Opposition to Yahoo's
                                                                                                    Motions *in Limine*

overview shows there would be no merit to such motions.

Yahoo argues that the challenged opinions should be excluded because they "lack any connection to Droplets' remaining 'past keystrokes' infringement theory." Yahoo MIL No. 1 at 5. The evidence on this is more than sufficient. As an initial matter, Yahoo's argument misapprehends Droplets' claims in this case. Yahoo refers to different "aspects of Search Suggest." *See, e.g.*, *id.* at 1 (discussing "unaccused aspects of Search Suggest"). What has been accused in this case is Yahoo's websites, and as relevant here, Search Suggest. "Past keystrokes" is one type of evidence to show that Search Suggest infringes. Specifically, the claims require "*facilities* for restoring a particular user's previous operating state." Droplets has identified those facilities, and identified what those facilities do to "restor[e] a particular user's previous operating state." The "past keystrokes" evidence is one explanation for how those facilities, performing those actions, meet the claim language. Droplets' expert explained that Search Suggest infringes because it restores a particular user's operating state. Ex. 3 ¶¶ 25-26. Droplets' other infringement evidence provides further support for why those facilities satisfy the claim language. ECF No. 775 at 5-7; ECF No. 776-6 (Schmidt declaration) ¶¶ 16-32. Droplets' evidence of how Search Suggest works does not constitute different "aspects of Search Suggest."

Droplets' damages-related expert opinions are closely tethered to the value to Yahoo of the infringing feature, Search Suggest, with its accused "facilities" that "restor[e] a particular user's previous operating state," as required by the law. Dr. Schmidt considered twenty-seven alternative ways of implementing Search Suggest that, Yahoo contended, would not infringe, to determine whether any could be implemented (and whether they were in fact noninfringing). Ex. 4 ¶¶ 165-218. Dr. Schmidt concluded from his analysis that "[t]he only technically viable non-infringing alternative to Yahoo Search Suggest would be reloading the entire webpage whenever new content is to be displayed." *Id.* ¶ 2.h. In turn, Mr. Zatkovich analyzed the "reloading" alternative, and concluded that it was not commercially viable because, "[s]ince search suggest is so common on websites, users have very well-defined preconceived notions of how it should function" and so "using reload to implement search suggest would provide such a poor experience that it would render this feature noncommercially

Case No. 12-cv-03733-JST                    9                    Droplets' Omnibus Opposition to Yahoo's
                                                                              Motions *in Limine*

viable." Ex. 2 ¶¶ 66-68. Based on those opinions, Dr. Bergman used a survey, conducted by Dr. Schwartz, to value the patented feature by looking at the but-for world in which Search Suggest did not exist. Ex. 7 ¶ 201. As the Court recently found, Dr. Bergman's valuation of the feature was proper given that there is no viable way to implement Search Suggest without infringing. ECF No. 824 at 11 ("Where Droplets' patent permits it to block certain features in their entirety, that ability would plausibly drive a hypothetical negotiation towards a higher royalty rate.").

Droplets' experts opine on the value attributable to the infringing features of the product. It is not necessary, or feasible, to apportion further to specific evidence showing that Search Suggest infringes. As the Court recently held in its order denying Yahoo's *Daubert* Motion to exclude other of Mr. Bergman's opinions, while it is necessary to apportion "products that contain features," further "apportionment of features" "is not required." ECF No. 824 at 9.

Yahoo also argues that Mr. Zatkovich "*should* have evaluated [] the commercially viability of a Search Suggest system missing the 'past keystrokes' capability." Yahoo MIL No. 1 at 4. That is, Yahoo argues that the evidence is insufficient because Mr. Zatkovich should have considered a noninfringing alternative wherein Search Suggest does not have the "past keystrokes" capability. At best, this argument goes to weight and not whether the evidence is sufficient. Further, there is a very good reason Mr. Zatkovich did not consider this non-infringing alternative — because not even Yahoo thought it was a non-infringing alternative. Yahoo did not disclose this non-infringing alternative during discovery, as was required, and no expert has opined that it would be viable and noninfringing. ECF No. 808-28 at 34-42; ECF No. 808-23 (Shamos Report) ¶¶ 375-485. Nor does Yahoo explain how its noninfringing alternative would be implemented. What would Search Suggest even look like without the "past keystrokes" capability — the ability to restore Search Suggest's operating state, and display the resulting search suggestions, when a user enters the same search term into the search box a second time — and how would that be achieved? Even if Yahoo had filed a summary judgment or *Daubert* motion on this, it would lack merit because it goes to weight and an expert is not required to analyze a non-infringing alternative never proposed by the defendant, and the technical feasibility of which has never been explained.

Case No. 12-cv-03733-JST                    10          Droplets' Omnibus Opposition to Yahoo's
                                                                        Motions *in Limine*

Yahoo further asserts that Mr. Zatkovich's methodology was flawed because he does not analyze the non-infringing alternative he does opine on — the "reloading" alternative — in "a situation where a user experiences ongoing full-page reloads *the first time* the user inputs any search-query text into the search box, not a scenario where the user is resurfacing 'past keystrokes.'" Yahoo MIL No. 1 at 3. But that is not an accurate characterization of Mr. Zatkovich's opinion. Yahoo cites to Mr. Zatkovich's general description of Search Suggest to imply that his opinion was limited to the first time someone uses Search Suggest, but that is not true. Mr. Zatkovich explicitly stated that he was evaluating an alternative that required "refreshing the entire web page for each interaction the user has with the web page." Ex. 2 ¶ 67 ("Implementing search suggest using reload would mean, each time the user typed a letter in the search box, the entire webpage would reload."). Mr. Zatkovich's analysis thus applies to any "interaction" with the search bar, including deleting or adding a character to re-enter a previous search term. And Mr. Zatkovich therefore considered the very scenario Yahoo now raises — in which the full page must be reloaded to show new search suggestions when "a user searches for the word 'test' on Yahoo Search and then deletes the letter 't.'" Yahoo MIL No. 1 at 2. In any event, Yahoo's argument, if raised in a timely *Daubert*, motion would lack merit because its criticism goes to weight, not admissibility.

Finally, Yahoo criticizes the methodology used by Mr. Bergman and Dr. Schwartz and the sufficiency of the evidence they cite. Specifically, Yahoo criticizes Mr. Bergman for "assum[ing] that Search Suggest *writ large*—in its entirety—could not operate on Yahoo's websites" and Dr. Schwartz for assuming in "a but-for world with the allegedly infringing feature removed . . . that Search Suggest would be missing in its entirety." Yahoo MIL No. 1 at 4-5. But Mr. Bergman and Dr. Schwartz rely on Dr. Schmidt's opinion (which Yahoo has not challenged) and Mr. Zatkovich's opinion that there are no viable noninfringing alternatives to Search Suggest in rendering their opinions. Such reliance is proper and uncontroversial. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."). Any criticism Yahoo has can be addressed on cross-examination.

Case No. 12-cv-03733-JST                    11            Droplets' Omnibus Opposition to Yahoo's
                                                                          Motions *in Limine*

As Yahoo acknowledges, Droplets' experts opine as to the value of the patented invention in the accused functionality. *See, e.g.*, MIL No. 1 at 3 (acknowledging that Mr. Zatkovich opines "that Search Suggest could not function in a 'commercially viable' way without practicing the '745 patent"). Such opinion is unquestionably relevant to Droplets' damages claims. Yahoo's quibbles with how the experts reached their opinions do not render those opinions irrelevant, they merely provide fodder for cross-examination.

Yahoo has failed to raise any issue properly considered in a motion in *limine* — e.g., that Droplets evidence is inadmissible under the rules of evidence or that its opinions were not set forth in the experts' reports. Its other arguments should not be considered in the first place given its failure to cite or meet the applicable standards, but Droplets summarizes what it would argue if motions had been timely filed to reinforce the conclusion that there is no reason to address Yahoo's belated "Hail Mary" arguments.

## CONCLUSION

Accordingly, for the foregoing reasons, Droplets respectfully requests that the Court deny Yahoo's MIL No. 1.

Case No. 12-cv-03733-JST                    12          Droplets' Omnibus Opposition to Yahoo's
Motions *in Limine*

**II.    Yahoo's Motion *in Limine* No. 2: Yahoo's Request To Preclude Presentation Of Evidence As To Search Suggest.**

Yahoo's Motion in *Limine* No. 2 ("MIL No. 2") seeks to exclude certain evidence (and associated expert opinion and arguments) presented by Droplets in response to Yahoo's recent summary judgment motion.  Droplets presented that evidence because Yahoo's motion, for the first time, argued that Droplets must prove Yahoo's products customize (tailor) to satisfy the "particular user" limitation.  Yahoo seeks to assert this theory despite never having raised it previously, then preclude Droplets from addressing it.  The case law permits Droplets' response, as do notions of fair play and substantial justice.

In April 2021, the Court modified the definition of "interactive link" to add a "particular user" requirement.  A month later, Yahoo sought summary judgment on the ground that customization was required to satisfy the particular user limitation.  Yahoo never previously disclosed this theory.  It did not disclose its "particular user" theory in its discovery responses requiring its noninfringement positions.  Its noninfringement expert quoted the New York court's discussion of "particular user," but made no arguments about it, and did not mention or address the customization theory.  Yahoo's invalidity expert never described the claims to require either "particular user" or customization, and never applied those constructions (begging the question of how these invalidity theories can survive Yahoo's current arguments).  In short, the "particular user" construction was never in this case until the Court modified the claim construction in April 2021.  And the customization theory was not raised until a month later.

The cases permit supplementation of expert opinions and infringement contentions when the circumstances have changed — in particular, when the claim construction has been modified.  The cases typically apply a "good cause" standard, which is amply satisfied here by the changed circumstances.  A modified claim construction is routinely recognized as good cause, particularly where the party seeking supplementation was not the party proposing the construction.  This is all the more true here, because the supplementation is merely additional evidence from Yahoo witnesses and files about how its product works — all within Yahoo's knowledge and control.  Further, Yahoo sought

Case No. 12-cv-03733-JST                         13                Droplets' Omnibus Opposition to Yahoo's
                                                                                           Motions *in Limine*

a belated summary judgment motion on the grounds that the modification of the claim construction constituted "good cause" for not having met the summary judgment deadline — specifically, that its motion was not "ripe" until the Court modified the construction.  If that modification was "good cause" for Yahoo's motion, *a fortiori* it is "good cause" for Droplets to supplement its evidence of infringement.

While good cause is present under these circumstances, and sufficient to dispose of Yahoo's MIL No. 2, the theories presented by Droplets have not changed.  Droplets accuses the same products and the same functionality.  What has changed is that it has additional evidence showing customization, which again comes from Yahoo.  Under these circumstances, Droplets' prior disclosures were sufficient.  The new evidence presented in Dr. Schmidt's declaration is the very type of elaboration and explanation of Droplets' original theories permitted by the cases when considering the factual circumstances of this case — namely, that Yahoo waited until May 2021 to first disclose its particular user customization theory.

Finally, the potential prejudice faced by the parties decidedly favors admission of the evidence.  Yahoo would not be unduly prejudiced because it invited these circumstances by waiting until the end of the case to disclose its "particular user" customization theory, the evidence in question is its own, and it never has sought to depose Dr. Schmidt on his declaration.  By contrast, what Yahoo has requested would unduly prejudice Droplets, allowing Yahoo to present new theories, but depriving Droplets of the opportunity to respond.  Yahoo plans to argue to the jury that its product does not customize, while precluding Droplets from responding by pointing out how Yahoo's own evidence shows that it does.  Further, it is difficult to reconcile Yahoo's assertion that it was deprived of the opportunity to develop its case with its request that the Court deprive Droplets of any ability to respond.  "Particular user" customization was not an argument Droplets sprung on Yahoo.  How Yahoo's product works was something completely in Yahoo's knowledge and control.  It was Droplets that was deprived of the opportunity to develop its case — through infringement contentions, discovery, and expert reports — by Yahoo waiting to the last minute to seek modification of the claim construction then arguing that the modified construction requires customization.

Case No. 12-cv-03733-JST                    14          Droplets' Omnibus Opposition to Yahoo's
Motions *in Limine*

In short, neither "particular user" nor customization were fairly in this case until a few months ago, and thus supplementation with additional evidence is appropriate. Allowing Yahoo to present its new "particular user" customization theory while precluding Droplets from responding is in no way required by the rules, seeks an unjust result, and asks that the jury be shielded from the actual facts. Accordingly, Droplets respectfully requests that the Court deny Yahoo's MIL No. 2.

## BACKGROUND

The dispute presented by Yahoo's MIL No. 2 concerns the "particular user" requirement that the Court added to the claim construction of "interactive link" in its April 30 Order. More specifically, the dispute concerns Yahoo's new theory that the "particular user" element requires customization (i.e., tailoring of the operating state to the particular user).

Claim construction took place between July and December 2019. The parties disputed the meaning of "interactive link." ECF No. 404 at 3-4. Yahoo did not ask the Court to include a "particular user" limitation. *Id.* Yahoo also filed a motion for issue preclusion, in which it argued for the construction proposed in its claim construction brief, *id.*, as being supported by the claim construction by the Southern District of New York ("SDNY"). ECF No. 371-1 at 3. Again, Yahoo did not argue for a "particular user" limitation.[3] *Id.* The Court granted that motion and construed "interactive link" as, *inter alia*, "computer code that . . . includes facilities for restoring previous operating states of the application as the application is represented at a user's computer." ECF No. 412 at 11.

Yahoo also did not mention "particular user" or customization in its relevant discovery responses. Droplets served an interrogatory seeking Yahoo's bases for noninfringement. ECF No. 808-28 at 5. In response, Yahoo specifically argued that its products did not restore previous operating states, but never alleged that the claims required a "particular user," much less any need for customization or tailoring that was not met by its products. *Id.* at 6-9, 14-34.

