Jennifer Haltom Doan
(admitted *pro hac vice*)
Joshua R. Thane
(admitted *pro hac vice*)
J. Randy Roeser
(admitted *pro hac vice*)
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

George D. Niespolo
(SBN: 72107)
Meghan C. Killian
(SBN: 310195)
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
415.957.3013 (phone)
415.358.4394 (fax)
GDNiespolo@duanemorris.com
MCKillian@duanemorris.com

*Attorneys For
Defendant Yahoo!, Inc. And
Intervenor-Plaintiffs Oath, Inc. And Oath Holdings, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DROPLETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> YAHOO!, INC. <br><br> Defendant. | Case No. 12-cv-03733-JST (KAW) <br><br> **RESPONSE OF YAHOO! INC. AND OATH INC. / OATH HOLDINGS, INC. TO DROPLETS, INC.'S MOTION TO STAY OR CONTINUE TRIAL** |
| OATH INC. AND OATH HOLDINGS, INC. <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> DROPLETS, INC., <br><br> Intervenor-Defendant. | |

Yahoo is mindful of the Court's remarks regarding the current Covid-19 situation, and Yahoo believes that the Court's announced health and safety protocols are appropriate. If September 13, 2021 were fully available, Yahoo would be prepared to go to trial on that date. However, because the September 13, 2021 trial is double-booked with a criminal trial, and because several of Yahoo's witnesses would have scheduling conflicts if our trial is delayed to later in September, Yahoo does <u>not</u> oppose a continuance of the trial.

Several of Yahoo's witnesses and at least one of its trial counsel would not be available on January 10, 2022. Yahoo therefore conferred with Droplets after Droplets filed its motion, and the parties are both available for a trial commencing on any of the following dates, to which the parties would agree if the Court is available:

- February 21, 2022;
- February 28, 2022; or
- March 7, 2022.

If one of these dates works for the Court, then the issues raised by Droplets' motion appear to be moot. If none of these dates work for the Court, the parties can confer on alternative dates.

To be clear for the record, however, Yahoo disagrees with certain of the rationales set forth by Droplets in its motion for continuance, and Yahoo does not believe that those rationales would support an additional, future continuance of this case. Indeed, a future continuance of this trial would be particularly unfair to Defendant Altaba (which no longer owns the Yahoo websites accused of infringement). Altaba is trying to wind down its company, but currently has $749 million in assets frozen — the amount of Droplets' damages demand in this case, if trebled — at Droplets' urging by a Chancery Court in Delaware pending either the resolution of this case or a further decision of the Chancery Court releasing the assets.

Yahoo recognizes that if the Court grants the unopposed continuance, that would at least postpone the need to resolve the constitutional arguments Droplets presents with respect to (a) the potential exclusion of unvaccinated persons from the jury venire and (b) the physical presence of Droplets' CEO, David Berberian, in the courtroom at trial. Nonetheless, Yahoo briefly responds to

both arguments below, so that Yahoo's position is clear on the record, in the event Droplets raises either or both of these points again in the future or suggests any acquiescence to them by Yahoo.

**I.   Droplets' Seventh Amendment and Jury Selection Act Arguments are Incorrect**

As an initial matter, the seven counties at issue have some of the highest adult vaccination rates in the country, with each county reporting adult vaccination rates of over 74%.[1]  Against this background of widespread vaccinations, Droplets' motion invokes the Seventh Amendment to allege the "systematic and intentional exclusion" of certain jury members.  ECF No. 866 at 7.

To evaluate such an allegation, the Supreme Court has articulated—and the Ninth Circuit has followed—a three-part standard.  Under that test, Droplets, as the objector, must make a *prima facie* showing: (1) of a protected group that "qualif[ies] as 'distinctive'"; (2) that this group "is not fairly and reasonably represented in jury venires"; and (3) that "'systematic exclusion' in the jury-selection process accounts for the underrepresentation." *Berghuis v. Smith*, 559 U.S. 314, 327 (2010) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).  The back-of-the-envelope math presented in Droplets' motion does not satisfy either the second or third *Berghuis-Duren* factors.

