Jennifer Haltom Doan (admitted *pro hac vice*)
Joshua R. Thane (admitted *pro hac vice*)
J. Randy Roeser (admitted *pro hac vice*)
**HALTOM & DOAN**
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com
Email: rroeser@haltomdoan.com

George D. Niespolo (SBN: 72107)
GDNiespolo@duanemorris.com
Meghan C. Killian (SBN 310195)
mckillian@duanemorris.com
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
Telephone:  415.957.3013
Facsimile:  415.358.4394

**ATTORNEYS FOR
DEFENDANT YAHOO, INC. AND
INTERVENOR-PLAINTIFFS OATH, INC. AND
OATH HOLDINGS, INC.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DROPLETS, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>YAHOO!, INC.<br><br>   Defendant. | Case No. 4:12-cv-03733-JST<br><br>**YAHOO, INC.'S BENCH MEMORANDUM SEEKING CLARIFICATION OF THE SCOPE OF THE PROSPECTIVE TESTIMONY OF YAHOO'S DAMAGES EXPERT, W. CHRISTOPHER BAKEWELL, IN LIGHT OF THE COURT'S RULINGS ON DROPLETS' MOTIONS *IN LIMINE* NOS. 5 AND 6, AND TRIAL DEVELOPMENTS** |
| OATH INC. AND OATH HOLDINGS, INC.<br><br>   Intervenor-Plaintiffs,<br><br>v.<br><br>DROPLETS, INC.,<br><br>   Intervenor-Defendant. | |

1

Yahoo anticipates that its damages expert, Chris Bakewell, will take the stand as early as this Tuesday, March 22. Mr. Bakewell's expert report analyzes the RPX Agreement (DTX-2196), including a specific rebuttal to the opinions offered at trial by Droplets' damages expert, Jim Bergman, concerning the "options" for the list of companies in RPX Agreement Exhibit C ("Exhibit C"), and Mr. Bergman's "multiplier" theory based on the later litigation outcomes for certain of those companies. The relevant potions of Mr. Bakewell's expert report are attached hereto as Exhibit A.[1]

Last week, Mr. Bergman told the jury that, if it takes the RPX Agreement into account, then the jury should (a) take the option amount listed for Yahoo on Exhibit C (reproduced on the right), and (b) increase that number to $236 million based in large part on a "multiplier" derived from the 2015 Sears-Overstock jury verdict. Mr. Bakewell's rebuttal opinion in his report is that Mr. Bergman's "option" / "multiplier" theory ignored what happened in Droplets' disputes with the <u>other</u> company defendants listed on Exhibit C and that Mr. Bergman did not find the Sears-Overstock litigation technically comparable to the dispute between Droplets and Yahoo.



Consistent with the Court's sidebar guidance on the "option" / "multiplier" issue last week, the permissible scope of Mr. Bakewell's testimony must be evaluated in light of this Court's rulings on Droplets' motions *in limine* number 5 ("MIL No. 5").  Yahoo understood the Court's ruling on MIL No. 5 to have excluded reference to *any* prior litigations, including the very litigations (Sears and Overstock) that were the centerpiece of Mr. Bergman's "option" / "multiplier" opinion regarding

---

[1] To be clear, Yahoo does not intend to present at trial the entirety of Mr. Bakewell's discussion in the attached pages from his expert report. For instance, following the Court's prior guidance, Yahoo does not intend to have Mr. Bakewell testify that the '115 and '838 patents were invalidated. Yahoo also does not expect to have Mr. Bakewell testify about option payment amounts listed in prior drafts of Exhibit C or to "MLV" ("minimum litigation value") estimates.

1  the RPX Agreement.

2  The scope of the Court's ruling on MIL No. 5 has now been impacted – in a very significant
3  way – by Mr. Bergman's trial testimony on this issue, i.e., his "option" / "multiplier" opinion based
4  on the outcome of the Sears and Overstock litigations, which are litigations that Yahoo believed to
5  have been excluded by the Court's MIL Order (ECF 1044). To be clear, the question of whether Mr.
6  Bergman's testimony violated the letter or spirit of the Court's ruling on MIL No. 5 is not the
7  purpose of this request for clarification; instead, the question is the prospective impact of the Court's
8  ruling on MIL No. 5 in view of this door-opening. In short, Yahoo seeks to clarify what Mr.
9  Bakewell can say to the jury.

