UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DROPLETS, INC.,<br><br>        Plaintiff,<br><br>     v.<br><br>YAHOO! INC.,<br><br>        Defendant. | Case No. 12-cv-03733-JST<br><br>**ORDER DENYING YAHOO!'S MOTION FOR POST-TRIAL RELIEF AND GRANTING IN PART AND DENYING IN PART DROPLETS' MOTION FOR POST-TRIAL RELIEF**<br><br>Re: ECF Nos. 1166, 1175 |

After a 14-day trial in March 2022, a nine-person jury found that Yahoo!'s Search Suggest product infringed claim 1 of Droplets' '745 patent and awarded Droplets $15 million in reasonable royalties.  ECF No. 1125 at 1-2.  Both parties now bring post-trial motions:  Yahoo! moves for judgment as a matter of law on Droplets' infringement claim, ECF No. 1166; and Droplets moves for a new trial, as well as for attorney's fees and pre- and post-judgment interest on the final judgment.  ECF No. 1175.

For the reasons set forth below, the Court denies Yahoo!'s motion and grants in part and denies in part Droplets' motion.

## I.     BACKGROUND

### A.     Factual Background

In this patent infringement action, Droplets accuses Yahoo! of infringing U.S. Patent No. 6,687,745 (the "'745 Patent").  ECF No. 1-1 (the '745 Patent).  The '745 patent is directed towards "an object-oriented approach for delivering interactive links to applications and information stored in remote sources of a network."  *Id.* at 1:27-30.  Claim 1, which is illustrative, recites:

In a network configured computer processing system having a

plurality of client computers and a plurality of host computers, a method for delivering interactive links for presenting applications and information from remote sources on the network, the method comprising:

retrieving, in response to a request of a client computer, over a first communication connection first information having computer program code embedded therein and executing the embedded computer program code for establishing a second communication connection to a second host computer;

sending second information relating to the operating environment of the client computer, from the client computer to the second host computer;

retrieving, over the second communication connection, third information including presentation information for presenting an application and fourth information, the presentation information being based on the second information;

presenting, at the client computer, the application and the fourth information based upon the presentational information; and

storing, on the client computer, an interactive link for selectively re-establishing the second communication connection to the second host computer for retrieving the third information and presenting the application and the fourth information.

*Id.* at 29:65-30:25.

Each asserted claim requires an "interactive link," which the Court construed as:

computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring a particular user's previous operating states of the application as the application is represented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL) or use those elements to restore previous operating states.

ECF No. 801 at 11 (emphasis omitted).  The Court also construed "previous operating state" to "refer to a particular user's operating state and particularly to 'modifications made to an application' by the user," ECF 792 at 10, and "'selectively' re-establishing a communication connection" to mean that "a user 'is given an option of re-loading or not re-loading the state information' of the last session," *id.* at 17 n.10.

**B.     Procedural Background**

After the Court denied Yahoo!'s motion for summary judgment on Droplets' infringement claims, ECF No. 801, the parties proceeded to trial in March 2022.  At the end of a 14-day trial, the jury found that Yahoo!'s Search Suggest product infringed claim 1 of the '745 patent and awarded Droplets $15 million in reasonable royalties.  ECF No. 1125 at 1-2.  The parties now move for post-trial relief.  ECF Nos. 1166, 1175.

**II.     DISCUSSION**

**A.     Yahoo!'s Motion for Judgment as a Matter of Law**

Yahoo! now renews its prior motion for judgment as a matter of law that its Search Suggest product does not infringe claim 1 of the '745 patent.  ECF No. 1166.

**1.     Legal Standard**

A court may grant a motion for judgment as a matter of law against a party on a claim or issue where the party has been "fully heard on [that] issue during a jury trial" and the court finds that a "reasonable jury would not have a legally sufficient evidentiary basis" to find for that party. Fed. R. Civ. P. 50(a).

Judgment as a matter of law is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury."  *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002); *see also Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 803 (9th Cir. 2009) ("JMOL is appropriate when the jury could have relied only on speculation to reach its verdict.").  "A jury's verdict must be upheld if it is supported by substantial evidence.  Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."  *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (citation omitted).

A motion for judgment as a matter of law made under Rule 50(a) may be renewed after the jury returns a verdict against the moving party.  Fed. R. Civ. P. 50(b).  As the Ninth Circuit has explained:

[A] proper post-verdict Rule 50(b) motion is limited to the grounds

> asserted in the pre-deliberation Rule 50(a) motion.  Thus, a party
> cannot properly 'raise arguments in its post-trial motion for judgment
> as a matter of law under Rule 50(b) that it did not raise in its preverdict
> Rule 50(a) motion.'

*EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).  "However, Rule 50(b) 'may be satisfied by an ambiguous or inartfully made motion' under Rule 50(a)."  *Id.* (quoting *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989)).

### 2.    Analysis

Yahoo! argues that Droplets failed to prove the elements required by the Court's constructions for the term "an *interactive link* for *selectively re-establishing* the second communication connection."  ECF No. 1166.

"To prove infringement, the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).  "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."  *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

### a.    "selectively re-establishing"

Yahoo! moves for judgment as a matter of law that Search Suggest could not perform "selectively re-establishing" as claimed by the '745 patent and construed by the Court.  ECF No. 1166 at 10.