On August 25, 2020, Droplets served its Fourth Amended Infringement Contentions (the

---

[3] Neither the claim construction brief or preclusion brief argued for the customization requirement. ECF No. 404; ECF No. 371-1.

operative contentions). Ex. 16. At that time, the Court's construction did not require "particular user," and Yahoo had never even referenced a "particular user" requirement. Thus, Droplets' contentions identified the accused functionality, but of course did not mention the as-yet unknown "particular user" requirement, and of course had no reason to reference the customization requirement, which was not raised until May 2021.

The first indication of the "particular user" theory to Droplets' knowledge came in an email from Yahoo's counsel on September 9, 2020, nine months after claim construction ended.[4] Ex. 1 at 1. In that email, Yahoo asserted that "Search Suggest fails to restore the previous operating state, because it does not restore a particular user's previous operating state." *Id.* Yahoo did not mention customization. *Id.* Despite its email, Yahoo did not move to modify the claim construction to add "particular user" at that time, and would not move for four months. Given its choice not to move before expert reports were due, Droplets reasonably understood that Yahoo did not intend to ask the Court to modify the construction.

On November 24, 2020, Droplets expert, Dr. Schmidt, served his report. Ex. 3, Ex. 4. Again, at that time, the construction of "interactive link" did not include "particular user." Dr. Schmidt opined on the construction as provided by the Court, and did not reference "particular user" — and of course he did not address the customization requirement that would not be raised for six more months. *See, e.g.*, Ex. 3 at 1.

Similarly, Yahoo's noninfringement expert generally applied the Court's construction. Although Dr. Shamos copied the summary judgment opinion from SDNY into his report essentially wholesale (Ex. 17 at ¶¶ 115-127), he did not provide any of his own analysis that Search Suggest did not meet the "particular user" requirement. *See generally* ECF No. 808-23 (Shamos Report); Ex. 17 (Shamos Report, Ex. 3). And Dr. Shamos did not mention a customization requirement. *Id.* Yahoo's other technical expert, Dr. Bederson, opined on the alleged invalidity of the patent-in-suit. Dr. Bederson also did not reference any "particular user" or customization requirement. *See generally* Ex.

---

[4] Yahoo's new counsel, which promoted this new theory, had just entered its appearance on August 13, 2020.

18. Of course, he would be required to have addressed this argument because the prior art must meet each and every limitation of the patent to invalidate it.[5] Indeed, these limitations also were absent from Yahoo's invalidity contentions. *See generally* Ex. 19.[6] The aforementioned absence of the "particular user" or customization requirements in Yahoo's own materials serves to underscore that these limitations were not fairly in the case before the Court's modification of the claim construction in April 2021.

On January 6, 2021, Yahoo moved to modify the "interactive link" construction to include "particular user." ECF No. 593. This was after all expert reports were served, six days before the close of expert discovery, and nearly four months after Yahoo had first raised the issue. Notably, Yahoo still did not mention a customization requirement.

January 20, 2021 was the deadline for summary judgment motions under the Court's scheduling order. ECF No. 445 at 2. Yahoo did not seek summary judgment at this point, reflecting that it did not believe it had a basis to do so.[7] Indeed, it could not argue for summary judgment based on a limitation that was not part of the claim construction.

On April 30, 2021, the Court granted Yahoo's motion and "modified" "the claim construction of the term 'interactive link'" to include "particular user." ECF No. 749 at 10. In response, Yahoo requested leave to file a summary judgment motion for noninfringement based on "particular user," arguing that "[g]ood cause now exists for an additional, narrowly-focused summary judgment motion on non-infringement" because "this motion was not ripe until the Court issued its April 30 Order." ECF No. 757 at 3-4. Good cause was, in fact, required to file an out-of-time summary judgment after the deadline set by the scheduling order. Yahoo still did not mention a customization or tailoring requirement. The Court granted Yahoo leave to file its summary judgment motion. ECF No. 766.

---

[5] If, as Yahoo argues, the experts were required to have addressed the "particular user" and customization limitations in their expert reports, then Yahoo's invalidity expert would be precluded from testifying that the prior art meets the "particular user" limitation — and, as such, judgment as a matter of law would be warranted as to all of Yahoo's anticipation and obviousness invalidity defenses.

[6] Yahoo's invalidity contentions are more than 8,000 pages long. Droplets has attached exemplary claim charts and can provide the full contentions at the Court's request.

[7] Nordstrom did seek summary judgment (ECF No. 611) but did not contend that the claims included a customization requirement.

On May 26, 2021, Yahoo filed its summary judgment motion, where for the first time it argued that "particular user" required customization. *See, e.g.*, ECF No. 769 at 9 ("The claim requires . . . customization to a particular user."). Its argument was that the evidence must show that the operating state is customized — which is to say, tailored — to a particular user. *Id.* at 7-9.

In response to Yahoo's new "particular user" arguments, specifically its customization argument, Droplets pointed to Yahoo documents and deposition testimony showing that the restored operating states in Search Suggest are customized (tailored) to the particular user. ECF No. 775 at 5-7. Droplets also cited to the new Schmidt declaration, submitted with Droplets' opposition, in which Dr. Schmidt analyzed the evidence and opined that the restored operating states in Search Suggest are customized to the particular user. *Id.* at 4-7 (citing Schmidt declaration (ECF No. 776-6)). Yahoo argued in its reply brief that the Court should not consider Droplets' arguments or the Schmidt declaration because they were not previously disclosed. ECF No. 780 at 8-12. Droplets responded to those arguments in its sur-reply. ECF No. 790.

On July 27, 2021, the Court denied Yahoo's motion for summary judgment. ECF No. 801. For purposes of deciding the motion, the Court disregarded the new information in Dr. Schmidt's declaration. Contrary to Yahoo's argument, the Court did not decide that this information would be excluded from trial. Yahoo MIL No. 2 at 7 (claiming there was a "clear ruling on this point"). Instead, the Court stated: "[I]t is not clear whether Droplets will be able to assert [Droplets' other theories] at trial . . . . Accordingly, at this stage, the Court denies summary judgment based on the 'past keystroke' theory only." ECF No. 801 at 8-9. Thus, the Court left open the question to be decided here. This only makes sense because Yahoo did not submit Droplets' contentions as exhibits or analyze them in any way. And of course the Court did not need to reach the question of admissibility at trial having found that the other evidence was sufficient to defeat Yahoo's summary judgment motion.

## ARGUMENT

Yahoo asks the Court to preclude Droplets from presenting evidence and expert testimony

Case No. 12-cv-03733-JST                18                Droplets' Omnibus Opposition to Yahoo's
                                                          Motions *in Limine*

relating to the "particular user" and customization requirements.[8]  As a threshold matter, Yahoo appears to challenge only the information in Dr. Schmidt's declaration that was added in direct response to Yahoo's argument that the patent requires customization to meet the "particular user" requirement.  No new products or functionalities were accused.  Dr. Schmidt simply showed how evidence from Yahoo about how its product works satisfies the new particular user customization requirement.

It bears below, Dr. Schmidt's declaration and the evidence underlying it are substantially justified.  The cases show that where a claim construction is modified, the parties can update their contentions and reports, which is all the more true here, where Yahoo intends to argue to the jury that the "particular user" limitation requires customization.  The facts of this case demonstrate that neither party believed the particular user customization theory was in this case before Yahoo's summary judgment motion.  As such, Droplets updating its report with Dr. Schmidt's additional testimony was substantially justified, particularly when it was simply using evidence from Yahoo about how its product works.

It bears noting at the outset that whether the underlying evidence can come in (separate and apart from the expert) is a different question than whether the expert can testify about that evidence.[9] *See, e.g.*, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1127 (Fed. Cir. 2019) (recognizing that a jury can reach a decision from understandable evidence without expert opinion); *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1012 (N.D. Cal. 2019) (explaining that the Federal Circuit has "declined to adopt 'a per se rule that expert testimony is required to prove infringement when the art is complex'" (citing *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004))).

---

[8] Dr. Schmidt also provided opinions regarding other products besides Search Suggest in his declaration.  ECF No. 776-6 (Schmidt declaration) ¶¶ 33-40.  Yahoo does not move to exclude those opinions.

[9] It is unclear whether Yahoo is even moving to exclude Droplets from presenting the underlying evidence, in addition to excluding Dr. Schmidt's testimony on it.  For the purposes of this Motion, Droplets assumes Yahoo is moving to exclude both.

Case No. 12-cv-03733-JST              19              Droplets' Omnibus Opposition to Yahoo's
                                                                                   Motions *in Limine*

**A.      The Challenged "Particular User" Customization Evidence Is Substantially Justified.**

The cases recognize that when claim construction changes, the parties may update their contentions and reports. *Lexion Med., LLC v. Northgate Techs.*, Inc., 641 F.3d 1352, 1358-1359 (Fed. Cir. 2011) (citing *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed.Cir.2003)) (affirming the district court's consideration of a new declaration in light of "a new claim construction"); *Schindler Elevator Corp. v. Otis Elevator Co.*, 2010 WL 4007303, at *3 (S.D.N.Y. Oct. 6, 2010) (allowing patentee's infringement expert to submit new infringement theories in a supplemental report because the Court issued claim constructions and "the parties had every right to respond to that"). Parties are permitted to make adjustments to their allegations when an intervening ruling "change[s] the rules of the game." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1357 (Fed. Cir. 1998); *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1317 (Fed. Cir. 2008) (holding that a "change in claim construction" "changed the rules of the game" and justified allowing the defendant to "amend its defenses"); *see, e.g.*, *F.B.T. Prods., LLC v. Aftermath Recs.*, 827 F. Supp. 2d 1092, 1101 (C.D. Cal. 2011).

Similarly, new arguments raised for the first time at summary judgment can justify new material. *Mayeron v. United States*, 308 F. App'x 179, 181 (9th Cir. 2009) (holding district court properly considered evidence that was not timely disclosed because it "related to allegations raised . . . for the first time in [the opposing party's] summary judgment motion."). Finally, new theories are justified where there is uncertainty in the case as to what should have been disclosed in the contentions. *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1234–35 (N.D. Cal. 2019) (allowing a party to pursue a damages theory not disclosed in its damages contentions because the omission "was substantially justified" by "uncertainty" as to what the party was required to disclose) (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)).

Indeed, the Patent Local Rules contemplate that contentions may be updated based on a new claim construction. Patent Local Rule 3-6 states that infringement contentions may be amended by order of the Court upon a timely showing of good cause. The Rule includes as an example of a

circumstance that may, absent undue prejudice, support a finding of good cause:  "A claim construction by the Court different from that proposed by the party seeking amendment . . . ."  Patent Local Rule 3-6(a).[10]

Whether viewed through the prism of "substantial justification" or "good cause," the question reduces to whether there is a good reason to permit the additional allegations.  In this case, the new allegations in Schmidt's declaration and the underlying facts were presented because the claim construction in this case was modified on April 30, 2021 and because Yahoo first raised its particular user customization argument in its May 26, 2021 summary judgment motion.

The facts of this case, set forth above, demonstrate that the particular user customization requirement was not fairly part of this case before April-May 2021.  *See supra* at 15 - 18 (Background). It was not in Yahoo's proposed construction, which the Court adopted.  It was not in Yahoo's non-infringement expert report or its invalidity expert report.  It also was not in Yahoo's responses to interrogatories setting out its non-infringement positions.  Indeed, Yahoo's invalidity expert never even mentioned "particular user," much less customization; neither did Yahoo's non-infringement expert beyond quoting the SDNY opinion's statement regarding "particular user."  And these experts not only failed to mention the theories — they also did not apply them in any way.  Indeed, that Yahoo did not seek summary judgment by the January 20, 2021 deadline demonstrates that it too did not believe the "particular user" requirement was fairly in the case at that point.  Had it thought so, it would have needed to move for summary judgment by the deadline.

Further, the very reason provided by Yahoo for why it could file an out-of-time summary judgment motion was that it had "good cause" based on the Court adding the "particular user" and cookie limitations.  After the Court's April 30, 2021 modification of the claim construction, Yahoo filed a motion requesting leave to file a summary judgment motion "of noninfringement based upon court's confirmed claim construction ruling."  ECF No. 757 at 1 (capitalization modified).  There, Yahoo argued that "[g]ood cause now exists for an additional, narrowly-focused summary judgment

---

[10] By its terms, Patent Local Rule 3-6 does not require a motion to amend contentions.  If required, Droplets can file one or asks that the Court construe the submission of Dr. Schmidt's new Declaration as a request to amend his expert report and the underlying contentions.

Case No. 12-cv-03733-JST                    21          Droplets' Omnibus Opposition to Yahoo's
                                                                            Motions *in Limine*

motion on non-infringement" because "*this motion was not ripe until the Court issued its April 30 Order*." ECF No. 757 at 3-4 (emphasis added). This was Yahoo's argument, and the Court granted Yahoo's motion, permitting a late summary judgment motion, on the grounds that Yahoo had demonstrated good cause. ECF No 766 at 2. If the April 30 Order provided good cause for a late (and third) summary judgment motion, then *a fortiori* it provided good cause for Droplets to provide additional facts to meet the new claim construction. It is the same good cause standard and the same facts.