Under the second factor—whether a protected class is "fairly and reasonably represented in jury venires"—Droplets' calculation would not survive a *Daubert* challenge.  The individual conducting the calculation, Ms. Falkenstein, is not a statistician and does not purport to have any statistical training or background.  The calculations on their face reveal methodological flaws.  For example, the data purports to show the number of "fully vaccinated people <u>in venire</u>" and "non-fully vaccinated people <u>in venire</u>."  ECF No. 866 at 5 (quoting table labels, emphasis added).  But the source data is California state data regarding <u>all vaccine-eligible residents</u> in the counties (*i.e.*, all residents over age 12), not those individuals who qualify for jury service. For example, the dataset includes minors between the ages of 12 and 17 who are vaccine-eligible but are disqualified from jury service in all cases.  Nor does Droplets' analysis control for additional disqualifying factors like citizenship status.

---

[1] This data is publicly available on the California's government's "Vaccination Progress Data" site, at https://covid19.ca.gov/vaccination-progress-data/#overview.  This is the same source on which Droplets relies in its motion.  *See* ECF No. 866 at Ex. D (footnotes).

In a footnote, Droplets asserts that the data for the "eligible jury pool...is likely comparable to the vaccination rates for residents of that race overall" (ECF No. 866 at 5 n.3), but that is conjecture.  Taking Alameda County as one illustrative example, only 65.5% of eligible 12-17 year olds in the county are fully vaccinated, whereas, around 79.5% of the adult population is fully vaccinated.[2]  This could materially impact the summary vaccination percentage numbers displayed in the summary table on page 5 of Droplets' motion, particularly if the percentages of 12-17 year olds in each of the various racial or ethnic groups is different than the percentages of 18+ year olds in each of those groups.  The record lacks a clear answer to that question, however, because Droplets has not undertaken such a statistical analysis.

Turning to the third *Berghuis-Duren* factor—that "systematic exclusion in the jury-selection process accounts for the underrepresentation"—Droplets' arguments again fail.  The Ninth Circuit authority Droplets cites teaches that "[t]o be systematic, underrepresentation must be 'due to the *system*' by which the juries were selected."  *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1165 (9th Cir. 2014) (quoting *Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004), *in turn quoting Duren*, 439 U.S. at 364) (emphasis in original).

An example of a deficient system occurred in the *Duren* case, where "women, but not men, could opt out of jury service by so indicating on the juror questionnaire."  *Hernandez-Estrada*, 749 F.3d at 1165.  In contrast, in *Randolph*, the Ninth Circuit approved a challenged system and rejected a statistical argument that "Hispanics return questionnaires at a lower rate than the general population"; according to the Ninth Circuit, the objector had "not shown any relationship between the disproportionately low percentage of Hispanics in the venire and the juror-selection system the County uses."  *Randolph*, 380 F.3d at 1141.  Likewise, in *Hernandez-Estrada*, the Ninth Circuit rejected the argument that the use of "voter registration lists" to assemble a jury venire constituted a system of exclusion under the third *Berghuis-Duren* factor because it incidentally led to "underrepresentation of African Americans and Hispanics in the qualified juror pool":

---

[2] *See* https://covid19.ca.gov/vaccination-progress-data/ (providing fully vaccinated rate for 12-17 years old).  To calculate the fully-vaccinated rate for adults, we aggregated the results for the 18-49, 50-64, and 65+ age groups.

> Here, while Hernandez has introduced significant evidence regarding underrepresentation of African Americans and Hispanics in the qualified juror pool, he has failed to provide evidence that this underrepresentation is due to the system employed in the Southern District, and has therefore failed to establish a prima facie case under *Duren*.

*Hernandez-Estrada*, 749 F.3d at 1166.

Here, Droplets' arguments are even weaker than those in *Hernadez-Estrada* and *Randolph*. Droplets' motion does not point to any defects in the actual jury selection process this Court may use, as part of accounting for vaccination status, let alone demonstrate that such procedures would in fact systemically cause the exclusion of protected Hispanic or African-American jury-eligible county residents. For instance, in selecting the jury pools in this case from the venire, this Court could in it its discretion take actions such as offsetting vaccination-based exclusions from a particular race or ethnicity with their replacement by vaccinated members of that same race or ethnicity.

At the very least, Droplets' contention with regard to the "systematic exclusion" factor is premature. Droplets' counsel had it right at the August 26 pretrial conference, when counsel acknowledged that the preferable time to address this issue is after the parties actually see the jury venire: "And we think reading the case law – if we have an objection, it will be needed to be made once we see the jury venire and engage whether it's a fair cross-section of the community." ECF No. 865, Transcript of August 26, 2021 Pretrial Conference, at 14.