10  Under any understanding of the original scope of the Court's ruling on MIL No. 5, Droplets
11  opened the door by cherry-picking from the "option companies" listed on Exhibit C to discuss only
12  those companies with past litigation results that Droplets apparently views as *helpful* to its case.[2]
13  Through the Sears-Overstock multiplier testimony, Droplets has messaged to the jury that the
14  industry either (i) takes a license, or (ii) fights and loses. Ironically, the discussion of its own past
15  litigation losses was the very topic Droplets argued in MIL No. 5 was so prejudicial that no <u>litigation
16  reference should come into evidence</u>. Droplets should not be permitted to tell the jury about its past
17  litigation victories against two of the "option companies," but then use the Court's MIL ruling as a
18  shield to prevent Mr. Bakewell from telling the jury the rest of the story about the litigations with
19  other "option companies" involving the '745 Patent, and how those results would impact Mr.
20  Bergman's "multiplier" number.

21  Per the Court's guidance at trial, Yahoo submits this bench memorandum now because it
22  seeks clarification of the scope of MIL No. 5 in light of trial developments, and thus ensure that Mr.
23  Bakewell's trial testimony stays within the guardrails of this Court's rulings. *See, e.g.*, *Luce v.*
24  *United States*, 469 U.S. 38, 40 n. 2 (1984); *Bladeroom Grp. Ltd. v. Emerson Elec. Co*, Case No.
25  5:15-cv-01370-EJD, 2018 WL 1794500 at *1 (Order Granting Defendants' Motion to Clarify) (N. D.

---

[2] This messaging began during Droplets' opening statement when Mr. Reichman regaled the jury with Droplets' suing "Adobe, which had acquired Macromedia, and eventually were able to settle that case for a very large sum of money." Mar. 8, 2022 Trial Tr. 269:23-25.

Cal. Apr. 16, 2018) ("The clarification of limine rulings is a particularly crucial exercise given their importance to the evidentiary record at trial."). As stated in *Luce*, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." 469 U.S. 38 at 41-42.

Yahoo is also prepared to address this issue outside of the presence of the jury during one of the Court sessions in advance of Mr. Bakewell taking the stand, should the Court so desire. Although the main focus is on the Court's ruling on MIL No. 5, the Court's other potentially relevant rulings are:

- the Court's order on Droplets' MIL No. 6, which held that the Schwab license (which is one of the other "option companies" listed in the Exhibit C) is admissible, even though it is not comparable, s*ee* ECF 1044 at 2-4.
- the Court's prior order on permitting Droplets' damages expert, Jim Bergman, to present a jury-verdict-multiplier theory based on Exhibit C, over Yahoo's *Daubert* challenge, *see* ECF 824 at 15-16.

**PROCEDURAL RECORD AND OVERVIEW OF ISSUE**

Before trial, Droplets moved through its MIL No. 5 to exclude reference to any "Droplets litigation other than the instant case, including litigation against other parties such as *Droplets, Inc. v. E*Trade Financial Corp.*, No. 1:12-cv-02326 (S.D.N.Y. May 13, 2011), and the products in those cases." ECF 808 at 14-22. Although the MIL specifically referenced the "*E*Trade* case," *id.* at 15-19, its requested relief was broader – Droplets argued that "references to other Droplets cases should similarly be precluded" because any "reference to previous infringement theories by Droplets would be unduly prejudicial and confusing" *id.* at 19. The requested relief at the conclusion of MIL No. 5 thus asked the Court to "preclude Yahoo from introducing arguments, statements, evidence, or testimony regarding any Droplets litigation other than the instant case." *Id.* at 22 (emphasis added).