The Court construed "selectively re-establishing a communication connection" as "a user is given an option of re-loading or not re-loading the state information of the last session."  ECF 792 at 17 n.10 (internal quotation marks and citation omitted).

At trial, Droplets argued that Yahoo!'s Search Suggest met this limitation by re-loading state information only when the user types in characters they have typed before and not re-loading state information when the user types in new characters.  Substantial trial evidence supports Droplets' theory of infringement.  *See* Trial Tr. 895:1-896:8 (direct examination of Dr. Schmidt) ("[I]f a user types a term they've typed before . . . the interactive link [] essentially restore[s] the previous operating states."); Trial Tr. 935:11-936:21 (same) ("[T]he user is always given the

1    option of reloading a particular set of search suggestions for a particular set of input or not doing

2    that."); Trial Tr. 2276:8-21 (same) (testimony that performance was by Search Suggest's

3    JavaScript code).

4         Yahoo! challenges the jury's conclusion that Search Suggest performs "selectively re-

5    establishing" because it does not "give[]" the user any "option of re-loading or not re-loading."

6    ECF No. 1166 at 7.  None of Yahoo!'s arguments is compelling.

7         Yahoo! contends that Search Suggest cannot perform "selectively re-establishing" because

8    the "option of re-loading or not re-loading" – as construed by the Court – comes not from an

9    interactive link, but from a user's "free will."  ECF No. 1166 at 14.  To support its theory, Yahoo!

10   points to Dr. Schmidt's testimony that "the user is free to go wherever they want, to do things, to

11   not do things, and so on."  Trial Tr. 935:7-936:3; Trial Tr. 2278:22-2279:14 ("And so in this

12   particular case, the interactive link, again by its very nature of being interactive, gives the user the

13   option of being able to do various things.").  However, that testimony is not conclusive evidence

14   that Search Suggest could not infringe because it is a user's "free will" that provides the claimed

15   "option," especially where Dr. Schmidt testified that he was not "pointing to human free will [to]

16   satisfy[] the 'selectively' element."  Trial Tr. 2280:2-4.  At its core, Yahoo!'s "free will theory"

17   asks the Court to read the term "gives an option" as one "defined solely by the keyboard and the

18   user's mind."  ECF No. 1195 at 14.  While that might be one way for the jury to have applied the

19   Court's claim construction, it was not the only way.  And now is not the time for the Court to

20   narrow its prior claim construction.  *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520

21   (Fed. Cir. 2012) ("[I]f [defendant] desired such a narrow definition, it could (and should) have

22   sought a construction to that effect.").  Without confining the jury to Yahoo!'s narrower

23   construction, the jury could rely on the plain and ordinary meaning of the term "given an option"

24   and conclude that the limitation was met where the Search Suggest interactive link re-loads state

25   information only when the user types in characters they have typed before and does not re-load

26   state information when the user types in new characters.

27        Yahoo!'s claim construction argument that the "given an option" construction requires a

28   user be "presented with alternatives from which to choose," ECF No. 1166 at 15, also fails.  As

1    Droplets argues, Yahoo! did not raise this argument in its Rule 50(a) motion and therefore cannot

2    raise it now.  ECF No. 1183 at 27 n.11.  Even if it had, such a claim construction argument is

3    inappropriate at this stage.

4        Yahoo! contends that the Court's claim construction of "selectively re-establishing"

5    excludes circumstances where "a content page is recreated from scratch."  ECF No. 1166 at 19-20.

6    Again, this claim construction argument is inappropriate at this stage:  the Court considered and

7    declined that interpretation when it construed "selectively re-establishing" to mean that "a user is

8    given an option of re-loading or not re-loading the state information of the last session."  ECF 792

9    at 10 (internal quotation marks omitted).  Evidence at trial also supported the conclusion that

10   Search Suggest did not merely "recreate [any content] from scratch," but rather restored the

11   previous operating state.  *See* Trial Tr. 2286:9-15 (direct examination of Dr. Schmidt) ("[I]t's very

12   clear that past searches are indeed taken into account within a session.").

13       Next, Yahoo! argues that Search Suggest does not infringe because since each "usage is a

14   new session with new results," a "user is never given an 'option' to reload prior search

15   suggestions."  ECF No. 1195 at 14.  "At most," Yahoo! contends, "the user 'is given the option' to

16   either type the same input or a different input into the search box."  ECF No. 1195 at 14.  Yahoo!

17   argues that claim 1's use of "the" ("an interactive link for selectively re-establishing the second

18   communication connection to the second host computer for retrieving *the* third information and

19   presenting the application and *the* fourth information," '745 Patent at 30:20-25) means that the

20   claim is only infringed when the same output – here, the same search suggestions – is re-loaded

21   after a user enters previously-entered characters.  ECF No. 1195 at 15.

22       This argument fails because Yahoo! again asks the Court to apply an interpretation

23   narrower than the plain and ordinary meaning of the '745 patent claim language and the Court's

24   construction, which require only that the interactive link has "facilities for restoring a particular

25   user's previous operating states of the application."  ECF No. 801 at 11.  As Droplets responds,

26   "[i]t does not matter whether the exact same suggestions are re-loaded."  ECF No. 1183 at 27.