Under these circumstances, whether viewed as good cause or substantial justification, the facts demonstrate that neither party considered the particular user and customization requirements to have been part of the case before the April 30 Order, and Droplets should be permitted to address them now. Precluding Droplets' evidence would be particularly inappropriate because Yahoo plans to argue to the jury, as it has to this Court, that the patent requires the accused products to customize to a particular user. It never included this allegation in its previous materials, yet plans to make this argument to the jury, then preclude Droplets from pointing to Yahoo's own evidence of how its product works to show that, in fact, it does customize to a particular user. If Yahoo is permitted to make this new, previously undisclosed argument, then Droplets should be permitted to respond with the evidence cited in the Schmidt declaration as well as with Schmidt's testimony. This is the practical resolution of the parties' dispute — but in all events, if Droplets is precluded from responding to this argument, then Yahoo must be precluded from making it because Yahoo did not disclose this theory in its discovery and expert materials.

**B.    Droplets' Contentions And Dr. Schmidt's Report Disclosure Is Sufficient Under The Particular Circumstances Of This Case.**

As shown above, whether viewed as good cause or substantial justification, Droplets should be permitted to introduce the challenged materials given the new particular user customization requirement. That should end the matter.

Droplets presents the additional information below to show that the theories of what products infringe and what functionalities are accused has not changed. This case is different than the run-of-

the-mill dispute where a party seeks to introduce new theories of infringement long after deadlines with no change in circumstances. Given the nature of Droplets' disclosures and the changed circumstances, Droplets fairly put Yahoo on notice of what it accused of infringing in its nearly 500 pages of contentions. What it seeks to introduce now is not a new accused product or functionality, but rather new evidence from Yahoo's own witnesses and files about how its product works. Yahoo invited this new evidence by never seeking modification of claim construction or disclosing these matters in its expert reports or discovery responses, and only raising them for the first time in its May 2021 summary judgment motion urging a particular user customization requirement.

### i.     Droplets' Infringement Contentions.

Droplets explained its general theory of Yahoo's infringement in its infringement contentions: "Droplets accuses Yahoo's webpages/websites that display applications and that, in response to user interaction, can update the display of the application based on information received from a Yahoo application server without loading a new webpage/website." Ex. 16 at 1. Thus, Droplets contends that Yahoo infringes by, "in response to user interaction," "update[ing] the display of the application . . . without loading a new webpage/website." *Id.* It has always been Droplets' infringement theory that Yahoo's webpages update the display of infringement in response to user interactions (i.e., user inputs).

Droplets then identified the specific infringing aspects of Search Suggest. Droplets first identified the alleged interactive links, which are specific JavaScript files. Ex. 16 at 4-11. Next, Droplets identified the accused restoration of operating state, explaining that the interactive link restores previous operating states "when the user interacts with the search bar and causes the same application to be displayed as from a previous session, such as by *re-entering a previously entered search string into the search bar* . . . ." Ex. 16 at 4-5 (emphasis added); *see id.* at 335 ("[T]he interactive link includes the facilities to restore previous operating states of the application as the application is re-presented at a user's computer again, as an example, when the user interacts with the search bar and causes it to update the search suggestions, including to cause the same application display as from a previous session, such as by re-entering a previously entered search string into the

Case No. 12-cv-03733-JST                23          Droplets' Omnibus Opposition to Yahoo's
                                                                              Motions *in Limine*

search bar, as discussed above . . . .").

Droplets next identified the specific JavaScript code that performs that restoring (the claimed "facilities for restoring"). Droplets explained that the identified JavaScript code sends the term that the user has reentered into the search bar to the Search Suggest server, thereby restoring the previous operating state of Search Suggest. Ex. 16 at 41-67. Finally, Droplets shows the search suggestions that result from Search Suggest running at the restored operating state. *Id.* at 197-199 ("Yahoo receives this information using the JavaScript discussed in claim limitation 1.a [the facilities] to create the corresponding HTTP requests shown below."). The new suggestions that Yahoo displays when a user types in a term are what Droplets generally termed "Type B Suggestions" in its Sur-Reply in opposition to Yahoo's summary judgment motion.

Thus, Droplets identified in its contentions the interactive link (the JavaScript), the restored operating state (the operating state of Search Suggest when the user re-enters a term into the search bar) and the facilities that restore that operating state (the JavaScript code that sends the user's re-entered term). The contentions did not, of course, call out "particular user," because this was not part of the claim construction. Indeed, it would have been inappropriate to chart a limitation not present in the case. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of "evidence as irrelevant because it was based on an impermissible claim construction"); *ASUS Computer Int'l v. Round Rock Research, LLC*, 2014 WL 1463609, at *5 (N.D. Cal. Apr. 11, 2014) ("[E]vidence based upon a mistaken construction of a patent is irrelevant." (alteration in original)).

Droplets still accuses the same interactive link, the same restored operating state, and the same facilities. As explained below, the challenged material — the material that Yahoo argues is new — is just additional evidence showing that the same restored operating state identified in the contentions is tailored to the particular user.

### ii. Dr. Schmidt's Expert Report.

Dr. Schmidt opined on the evidence of infringement in accordance with the theory in Droplets'

Case No. 12-cv-03733-JST                    24                    Droplets' Omnibus Opposition to Yahoo's Motions *in Limine*

contentions. First, Dr. Schmidt identified the interactive link from Droplets' contentions.[11] Ex. 3 ¶ 13. Dr. Schmidt then explained that "the interactive links restor[es] the previous operating states of the application as the application is re-presented at a user's computer is the situation in which a user types previously entered characters into the search box." *Id.* ¶¶ 25-26. Thus, Dr. Schmidt identified the same restoration of operating state as in Droplets' contentions.

Dr. Schmidt also identified the JavaScript functionality that performs that restoration, explaining how the JavaScript from Droplets' contentions sends the term the user typed in the search bar to the server to restore the previous operating state. Ex. 3 ¶¶ 69-74. Just as in the contentions, Dr. Schmidt then showed the search suggestions that result from the user reentering the search term. *Id.* ¶¶ 109, 168.

### iii. What Droplets Is Accusing Has Not Changed — Droplets Has Merely Supplemented Its Evidence In Light Of Changed Circumstances.

Droplets asserts the same theory of infringement now. At trial, Droplets intends to accuse the same interactive link (the JavaScript); the same restoration of operating state (Search Suggest's operating state when a user enters "a previously entered search string into the search bar"); and the same "facilities for restoring" (the JavaScript code that sends the input term to the server to restore the previous operating state). At base, Droplets accuses the same aspects and operations of Search Suggest of infringing.

What is new is the additional evidence Droplets and Dr. Schmidt point to as satisfying the "particular user" customization requirement — all of which are directly responsive to Yahoo's new "particular user" and customization arguments. Specifically, Droplets cites ten Yahoo documents and deposition testimony from Ms. Forth-Smith, Yahoo's corporate representative on the operation of Search Suggest, as well as Dr. Schmidt's opinions in his declaration based on that evidence in combination with the evidence discussed in his report. The supplemental evidence in his declaration shows that the restored operating state — the operating state that is restored when a user entered "a

---

[11] Dr. Schmidt analyzed a different version of the interactive link than that analyzed in the contentions, but, as the Court has previously noted, "Dr. Schmidt opines that each version operated in the same way." ECF No. 747 at 12. Thus, Dr. Schmidt's reference to different versions of the same code is immaterial.

Case No. 12-cv-03733-JST            25            Droplets' Omnibus Opposition to Yahoo's
                                                                    Motions *in Limine*

previously entered search string into the search bar" — is *particular to the user* because it is tailored to the user based on its past searches, past keystrokes, location, and device type.

### C.   Droplets' Contentions And Expert Report Were Sufficient.

#### i.   Droplets' Infringement Contentions Put Yahoo On Notice Of Droplets' Infringement Theories.

Infringement contentions need only put defendants "on notice" of plaintiff's infringement theories. *Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 612907, at *5 (N.D. Cal. Feb. 16, 2016); *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 2019 WL 176788, at *2 (N.D. Cal. Jan. 10, 2019). "A theory, however, is not the same as proof of that theory." *Finjan, Inc. v. Qualys Inc.*, 2021 WL 1253651, at *2 (N.D. Cal. Apr. 5, 2021). Thus, "Rule 3–1(c) . . . d[oes] *not* require identification of every evidentiary item of proof showing that the accused element did in fact practice the limitation." *Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011); *Finjan, Inc.*, 2021 WL 1253651, at *2 ("[A] patentee need only 'provide reasonable notice to defendant why [it] believes it has a reasonable chance of proving infringement.'").

Ultimately, "[t]he dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015).

Droplets' infringement theories, including the challenged material, are fully consistent with the theories disclosed in Droplets' contentions. *See supra* at 21-24. Droplets adequately disclosed the accused interactive link, the accused restoration of operating state, and the accused "facilities" for restoring that operating state.

In response to these disclosures, Yahoo makes two arguments. First, it contends that "Droplets' Infringement Contentions do not have . . . Droplets' new 'Type B' suggestions." MIL No. 2 at 11. To the contrary, "Type B Suggestions" are the suggestions that are displayed when a user

Case No. 12-cv-03733-JST                    26                    Droplets' Omnibus Opposition to Yahoo's
                                                                                    Motions *in Limine*

begins typing into the search bar. ECF No. 790 at 3-4. As the Court recognized, "Type B Suggestions," as Droplets uses that term, "display new suggestions." ECF No. 801 at 6-7 (internal quotations omitted). As Droplets explained, those suggestions are based on the user input term (for example, suggestions based on "tes") and are also tailored based on the user's "prior searches," "past keystrokes, location, and device type." ECF No. 790 at 3 n.1. This is contrasted with the "Type A Suggestions," which are the user's actual past searches.[12] *Id.* at 3. Droplets contrasted Type A and Type B Suggestions because Yahoo's Reply SJ Brief conflated them. But, to be clear, Type B Suggestions were not first disclosed in Dr. Schmidt's declaration — they are the new suggestions a user sees when they type a term into the search bar, which are the exact suggestions that Droplets has pointed to throughout the case. What is new is the evidence supporting this functionality, which shows in more detail how Yahoo's servers work.

Second, Yahoo asserts that Droplets' description of the restored operating state as "tailored" is not explicitly disclosed in Droplets' contentions. But infringement contentions need not describe every last aspect of an accused functionality; they only need identify what is accused of infringing.[13] *Finjan, Inc.*, 2021 WL 1253651, at *2. That is exactly what Droplets' contentions do. Droplets identified the specific restored operating state — Search Suggest's operating state when a user enters "a previously entered search string into the search bar" — in its contentions. The challenged material only provides additional description of that accused restored operating state, that it is tailored based on the four user-specific factors. Thus, the challenged material is an "identification of additional evidentiary proof showing that the accused element did in fact practice the limitation," not a "new element of the accused product alleged to practice a particular claim." *See Finjan, Inc.*, 2015 WL 3640694, at *2.

---

[12] Droplets' discussion of Type B Suggestions in its summary judgment briefing was focused on the fact that they are tailored based on the user's past searches, because Yahoo attempted to conflate Type A and Type B Suggestions, which are both based on past searches in some way. But, as Droplets explained, Type B Suggestions are all of the new suggestions, and are also "tailored through the use of past keystrokes, location, and device type." ECF No. 790 at 3 n.1.

[13] And of course they would not have need to address tailoring because this was not part of the claim construction or Yahoo's argument until the last couple of months.

Case No. 12-cv-03733-JST                27                Droplets' Omnibus Opposition to Yahoo's
Motions *in Limine*

Moreover, Yahoo was on notice of the challenged material. Yahoo knew what Droplets identified as the "restored operating state" and knew that Yahoo tailored that restored operating state based on the user. Yahoo does not dispute that Search Suggest works in these ways or that it knows how its own products works. And Yahoo specifically knew that the accused restored operating state was tailored based on the evidence discussed in this case. Yahoo's corporate representative on the operation of Search Suggest, Ms. Forth-Smith, explained that the search suggestions were based on the user's past keystrokes, location, and device type. ECF No. 776-15 (Sarah Forth-Smith Deposition Transcript) at 146:18-147:15, 105:2-21, (past keystrokes), 132:1-24 (location), 114:19-115:4 (device type). And the Yahoo technical documents used as exhibits in that deposition further explain that search suggestions are based on the user's location, past searches, and past keystrokes. ECF No. 776-20 (Ex. 17 to Droplets' opposition to Yahoo's summary judgment) at 19; ECF No. 776-19 (Ex. 16 to Droplets' opposition to Yahoo's summary judgment) at 24-28. Yahoo even acknowledged that search suggestions are tailored to the user's location and device type in its summary judgment motion. ECF No. 769 at 7 (acknowledging that suggestions can be based on the user's "location" and "type of device"). Since Droplets' contentions specifically identify the operating state that is restored when a user entered "a previously entered search string into the search bar" as the restored operating state, Yahoo knew that the accused restored operating state was customized.

"Just as an accused hammer may later be described as being located in a toolbox," Droplets may later describe the restored operating state "more fully" as being tailored to user's past searches, past keystrokes, location, and device type. *See Oracle Am., Inc.*, 2011 WL 4479305, at *3; *see also nCube Corp. v. SeaChange Int'l*, Inc., 809 F. Supp. 2d 337, 348 (D. Del. 2011). That is particularly true here, where Yahoo has been on notice since before the close of fact discovery of the fact that the restored operating state is tailored.

Ultimately, the fact that Droplets' contentions do not explicitly discuss customization or tailoring is due solely to Yahoo's own decisions and timing. Yahoo knew that Search Suggest customized search suggestions, and Yahoo decided to wait to ask the Court to modify the Construction and to argue that the claims required customization.

Case No. 12-cv-03733-JST                    28        Droplets' Omnibus Opposition to Yahoo's
                                                                Motions *in Limine*

Accordingly, given that the contentions were sufficient to put Yahoo on notice of Droplets' infringement theories, the evidence supporting those theories is admissible even without Dr. Schmidt's testimony.