II. **Droplets' Arguments Regarding its CEO David Berberian Do Not Raise Due Process Concerns**

Droplets repeatedly invokes "Due Process" in asserting the purported importance of having its CEO, David Berberian, physically present in the courtroom, despite his unvaccinated status. Droplets is certainly allowed under Rule 615 to exempt a designated corporate representative from sequestration, but that evidentiary rule does not confer on Droplets the constitutional right to have Mr. Berberian live in the courtroom at trial. *See Kulas v. Flores*, 255 F.3d 780, 786 (9th Cir. 2001) ("In a civil suit, the parties do not have a constitutional right to be personally present during trial."). The cases cited by Droplets—all of which are from outside of the Ninth Circuit—do not

hold that a corporate plaintiff has a Due Process right to have the representative of its choice physically present in the courtroom. To the contrary, where a corporate plaintiff is represented by counsel in a civil case, as Droplets is here, a constitutional right to be physically present does not attach. *See id.* (where a party is represented by counsel, "'[t]here is no constitutional right of a litigant to be personally present during the trial of a civil proceeding,'" quoting *Faucher v. Lopez*, 411 F.2d 992, 996 (9th Cir. 1969)); *United States v. Alisal Water Corp.*, 431 F.3d 643, 658 (9th Cir. 2005) ("'the Confrontation Clause is not applicable to civil cases,'" quoting *U.S. Steel, LLC, v. Tieco, Inc.*, 261 F.3d 1275, 1287 n.13 (11th Cir. 2001)).

Moreover, there are multiple options to mitigate Droplets' concerns. Mr. Berberian could testify by Zoom, as likely other witnesses will, and the Court could instruct the jury as to why Mr. Berberian could not testify live or be Droplets' corporate representative (and/or Droplets could also develop that same explanation on direct examination). Either or both of these would eliminate any juror confusion as to why he is not present in person. Droplets could also designate one of its other executives or officers as its corporate representative, such as Droplets' current CFO Ingo Theurekauf, who is on Droplets' witness list and is thoroughly familiar with Droplets and its history—in fact, he recruited Mr. Berberian to the company. Mr. Theuerkauf has also been intimately involved with all of Droplets' litigations, including the present one.

Respectfully submitted,

/s/ *Meghan C. Killian*
Meghan C. Killian

Dated:  September 2, 2021

George D. Niespolo
(SBN: 72107)
Meghan C. Killian
(SBN: 310195)
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
415.957.3013 (phone)
415.358.4394 (fax)
GDNiespolo@duanemorris.com
MCKillian@duanemorris.com

Kevin P. Anderson
(admitted *pro hac vice*)
Duane Morris LLP
505 9th Street, N.W., Suite 1000
Washington D.C. 20004-2166
202.776.7800 (phone)
202.776.7801 (fax)
KPAnderson@duanemorris.com

Aleksander Goranin
(admitted *pro hac vice*)
Duane Morris LLP
30 South 17th Street
Philadelphia PA 19103-4196
215.979.1000 (phone)
215.979.1020 (fax)
Agoranin@duanemorris.com

L. Norwood Jameson
Matthew C. Gaudet
(admitted *pro hac vice*)
Duane Morris LLP
1075 Peachtree Street NE, Suite 2000
Atlanta GA 30309-3929
404.253.6900 (phone)
404.253.6901 (fax)
Wjameson@duanemorris.com
MCGaudet@duanemorris.com

|   |   |
|---|---|
| 1 | Jennifer H. Doan |
| 2 | (admitted *pro hac vice*) |
|   | Joshua R. Thane |
| 3 | (admitted *pro hac vice*) |
|   | HALTOM & DOAN |
| 4 | 6500 Summerhill Road, Suite 100 |
|   | Texarkana, TX 75503 |
| 5 | Telephone: (903) 255-1000 |
|   | Facsimile: (903) 255-0800 |
| 6 | Email: jdoan@haltomdoan.com |
| 7 | Email: jthane@haltomdoan.com |

*Attorneys for Intervenors-Plaintiffs Oath Holdings, Inc. and Oath, Inc.*

CASE NO. 12-CV-03733-JST 12-CV-4049-JST
YAHOO RESPONSE TO DROPLETS' MOTION TO
STAY OR CONTIUE TRIAL YAHOO'S MSJ

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of reply brief for **RESPONSE OF YAHOO! INC. AND OATH INC. / OATH HOLDINGS, INC. TO DROPLETS, INC.'S MOTION TO STAY OR CONTINUE TRIAL** was served by ECF on all counsel of record on this the 2nd day of September 2021.

/s/ *Meghan C. Killian*
Meghan C. Killian