The Court "granted in part and denied in part" MIL No. 5. *See* ECF 1044 at 2. The Court held that "Yahoo may refer to the existence of Search Suggest as a non-infringing alternative, but without referring to the *E*Trade* litigation." *Id.* The Court also ruled that Yahoo "may not introduce

evidence of the *E*Trade* litigation generally, or the summary judgment ruling specifically, on the question of willfulness." *Id.* The Court did not expressly address any other litigation in its Order on MIL No. 5 because the *E*Trade* case was the "only litigation Droplets specifically identifies." *Id.*

Similarly, through its MIL No. 6, Droplets moved to preclude Yahoo from introducing evidence of any "licenses that are not comparable." ECF 808 at 23-42. Yahoo contested Droplets' MIL No. 6, in part, by making the argument that Adobe, E*Trade, and Schwab licenses could be relevant to rebut Mr. Bergman's "multiplier analysis." ECF 834 at 30-31. For purposes of adjudicating MIL No. 6, the Court sorted the disputed licenses into "three groups of license agreements." ECF 1044 at 2-3. The only pertinent licenses are those in "category (1)." The Court denied Droplets' motion with respect to these licenses, holding: "Droplets' motion is DENIED as to category (1). Because these licenses involve the '745 patent, they are relevant to the determination of damages." *Id.* at 3. As is clear from Droplets' requested relief for MIL No. 6, the "category (1) licenses" *permitted* by this MIL include the Schwab license agreement, because it is one of the "Droplets' agreements" that involves the '745 patent. *See* ECF 808 at 42 (Droplets' request for relief to exclude "Droplets' agreements with Adobe, E*Trade, and Schwab").

Subsequent to the MIL rulings, during the second week of trial, Droplets presented the testimony of its damages expert, Mr. Bergman. Despite stating that his primary opinion was that the RPX Agreement was not comparable, Mr. Bergman offered an extensive secondary opinion based on the Exhibit C option amount for Yahoo, including the use of the 2015 Sears-Overstock jury verdict to substantially increase the stated option number. *See, e.g.*, Mar. 16, 2022 Trial Tr. at 1322:8-1327:24 (sealed transcript of Mr. Bergman's direct discussing his Exhibit C jury-verdict multiplier approach); Mar. 17, 2022 Trial Tr. at 1412:22-14.[3]

At the present stage of the trial, Mr. Bergman has told the jury in <u>this</u> case that a different jury in a <u>different</u> case found the '745 Patent infringed. Mr. Bergman then used that jury verdict as

---

[3] Before trial, this Court had permitted this theory over Yahoo's *Daubert* challenge. *See* ECF 824 at 15-16 ("Yahoo critiques this adjustment because the jury verdicts were not final (the parties settled before final judgment) and because other companies were later found to have not infringed….The first criticism goes to weight, not admissibility, and the second criticism misunderstands the nature of the hypothetical negotiation, which *assumes* infringement….Thus, companies found of infringement are comparable, and those found otherwise are not.").

the basis to "multiply" the option payment of $35 million by over a factor of 5 times. He has done so despite making clear in his expert report that the technology in the Sears-Overstock case is not technically comparable to the technology in this case:

> These companies are sufficiently different from each other such that technical benefits received by Yahoo from use of the patented technology are sufficiently different from the benefits received by Sears. As a result, the differences between these companies do not support comparability between the Sears Agreement and a license that would come from a hypothetical negotiation between Droplets and Yahoo in September 2005.

Exhibit B, Bergman Report at ¶ 306; *see also id.* at ¶ 317 (same for Overstock). Mr. Bakewell agrees with Mr. Bergman on this point. Exhibit A, Bakewell Report at ¶¶ 454, 586. Thus, all parties and their experts all agree that the companies (Sears and Overstock) and technical benefits underlying that jury verdict are not comparable to those that would be involved in the hypothetical negotiation in this case. Indeed, no party has attempted to show that the Sears-Overstock case or verdict is any more comparable than any of the *other* litigations involving "option companies" listed on Exhibit C.