27   The Court agrees that "what is important is that the interactive link has 'facilities' such that, when

28   a user types in the same character string, it reloads the backend Search Suggest application into the

1    state of outputting suggestions for that character string." *Id.* Yahoo! argues that Dr. Schmidt

2    never stated as much at trial and Droplets' argument thus constitutes impermissible post-trial

3    attorney argument. ECF No. 1195 at 14. But at trial, Dr. Schmidt testified that the search

4    suggestions were "the presentation of the previous operating state that's returned from – from the

5    gossip servers using the interactive link facilities." Trial Tr. 2314:23-2315:9 (explaining that the

6    list of suggestions "are a manifestation of the operating state that's being restored").

7          Yahoo!'s remaining arguments likewise do not support entry of judgment in its favor.

8    Yahoo! asserts that Droplets lacks the requisite evidence of infringement because Dr. Schmidt

9    never testified "that the user is given an option to reload or not reload the state information." ECF

10   No. 1166 at 15. However, Dr. Schmidt testified that Search Suggest met the claim language by

11   giving an option to re-load (re-loading state information only when the user types in characters

12   they've typed before) and an option to not re-load (not re-loading state information when the user

13   types in new characters). *See* Trial Tr. 895:1-896:8, 935:11-936:21. And Yahoo!'s claim that

14   Droplets' theory makes the claim language's use of the term "selectively" redundant, ECF No.

15   1166 at 14, fails because, as Droplets correctly points out, ECF No. 1183 at 26, the word

16   "selectively" here indicates that the interactive link gives a user options to choose from.

17         At best, Yahoo!'s arguments amount to a showing that it was possible for the jury to "draw

18   a contrary conclusion from the same evidence," which is insufficient to warrant judgment as a

19   matter of law. *See Johnson*, 251 F.3d at 1227. The arguments do not indicate that "the evidence,

20   construed in the light most favorable to the nonmoving party, permits only one reasonable

21   conclusion, and that conclusion is contrary to that of the jury." *White*, 312 F.3d at 1010.

22   Accordingly, viewing the evidence in the light most favorable to Droplets, and drawing all

23   reasonable inferences in its favor, the Court finds that judgment as a matter of law as to this issue

24   is not warranted.

25                              b.    **"interactive link"**

26         Yahoo! moves for judgment as a matter of law that Search Suggest could not perform the

27   "interactive link" as claimed by the '745 patent. ECF No. 1166 at 22.

28         The Court construed "interactive link" to mean, in relevant part, "computer code that . . .

United States District Court
Northern District of California

7

1    includes facilities for **restoring** a particular user's **previous operating states** of the application **as
2    the application is re-presented at a user's computer**." ECF No. 749 at 10 (emphasis added).
3    The Court construed "previous operating states" within the above construction to refer to "a
4    **particular user**'s operating state and particularly to **modifications made to an application by
5    the user**." ECF 792 at 10 (emphasis added) (internal quotation marks omitted).

6            Droplets' theory of liability is that Yahoo!'s Search Suggest, powered by JavaScript code,
7    meets the construed "interactive link" as follows: after a user inputs characters into Search
8    Suggest, Search Suggest sends the characters to an application stored on its "backend" gossip
9    servers, where Search Suggest modifies the operating state of its application and re-presents it in
10   the form of search suggestions. As Droplets states, Search Suggest's operating state is "the state
11   of the Search Suggest backend outputting suggestions for a given character string." ECF No. 1183
12   at 9.

13           Yahoo! argues that because the term "interactive link" requires that the restored "operating
14   state" itself be "re-presented at the user's computer," Search Suggest cannot infringe since its
15   backend outputting is never re-presented at the user's computer. ECF No. 1195 at 5. Droplets
16   contends that Yahoo! did not raise this argument in its Rule 50(a) motion, so this Court may not
17   consider the argument now. ECF No. 1209 at 11.

18           In its Rule 50(a) motion, Yahoo! argued that Droplets failed to establish restoration of state
19   as required by the Court's construction of "previous operating state". ECF No. 1091 at 3.
20   Specifically, Yahoo! argued that: (1) Droplets failed to establish the restoration of "modifications
21   made to an application by the user," because its expert did not opine that the string the user typed
22   into the search box was restored by any alleged "interactive link"; and (2) Droplets failed to
23   establish the restoration of "a particular user's operating state," because the user's location, type of
24   device, keystrokes, and past searches are insufficient to establish a "particular user." *Id.* at 3-4.
25   Nowhere in its Rule 50(a) motion did Yahoo! argue that an "interactive link" requires that the
26   restored "operating state" *itself* be "re-presented at the user's computer," as it does now. This
27   argument was not made, even "ambiguous[ly] or inartfully," in Yahoo!'s Rule 50(a) motion. *Go
28   Daddy*, 581 F.3d at 961.

United States District Court
Northern District of California

8

1    Because Yahoo! did not raise its argument that an "interactive link" requires that the

2    restored "operating state" itself be "re-presented at the user's computer" in its Rule 50(a) motion,

3    the Court may not consider this argument now.