### ii.    Dr. Schmidt's Report Is Sufficient.

While an expert report must identify the expert's opinions and the basis for those opinions, "courts do not require verbatim consistency [between an expert's testimony and] the report, but allow testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report." *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 12622055, at *4 (N.D. Cal. Mar. 19, 2015) (quoting *nCube Corp.*, 809 F. Supp. 2d at 347).  Thus "insignificant [variations]" that "do[] not represent . . . new and undisclosed opinion" do not "warrant exclusion under Rule 37." *Takeda Pharm. Co. v. TWi Pharms., Inc.*, 2013 WL 12164680, at *24 (N.D. Cal. May 20, 2013); *see Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*, 2020 WL 7347860, at *3 (C.D. Cal. Nov. 18, 2020) (denying motion to exclude expert testimony allegedly "outside of his report" because the testimony was not "an alternate or different opinion" but was "consistent" with his report).

Dr. Schmidt's report discloses his restoring operating state theory — i.e., that the identified code in the interactive link can restore the operating state of search suggest when "a user types previously entered characters into the search box" — and there is no dispute that that is in his Report. Ex. 3 ¶¶ 25-26.  In fact, Yahoo's expert acknowledges that the theory at issue here was in Dr. Schmidt's report.  Yahoo's expert, in his rebuttal report, states: "The gist of Droplets' accusation appears to be that information that relates to previous inputs made by users is stored at servers."  ECF No. 808-23 (Shamos Report) ¶ 231.  This is the same theory at issue here — that the operating state is based on previous inputs by the user.

Yahoo seeks to exclude a variety of elaborations and additional details on that opinion responding to the new "particular use" construction and Yahoo's new customization argument.  To be clear, Dr. Schmidt's declaration includes new details that are not in his report.  But the new details merely elaborate on his original opinions in response to Yahoo's new arguments.

Yahoo first argues that Dr. Schmidt cannot testify as to his understanding of "operating state," and in particular his opinion that restoring a particular user's operating state does not require customization or tailoring. Yahoo MIL No. 2 at 7-8. To the contrary, an expert can of course explain to the jury what he understands the words of his own opinion to mean. In fact, it is inconceivable that a reliable expert could not explain what he means when he uses a certain term, particularly when it is disputed whether the accused product falls within the meaning of the term. Further, Yahoo's own expert never discusses customization — so it is difficult to see how Yahoo would be permitted to make this argument, but preclude Droplets from responding.

Yahoo next argues that Dr. Schmidt's opinions that the restored operating state is of the "particular user" because it is tailored to the user are new. Yahoo MIL No. 2 at 8-9. Admittedly, Dr. Schmidt does not opine in his report that the restored operating state is of the "particular user" because it is tailored, but, as discussed, that is because Yahoo had never made this argument and there was no "particular user" construction at the time Dr. Schmidt served his report. But Dr. Schmidt did identify what, in his opinion, constitutes the restoration of operating state, and that is the same operation he identifies in his Declaration. *Compare* Ex. 3 (Schmidt Report, Ex. C) ¶ 25 ("[T]he interactive links restor[e] the previous operating states of the application as the application is re-presented at a user's computer is the situation in which a user types previously entered characters into the search box.") *with* ECF No. 776-6 (Schmidt declaration) ¶ 19 ("As applied to Search Suggest, restoring a particular user's previous operating states of Search Suggests is re-displaying the search suggestions for a given term and particular user that were previously displayed."). His declaration merely elaborates why that restoration is of the particular user's operating state.

Moreover, Dr. Schmidt's expert report did describe that the search suggestions were tailored to users, just not in the context of state restoration. First, Dr. Schmidt opined that "the Gossip service takes as an input the characters users have typed **and the identi[t]y of the user**, and outputs search suggestions." Ex. 4 (Schmidt Report) ¶ 78 (emphasis added). Dr. Schmidt explained elsewhere that Yahoo's interactive link, before it sends the term the user types to the server, ▮▮▮▮▮▮▮▮▮▮r has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 (Schmidt Report, Ex. C) ¶ 117. And Dr.

Case No. 12-cv-03733-JST                30        Droplets' Omnibus Opposition to Yahoo's
                                                                  Motions *in Limine*

Schmidt identified some of those ███████████ based on the "identi[t]y of the user." Specifically, Dr. Schmidt opined about the backspacing functionality (*id.* ¶¶ 25, 171) and opined that Search Suggest records and tracks user's past keystrokes. *Id.* ¶ 293. Dr. Schmidt also explains in his report that search suggestions are tailored based on user location and device type. *Id.* ¶¶ 120, 126, 127; Ex. 4 (Schmidt Report) ¶ 81. Thus, Dr. Schmidt opined that Search Suggest's operating state is restored when "a user types previously entered characters into the search box" *and* he opined that that operating state is customized to the particular user.

Yahoo next argues that Dr. Schmidt cited new documents, in particular exhibits 16-25 to Droplets' opposition to Yahoo's summary judgment motion. Yahoo MIL No. 2 at 9. As an initial matter, Dr. Schmidt did rely on three of the documents throughout his report. *See, e.g.*, Ex 3 (Schmidt Report, Ex. C) ¶ 77 (citing Ex. 16 as Yahoo_NDCA_00015531); Ex. 4 ¶ 81 (citing Ex. 17 as Yahoo_NDCA_00022459); Ex. 3 ¶ 46 (citing Ex. 21 as YAHOO-D0282347). Moreover, verbatim consistency is not required between an expert's report and his testimony; the proper analysis is focused on whether there are "new theories," not whether there is new evidence for the disclosed theories. *See Philadelphia Indem. Ins. Co. v. Broan-Nutone*, L.L.C., 2015 WL 866055, at *5 (N.D. Cal. Feb. 27, 2015) (denying a request to strike a second, late expert report where the declaration contains "no new opinions," but only "provides additional testing data").

**D.      Droplets Would Be Unduly Prejudiced By Yahoo Being Allowed To Articulate A New Theory That Droplets Is Not Allowed To Respond To — Yahoo Would Not.**

Finally, the Court can admit the evidence if harmless — i.e., if Yahoo is not being unfairly prejudiced. *Romero v. Cty. of Santa Clara,* 2014 WL 12694224, at *2 (N.D. Cal. Oct. 2, 2014) ("Nondisclosure is harmless if it does not prejudice the other party.") (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001)). Yahoo invited these circumstances by waiting until the end of the case to make its "particular user" customization requirement, because the evidence in question is its own, and because it never has sought to depose Dr. Schmidt on his declaration. Instead, Droplets is the party that would be prejudiced by exclusion of this evidence. Yahoo never disclosed its particular user customization theory in discovery responses or its expert

reports — as it was required to do — and yet plans to argue to the jury that its product does not customize, while precluding Droplets from responding by pointing out how Yahoo's own evidence shows that it does.

### i.    Yahoo Is Not Prejudiced.

The materials Droplets relies on are Yahoo's own documents and testimony from Yahoo's witnesses — all of which Yahoo has known of for months, if not years.  Thus, the excluded material is harmless and Yahoo's Motion should be denied.  *See Philadelphia Indem. Ins. Co. v. Broan-Nutone*, L.L.C., 2015 WL 866055, at *5 (N.D. Cal. Feb. 27, 2015) (denying a request to strike a second, late expert report where the declaration contains "no new opinions," but only "provides additional testing data" and "Plaintiff has failed to demonstrate any prejudice as a result of the untimely disclosure"); Fed. R. Civ. P. 37(c)(1).

Yahoo contends that it is prejudiced because it "was not permitted to depose Dr. Schmidt or respond to the new theories."  Yahoo MIL No. 2 at 10.  Yahoo deposed Dr. Schmidt extensively on his restoration of operating state opinions but did not ask about "particular user" (presumably because it was not part of the construction Yahoo advocated to the Court, or what was adopted).  *See RideApp, Inc. v. Lyft, Inc.*, 2019 WL 7834175, at *5 (N.D. Cal. Oct. 16, 2019), *aff'd*, 845 F. App'x 959 (Fed. Cir. 2021) (refusing to strike an expert's late disclosure "where the opposing party took the expert's deposition" and "identifie[d] no harm it suffered as a result of the late disclosure" (internal quotations omitted)).  While another deposition seems unnecessary given Yahoo's choice not to ask these questions at the first deposition, and given the Schmidt Declaration simply recounts Yahoo's own evidence, Yahoo never even asked for a deposition on the Schmidt Declaration.  Yahoo easily could cure any perceived prejudice, but is choosing to not do so.

Yahoo next argues that it is prejudiced because "these new infringement theories are wholly unrelated to Droplets' damages theories" and "Yahoo was denied the opportunity to both challenge Droplets' damages experts."  Yahoo MIL No. 2 at 10.  That makes no sense.  The challenged material is additional evidence of infringement.  Additional evidence of infringement cannot create a basis for challenging Droplets' damages opinions.  In other words, if Droplets' damages experts' opinions were

Case No. 12-cv-03733-JST                    32                    Droplets' Omnibus Opposition to Yahoo's
Motions *in Limine*

sufficiently tethered to Schmidt's infringement theory, then adding more evidence of infringement cannot render the damages opinions unreliable.

Finally, Yahoo argues that it was "denied the opportunity to develop the factual record" and "denied the opportunity to develop damages theories to account for these new theories (e.g., apportionment and non-infringing alternative theories)." Yahoo MIL No. 2 at 11. But Yahoo can hardly have been denied an opportunity to make its case because it knows how Search Suggest works. *See Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *4 (N.D. Cal. Sept. 28, 2020) (holding that the untimely expert disclosure "was harmless" because the other party had the relevant facts in its possession, deposed the expert, and knew the expert's theory). And again, additional evidence of infringement cannot lead to new apportionment or noninfringing alternatives.

### ii. Droplets Would Be Unduly Prejudiced.

What Yahoo has requested would unduly prejudice Droplets, allowing Yahoo to present new theories, but depriving Droplets of the opportunity to respond. Yahoo's particular user customization theory was nowhere disclosed throughout this case until Yahoo's May 2021 summary judgment motion. Yahoo had a duty to disclose this theory if it wished to present it at trial. Yahoo cannot have it both ways. If Yahoo is permitted to make the argument, Droplets would be unfairly prejudiced by not being allowed to respond. This is particularly true because Yahoo would be stating or suggesting to the jury that its product does not customize, knowing that in fact it does and that this evidence is being kept from the jury.

Further, it is difficult to reconcile the fact that Yahoo asserts that it was deprived of the opportunity to develop its case, but at the same time asks the Court to deprive Droplets of any ability to respond. Particular user customization was not an argument Droplets sprung on Yahoo at the last minute. How Yahoo's product works was something completely in Yahoo's knowledge and control. It was Droplets that was deprived of the opportunity to develop its case — through infringement contentions, discovery, and expert reports — by Yahoo waiting to the last minute to seek modification of the claim construction then arguing that it required customization.

In fairness, if Droplets' evidence of customization is excluded, so must be Yahoo's "particular

user" customization theory.    Certainly, the challenged material is no newer than Yahoo's customization argument.  ECF No. 808-28 at 6-9, 14-34 (showing Yahoo's noninfringement bases, none of which mention customization or tailoring).  If Droplets cannot argue that Search Suggest is customized, then Yahoo should not be allowed to argue that customization is required.  But the fairest approach remains to allow both parties to present their arguments.

## CONCLUSION

Accordingly, for the foregoing reasons, Droplets respectfully requests that the Court deny Yahoo's MIL No. 2.

### III.    Yahoo's Motion *in Limine* No. 3: Yahoo's Request To Exclude <u>Droplets' Willfulness Case</u>

Yahoo seeks to exclude Droplets' entire willfulness case via a motion in *limine*.  In Yahoo's view, Droplets' evidence is "insufficient as a matter of law to prove willfulness" and should therefore be excluded.  Yahoo Br. 12.  But "[a]rguments relating to the sufficiency of evidence or standing should be made on a motion for summary judgment, not a motion in *limine*."  *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6246736, at *3 (N.D. Cal. Oct. 26, 2016) (citing 75 Am. Jur. 2d Trial § 44).  Indeed, it is well-settled that "[a] motion *in limine* is not a proper vehicle by which to seek summary judgment on all or a portion of a claim."  *LivePerson, Inc. v. [24]7.AI, Inc.*, 2020 WL 10457005, at *1 (N.D. Cal. May 26, 2020) (quoting *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *3 (C.D. Cal. Mar. 7, 2011)); *see, e.g.*, *GSI Tech., Inc. v. United Memories, Inc.*, 2015 WL 12942201, at *5 (N.D. Cal. Oct. 14, 2015) ("[A] motion in limine is not 'an appropriate means to resolve factual disputes or weigh evidence' and 'should not be used as disguised motions for summary judgment.'") (citations omitted); *Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, 2013 WL 6116129, at *8 (N.D. Cal. Nov. 20, 2013), *modified*, 2013 WL 6227626 (N.D. Cal. Nov. 22, 2013) ("Western Digital now (inappropriately) brings a motion for summary judgment that it has 'disguised' as a motion in limine to 'effectively bar' GTE from raising this cause of action at trial").

Motions in *limine* are not subject to the provisions of Rule 56, and Droplets should not be required to marshal its entire willfulness case in response to a *limine* motion.  Indeed, this Court has allowed the Yahoo parties not one but *three* separate motions for summary judgment, each of which has failed.  The Court should dismiss this motion because it is nothing more than another excessive and unauthorized attempt at summary judgment.

Procedural improprieties aside, Yahoo's motion – which seeks full exclusion of Droplets' willfulness case on the theories that (1) Droplets has not preserved pre-suit willfulness and (2) in Yahoo's view, Droplets' evidence is identical to that raised against Nordstrom – fails on its merits.