Two important conclusions follow from this agreement about the non-comparability between Yahoo and Sears / Overstock. First, Mr. Bergman's rationale for using Sears and Overstock as the basis for other "option" / "multiplier" opinion was *not* that those companies (or the resulting licenses) were comparable to Yahoo. Second, given that Sears and Overstock do not have any particular comparability to Yahoo, then each of the *other* companies on the Exhibit C list are at least as relevant and valid as a basis to compare the option payment with the litigation outcome as Sears and Overstock (or, at the very least, they are in a similar enough situation that they are fair game for a rebuttal opinion).[4] Droplets should not be allowed to weaponize the Court's MIL rulings to

---

[4] To the extent the Court considers it relevant to this request for clarification, Yahoo has researched both sides' expert reports and both Mr. Bergman and Mr. Bakewell agree that they reached the same ultimate conclusion with respect to the Sears, Overstock, Adobe, Schwab, E*Trade, TD Ameritrade, and Scottrade agreements – that these agreements were not comparable to the hypothetical negotiation. Nonetheless, with respect to three of those agreements—Adobe, E*Trade, and Charles Schwab—the Court's resolution of Droplets' MIL No. 6 appeared to permit those specific agreements to be introduced into evidence, as explained above. *See* ECF 808 at 42 (Droplets' request to exclude "Droplets' agreements with Adobe, E*Trade, and Schwab"); ECF 1044 at 2-3 ("Droplets' motion is DENIED as to category (1). Because these licenses involve the '745 patent, they are relevant to the determination of damages."). Yahoo thus believed these agreements were not off limits for all purposes at the trial.

artificially limit this "option" / "multiplier" exercise to only the litigation results that would yield the largest possible multiplier number, while also messaging to the jury that Droplets always wins.

### REQUEST FOR CLARIFICATION

The issue on which Yahoo now seeks clarification is the extent to which Yahoo's damages expert (Mr. Bakewell) can rebut Mr. Bergman's Exhibit C "option" / "multiplier" opinion by pointing to the <u>other</u> "option companies" (besides Sears and Overstock) also listed on the Exhibit C. Mr. Bakewell's presentation of the subsequent litigation and settlement outcomes for the five other companies would allow the jury to see the complete picture behind Exhibit C. Mr. Bakewell has fully disclosed these opinions in his report, as set forth in Exhibit A to this brief.

The premise of Droplets' MIL No. 5 was that the "minimal probative value of references to unrelated litigation is severely outweighed by unfair prejudice such reference would cause Droplets. Previous cases brought by Droplets are against different accused products, different parties, and frequently asserted different patents; accordingly, arguments statements, evidence or testimony from such cases are not probative of the issues in the present case." ECF 808 at 21. Under that same rationale, the Sears and Overstock litigations—involving non-comparable companies and technical benefits, according to Mr. Bergman—should have no bearing on the hypothetical negotiation in this case. But, nonetheless, Droplets has injected Sears and Overstock into this case.

Against this backdrop, Yahoo respectfully submits that Droplets is using the Court's ruling on MIL No. 5 as both a sword and a shield. Droplets has used it as a sword by telling the jury that Droplets proved infringement of the '745 Patent in two prior (non-comparable) cases, and then requested an approximate 5X multiplier based on that jury verdict. But at the same time, Droplets is using the Court's ruling on MIL No. 5 as a shield to deny Yahoo the ability to inform the jury that Mr. Bergman's multiplier theory was incomplete because Droplets does not always win in the same manner—instead, in cases involving other "option companies" on Exhibit C besides Sears and Overstock, Mr. Bergman's theory looks highly suspect. This sword / shield treatment works substantial prejudice on Yahoo.

Despite this Court's ruling on MIL No. 5, Droplets has tactically injected litigations like Sears and Overstock into the trial, as well as repeatedly injecting the dispute with Adobe culminating

in a $10 million license, which Mr. Bergman also said was not comparable to Yahoo in the hypothetical negotiation. *See* Exhibit B, Bergman Report at ¶ 229. Yahoo respectfully submits that fundamental fairness requires permitting Mr. Bakewell to testify about the litigation and settlement outcomes of the <u>other</u> "option companies" listed in Exhibit C besides Sears and Overstock consistent with the opinions in his expert report. At trial, Mr. Bakewell would show Exhibit C and, for each of the other "option companies," would address the option rate, whether the company prevailed in its dispute with Droplets or settled (and, if so, for what amount), and the impact on the multiplier.