### i.    "made . . . by the user"

4

5    Yahoo! further argues that Search Suggest cannot infringe because Yahoo!'s gossip servers

6    taking action cannot be the required modification "made . . . by the user."  ECF No. 1166 at 22.

7    Droplets contends that Yahoo! did not make this argument in its pre-verdict motion for

8    judgment as a matter of law under Rule 50(a), and thus cannot do so now.  ECF No. 1183 at 14

9    n.5.  In its pre-verdict motion for judgment as a matter of law, Yahoo! challenged the sufficiency

10   of the evidence regarding "the restoration of 'modifications made to an application by the user.'"

11   ECF No. 1091 at 3.  Read generously, this "ambiguous" argument may reasonably include a

12   challenge to the sufficiency of the evidence that modifications are made by the user.  *See Go*

13   *Daddy*, 581 F.3d at 961.

14   Nevertheless, based on the evidence presented, the jury could reasonably conclude that the

15   user's input – the character string the user types – modifies the operating state of the Search

16   Suggest application on Yahoo!'s gossip servers.  Dr. Schmidt testified at trial that the user's input

17   modifies the operating state of the Search Suggest application.  Trial Tr. 2272:14-15 ("It is the

18   user's input that's modifying the Search Assist application").  Viewing the evidence in the light

19   most favorable to Droplets and drawing all reasonable inferences in its favor, the Court finds that

20   judgment as a matter of law is not warranted.

### ii.    any modifications

21

22   Yahoo! also contends that Search Suggest cannot infringe because it does not restore any

23   modifications but instead dynamically re-runs the accused algorithms and outputs the results

24   afresh for each usage.  ECF No. 1166 at 27.  However, at trial, Dr. Schmidt testified that "the

25   user's input [is] modifying the Search Assist application . . . .  The interactive link, after sending

26   the user input over to the gossip application servers, will then take the results that come back and

27   restore the results and present them to the user." Trial Tr. 2272:14-20; *see also id.* 2221:14-17

28   ("Those results will then come back, the search suggestions will come back from that, and the

interactive link will then go ahead and restore that modification and present it to the user."). Based on the evidence presented at trial, the jury could reasonably conclude that Search Suggest does restore modifications:  once the user's input modifies the operating state of the Search Suggest application on Yahoo!'s gossip servers, those modifications are restored on the user's screen in the form of search suggestions.

Viewing the evidence in the light most favorable to Droplets and drawing all reasonable inferences in its favor, the Court finds Yahoo! is not entitled to judgment as a matter of law.

### iii.    "a particular user's" previous operating state

Finally, Yahoo! argues that Search Suggest cannot infringe because it does not restore "a particular user's" previous operating state.  Dr. Schmidt testified that Search Suggest does restore the operating state of a particular user.  Trial Tr. 940:15-23 ("A user had previously typed in T-E-S, they'd previously got a set of search suggestions based on the gossip server's operating state, in other words what it decided to return based on the input and this other user-specific data, and now the user's typed it again.  And so now what's going to happen is once again the gossip application is going to restore the operating state corresponding to that user request plus that other user-specific data."); *Id.* 939:16-940:11 (explaining that "the gossip server takes into account" user-specific data, including location, device type, keystrokes, and past searches within a given session, "in addition to the user input . . . when it decides to modify its operating state in order to come up with the suggestions to send back to the user").  Viewing the evidence presented at trial in the light most favorable to Droplets, and drawing all reasonable inferences in its favor, the Court finds that the jury could reasonably conclude that the restored operating state is particular to the user.

Accordingly, the Court concludes that Yahoo! is not entitled to judgment as a matter of law as to infringement of claim 1 of the '745 patent.

### B.    Droplets' Motion for Attorney's Fees, Pre- and Post-Judgment Interest, and a New Trial

Droplets now moves for attorney's fees, pre- and post-judgment interest, and for a new trial on its infringement claims regarding the Yahoo! Mail, My Yahoo!, and Search History

products.  ECF No. 1175.[1]

### 1.    Attorney's Fees

Droplets moves for attorney's fees, arguing this case falls within the class of "exceptional" cases for which courts may award reasonable attorney's fees under 35 U.S.C. § 285.  ECF No. 1175.

### a.    Legal Standard

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  572 U.S. 545, 554 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period.").  In considering the totality of the circumstances, district courts may consider "a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

As the Court has previously explained, "application of the American Rule remains the well-established presumption even in patent cases, and this Court will not depart from it lightly."  *EON Corp. IP Holdings LLC v. Cisco Sys., Inc.*, No. 12-cv-01011-JST, 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014).  To receive attorney's fees, the moving party must demonstrate that the

---

[1] In its opening brief, Droplets included Yahoo! Maps in the list of products for which it seeks a new trial.  ECF No. 1175 at 34.  Droplets subsequently dropped Yahoo! Maps from this list on reply.  ECF No. 1196 at 21 n.17.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    case is "exceptional" by a preponderance of the evidence.  *Octane Fitness*, 572 U.S. at 557-58.