*First*, Droplets is not seeking pre-suit willfulness against Yahoo. Droplets' damages contentions account for willfulness and enhancement *only after* the filing of the complaint, Ex. 5 (Damages Contentions) at 19.

*Second*, Droplets' willfulness evidence is not identical to that against Nordstrom. Droplets' evidence that Yahoo's infringement has been willful more than meets the standard set by the Supreme Court and the Federal Circuit. "Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citations omitted). "The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made." *Id.* "It is at this second stage at which the considerations of egregious behavior and punishment are relevant. Questions of whether an accused patent infringer's conduct was 'egregious behavior' or 'worthy of punishment' are therefore not appropriate for jury consideration." *Id.* All the jury must be presented with to maintain a willfulness case is evidence of "deliberate" or "intentional" infringement. *Id.*, *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) ("The subjective willfulness of a patent infringer, *intentional or knowing*, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." (emphasis added)); *APS Tech., Inc. v. Vertex Downhole, Inc.*, 2020 WL 4346700, at *7 (D. Del. July 29, 2020) ("Willful infringement and enhancement flowing from that willfulness are separate inquiries," and "pleading egregiousness is not necessary to state a claim for willfulness"). Precedent requires no more.[14]

In Yahoo's case, there is evidence of willful blindness, which by itself can establish intent. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020). "The intent standard focuses on, and can be met by proof of, the defendant's subjective state of mind, whether actual knowledge or the subjective beliefs (coupled with action to avoid learning more) that characterizes willful blindness." *Id.* (citations omitted). A jury can find willful blindness based on the testimony of Michael Martin,

---

[14] To the extent older Federal Circuit cases reflect a different standard, those cases have been swept away by *Halo*. *See, e.g., Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed. Cir. 1996) (relying on, *inter alia*, *Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389–90 (Fed. Cir. 1983), which was overruled by *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), which was then abrogated by *Halo*, 136 S. Ct. 1923)).

Case No. 12-cv-03733-JST                          36                    Droplets' Omnibus Opposition to Yahoo's
                                                                                      Motions *in Limine*

Yahoo's corporate representative and Rule 30(b)(6) witness on licensing — testimony that was not part of the Nordstrom record. Specifically, when counsel for Droplets asked Martin how Yahoo "determine[s] whether it needs a license to a particular technology," Martin responded that Yahoo "do[es] not attempt to clear patent rights in advance of the launch of a new product/service." Ex. 6 (Martin Dep.) at 33:23-24; 34:19-21. Martin then stated:

> Yeah, so another reason is that occasionally, we get accused of infringing patents that we didn't know about. And if we had done patent clearance searches, then that would just give the plaintiffs in those cases a -- a basis to allege that we were willful infringers. . . . [I]t's, frankly, an aspect of the patent system that I find kind of discouraging because it would be better if we could be more aware of what had been filed, from my point of view as a patent lawyer. But we can't because we get sued so often, and the penalties for willful infringement are so high that that's also a discouragement. So it's a combination of factors. Right? There's practical considerations, and then there's more litigation-oriented considerations that come into play.

*Id.* at 35:17-36:15. Martin's testimony establishes willful blindness. He explains that Yahoo takes deliberate actions — failing to do any patent clearance searches — for the *specific purpose of avoiding willful infringement* and indicates that Yahoo knows that conducting patent clearance searches would likely show it that it does, indeed, infringe others' patents. Yahoo crafts its business policies to actively avoid allegations of willful infringement, and a jury could easily draw the inference that such policies of active avoidance evince willful blindness.

This evidence is enough to establish willful blindness and, therefore, intent, and even more so when combined with a litany of other willfulness facts to be presented at trial. Other evidence of willfulness includes, for example: (1) that Yahoo has declined to make any changes to the accused products to avoid infringement — despite making other changes over the years; (2) Yahoo's invalidity arguments rely heavily on the Shaw reference, which was in substance both considered and rejected by the Patent Office in the reexamination of the '745 patent; (3) Yahoo's refusal to license Droplets' patent stands in contrast to multiple major technology companies who have licensed the patents, including several of Yahoo competitors, Ex. 7 (Bergman Report) at ¶ 53; (4) Yahoo suggests that it has multiple, easy-to-implement non-infringing alternatives available to it but, despite that fact,

Case No. 12-cv-03733-JST              37              Droplets' Omnibus Opposition to Yahoo's
                                                          Motions *in Limine*

continued to infringe, suggesting at a minimum intentional infringement or perhaps even animus against Droplets, *see, e.g.*, Ex. 8 (Shamos Dep. Tr. 1/7) at 250:20–251:19; 255:22–24; 256:25–257:8; and (5) a jury in another district court found the patent both valid and infringed, Ex. 7 (Bergman Report) ¶ 291, 355. These facts, combined with Yahoo's practice of avoiding learning about patents, lest it be found to willfully infringe, would support the jury's finding of willful infringement.[15]

The circumstances of this case mirror those in *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 2020 WL 9158697, at *7 (C.D. Cal. Aug. 7, 2020), where the Central District of California upheld a jury's willfulness finding on JMOL. The facts in *Pavo Sols.* is remarkably similar: (1) Defendant Kingston received a notice letter, providing it notice of the patent and potential infringement; (2) Kingston lacked policies aimed at determining whether its products infringed patents owed by others or aimed at licensing patents outside of litigation; (3) the lack of documentation of any internal Kingston infringement analysis; (4) the lack of changes by Kingston to the accused product after receipt of the infringement charge; (5) and Kingston's continued sale of the accused product. *Id.* Here, because Droplets is not seeking pre-suit willfulness, the Complaint is the equivalent of the notice letter, and the other facts are effectively the same.

The question is not whether each of these facts standing alone supports the inference of intentional or deliberate infringement — it is the totality of circumstances that supports a jury finding of willfulness. *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018). Whether the Court, in its discretion, finds this case worthy of enhancement is a separate question — reserved wholly for the bench — after the jury evaluates the evidence at trial.

---

[15] This is not a motion for summary judgment, and Droplets has not marshaled all of its potential evidence for willfulness here. Should the Court consider Yahoo's argument, Droplets would request an opportunity to fully brief this issue and provide detailed record citations.

## IV.   Yahoo's Motion *in Limine* No. 4: Yahoo's Request to Exclude Its Discovery Responses

Yahoo chose to respond to nearly all interrogatories in this case by stating that "Altaba incorporates by reference the objections and responses of Verizon Media to this same Interrogatory." *See, e.g.*, Ex. 9 (example). [16] Yahoo similarly responded in this fashion to many requests for admission. *See, e.g.*, Ex. 10 (example). Verizon Media then provided substantive responses to the interrogatories and requests for admission.

Yahoo now seeks to bar Droplets from introducing Yahoo's own written discovery responses adopting Verizon Media's answers. Droplets does not intend to argue that Yahoo's adoption of Verizon Media's answers in and of itself constituted some sort of discovery misconduct. But there is nothing controversial about Droplets showing Yahoo's responses adopting Verizon Media's in order to show the jury that Verizon Media's substantive answers bind Yahoo, the defendant in this case. Yahoo chose to respond by incorporating Verizon's responses. But it cannot respond by incorporation while also hiding the fact that it did so — and thereby denying Droplets the ability to rely upon nearly all the substantive written discovery in the record.

Yahoo's answers are both relevant and unprejudicial. Yahoo's adoption of Verizon Media's responses is undeniably relevant because it ties Yahoo to the answers Verizon Media provided, allowing Droplets to use the relevant information in *Verizon's* answers as evidence against Yahoo. Indeed, Yahoo's brief does not explain why its adoption of relevant discovery responses would not be relevant. And there is nothing prejudicial about the fact that Yahoo incorporated Verizon Media's discovery responses. Yahoo chose to take this approach to responding to discovery, and it cannot be heard to complain when its responses are shown to the jury. Yahoo could have answered differently and chose not to.

To bar Droplets from explaining that Yahoo voluntarily adopted Verizon Media's answers would prejudice *Droplets* by denying it the necessary evidence to prove that Verizon's discovery responses — the only substantive discovery responses to most requests — bind the actual defendant,

[16] Yahoo!, Inc. changed its name to Altaba. They are the same company, and the parties have proceeded with Yahoo as the name of the party.

Yahoo. Without such evidence linking Yahoo to Verizon Media's responses, the jury may well assume that those answers apply only to Verizon.

Yahoo's arguments for prejudice are not persuasive. First, Yahoo asserts that it will be prejudiced by the implication that it acted improperly in adopting Verizon Media's answers. But Droplets will not argue that Yahoo's adoption of Verizon's responses was some sort of discovery misconduct in and of itself. Droplets is not trying to litigate a discovery dispute in front of the jury — only to demonstrate the chain of responses connecting Yahoo to the substantive Verizon responses it voluntarily adopted.

Second, Yahoo claims it will be prejudiced because the adoption of Verizon Media's answers requires explaining the "relationship between Yahoo and Verizon Media" and somehow suggests to the jury that Verizon is liable for the judgment. Yahoo Br. at 19. Droplets does not understand how Yahoo's incorporation of Verizon Media's responses suggests that Verizon is liable for the judgment.

To be clear, in keeping with the Court's summary judgment ruling, Droplets will not argue to the jury — through Yahoo's discovery responses or otherwise — that Verizon is jointly and severally liable. But the parties cannot be expected to hide from the jury the fact that Verizon bought the Yahoo-branded websites and intervened in this case. Yahoo apparently agrees: in the Joint Pre-Trial Statement, it stipulated to the fact that "[i]n 2017, Yahoo sold the Yahoo-branded websites to Verizon Communications, Inc." *See* Joint Pre-Trial Statement, ECF No. 816, at 4. And, in a shift from its original positions in its Motion in *Limine* No. 8, it now states that the jury may hear about the "full context of Verizon Media's role," including its purchase of the Yahoo-branded websites and its indemnification of Yahoo. *Id.* at 23-24; *see also* Droplets' Opp. to Motion in *Limine* No. 8, *infra*.

When the jury will already be informed that Verizon Media bought the Yahoo-branded websites and is a party to this case based on its indemnification of Yahoo, additionally revealing that Yahoo adopted Verizon Media's discovery responses does not add any new information about Verizon's connection to Yahoo or its role in this case. And, in any event, any supposed prejudice would be outweighed by the inescapable relevance of tying the actual defendant in this case to nearly all the substantive written discovery responses available in the record.

Case No. 12-cv-03733-JST                    40                    Droplets' Omnibus Opposition to Yahoo's
                                                                                                   Motions *in Limine*

While the title of Yahoo's motion suggests it would bar the use of its discovery responses only if Droplets' "purpose" in doing so is to suggest discovery misconduct, its brief seems to ask for more: it claims that *any* disclosure of Yahoo's discovery responses incorporating Verizon's answers would prejudicially reveal the relationship between Yahoo and Verizon Media.  That argument does not turn on Droplets' "purpose," and such a broad ban is not warranted.  Furthermore, if the admissibility of the evidence turns on the context in which it will be used, the question should be reserved for trial, when the Court may assess the context and resulting admissibility on a more concrete record.  *See supra*, p. 1.

Accordingly, Droplets respectfully request that the Court deny Yahoo's Motion in *Limine* No. 4.

Case No. 12-cv-03733-JST                    41                    Droplets' Omnibus Opposition to Yahoo's
                                                                                     Motions *in Limine*

### V.     Yahoo's Motion *in Limine* No. 5: Yahoo's Request to Exclude The Passage of Time

Droplets agrees that the "complicated litigation history" (Yahoo Br. 22) of this case, including "topics like transfer motions, MDL panels, PTO reexamination procedures, appeals, litigation stays, and . . . the '838 patent" (*id.* at 23) should not be presented to the jury.  In fact, Droplets filed its own in *limine* motion requesting that Yahoo be prohibited from introducing pleadings and orders from unrelated litigations, including the E*Trade case.  *See* ECF No. 808, Droplets MIL No. 5.  Neither party should introduce materials from procedural motions in this case, from other Droplets' cases, or from reexaminations.

But Yahoo's motion seeks to preclude reference to the *length* of the case, which is altogether different.  The fact that the case was filed ten years ago is necessarily relevant to issues in this case. Time is inextricably linked with patent damages.  *See, e.g.*, *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) ("A reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred, and not be an after-the-fact assessment."). "A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units.  In that event, it generally has two prongs: a royalty *base* and a royalty rate." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (emphasis added).  In this case, that base has grown with time until Yahoo's sale of its websites to Verizon.[17]  Thus, apart from the available six years of pre-suit damages, 35 U.S.C. § 286, the damages period is based at least in part on the length of the litigation.  *See* Ex. 7 (Bergman Report) at ¶ 33.  If Yahoo's MIL were granted, Droplets' expert, Jim Bergman, could not explain to the jury how damages should be calculated.  This is particularly true to the extent damages that post-date the filing of this case stand on different footing than damages accruing before this lawsuit.  For example, Yahoo has argued that Droplets should only obtain damages accruing after the filing of this case.  Under Yahoo's formulation of its MIL, such testimony would also be excluded because it "concern[ed] the passage of time."  Yahoo Br. at 23.  That cannot be correct.  Excluding

---

[17] Droplets seeks damages for most products until 2017, when Yahoo sold its assets to Verizon. *See, e.g.*, Ex. 7 (Bergman Report) at 16 n.30.

Droplets' damages theory under Rule 403 because it implicates the length of the litigation or passage of time would be unprecedented relief, and Yahoo has failed to point to a single case supporting that result.