## **CONCLUSION**

In light of the multiple potentially-pertinent pretrial rulings identified above, Yahoo respectfully requests the Court's guidance and clarification as to the permissible boundaries of Mr. Bakewell's rebuttal testimony regarding Exhibit C and Mr. Bergman's "option" / "multiplier" theory before Mr. Bakewell takes the stand this upcoming week.

|   |   |   |
|---|---|---|
| 1 |   |   |
| 2 | March 19, 2022 | Respectfully submitted, |
| 3 |   |   |
| 4 |   | /s/ Meghan C. Killian |
|   |   | Meghan C. Killian (SBN: 310195) |
| 5 |   | George D. Niespolo (SBN: 72107) |
|   |   | **DUANE MORRIS LLP** |
| 6 |   | Spear Tower |
| 7 |   | One Market Plaza, Suite 2200 |
|   |   | San Francisco, CA 94105 |
| 8 |   | 415.957.3000 (phone) |
|   |   | 415.957.3001 (fax) |
| 9 |   | GDNiespolo@duanemorris.com |
| 10 |   | MCKillian@DuaneMorris.com |
| 11 |   | Kevin P. Anderson (admitted *pro hac vice*) |
|   |   | **DUANE MORRIS LLP** |
| 12 |   | 505 9th Street, N.W., Suite 1000 |
|   |   | Washington D.C. 20004-2166 |
| 13 |   | 202.776.7800 (phone) |
|   |   | 202.776.7801 (fax) |
| 14 |   | KPAnderson@duanemorris.com |
| 15 |   |   |
|   |   | Aleksander Goranin (admitted *pro hac vice*) |
| 16 |   | **DUANE MORRIS LLP** |
|   |   | 30 South 17th Street |
| 17 |   | Philadelphia PA 19103-4196 |
|   |   | 215.979.1000 (phone) |
| 18 |   | 215.979.1020 (fax) |
| 19 |   | Agoranin@duanemorris.com |
| 20 |   | L. Norwood Jameson (admitted *pro hac vice*) |
|   |   | Matthew C. Gaudet (admitted *pro hac vice*) |
| 21 |   | Alice Snedeker (admitted *pro hac vice*) |
| 22 |   | **DUANE MORRIS LLP** |
|   |   | 1075 Peachtree Street NE, Suite 1700 |
| 23 |   | Atlanta GA 30309-3929 |
|   |   | 404.253.6900 (phone) |
| 24 |   | 404.253.6901 (fax) |
|   |   | WJameson@duanemorris.com |
| 25 |   | MCGaudet@duanemorris.com |
| 26 |   | AESnedeker@duanemorris.com |
| 27 |   | Jennifer H. Doan (admitted *pro hac vice*) |
|   |   | Joshua R. Thane  (admitted *pro hac vice*) |
| 28 |   | **HALTOM & DOAN** |

DM2\15536270.2

**YAHOO'S BENCH MEMORANDUM**                                 1                                 Case No.: 4:12-CV-03733-JST

|   |   |
|---|---|
| 1 | 6500 Summerhill Road, Suite 100 |
| 2 | Texarkana, TX 75503 |
|   | Telephone: (903) 255-1000 |
| 3 | Facsimile: (903) 255-0800 |
|   | Email: jdoan@haltomdoan.com |
| 4 | Email: jthane@haltomdoan.com |
| 5 | **DEFENDANT YAHOO!, INC. AND** |
|   | **INTERVENOR-PLAINTIFFS OATH, INC.** |
| 6 | **AND OATH HOLDINGS, INC.** |

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served by ECF on all counsel of record on March 19, 2022.

/s/ Meghan C. Killian
Meghan C. Killian