2                              **b.       Analysis**

3         Droplets asserts it is entitled to attorney's fees because Yahoo! litigated a meritless license

4    defense, heavily litigated a prior art invalidity defense that it dropped during trial, and generally

5    litigated this case in an unreasonable manner.  ECF No. 1175.

6         Droplets first argues that Yahoo!'s license defense was frivolous and litigated in bad faith,

7    rendering this case exceptional.  ECF No. 1175 at 12.  While it is true that the Court was

8    ultimately not persuaded by Yahoo!'s license defense, vigorously litigating a defense before it is

9    decided on the merits is not evidence of bad faith.

10        Droplets also contends that Yahoo! engaged in "vexatious" conduct concerning its

11   invalidity defense during fact and expert discovery, then forced Droplets to prepare for the

12   invalidity case at trial, before withdrawing the invalidity case during trial.  ECF No. 1175 at 16.

13   Yahoo!'s dogged pursuit of its invalidity theories "[is] consistent with their aggressive defenses

14   but [is] not otherwise uncommon or exceptional."  *Illumina, Inc. v. BGI Genomics Co., Ltd.*, Nos.

15   19-cv-03770-WHO & 20-cv-1465-WHO, 2022 WL 899421, at *29 (N.D. Cal. Mar. 27, 2022); *see*

16   *also Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13-cv-3999-BLF, 2016 WL 3880774, at *15

17   (N.D. Cal. July 18, 2016) ("[A]s the accused infringer, Blue Coat was obligated to defend against

18   Finjan's numerous asserted patents and claims.  Blue Coat did not choose to bring this lawsuit, but

19   once sued, defended itself in a determined manner."), *rev'd in part on other grounds*, 879 F.3d

20   1299 (Fed. Cir. 2018).

21        Finally, Droplets argues that Yahoo! engaged in an exceptional pattern of litigation

22   misconduct before and during trial.  ECF No. 1175 at 21.  "Post-*Octane* decisions awarding fees

23   have generally cited egregious behavior."  *Vasudevan Software, Inc. v. Microstrategy, Inc.*, No.

24   11-cv-6637-RS, 2015 WL 4940635, at *5 (N.D. Cal. Aug. 19, 2015).  Yahoo!'s conduct "does

25   not, in this Court's view, rise to the level required to render the case exceptional under Section

26   285."  *RideApp, Inc. v. Lyft, Inc.*, No. 18-cv-07152-JST, 2020 WL 1047378, at *2 (N.D. Cal. Feb.

27   24, 2020) (denying attorney's fees where party's litigation positions were not so unreasonable as

28   to make the case exceptional); *Vasudevan*, 2015 WL 4940635, at *6 (denying attorney's fees

1   where plaintiff "engaged in numerous questionable and overly aggressive litigation tactics").

2       This case presented close questions throughout, and the jury verdict suggests neither

3   party's position was objectively unreasonable:  the jury found that only one of the accused

4   products infringed only one of the asserted claims.  *See Illumina*, 2022 WL 899421, at *29

5   (denying attorney's fees because the party's "pursuit of their rejected theories was reasonable

6   given that the conclusions were not straightforward" in light of jury verdict and close questions

7   during claim construction and summary judgment).

8       Upon review of the totality of the circumstances, the Court concludes that Droplets has not

9   shown that is "exceptional" case within the meaning of Section 285.  As a result, the Court will

10  not exercise its discretion to grant attorney's fees in this case.

### 2.       Pre-Judgment Interest

11
12  Droplets moves for pre-judgment interest.  ECF No. 1175 at 30-34.

### a.       Legal Standard

13
14  A prevailing patentee is generally entitled to prejudgment interest. See 35 U.S.C. § 284

15  ("Upon finding for the claimant the court shall award the claimant damages adequate to

16  compensate for the infringement . . . together with interest and costs as fixed by the court."); *Gen.*

17  *Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983) ("[P]rejudgment interest should

18  ordinarily be awarded. . . to make the patent owner whole, since his damages consist not only of

19  the value of the royalty payments but also of the forgone use of the money between the time of

20  infringement and the date of judgment.").  Such interest is ordinarily awarded "from the earliest

21  date of infringement for any patent issued at the time of the hypothetical negotiation" and is

22  "based on the entire royalty award."  *Comcast IP Holdings I LLC v. Sprint Comms. Co., L.P.*, 850

23  F.3d 1302, 1315 (Fed. Cir. 2017).

24      Because the purpose of awarding prejudgment interest is to fully compensate the patent

25  holder for the infringement, courts are afforded wide latitude in the selection of interest rates in

26  order to ensure this purpose is met. *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d

27  1014, 1042 (N.D. Cal. 2016) ("The rate of prejudgment interest is left to the discretion of the

28  district court, which . . . may use the prime rate, the prime rate plus a percentage, the United States

United States District Court
Northern District of California

1   Treasury Bill ("T-Bill") rate, a state statutory rate, the corporate rate, or 'whatever rate the court

2   deems appropriate under the circumstances.") (internal citation omitted) (quoting *Junker v. HDC*

3   *Corp.*, No. 07-cv-5094-JCS, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008)).