Time also informs the value of the technology. Droplets must be able to explain to the jury why — in 2021 — it is hearing a case regarding a patent with a priority date of 1999. Technology has advanced since Droplets' patent issued, and Droplets should be allowed to place the patented technology in context for the jury to understand both the foundational nature of the technology and its value to infringers like Yahoo. Without touching on "the passage of time," *id.*, Droplets will have no way to explain to the jury why its technology is valuable or represents a dramatic advancement in technology over the prior art. The jury may also improperly infer that Droplets somehow slept on its rights (waited too long to sue). And the "extent to which the infringer has made use of the invention" — which has increased with time — is a *Georgia-Pacific* factor linked to damages. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). Each of these references to time are appropriate and probative of the issues in the case. Yahoo has not offered a reason why the discussion of "the passage of time" is unduly prejudicial.

And in all events, that Droplets filed this case in 2011 is a historical fact, and a necessary part of the case. Droplets agrees with much of Yahoo's MIL — no party should put on a sideshow about motions practice or other cases. But it does not follow that Droplets should be prohibited from offering evidence or argument "concerning the passage of time under FRE 403." Yahoo Br. 23. Yahoo points to no authority requiring such broad exclusion under Rule 403, and the Court should reject this attempt to dramatically limit Droplets' case without justification.

Case No. 12-cv-03733-JST                    43              Droplets' Omnibus Opposition to Yahoo's
                                                                              Motions *in Limine*

## VI.   Yahoo's Motion *in Limine* No. 6: Yahoo's Request to Exclude The <u>Verizon/Apollo Sale</u>

A few years after Yahoo sold the Yahoo-branded websites to Verizon, Verizon has now announced that it will be selling the websites to a company called Apollo.  To the best of Droplets' knowledge, that deal has not yet closed, but it understands that it has been negotiated (and apparently signed) and announced to the public, and it may close before trial.  *See, e.g.*, Ex. 11 (Washington Post story indicating deal will close in the second half of 2021).

No matter the state of the Apollo sale at the time of trial or the way the case develops during trial, Yahoo wants to categorically bar the jury from finding out about Apollo.  But if the deal closes by or during trial, Apollo would own two of the parties (the Oath entities) and would operate the websites in question — reference to Apollo could no more be excluded than reference to Verizon (and Defendants now agree that reference to Verizon cannot be excluded, *see* Droplets' Response to Motion in *Limine* No. 8).  That blanket ruling is not warranted at this time.  The parties can take up any more concrete disputes about the relevance of the Apollo sale should they actually arise at trial.  But, depending on how the planned sale progresses and what evidence and themes the parties present at trial, the Apollo sale may be relevant to issues in this case, and the Court should not preemptively exclude all evidence about it.  *See supra* p.1.

Furthermore, Verizon's (and its employees') interest in the deal closing is a source of bias that Droplets is entitled to explore for the jury to assess witness credibility.  This deal has been reported to be for over $5 billion in total consideration to Verizon (for assets that appear to include the Yahoo-branded websites and AOL-branded websites). See Ex. 11.  Verizon and its employees would be intensely interested in this deal closing – or put another way, they are intensely interested in not having a verdict in this case interfere with their ability to close and receive their $5 billion.  The jury is entitled to know about that source of bias in assessing witness credibility.

There is nothing prejudicial about the mere fact of the Apollo sale.  Relevant evidence can only be excluded under Rule 403 if "its probative value is substantially outweighed" by another factor like "unfair prejudice." Fed. R. Evid. 403.  The only prejudice that Yahoo has asserted relates to the deal

price, which might suggest the total value of Yahoo. But the mere fact of the Apollo sale would lead to no such prejudice. There is nothing shameful or inflammatory about the simple fact that the websites will be sold. Further, Verizon's intense interest in not having its deal scuttled and collecting its $5 billion goes directly to credibility. Many of Yahoo's witnesses are Verizon employees. Oath Holdings, a Verizon subsidiary, is an indemnitor as to any judgment in this case. Verizon and Oath Holdings' potential for bias is palpable – Verizon, and employees with a financial interest in the Apollo transaction, stand to lose billions of dollars if the deal falls through as a result of a verdict in this case.

Without any risk of prejudice, the bar for admissibility is low. Droplets need only show that the Apollo sale is relevant — a "low threshold" that requires only that the evidence have "any tendency to make a fact more or less probable that it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *Munasar v. Alaska Tanker Co., LLC*, 2012 WL 7187321, at *1 (N.D. Cal. Oct. 17, 2012). There are many ways the Apollo sale could meet this relevance standard. For example, if the sale closes, the many witnesses in this case who presently work for Verizon would likely become Apollo employees. When those witnesses testify at trial, it is relevant to ask them where they work in order to establish a foundation for their knowledge, and then to explain why the witnesses who work on the Yahoo-branded websites work for a company not otherwise involved in this case. And whichever company formally employs the witnesses at the time of trial, the anticipated agreement between Verizon and Apollo would be relevant to those companies' stake in the outcome of this case as indemnifiers and thus to the witnesses' potential bias from working for a company with a financial interest in this litigation. After the sale, Apollo would have a financial interest in the outcome of the litigation (and may have one even now). Indeed, the mere identity of a corporate parent (without revealing its profitability) is often relevant and admissible. *See, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 12622055, at *5 (N.D. Cal. Mar. 19, 2015) (allowing references to defendant's "current and former corporate parents").

As another example, the Apollo sale could come up on impeachment, as discussed above. Or it could be relevant to show that the Yahoo product is still valuable and important in the marketplace, especially if one of Yahoo's trial themes is that the Yahoo search engine's declining market share

Case No. 12-cv-03733-JST                    45                    Droplets' Omnibus Opposition to Yahoo's
                                                                                                  Motions *in Limine*

makes Droplets' damages figure seem unreasonable (a point its damages expert has suggested by comparing Yahoo's and Google's market share). Further, the mere fact that there was still interest in purchasing the Yahoo-branded websites would undercut any theme that they have become somehow obsolete.

Yahoo's only other argument is that the Apollo sale was not the subject of discovery because the sale was announced after discovery closed. But any lack of discovery is a problem of Yahoo's own making. Yahoo is under a continuing obligation to supplement its discovery responses, even after the close of fact or expert discovery. *See, e.g.*, *Finjan, Inc. v. Bitdefender Inc.*, 2019 WL 3564443, at *2 (N.D. Cal. Aug. 6, 2019) (collecting cases "confirm[ing] that the fact discovery cutoff does not terminate the obligation to supplement"). When Droplets found out about the Apollo sale in May, its counsel asked Yahoo and Verizon Media to update their discovery responses accordingly, but they did not respond to that email and did not supplement. *See* Ex. 12. Indeed, the Delaware Chancery Court adjudicating Yahoo's dissolution recently ordered a new trial on the appropriate holdback for Droplets' claims in this litigation specifically because Yahoo and Verizon "acted in a manner that undermine[d] the court's confidence" by failing to fully disclose information about the Apollo sale. *See* Ex. 17 to Yahoo Br. ¶ 18(c). In short, Yahoo and Verizon cannot now complain that Droplets may not mention the Apollo sale at trial because of their own failure to supplement their discovery responses, especially when any information about the Apollo sale is uniquely in their possession.

Ultimately, any relevance or undue prejudice of evidence about Apollo will depend on the specific evidence and the purpose for which it is to be used. Such disputes would be better decided on a more concrete record at trial, should Droplets ultimately seek to introduce any evidence about the Apollo sale. *See supra* p.1. For now, Droplets objects to a blanket ban on *any* argument or evidence about the Apollo sale: such material may be relevant depending on how the issues play out.

Case No. 12-cv-03733-JST                 46        Droplets' Omnibus Opposition to Yahoo's
                                                   Motions *in Limine*

### VII.   Yahoo's Motion *in Limine* No. 7:  Yahoo's Request to Preclude Use of Certain Words

Yahoo asks the Court to issue a vague and overly broad in *limine* ruling that prevents Droplets from using certain words and characterizations in presenting its case.   Yahoo's (speculative) justification is that these words would "inflame the jury."   Yahoo's motion should be denied as premature, ambiguous, and lacking foundation.

Droplets has told Yahoo that it will not refer to it as a "monopolist."   That term has legal connotations, and Droplets acknowledges that there are no antitrust issues in this case.

However, Droplets does not believe that it should be precluded in *limine* from using any other specific words (or their formatives), including "behemoth," "cheater," "Goliath," etc.  To do so at this stage, when evidence implicating such words or themes may be deemed admissible, risks a slippery slope.  *See, e.g., Wolfenbarger*, 2021 WL 3212833, at *1 ("[T]o exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds.").  Yahoo presents those words as mere examples ("…*such as* referring to Defendants as 'behemoth,'" etc.) (ECF No. 809 at 25), leaving room for it to argue that formatives and synonyms are also off-limits.  For example, if "behemoth" and "Goliath" are precluded, is Droplets then not allowed to characterize Yahoo or Verizon as "large" or "big" – something it would need to do as part of its damages case?[18]  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.  Supp. 1116, 1120 (S.D.N.Y. May 28, 1970) ("5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.").  Similarly, vaguely prohibiting formatives essentially rules out the free use of the English language, placing metaphorical land mines for inadvertent use of concepts in argument or testimony.  While the context would be needed to assess objections, phrases such as "Yahoo has no monopoly on good ideas," or "Yahoo's arguments amount to cheating the system" could easily be acceptable, depending on how the facts play out.  Droplets is not suggesting any plan to use these phrases, but notes the hazards of prematurely placing ordinary words and their formatives off limits at trial.

---

[18] Yahoo's Motion in *Limine* No. 14 asks the Court to preclude reference to overall size.  ECF No. 809 at 35.  But as stated in Droplets' opposition, Yahoo's size is relevant to damages issues.

Case No. 12-cv-03733-JST                    47            Droplets' Omnibus Opposition to Yahoo's Motions *in Limine*

Similarly, "copying" and/or "thievery" or synonyms thereto may be implicated in another *Georgia-Pacific* factor regarding the extent and value of infringing use. *See id.* ("11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use."). So too for the willfulness inquiry: "[C]ulpability[ ] is generally measured against the actor's knowledge at the time of the challenged conduct," to which allegations of cheating, copying, or thievery are probative. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016).

Because Yahoo's motion fails to show that all purposes of evidence in support of these themes are inadmissible, its motion is premature and should be denied at least because of its overbreadth. *See, e.g., Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 2017 WL 11489792, at *7 (C.D. Cal. Nov. 15, 2017) (denying a MIL against "'David and Goliath' evidence" as "overbroad" for failing to "show[] the evidence to be inadmissible on all potential grounds" (internal citations and quotations omitted)); *see also Madrigal*, 2015 WL 12746232, at *1 ("If there is any question on the issue, rather than barring the evidence before trial, the court should reserve ruling on questions of admissibility until they actually arise, in the context of the trial.")..

Accordingly, Droplets respectfully requests that the Court deny Yahoo's motion.

## VIII.   Yahoo's Motion *in Limine* No. 8: Yahoo's Request To Exclude The Verizon Indemnification

Yahoo filed this motion on August 3 seeking to exclude any evidence about Oath Holdings' indemnification of Yahoo.  Then in the Joint Pre-Trial Statement filed on August 6, Yahoo reversed field, now agreeing that the fact that Oath Holdings is indemnifying Yahoo is admissible.  Thus, it appears there is no dispute left for the Court to decide as to Yahoo's MIL No. 8.

In Droplets' portion of the pre-trial statement, it explained why Oath Holdings' role as an indemnifier is relevant in this case.  *See* ECF No. 816, Section J.  The Oath Holdings indemnification is the only remaining reason the Oath entities have Article III standing to assert claims as plaintiff-intervenors in this case, now that Droplets has committed not to sue Verizon for its own infringement in connection with the Yahoo-branded websites.  And with the Oath entities present at trial, the jury must receive some explanation of their role.  The Oath Holdings indemnification is also relevant to the credibility and biases of the many trial witnesses who now work at Verizon.  It is key to explaining their experience with the Yahoo websites, and it is relevant to their potential bias that they are employed by a company with a financial stake in the outcome of this litigation.

After reviewing Droplets' position in the pre-trial statement, Yahoo explained in the pre-trial statement that now it "agrees with Droplets that the jury should be apprised of the full role of Verizon Media and should not be left to speculate on its presence in the case."  Pre-Trial Statement at 23.  Yahoo agreed that Oath Holdings' indemnification would be fair game to disclose to the jury.  *Id.* at 23-24.  In a footnote, it clarified that it objected only to arguments that the indemnification amounts to joint and several liability but not to the use of the indemnification obligation "to explore witness credibility."  *Id.* at 24 n.9.[19]

It therefore appears the parties are now in agreement that at least some evidence about the Verizon indemnification obligation is admissible, and Yahoo is no longer seeking the relief claimed in this motion in *limine*.  Of course, the parties may dispute particular pieces of evidence or uses of

---

[19] To be clear, Droplets does not agree that all facts relating to the Verizon transaction are admissible.  It agrees only that the websites were transferred to Verizon, that Verizon is indemnifying Yahoo, and that Verizon currently owns the websites are admissible.

evidence.  But neither party is presently seeking the blanket relief at issue in Yahoo's motion: a total ban on evidence, argument, and testimony about Verizon's indemnification.  Should concrete disputes over particular pieces or uses of evidence arise at trial, the parties may raise them then on a complete record.  *See supra* p.1.

## IX.    Yahoo's Motion *in Limine* No. 9: Yahoo's Request To Exclude The Dissolution Proceeding

Droplets does not intend to introduce any pleadings or orders from the Delaware Chancery Court proceedings, nor does it intend to make any direct reference to those proceedings or suggest in any way that the Chancery Court proceedings decided the issues before the jury in this case.  An exception, for example, would be impeachment, in the event that Yahoo's own witnesses open the door with their testimony.[20]  But Droplets objects to this motion insofar as it would bar Droplets from revealing the fact that Yahoo is in the process of dissolving without reference to its use of court proceedings to do so.  Droplets made this position clear to Yahoo before it filed this motion, explaining that Droplets "do[es] not plan to submit any pleadings from the Altaba dissolution proceedings unless the door is opened," but may "point out that Yahoo is no longer operating the Yahoo websites and is seeking to dissolve."  Ex. 13.  Unsatisfied with any possibility that the jury would find out about Yahoo's dissolution, Yahoo proceeded with this motion.