### b.   Analysis

5   Droplets moves for pre-judgment interest, applied from the date of first infringement in

6   2005, at the California statutory rate of 7% simply compounded, or alternatively, at the prime rate

7   compounded annually.  ECF No. 1175 at 30-34; ECF No. 1196 at 16 n.9.  Yahoo! does not dispute

8   that Droplets is entitled to pre-judgment interest, but argues interest should be granted at the 52-

9   week T-bill rate, compounded annually.  ECF No. 1184 at 25. Yahoo! further contends that the

10  accrual of pre-judgment interest should be limited to the periods from December 12, 2012, to

11  April 12, 2016, and from November 1, 2018, through judgment, due to Droplets' undue delay of

12  these proceedings.  *Id.* at 31.

13  The Court finds it reasonable to award Droplets prejudgment interest at the prime rate,

14  compounded annually.  A patentee need not offer proof of borrowing at or above the prime rate

15  "to be entitled to an award of prejudgment interest at the prime rate."  *Studiengesellschaft Kohle,*

16  *m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988).  Nevertheless, Droplets has

17  submitted evidence that it did, in fact, need to borrow money at rates far exceeding the prime rate

18  during the period of infringement.  ECF No. 1180-10 at 2 (10%); ECF No. 1180-14 at 2 (15%);

19  ECF No. 1180-18 at 2 (15%).  In light of this evidence, the Court finds that "the prime rate 'more

20  nearly approximates the position [Droplets] would have been in had [Yahoo!] entered into a

21  reasonable royalty agreement.'"  *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-0457-JST,

22  2015 WL 5568360, at *24 (N.D. Cal. Sept. 22, 2015), *rev'd in part on other grounds*, 852 F.3d

23  1352 (Fed. Cir. 2017) (quoting *A&L Tech. v. Resound Corp.*, No. 93-cv-0107-CW, 1995 WL

24  415146, at *5 (N.D. Cal. June 29, 1995)).

25  "Typically, 'prejudgment interest should be awarded from the date of the infringement to

26  the date of the judgment."  *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065,

27  1076 (Fed. Cir. 2020) (quoting *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir.

28  1988)).  Droplets contends, and Yahoo! does not dispute, that the jury awarded a lump sum

United States District Court
Northern District of California

amount as compensation for infringement in this case.  "Where a jury awards a lump-sum amount as compensation for infringement, the prejudgment interest is properly applied to the entire amount beginning on the first date of the infringement."  *Id.* at 1076.  "In general, the date of the hypothetical negotiation is the date that the infringement began."  *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).  Although the parties stipulated that the date of the hypothetical negotiation was September 2005, Trial Tr. 1515:25-1616:01, Droplets acknowledges that Search Suggest did not begin infringing until July 2007, ECF No. 1196 at 19 ("2007 . . . was when Search Suggest began infringing"); *id.* ("July 2007 . . . was the stipulated date of first infringement") (emphasis omitted).  The Court finds no undue delay in Droplets' prosecution of this suit and thus finds no reason to deviate from the typical temporal scope of prejudgment interest in this case.

The Court therefore awards Droplets prejudgment interest at the prime rate, compounded annually, from July 2007 to the date of the entry of the judgment.[2]

### 3.  Post-Judgment Interest

Droplets argues that it is entitled to post-judgment interest under 28 U.S.C. § 1961.  ECF No. 1175 at 34.  Droplets requests that the calculation of post-judgment interest be deferred until the entry of final judgment.  ECF No. 1175 at 34.  Yahoo! does not object.

Section 1961 provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."

Yahoo! shall pay Droplets post-judgment interest at the statutorily mandated rate.

### 4.  New Trial

Droplets seeks a new trial under Federal Rule of Civil Procedure 59 on what it calls "the cookied products" – Yahoo! Mail, My Yahoo!, and Search History – due to erroneous jury instructions.  ECF No. 1175 at 37.  In particular, Droplets argues that: (1) the Court should have

---

[2] As of July 15, 2022, this amount was $12,038,602.  *See* ECF No. 1196-1 ¶ 6.

United States District Court
Northern District of California

1   instructed the jury that peripheral uses of cookies are permitted; and (2) the Court should not have

2   instructed the jury that "previous operating states" means modifications made to an application by

3   the user.  *Id.* at 42, 44.

4                           **a.      Legal Standard**

5        Under Rule 59, the Court may grant a new trial, "after a jury trial, for any reason for which

6   a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P.

7   59(a)(1)(A).  In the Ninth Circuit, a court may grant a new trial under Rule 59 "only if the verdict

8   is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to

9   prevent a miscarriage of justice."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)

10  (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir.

11  2000)).  "[T]he district court, in considering a Rule 59 motion for new trial, is not required to view

12  the trial evidence in the light most favorable to the verdict.  Instead, the district court can weigh

13  the evidence and assess the credibility of the witnesses."  *Experience Hendrix L.L.C. v.*

14  *Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

15       Incorrect jury instructions may present grounds for a new trial.  "An erroneous instruction

16  regarding claim interpretation that affects the jury's decision on infringement is grounds for a new

17  trial.  A party seeking to alter a judgment based on erroneous jury instructions must establish that

18  'those instructions were legally erroneous,' and that 'the errors had prejudicial effect.'"  *Ecolab,*

19  *Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed Cir. 2002) (quoting *Advanced Display Sys., Inc.*

20  *v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir 2000)).