Now, Yahoo rebuts a strawman, claiming that Droplets cannot use the Chancery Court's orders reserving Yahoo's assets for Droplets' claims to suggest to the jury that Yahoo's liability or the appropriate damages have already been decided.  Yahoo Br. at 28-29.  The response is simple: Droplets will not do so unless the door has been opened.  Instead, it intends to prove only the fact that Yahoo is dissolving.  That fact can be proven without introducing any Chancery Court pleadings or orders or even mentioning the Chancery Court's involvement.[21]

---

[20] Yahoo briefly objects to the use of any Chancery Court materials even for impeachment, claiming that this would allow Droplets to "unilaterally inject the Delaware proceedings (including pleadings) to the jury by eliciting testimony that Droplets believes opens the door."  Yahoo Br. at 30. To the contrary, Droplets' ability to use materials for impeachment is within *Yahoo's* control — it depends on what Yahoo's witnesses say on direct examination.  And if the parties disagree about whether the door has been opened by particular testimony, the Court can take such disputes up on a more developed record at that time.

[21] Although Droplets does not intend to introduce orders from the Chancery Court, Yahoo eagerly block quotes a paragraph of a Chancery Court order out of context to suggest that the Chancery Court "reject[ed]" "most of Droplets' theories" in that case.  It did not.  The block quote comes from an order *granting* Droplets' motion for a new trial on the appropriate amount to hold back for Droplets' patent claims because the financial condition of Oath Holdings, as Yahoo's indemnitor, had changed in light of the planned Apollo sale.  Yahoo had argued that Verizon Communications would serve as a backstop indemnitor if Oath Holdings did not have enough assets to pay for Droplets' claims.  *See*

The basic fact that Yahoo is dissolving is relevant.  For example, Yahoo intends to point out to the jury that Droplets is not a business that currently offers products, and of course Droplets may in turn note that Yahoo is *also* not presently engaged in business — it is in the process of dissolving.  No doubt Defendants will ask questions about the status of Droplets as a company, and of course Droplets may ask such questions as well.  Yahoo's dissolution may also be relevant to explain why witnesses in this case work at Verizon (or by the time of trial, perhaps Apollo) rather than Yahoo.  As discussed in Droplets' response to Motion in *Limine* No. 8, the transfer of employees from Yahoo to Verizon is relevant to the credibility, experience, and potential bias of these witnesses.  The fact of the matter is that Yahoo is no longer in business as an operational company and is in the process of dissolving.  There is no reason to keep this fact from the jury, and it may be critical to pointing out the incremental benefit of the patented invention during the time Yahoo was operational, and to applying the "book of wisdom" in the damages analysis.

Finally, Yahoo argues that the disclosure of the Chancery Court proceedings would imply that Verizon Media is jointly and severally liable by revealing Yahoo's dissolution.  Yahoo Br. at 29.  Again, complying with the Court's summary judgment order, Droplets will not litigate Verizon's joint liability through this trial.  It does not follow from Yahoo's dissolution that Verizon is jointly liable, and Droplets will not make such an argument.  Yahoo's dissolution is admissible for other reasons, and it will not prejudicially suggest to the jury anything about Verizon's joint liability.

Ex. 17 to Yahoo Br. ¶¶ 5, 16(b) (describing Yahoo's argument).  The Chancery Court said Droplets was mistaken in thinking that *the court* had accepted *Yahoo's* argument in the first place, emphasizing that it had never accepted Yahoo's argument. *Id.* ¶¶ 8, 16.  Thus, the context of this block quote was the Court actually rejecting the centerpiece of Yahoo's argument.  The court likewise rejected Yahoo's argument to avoid a new trial, emphasizing that Yahoo "acted in a manner that undermine[d] the court's confidence" by failing to disclose relevant facts about the planned Apollo sale. *Id.* ¶ 18(c).

Case No. 12-cv-03733-JST                    52            Droplets' Omnibus Opposition to Yahoo's
                                                                       Motions *in Limine*

**X.     Yahoo Motion *in Limine* No. 10: Yahoo's Request To Limit
        Experts To Their Reports**

There are established rules in this Court, the Federal Circuit, the Ninth Circuit, as well as persuasive authority from around the country as to the proper scope of an expert's testimony. This Court in particular already has and applies rules as to the scope of an expert's trial testimony. There is no reason to supplant these rules and cases with an in *limine* ruling.

To be clear, Droplets has no intention of violating the well-established rule that experts cannot testify outside the scope of their disclosed opinions. But Yahoo seeks to constrain expert testimony only to what is in their "report," thereby presumably excluding opinions timely disclosed in supplementations, declarations, and depositions, even if the case law would allow them. Yahoo's in *limine* motion disregards the intent of the disclosure rules and the widely held practices of courts nationwide, including this one. It seeks to impose uncertainty by supplanting established rules.

Experts are permitted to testify within the scope of their disclosed opinions, whether those opinions are contained in their opening report, rebuttal supplemental report, declarations, or depositions so long as the opinions are timely disclosed. *See* Fed. R. Civ. P 26(a)(2)(B) (requiring a witness who is "retained or specially employed to provide expert testimony" to submit a written report); 26(b)(4)(A) (permitting the deposition of "an expert whose opinions may be presented at trial"); 26(e)(1)(A) (requiring supplemental disclosures where "the party learns in some material respect the disclosure or response is incomplete or incorrect"); *see also, Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1066, 1074-75 (S.D. Cal. June 29, 2007) (finding expert can testify to scope of opinion disclosed in opening report, supplemental report, and declaration).

The expert disclosure requirements are intended to facilitate effective response via cross-examination and rebuttal by eliminating surprise. *See* Fed. R. Civ. P. 26 Advisory Committee Notes ("Effective cross-examination of an expert witness requires advance preparation," and "[s]imilarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.") Accordingly, rebuttal testimony

provided in an expert's deposition is permissible. *Cave Consulting Grp., Inc. v. Optuminsight, Inc.*, 2018 WL 1938555, at *4 (N.D. Cal. Apr. 25, 2018) ("The experts may, however, testify at their depositions regarding not only the subject matter of their initial reports but also any critiques of their opinions presented in the rebuttal reports, although they may not present new opinions, arguments, or evidence as *alternatives* to opinions, arguments, or evidence that [the opposing] experts criticized.") (emphasis in original).  Experts may, however, be precluded from testifying beyond their disclosures when subsequent disclosures were not timely, and were not "either substantially justified or harmless." *Asetek Danmark A/S v. CMI USA, Inc.*, 2014 WL 6997670, at *1 (N.D. Cal. Dec. 9, 2014) (citing *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013)); *see also* Fed. R. Civ. P. 37.

Supplemental disclosures are permissible as substantially justified or harmless where they "d[o] not affect [the expert's] methodology or conclusions." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 2015 WL 13037241, at *1 (N.D. Cal. Dec. 21, 2015); *see also Pajas v. Cnty. Of Monterey*, 2019 WL 188660, at *3 (N.D. Cal. Jan. 14, 2019) (precluding late-disclosed opinion where it departed "substantially" from timely testimony) (citing *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010)).

When determining whether testimony is within the scope of an expert's disclosures, this Court has applied these rules reasonably to determine whether late-disclosed testimony should be precluded because it amounts to an "ambush." *Asetek*, 2014 WL 6997670, at *2.  Objections that an expert is testifying outside the scope of his or her disclosures are better raised at trial as opposed to a non-specific broad category of information. *See, e.g., MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2437073, at *4 (N.D. Cal. June 11, 2019) (denying a similar motion in *limine* "without prejudice to specific objections at the time of trial").

Accordingly, Droplets respectfully requests that the Court deny Yahoo's motion.

Case No. 12-cv-03733-JST                    54              Droplets' Omnibus Opposition to Yahoo's
                                                                                        Motions *in Limine*

### XI.    Yahoo's Motion *in Limine* No. 11: Yahoo's Request To Preclude Droplets From Using Demonstratives And Publicly Available Information

Yahoo asks the Court to grant a blanket exclusion on all evidence produced by Droplets since May 2021, as well as other materials that appear on Droplets' exhibit list. However, Yahoo's motion does not identify with particularity the evidence it seeks to exclude, pointing only to an illustrative set of documents.[22]    After receiving Yahoo's motion, Droplets asked Yahoo to identify the specific exhibits at issue. Yahoo provided a vague response without providing the exhibit numbers.[23]  Yahoo's failure to identify the specific evidence it seeks to exclude is improper and precludes Droplets from responding substantively to the specific evidence at issue in Yahoo's motion. The Court should therefore deny Yahoo's motion and review admissibility on a particularized basis in the context of addressing the parties' exhibit objections. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) (denying motion to exclude a "broad category of information" because "[d]efendants have not placed the evidence in question before the Court, and the Court cannot rule in a vacuum"); *see also Gray v. Mazda Motor of Am.*, 2009 WL 10673335, at *2 (C.D. Cal. Feb. 6, 2009) (denying motion *in limine* for failure to "state with particularity what witnesses or evidence should be precluded").

Moreover, even the illustrative set of documents — which Yahoo references without explaining how exclusion is warranted under Rule 37(c)(1) — do not justify exclusion. All of these documents are publicly available. Further, all but one of these are things such as publicly available videos, songs, movie trailers and materials that reflect the culture and technology of the late 1990s and early 2000s that are on the list in the event Droplets uses them as demonstratives during trial. Droplets seasonably included these documents on its exhibit list merely to provide early notice to Yahoo about information intended to be used in demonstratives long before any deadline for the exchange of demonstratives.[24]  Droplets explained to Yahoo during the meet and confer process that these types of

---

[22] *See* Yahoo!, Inc. and Oath Inc. and Oath Holdings, Inc.'s Omnibus Motions *in Limine*, ECF No. 809 (citing PTX-1436–PTX-1509 and PTX-1515).

[23] *See* Ex. 20, Aug. 3, 2021 (e-mail exchange between Kevin Anderson and Jaime Cardenas-Navia and copying other counsel).

[24] *See* PTX-1436–PTX-1509.

materials were included for use as demonstratives. Further, Droplets is not aware of any document requests that asked Droplets to produce demonstrative materials, and Yahoo has pointed to no such request. In short, Droplets does not intend to introduce these documents into evidence, and the use of these materials for demonstratives is appropriate. *See Easton v. Asplundh Tree Experts, Co.,* Case No. C16-1694 RSM, 2018 WL 1306455 *3 (W.D. Wash. Mar. 3, 2018) (court deemed motion *in limine* to exclude never produced photos as moot since they were only being offered as demonstratives); ); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C11-5973 PSG, 2013 WL 4537838, at *1, *7 (N.D. Cal. Aug. 22, 2013) (denying motion to exclude demonstrative exhibits and finding it reasonable to disclose demonstratives up to 12 hours before their expected use).

The one document in Yahoo's list of examples that Droplets does intend to admit into evidence is a Yahoo whitepaper relating to Search Assist.[25] This is a document that Yahoo or Verizon Media should have been produced in response to discovery requests served on them. *See* Ex. 21 (PTX-1515); Ex. 22 (Droplets 1st RFPs to Yahoo) at 6 (Request for Production No. 15); Ex. 23 (Droplets 1st RFPs to Oath) at 5-6 (Request for Production No. 15). That Droplets mitigated Yahoo's delinquent document production by finding and producing a publicly available document that Yahoo should have produced cannot support exclusion of Droplets' evidence. In sum, even the documents Yahoo cites as examples of late-produced documents that should be excluded do not warrant exclusion. Yahoo's motion should be denied.

[25]    *See* Ex. 21 (PTX-1515).

**XII.   Yahoo's Motion *in Limine* No. 12: Yahoo's Request To Exclude Evidence About Whether Yahoo Failed To Meet Its Discovery Obligations**

Yahoo moves this Court for an order precluding Droplets from introducing — for any purpose whatsoever — evidence, testimony or argument that Yahoo did not satisfy its discovery obligation in this case.  And, while full breadth of what Yahoo seeks to exclude is not addressed in Yahoo's motion, according to the title of the motion, Yahoo apparently intends that any such order would extend to any *insinuation* that Yahoo did not produce documents in response to document requests, respond to information called for by interrogatories, or otherwise meet its discovery obligations.  If granted, this overbroad Motion could deny Droplets the ability to present testimony needed to rebut a myriad of Yahoo expert opinions or potential case themes or arguments.

As a threshold matter, Yahoo's motion should be denied for failure to identify the specific evidence it seeks to exclude.  *Johnson v. City of Olympia*, 2018 WL 8918629, at *1 (W.D. Wash. Oct. 12, 2018) ("Without any information regarding the specific evidence or theories Defendants seek to exclude, the Court cannot preemptively grant this motion."); *see also Gray v. Mazda Motor of Am., Inc.*, 2009 WL 10673335, at *2 (C.D. Cal. Feb. 6, 2009) (denying motion *in limine* for failure to "state with particularity what witnesses or evidence should be precluded").