21                          **b.      Cookies**

22       Droplets first argues that a new trial should be granted because the Court should have

23  instructed the jury that "peripheral" uses of cookies were not prohibited by the negative limitation

24  forbidding the use of cookies to restore state.  ECF No. 1175 at 42.

25       As part of its construction of "interactive link," the Court issued the following negative

26  limitation: "An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet

27  address (URL) or use those elements to restore previous operating states."  ECF No. 801 at 11.

28  The Court denied Yahoo!'s motion for summary judgment, explaining:

United States District Court
Northern District of California

16

The relevant operation in the accused products is not disputed: the interactive link restores previous operating states from a remote server using "B cookies" that store user IDs necessary to retrieve user information. . . . Yahoo claims that this constitutes restoring previous operating states using a cookie, as prohibited by the claim construction for "interactive link." Although Yahoo's construction of the claim term is correct, **the Court is not convinced that the peripheral use of cookies in this instance defeats infringement. . . . [A] reasonable jury could find that the use here does not constitute "restoring operating states" because it is only a peripheral use of cookies to perform the equivalent function of obtaining user log-in.**

ECF No. 801 at 9-11 (emphasis added). Droplets now argues that, through the above language, the Court "further construed its own construction to carve out peripheral uses of cookies from its negative construction," and that the Court therefore erred in failing to instruct the jury that peripheral uses of cookies were not prohibited by the negative limitation. ECF No. 1175.

Droplets mischaracterizes the nature of this excerpt of the Court's summary judgment order. The order denied Yahoo! summary judgment because a reasonable jury could find that the way the accused products use cookies does not constitute "restoring operating states." The excerpted language cannot plausibly be read to further modify, as a matter of law, the court's construction of "interactive link". In the conclusion of the same order, the Court *did* explicitly modify its construction of "interactive link," defining it as:

computer code that (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user, and (2) includes facilities for restoring a particular user's previous operating states of the application as the application is re- presented at a user's computer. An interactive link cannot be a bookmark, cookie, shortcut, hyperlink or Internet address (URL) or use those elements to restore previous operating states.

ECF No. 801 at 11 (emphasis omitted). If the Court intended to further construe the negative limitation of "interactive link" through its analysis of Yahoo!'s summary judgment motion, it would have included that language in its revised construction of "interactive link," issued in the same order.

Droplets contends that it "was not permitted to press the issue and argue that peripheral uses were permitted—which would have amounted to arguing to the jury under a different construction than that provided by the Court." ECF No 1175 at 43. But the Court's claim construction did not prohibit argument about infringing uses of cookies. And Droplets did, in fact,

raise the issue of infringing uses of cookies throughout trial—in opening, expert testimony, and closing:

- "We're also going to hear an excuse that Yahoo!'s product uses cookies . . . that any use of cookies allows them to get out of jail. . . .  [Y]ou don't infringe if you use cookies, but only in a very specific way.  Not any way.  In a very specific way.  And is [sic] not how they're using cookies." Trial Tr. 291:7-17 (opening statement of Mr. Reichman);

- "The products only use the cookie, if they use it at all, peripherally in order to be able to authenticate the user.  But if the cookie were used to restore or store the state, then all user history would be stored in a cookie, which it is not." Trial Tr. 984:19-985:12 (direct examination of Dr. Schmidt);

- "So it's a difference between a peripheral application of something, which in this case is a cookie versus actually using it to do a particular task like restore state."  Trial Tr. 1216:15-18 (re-direct of Dr. Schmidt);

- "So with Mail and search – the search history variant of Search Assist, the cookies are used in order to identify a user, not to restore prior operating state." Trial Tr. 1226:06-13 (same);

- "In listening to the testimony that the engineers gave, they confirmed what I had mentioned in my direct examination last week that, for example, uses of cookies by Yahoo! are peripheral and involve essentially keeping track of user identity . . . I don't believe the Yahoo! engineers ever said anything about cookies being used to restore previous operating state."  Trial Tr. 2187:17-2188:01 (same);

- "What they all testified to is that cookies are used to get a user I.D.  Well, the claim construction doesn't say you can't use a cookie to get a user I.D.  It says you can't use a cookie to restore the operating state. . . . Yahoo! says, well, actually you can't restore the operating state without the cookies, without the user I.D. . .  Of course you can't operate it without a user I.D., but the cookie is used to get – to identify the user.  It's not used to restore state.  And this is what Dr. Schmidt testified to." Trial Tr. 2492:25-2493:05 (closing argument of Mr. Reichman);

- "And the fundamental point is cookies are not used to restore state."  Trial Tr. 2495:09-11 (same).

Droplets could—and did—argue to the jury that Yahoo!'s uses of cookies were "peripheral" and therefore not excluded from the scope of the invention.