While the relief requested is extraordinarily broad, Yahoo suggests that it is seeking something standard and typical because it only cites cases for the narrower proposition that evidence of the discovery disputes themselves should not be admitted.[26]  Droplets agrees that evidence of discovery disputes need not be discussed at trial, and Droplets does not intend to do so.  But Yahoo's requested relief goes well beyond that.  If information that would be expected to exist is absent due to Yahoo's failure to produce or provide it in discovery, there is no bar to Droplets explaining that it asked for the information, but it was not provided.  At a basic level, if Yahoo presents argument that Droplets has not produced any (or inadequate) evidence on some point, if the gap is due to Yahoo's failure to

---

[26] *See, e.g., Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, No. C08-04990, 2012 WL 2339762 at *2 (N.D. Cal. June 7, 2012) (excluding evidence of discovery disputes but allowing prior inconsistent discovery responses to be admitted); *Snyder v. Bank of Am., N.A.*, No. 15-cv-04228-KAW, 2020 WL 6462400, at *11 (N.D. Cal. Nov. 3, 2020) (granting unopposed motion *in limine* for an order preventing introduction of "evidence of a discovery dispute").

produce information that was requested and required to be produced, there is nothing controversial about Droplets pointing that out – there is no rule of evidence that precludes a party from doing so. For example, Droplets experts need to explain the nature and scope of the facts available to them so that they can demonstrate the adequacy of their methodology and opinions.

These issues are not just theoretical. Instead, Yahoo's experts have criticized Mr. Bergman, Droplets' damages expert, for the type of information he relies upon. As one example, as to Mr. Bergman's opinions as to the importance of speed, Mr. Kent criticizes Mr. Bergman for relying on a webpage referencing the unproduced Yahoo engineer study on the grounds that the screen page is inadequate and referring to the Yahoo engineer study as a "Non-Existent Yahoo! 'Internal Study.'" Ex. 14 Kent Report, pp 58-60 at subsection title and ¶¶188-90. In fact, Droplets sought analyses regarding speed from Yahoo,[27] but Yahoo's engineering study was not produced. Mr. Bergman needs the flexibility to explain that he relied on what he did because Yahoo did not provide the study.[28]

Moreover, for tens of thousands of documents, Yahoo produced only text files and not images or natives of the document. Some of these text files are important. For example, Droplets presented and cited a key text-only files in its recent opposition to summary judgment on infringement. *See* Ex. 21-23 to Droplets' Opposition to Summary Judgment, ECF Nos. 776-24, 775-25, 776-26. If these or similar documents are admitted or shown to the jury through experts or Yahoo's witnesses, Droplets needs the ability to explain, as needed, that the form of these documents are odd because this is how they were produced. And, significantly, this sort of explanation will be critical for Mr. Bergman to address other unfounded criticisms regarding his opinions based on speed. For example, Mr. Kent criticizes Mr. Bergman's for relying on YAHOO_D0441296, a text file that contains 16 pages of HTML source code that Mr. Kent claims contains "no relevant information" yet, when converted from

---

[27] *See, e.g.,* Ex. 24 (Request for Production to Yahoo) at RFP No, 136, Ex. 25 (Request for Production to the Oath Entities) at RFP No. 143, Ex. 26 (Interrogatory to Oath Entities) at Interrogatory No. 7, Ex. 27 (Interrogatory to Yahoo) at Interrogatory No. 7.

[28] Relatedly, Yahoo's experts criticize Droplets' damages expert Mr. Bergman for ███████████████████████████████████████████████. *See, e.g.,* Ex. 15 Bakewell Rebuttal Report p. 119, ¶¶ 362-63. Again, one of the reasons Mr. Bergman turned to these public documents is that Yahoo did not produce its key speed study.

Case No. 12-cv-03733-JST                    58            Droplets' Omnibus Opposition to Yahoo's
                                                                      Motions *in Limine*

html, references the unproduced Yahoo speed study described above that Yahoo's expert characterizes as non-existent. *See* Ex. 14 (Kent Report) pp 58-60, subsection title and ¶190. Mr. Bergman needs to be able to explain that this is the only form in which this key document about the Yahoo speed study was produced, and, notwithstanding this form, he was able to open the text in a browser to review and decipher its content and that it referenced the unproduced Yahoo engineering study about speed. *See* Ex. 7 (Bergman Report) p. 72, n.323 citing and explaining YAHOO-D0441296. Moreover, the production of files in text format impacted other areas of Mr. Bergman's analysis that may need explanation depending on Yahoo's arguments, cross-examination or testimony at trial.

Also, notwithstanding Yahoo's statement in its Motion that "Droplets did not once in this case file a discovery motion against Yahoo in connection with fact discovery," the fact is that Droplets presented a source code discovery dispute *via* a joint discovery letter. In this dispute, Droplets asked that Yahoo either produce relevant versions of source code for various time periods or explain why it cannot do so, the Magistrate Judge ruled that the onus should not be on Droplets to identify what is missing. ECF No. 535. at 2; *see also* ECF No. 530. If Yahoo criticizes Droplets' expert analyses for failing to rely on adequate or representative source code, Droplets' technical expert needs the flexibility to explain that his understanding is that Yahoo was asked to provide its source code and he reviewed what was produced.

Further, if a Yahoo witness presents facts at trial that were not provided in its discovery responses calling for such facts, Droplets should be entitled to challenge the witnesses' credibility by presenting evidence that the facts were not disclosed in productions, written discovery responses or prior testimony. *See United States v. RSR Corp.*, No. C00-890 JLR, 2005 WL 5977799, at *4 (W.D. Wash. Oct. 4, 2005) ("[I]n general, impeachment on cross-examination is the remedy for a witness whose testimony is inconsistent with prior discovery responses."); *see also Victory Carriers, Inc. v. Stockton Stevedoring Co.*, 388 F.2d 955, 959 (9th Cir. 1968) ("When there is conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weight all of the answers and resolve the conflict").

Bottom line, there are numerous situations in which it may be appropriate for Droplets to present evidence and argument that certain information was requested from Yahoo but not provided. And because Droplets does not intend to introduce evidence of the parties' discovery disputes, the cases cited by Yahoo in support of its motion are inapposite.

Accordingly, Yahoo's MIL No. 12 should be denied.

### XIII.  Yahoo's Motion *in Limine* No. 13: Yahoo's Request To Preclude Use Of Depositions If Witnesses Are Unavailable

Yahoo's MIL No. 13 seeks to preclude the use of deposition testimony that otherwise would be permitted by the Federal Rules of Civil Procedure if those witnesses are unavailable.  Droplets has no intention of affirmatively playing its own officer's deposition testimony in its case unless they are "unavailable" within the meaning of the Federal Rules, or otherwise fit within an established exception.  Droplets has only included the depositions of these witnesses out of an abundance of caution, should the witnesses become unavailable. Yahoo's motion is premature, as the conditions for unavailability under the Rules should be evaluated at the time a deposition is offered at trial.[29]

Rule 32(a)(4) of the Federal Rules of Civil Procedure provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds" that the witness is "unavailable," meaning:

> (A)  that the witness is dead;
> (B)  that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
> (C)  that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;
> (D)  that the party offering the deposition could not procure the witness's attendance by subpoena; or
> (E)  on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4).  The Rules expressly permit Droplets to use deposition testimony under any of these circumstances.

Yahoo's argument that the unavailable witness exception of Rule 32 would "swallow the rule [against hearsay] in this instance" because "Droplets' officers are under the control of Droplets" misapprehends the Rule. ECF No. 809 at 34.  The question of admissibility turns on unavailability, not their status as officers. *Mazloum v. D.C. Metro. Police Dep't*, 248 F.R.D. 725, 726 (D.D.C. 2008)

---

[29] *See Corcoran v. CVS Pharmacy, Inc.*, 2021 WL 1721056, at *6 (N.D. Cal. Apr. 30, 2021) (**"**The Court DEFERS ruling on the remainder of the motion until issues of availability are resolved either at the time of trial or by agreement.").

("Hence, the FUR defendants insist that [Fed.R.Civ.P. 32(a)(4)(B)] . . . authorizes them to submit Fiorito's deposition testimony — whether you characterize him as a party, officer, managing agent, or otherwise — for any purpose whatsoever. They are correct. There is no ambiguity in Rule 32 on this point.")). *See also Forrester Env't Servs., Inc. v. Wheelabrator Techs.*, Inc., No. 10-CV-154-JL, 2012 WL 1161125 at *2 (D.N.H. Apr. 6, 2012) (argument that a witness "is required to appear in person because he is plaintiffs' agent . . . finds no support in the Federal Rules of Civil Procedure, and is easily rejected").

Yahoo implies that Droplets can control "unavailability" of its witnesses, but its objection is hypothetical and premature again. Yahoo does not specifically allege or provide evidence that Droplets has procured its witnesses' absence at trial, thus Droplets may properly offer the deposition testimony of its own employees and representatives at trial if they are unavailable. *See, e.g.*, *Phoenix Techs. Ltd. v. VMware, Inc.*, 2017 WL 8069609, at *1-2 (N.D. Cal. June 7, 2017) (that "the record does not establish that [a party] 'procured' [the witness]'s absence" and the witness was "unavailable" under the Rules "compels the conclusion that defendant may use her deposition testimony"); *Mazloum*, 248 F.R.D. at 726.

Case No. 12-cv-03733-JST                              62              Droplets' Omnibus Opposition to Yahoo's
                                                                                    Motions *in Limine*

**XIV.    Yahoo's Motion *in Limine* No. 14: Yahoo's Request To Exclude Its Overall Size And Revenue**

The only dispute in Yahoo's MIL No. 14 is whether Droplets must be precluded from introducing evidence, testimony, or arguments about Yahoo's or Verizon's *general* size, as opposed to their *financial* size, which Droplets has already agreed not to do.  ECF No. 809 at 35.

Restricting reference to a party's general or relative size is too vague and speculative at the in *limine* stage, particularly where size is demonstrably relevant to at least one critical issue in the case.  Yahoo's size, for example, relates directly to a reasonable royalty analysis, making it highly probative to Droplets' damages case.  Indeed, one of the *Georgia-Pacific* factors is relative market positions of the parties, which necessarily implicates size.  *Georgia-Pacific Corp.*, 318 F. Supp. at 1120 ("5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.").  *See also Delta T, LLC d/b/a Big Ass Fan Co. v. Dan's Fan City, Inc.*, No. 8:19-cv-1731, ECF No. No. 193 at 7-8 (M.D. Fl. May 27, 2021) (denying a similar MIL, finding that the court "cannot decide at this stage whether evidence relating to the parties' size, finances, or location is inadmissible," and that such items may very well be relevant); *see also, e.g., Alarm.com, Inc. v. Securenet Techs. LLC*, No. 1:15-cv-00807, ECF No. 242 at 3 (D. Del. Jan. 23, 2019) (denying-in-part similar MIL as to "relevant, factual statements regarding the parties' relative wealth, market shares, or number of employees [which] are permitted," while granting-in-part against references to personal wealth of witnesses and terms that "denigrate" and "inflame[e]").

The probative value of references to general size outweighs any theoretical prejudice such references may cause.  Yahoo failed to identify specific undue prejudice resulting from every possible indication of Yahoo's and Verizon's size, a fact most jurors will be familiar with in any event, instead insinuating that a size differential between the parties is itself prejudicial.  (ECF No. 809 at 35 (asserting that "implying that some form of 'size' should impact the jury's deliberations" is itself prejudicial).)  Absent a showing that evidence of Yahoo's and Verizon's overall size is clearly inadmissible for all purposes, the complete preclusion of such evidence is premature.  *See, e.g.,*

*Wolfenbarger*, 2021 WL 3212833, at *1 ("[T]o exclude evidence on a motion in limine the evidence must be impermissible on all potential grounds.").

Accordingly, at this stage Yahoo cannot establish that references to Yahoo's and Verizon's sizes fail to pass a Rule 403 analysis and should be excluded. *See* Fed. R. Evid. 403 (evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"). Excluding such evidence now is particularly inappropriate because Yahoo has made clear its intent to point out Droplets' small size, absence of resources, current lack of products, and relatively few employees. It makes little sense to allow Yahoo to present its arguments and evidence as to the relative size of Droplets, and not permit Droplets to comment on the size of Yahoo and Verizon. Yahoo and Verizon built large, successful companies. They should be proud of it, and not try to keep the facts from the jury.

Dated: August 10, 2021

/s/ Courtland L. Reichman
Courtland L. Reichman

Courtland L. Reichman (CA Bar No. 268873)
 creichman@reichmanjorgensen.com
Shawna L. Ballard (CA Bar No. 155188)
 sballard@reichmanjorgensen.com
Kate Falkenstien (CA Bar No. 313753)
 kfalkenstien@reichmanjorgensen.com
Michael G. Flanigan (CA Bar No. 316152)
 mflanigan@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Khue V. Hoang (CA Bar No. 205917)
 khoang@reichmanjorgensen.com
Jaime F. Cardenas-Navia (admitted *pro hac vice*)
 jcardenas-navia@reichmanjorgensen.com
Michael Matulewicz-Crowley (admitted *pro hac vice*)
 mmatulewicz-crowley@reichmanjorgensen.com
Michael Marvin (admitted *pro hac vice*)
 mmarvin@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017

Case No. 12-cv-03733-JST                64        Droplets' Omnibus Opposition to Yahoo's
                                                          Motions *in Limine*

Telephone: (212) 381-1965
Facsimile: (650) 623-1449

Christine Lehman (admitted pro hac vice)
  clehman@reichmanjorgensen.com
David King (admitted pro hac vice)
  dking@reichmanjorgensen.com
Aisha Mahmood Haley (admitted pro hac vice)
  amhaley@reichmanjorgensen.com
Phil Eklem (admitted pro hac vice)
  peklem@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG
LLP
1710 Rhode Island Avenue, NW, 12th floor
Washington, DC  20036
Telephone: (202) 894-7310
Facsimile: (650) 623-1449

Attorneys for Plaintiff and Intervenor-Defendant
*Droplets, Inc.*