To be granted a new trial on the basis of an erroneous jury instruction, Droplets must show, by a preponderance of the evidence, that the jury instruction was legally erroneous and that

the error had prejudicial effort.  *See Ecolab*, 285 F.3d at 1373.  Droplets has not shown that the jury instruction regarding the Court's claim construction of "interactive link" was legally erroneous:  the jury was instructed correctly regarding the Court's claim construction of "interactive link."  *Compare* Trial Tr. 2435:22-2436:08 (jury instruction) *with* ECF No. 801 (claim construction).  The Court had no need to further instruct the jury regarding the negative limitation in the Court's construction of "interactive link," because the limitation is not a "blanket prohibition on the use of cookies," as Droplets suggests.  ECF No. 1175 at 44.  It is a prohibition on an interactive link being or using a cookie *to restore previous operating states*.  The negative limitation states that an interactive link "cannot be a . . . cookie . . . or use those elements to restore previous operating states"; peripheral uses of cookies, so long as they do not constitute "restor[ing] previous operating states," fall outside that negative limitation.  The negative limitation thus does not conflict with the Court's analysis in the summary judgment order.

Because the Court finds that Droplets has not established that this jury instruction was legally erroneous, the Court denies Droplets' motion for a new trial.

### c.       Previous Operating States

Droplets argues that the Court should not have instructed the jury that "previous operating states" means modifications made to an application by the user because the claim construction was erroneous.  ECF No. 1175 at 44.

In the disputed construction, the Court found that "'previous operating state' must refer to a particular user's operating state and particularly to 'modifications made to an application' by the user."  ECF No. 792.  In reaching this conclusion, the Court first noted that collateral estoppel applied to the SDNY court's interpretation of "previous operating state" (in its construction of "interactive link"), in which that court found that "previous operating state" must refer to a particular user's operating state.  ECF No. 792 at 9 n.5; ECF No. 749 at 9.  The Court also reviewed the intrinsic evidence, finding further support for this position in the language of the '745 patent. ECF No. 792 at 10 (reasoning that, because bookmarks are disparaged for failing to maintain previous operating state information, showing a previously displayed web page does not constitute "restoring a previous operating state" unless data provided by the user is displayed).

United States District Court
Northern District of California

1    Thus, the Court reasoned, "previous operating state" must refer to a particular user's operating

2    state.

3          The Court then noted that, with respect to the exemplary Stock Watcher application, the

4    specification explains that the invention avoids the disadvantage of existing state tracking

5    methodologies, namely that "modifications made to an application invoked by a user at one client

6    computer are not apparent when the user re-invokes the same application at another client

7    computer"; this invention permits user actions and settings to be restored when the user re-invokes

8    the application at another device.  ECF No. 792 at 10; '745 Patent at 25:62-65.  The specification

9    further describes retrieving operating state via user id, storing state information to account for

10   delays in user activity, and resolving conflicts when a user opens multiple sessions.  *Id.* at 10.

11   Thus, the Court found that "previous operating state" "must refer to a particular user's operating

12   state and particularly to 'modifications made to an application' by the user."  ECF No. 792 at 10.

13         Droplets argues that the latter part of this claim construction—specifically, that the term

14   must refer to "'modifications made to an application' by the user"—improperly imports

15   limitations from an embodiment into the claim and redefines a claim term based on parts of the

16   specification that reflect no intent to limit the claim.

17         The Court agrees that it erred in relying on the specification's description of an example in

18   construing "previous operating state."  The Federal Circuit has "cautioned against limiting the

19   claimed invention to preferred embodiments or specific examples in the specification."  *Teleflex,*

20   *Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002).  "Although the specification

21   may aid the court in interpreting the meaning of disputed claim language, particular embodiments

22   and examples appearing in the specification will not generally be read into the claims."  *Comark*

23   *Comms., Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v.*

24   *Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)).  The Court's reliance on

25   the '745 patent's description of the Stock Watcher application was misplaced; because this was an

26   example appearing in the specification, the Court should not have relied on this description to

27   construe "previous operating state."

28         Nonetheless, Droplets has failed to establish prejudice.  As Droplets acknowledges,

"[b]ecause the jury rejected Yahoo's modification argument as to the search suggest product, it must have rejected the same argument for the cookied products."  ECF No. 1175 at 44.  Droplets argues that the Court's jury instruction "error was more pronounced based on Yahoo's interpretation of the construction at trial [sic] Droplets was prejudiced by the jury receiving an errant construction, which led the jury [sic] misapprehending the nature of the claimed invention and left the jury with an unduly narrow view of the claim."  *Id.* at 48.  If, as Droplets suggests, the jury rejected Yahoo!'s modification argument—which Droplets argues was based on an interpretation that left the jury with an unduly narrow view of the claim—it is not clear how Droplets was prejudiced by the result.  And Droplets does not suggest the jury could have reached a different result if the Court had only instructed the jury that that "previous operating state" "must refer to a particular user's operating state."

Because the Court finds that Droplets has not established that it was prejudiced by the erroneous jury instruction, the Court denies Droplets' motion for a new trial.

### CONCLUSION

For the foregoing reasons, the Court rules as follows:

1.    The Court DENIES Yahoo!'s Rule 50 motion.

2.    The Court DENIES Droplets' motion for attorney's fees.

3.    The Court GRANTS Droplets' motion for pre- and post-judgment interest.

4.    The Court DENIES Droplets' motion for a new trial.

**IT IS SO ORDERED.**

Dated:  March 1, 2023

_____
JON S. TIGAR
United States District Judge